PAUL ANDRE (State Bar No. 196585)
pandre@kramerlevin.com
LISA KOBIALKA (State Bar No. 191404)
lkobialka@kramerlevin.com
JAMES HANNAH (State Bar No. 237978)
jhannah@kramerlevin.com
KRAMER LEVIN NAFTALIS & FRANKEL LLP
990 Marsh Road
Menlo Park, CA  94025
Telephone:  (650) 752-1700
Facsimile:   (650) 752-1800

Attorneys for Plaintiff
FINJAN, INC.

MICHAEL A. JACOBS (BAR NO. 111664)
Email: MJacobs@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Telephone:   (415) 268-7000
Facsimile:    (415) 268-7522

RUDY Y. KIM (BAR NO. 199426)
Email: RKim@mofo.com
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, California 94304-1018
Telephone:    (650) 813-5600
Facsimile:     (650) 494-0792

Attorneys for Defendant
PALO ALTO NETWORKS, INC.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| FINJAN, INC.,<br><br>            Plaintiff,<br><br>      v.<br><br>PALO ALTO NETWORKS, INC.,<br><br>            Defendant. | Case No.: 4:14-CV-004908-PJH<br><br>**JOINT STATUS REPORT** |

Plaintiff Finjan, Inc. ("Finjan") and Defendant Palo Alto Networks, Inc. ("PAN") submit this Joint Status Report pursuant to the Court's December 10, 2015 Order ("Order"), in which the Court stayed this action until the U.S. Patent Trial and Appeal Board ("PTAB") issued its last decision concerning whether to institute *inter partes* review ("IPR") pursuant to thirteen IPR petitions that PAN filed in September and November 2015 on the ten patents asserted in this action (the "Asserted Patents")[1]. Dkt. No. 67. The Court directed the parties to submit a joint status report "within seven (7) days of the issuance of the PTAB's last decision concerning whether to institute IPR pursuant to PAN's IPR Petitions." *Id.*

On May 16, 2016, the PTAB issued its last decision concerning whether to institute IPR pursuant to PAN's petitions. Exs. 2-3. Of PAN's thirteen petitions, the PTAB has denied institution of seven petitions on six of the Asserted Patents and granted institution of six petitions on four of the Asserted Patents. In January, April, and May of 2016, third parties Blue Coat Systems, Inc. ("Blue Coat"), Proofpoint, Inc. ("Proofpoint") and Symantec, Corp. ("Symantec") filed motions to join certain of PAN's IPR petitions. These motions to join include IPR petitions based on the same grounds as the corresponding IPR petitions filed by PAN. The PTAB has not yet issued institution decisions for any of these third party IPR petitions filed with motions to join. The chart below sets forth PAN's thirteen IPR petitions, the PTAB's decisions regarding whether to institute each petition, and the corresponding motions to join filed by third parties:

| Asserted Patent | PAN IPR Petition | IPR Institution Decision Date | IPR Instituted? | Pending Third Party Motion to Join |
|---|---|---|---|---|
| '780 | IPR2016-00165 | April 21, 2016 | No (Ex. 1) | IPR2016-00492 (Blue Coat) |
| '968 | IPR2016-00149 | May 16, 2016 | No (Ex. 2) | IPR2016-00478 (Blue Coat) |
|  | IPR2016-00150 | May 16, 2016 | No (Ex. 3) | IPR2016-00479 (Blue Coat) |
| '822 | IPR2015-01999 | March 29, 2016 | No (Ex. 4) |  |
| '731 | IPR2015-02000 | March 23, 2016 | No (Ex. 5) | IPR2016-00493 (Blue Coat) |
| '918 | IPR2016-00164 | May 5, 2016 | No (Ex. 6) |  |
| '926 | IPR2016-00145 | May 9, 2016 | No (Ex. 7) |  |

---

[1] Specifically, the Asserted Patents are U.S. Patent Nos. 6,804,780 ("the '780 Patent"); 6,965,968 ("the '968 Patent"); 7,058,822 ("the '822 Patent"); 7,418,731 ("the '731 Patent"); 7,613,918 ("the '918 Patent"); 7,613,926 ("the '926 Patent"); 7,647,633 ("the '633 Patent"); 8,141,154 ("the '154 Patent"); 8,225,408 ("the '408 Patent") and 8,677,494 ("the '494 Patent").

1

| Asserted Patent | PAN IPR Petition | IPR Institution Decision Date | IPR Instituted? | Pending Third Party Motion to Join |
|---|---|---|---|---|
| '633 | IPR2015-01974 | March 29, 2016 | Yes (in part) (Ex. 8) | IPR2016-00480 (Blue Coat) IPR2016-00966 (Proofpoint) |
| '154 | IPR2015-01979 | March 21, 2016 | Yes (Ex. 9) | IPR2016-00919 (Symantec) IPR2016-00937 (Proofpoint) |
| | IPR2016-00151 | April 20, 2016 | Yes (in part) (Ex. 10) | IPR2016-01071 (Symantec) |
| '408 | IPR2015-02001/ IPR2016-00157 (Consolidated) | March 29, 2016 | Yes (Exs. 11-12) | IPR2016-00955/ IPR2016-00956 (Blue Coat) IPR2016-00967/ IPR2016-00970 (Proofpoint) |
| '494 | IPR2016-00159 | May 13, 2016 | Yes (in part) (Ex. 13) | |

As required by the Order, below are the parties' "respective positions on next steps for the litigation, including whether the stay should be lifted or continued based on the PTAB's decisions and the circumstances at [this] point in time."

Finjan's Position:

The stay should be lifted now that most of the Asserted Patents—and the vast majority of the claims of the Asserted Patents—are not subject to PAN's IPRs. "A court is under no obligation to delay its own proceedings by yielding to ongoing PTO reexaminations, regardless of their relevancy to infringement claims which the court must analyze." *Verinata Health, Inc. v. Ariosa Diagnostics, Inc*., No. C 12-05501 SI, 2014 WL 121640, at *2 (N.D. Cal. Jan. 13, 2014) (citation omitted).  Here, the PTAB has instituted only six of PAN's thirteen IPR petitions (two of which are consolidated) on only four of the ten Asserted Patents (i.e., the '633, '154, '408 and '494 Patents).  There is no basis to continue the stay based on the IPRs pending for four of the Asserted Patents.  Indeed, well over half of the claims in these four Asserted Patents are not even subject to the IPRs—either because PAN never challenged these claims or the PTAB denied institution of IPR for them despite PAN's challenges.  In total, of the 199 patent claims that PAN challenged in its thirteen IPR petitions, the PTAB instituted IPR on only 44 claims—fewer than one-quarter of the challenged claims.  Exs. 1-13.  Thus, ***only fifteen percent*** of the total claims of the ten Asserted Patents (i.e., 44 of 285 claims) are subject to PAN's pending IPRs.  Moreover, Finjan's disclosure of asserted claims in this action is not due until it

serves its Infringement Contentions under Patent Local Rule 3-1, and Finjan has agreed to continue to narrow its asserted claims as the litigation proceeds. Dkt. No. 62 (Initial Case Management Statement) at 13-17. Thus, there may be little overlap between the small percentage of claims of the Asserted Patents subject to PAN's IPRs and the claims that Finjan ultimately asserts in this action. Therefore, because the vast majority of the claims of the Asserted Patents will not be impacted by PAN's pending IPRs, the pending IPRs will do little to simplify the issues in this action.

Importantly, waiting for the outcome of PAN's pending IPRs will not significantly impact the discovery that has to take place in this case because the products that Finjan accuses of infringing the four Asserted Patents subject to the IPRs are the same as the products accused of infringing the other six Asserted Patents. Dkt. No. 1 (Finjan's Complaint). Thus, discovery in the case will be substantially the same regardless of the PTAB's final decisions on the pending IPRs. Moreover, in addition to numerous claims of infringement that will not be addressed by the IPRs, the pending IPRs will not address PAN's other allegations of invalidity and alleged defenses. *See* Dkt. No. 27 (PAN's Answer) (in addition to invalidity based on §§ 102-103, asserting invalidity based on §§ 101 and 112, along with various other defenses). Therefore, there is no valid justification for allowing the PTAB's future decisions in the pending IPR's to prevent the entirety of this litigation from moving forward.

In fact, before this action was stayed in December 2015, the parties were actively engaged in fact discovery. Each party served initial disclosures and numerous requests for production and interrogatories on the other party. Dkt. No. 62 (Initial Case Management Statement) at 5. The parties have produced documents, provided interrogatory responses, and PAN has made source code available to Finjan, which Finjan has inspected. *Id*. Finjan has also served a Rule 30(b)(6) notice on PAN related to its source code, and Finjan has taken one deposition of a PAN employee pursuant to certain topics of that notice. *Id*. Before the current stay, the parties were in the process of negotiating certain discovery issues pursuant to the discovery requests served to date. *Id*. In fact, PAN claims that it "has completed its core technical production of accused products in compliance with Patent Local Rule 3-4 at least as of July 23, 2015." *Id.* at 19. While Finjan disagrees with this representation because there remain deficiencies in PAN's document and source code production (*see, id.*, at 16, 24-25), at a

3

1  minimum, this is a concession by PAN that a significant amount of discovery has been accomplished
2  to date.  This further warrants against a continued stay.
3     A continued stay would also be highly prejudicial to Finjan.  Finjan filed this litigation over a
4  year and half ago on November 4, 2014.  Yet due to multiple continuances of the initial Case
5  Management Conference (CMC) since February 2015, followed by reassignment of this case in
6  October 2015, the initial CMC did not take place until over a year later on December 3, 2015.  Since
7  the initial CMC, the litigation has been stayed for over five months pending decision on the institution
8  of PAN's thirteen IPR petitions.  Given the lengthy delay that has already occurred in this case, it
9  would be highly prejudicial to Finjan and inefficient for the Court to continue to stay the entirety of the
10 case for yet another year (or even a year and a half) until the PTAB issues a final decision in the
11 pending IPRs for only a small fraction of the claims of the Asserted Patents.  37 C.F.R. § 42.100(c);
12 *see Davol Inc. v. Atrium Med. Corp.*, No. 12-958-GMS, 2013 WL 3013343, at *6 (D. Del. June 17,
13 2013) (denying motion to stay finding stay of litigation in entirety will "do little to advance" the
14 parties' dispute over the asserted patent that is not the subject of IPR and will not address numerous
15 other issues of infringement, damages, validity and defenses not the subject of the IPR).  And, if either
16 party appeals the PTAB's decision, the entire IPR proceedings could take years.  35 U.S.C. §§ 141(c),
17 319.
18    The prejudice here is particularly significant because PAN's intentional infringement without
19 license to Finjan's Asserted Patents has sent an inaccurate message to the market that Finjan's patents
20 are somehow invalid, and are of little value.  A continued stay of the entirety of Finjan's case will
21 affect any discussions Finjan has with potential licensees to the Asserted Patents who will use the
22 litigation as an excuse to decline any substantive discussions with Finjan until the litigation has
23 concluded.  *See Affinity Labs of Texas, LLC v. Nike, Inc*., No C-10-5543 CW, 2011 WL 1833122, at *2
24 (N.D. Cal. May 13, 2011) (denying motion to stay due to prejudice to Plaintiff's ability to enforce and
25 license its patents).  Courts have recognized that a stay is prejudicial when it has a "negative impact"
26 on the "ability to license the patents-in-suit."  *Intellectual Ventures I LLC v. Toshiba Corp*., No. 13-
27 453-SLR/SRF, 2015 WL 3773779, at *2 (D. Del. May 15, 2015) (citation omitted) (finding a stay
28

4

would be unduly prejudicial when patent licensing is a core aspect of plaintiff's business and there has been substantially delay in moving the parties' dispute forward); *see also Affinity Labs of Texas v. Apple Inc.*, Case No. 09-cv-04436 CW, 2010 WL 1753206, at *2 (N.D. Cal. Apr. 29, 2010) (denying stay when plaintiff's business will be harmed because it will not be able to "enforce and license its patents until the litigation is resolved").

In addition, Finjan currently offers mobile security products that practice a number of Finjan's patents, as well as security consulting services. *See Finjan, Inc. v. Blue Coat Systems, Inc*., 5:15-cv-03295-BLF (N.D. Cal.), Dkt. No. 35-4 at ¶ 3 (Declaration of Michael Kim, Finjan's Senior Intellectual Property Counsel, filed December 29, 2015).  Thus, Finjan and PAN are in direct competition selling software security products in the United States.  Finjan is engaged in ongoing development of products and filing for patents that cover such innovations.  *Id*., Dkt. No. 35-5 at 15 (Finjan's Form 10-Q SEC filing dated November 9, 2015) ("For example, on September 23, 2015 Finjan was issued U.S. Patent No. 9,141,786 (the '786 Patent) covering our new secure mobile browser application.").  Finjan's business of developing and offering software security products that embody its patented technology would incur substantial loss of profits and goodwill due to PAN's willful infringement of Finjan's patents.  *Unilin Beheer B.V. v. Tropical Flooring*, 2014 WL 2795360, at *8 (C.D. Cal. June 13, 2014)("The Court recognizes Plaintiffs' concern that Defendant will continue to sell its alleged infringing product during the stay, thereby resulting in substantial loss of profits and goodwill. This consideration weighs heavily against granting a stay."); *see also Asetek Holdings, Inc. v. Cooler Master Co.*, 2014 WL 1350813, at *5 (N.D. Cal. April 3, 2014)("Courts recognize that, when the parties are direct competitors, the risk of prejudice is higher to the non-moving party than it would be otherwise.") (citations omitted).  Further, because Finjan is seeking and entitled to injunctive relief against PAN, it would be unfairly prejudicial to continue to stay the case.  *See Acumed LLC v. Stryker Corp.*, 551 F.3d 1323, 1328 (Fed. Cir. 2008) ("The essential attribute of a patent grant is that it provides a right to exclude competitors from infringing the patent.").

For these reasons, Finjan respectfully requests the Court lift the stay given the PTAB's decisions on PANs IPR petitions.  Finjan proposes that after the Court lifts the stay, the parties propose

5

a joint schedule for the remainder of the case.

PAN's Position:

PAN requests that the stay remain in effect through the pendency of the instituted *inter partes* review ("IPR") proceedings. Final determination by the PTAB on PAN's instituted IPRs is expected by May 12, 2017.

All three factors warranting a stay in the first instance remain strongly in favor of a continued stay.[2] The case is indisputably in its infancy, a stay would significantly simply the issues in question and trial of the case, and Finjan would not be unduly prejudiced.

**Factor 1: Early Stage of Litigation**

Prior to the stay, it was Finjan that set the pace of the case at a crawl. Thus, despite what were PAN's best efforts to push the case forward prior to its filing IPRs, the case is still at a very early stage of litigation. Indeed, PAN has yet even to receive Finjan's infringement contentions. While Finjan points to the 199 claims that PAN challenged, this only highlights that Finjan has not identified which of the 285 claims across the ten asserted patents it alleges are infringed. Until Finjan provides its infringement contentions and the narrowing of claims that it promises to make, it will not be possible to say what percentage of ultimately asserted claims are subject to *inter partes* review.

**Factor 2: Simplification of Issues**

Even without the benefit of Finjan's infringement contentions, PAN diligently prepared and filed IPR petitions for all ten asserted patents. The PTAB granted institution of six of PAN's petitions on four of them (the '154, '408, '633, and '494 patents).[3] Those that were denied have provided clarifying claim constructions that have further narrowed the issues in this case. (*See, e.g.*, IPR2016-00165 ('780 patent), Paper 7 (PTAB April 21, 2016) (construing "performing a hashing function on

---

[2] Courts consider three main factors in determining whether to grant a stay pending IPR: "(1) whether discovery is complete and whether a trial date has been set; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party." *Evolutionary Intelligence, LLC v. Facebook, Inc.*, No. 13-cv-04202-SI, 2014 WL 261837, at *1 (N.D. Cal. Jan. 23, 2014).

[3] PAN is also considering filing motions for rehearing of certain PTAB decisions denying institution of PAN's IPRs. In the event PAN decides to file rehearing requests, the PTAB's trial practice guideline provides that "[t]he Board envisions that, absent a need for additional briefing by an opponent, requests for rehearing will be decided approximately one month after receipt of the request." (77 Fed. Reg. 48768 (Aug. 14, 2012).)

the Downloadable and the fetched software components to generate a Downloadable ID," "Downloadable," and "Downloadable ID"; IPR2016-00164 ('918 patent), Paper 7 (PTAB May 5, 2016) (narrowly construing "profile"); IPR2016-00149/IPR2016-00150 ('968 patent), Paper 11 (PTAB May 16, 2016) (construing "memory storing a cache of digital content" and "memory for storing a cache of digital content," "policy index," "content profile," and "dynamically generating a policy index").)[4]  Thus, the stay pending IPR proceedings has already streamlined issues, and the issues will undeniably be further streamlined as the pending IPR proceedings continue to final written decision.  If the stay is extended, a co-pending litigation may resolve invalidity challenges of at least three more patents not currently subject to IPR.[5]  Because the validity issues could be resolved for the majority of asserted patents by the time the PTAB enters final determinations on PAN's instituted IPRs, the case should be stayed until that time.  Such a stay would simplify the litigation and ensure that the parties and the Court do not waste resources on litigation matters that would be pointless to pursue.

**Factor 3:  No Undue Prejudice**

Finjan has no grounds to assert that it would be prejudiced by a stay it agreed to just five months ago.  *See* Dkt. No. 67.  In fact, prior to the stay, it was Finjan that took every opportunity to delay the case.  For instance, PAN made early productions of source code in March and April 2015 for products asserted in Finjan's Complaint in the hopes of obtaining detailed infringement contentions to better understand Finjan's claims.  PAN even sent follow-up letters reminding Finjan of the availability of PAN's source code.  For months, however, Finjan made no attempt to review PAN's source code.  After much effort, PAN got Finjan to agree to an October 22, 2015 due date for its infringement contentions.  But when the original October 8, 2015 case management conference was vacated, Finjan chose once again to delay providing them.  It is difficult to see how a stay through the pendency of PAN's instituted IPR proceedings, which conclude in less than one year, would prejudice

---

[4] *Ex parte* reexamination decisions for several of the patents have also included claim constructions that further clarified the scope of the asserted patents.  (*See, e.g.*, Reexamination Control No. 90/013,016 ('633 ex parte reexamination), May 22, 2015 Final Rejection (construing narrowly "determining" and "sandboxed package"); Reexamination Control No. 90/013,017 ('822 ex parte reexamination), Dec. 30, 2015 Board Decision (narrowly construing "determining" and "sandboxed package").)

[5] *Finjan, Inc. v. Sophos, Inc.*, 3:13-cv-1197 (N.D. Cal. 2014) is scheduled for trial in September 2016, and in addition to the '154 and '494 patents, will address the '780, '918, and '926 patents.

1  Finjan when Finjan itself chose not to provide infringement contentions for more than a year after
2  filings its complaint.
3        Finjan's argument that a continued stay and pending litigation would affect discussions with
4  potential licensees is without merit.  There are four other active co-pending litigations involving many
5  of the same patents.  In one of such co-pending litigation—*Finjan, Inc. v. Symantec Corp.*, 3:13-cv-
6  2998 (N.D. Cal.)— Finjan proposed a case schedule that puts trial in January 2018, more than eight
7  months after a final determination is expected in PAN's instituted IPR proceedings.  Accordingly, a
8  stay through the pendency of PAN's instituted IPRs should have little to no effect on any potential
9  licensee discussions, as there will be pending litigation regardless of this case.[6]
10       Finally, Finjan is not a direct competitor of PAN.  Finjan's so-called "Finjan Mobile Secure
11 Browser" is a free product from Finjan Holdings, Inc. that is wholly outside the firewall space where
12 PAN competes.  "Absent a showing that the parties are direct competitors and that the plaintiff's
13 competitive position would be prejudiced by a stay, courts generally find that a plaintiff 'does not risk
14 irreparable harm by [the defendant's] continued use of the accused technology and can be fully
15 restored to the *status quo ante* with monetary relief.'"  *Finjan, Inc. v. Symantec Corp.*, No 14-cv-
16 02998-HSG (JSC), 2015 WL 5915369, at *4 (N.D. Cal. Oct. 9, 2015).  Finjan has not and cannot make
17 this showing.
18       For these reasons, PAN requests that the stay remain in effect through the pendency of the
19 instituted IPR proceedings.  Notwithstanding the above, to the extent the Court is inclined to move
20 forward on any discrete issues, PAN requests that the Court rule on PAN's alternative motion for
21 partial judgment on the pleadings to dismiss Finjan's complaint with respect to the '780 and '494
22 patents under 35 U.S.C. § 101.  PAN also requests that the parties be allowed to file early summary
23 judgment motions in view of the PTAB's recent decisions in IPR and *ex parte* reexamination
24 proceedings.  As explained above, the PTAB's institution decisions and *ex parte* reexamination
25 decisions for several of the patents included claim constructions that further clarified the scope of the

---

27     [6] *Finjan, Inc. v. Blue Coat Systems, Inc.*, 5:15-cv-3295 (N.D. Cal.) is scheduled to go to trial in October 2017 and will also be pending at the time of the PTAB's expected final determinations in PAN's instituted IPR proceedings.

28                                     8

1  asserted patents.  Permitting expedited "rifle shot" summary judgment motions (e.g., on

2  noninfringement) for these patents would be helpful in further focusing and streamlining the case,

3  should a stay not be granted.

Respectfully submitted,

DATED:  May 23, 2016                    By: */s/ James Hannah*
                                          Paul Andre (State Bar. No. 196585)
                                          Lisa Kobialka (State Bar No. 191404)
                                          James Hannah (State Bar No. 237978)
KRAMER LEVIN NAFTALIS & FRANKEL LLP
990 Marsh Road
Menlo Park, CA  94025
Telephone: (650) 752-1700
Facsimile: (650) 752-1800
pandre@kramerlevin.com
lkobialka@kramerlevin.com
jhannah@kramerlevin.com

*Attorneys for Plaintiff*
FINJAN, INC.

Respectfully submitted,

DATED:  May 23, 2016                    By: */s/ Rudy Y. Kim*

Michael A. Jacobs (BAR NO. 111664)
Email: MJacobs@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Telephone:       (415) 268-7000
Facsimile: (415) 268-7522

Rudy Y. Kim (BAR NO. 199426)
Email: RKim@mofo.com
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, California 94304-1018
Telephone:       (650) 813-5600
Facsimile: (650) 494-0792

*Attorneys for Defendant*
PALO ALTO NETWORKS, INC.

9

JOINT STATUS REPORT                                                   Case No.: 4:14-CV-004908-PJH

In accordance with Civil Local Rule 5-1(i)(3), I attest that concurrence in the filing of this document has been obtained from any other signatory to this document.

By: */s/ James Hannah*
James Hannah (State Bar No. 237978)