Juanita R. Brooks (CA SBN 75934) / brooks@fr.com
Roger A. Denning (CA SBN 228998) / denning@fr.com
Frank J. Albert (CA SBN 247741) / albert@fr.com
K. Nicole Williams (CA SBN 291900) / nwilliams@fr.com
Jared A. Smith (CA SBN 306576) / jasmith@fr.com
Tucker Terhufen (CA SBN 311038) / terhufen@fr.com
FISH & RICHARDSON P.C.
12860 El Camino Real, Ste. 400
San Diego, CA 92130
Telephone: (858) 678-5070 / Fax: (858) 678-5099

Attorneys for Plaintiff,
FINJAN LLC

Michael A. Jacobs (CA SBN 111664)
MJacobs@mofo.com
Matthew A. Chivvis (CA SBN 251325)
MChivvis@mofo.com
Diek O. Van Nort (CA SBN 273823)
DVanNort@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Telephone: (415) 268-7000/Fax: (415) 268-7522

Attorneys for Defendant,
PALO ALTO NETWORKS, INC.

*Additional counsel on signature page*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

(OAKLAND DIVISION)

| | |
|---|---|
| FINJAN LLC, | Case No. 14-cv-04908-PJH |
| Plaintiff, | **JOINT CASE MANAGEMENT STATEMENT AND [PROPOSED] ORDER** |
| v. | |
| PALO ALTO NETWORKS, INC., | Hon. Phyllis J. Hamilton |
| Defendant. | Ctrm: 3, 3rd Floor |

Pursuant to Federal Rule of Civil Procedure 26(f), Civil Local Rule 16-9, Patent Local Rule 2-1(b), the Standing Order for All Judges of the Northern District of California – Contents of Joint Case Management Statement, and the January 25, 2021 Order Lifting Stay and Setting This Matter for CMC on March 18, 2021 (Dkt. No. 84), the parties to the above-titled action, Plaintiff Finjan LLC (formerly known as Finjan, Inc. and referred to herein as "Finjan" or "Plaintiff") and Defendant Palo Alto Networks, Inc. ("PAN" or "Defendant"), jointly submit the following Case Management Statement and Proposed Order.

PAN's Proposed Alternative to the Case Management Statement:  Alternatively, in light of the three Finjan cases with overlapping patents scheduled for trial this year (including two in this district) and other Finjan cases likely to have trial dates next year and to preserve the Court's and parties' resources, PAN requests the Court stay this case while those cases complete.  *See Finjan v. SonicWall*, No: 5:17-cv-04467-BLF (eight patents overlapping with the ten asserted patents here; trial dates set for May 3, 2021 to May 14, 2021); *Finjan v. Cisco*, No. 5:17-cv-00072-BLF (four patents overlapping with the ten asserted patents here; trial dates set for June 4, 2021 to June 18, 2021); *Finjan v. Rapid7*, No. 1:18-cv-0519-CJB (four patents overlapping with the ten asserted patents here; trial dates set for October 25, 2021 to November 1, 2021).  Facing similar circumstances, Judge Donato stayed *Fortinet* (six patents overlapping with the ten asserted patents here) pending resolution of overlapping issues in Finjan's other cases.  *Finjan v. Fortinet,* No. 3:18-cv-06555-JD, Dkt. No. 32 (Jan. 7, 2019); *Finjan v. Fortinet*, No. 3:18-cv-06555-JD, Dkt. No. 38 (Feb. 25, 2019).  He noted the unique circumstance of multiple active parallel litigations involving the same patents "may affect case management, and the efficient use of judicial and party resources." *Finjan v. Fortinet*, No. 3:18-cv-06555-JD, Dkt. No. 15 (Nov. 16, 2018).  Judge Donato stayed the case "to take advantage of" "doctrines of judicial efficiency." *Finjan v. Fortinet*, No. 3:18-cv-06555-JD, Dkt. No. 43 (Mar. 11, 2019).  PAN recommends that the Court do the same here.

Finjan's Response to PAN's Proposed Alternative:

From the start, PAN's strategy in this case has been to delay, and PAN's request for yet another stay is nothing but an attempt to deny Finjan its day in court.  Finjan filed this case in

2014, over six years ago.  For more than five of those years, nothing has happened, because PAN encouraged the Court to stay the litigation pending PAN's petitions for *inter partes* review, arguing that those IPRs "will simplify the litigation."  *See* PAN's Motion to Stay Litigation Pending Inter Partes Review, Dkt. 63 (at 9).  But despite filing 13 separate IPR petitions challenging 198 claims across 10 patents, PAN was able to invalidate only 3 claims in 1 patent, which hardly justifies the five years of delay.  Indeed, contrary to PAN's goal, the IPR rulings have demonstrated that Finjan's patents truly are valid and claim real inventions.

Unable to invalidate Finjan's patents, PAN's new tactic is to seek further delay under the guise of judicial efficiency, noting other pending Finjan cases.  But Finjan's case against PAN presents unique issues of infringement and damages that are independent from Finjan's other cases against other defendants.  Indeed, the only issues that could be common between the cases are claim construction and validity.  But claim construction is already complete in each of the three other cases scheduled for trial this year, so this Court can consider those decisions in construing the claim terms if it wishes.  And on validity, PAN already tried to invalidate Finjan's patents in its IPR petitions, but the PTAB found that PAN's challenges fell short on almost every single claim.  Moreover, as PAN explained in its motion to stay, "PAN will be estopped from relitigating invalidity issues addressed in the IPR proceedings as to any claims that survive."  *Id*. at 8.  PAN's request for a stay pending the outcome of the other cases is an attempted end run around that estoppel rule.  Finjan requests that the Court deny PAN's request to stay and proceed with setting a case schedule as discussed below.

### 1.    Jurisdiction and Service:

This is an action for patent infringement arising under 35 U.S.C. § 101 et seq.  The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b) and (c) and/or 1400(b).  No issues exist regarding personal jurisdiction or service.

### 2.    Facts:

<u>Finjan's Infringement Claims:</u>  Finjan filed this case over six years ago—on November 4, 2014—asserting the following ten (10) patents (collectively "the Patents-in-Suit"):

- U.S. Patent No. 6,804,780 ("the '780 Patent");
- U.S. Patent No. 6,965,968 ("the '968 Patent");
- U.S. Patent No. 7,058,822 ("the '822 Patent");
- U.S. Patent No. 7,418,731 ("the '731 Patent");
- U.S. Patent No. 7,613,918 ("the '918 Patent");
- U.S. Patent No. 7,613,926 ("the '926 Patent");
- U.S. Patent No. 7,647,633 ("the '633 Patent");
- U.S. Patent No. 8,141,154 ("the '154 Patent");
- U.S. Patent No. 8,225,408 ("the '408 Patent"); and
- U.S. Patent No. 8,677,494 ("the '494 Patent").

Finjan contends it holds all rights, title, and interest in the Patents-in-Suit.

Finjan's Complaint alleges that PAN has infringed and/or continues to infringe the Patents-in-Suit by making, using, selling, offering for sale and/or importing "products and services that utilize the Next Generation Enterprise Security Platform, App-ID, User-ID, Content-ID, Wildfire, Next-Generation Intelligence Cloud, and Targeted Remote Attack Prevention System ('TRAPS' also spelled as 'Traps')," including: "Next-Generation Security Platform, Next-Generation Firewall, Virtualized Firewall, WildFire Subscription, WildFire Platform, URL Filtering Subscription, Threat Prevention Subscription, and Advanced Endpoint Protection."  (Compl. (Dkt No. 1) ¶¶ 40, 57, 64, 81, 88, 103, 110, 122, 129, 144, 151).[1]

Finjan additionally alleges that PAN has induced and/or continues to induce infringement of the '780 Patent, the '968 Patent, the '822 Patent, the '731 Patent, the '918 Patent, the '926

---

[1] Specifically, Finjan contends that the following PAN products and technologies infringe the Patents-in-Suit:  PAN's Enterprise Security Platform and/or Next Generation Enterprise Security Platform; PAN's Next Generation Firewalls and PAN's Virtualized Firewalls; PAN's WildFire Security Subscription; PAN's Global Protect Security Subscription; PAN's Threat Prevention Security Subscription; PAN's Endpoint Protection and/or Advanced Endpoint Protection products; PAN's WildFire Databases (including, but not limited to, the "WF 2.0 Central DB," "Central DB," "Central Static DB," and "Local DB"); PAN's URL Filtering Database; and any and all products that use, employ, or leverage PAN's Targeted Remote Attack Prevention System technology (sometimes known as "TRAPS"), PAN's Content-ID technology, or PAN's WildFire technology.

1  Patent, the '633 Patent, the '408 Patent and the '494 Patent by instructing, directing and/or

2  requiring others to perform the steps of method claims of these patents.

3      Finjan seeks damages and injunctive relief for PAN's infringement, as well as a finding

4  that PAN's infringement has been willful and that this case is exceptional.

5      <u>PAN's Defenses and Counterclaims:</u>  PAN filed its answer to Finjan's complaint on

6  December 31, 2014, denying infringement and asserting affirmative defenses of non-infringement,

7  invalidity, judicial estoppel, prosecution history estoppel and disclaimer, prosecution laches,

8  ensnarement and prior art estoppel, adequate remedy at law, limitations on damages and 28 U.S.C.

9  § 1498.  Dkt. No. 27.  PAN also asserts counterclaims seeking declarations of non-infringement

10  and invalidity of the Patents-in-Suit.  PAN further seeks a finding of exceptional case.

11      On January 21, 2015, Finjan served its answer to PAN's counterclaims, denying

12  noninfringement and invalidity and asserting the affirmative defense of failure to state a claim

13  upon which relief may be granted.  Dkt. No. 32.

14      <u>Prior Case Management Conference and PAN's Motion to Stay:</u>  Following Judge Chen's

15  recusal (Dkt. No. 56), this case was assigned to Judge Hamilton on October 8, 2015 (Dkt. No. 57).

16  On October 15, 2015, the Court ordered a Case Management Conference to be held on November

17  5, 2015 (Dkt. No. 58), which the Court rescheduled for December 3, 2015, on joint motion of the

18  parties (Dkt. No. 61).  On November 25, 2015, the parties submitted a Joint Management

19  Conference Statement.  Dkt. No. 62.

20      Five days later, PAN filed a motion to stay the case based on thirteen petitions for *inter*

21  *partes* review relating to asserted patents that PAN filed with the United States Patent and

22  Trademark Office's Patent Trial and Appeal Board ("PTAB").  Dkt. No. 63.  Concurrent with the

23  motion to stay, PAN filed a motion for partial judgment on the pleadings of invalidity of the '780

24  and '494 Patents under 35 U.S.C. § 101.  *Id.*

25      At the Case Management Conference on December 3, 2015, the Court indicated it would

26  stay the case pending the PTAB's decisions on whether to institute PAN's IPRs and ordered PAN

27  to withdraw the motion for partial judgment on the pleadings.  Dkt. No. 65.  On December 10,

28  2015, the Court entered the Order staying the case and withdrawing the motion for partial

1   judgment on the pleadings.  Dkt. No. 67.  On May 23, 2016, the parties submitted a Joint Status

2   Report informing the Court that the PTAB had granted institution of six IPR petitions on four

3   asserted patents, but denied institution of seven IPR petitions on six asserted patents.  Dkt. No. 68.

4   Finjan requested the Court to lift the stay as to the six patents on which the PTAB denied

5   institution of the IPRs, while PAN requested the Court to leave the stay in place for all patents

6   through the pendency of the six instituted IPRs on the four asserted patents.  *Id.*  On May 26,

7   2016, the Court ordered the stay to remain in place as to all patents.  Dkt. No. 69.

8        The IPR Petitions:  The IPR proceedings and the subsequent appeals to the Federal Circuit

9   are now complete, as the parties reported in the Joint Status Report on December 28, 2020.  Dkt.

10  No. 68.  The chart below summarizes the results of the IPR proceedings for the ten asserted

11  patents.

| Asserted Patent | PAN IPR Petition | Claims Challenged | Claims Instituted | Claims Invalidated | Claims Surviving |
|---|---|---|---|---|---|
| '633 | IPR2015-01974 | 1-4, 6-8, 13, 14, 19, 28, 34 | 14, 19 | None[2] | 5-7, 9-10, 14-45 |
| '154 | IPR2015-01979 | 1-8, 10, 11 | 1-8, 10, 11 | None | All |
|  | IPR2016-00151 | 1-12 | 1-8, 10, 11 | None |  |
| '408 | IPR2015-02001 IPR2016-00157 (Consolidated) | 1, 3-7, 9, 12-16, 18-23, 29, 35 | 1, 3-7, 9, 12-16, 18-23, 29, 35 | None | All |
| '494 | IPR2016-00159 | 1-18 | 1-6, 10-15 | 1, 2, 6 | 3-5, 7-18 |
| '780 | IPR2016-00165 | 1-18 | None | None | All |
| '968 | IPR2016-00149 | 1-12, 24, 33-38 | None | None | All |
|  | IPR2016-00150 | 1-38 | None | None |  |
| '822 | IPR2015-01999 | 1, 4-6, 8, 9, 12, 16-20, 22, 24, 27 | None | None | All |
| '731 | IPR2015-02000 | 1-22 | None | None | All |
| '918 | IPR2016-00164 | 1-10, 12-19, 21, 34-36 | None | None | All |
| '926 | IPR2016-00145 | 1-5, 8-12, 15-19, 22-26, 29, 30 | None | None | All |

24        On joint request from the parties (Dkt. No. 83), the Court lifted the stay on January 25,

25  2021, and ordered the parties to submit this Joint Case Management Conference Statement (Dkt.

26  No. 84).

---

[2] In a separate IPR filed by Cisco Systems, Inc. (IPR2018-00391), the PTAB found claims 1-4, 8, and 11-13 of the '633 Patent to be unpatentable.

**3.     Legal Issues:**

The principal disputed legal issues are:

- The proper construction of any disputed claim terms;
- Whether PAN infringes any or all of the Patents-in-Suit, either directly (35 U.S.C. §271(a)) or indirectly (35 U.S.C. § 271(b));
- Whether the Patents-in-Suit are invalid (35 U.S.C. §§ 101, 102, 103, 112);
- Whether Finjan's claims are barred by any defense raised by PAN;
- Whether Finjan is entitled to damages as a result of the alleged infringement of any or all of the Patents-in-Suit, and if so, the amount (35 U.S.C. § 284);
- Whether Finjan is entitled to injunctive relief to prevent irreparable harm as a result of the alleged continuing infringement of any or all of the Patents-in-Suit (35 U.S.C. § 283);
- Whether PAN's alleged infringement has been willful;
- Whether this case is exceptional (35 U.S.C. § 285).

**4.     Motions:**

(a) <u>Pending Motions</u>

There are no currently pending motions.

(b) <u>Anticipated Motions</u>

Finjan and PAN each anticipate moving for summary judgment and may file other dispositive and non-dispositive motions as appropriate as the case progresses.

**5.     Amendment of Pleadings, Addition of Parties, Etc.**

The parties jointly propose that the deadline to amend pleadings without leave of the Court should be April 1, 2021.

**6.     Evidence Preservation:**

The parties have reviewed the Northern District of California's Guidelines for the Discovery of Electronically Stored Information ("ESI"), the Northern District of California's Model ESI Order, and Checklist for Rule 26(f) Meet and Confer Regarding ESI, including those portions related to evidence preservation.  Additionally, the parties have met and conferred at their Rule 26(f) conference and since that time regarding evidence preservation.  Each party has

1  implemented a litigation hold with respect to all ESI and hardcopy documents and media

2  identified as relevant to this action.

3      **7.      Disclosures:**

4      The parties exchanged initial disclosures pursuant to Rule 26(a) on February 12, 2015.

5  Given the time that has passed due to the stay, the parties jointly propose that the parties serve

6  amended initial disclosures by April 30, 2021.

7      **8.      Discovery:**

8      The parties met and conferred pursuant to Rule 26(f) on January 23, 2015.  Each party also

9  served its first sets of requests for production and interrogatories on the other party on January 23,

10  2015, and Finjan has since served additional requests for production and interrogatories on PAN.

11  Before the stay was entered, the parties produced some documents and provided some

12  interrogatory responses.  In addition, PAN has made some source code available to Finjan.  Finjan

13  conducted source code review before the stay was entered, and Finjan has resumed its source code

14  review now that the stay has been lifted.  Before the stay was entered, Finjan also served a Rule

15  30(b)(6) notice on PAN related to its source code, and Finjan took one deposition of a PAN

16  employee pursuant to certain topics of that notice.

17      Prior to the ordering of the stay, PAN also served subpoenas on third parties and some of

18  the third parties produced documents in response.

19      Pursuant to Rule 26(f) and paragraph 8 of the Standing Order for All Judges of the

20  Northern District of California – Contents of Joint Case Management Statement, the parties

21  propose the following discovery plan:

22          (a) Changes to the timing, form, or requirement for disclosures under Rule 26(a),
                including a statement of when initial disclosures were made or will be made.
23

24      As noted above, the parties exchanged initial disclosures pursuant to Rule 26(a) on

25  February 12, 2015, and the parties jointly propose exchanging amended initial disclosures by April

26  30, 2021.  The parties' respective proposals regarding the timing for expert disclosures under Rule

27  26(a)(2) and pretrial disclosures under Rule 26(a)(3) are set forth in the proposed schedule at

28  Section 17 (Appendix A) below.

1

> (b) Subjects on which discovery may be needed, when discovery should be completed, and whether discovery should be conducted in phases or be limited to or focused on particular issues.

2

3   The parties anticipate that the scope of discovery will encompass the factual and legal

4   issues identified in Sections 2 and 3 above, and the requested relief discussed in Section 11 below.

5   The parties' respective proposals regarding when discovery should be completed are set forth in

6   the proposed schedules in Section 17 (Appendix A) below.

7

> (c) Any issues about disclosure or discovery of electronically stored information, including the form or forms in which it should be produced.

8

9   The parties discussed discovery of ESI during their Rule 26(f) conference and during meet

10   and confer sessions since that time.  Prior to the stay ordered on December 10, 2015, the parties

11   met and conferred regarding ESI and had made progress on a stipulated ESI Order to address

12   discovery of ESI.  The parties have restarted discussions and will continue to meet and confer to

13   reach agreement on the terms of a proposed stipulated ESI Order.  The parties intend to file the

14   stipulated ESI Order (with competing provisions if necessary) by April 15, 2021.

15

> (d) Any issues about claims of privilege or of protection as trial-preparation materials, including — if the parties agree on a procedure to assert these claims after production — whether to ask the court to include their agreement in an order.

16

17

18   The parties agree that neither party will produce nor list on any privilege log any item

19   protected by any privilege, immunity, or protection that occurred or was/is created on or after the

20   filing date of this litigation.  Subject to the foregoing, the parties agree that issues of privilege or

21   work product shall be addressed as provided in the Federal Rules of Civil Procedure, Federal Rule

22   of Evidence 502 and the protective order and/or order regarding ESI entered in this action.

23

> (e) Changes that should be made in the limitations on discovery imposed under these rules or by local rule, and what other limitations should be imposed.

24

25   To the extent not limited below, and unless otherwise agreed to by the parties, the parties

26   agree that discovery is subject to the limitations set forth in the Federal Rules of Civil Procedure

27   and Local Rules of this Court and the ESI Order to be entered in this case.  If a party requests

28   discovery that exceeds any of the limitations set forth below, the parties agree to meet and confer

in a good faith to attempt to resolve the issue without intervention of the Court.  If the parties are unable to reach agreement, a party may seek leave from the Court for the additional discovery.

(i)      <u>Requests for Production of Documents and Things</u>

The parties agree that there shall be no limit on the number of requests for production of documents and things that each side may serve.

(ii)      <u>Interrogatories</u>

The parties agree that each side may serve up to 25 interrogatories.

(iii)      <u>Request for Admissions</u>

The parties agree that each side may serve up to 45 requests for admission.  Requests for admission related to the authentication of documents are exempt from this limitation and shall be unlimited in number.

(iv)      <u>Depositions</u>

*Fact Depositions:*

The parties agree that each side is limited to 84 hours of deposition time for fact depositions, including individual and Rule 30(b)(6) depositions of the other party as well as third party depositions.  Expert depositions will not count towards these limits.

The parties agree that individual depositions are limited to 7 hours of deposition time. While the 7 hour per witness limit does not apply to Rule 30(b)(6) witnesses, each deposition day will be limited to 7 hours.  Individual depositions requiring an interpreter are limited to 14 hours of deposition time and will be conducted on two consecutive days.  Individual and Rule 30(b)(6) depositions requiring an interpreter count as half time against the deposition limit.

*Expert Depositions:*

The parties agree that an expert witness may be deposed for up to 7 hours for each primary issue (*e.g.*, infringement, invalidity, damages) on which that expert has provided an opinion. Thus, if an expert provides an opinion regarding infringement as well as an opinion regarding invalidity, then that expert may be deposed for up to 7 hours regarding infringement and for up to 7 hours regarding invalidity, for a maximum total of 14 hours of deposition time.  The parties also agree to meet and confer in good faith in the period leading up to expert depositions regarding

whether adjustments to the default rule should be made in light of the issues that remain in the case and the number of Patents-in-Suit that the expert addresses.

(f)  Protective Order

The parties have produced and will be producing confidential information requiring entry of a protective order in this action.  Any confidential information produced prior to entry of a protective order has been and will continue to be subject to the Northern District of California model protective order for litigation involving patents (pursuant to Patent Local Rule 2-2).  Prior to the stay being ordered on December 10, 2015, the parties met and conferred and had made progress regarding a stipulated protective order based on the Northern District of California model protective order for litigation involving patents.  Upon the stay being lifted in January 25, 2021, the parties reached agreement and signed a COVID-19 Source Code Review Protocol.  The parties have also restarted discussions and will continue to meet and confer to reach agreement on the terms of a proposed stipulated protective order.  The parties intend to file the stipulated protective order (with competing provisions if necessary) by March 25, 2021.

(g)  Discovery from Experts

The parties agree that the Federal Rules of Civil Procedure (*e.g.*, Rule 26(b)(4)) and the Local Rules of this Court govern discovery from experts in this case.

(h)  Service

The parties agree that service via email is acceptable pursuant to Rule 5(b)(2)(E).  Documents served on a party shall be emailed to all attorneys of record for that party.[3]  The parties further agree to the following:

- Discovery Requests:  Service by email shall be deemed effective if served by 5 pm Pacific Time and if not, shall be deemed effective on the following day.
- Discovery Responses:  Service by email shall be effective on the calendar date served.  (For the sake of clarity, discovery responses may be served up to midnight Pacific Time on the last day on which the responses are due.)

---

[3] Service upon Finjan via email shall be effective only with Finjan-PAN_Fish-Service@fr.com. Service upon PAN via email shall be effective only with MoFo-PAN-Finjan@mofo.com.

**9.     Class Actions**

Not Applicable.

**10.     Related Pending Cases**

Information concerning other pending litigations and proceedings before the United States Patent and Trademark Office involving the Patents-in-Suit is provided at Appendix B.

**11.     Relief**

Finjan seeks entry of judgment finding that PAN has infringed and/or continues to infringe the Patents-in-Suit, both directly and indirectly, and that PAN's infringement has been willful. Finjan also seeks injunctive relief, including an injunction against PAN from infringing the Patents-in-Suit.  Finjan also seeks monetary damages, including damages based on a calculation of lost profits or an amount no less than a reasonable royalty, and Finjan anticipates it will seek no less than $100 million based on the publicly available information, up from $60 million reported in the last Joint Case Management Statement due to the damages continuing to accrue during the stay.  Finjan further seeks a judgment that this case is exceptional and an award of Finjan's costs and reasonable attorneys' fees.  Finjan also seeks an accounting of all sales and revenues, together with pre-judgment and post-judgment interest.  Finjan seeks any other relief available under applicable law.

PAN seeks a declaration that PAN does not infringe the Patents-in-Suit. PAN further seeks a declaration that the Patents-in-Suit are invalid. PAN also seeks judgment that Finjan filed this action without a good faith basis, and is thus liable for attorneys' fees, expenses, and costs incurred by PAN in connection with this action.

**12.     Settlement and ADR**

Pursuant to ADR L.R. 3-5, the parties reviewed the Court's ADR handbook, discussed the available ADR procedures and considered whether this case would benefit from an ADR procedure.  The parties chose mediation as the ADR process for this case pursuant to ADR L.R. 6. See Dkt. No. 35.  The mediation session took place on September 15, 2015 with mediator Vicki Veenker.

**13.     Consent to Magistrate Judge**

The parties do not consent to have a magistrate judge conduct all further proceedings including trial and entry of judgment.

**14.     Other References**

The parties do not believe that this case is suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.

**15.     Narrowing of Issues**

Discovery had largely just begun when the case was stayed.  Subject to the progression of discovery, the parties may be able to narrow certain issues via stipulated facts.

In addition, to streamline "the issues in this case to promote a 'just, speedy, and inexpensive determination' of this action, as provided by Federal Rule of Civil Procedure 1," the parties each provides a proposal below regarding the phased limits on asserted claims and prior art references to supplement all other discovery rules and orders.  A table summarizing the parties' respective case narrowing proposals is provided at Appendix C.  In addition, the parties agree on the provisions of the joint proposal listed first below.

Joint Proposal:

When identifying prior art references, PAN shall identify anticipatory references and obviousness combinations for each patent separately.  PAN shall indicate whether each reference is an anticipatory reference or obviousness combination.  If a reference is part of an obviousness combination, PAN shall set forth the combination.

Upon a showing of diligence, and with due consideration for prejudice, a party may seek to modify the limits on asserted claims and prior art references for good cause shown.  Any request to increase these limits must specifically show why the inclusion of additional asserted claims or prior art references is warranted.  *See In re Katz Interactive Call Processing Patent Litig.*, 639 F.3d 1303, 1312–13 (Fed. Cir. 2011).  A failure to seek such a modification will constitute acquiescence to the above limits on asserted claims and prior art references.

The parties and the Court may further narrow the issues during pretrial proceedings in order to present a manageable case at trial and to facilitate jury comprehension.

1

<u>Finjan's Additional Proposal:</u>

2

Finjan proposes the following schedule for the narrowing of issues in this case.

3

| Election | Timing | Limit |
|---|---|---|
| 1st Election of Asserted Claims | July 1, which is 45 days after the date by which PAN is required to provide invalidity contentions (PLR 3-3) and produce documents sufficient to show the operation of the accused instrumentalities (PLR 3-4) | No more than 50 patent claims |
| 1st Election of Asserted Prior Art | July 15, which is 14 days after the First Election of Asserted Claims | No more than 50 invalidity theories |
| 2nd Election of Asserted Claims | 21 days after the Claim Construction Order | No more than 40 patent claims |
| 2nd Election of Asserted Prior Art | 7 days after the Second Election of Asserted Claims | No more than 40 invalidity theories |
| 3rd Election of Asserted Claims | 10 days before opening expert reports are due | No more than 30 patent claims |
| 3rd Election of Asserted Prior Art | 5 days after the Third Election of Asserted Claims | No more than 30 invalidity theories |

Each time Finjan narrows its list of asserted claims, the new list shall be a subset of the claims identified in Finjan's most recent prior election of asserted claims. Likewise, each time PAN narrows its list of asserted invalidity theories, the new list shall be a subject of the invalidity theories identified in PAN's most recent prior election of prior art.

An invalidity theory is defined as an anticipatory reference or an obviousness combination of references. In any election, PAN may not identify obviousness combinations that were not specifically identified previously. For instance, if PAN identifies an obviousness combination in its First Election that includes 4 references, PAN may not identify a new obviousness combination in its Second Election that includes only a subset of those 4 references (unless that new combination was also specifically listed in the First Election). Also, in identifying invalidity theories, PAN must make clear as to which patent claim(s) that theory applies. Invalidity theories that consist of the same reference(s) asserted against claims in different patents count as separate invalidity theories for each patent. For example, if PAN asserts that a particular reference anticipates three claims in each of two patents, that would count as two invalidity theories (but not six).

1    With respect to claim construction, Finjan proposes no modification of this Court's

2 Standing Order that "the court will construe no more than ten terms."  Judge Hamilton's Standing

3 Order for Patent Cases, ¶3.

4    Finjan's Statement in Support of Its Additional Proposal:

5    As the Court knows from its Order granting substitution of counsel (Dkt. No. 100), Finjan

6 has new counsel on this case.  One of the first tasks the new counsel has undertaken has been a

7 review of the asserted patents with an eye towards narrowing the scope of this case.  To that end,

8 even before any of the proposed elections identified above, Finjan intends to substantially reduce

9 the number of asserted claims in its infringement contentions due on April 1, 2021.

10    Finjan's proposal for further narrowing asserted claims and prior art references is fair and

11 balanced.  First, Finjan's numerical limits are reasonable.  With ten Patents-in-Suit, Finjan would

12 be narrowing its list of asserted claims to an average of five claims per patent at the first election,

13 four claims per patent at the second election, and three claims per patent at the third election.  That

14 is a reasonable and workable limitation.

15    Second, Finjan's proposal provides parity by requiring the parties to identify the same

16 number of asserted claims as invalidity theories at each election (50, 40, then 30).  That parity is

17 particularly fair to PAN given that the use of a specific anticipation or obviousness theory against

18 multiple claims in the same patent counts as only one theory.  This Court has ordered parity

19 similar to what Finjan proposes here in other cases. See, e.g., *Finjan, Inc. v. Blue Coat, Inc.*, 5:13-

20 cv-03999-BLF, Dkt. No. 98 (ordering elections of the same number of asserted claims and

21 invalidity theories); *Finjan, Inc. v. Symantec Corp.*, 3:14-cv-02998, Dkt. No. 56 (ordering

22 elections of the same number of asserted claims and prior art references); *Finjan, Inc. v.*

23 *Websense, Inc.*, No. 13-cv-04398-BLF, Dkt. Nos. 88, 92.

24    Not only does PAN's proposal provide it more prior art references than it allows Finjan

25 asserted claims, but PAN's proposed definition of what counts as a single prior art reference is so

26 broad as to leave PAN virtually unbounded in identifying prior art.  PAN proposes:  "A prior art

27 instrumentality (such as a device or process) and associated references that describe that

28 instrumentality shall count as one reference, as shall the closely related work of a single prior

artist."  A single device may be described in dozens of references, and inventors frequently apply for many patents on the same product, but PAN's proposal would attempt to count all of those publications and patents as a single reference, provided they are "closely related" to the work of the artist.  That is not narrowing of the case in any sense.

With regard to schedule, Finjan's proposal (unlike PAN's) allows the parties to make informed decisions when reducing their claims and theories.  Finjan's first proposed election occurs 45 days after PAN provides its invalidity contentions pursuant to Patent Local Rule 3-3 and completes its production pursuant to Patent Local Rule 3-4.  That allows Finjan time to consider PAN's invalidity arguments and the product documentation before being required to narrow the number of asserted claims.  The Federal Circuit has specifically warned that "a claim selection order could come too early in the discovery process, denying the plaintiff the opportunity to determine whether particular claims might raise separate issues of infringement or invalidity in light of the defendants' accused products and proposed defenses." *In re Katz Interactive Call Processing Patent Litig.*, 639 F.3d 1303, 1313 n.9 (Fed. Cir. 2011); see also, *Thought, Inc. v. Oracle Corp.*, 2013 WL 5587559, at *3-4 (N.D. Cal., Oct. 10, 2013) (imposing limits on asserted claims only after "the parties have already exchanged infringement and invalidity contentions, preliminary claim constructions and core technical documents").

Moreover, Finjan's proposed first election (July 1, 2021) occurs after proposed claim constructions are exchanged (June 1, 2021) but before the joint claim construction and prehearing statement is filed (July 16, 2021).  In this way, each party can be informed regarding the other party's claim construction positions before making a first reduction.  At the same time, the first elections are made before the claim construction positions are submitted to the Court, thereby likely reducing the number of issues for claim construction.

Finjan's proposed second election 21 days after the claim construction order will allow the parties to focus their claims and theories in light of the Court's construction.

Finally, Finjan's third proposed reduction occurs after the close of fact discovery and before the exchange of opening expert reports.  That timing allows the parties to make decisions with the benefit of all of the depositions, documents and responses in fact discovery, and it will

make expert reports and the expert discovery that follows more focused and manageable.  A similar reduction schedule has been ordered in other cases. See, e.g., *Finjan, Inc. v. Proofpoint, Inc.*, et al., 5:13-cv-05808-HSG, Dkt. No. 198 (ordering first election of asserted claims and prior art to occur during claim construction negotiations, and ordering a second election of asserted claims and prior art references to occur 14 and 7 days before expert reports are due, respectively).

Finjan's proposed schedule is also consistent with the schedule Judge Freeman entered in Finjan's cases against Cisco and SonicWall in this district, as shown below:

| Election | Finjan's proposal | Finjan v. Cisco | Finjan v. SonicWall |
|---|---|---|---|
| First Election of Asserted Claims | July 1, 2021, which is 45 days after invalidity contentions | 43 days after invalidity contentions (Aug. 7-Sept. 18) | 46 days after invalidity contentions (May 25-July 9) |
| First Election of Asserted Prior Art | July 15, 2021, which is 14 days after first election of asserted claims | 15 days after first election of asserted claims (Sept. 18-Oct. 2) | 15 days after first election of asserted claims (July 9-July 23) |
| Second Election of Asserted Claims | 21 days after claim construction order | 28 days after claim construction order | 28 days after claim construction order |
| Second Election of Asserted Prior Art | 7 days after second election of asserted claims | 14 days after second election of asserted claims | 14 days after second election of asserted claims |
| Third Election of Asserted Claims | 10 days before opening expert reports | N/A | N/A |
| Third Election of Asserted Prior Art | 5 days after third election of asserted claims | N/A | N/A |

*See Finjan, Inc. v. Cisco Systems, Inc.*, No. 5:17-cv-00072-BLF, Dkt. No. 70 (p. 4) (Aug. 16, 2017); *Finjan, Inc. v. SonicWall, Inc*, No: 5:17-cv-04467-BLF, Dkt. No. 61 (pp. i-iii) (Feb. 1, 2018).

PAN's Additional Proposal:

PAN proposes the following schedule for the narrowing of issues in this case.

| Election | Timing | Limit |
|---|---|---|
| First Election of Asserted Claims | With Finjan's Infringement Contentions (Patent L.R. 3-1) | No more than 50 claims across all Patents-in-Suit |
| First Election of Asserted Prior Art | With PAN's Invalidity Contentions (Patent L.R. 3-3) | No more than 60 references across all Patents-in-Suit |

| Election | Timing | Limit |
|---|---|---|
| Second Election of Asserted Claims | Not later than 40 days after PAN's Invalidity Contentions (Patent L.R. 3-3) | No more than 32 claims across all Patents-in-Suit |
| Second Election of Asserted Prior Art | Not later than 14 days after the Second Election of Asserted Claims | No more than 40 references across all Patents-in-Suit |
| Third Election of Asserted Claims | Not later than 28 days after the Claim Construction Order | No more than 12 claims across all Patents-in-Suit |
| Third Election of Asserted Prior Art | Not later than 14 days after the Third Election of Asserted Claims | No more than 16 references across all Patents-in-Suit |

With its Infringement Contentions (Patent L.R. 3-1), Finjan shall serve a First Election of Asserted Claims, which shall assert no more than 50 claims across all Patents-in-Suit.  With its Invalidity Contentions (Patent L.R. 3-3), PAN shall serve a First Election of Asserted Prior Art, which shall assert no more than 60 prior art references across all Patents-in-Suit.

Not later than 40 days after the date by which PAN is required to provide Invalidity Contentions (Patent L.R. 3-3), Finjan shall serve a Second Election of Asserted Claims, which shall assert from the subset of claims previously identified no more than a total of 32 claims across all Patents-in-Suit.  Not later than 14 days after service of the Second Election of Asserted Claims, PAN shall serve a Second Election of Asserted Prior Art, which shall assert from the subset of prior art references previously identified no more than a total of 40 references across all Patents-in-Suit.

Not later than 28 days after the Court enters its Claim Construction Order, Finjan shall serve a Third Election of Asserted Claims, which shall assert from the subset of claims previously identified no more than a total of 12 claims across all Patents-in-Suit.  Not later than 14 days after service of the Third Election of Asserted Claims, PAN shall serve a Third Election of Asserted Prior Art, which shall assert from the subset of prior art references previously identified no more than a total of 16 references across all Patents-in-Suit.

A prior art instrumentality (such as a device or process) and associated references that describe that instrumentality shall count as one reference, as shall the closely related work of a single prior artist.

The parties will meet and confer prior to the Further Case Management Conference and propose additional limits on asserted claims and prior art references and a schedule for the same in the Joint Further Case Management Statement.

PAN's Statement in Support of Its Additional Proposal:

Finjan has asserted various combinations of the Patents-in-Suit and related patents in 24 cases over the last 15 years.  Through those cases, Finjan undoubtedly developed deep knowledge of the contours of each Patent-in-Suit and should be well equipped to substantially narrow its case from the outset.  Finjan's proposed narrowing does not streamline this case on an appropriate timetable.

Finjan's active related cases—which are listed in Appendix B—as well as its inactive cases include various combinations of the Patents-in-Suit.  Many of these cases have been heavily litigated, including through trial.  Three others, including two in this district, have trial dates set for later this year and two more could have trial dates next year.  *See Finjan v. SonicWall*, No: 5:17-cv-04467-BLF (trial dates set for May 3, 2021 to May 14, 2021); *Finjan v. Cisco*, No. 5:17-cv-00072-BLF (trial dates set for June 4, 2021 to June 18, 2021); *Finjan v. Rapid7*, No. 1:18-cv-0519-CJB (trial dates set for October 25, 2021 to November 1, 2021).  Recognizing that "multiple cases in this district in which the same Finjan patents and claims are asserted" creates the potential to simplify issues and streamline the case, Judge Donato even stayed the *Fortinet* case in order to allow the other cases to resolve and thereby further streamline the issues in the case against Fortinet.  *See Finjan v. Fortinet*, No. 3:18-cv-06555-JD, Dkt. Nos. 38 (Feb. 25, 2019); *Finjan v. Fortinet*, No. 3:18-cv-06555-JD, Dkt. No. 32 (Jan. 7, 2019).

As further explained below in its statement regarding Finjan's anticipated infringement contentions, Finjan has had a more than sufficient opportunity to analyze PAN products in view of the discovery that took place prior to the stay order in December 2015 and after the Court lifted the stay in January 2021.  Before the stay, Finjan had over nine months of access to PAN source

code, deposed a PAN witness on that code, and was less than two weeks away from serving its

infringement contentions.  PAN also notified Finjan in July 2015 that it had "completed its core

technical production on the accused products listed in response to Finjan's interrogatory No. 2."

After the Court lifted the stay, PAN renewed access to that code and has even committed to

providing code that goes beyond what it believes is the proper scope of the accused

instrumentalities in the spirit of cooperation and the amount of time that has passed during the

stay.  Accordingly, Finjan has had more than enough opportunity to determine which claims it

wants to pursue in this case.  There is no reason for Finjan to maintain dozens of claims that it

knows it will not ultimately pursue.

Finjan's proposal maintains the breadth of its case and does not do enough to streamline

the issues in view of the circumstances.  This case's narrowing schedule should reflect the

extensive experience and history that Finjan has had litigating each of the Patents-in-Suit, the

significant opportunity that Finjan has had to study and analyze PAN's source code and other

technical discovery, and the narrowing that has taken place in other Northern District of California

cases that Finjan brought.  Finjan cannot seriously argue that it cannot comply with PAN's

narrowing proposal.

Finjan's reliance on the narrowing schedule in its *Cisco* and *SonicWall* cases is misplaced.

Those scheduling orders came at the very start of those respective cases.  In contrast, here Finjan

has had over a year before the stay to investigate its case, was two weeks away from having to

serve its infringement contentions when the Court stayed the case, and has had more than five

years during the stay to revise its strategy in light of other cases and the IPRs.

Moreover, Finjan's own proposal does not even track the claim narrowing that took place

in those two cases.  Judge Freeman ordered Finjan to make elections of asserted claims that are

more limiting than what it has proposed here (First Election: 50 claims; Second Election: 40

claims).  *Finjan v. Cisco*, No. 5:17-cv-00072-BLF, Dkt No. 70 (p. 4) (Aug. 16, 2017) (First

Election: 32 claims; Second Election: 16 claims); *Finjan v. SonicWall*, No: 5:17-cv-04467-BLF,

Dkt No. 61 (p. iii) (Feb. 1, 2018) (First Election: 40 claims; Second Election: 20 claims).  In

another Finjan case in this district, Judge Alsup went further and ordered the parties to a "patent

showdown" where each party chose one claim to litigate, *i.e.*, for Finjan, its strongest patent claim and for Juniper, the patent claim it believed to be weakest. *Finjan v. Juniper*, No. 3:17-cv-05659-WHA, Dkt. No. 44 (Mar. 7, 2018). Even then, Finjan shifted its positions, *e.g.*, "[a]fter discovering its infringement theory covered only a minute portion of Juniper's revenue base, on the eve of trail [sic] Finjan flip flopped and came up with a new infringement theory, one which would capture more of Juniper's products and inflate the target revenue base," leading Judge Alsup to declare the case as exceptional and granting attorney's fees. *Finjan v. Juniper*, No. 3:17-cv-05659-WHA, Dkt. No. 648 (Jan. 9, 2021). By proposing just seven court days for trial, Finjan is acknowledging that they will not be taking anywhere near the ten Patents-in-Suit to trial. There is no reason for Finjan not to start narrowing its case now.

Regarding narrowing of the invalidity case, PAN's proposal regarding the use of "prior art references" rather than "invalidity theories," as Finjan proposes, is identical to what Judge Freeman ordered in the *Cisco* and *SonicWall* cases, and verbatim with the Federal Circuit Model Order Limiting Excess Claims and Prior Art. This theory-based argument has been put forth by Finjan and rejected in multiple instances, and yet again, Finjan attempts to do the same here, *i.e.*, create a prejudicial asymmetry between Finjan's infringement case, which is not limited by theories, and PAN's invalidity case. *Finjan v. Cisco*, No. 5:17-cv-00072-BLF, Dkt No. 70 (p. 4) (Aug. 16, 2017) (adopting defendant's position that "[a] prior art instrumentality (such as a device or process) and associated references that describe that instrumentality shall count as one reference, as shall the closely related work of a single prior artist"); *Finjan v. SonicWall*, No: 5:17-cv-04467-BLF, Dkt No. 61 (p. iii) (Feb. 1, 2018) (same). PAN therefore contends that the same clarifying language used in those cases as well as the Federal Circuit Model should be used regarding how a "prior art instrumentality" is to be counted in the proper reference-based narrowing. *See id.*

Given Finjan's understanding of the PAN products, its extensive experience and understanding of its own Patents-in-Suit, and the discovery available to Finjan to date, PAN's narrowing proposal is more than reasonable in streamlining the issues and avoiding unnecessary costs. PAN is also committed to the proportional narrowing that it must do to its invalidity case.

**16.    Expedited Schedule**

The parties do not propose that this case proceed under the Expedited Trial Procedure of General Order No. 64 Attachment A.

**17.    Scheduling**

The parties' respective scheduling proposals are set forth in the chart attached hereto as Appendix A.  The parties' respective case narrowing schedules are set forth in Section 15 and the table at Appendix C.

**18.    Trial**

The parties have requested trial by jury.  Finjan expects that the trial will require approximately seven to ten court days.  PAN believes it is premature to estimate the time for trial, as the parties do not yet know how many patents and patent claims will be asserted at trial.  If Finjan maintains all of the Patents-in-Suit in this case, PAN estimates the trial will take no less than three weeks.

**19.    Disclosure of Non-party Interested Entities or Persons.**

The parties have filed Certifications of Interested Entities or Persons pursuant to Civil Local Rule 3-15. Dkt. No. 3 (Finjan's certification); Dkt. No. 25 (PAN's certification).

Finjan was recently converted from a corporation to a limited liability company, and in conjunction, changed its name from Finjan, Inc. to Finjan LLC.  Finjan has filed an unopposed motion to amend the caption to reflect that name change.  The company of which Finjan is a wholly owned subsidiary also recently went through a similar conversion and changed its name from Finjan Holdings, Inc. to Finjan Holdings LLC.  Finjan has filed an updated Certification of Interested Parties or Persons to reflect that name change, as well.  Finjan confirms that Finjan LLC is wholly-owned by Finjan Holdings LLC, and no publicly held corporation owns 10% or more of Finjan LLC's stock.

PAN confirms that no other entities have a financial interest in the subject matter in controversy or PAN, or a non-financial interest in that subject matter or PAN that could be substantially affected by the outcome of this proceeding.

20.     **Professional Conduct**

The attorneys of record confirm that they have reviewed the Guidelines for Professional Conduct for the Northern District of California.

21.     **Other Matters**

Pursuant to Patent Local Rule 2-1(b), the parties have also met and conferred regarding the following additional matters:

**(1) Proposed modification of the obligations or deadlines set forth in the Patent Local Rules**

The parties do not propose any modifications to the obligations or deadlines set forth in the Patent Local Rules at this time.

**(2) The scope and timing of any claim construction discovery including disclosure of and discovery from any expert witness permitted by the court**

The parties' proposed schedule (Section 17, Appendix A) addresses the timing of claim construction discovery. At this time, the parties do not anticipate a need to limit the scope of claim construction discovery.

**(3) The format of the Claim Construction Hearing, including whether the Court will hear live testimony, the order of presentation, and the estimated length of the hearing**

The parties understand that "the claim construction hearing will generally be scheduled for no longer than 3 hours on Wednesday's law and motion calendar" and the parties will request additional time if warranted pursuant to Paragraph 11 of Judge Hamilton's Standing Order for Patent Cases.  The parties agree that each side will be allocated half of the total time permitted for the hearing.  The parties agree that the presentation of argument at the hearing should be in the manner and order that the Court prefers to address the issues, particularly given the nature of the Patents-in-Suit, the technology involved and the number and nature of claim terms that remain in dispute at the time of the hearing.  PAN proposes proceeding term-by-term, rather than patent by patent, with Finjan proceeding first and PAN second, with rebuttal by Finjan and sur-rebuttal by PAN.  Finjan proposes grouping the terms in a logical manner, and doing so once the parties have identified the terms for construction.  If helpful for the Court, Finjan anticipates that it will seek to present live expert witness testimony at the claim construction hearing and tutorial.  PAN reserves

1    the right to present live expert witness testimony at the claim construction hearing and any

2    tutorial.

3         **(4) How the parties intend to educate the court on the technology at issue**

4            The parties understand that the Court will schedule a tutorial regarding the technology at

5    issue prior to the claim construction hearing in accordance with Paragraph 6 of Judge Hamilton's

6    Standing Order for Patent Cases.

7         **(5) Specificity of Finjan's infringement contentions**

8            PAN's Statement:

9            Finjan has a history of providing deficient infringement contentions even when it has been

10   afforded the opportunity to review the source code underlying the accused products.  "Where the

11   accused instrumentality includes computer software based upon source code made available to the

12   patentee, the patentee must provide 'pinpoint citations' to the code identifying the location of each

13   limitation." *Tech. Licensing Corp. v. Grass Valley USA, Inc.*, No. 3:12–cv–06060–PSG, 2014 WL

14   3752108, at *2, n.14 (N.D. Cal. July 30, 2014) (citing *Big Baboon Corp. v. Dell, Inc.,* 723 F.

15   Supp. 2d 1224, 1228 (C.D. Cal. 2010)).  Particularly, the patentee is "obligat[ed] to identify the

16   particular claim components in each claim, map those components onto the features of the

17   allegedly infringing products, and pinpoint cite source code that practices that

18   component." *Finjan, Inc. v. Check Point Software Tech., Inc.*, 2019 WL 955000, at *6 (N.D. Cal.

19   Feb. 27, 2019).  Finjan has time and time again failed to satisfy this requirement.  Other courts in

20   this district have therefore ordered Finjan to provide pinpoint citations to source code and

21   technical documents to show "where" and "how" each limitation of each asserted claim is found

22   within each underlying instrumentality.  *Finjan, Inc. v. Check Point Software Tech., Inc.*, No. 18-

23   cv-02621-WHO, 2019 WL 955000, at *6 (N.D. Cal. Feb. 27, 2019); *see also Finjan, Inc. v.*

24   *Proofpoint*, Inc., No. 13–cv–05808–HSG, 2015 WL 1517920, at *9 (N.D. Cal. Apr. 2, 2015)

25   (holding that infringement contentions did not satisfy Patent Local Rule 3-1 where Finjan "failed

26   to describe how the product literature cited in its infringement contentions mapped onto the

27   specific claim language of the asserted patent"); *Finjan, Inc. v. Sophos, Inc.*, No. 14–cv–01197–

28   WHO, 2015 WL 5012679, at *2-3, *4 (N.D. Cal. 2015) (requiring pinpoint citations to source

code in amended contentions where further source code review was required, including both direct

infringement and infringement under the doctrine of equivalents);; *Finjan, Inc. v. SonicWall, Inc.*,

No. 17-cv-04467-BLF (VKD), 2019 WL 6493967, at *6 (N.D. Cal. Dec. 3, 2019) (holding that

Finjan must revise its infringement contentions to eliminate new theories of infringement which

were no properly disclosed); *Finjan, Inc. v. SonicWall, Inc.*, No.17-cv-04467-BLF (VKD), 2019

WL 2077849, at *16 (N.D. Cal. May 10, 2019) (denying Finjan's request to depose defendant

30(b)(6) witness prior to disclosing specific infringement theories, and granting defendant request

for Finjan to provide more specific source code related infringement contentions); *Finjan, Inc. v.*

*Blue Coat Sys., Inc.*, No. 13–cv–03999–BLF, 2015 WL 3640694 (N.D. Cal. June 11, 2015)

(granting in part defendant's motion to strike portions of Finjan's expert report which advanced

new theories which were not disclosed in its infringement contentions, in violation of the N.D.

Cal. Patent local rules); *Finjan, Inc. v. Check Point Software Techs., Inc.*, No. 18-cv-02621-WHO,

2020 WL 1929250, at *7 (N.D. Cal. Apr. 21, 2020) (denying motion for interlocutory review of

order striking a number of infringement contentions which had been previously amended for

failing to particularly describe source code with the necessary specificity).

Given that PAN has already made its source code and technical documents available for

over ten months, PAN requests that the Court order that Finjan describe how the product literature

and source code cited in its infringement contentions map onto the specific claim language of the

asserted patent claims, including pinpoint citations to the product literature and source code.

Finjan should not be surprised by this request as PAN has repeatedly highlighted this issue.

Prior to the stay in December 2015, on March 4, 2015 and April 10, 2015, PAN provided notice to

Finjan that PAN's source code was available for inspection.  On April 14, 2015 and May 11, 2015,

PAN sent letters to Finjan reminding Finjan of the availability of PAN's source code and stating

its expectation that Finjan's infringement contentions would be sufficiently detailed with pinpoint

citations to source code.  On September 1, 2015, in light of then recent court orders granting

motions to strike Finjan's infringement contentions in related Finjan cases, PAN reiterated its

expectation that Finjan's infringement contentions would be sufficiently detailed and

particularized.  On September 10, 2015, Finjan inquired for the first time about the format of

PAN's source code and whether PAN would make certain log information available for inspection.  In meet and confers, PAN confirmed that PAN had long ago made its source code information available for review.  PAN then produced a Rule 30(b)(6) witness to testify regarding the manner in which PAN's source code is organized and the identities and organization of source code components and modules.  Prior to the Court ordering the stay in December 2015, the deadline for Finjan to serve its infringement contentions was less than two weeks away.

After the Court lifted the stay in January 2021, PAN has worked diligently to accommodate Finjan's continued review of PAN's source code.  On February 23, 2021, Finjan began its re-review of PAN's source code, and its review is ongoing.  On March 4, 2021, PAN further agreed in the spirit of cooperation to allow Finjan to review newer versions of PAN's source code, even though PAN maintains that this source code does not fall within the scope of accused instrumentalities.  In view of Finjan's extensive access to PAN's source code (over ten months in total) and its Rule 30(b)(6) deposition on PAN's code, the Court should order Finjan to describe how the product literature and source code cited in its infringement contentions map onto the specific claim language of the asserted patent claims, including pinpoint citations to the product literature and source code.

Finjan's Statement:

Finjan—and its new counsel—intend to comply fully with the requirements of Patent Local Rule 3-1 in providing Finjan's infringement contentions in this case.  "[A]ll courts agree that the degree of specificity under [Patent] Local Rule 3-1 must be sufficient to provide reasonable notice to the defendant why the plaintiff believes it has a 'reasonable chance of proving infringement.'" *Shared Memory Graphics LLC v. Apple, Inc.*, 812 F. Supp. 2d 1022, 1025 (N.D. Cal. 2010) (quoting *View Eng'g, Inc. v. Robotic Vision Sys., Inc.*, 208 F.3d 981, 986 (Fed. Cir. 2000)).  The Patent Local Rules do not "require the disclosure of specific evidence nor do they require a plaintiff to prove its infringement case," but "a patentee must nevertheless disclose what in each accused instrumentality it contends practices each and every limitation of each asserted claim to the extent appropriate information is reasonably available to it." *DCG Sys. v. Checkpoint Techs.*, LLC, No. 11-cv-03792-PSG, 2012 WL 1309161, at *2 (N.D. Cal. Apr. 16, 2012).

1    In support of its proposal, PAN cites to the *Check Point* case as an example of a court

2  requiring pinpoint citations to source code.  *Finjan, Inc. v. Check Point Software Techs., Inc.*, No.

3  18-cv-02621-WHO, 2020 WL 1929250, at *10 (N.D. Cal. Apr. 21, 2020).  But while the *Check*

4  *Point* court did order Finjan to provide pinpoint citations to source code, that was based not on

5  Patent Local Rule 3-1, but instead on a specific narrowing order unique to that case.  *Id.*  The court

6  specifically stated, "The Narrowing Order was a *tailored* order made in light of the facts; it was

7  not simply an order directing compliance with the Patent Local Rules."  *Id.*  There is no basis for

8  such a requirement in this case.

9    To the extent PAN's request seeks to impose a standard higher than that required by Patent

10  Local Rule 3-1, Finjan submits the Court should deny PAN's request as premature, speculative

11  and unfounded.  Finjan intends to include citations to PAN's source code and documentation in its

12  infringement contentions.  Indeed, far from delaying, Finjan requested access to PAN's source

13  code even before the stay was lifted in this case, and Finjan's expert's review of the source code is

14  ongoing.  Finjan also has requested that PAN update its source code production to include new

15  versions of the accused products and, in some instances, PAN's production of source code has

16  been incomplete, and Finjan has had to request PAN to make additional source code available.

17  Finjan believes PAN will have no basis to complain about its infringement contentions after they

18  are served on April 1, 2021, but if PAN contends the contentions do not comply with Patent Local

19  Rule 3-1, PAN can file a motion at that time.

20    The rest of PAN's statement on this issue is simply an attempt to paint Finjan in a bad

21  light, but that discussion is both irrelevant and inaccurate.  For example, in *Sophos*, the court

22  characterized Sophos' motion to strike Finjan's infringement contentions as "essentially a

23  discovery dispute," and that the appropriate resolution was for "Sophos to provide Finjan

24  additional guidance regarding its source code, and for Finjan to provide amended contentions."

25  *Finjan, Inc. v. Sophos, Inc.*, No. 14–cv–01197–WHO, 2015 WL 5012679, at *3-*4 (N.D. Cal.

26  Aug. 24, 2015).  And in *Blue Coat*, the issue was not whether Finjan's infringement contentions

27  were sufficiently specific, but whether Finjan's expert's report included theories that were not

28  disclosed in the contentions.  *Finjan, Inc. v. Blue Coat Sys., Inc.*, No. 13–cv–03999–BLF, 2015

1   WL 3640694 (N.D. Cal. June 11, 2015).  Indeed, in denying in part Blue Coat's motion, the court

2   noted that, "[w]hile greater specificity is certainly preferable, the Patent Local Rules do not require

3   perfect clarity, only reasonable notice that is 'as specific as possible' given the information of

4   which a plaintiff is aware."  *Id*. at 4.  Finjan's infringement contentions in this case will provide

5   PAN with sufficient specificity to comply with Patent Local Rule 3-1.

6

7   Dated:  March 11, 2021                    Respectfully Submitted,

8                                            */s/ Roger A. Denning*
                                             Juanita R. Brooks (CA SBN 75934)
9                                            brooks@fr.com
                                             Roger A. Denning (CA SBN 228998)
10                                           denning@fr.com
                                             Frank J. Albert (CA SBN 247741)
11                                           albert@fr.com
                                             K. Nicole Williams (CA SBN 291900)
12                                           nwilliams@fr.com
                                             Jared A. Smith (CA SBN 306576)
13                                           jasmith@fr.com
                                             Tucker Terhufen (CA SBN 311038)
14                                           terhufen@fr.com
                                             FISH & RICHARDSON P.C.
15                                           12860 El Camino Real, Ste. 400
                                             San Diego, CA 92130
16                                           Telephone: (858) 678-5070 / Fax: (858) 678-5099
17

18                                           Aamir Kazi (*Pro Hac Vice*)
                                             kazi@fr.com
19                                           Lawrence Jarvis (*Pro Hac Vice*)
                                             jarvis@fr.com
20                                           FISH & RICHARDSON P.C.
                                             1180 Peachtree St. NE, 21st floor
21                                           Atlanta, GA  30309
                                             Telephone: (404) 892-5005 / Fax: (404) 892-5002
22

23                                           Phillip W. Goter (*Pro Hac Vice*)
                                             goter@fr.com
24                                           FISH & RICHARDSON P.C.
                                             3200 RBC Plaza, 60 South Sixth Street
25                                           Minneapolis, MN  55402
                                             Telephone: (612) 335-5070 / Fax: (612) 288-9696
26

27

28

Susan E. Morrison (*Pro Hac Vice*)
morrison@fr.com
FISH & RICHARDSON P.C.
222 Delaware Ave., 17th Floor
P.O. Box 1114
Wilmington, DE  19801
Telephone: (302) 652-5070 / Fax: (302) 652-0607

Tracea Rice (*Pro Hac Vice*)
trice@fr.com
FISH & RICHARDSON P.C.
1000 Maine Ave. Ste. 1000
Washington, DC 20024
Telephone: (202) 783-5070 / Fax: (202) 783-2331


Attorneys for Plaintiff FINJAN LLC

1                    Respectfully Submitted,

2                    */s/ Colette Reiner Mayer*

3                    Michael A. Jacobs (CA SBN 111664)
MJacobs@mofo.com

4                    Matthew A. Chivvis (CA SBN 251325)
MChivvis@mofo.com

5                    Diek O. Van Nort (CA SBN 273823)
DVanNort@mofo.com

6                    MORRISON & FOERSTER LLP

7                    425 Market Street
San Francisco, California 94105-2482

8                    Telephone: (415) 268-7000/Fax: (415) 268-7522

9                    Rudy Y. Kim (CA SBN 99426)
RudyKim@mofo.com

10                 Colette Reiner Mayer (CA SBN 263630)
CRMayer@mofo.com

11                 MORRISON & FOERSTER LLP

12                 755 Page Mill Road
Palo Alto, California 94304-1018

13                 Telephone: (650) 813-5600/Fax: (650) 494-0792

14                 Eric W. Lin (*Pro Hac Vice*)
Elin@mofo.com

15                 Michael J. DeStefano (*Pro Hac Vice*)
Mdestefano@mofo.com

16                 MORRISON & FOERSTER LLP

17                 250 West 55th Street
New York, New York 10019-9601

18                 Telephone: (212) 468-8000/Fax: (212) 468-7900

19

20                 Attorneys for Defendant
PALO ALTO NETWORKS, INC.

21

22

23

24

25

26

27

28

## ATTESTATION PURSUANT TO CIVIL L.R. 5-1(i)

In accordance with Civil Local Rule 5-1(i)(3), I attest that concurrence in the filing of this document has been obtained from any other signatory to this document.

/s/ Roger A. Denning
Roger A. Denning

**Appendix A:**

**Proposed Case Schedule**

| Event | Applicable rule or order | Agreed Date | Finjan's Proposed Date | PAN's Proposed Date |
|---|---|---|---|---|
| Initial Disclosures | Rule 26(a)(1) | February 12, 2015 | | |
| Initial Case Management Conference | Dkt. No. 84 | March 18, 2021 | | |
| Last day to join parties or amend the pleadings without leave of Court | Rule 15 | April 1, 2021 | | |
| Disclosure of Asserted Claims and Infringement Contentions; Document Production Accompanying Disclosure | Pat. L.R. 3-1, 3-2<br><br>Not later than 14 days after the Initial Case Management Conference | April 1, 2021 | | |
| Amended Initial Disclosures | Rule 26(a)(1) | April 30, 2021 | | |
| Invalidity Contentions; Document Production Accompanying Invalidity Contentions | Pat. L.R. 3-3, 3-4<br><br>Not later than 45 days after service upon it of the "Disclosure of Asserted Claims and Infringement Contentions" | May 17, 2021 | | |
| Exchange of Proposed Terms for Construction | Pat. L.R. 4-1<br><br>Not later than 14 days after service of the "Invalidity Contentions" pursuant to Patent L. R. 3-3 | June 1, 2021 | | |
| Exchange of Preliminary Claim Construction and Extrinsic Evidence | Pat. L.R. 4-2<br><br>Not later than 21 days after the exchange of the | June 22, 2021 | | |

| Event | Applicable rule or order | Agreed Date | Finjan's Proposed Date | PAN's Proposed Date |
|-------|--------------------------|-------------|------------------------|---------------------|
| | lists pursuant to Patent L.R. 4-1 | | | |
| Damages Contentions | Pat. L.R. 3-8<br><br>Not later than 50 days after service of the "Invalidity Contentions" pursuant to Patent L.R. 3-3 | July 6, 2021 | | |
| Joint Claim Construction and Prehearing Statement | Pat. L.R. 4-3<br><br>Not later than 60 days after service of the "Invalidity Contentions" | July 16, 2021 | | |
| Responsive Damages Contentions | Pat L.R. 3-9<br><br>Not later than 30 days after service of the "Damages Contentions" pursuant to Patent L.R. 3-8 | August 5, 2021 | | |
| Completion of Claim Construction Discovery (including depositions of experts who submitted declarations in support of claim construction positions) | Pat. L.R. 4-4<br><br>Not later than 30 days after service and filing of the Joint Claim Construction and Prehearing Statement | August 16, 2021 | | |
| Claim Construction Briefs – opening brief | Pat. L.R. 4-5(a)<br><br>Not later than 45 days after serving and filing the Joint Claim Construction and Prehearing Statement | August 30, 2021 | | |

| Event | Applicable rule or order | Agreed Date | Finjan's Proposed Date | PAN's Proposed Date |
|---|---|---|---|---|
| | Judge Hamilton's Standing Order for Patent Cases, ¶ 8<br><br>At least six weeks before the date of the claim construction hearing | | | |
| Claim Construction Briefs – responsive brief | Pat. L.R. 4-5(b)<br><br>Not later than 14 days after service upon it of an opening brief | September 13, 2021 | | |
| Claim Construction Briefs – reply brief | Pat. L.R. 4-5(c)<br><br>Not later than 7 days after service upon it of a responsive brief | September 20, 2021 | | |
| Claim Construction Tutorial | Judge Hamilton's Standing Order for Patent Cases, ¶ 6<br><br>Two to four weeks prior to the claim construction hearing | September 29, 2021 (subject to the convenience of the Court's calendar) | | |
| Claim Construction Hearing | Pat. L.R. 4-6<br><br>Subject to the convenience of the Court's calendar, two weeks following submission of the reply brief specified in Patent L.R. 4-5(c) | October 13, 2021 (subject to the convenience of the Court's calendar) | | |
| Further Case Management Conference | Judge Hamilton's Standing Order for Patent Cases, ¶ 12 | Set upon issuance of the claim construction order (subject to the convenience of | | |

| Event | Applicable rule or order | Agreed Date | Finjan's Proposed Date | PAN's Proposed Date |
|---|---|---|---|---|
| | | the Court's calendar) | | |
| Close of fact discovery[4] | | | January 10, 2022 | August 9, 2022 |
| Opening expert reports | | | January 17, 2022 | September 13, 2022 |
| Rebuttal expert reports | | | January 31, 2022 | October 18, 2022 |
| Close of expert discovery | | | February 14, 2022 | November 22, 2022 |
| Opening summary judgement briefs | | | February 28, 2022 | January 6, 2023 |
| Responsive summary judgment briefs | | | March 14, 2022 | January 27, 2023 |
| Reply summary judgement briefs | | | March 21, 2022 | February 10, 2023 |
| Summary judgment hearings | Judge Hamilton's Pretrial Instruction<br><br>No later than 120 days before trial, unless leave of court is obtained for another deadline | | April 11, 2022 (subject to the convenience of the Court's calendar) | March 2, 2023 (subject to the convenience of the Court's calendar) |
| Final Pretrial Conference | | | July 13, 2022 (subject to the convenience of the Court's calendar) | June 1, 2023 (subject to the convenience of the Court's calendar) |
| Trial | | | August 15, 2022 (subject to the convenience | June 29, 2023 (subject to the convenience of the Court's calendar) |

[4] The "Standing Order for All Judges of the Northern District of California—Contents of Joint Case Management Statement," paragraph 17, requires the parties to provide "[p]roposed dates for designation of experts, discovery cutoff, hearing of dispositive motions, pretrial conference and trial." Accordingly, the parties have proposed competing dates through trial, but the parties understand that dates for the hearing on dispositive motions, the final pretrial conference and the trial are all subject to the Court's availability and convenience, and that the Patent Local Rules do not provide for dates beyond the claim construction hearing.

| Event | Applicable rule or order | Agreed Date | Finjan's Proposed Date | PAN's Proposed Date |
|-------|--------------------------|-------------|------------------------|---------------------|
|       |                          |             | of the Court's calendar) |                   |

1

2

### Appendix B:
### Other Pending Proceedings Involving The Patents-in-Suit

3      On July 1, 2016, Finjan filed a lawsuit against ESET, LLC et al. in this district, and on

4  January 27, 2017, the case was transferred to the United States District Court for the Southern

5  District of California (Case No. 3-17-cv-00183), alleging that ESET infringes one of the ten

6  patents asserted against PAN in the instant lawsuit—specifically the '780 patent—along with five

7  other patents.  This case is pending before the Honorable Cathy Ann Bencivengo.  Trial in this

8  case began in March 2020, but before it could be completed, Judge Bencivengo declared a mistrial

9  due to the COVID-19 pandemic.  No new trial date has been set.

10      On January 6, 2017, Finjan filed a patent infringement complaint against Cisco Systems,

11  Inc. in this district (Case No. 5-17-cv-00072), alleging that Cisco infringes four of the ten patents

12  asserted against PAN in the instant lawsuit—specifically the '780 patent, the '633 patent, the '154

13  patent, and the '494 patent—and one additional patent.  This case is pending before the Honorable

14  Beth Labson Freeman in the San Jose Division.  Trial is scheduled to begin on June 4, 2021.

15      On August 4, 2017, Finjan filed a lawsuit against SonicWall, Inc. in this district (Case No.

16  5-17-cv-04467), alleging that SonicWall infringes eight of the ten patents asserted against PAN in

17  the instant lawsuit—specifically the '780 patent, the '968 patent, the '822  patent, the '926 patent,

18  the '633 patent, the '154 patent, the '408 patent, and the '494 patent—along with two additional

19  patents, though Finjan has subsequently withdrawn the '822 patent and the '633 patent.  This case

20  is pending before the Honorable Beth Labson Freeman in the San Jose Division.  Trial is

21  scheduled to begin on May 3, 2021.

22      On September 29, 2017, Finjan filed a lawsuit against Juniper Networks, Inc. in this

23  district (Case No. 3-17-cv-05659), alleging that Juniper infringes seven of the ten patents asserted

24  against PAN in the instant lawsuit—specifically the '780 patent, the '731 patent, the '926 patent,

25  the '633 patent, the '154 patent, the '408 patent, and the '494 patent—and two additional patents.

26  Following a determination that Juniper did not infringe the '780, '154 and '494 patents, claims

27  under the other patents were dismissed with prejudice.  The non-infringement determination was

28

confirmed on appeal.  Post-judgment proceedings are pending before the Hon. William Alsup in the San Francisco Division.

On October 1, 2018, Finjan filed a lawsuit against Rapid7, Inc. et al. in the United States District Court for the District of Delaware (Case No. 1-18-cv-01519), alleging that Rapid7 infringes four of the ten patents asserted against PAN in the instant lawsuit—specifically the '918 patent, the '154 patent, the '408 patent, and the '494 patent—and three additional patents. This case is pending before the Honorable Christopher J. Burke.  Trial is scheduled to begin on October 25, 2021.

On October 26, 2018, Finjan filed a lawsuit against Fortinet, Inc. in this district (Case No. 3-18-cv-06555), alleging that Fortinet infringes six of the ten patents asserted against PAN in the instant lawsuit—specifically the '968 patent, the '822 patent, the '731 patent, the '633 patent, the '408 patent, and the '494 patent—and three additional patents.  This case is pending before the Honorable James Donato in the San Francisco division and is currently stayed.

On November 29, 2018, Finjan filed a lawsuit against Qualys, Inc. in this district (Case No. 4-18-cv-07229), alleging that Qualys infringes five of the ten patents asserted against PAN in the instant lawsuit—specifically the '968 patent, the '731 patent, the '154 patent, the '408 patent, the '494 patent—and two additional patents, though Finjan has subsequently withdrawn the '968 patent and the '154 patent.  This case is pending before the Honorable Yvonne Gonzalez Rogers in the Oakland division.  No trial date has been set.

On March 6, 2020, Finjan filed a lawsuit against Trustwave Holdings, Inc. et al. in the United States District Court for the District of Delaware (Case No. 1-20-cv-00371), alleging that Trustwave infringes one of the ten patents asserted against PAN in the instant lawsuit, specifically the '154 patent.  This case is pending before the Honorable Leonard P. Stark in the Wilmington division.  No trial date has been set.

## Appendix C:
## Summary of Narrowing Proposals

| Event | Finjan's Proposal | PAN's Proposal |
|---|---|---|
| First Election of Asserted Claims | July 1, 2021 (45 days after PAN is required to provide invalidity contentions pursuant to Patent Local Rule 3-3 and product documents pursuant to Patent Local Rule 3-4)<br><br>No more than 50 claims | With Finjan's Infringement Contentions (Patent L.R. 3-1)<br><br>No more than 50 claims across all Patents-in-Suit |
| First Election of Asserted Prior Art | July 15, 2021 (14 days after First Election of Asserted Claims)<br><br>No more than 50 invalidity theories | With PAN's Invalidity Contentions (Patent L.R. 3-3)<br><br>No more than 60 references[5] across all Patents-in-Suit |
| Second Election of Asserted Claims | 21 days after Claim Construction Order<br><br>No more than 40 claims | Not later than 40 days after PAN's Invalidity Contentions (Patent L.R. 3-3)<br><br>No more than 32 claims across all Patents-in-Suit |
| Second Election of Asserted Prior Art | 7 days after Second Election of Asserted Claims<br><br>No more than 40 invalidity theories | Not later than 14 days after the Second Election of Asserted Claims<br><br>No more than 40 references across all Patents-in-Suit |
| Third Election of Asserted Claims | 10 days before opening expert reports are due<br><br>No more than 30 claims | Not later than 28 days after the Claim Construction Order<br><br>No more than 12 claims across all Patents-in-Suit |
| Third Election of Asserted Prior Art | 5 days after Third Election of Asserted Claims<br><br>No more than 30 invalidity theories | Not later than 14 days after the Third Election of Asserted Claims<br><br>No more than 16 references across all Patents-in-Suit |

---

[5] A prior art instrumentality (such as a device or process) and associated references that describe that instrumentality shall count as one reference, as shall the closely related work of a single prior artist.

1

## CASE MANAGEMENT ORDER

2

3        The above Joint Case Management Statement AND PROPOSED ORDER is approved as

4   the Case Management Order for this case and the parties shall comply with its provisions.

5        **IT IS SO ORDERED.**

6

7   Dated: _____

8                                              _____

9                                              United States District Court Judge
                                               Honorable Phyllis J. Hamilton

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28