Juanita R. Brooks (CA SBN 75934) / brooks@fr.com
Roger A. Denning (CA SBN 228998) / denning@fr.com
K. Nicole Williams (CA SBN 291900) / nwilliams@fr.com
Frank J. Albert (CA SBN 247741) / albert@fr.com
Jared A. Smith (CA SBN 306576) / jasmith@fr.com
Tucker N. Terhufen (CA SBN 311038) / terhufen@fr.com
FISH & RICHARDSON P.C.
12860 El Camino Real, Ste. 400
San Diego, CA 92130
Telephone: (858) 678-5070 / Fax: (858) 678-5099

Susan Morrison (*Pro Hac Vice*) / morrison@fr.com
FISH & RICHARDSON P.C.
222 Delaware Avenue, 17th Floor
P.O. Box 1114
Wilmington, DE 19801
Telephone: (302) 652-5070 / Fax: (302) 652-0607

Additional counsel listed on signature page

Attorneys for Plaintiff, FINJAN LLC

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| FINJAN LLC,<br><br>                    Plaintiff,<br><br>        v.<br><br>PALO ALTO NETWORKS, INC.,<br><br>                    Defendant. | Case No. 14-cv-04908-PJH<br><br>**FINJAN LLC'S AMENDED COMPLAINT FOR PATENT INFRINGEMENT**<br><br>**DEMAND FOR JURY TRIAL**<br><br>Hon. Phyllis J. Hamilton<br>Ctrm: 3, 3rd Floor |

## AMENDED COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Finjan LLC (f/k/a Finjan, Inc.) ("Finjan") files this Complaint for Patent Infringement and Jury Demand against Defendant Palo Alto Networks, Inc. ("Defendant" or "Palo Alto Networks") and alleges as follows:

## THE PARTIES

1.      Finjan is a Delaware limited liability company, with its principal place of business at 2000 University Avenue, Suite 600, East Palo Alto, California 94303. Finjan's U.S. operating business was previously headquartered at 2025 Gateway Place, San Jose, California 95110.

2.      Palo Alto Networks is a Delaware corporation with its principal place of business at 3000 Tannery Way, Santa Clara, California 95054.

## JURISDICTION AND VENUE

3.      This action arises under the Patent Act, 35 U.S.C. § 101 *et seq*. This Court has original jurisdiction over this controversy pursuant to 28 U.S.C. §§ 1331 and 1338.

4.      Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b) and (c) and/or 1400(b).

5.      This Court has personal jurisdiction over Defendant. Upon information and belief, Defendant does business in this District and has, and continues to, infringe and/or induce the infringement in this District. Defendant also markets its products primarily in and from this District.  Palo Alto Networks availed itself of the jurisdiction of Northern California in *Palo Alto Networks, Inc. v. Juniper Networks, Inc.*, 5:13-cv-4510 (PSG), case. In addition, the Court has personal jurisdiction over Defendant because it has established minimum contacts with the forum and the exercise of jurisdiction would not offend traditional notions of fair play and substantial justice.

**INTRADISTRICT ASSIGNMENT**

6.      Pursuant to Local Rule 3-2(c), Intellectual Property Actions are assigned on a district-wide basis.

**FINJAN'S INNOVATIONS**

7.      Finjan was founded in 1997 as a wholly-owned subsidiary of Finjan Software Ltd., an Israeli corporation.  Finjan was a pioneer in developing proactive security technologies capable of detecting previously unknown and emerging online security threats recognized today under the umbrella of "malware."  These technologies protect networks and endpoints by identifying suspicious patterns and behaviors of content delivered over the Internet.  Finjan has been awarded numerous patents covering its innovations in the United States and around the world resulting directly from Finjan's more than decade-long research, $65 million investment, and development efforts, supported by a dozen inventors.

8.      Finjan built and sold software, including application programing interfaces, and appliances for network security using these patented technologies.  These products and customers of such products continue to be supported by Finjan's licensing partners.  At its height, Finjan employed nearly 150 employees around the world building and selling security products and operating the Malicious Code Research Center through which it frequently published research regarding network security and current threats on the Internet.  Finjan's pioneering approach to online security drew equity investments from two major software and technology companies, the first in 2005, followed by the second in 2006.  Through 2009, Finjan had generated millions of dollars in product sales and related services and support revenues.

9.      Until it was privately acquired in July of 2020, Finjan's founder and original investors were still involved with and invested in the company.  Finjan is currently a technology company that applies its know-how and intellectual property derived from its research, development, knowledge, and experience with security technologies to evaluate and enter into strategic partnerships with other companies in the security space.

10.      On October 12, 2004, U.S. Patent No. 6,804,780 ("the '780 Patent"), entitled SYSTEM AND METHOD FOR PROTECTING A COMPUTER AND A NETWORK FROM

HOSTILE DOWNLOADABLES, was issued to Shlomo Touboul.  A true and correct copy of the '780 Patent is attached to this Complaint as Exhibit 1 and is incorporated by reference herein.

11.     All rights, title, and interest in the '780 Patent have been assigned to Finjan, which is the sole owner of the '780 Patent.  Finjan has been the sole owner of the '780 Patent since its issuance.

12.     The '780 Patent is generally directed towards methods and systems for generating a Downloadable ID.  By generating an identification for each examined Downloadable, the system may allow for the Downloadable to be recognized without reevaluation.  Such recognition increases efficiency while also saving valuable resources, such as memory and computing power.

13.     On August 26, 2008, U.S. Patent No. 7,418,731 ("the '731 Patent"), entitled METHOD AND SYSTEM FOR CACHING AT SECURE GATEWAYS, was issued to Shlomo Touboul. A true and correct copy of the '731 Patent is attached to this Complaint as Exhibit 2 and is incorporated by reference herein.

14.     All rights, title, and interest in the '731 Patent have been assigned to Finjan, who is the sole owner of the '731 Patent. Finjan has been the sole owner of the '731 Patent since its issuance.

15.     The '731 Patent is generally directed towards methods and systems for enabling policy-based cache management to determine if digital content is allowable relative to a policy. One of the ways this is accomplished is scanning digital content to derive a content profile, including at least one computer command the content would perform, and determining whether the digital content is allowable for a policy based on the content profile.

16.     On November 3, 2009, U.S. Patent No. 7,613,926 ("the '926 Patent"), entitled METHOD AND SYSTEM FOR PROTECTING A COMPUTER AND A NETWORK FROM HOSTILE DOWNLOADABLES, was issued to Yigal Mordechai Edery, Nimrod Itzhak Vered, David R. Kroll, and Shlomo Touboul. A true and correct copy of the '926 Patent is attached to this Complaint as Exhibit 3 and is incorporated by reference herein.

17.     All rights, title, and interest in the '926 Patent have been assigned to Finjan, which is the sole owner of the '926 Patent. Finjan has been the sole owner of the '926 Patent since its issuance.

18.     The '926 Patent generally covers a method and system for protecting a computer and a network from hostile downloadables. The claims generally cover performing hashing on a downloadable in order to generate a downloadable ID, retrieving security profile data, and transmitting an appended downloadable.

19.     On January 12, 2010, U.S. Patent No. 7,647,633 ("the '633 Patent"), entitled MALICIOUS MOBILE CODE RUNTIME MONITORING SYSTEM AND METHODS, was issued to Yigal Mordechai Edery, Nimrod Itzhak Vered, David R. Kroll, and Shlomo Touboul. A true and correct copy of the '633 Patent is attached to this Complaint as Exhibit 4 and is incorporated by reference herein.

20.     All rights, title, and interest in the '633 Patent have been assigned to Finjan, who is the sole owner of the '633 Patent. Finjan has been the sole owner of the '633 Patent since its issuance.

21.     The '633 Patent is generally directed towards computer networks, and more particularly, provides a system that protects devices connected to the Internet from undesirable operations from web-based content. One of the ways this is accomplished is by determining whether any part of such web-based content can be executed and then trapping such content and neutralizing possible harmful effects using mobile protection code.

22.     On March 20, 2012, U.S. Patent No. 8,141,154 ("the '154 Patent"), entitled SYSTEM AND METHOD FOR INSPECTING DYNAMICALLY GENERATED EXECUTABLE CODE, was issued to David Gruzman and Yuval Ben-Itzhak. A true and correct copy of the '154 Patent is attached to this Complaint as Exhibit 5 and is incorporated by reference herein.

23.     All rights, title, and interest in the '154 Patent have been assigned to Finjan, who is the sole owner of the '154 Patent. Finjan has been the sole owner of the '154 Patent since its issuance.

24. The '154 Patent is generally directed towards a gateway computer for protecting client computer from dynamically generated malicious content. One way this is accomplished is to use a content processor to process a first function and invoke a second function if a security computer indicates that it is safe to invoke the second function.

25. On July 17, 2012, U.S. Patent No. 8,225,408 ("the '408 Patent"), entitled METHOD AND SYSTEM FOR ADAPTIVE RULE-BASED CONTENT SCANNERS, was issued to Moshe Rubin, Moshe Matitya, Artem Melnick, Shlomo Touboul, Alexander Yermakov, and Amit Shaked. A true and correct copy of the '408 Patent is attached to this Complaint as Exhibit 6 and is incorporated by reference herein.

26. All rights, title, and interest in the '408 Patent have been assigned to Finjan, who is the sole owner of the '408 Patent. Finjan has been the sole owner of the '408 Patent since its issuance.

27. The '408 Patent is generally directed towards network security and, in particular, rule-based scanning of web-based content for a variety of exploits written in different programming languages. One of the ways this is accomplished is by expressing the exploits as patterns of tokens.  Additionally, the system provides a way to analyze these exploits by using a parse tree.

28. On March 18, 2014, U.S. Patent No. 8,677,494 ("the '494 Patent"), entitled MALICIOUS MOBILE CODE RUNTIME MONITORING SYSTEM AND METHODS, was issued to Yigal Mordechai Edery, Nimrod Itzhak Vered, David R. Kroll, and Shlomo Touboul. A true and correct copy of the '494 Patent is attached to this Complaint as Exhibit 7 and is incorporated by reference herein.

29. All rights, title, and interest in the '494 Patent have been assigned to Finjan, who is the sole owner of the '494 Patent. Finjan has been the sole owner of the '494 Patent since its issuance.

30. The '494 Patent is generally directed towards a method and system for deriving security profiles and storing the security profiles. The claims generally cover deriving a security

FINJAN'S AMENDED COMPLAINT FOR PATENT INFRINGEMENT

profile for a downloadable, which includes a list of suspicious computer operations, and storing the security profile in a database.

## PALO ALTO NETWORKS

31.     Palo Alto Networks makes, uses, sells, offers for sale, and/or imports into the United States and this District products and services that utilize the Next Generation Enterprise Security Platform, App-ID, User-ID, Content-ID, WildFire, Next-Generation Intelligence Cloud, and Targeted Remote Attack Prevention System ("TRAPS" also spelled as "Traps"), including but not limited to, Next-Generation Security Platform, Next-Generation Firewall, Virtualized Firewall, WildFire Subscription, WildFire Platform, URL Filtering Subscription, Threat Prevention Subscription, and Advanced EndPoint Protection.

32.     Palo Alto Networks' products fall under the umbrella of Next-Generation Security Platform, which is also known as Next-Generation Enterprise Security Platform. This Next-Generation Security Platform is an ecosystem consisting of four segments of products including Cloud, Network, Security Subscriptions, and Endpoint. The Cloud segment consists of WildFire, Palo Alto Network Next-Generation Threat Intelligence Cloud, WildFire Cloud, or Wild Fire Next-Generation Threat Intelligence Cloud and is integrated into all Palo Alto Networks security products. The Network segment consists of the Next-Generation Firewall and Virtualized Firewall products.  The Subscription segment consists of Threat Prevention, URL Filtering, Global Protect and WildFire Subscription. The Endpoint segment consists of the Advanced Endpoint Protection products. Shown below is a diagram of Palo Alto Networks Next-Generation Security platform:

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



http://investors.paloaltonetworks.com/phoenix.zhtml?c=251350&p=irol-irhome (attached as Exhibit 8).

33.   In addition to the Next-Generation Threat Intelligence Cloud technology Palo Alto Networks Next Generation Firewall Technology consists of App-ID, User-ID, Content-ID, and WildFire.

34.   App-ID identifies applications that traverse a network which is the first task that Palo Alto Networks Next-Generation Firewall executes. App-ID can use up to four different techniques to identify the application. These include application signatures, SSL and SSH Decryption, Application Protocol Decoding, and Heuristics. When traffic first enters the network, App-ID applies an initial policy check based on IP protocol and port. Signatures are then applied to the traffic to identify the application based on application properties and related transaction characteristics. If the traffic is encrypted and a decryption policy is in place, the application is first decrypted, then application signatures are applied. Additional context-based signature analyses are then performed to identify re-encrypted content before being sent back into the network. For evasive applications that cannot be identified through advanced signature and protocol analysis, heuristics or behavioral analyses are used to determine the identity of the application. When an application is accurately identified during this series of successive techniques, the policy check determines how to treat the application and associated functions.

FINJAN'S AMENDED COMPLAINT FOR PATENT INFRINGEMENT

The policy check can block the application, allow it and scan for threats, inspect it for unauthorized file transfer and data patterns, or shape its use of network resources by applying a quality-of-service policy. *See* https://www.paloaltonetworks.com/resources/techbriefs/app-id-techbrief.html, (attached as Exhibit 9) and Palo Alto Networks Form 10-K at 5-6 (attached as Exhibit 10).

35.     User-ID integrates with directories and terminal service to identify users and groups and ties them to policies. Different events can be used to map the user's identity which include, but are not limited to, authentication events, user authentication, terminal services monitoring, client probing, directory services and XML Application Programming Interface. User-ID agent communicates with the domain controllers, directories, or supported enterprise applications, mapping information such as user, role, and current IP address to the firewall, making the policy integration transparent. In cases where user repository information does not include the current IP address of the user, a transparent, captive portal authentication or challenge/response mechanism can be used to tie users to the security policy. In cases where a user repository or application is in place that already has knowledge of users and their current IP address, a standards-based application programming interface can be used to tie the repository to its platform. *See* https://www.paloaltonetworks.com/resources/techbriefs/user-id-tech-brief.html (attached as Exhibit 11); Palo Alto Networks Form 10-K at 5-6 (attached as Exhibit 10).

36.     Content ID is a collection of technologies that enable multiple Palo Alto Networks subscription services. Content ID combines a Threat Prevention engine, URL filtering, and file and data filtering. The Threat Prevention engine is mainly comprised of anti-malware/anti-spyware and an Intrusion Protection System ("IPS"). The anti-malware will scan a packet when it is first received looking for a variety of executables, PDF files, HTML, and JavaScript viruses. The anti-spyware will also block attempts from spyware trying phone-home or beacon out to external command and control servers. There are various levels of protection than can be applied to the spyware security policy.  Threat Prevention may also be combined with the cloud based WildFire engine to additionally detect unknown and targeted malware that

FINJAN'S AMENDED COMPLAINT FOR PATENT INFRINGEMENT

may have no known signatures. The IPS protects against vulnerability exploits, buffer overflows, DoS attacks and port scans. IPS portion of Threat Prevention has protocol decoders and anomaly detection, stateful pattern matching, statistical anomaly detection, heuristic-based analysis, invalid or malformed packet detection, IP defragmentation and TCP reassembly, and custom vulnerability and spyware phone-home signatures. *See* https://www.paloaltonetworks.com/resources/techbriefs/content-id-tech-brief.html (attached as Exhibit 12) and Getting_Started_Guide_PAN-OSv5.0_revC.pdf (attached as Exhibit 13).

37.     Wildfire is Palo Alto Networks' cloud-based protection feature that is sold on a subscription basis and is also the name for a technology that benefits nearly all the Palo Alto Networks products. Wildfire can also be known as WildFire Next-Generation Threat Intelligence Cloud or just Next-Generation Threat Intelligence Cloud. Wildfire may also be platform based in lieu of cloud based which utilizes the WF-500 appliance.

38.     One function of Wildfire is to identify malware by observing the behavior of the suspect file instead of relying solely on pre-existing signatures. Palo Alto Networks' firewalls are configured to send files to Wildfire based on the policy. Whenever a file is transferred over a session that matches a security rule with a forwarding profile, the firewall checks with WildFire to see if the file is new. If the file is new, the firewall automatically forwards the file to WildFire, even if it is contained within a ZIP file or over compressed HTTP. The firewall can also be configured to forward files inside of decrypted SSL sessions. When WildFire receives the file, it analyzes it in its virtualized sandbox to determine if the file exhibits signs of malicious behaviors, changes to browser security settings, injection of code into other processes, modification of files in the Windows system folder, or domains that the sample may have visited. Once WildFire completes the analyses, detailed forensics report is generated that summarizes the activities performed by the sample on the host and the network and automatically assigns a verdict of malware or benign. In addition, when the WildFire engine identifies a sample as malware, it passes it to the WildFire signature generator, which automatically generates a signature based on the malware payload of the sample. WildFire is also part of the WildFire Next-Generation Threat Intelligence Cloud's intelligence which

informs the protections of Palo Alto Networks other security services for all customers. See

https://www.paloaltonetworks.com/content/dam/paloaltonetworks-

com/en_US/assets/pdf/whitepapers/whitepaper-wildfire.pdf (attached as Exhibit 14). Shown

below is a diagram depicting the WildFire cloud:



https://www.paloaltonetworks.com/content/dam/paloaltonetworks-

com/en_US/assets/pdf/whitepapers/threat-visibility-for-government-networks.pdf (attached as

Exhibit 15).

      39.    Palo Alto Networks deploys the REST Management Application Programming

Interface. The XML-based REST Application Programming Interface is provided as a web

service that is implemented using HTTP/HTTPS requests and responses. The Application

Programming Interface allows access to several types of data in order to be integrated with and

used in other systems. The different Application Programming Interface requests that can be

done are Key Generation, Device Configuration, Operational Commands, Commit

Configuration, Reporting, Exporting files, Importing files, Retrieving logs, and Set or Get User-

ID mapping. The User-ID Application Programming Interface /Mapping allows one to import

user data for external sources.  This can include user defined scripts as well as partner

FINJAN'S AMENDED COMPLAINT FOR PATENT INFRINGEMENT

1   integrations. *See* https://live.paloaltonetworks.com/docs/DOC-4126 (attached as Exhibit 16)

2   and https://live.paloaltonetworks.com/docs/DOC-5939 (attached as Exhibit 17).

3      40.   Targeted Remote Attack Prevention System ("TRAPS" also spelled as "Traps")

4   in Advanced Endpoint Protection protects endpoint through the use a series of exploit

5   prevention modules aimed at mitigating and blocking different exploit techniques. When an

6   application is opened, TRAPS injects prevention modules into the process. The TRAPS will

7   also collect detailed forensics and report that information. TRAPS will also query the WildFire

8   threat cloud with a hash to determine if the file is malicious, benign, or unknown within the

9   global threat community. Shown below is a flow chart of the process TRAPS uses:



18   https://www.paloaltonetworks.com/resources/datasheets/endpoint-protection.html (attached as

19   Exhibit 18).

20      41.   Further, as stated in Palo Alto Networks' SEC filings, TRAPS is technology that

21   Palo Alto Networks acquired from the company, Cyvera Ltd. ("Cyvera"). Palo Alto Networks

22   completed an acquisition of Cyvera on April 9, 2014 for approximately $177,647,000 in cash

23   and stock. Palo Alto Networks has been and is currently integrating Cyvera's technology into

24   its own product lines, including those mentioned above.

25   http://investors.paloaltonetworks.com/phoenix.zhtml?c=251350&p=irol-sec (attached as

26   Exhibit 19) and http://investors.paloaltonetworks.com/phoenix.zhtml?c=251350&p=irol-irhome

27   (attached as Exhibit 8).

42.     Over the years since this case was filed in 2014, Palo Alto Networks has updated its security platform names, marketing strategies, and product groupings, but the underlying product offerings and their general operation have remained largely the same. Palo Alto Networks now breaks its network security products into three main categories: (1) Strata; (2) Prisma; and (3) Cortex.  Palo Alto Networks makes, uses, sells, offers for sale, and/or imports into the United States and this District at least the following products and services.

43.     The Strata family of products generally pertains to network security, and includes at least the following products that Palo Alto Networks describes as follows:

- CN-Series ("A containerized NGFW that prevents sophisticated network-based threats from spreading across Kubernetes namespace boundaries."), *see* *https://www.paloaltonetworks.com/products/products-a-z* (attached as Exhibit 20);

- DNS Security ("A cloud-delivered service that applies predictive analytics to disrupts attacks that use DNS for C2 or data theft as they occur."), *see id.*;

- GlobalProtect ("Network security client for endpoints that protects mobile users, regardless of location."), *see id.*;

- IOT Security ("The industry's only complete IoT security product with visibility, prevention and enforcement for every IoT and OT device.") *see id.*;

- Next-Generation Firewalls ("Industry-leading family of physical, virtualized, and containerized firewalls that leverage machine learning for proactive protection."), *see id.*;

- PA-Series ("Our award-winning family of physical NGFW appliances are the first to leverage machine learning for proactive protection."), *see id.*;

- Panorama ("Centralized network security management solution for your Palo Alto Networks Next-Generation Firewalls—all form factors and all locations."), *see id.*;

- Threat Prevention ("Advanced intrusion prevention system (IPS) that inspects all traffic for threats and automatically blocks known vulnerabilities."), *see id.*;

- URL Filtering ("Cloud-delivered web security that protects against web-based threats such as phishing, malware and command-and-control."), *see id.*;

- WildFire ("Industry's leading advanced malware analysis engine that identifies and protects against unknown file-based threats."), *see id.*

44.     The accused Strata products include at least CN-Series, Next-Generation Firewalls, PA-Series, Threat Prevention, URL Filtering, and WildFire (hereinafter the "Strata Products").

45.     The Prisma family of products generally pertains to cloud security, and includes at least the following products that Palo Alto Networks describes as follows:

- Prisma Access ("A secure access service edge (SASE) solution for networking and security in a purpose-built cloud-delivered infrastructure."), *see* Ex. 20 (*https://www.paloaltonetworks.com/products/products-a-z*);

- Prisma Cloud ("Cloud native security. Comprehensive. Full lifecycle. For any cloud."), *see id.*;

- Prisma SAAS ("Comprehensive visibility, security and compliance across the industry's range of SAAS applications and data."), *see id.*;

- VM-Series ("Virtual firewalls that leverage agile, inline network security and threat prevention to consistently protect public and private clouds."), *see id.*

46.     The accused Prisma products include at least VM-Series (hereinafter the "Prisma Products").

47.     The Cortex family of products generally pertain to security operations, and includes at least the following products that Palo Alto Networks describes as follows:

- Autofocus Threat Intelligence ("Your one-stop shop for threat intelligence powered by WildFire to deliver unrivaled context for investigation, prevention and response."), *see* Ex. 20 (*https://www.paloaltonetworks.com/products/products-a-z*);

- Cortex Data Lake ("Collect, transform and integrate your enterprise's security data to enable Palo Alto Networks solutions."), *see id.*;

- Cortex XDR ("The industry's most comprehensive extended detection and response platform that runs on integrated endpoint, network and cloud data to prevent, detect, and remediate threats."), *see id.*;

- Cortex XSOAR ("The industry's only extended security orchestration, automation and response platform with native threat intelligence management."), *see id.*

48. The accused Cortex products include at least Cortex XDR (which now includes Traps) (hereinafter the "Cortex Products").

49. The Palo Alto Networks products accused of infringement in this case span from the products described in the original Complaint through the present versions of those products as described above and further extend to any future or unreleased products that infringe the asserted patents. Palo Alto Networks publishes end-of-life data for the accused products, and Finjan alleges infringement by the intermediate product versions contained there from inception of the Complaint to present ("PAN-OS & Panorama"; "Traps, ESM and Cortex XDR Agent"; "GlobalProtect"; "BrightCloud Subscription"; "VM-Series Models"; "WildFire Release Listing"; "Hardware"). *See* https://www.paloaltonetworks.com/services/support/end-of-life-announcements/end-of-life-summary (attached as Exhibit 21); https://www.paloaltonetworks.com/services/support/end-of-life-announcements/hardware-end-of-life-dates.html (attached as Exhibit 22); https://docs.paloaltonetworks.com/wildfire/u-v/wildfire-whats-new/wildfire-release-history/wildfire-release-listing.html#id181TG050D2G%3E (attached as Exhibit 23). Based on Finjan's present understanding, the different versions of the accused products that have existed during the course of this case include the same or similar infringing features, and operate in the same manner. Accordingly, Palo Alto Networks has been on notice of and has had knowledge of the Asserted Patents, and knew that its existing products and ongoing product releases infringe and continued to infringe the Asserted Patents.

## PALO ALTO NETWORKS' INFRINGEMENT OF FINJAN'S PATENTS

50.     Defendant has infringed the '780 Patent,  the '731 Patent, the '926 Patent, the '633 Patent, and the '494 Patent and has been and is now infringing the '154 Patent and the '408 Patent (collectively "the Asserted Patents") in this judicial District, and elsewhere in the United States by, among other things, making, using, importing, selling, and/or offering for sale the claimed system and methods on the Next-Generation Security Platform, Next-Generation Firewall, Virtualized Firewall, WildFire Subscription, WildFire Platform, URL Filtering Subscription, Threat Prevention Subscription, Advanced EndPoint Protection, Strata Products, Prisma Products, and Cortex Products.

51.     In addition to directly infringing the Asserted Patents pursuant to 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, or both, Defendant has indirectly infringed the '780 Patent,  the '731 Patent, the '926 Patent, the '633 Patent, and the '494 Patent and has been and is now indirectly infringing the '154 Patent and the '408 Patent pursuant to 35 U.S.C. § 271(b) by instructing, directing and/or requiring others, including its users and developers, to perform all or some of the steps of the method claims, either literally or under the doctrine of equivalents, or both, of the Asserted Patents. Palo Alto Networks has had knowledge of the Asserted Patents and has had knowledge of its inducement since at least as early as the original Complaint was filed in November 2014.

## COUNT I

### (Direct Infringement of the '780 Patent pursuant to 35 U.S.C. § 271(a))

52.     Finjan repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

53.     Defendant has infringed one or more claims of the '780 Patent in violation of 35 U.S.C. § 271(a).

54.     Defendant's infringement is based upon literal infringement or infringement under the doctrine of equivalents, or both.

55.     Defendant's acts of making, using, importing, selling, and/or offering for sale infringing products and services have been without the permission, consent, authorization, or license of Finjan.

56.     Defendant's infringement includes, but is not limited to, the manufacture, use, sale, importation and/or offer for sale of Defendant's products and services, including, but not limited to, the Next-Generation Security Platform, Next-Generation Firewall, Virtualized Firewall, WildFire Subscription, WildFire Platform, URL Filtering Subscription, Threat Prevention Subscription, Advanced EndPoint Protection, Strata Products, Prisma Products, and Cortex Products (the "'780 Patent Accused Products"), and which embody the patented invention of the '780 Patent.

57.     Defendant's infringement of the '780 Patent has injured Finjan in an amount to be proven at trial.

58.     Defendant is well aware of Finjan's patents, including the '780 Patent, and has continued its infringing activity despite this knowledge. Finjan informed Defendant of its infringement of the '780 Patent on or about October 4, 2013, and provided a representative claim chart specifically identifying how Defendant's products and services infringe. Finjan attempted unsuccessfully to actively engage in good faith negotiations for over a year with Defendant regarding Finjan's patent portfolio, including providing additional representative claim charts for different patents and identifying Defendant's infringement. Further, Finjan met via teleconference with Defendant's Director of Intellectual Property Strategy, Michael Ritter, on September 26, 2014, to engage in a technical discussion regarding infringement of Defendant's products and services.  Despite knowledge of Finjan's patent portfolio, being provided representative claim charts of several Finjan patents, including the '780 Patent, and engaging in a technical meeting regarding infringement of Defendant's products and services, Defendant has refused to enter into good faith discussions with Finjan, in complete disregard of Finjan's patent rights, and has sold and continues to sell the accused products and services. Even after receiving Finjan's original Complaint for patent infringement, Defendant continued to release new versions of the '780 Patent Accused Products with the same or similar infringing

functionality while the case was stayed. As such, Defendant has acted recklessly and continues to willfully, wantonly, and deliberately engage in acts of infringement of the '780 Patent, justifying an award to Finjan of increased damages under 35 U.S.C. § 284, and attorneys' fees and costs incurred under 35 U.S.C. § 285.

## COUNT II

### (Indirect Infringement of the '780 Patent pursuant to 35 U.S.C. § 271(b))

59.     Finjan repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

60.     Defendant has induced infringement of at least claims 1-8 and 16 of the '780 Patent under 35 U.S.C. § 271(b).

61.     In addition to directly infringing the '780 Patent, Defendant has indirectly infringed the '780 Patent pursuant to 35 U.S.C. § 271(b) by instructing, directing and/or requiring others, including but not limited to its customers, users and developers, to perform one or more of the steps of the method claims, either literally or under the doctrine of equivalents, of the '780 Patent, where all the steps of the method claims are performed by either Palo Alto Networks, its customers, users or developers, or some combination thereof. Defendant knew or was willfully blind to the fact that it was inducing others, including customers, users and developers, to infringe by practicing, either themselves or in conjunction with Defendant, one or more method claims of the '780 Patent.

62.     Defendant knowingly and actively aided and abetted the direct infringement of the '780 Patent by instructing and encouraging its customers, users and developers to use the '780 Patent Accused Products. Such instructions and encouragement include, but are not limited to, advising third parties to use the '780 Patent Accused Products in an infringing manner, providing a mechanism through which third parties may infringe the '780 Patent, specifically through the use of the '780 Patent Accused Products, advertising and promoting the use of the '780 Patent Accused Products in an infringing manner, and distributing guidelines and instructions to third parties on how to use the '780 Patent Accused Products in an infringing manner.

63.     Palo Alto Networks provides detailed instructions to its customers and users regarding all aspects of the '780 Patent Accused Products. These instructions can be found at https://www.paloaltonetworks.com/customers.html (attached as Exhibit 24).

64.     Palo Alto Networks itself and through its authorized partners regularly provides or has provided classroom style training, demonstrations, and certification programs to help users use the '780 Patent Accused Products, including the following:

- Palo Alto Networks Essentials 1, where "[s]uccessful completion of this three day, instructor led course will enable the student to install, configure, and manage the entire line of Palo Alto Networks Next-Generation firewalls." https://www.paloaltonetworks.com/content/dam/paloaltonetworkscom/en_US/assets/pdf /datasheets/education/5.0-essentials-1.pdf (attached as Exhibit 25);

- Palo Alto Network Essentials 2, which "Firewall Management expands on 201 course topics, while introducing many new features and functions of Palo Alto Networks Next-Generation firewalls." https://www.paloaltonetworks.com/content/dam/paloaltonetworkscom/en_US/assets/pdf /datasheets/education/5.0-essentials-2.pdf (attached as Exhibit 26);

- Accredited Configuration Engineer ("ACE"), where "[t]he primary goal of the ACE exam is to serve as an objective indication of your ability to configure Palo Alto Networks firewalls using the PAN-OS." https://www.paloaltonetworks.com/services/education/ace.html (attached as Exhibit 27);

- Certified Network Security Engineer ("CNSE") exam and study materials which upon successful passing indicate an in-depth engineering level knowledge of how to install, configure, and implement Palo Alto Network products. The study materials consist of 32 technical documents which cover detailed aspects of the Palo Alto Networks Next-Generation Firewall. https://www.paloaltonetworks.com/services/education/cnse.html (attached as Exhibit 28);

65.     Palo Alto Networks also offers a range of consulting services where "[e]xperienced consultants from Palo Alto Networks provide on-site personalized assistance to create the optimal implementation for your business." *See* https://www.paloaltonetworks.com/content/dam/paloaltonetworkscom/en_US/assets/pdf/services/Consulting%20Services%20Overview.pdf (attached as Exhibit 29).

66.     The consulting services further provide for employee and customer testing, setup and running the '780 Patent Accused Products including the following:

- Remote Installation of Software where Palo Alto Networks "offer(s) Remote Install with Baseline Threat Protection . . . to quickly (and properly) install the next-generation firewall." https://www.paloaltonetworks.com/content/dam/paloaltonetworkscom/en_US/assets/pdf/services/Consulting%20Services%20Overview.pdf (attached as Exhibit 29);

- Palo Alto Networks also offers "experienced consultants will apply their extensive knowledge of Palo Alto Networks next-generation firewalls and best practices to identify recommended changes." https://www.paloaltonetworks.com/content/dam/paloaltonetworkscom/en_US/assets/pdf/services/Consulting%20Services%20Overview.pdf (attached as Exhibit 29).

67.     Palo Alto Networks provides on-demand video demonstrations on how to configure and use the Next-Generation Firewall and Virtualized Firewalls. https://www.paloaltonetworks.com/resources/demos/ngfw-overview-and-demo.html (attached as Exhibit 30).

68.     Palo Alto Networks provides technical documentation, administrators guides, hardware guides, and getting started guides. These documents instruct users on ways to configure and operate the Next-Generation Firewalls and Virtualized Firewalls. https://live.paloaltonetworks.com/community/documentation (attached as Exhibit 31).

69.     Palo Alto Networks provides the webcast "Threat Review Series: Combining the Power of App-ID with Wildfire." This webcast discusses how users should leverage the App-ID technology with WildFire in order to get heightened protection against malware.

1  https://www.paloaltonetworks.com/resources/webcasts/trs-combining-the-power-of-app-id-

2  withwildfire.html (attached as Exhibit 32).

3       70.     Palo Alto Networks includes the XML-based REST Application Programming

4  Interface in PAN-OS. The Application Programming Interface allows access to several types of

5  data by third parties. This data can be integrated and used in other systems such as User-ID

6  Application Programming Interface partnering with third parties.

7  https://live.paloaltonetworks.com/docs/DOC-5939 (attached as Exhibit 17).

8       71.     Defendant is well aware of Finjan's patents, including the '780 Patent, and has

9  continued its infringing activity despite this knowledge. Finjan informed Defendant of its

10  infringement of the '780 Patent on or about October 4, 2013, and provided a representative

11  claim chart specifically identifying how Defendant's products and services infringe. Finjan

12  attempted unsuccessfully to actively engage in good faith negotiations for over a year with

13  Defendant regarding Finjan's patent portfolio, including providing additional representative

14  claim charts for different patents and identifying Defendant's infringement. Further, Finjan met

15  via teleconference with Defendant's Director of Intellectual Property Strategy, Michael Ritter,

16  on September 26, 2014, to engage in a technical discussion regarding infringement of

17  Defendant's products and services.  Despite knowledge of Finjan's patent portfolio, being

18  provided representative claim charts of several Finjan patents, including of the '780 Patent, and

19  engaging in a technical meeting regarding infringement of Defendant's products and services,

20  Defendant has refused to enter into good faith discussions with Finjan, in complete disregard of

21  Finjan's patent rights, and has sold and continues to sell the accused products and services.

22  Even after receiving Finjan's original Complaint for patent infringement, Defendant continued

23  to release new versions of the '780 Patent Accused Products with the same or similar infringing

24  functionality while the case was stayed. As such, Defendant has acted recklessly and continues

25  to willfully, wantonly, and deliberately engage in acts of infringement of the '780 Patent,

26  justifying an award to Finjan of increased damages under 35 U.S.C. § 284, and attorneys' fees

27  and costs incurred under 35 U.S.C. § 285.

28

72.     Defendant has had knowledge of the '780 Patent at least as of October 4, 2013, and by continuing the actions described above, has had the specific intent to or was willfully blind to the fact that its actions would induce infringement of the '780 Patent.

73.     Palo Alto Networks actively and intentionally maintains websites, including Palo Alto Networks Services and its ancillary components Solution Assurance, Education, Support and Consulting, to promote the '780 Patent Accused Products, and to encourage potential customers, users and developers to use the '780 Patent Accused Products in the manner described by Finjan.  https://www.paloaltonetworks.com/services.html (attached as Exhibit 33).

74.     Palo Alto Networks actively updates its websites, including Palo Alto Networks Services and its ancillary components Solution Assurance, Education, Support, and Consulting, to promote the Palo Alto '780 Patent Accused Products, to encourage customers, users and developers to practice the methods claimed in the '780 Patent. *See* https://www.paloaltonetworks.com/services.html (attached as Exhibit 33).

75.     Palo Alto Networks has been on notice of its inducement since at least as early as the original Complaint filed on November 4, 2014, and continued to induce infringement.

## COUNT III

### (Direct Infringement of the '731 Patent pursuant to 35 U.S.C. § 271(a))

76.     Finjan repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

77.     Defendant has infringed one or more claims of the '731 Patent in violation of 35 U.S.C. § 271(a).

78.     Defendant's infringement is based upon literal infringement or infringement under the doctrine of equivalents, or both.

79.     Defendant's acts of making, using, importing, selling, and/or offering for sale infringing products and services have been without the permission, consent, authorization, or license of Finjan.

80.     Defendant's infringement includes, but is not limited to, the manufacture, use, sale, importation and/or offer for sale of Defendant's products and services, including but not limited to the Next-Generation Security Platform, Next-Generation Firewall, Virtualized Firewall, WildFire Subscription, WildFire Platform, URL Filtering Subscription, Threat Prevention Subscription, Advanced EndPoint Protection, Strata Products, Prisma Products, and Cortex Products (the "'731 Patent Accused Products") which embody the patented invention of the '731 Patent.

81.     Defendant's infringement of the '731 Patent has injured Finjan in an amount to be proven at trial.

82.     Defendant is well aware of Finjan's patents, and has been aware of the '731 patent since at least June 20, 2014. Finjan's claim chart for the '731 Patent is confidential. As such, Finjan offered to Defendant a Non-Disclosure Agreement to maintain the confidential nature of its analysis. Defendant refused to sign the agreement. Defendant has continued its infringing activity without a good faith effort to assure Finjan that it is not infringing Finjan's '731 Patent. Even after receiving Finjan's original Complaint for patent infringement, Defendant continued to release new versions of the '731 Patent Accused Products with the same or similar infringing functionality while the case was stayed. As such, Defendant has acted recklessly and continues to willfully, wantonly, and deliberately engage in acts of infringement of the '731 Patent, justifying an award to Finjan of increased damages under 35 U.S.C. § 284, and attorneys' fees and costs incurred under 35 U.S.C. § 285.

## COUNT IV

### (Indirect Infringement of the '731 Patent pursuant to 35 U.S.C. § 271(b))

83.     Finjan repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

84.     Defendant has induced infringement of at least claims 7-12, 14-16, and 20-21 of the '731 Patent under 35 U.S.C. § 271(b).

85.     In addition to directly infringing the '731 Patent, Defendant has indirectly infringed the '731 Patent pursuant to 35 U.S.C. § 271(b) by instructing, directing and/or

requiring others, including but not limited to its customers, users and developers, to perform one or more of the steps of the method claims, either literally or under the doctrine of equivalents, of the '731 Patent, where all the steps of the method claims are performed by either Palo Alto Networks, or its customers, users or developers, or some combination thereof. Defendant knew or was willfully blind to the fact that it was inducing others, including customers, users and developers, to infringe by practicing, either themselves or in conjunction with Defendant, one or more method claims of the '731 Patent.

86.     Defendant knowingly and actively aided and abetted the direct infringement of the '731 Patent by instructing and encouraging its customers, users and developers to use the '731 Patent Accused Products Such instructions and encouragement include, but are not limited to, advising third parties to use the '731 Patent Accused Products in an infringing manner, providing a mechanism through which third parties may infringe the '731 Patent, specifically through the use of the '731 Patent Accused Products, advertising and promoting the use of the '731 Patent Accused Products in an infringing manner, and distributing guidelines and instructions to third parties on how to use the '731 Patent Accused Products in an infringing manner.

87.     Palo Alto Networks provides detailed instruction to its customers and users regarding all aspects of the '731 Patent Accused Products including, but not limited to, Policy Control, on device cache, Policy Control, on-device cache, App-ID Content-ID and User-ID. These instructions can be found at https://www.paloaltonetworks.com/customers.html (attached as Exhibit 24).

88.     Palo Alto Networks provides on-demand video demonstrations on how to configure and use the Next-Generation Firewall and Virtualized Firewall. This video can be found at https://www.paloaltonetworks.com/resources/demos/ngfw-overview-and-demo.html (attached as Exhibit 30).

89.     Palo Alto Networks provides technical documentation, administrators guides, hardware guides and getting started guides. These documents instruct users on ways to configure and operate the Next-Generation Firewall and Virtualized Firewall. This

documentation and guides can be found at

https://live.paloaltonetworks.com/community/documentation (attached as Exhibit 31).  These

documents include:

> • The "Next-Generation Firewalls for Dummies" guide. This guide gives a
> background to the threat landscape, the challenges of the current threat landscape, in-
> depth discussion on how Next-Generation Firewalls addresses current threat, and then
> how to deploy and safely enable the Next-Generation Firewalls in one's organization.
> https://www.paloaltonetworks.com/content/dam/paloaltonetworkscom/en_US/assets/pdf
> /education/NGFW_dummies.pdf (attached as Exhibit 34);

> • The "Getting Started Guide" for PAN-OS 5.0. This guide provides
> details on how to active Threat Prevention, URL Filtering, Global Protect and other
> services. The guide also instructs user how to set the security profiles for Threat
> Prevention including Content-ID and WildFire.
> https://live.paloaltonetworks.com/docs/DOC-4214 (attached as Exhibit 13).

90. Palo Alto Networks publishes and provides videos to its customer, including
"Application Visibility and Control." This guide provides how to use the application visibility
more effectively and can be found at
https://www.paloaltonetworks.com/resources/demos/applicationvisibility-and-control.html
(attached as Exhibit 35).

91. Palo Alto Networks publishes and provides to its customers the "Threat
Prevention Deployment Tech Note." This guide instructs users on how to configure and
implement App-ID, Content-ID, File Blocking, URL Filtering, and other Palo Alto Networks
technology. *See* https://live.paloaltonetworks.com/docs/DOC-3094 (attached as Exhibit 36).

92. Palo Alto Networks provides the functionalities of policy control and promotes
the use of policy control on its website.
https://www.paloaltonetworks.com/products/features/policycontrol.html (attached as Exhibit
37).

93.     Defendant is well aware of Finjan's patents, and has been aware of the '731 patent since at least June 20, 2014. Finjan's claim chart for the '731 Patent is confidential. As such, Finjan offered to Defendant a Non-Disclosure Agreement to maintain the confidential nature of its analysis. Defendant refused to sign the agreement. Defendant has continued its infringing activity without a good faith effort to assure Finjan that it was not infringing Finjan's '731 Patent. Even after receiving Finjan's original Complaint for patent infringement, Defendant continued to release new versions of the '731 Patent Accused Products with the same or similar infringing functionality while the case was stayed. As such, Defendant has acted recklessly and continues to willfully, wantonly, and deliberately engage in acts of infringement of the '731 Patent, justifying an award to Finjan of increased damages under 35 U.S.C. § 284, and attorneys' fees and costs incurred under 35 U.S.C. § 285.

94.     Defendant has had knowledge of the '731 Patent at least as of June 20, 2014 and by continuing the actions described above, has had the specific intent to or was willfully blind to the fact that its actions would induce infringement of the '731 Patent.

95.     Palo Alto Networks actively and intentionally maintains websites, including Palo Alto Networks Services and its ancillary components Solution Assurance, Education, Support and Consulting, to promote the Palo Alto '731 Patent Accused Products and to encourage potential customers, users and developers to use the '731 Patent Accused Products in the manner described by Finjan. See https://www.paloaltonetworks.com/services.html (attached as Exhibit 30).

96.     Palo Alto Networks actively updates its websites, including Palo Alto Networks Services and its ancillary components Solution Assurance, Education, Support and Consulting, to promote the Palo Alto '731 Patent Accused Products including, but not limited to, Palo Alto Networks Policy Control, on-device cache, Policy Control, on-device cache, App-ID Content-ID and User-ID, to encourage customers, users and developers to practice the methods claimed in the '731 Patent. *See* https://www.paloaltonetworks.com/services.html (attached as Exhibit 33).

97.     Palo Alto Networks has been on notice of its inducement since at least as early as the original Complaint filed on November 4, 2014, and has continued to induce infringement.

## COUNT V

### (Direct Infringement of the '926 Patent pursuant to 35 U.S.C. § 271(a))

98.     Finjan repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

99.     Defendant has infringed one or more claims of the '926 Patent in violation of 35 U.S.C. § 271(a).

100.     Defendant's infringement is based upon literal infringement or infringement under the doctrine of equivalents, or both.

101.     Defendant's acts of making, using, importing, selling, and/or offering for sale infringing products and services have been without the permission, consent, authorization or license of Finjan.

102.     Defendant's infringement includes, but is not limited to, the manufacture, use, sale, importation and/or offer for sale of Defendant's products and services, including, but not limited to, the Next-Generation Security Platform, Next-Generation Firewall, Virtualized Firewall, WildFire Subscription, WildFire Platform, URL Filtering Subscription, Threat Prevention Subscription, Advanced EndPoint Protection, Strata Products, Prisma Products, and Cortex Products (the "'926 Patent Accused Products") which embody the patented invention of the '926 Patent.

103.     Defendant's infringement of the '926 Patent has injured Finjan in an amount to be proven at trial.

104.     Defendant is well aware of Finjan's patents and has continued its infringing activity despite this knowledge. Finjan's claim chart for the '926 Patent is confidential. As such, Finjan offered to Defendant a Non-Disclosure Agreement to maintain the confidential nature of its analysis. Defendant refused to sign the agreement. Defendant has continued its

1   infringing activity without a good faith effort to assure Finjan that it is not infringing Finjan's

2   '926 Patent. Even after receiving Finjan's original Complaint for patent infringement,

3   Defendant continued to release new versions of the '926 Patent Accused Products with the

4   same or similar infringing functionality while the case was stayed. As such, Defendant has

5   acted recklessly and continues to willfully, wantonly, and deliberately engage in acts of

6   infringement of the '926 Patent, justifying an award to Finjan of increased damages under 35

7   U.S.C. § 284, and attorneys' fees and costs incurred under 35 U.S.C. § 285.

8                                      **COUNT VI**

9            **(Indirect Infringement of the '926 Patent pursuant to 35 U.S.C. § 271(b))**

10          105.    Finjan repeats, realleges, and incorporates by reference, as if fully set forth

11   herein, the allegations of the preceding paragraphs, as set forth above.

12          106.    Defendant has induced infringement of at least claims 1-7 and 15-21 of the '926

13   Patent under 35 U.S.C. § 271(b).

14          107.    In addition to directly infringing the '926 Patent, Defendant has indirectly

15   infringed the '926 Patent pursuant to 35 U.S.C. § 271(b) by instructing, directing and/or

16   requiring others, including, but not limited to its customers, users and developers, to perform

17   one or more of the steps of the method claims, either literally or under the doctrine of

18   equivalent, or both, of the '926 Patent, where all the steps of the method claims are performed

19   by either Palo Alto Networks or its customers, users or developers, or some combination

20   thereof. Defendant knew or was willfully blind to the fact that it was inducing others, including

21   customers, users and developers, to infringe by practicing, either themselves or in conjunction

22   with Defendant, one or more method claims of the '926 Patent.

23          108.    Defendant knowingly and actively aided and abetted the direct infringement of

24   the '926 Patent by instructing and encouraging its customers, users and developers to use '926

25   Patent Accused Products. Such instructions and encouragement include, but are not limited to,

26   advising third parties to use the '926 Patent Accused Products in an infringing manner,

27   providing a mechanism through which third parties may infringe the '926 Patent, specifically

28   through the use of the '926 Patent Accused Products, advertising and promoting the use of the

1  '926 Patent Accused Products in an infringing manner, and distributing guidelines and

2  instructions to third parties on how to use the '926 Patent Accused Products in an infringing

3  manner.

4     109.   Palo Alto Networks provides detailed instruction to its customers and users

5  regarding all aspects of the '926 Patent Accused Products including, but not limited to, App-ID,

6  User-ID, Content-ID and WildFire. These instructions can be found at

7  https://www.paloaltonetworks.com/customers.html (attached as Exhibit 24).

8     110.   Palo Alto Networks itself and through its authorized partners regularly provides

9  classroom style training, demonstrations, and certification programs to help users use the '926

10  Patent Accused Products, including the following:

11        •   Palo Alto Networks Essentials 1, where "[s]uccessful completion of this

12        three day, instructor led course will enable the student to install, configure, and manage

13        the entire line of Palo Alto Networks Next-Generation firewalls."

14     https://www.paloaltonetworks.com/content/dam/paloaltonetworkscom/en_US/assets/pdf/d

15     atasheets/education/5.0-essentials-1.pdf (attached as Exhibit 25);

16        •   Palo Alto Network Essentials 2, which "Firewall Management expands on

17        201 course topics, while introducing many new features and functions of Palo Alto

18        Networks Next-Generation firewalls."

19     https://www.paloaltonetworks.com/content/dam/paloaltonetworkscom/en_US/assets/pdf/d

20     atasheets/education/5.0-essentials-2.pdf (attached as Exhibit 26);

21        •   Accredited Configuration Engineer ("ACE"), where "[t]he primary goal of

22        the ACE exam is to serve as an objective indication of your ability to configure Palo Alto

23        Networks firewalls using the PAN-OS."

24     https://www.paloaltonetworks.com/services/education/ace.html (attached as Exhibit 27);

25        •   Certified Network Security Engineer ("CNSE") exam and study materials

26        which upon successful passing indicate an in-depth engineering level knowledge of how to

27        install, configure, and implement Palo Alto Network products. The study materials consist

28        of 32 technical documents which cover detailed aspects of the Palo Alto Networks Next-

Generation Firewall. https://www.paloaltonetworks.com/services/education/cnse.html (attached as Exhibit 28).

111.   Palo Alto Networks also offers a range of consulting services where "[e]xperienced consultants from Palo Alto Networks provide on-site personalized assistance to create the optimal implementation for your business." https://www.paloaltonetworks.com/content/dam/paloaltonetworkscom/en_US/assets/pdf/servic es/Consulting%20Services%20Overview.pdf (attached as Exhibit 29).

112.   The consulting services further provide for employee and customer testing, setup and running the '926 Patent Accused Products including the following:

•      Remote Installation of Software where Palo Alto Networks "offer(s) Remote Install with Baseline Threat Protection . . . to quickly (and properly)install the next generation firewall." https://www.paloaltonetworks.com/content/dam/paloaltonetworkscom/en_US/assets/pdf /services/Consulting%20Services%20Overview.pdf (attached as Exhibit 29);

•      Palo Alto Networks also offers "experienced consultants will apply their extensive knowledge of Palo Alto Networks next-generation firewalls and best practices to identify recommended changes." https://www.paloaltonetworks.com/content/dam/paloaltonetworkscom/en_US/assets/pdf /services/Consulting%20Services%20Overview.pdf (attached as Exhibit 29).

113.   Palo Alto Networks provides on-demand video demonstrations on how to configure and use the Next-Generation Firewall and Virtualized Firewalls. The video can be viewed at https://www.paloaltonetworks.com/resources/demos/ngfw-overview-and-demo.html (attached as Exhibit 30).

114.   Palo Alto Networks provides technical documentation, administrators guides, hardware guides and getting started guides. These documents instruct users on ways to configure and operate the '926 Patent Accused Products. https://live.paloaltonetworks.com/community/documentation (attached as Exhibit 31).

115.     Defendant is well aware of Finjan's patents and has continued its infringing activity despite this knowledge. Finjan's claim chart for the '926 Patent is confidential. As such, Finjan offered to Defendant a Non-Disclosure Agreement to maintain the confidential nature of its analysis.  Defendant refused to sign the agreement. Defendant has continued its infringing activity without a good faith effort to assure Finjan that it is not infringing Finjan's '926 Patent. Even after receiving Finjan's original Complaint for patent infringement, Defendant continued to release new versions of the '926 Patent Accused Products with the same or similar infringing functionality while the case was stayed. As such, Defendant has acted recklessly and continues to willfully, wantonly, and deliberately engage in acts of infringement of the '926 Patent, justifying an award to Finjan of increased damages under 35 U.S.C. § 284, and attorneys' fees and costs incurred under 35 U.S.C. § 285.

116.     Defendant has had knowledge of the '926 Patent at least as of the time it learned of this action for infringement and by continuing the actions described above, has had the specific intent to or was willfully blind to the fact that its actions would induce infringement of the '926 Patent.

117.     Palo Alto Networks actively and intentionally maintains websites, including Palo Alto Networks Services and its ancillary components Solution Assurance, Education, Support and Consulting, to promote the Palo Alto Networks '926 Patent Accused Products and to encourage potential customers, users and developers to use the '926 Patent Accused Products in the manner described by Finjan. https://www.paloaltonetworks.com/services.html (attached as Exhibit 33).

118.     Palo Alto Networks actively updates its websites, including Palo Alto Networks Services and its ancillary components Solution Assurance, Education, Support and Consulting, to promote the Palo Alto Networks '926 Patent Accused Products including, but not limited to, Palo Alto Networks Content-ID, User-ID, App-ID and WildFire, to encourage customers, users and developers to practice the methods claimed in the '926 Patent. https://www.paloaltonetworks.com/services.html (attached as Exhibit 33).

119.   Palo Alto Networks has been on notice of its inducement since at least as early as the original Complaint filed on November 4, 2014, and has continued to induce infringement.

## **COUNT VII**

### **(Direct Infringement of the '633 Patent pursuant to 35 U.S.C. § 271(a))**

120.   Finjan repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

121.   Defendant has infringed one or more claims of the '633 Patent in violation of 35 U.S.C. § 271(a).

122.   Defendant's infringement is based upon literal infringement or infringement under the doctrine of equivalents, or both.

123.   Defendant's acts of making, using, importing, selling, and/or offering for sale infringing products and services have been without the permission, consent, authorization or license of Finjan.

124.   Defendant's infringement includes, but is not limited to, the manufacture, use, sale, importation and/or offer for sale of Defendant's products and services, including but not limited to the Next-Generation Security Platform, Next-Generation Firewall, Virtualized Firewall, WildFire Subscription, WildFire Platform, URL Filtering Subscription, Threat Prevention Subscription, Advanced EndPoint Protection, Strata Products, Prisma Products, and Cortex Products (the "'633 Patent Accused Products") which embody the patented invention of the '633 Patent.

125.   Defendant's infringement of the '633 Patent has injured Finjan in an amount to be proven at trial.

126.   Defendant is well aware of Finjan's patents and has continued its infringing activity despite this knowledge. Finjan's claim chart for the '633 Patent is confidential. As such Finjan offered to Defendant a Non-Disclosure Agreement to maintain the confidential nature of its analysis.  Defendant refused to sign the agreement stating that it wanted to keep the possibilities open to start a litigation. Defendant has continued its infringing activity without a

good faith effort to assure Finjan that it is not infringing Finjan's '633 Patent. Even after receiving Finjan's original Complaint for patent infringement, Defendant continued to release new versions of the '633 Patent Accused Products with the same or similar infringing functionality while the case was stayed. As such, Defendant has acted recklessly and continues to willfully, wantonly, and deliberately engage in acts of infringement of the '633 Patent, justifying an award to Finjan of increased damages under 35 U.S.C. § 284, and attorneys' fees and costs incurred under 35 U.S.C. § 285.

<u>**COUNT VIII**</u>

**(Indirect Infringement of the '633 Patent pursuant to 35 U.S.C. § 271(b))**

127.    Finjan repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

128.    Defendant has induced infringement of at least claims 5-7, 14-20, 28-33, and 42-43 of the '633 Patent under 35 U.S.C. § 271(b).

129.    In addition to directly infringing the '633 Patent, Defendant has indirectly infringed the '633 Patent pursuant to 35 U.S.C. § 271(b) by instructing, directing and/or requiring others, including but not limited to its customers, users and developers, to perform one or more of the steps of the method claims, either literally or under the doctrine of equivalents, or both, of the '633 Patent, where all the steps of the method claims are performed by either Palo Alto Networks, its customers, users or developers, or some combination thereof. Defendant knew or was willfully blind to the fact that it was inducing others, including customers, users and developers, to infringe by practicing, either themselves or in conjunction with Defendant, one or more method claims of the '633 Patent.

130.    Defendant knowingly and actively aided and abetted the direct infringement of the '633 Patent by instructing and encouraging its customers, users and developers to use the '633 Patent Accused Products. Such instructions and encouragement include, but are not limited to, advising third parties to use the '633 Patent Accused Products in an infringing manner, providing a mechanism through which third parties may infringe the '633 Patent, specifically through the use of the '633 Patent Accused Products, advertising and promoting the

use of the '633 Patent Accused Products in an infringing manner, and distributing guidelines and instructions to third parties on how to use the '633 Patent Accused Products in an infringing manner.

131.    Palo Alto Networks provides detailed instruction to its customers and users regarding all aspects of the '633 Patent Accused Products including, but not limited to, App-ID, User-ID, Content-ID and Threat Prevention. These instructions can be found at https://www.paloaltonetworks.com/customers.html (attached as Exhibit 24).

132.    Palo Alto Networks provides on-demand video demonstrations on how to configure and use the Next-Generation Firewall. These video can be found at https://www.paloaltonetworks.com/resources/demos/ngfw-overview-and-demo.html (attached as Exhibit 30).

133.    Palo Alto Networks provides technical documentation, administrators guides, hardware guides and getting started guides. These documents instruct users on ways to configure and operate the '633 Patent Accused Products. https://live.paloaltonetworks.com/community/documentation (attached as Exhibit 31). These documents include:

        •    The "Next-Generation Firewalls for Dummies" guide. This guide gives a background to the threat landscape, the challenges of the current threat landscape, in-depth discussion on how Next-Generation Firewalls addresses current threat, and then how to deploy and safely enable the Next-Generation Firewalls in one's organization. https://www.paloaltonetworks.com/content/dam/paloaltonetworkscom/en_US/assets/pdf/education/NGFW_dummies.pdf (attached as Exhibit 34);

        •    The "Getting Started Guide" for PAN-OS 5.0. This guide provides details on how to active Threat Prevention, URL Filtering, Global Protect and other services. The guide also instructs user how to set the security profiles for Threat Prevention including Content-ID and WildFire. https://live.paloaltonetworks.com/docs/DOC-4214 (attached as Exhibit 13).

134.    Palo Alto Networks publishes and provides to its customers the "Threat Prevention Deployment Tech Note." This guide provides instructs user on how to configure and implement App-ID, Content-ID, File Blocking, URL Filtering, and other Palo Alto Networks technology. This guide can be found at https://live.paloaltonetworks.com/docs/DOC-3094 (attached as Exhibit 36).

135.    Defendant is well aware of Finjan's patents and has continued its infringing activity despite this knowledge. Finjan's claim chart for the '633 Patent is confidential. As such, Finjan offered to Defendant a Non-Disclosure Agreement to maintain the confidential nature of its analysis. Defendant refused to sign the agreement. Defendant has continued its infringing activity without a good faith effort to assure Finjan that it is not infringing Finjan's '633 Patent. Even after receiving Finjan's original Complaint for patent infringement, Defendant continued to release new versions of the '633 Patent Accused Products with the same or similar infringing functionality while the case was stayed. As such, Defendant has acted recklessly and continues to willfully, wantonly, and deliberately engage in acts of infringement of the '633 Patent, justifying an award to Finjan of increased damages under 35 U.S.C. § 284, and attorneys' fees and costs incurred under 35 U.S.C. § 285.

136.    Defendant has had knowledge of the '633 Patent at least as of the time it learned of this action for infringement and by continuing the actions described above, has had the specific intent to or was willfully blind to the fact that its actions would induce infringement of the '633 Patent.

137.    Palo Alto Networks actively and intentionally maintains its websites, including Palo Alto Networks Services and its ancillary components Solution Assurance, Education, Support and Consulting, to promote the Palo Alto Networks '633 Patent Accused Products and to encourage potential customers, users and developers to use the '633 Patent Accused Products in the manner described by Finjan. https://www.paloaltonetworks.com/services.html (attached as Exhibit 33).

138.    Palo Alto Networks actively updates its websites, including Palo Alto Networks Services and its ancillary components Solution Assurance, Education, Support and Consulting,

to promote the Palo Alto Networks '633 Patent Accused Products including, but not limited to, the Palo Alto Networks Content-ID, User-ID, App-ID, and Threat Prevention, to encourage customers, users and developers to practice the methods claimed in the '633 Patent. https://www.paloaltonetworks.com/services.html (attached as Exhibit 33).

139.    Palo Alto Networks has been on notice of its inducement since at least as early as the original Complaint filed on November 4, 2014, and has continued to induce infringement.

## COUNT IX

### (Direct Infringement of the '154 Patent pursuant to 35 U.S.C. § 271(a))

140.    Finjan repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

141.    Defendant has infringed and continues to infringe one or more claims of the '154 Patent in violation of 35 U.S.C. § 271(a).

142.    Defendant's infringement is based upon literal infringement or infringement under the doctrine of equivalents, or both.

143.    Defendant's acts of making, using, importing, selling, and/or offering for sale infringing products and services have been without the permission, consent, authorization or license of Finjan.

144.    Defendant's infringement includes, but is not limited to, the manufacture, use, sale, importation and/or offer for sale of Defendant's products and services, including but not limited to, Next-Generation Security Platform, Next-Generation Firewall, Virtualized Firewall, WildFire Subscription, WildFire Platform, URL Filtering Subscription, Threat Prevention Subscription, Advanced EndPoint Protection, Strata Products, Prisma Products, and Cortex Products (the "'154 Patent Accused Products") all which embody the patented invention of the '154 Patent.

145.    As a result of Defendant's unlawful activities, Finjan has suffered and will continue to suffer irreparable harm for which there is no adequate remedy at law. Accordingly, Finjan is entitled to preliminary and/or permanent injunctive relief.

146.    Defendant's infringement of the '154 Patent has injured and continues to injure Finjan in an amount to be proven at trial.

147.    Defendant is well aware of Finjan's patents, and has been aware of the '154 patent since at least June 20, 2014. Finjan's claim chart for the '154 Patent is confidential. As such, Finjan offered to Defendant a Non-Disclosure Agreement to maintain the confidential nature of its analysis. Defendant refused to sign the agreement. Defendant has continued its infringing activity without a good faith effort to assure Finjan that it is not infringing Finjan's '154 Patent. Even after receiving Finjan's original Complaint for patent infringement, Defendant continued to release new versions of the '154 Patent Accused Products with the same or similar infringing functionality while the case was stayed. As such, Defendant has acted recklessly and continues to willfully, wantonly, and deliberately engage in acts of infringement of the '154 Patent, justifying an award to Finjan of increased damages under 35 U.S.C. § 284, and attorneys' fees and costs incurred under 35 U.S.C. § 285.

## COUNT X

### (Indirect Infringement of the '154 Patent pursuant to 35 U.S.C. § 271(b))

148.    Finjan repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

149.    Defendant has induced and continues to induce infringement of at least claims 1-12, of the '154 Patent under 35 U.S.C. § 271(b).

150.    In addition to directly infringing the '154 Patent, Defendant indirectly infringes the '154 Patent pursuant to 35 U.S.C. § 271(b) by instructing, directing and/or requiring others, including but not limited to its customers, users and developers, to perform one or more of the steps of the method claims, either literally or under the doctrine of equivalents, or both, of the '154 Patent, where all the steps of the method claims are performed by either Palo Alto Networks, its customers, users or developers, or some combination thereof. Defendant knew or was willfully blind to the fact that it was inducing others, including customers, users and developers, to infringe by practicing, either themselves or in conjunction with Defendant, one or more method claims of the '154 Patent.

151.    Defendant knowingly and actively aided and abetted the direct infringement of the '154 Patent by instructing and encouraging its customers, users and developers to use the '154 Patent Accused Products. Such instructions and encouragement include, but are not limited to, advising third parties to use the '154 Patent Accused Products in an infringing manner, providing a mechanism through which third parties may infringe the '154 Patent, specifically through the use of the '154 Patent Accused Products, advertising and promoting the use of the '154 Patent Accused Products in an infringing manner, and distributing guidelines and instructions to third parties on how to use the '154 Patent Accused Products in an infringing manner.

152.    Palo Alto Networks provides detailed instruction to its customers and users regarding all aspects of the '154 Patent Accused Products including, but not limited to, App-ID, User-ID, and Content-ID. These instructions can be found at https://www.paloaltonetworks.com/customers.html (attached as Exhibit 24).

153.    Palo Alto Networks runs the Palo Alto Academy which "creates partnerships with Colleges, Universities, and Technical Academic Institutes, so that Palo Alto Networks courses and technology can be taught and implemented as part of the curriculum." https://www.paloaltonetworks.com/services/education/authorized-academy-centers/about-the-aacprogram. html (attached as Exhibit 38). These institutions can gain an accreditation from Palo Alto Networks to become Authorized Academy Center ("ACC"). Palo Alto Networks provides the VM-100 at no charge and the access to Threat Prevention, URL Filtering, Global Protect, and Wildfire for a nominal fee to the ACC's. https://www.paloaltonetworks.com/content/dam/paloaltonetworkscom/en_US/assets/pdf/datasheets/education/Authorized%20Academy%20Center.pdf (attached as Exhibit 39).

154.    Palo Alto Networks itself and through its authorized partners regularly provides classroom style training, demonstrations, and certification programs to help users use the '154 Patent Accused Products, including the following:

  •    Palo Alto Networks Essentials 1, where "[s]uccessful completion of this three day, instructor led course will enable the student to install, configure, and manage the entire line of Palo Alto Networks Next-Generation firewalls."

FINJAN'S AMENDED COMPLAINT FOR PATENT INFRINGEMENT

1   https://www.paloaltonetworks.com/content/dam/paloaltonetworkscom/en_US/assets/pdf/d

2   atasheets/education/5.0-essentials-1.pdf (attached as Exhibit 25);

3          •       Palo Alto Network Essentials 2, which "Firewall Management expands on

4   201 course topics, while introducing many new features and functions of Palo Alto

5   Networks Next-Generation firewalls."

6   https://www.paloaltonetworks.com/content/dam/paloaltonetworkscom/en_US/assets/pdf/d

7   atasheets/education/5.0-essentials-2.pdf (attached as Exhibit 26);

8          •       Palo Alto Networks Advanced Trouble Shooting, where students will

9   receive hands-on experience troubleshooting the security, networking, threat prevention,

10  logging, and reporting features of the Palo Alto Networks Operation System (PAN-OS).

11  https://www.paloaltonetworks.com/content/dam/paloaltonetworkscom/en_US/assets/pdf/d

12  atasheets/education/5.0-advanced-troubleshooting.pdf (attached as Exhibit 40);

13         •       Accredited Configuration Engineer ("ACE"), where "[t]he primary goal of

14  the ACE exam is to serve as an objective indication of your ability to configure Palo Alto

15  Networks firewalls using the PAN-OS."

16  https://www.paloaltonetworks.com/services/education/ace.html (attached as Exhibit 27).

17  155.    Palo Alto Networks also offers a range of consulting services where "[e]xperienced

18  consultants from Palo Alto Networks provide on-site personalized assistance to create the optimal

19  implementation for your business."

20  https://www.paloaltonetworks.com/content/dam/paloaltonetworkscom/en_US/assets/pdf/services/

21  Consulting%20Services%20Overview.pdf (attached as Exhibit 29). The consulting services

22  further provide for employee and customer testing, setup and running the '154 Patent Accused

23  Products which include:

24         •       Remote Installation of Software where Palo Alto Networks "offer(s)

25  Remote Install with Baseline Threat Protection . . . to quickly (and properly)install the

26  next-generation firewall."

27  https://www.paloaltonetworks.com/content/dam/paloaltonetworkscom/en_US/assets/pdf/se

28  rvices/Consulting%20Services%20Overview.pdf (attached as Exhibit 29);

• Palo Alto Networks offering "experienced consultants will apply their extensive knowledge of Palo Alto Networks next-generation firewalls and best practices to identify recommended changes."

https://www.paloaltonetworks.com/content/dam/paloaltonetworkscom/en_US/assets/pdf/services/Consulting%20Services%20Overview.pdf (attached as Exhibit 29).

156.    Palo Alto Networks provides the "Next-Generation Firewalls for Dummies" guide. This guide gives a background to the threat landscape, the challenges of the current threat landscape, in-depth discussion on how Next-Generation Firewalls addresses current threats, and then how to deploy and safely enable the Next-Generation Firewalls in one's organization. https://www.paloaltonetworks.com/content/dam/paloaltonetworkscom/en_US/assets/pdf/education/NGFW_dummies.pdf (attached as Exhibit 34).

157.    Defendant is well aware of Finjan's patents, and has been aware of the '154 patent since at least June 20, 2014. Finjan's claim chart for the '154 Patent is confidential. As such, Finjan offered to Defendant a Non-Disclosure Agreement to maintain the confidential nature of its analysis. Defendant refused to sign the agreement. Defendant has continued its infringing activity without a good faith effort to assure Finjan that it is not infringing Finjan's '154 Patent. Even after receiving Finjan's original Complaint for patent infringement, Defendant continued to release new versions of the '154 Patent Accused Products with the same or similar infringing functionality while the case was stayed. As such, Defendant has acted recklessly and continues to willfully, wantonly, and deliberately engage in acts of infringement of the '154 Patent, justifying an award to Finjan of increased damages under 35 U.S.C. § 284, and attorneys' fees and costs incurred under 35 U.S.C. § 285.

158.    Defendant has had knowledge of the '154 Patent at least as of the time it learned of this action for infringement and by continuing the actions described above, has had the specific intent to or was willfully blind to the fact that its actions would induce infringement of the '154 Patent.

159.    Palo Alto Networks actively and intentionally maintains websites, including Palo Alto Networks Services and its ancillary components Solution Assurance, Education, Support and

1   Consulting, to promote the Palo Alto Networks '154 Patent Accused Products and to encourage

2   potential customers, users and developers to use the '154 Patent Accused Products in the manner

3   described by Finjan. https://www.paloaltonetworks.com/services.html (attached as Exhibit 33).

4        160.    Palo Alto Networks actively updates its websites, including Palo Alto Networks

5   Services and its ancillary components Solution Assurance, Education, Support and Consulting, to

6   promote the Palo Alto '154 Patent Accused Products including, but not limited to, the Palo Alto

7   Networks Content-ID, User-ID, and App-ID, to encourage customers, users and developers to

8   practice the methods claimed in the '154 Patent. https://www.paloaltonetworks.com/services.html

9   (attached as Exhibit 33).

10        161.    Palo Alto Networks has been on notice of its inducement since at least as early

11   as the original Complaint filed on November 4, 2014, and has continued to induce infringement

12   to present.

### COUNT XI

### (Direct Infringement of the '408 Patent pursuant to 35 U.S.C. § 271(a))

15        162.    Finjan repeats, realleges, and incorporates by reference, as if fully set forth

16   herein, the allegations of the preceding paragraphs, as set forth above.

17        163.    Defendant has infringed and continues to infringe one or more claims of the

18   '408 Patent in violation of 35 U.S.C. § 271(a).

19        164.    Defendant's infringement is based upon literal infringement or infringement

20   under the doctrine of equivalents, or both.

21        165.    Defendant's acts of making, using, importing, selling, and/or offering for sale

22   infringing products and services have been without the permission, consent, authorization or

23   license of Finjan.

24        166.    Defendant's infringement includes, but is not limited to, the manufacture, use,

25   sale, importation and/or offer for sale of Defendant's products and services, including but not

26   limited to, the Next-Generation Security Platform, Next-Generation Firewall, Virtualized

27   Firewall, WildFire Subscription, WildFire Platform, URL Filtering Subscription, Threat

28   Prevention Subscription, Advanced EndPoint Protection, Strata Products, Prisma Products, and

Cortex Products (the "'408 Patent Accused Products") which embody the patented invention of the '408 Patent.

167.    As a result of Defendant's unlawful activities, Finjan has suffered and will continue to suffer irreparable harm for which there is no adequate remedy at law. Accordingly, Finjan is entitled to preliminary and/or permanent injunctive relief.

168.    Defendant's infringement of the '408 Patent has injured and continues to injure Finjan in an amount to be proven at trial.

169.    Defendant is well aware of Finjan's patents. Finjan's claim chart for the '408 Patent is confidential. As such, Finjan offered to Defendant a Non-Disclosure Agreement to maintain the confidential nature of its analysis. Defendant refused to sign the agreement. Defendant has continued its infringing activity without a good faith effort to assure Finjan that it is not infringing Finjan's '408 Patent. Even after receiving Finjan's original Complaint for patent infringement, Defendant continued to release new versions of the '408 Patent Accused Products with the same or similar infringing functionality while the case was stayed. As such, Defendant has acted recklessly and continues to willfully, wantonly, and deliberately engage in acts of infringement of the '408 Patent, justifying an award to Finjan of increased damages under 35 U.S.C. § 284, and attorneys' fees and costs incurred under 35 U.S.C. § 285.

## COUNT XII

### (Indirect Infringement of the '408 Patent pursuant to 35 U.S.C. § 271(b))

170.    Finjan repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

171.    Defendant has induced and continues to induce infringement of at least claims 1-8 and 23-28, of the '408 Patent under 35 U.S.C. § 271(b).

172.    In addition to directly infringing the '408 Patent, Defendant indirectly infringes the '408 Patent pursuant to 35 U.S.C. § 271(b) by instructing, directing and/or requiring others, including but not limited to its customers, users and developers, to perform one or more of the steps of the method claims, either literally or under the doctrine of equivalents, or both, of the '408 Patent, where all the steps of the method claims are performed by either Palo Alto

Networks, its customers, users or developers, or some combination thereof. Defendant knew or was willfully blind to the fact that it was inducing others, including customers, users and developers, to infringe by practicing, either themselves or in conjunction with Defendant, one or more method claims of the '408 Patent.

173.    Defendant knowingly and actively aided and abetted the direct infringement of the '408 Patent by instructing and encouraging its customers, users and developers to use the '408 Patent Accused Products. Such instructions and encouragement include, but are not limited to, advising third parties to use the '408 Patent Accused Products in an infringing manner, providing a mechanism through which third parties may infringe the '408 Patent, specifically through the use of the '408 Patent Accused Products, advertising and promoting the use of the '408 Patent Accused Products in an infringing manner, and distributing guidelines and instructions to third parties on how to use the '408 Patent Accused Products in an infringing manner.

174.    Palo Alto Networks provides detailed instruction to its customers and users regarding all aspects of the '408 Patent Accused Products including, but not limited to, App-ID, User-ID, and Content-ID. These instructions can be found at https://www.paloaltonetworks.com/customers.html (attached as Exhibit 24).

175.    Palo Alto Networks runs the Palo Alto Academy which "creates partnerships with Colleges, Universities, and Technical Academic Institutes, so that Palo Alto Networks courses and technology can be taught and implemented as part of the curriculum." https://www.paloaltonetworks.com/services/education/authorized-academy-centers/about-the-aacprogram. html (attached as Exhibit 38). These institutions can gain an accreditation from Palo Alto Networks to become Authorized Academy Center ("ACC"). Palo Alto Networks provides the VM-100 at no charge and the access to Threat Prevention, URL Filtering, Global Protect, and Wildfire for a nominal fee to the ACC's. https://www.paloaltonetworks.com/content/dam/paloaltonetworkscom/en_US/assets/pdf/datasheets/education/Authorized%20Academy%20Center.pdf (attached as Exhibit 39).

176.    Palo Alto Networks itself and through its authorized partners regularly provides classroom style training, demonstrations, and certification programs to help users use the '408

FINJAN'S AMENDED COMPLAINT FOR PATENT INFRINGEMENT

1  Patent Accused Products, including the following:

2  • Palo Alto Networks Essentials 1, where "[s]uccessful completion of this

3  three day, instructor led course will enable the student to install, configure, and manage the

4  entire line of Palo Alto Networks Next-Generation firewalls."

5  https://www.paloaltonetworks.com/content/dam/paloaltonetworkscom/en_US/assets/pdf/d

6  atasheets/education/5.0-essentials-1.pdf (attached as Exhibit 25);

7  • Palo Alto Network Essentials 2, which "Firewall Management expands on

8  201 course topics, while introducing many new features and functions of Palo Alto

9  Networks Next-Generation firewalls."

10  https://www.paloaltonetworks.com/content/dam/paloaltonetworkscom/en_US/assets/pdf/d

11  atasheets/education/5.0-essentials-2.pdf (attached as Exhibit 26);

12  • Palo Alto Networks Advanced Trouble Shooting, where students will

13  receive hands-on experience troubleshooting the security, networking, threat prevention,

14  logging, and reporting features of the Palo Alto Networks Operation System (PAN-OS).

15  https://www.paloaltonetworks.com/content/dam/paloaltonetworkscom/en_US/assets/pdf/d

16  atasheets/education/5.0-advanced-troubleshooting.pdf (attached as Exhibit 40);

17  • Accredited Configuration Engineer ("ACE"), where "[t]he primary goal of

18  the ACE exam is to serve as an objective indication of your ability to configure Palo Alto

19  Networks firewalls using the PAN-OS."

20  https://www.paloaltonetworks.com/services/education/ace.html (attached as Exhibit 27).

21  177.    Palo Alto Networks also offers a range of consulting services where "[e]xperienced

22  consultants from Palo Alto Networks provide on-site personalized assistance to create the optimal

23  implementation for your business."

24  https://www.paloaltonetworks.com/content/dam/paloaltonetworkscom/en_US/assets/pdf/services/

25  Consulting%20Services%20Overview.pdf (attached as Exhibit 29). The consulting services

26  further provide for employee and customer testing, setup and running the '408 Patent Accused

27  Products which include:

28  • Remote Installation of Software where Palo Alto Networks "offer(s)

43                          Case No. 14-cv-04908-PJH
FINJAN'S AMENDED COMPLAINT FOR PATENT INFRINGEMENT

Remote Install with Baseline Threat Protection . . . to quickly (and properly) install the next-generation firewall."

https://www.paloaltonetworks.com/content/dam/paloaltonetworkscom/en_US/assets/pdf/services/Consulting%20Services%20Overview.pdf (attached as Exhibit 29);

• Palo Alto Networks offering "experienced consultants will apply their extensive knowledge of Palo Alto Networks next-generation firewalls and best practices to identify recommended changes."

https://www.paloaltonetworks.com/content/dam/paloaltonetworkscom/en_US/assets/pdf/services/Consulting%20Services%20Overview.pdf (attached as Exhibit 29).

178. Palo Alto Networks provides the "Next-Generation Firewalls for Dummies" guide. This guide gives a background to the threat landscape, the challenges of the current threat landscape, in-depth discussion on how Next-Generation Firewalls addresses current threats, and then how to deploy and safely enable the Next-Generation Firewalls in one's organization. https://www.paloaltonetworks.com/content/dam/paloaltonetworkscom/en_US/assets/pdf/education/NGFW_dummies.pdf (attached as Exhibit 34).

179. Defendant is well aware of Finjan's patents. Finjan's claim chart for the '408 Patent is confidential. As such, Finjan offered to Defendant a Non-Disclosure Agreement to maintain the confidential nature of its analysis. Defendant refused to sign the agreement. Defendant has continued its infringing activity without a good faith effort to assure Finjan that it is not infringing Finjan's '408 Patent. Even after receiving Finjan's original Complaint for patent infringement, Defendant continued to release new versions of the '408 Patent Accused Products with the same or similar infringing functionality while the case was stayed. As such, Defendant has acted recklessly and continues to willfully, wantonly, and deliberately engage in acts of infringement of the '408 Patent, justifying an award to Finjan of increased damages under 35 U.S.C. § 284, and attorneys' fees and costs incurred under 35 U.S.C. § 285.

180. Defendant has had knowledge of the '408 Patent at least as of the time it learned of this action for infringement and by continuing the actions described above, has had the specific

intent to or was willfully blind to the fact that its actions would induce infringement of the '408 Patent.

181.    Palo Alto Networks actively and intentionally maintains websites, including Palo Alto Networks Services and its ancillary components Solution Assurance, Education, Support and Consulting, to promote the Palo Alto Networks '408 Patent Accused Products and to encourage potential customers, users and developers to use the '408 Patent Accused Products in the manner described by Finjan. https://www.paloaltonetworks.com/services.html (attached as Exhibit 33).

182.    Palo Alto Networks actively updates its websites, including Palo Alto Networks Services and its ancillary components Solution Assurance, Education, Support and Consulting, to promote the Palo Alto '408 Patent Accused Products including, but not limited to, the Palo Alto Networks Content-ID, User-ID, and App-ID, to encourage customers, users and developers to practice the methods claimed in the '408 Patent. https://www.paloaltonetworks.com/services.html (attached as Exhibit 33).

183.    Palo Alto Networks has been on notice of its inducement since at least as early as the original Complaint filed on November 4, 2014, and has continued to induce infringement to present.

## COUNT XIII

### (Direct Infringement of the '494 Patent pursuant to 35 U.S.C. § 271(a))

184.    Finjan repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

185.    Defendant has infringed one or more claims of the '494 Patent in violation of 35 U.S.C. § 271(a).

186.    Defendant's infringement is based upon literal infringement or infringement under the doctrine of equivalents, or both.

187.    Defendant's acts of making, using, importing, selling, and/or offering for sale infringing products and services have been without the permission, consent, authorization or license of Finjan.

188.    Defendant's infringement includes, but is not limited to, the manufacture, use, sale,

1  importation and/or offer for sale of Defendant's products and services, including, but not limited

2  to, the Next-Generation Security Platform, Next-Generation Firewall, Virtualized Firewall,

3  WildFire Subscription, WildFire Platform, URL Filtering Subscription, Threat Prevention

4  Subscription, Advanced EndPoint Protection, Strata Products, Prisma Products, and Cortex

5  Products (the "'494 Patent Accused Products") which embody the patented invention of the '494

6  Patent.

7  189.   Defendant's infringement of the '494 Patent has injured Finjan in an amount to be

8  proven at trial.

9  190.   Defendant is well aware of Finjan's patents. Finjan's claim chart for the '494

10  Patent is confidential. As such, Finjan offered to Defendant a Non-Disclosure Agreement to

11  maintain the confidential nature of its analysis. Defendant refused to sign the agreement.

12  Defendant has continued its infringing activity without a good faith effort to assure Finjan that it is

13  not infringing Finjan's '494 Patent. Even after receiving Finjan's original Complaint for patent

14  infringement, Defendant continued to release new versions of the '494 Patent Accused Products

15  with the same or similar infringing functionality while the case was stayed. As such, Defendant

16  has acted recklessly and continues to willfully, wantonly, and deliberately engage in acts of

17  infringement of the '494 Patent, justifying an award to Finjan of increased damages under 35

18  U.S.C. § 284, and attorneys' fees and costs incurred under 35 U.S.C. § 285.

19  **<u>COUNT XIV</u>**

20  **(Indirect Infringement of the '494 Patent pursuant to 35 U.S.C. § 271(b))**

21  191.   Finjan repeats, realleges, and incorporates by reference, as if fully set forth herein,

22  the allegations of the preceding paragraphs, as set forth above.

23  192.   Defendant has induced infringement of at least claims 3-5, 7-9 of the '494 Patent

24  under 35 U.S.C. § 271(b).

25  193.   In addition to directly infringing the '494 Patent, Defendant indirectly infringes the

26  '494 Patent pursuant to 35 U.S.C. § 271(b) by instructing, directing and/or requiring others,

27  including, but not limited to, its customers, users and developers, to perform one or more of the

28  steps of the method claims, either literally or under the doctrine of equivalents, or both, of the '494

FINJAN'S AMENDED COMPLAINT FOR PATENT INFRINGEMENT

Patent, where all the steps of the method claims are performed by either Palo Alto Networks, its customers, users or developers, or some combination thereof. Defendant knew or was willfully blind to the fact that it was inducing others, including customers, users and developers, to infringe by practicing, either themselves or in conjunction with Defendant, one or more method claims of the '494 Patent.

194.    Defendant knowingly and actively aided and abetted the direct infringement of the '494 Patent by instructing and encouraging its customers, users and developers to use the '494 Patent Accused Products. Such instructions and encouragement include, but are not limited to, advising third parties to use the '494 Patent Accused Products in an infringing manner, providing a mechanism through which third parties may infringe the '494 Patent, specifically through the use of the '494 Patent Accused Products, advertising and promoting the use of the '494 Patent Accused Products in an infringing manner, and distributing guidelines and instructions to third parties on how to use the '494 Patent Accused Products in an infringing manner.

195.    Palo Alto Networks provides detailed instruction to its customers and users regarding all aspects of the '494 Patent Accused Products. These instructions can be found at https://www.paloaltonetworks.com/customers.html (attached as Exhibit 24).

196.    Palo Alto Networks provides on-demand video demonstrations on how to configure and use the Next-Generation Firewall. This video can be viewed at https://www.paloaltonetworks.com/resources/demos/ngfw-overview-and-demo.html (attached as Exhibit 30).

197.    Palo Alto Networks provides technical documentation, administrators guides, hardware guides and getting started guides. These documents instruct users on ways to configure and operate the '494 Patent Accused Products. https://live.paloaltonetworks.com/community/documentation (attached as Exhibit 31). These documents include:

  • The "Next-Generation Firewalls for Dummies" guide. This guide gives a background to the threat landscape, the challenges of the current threat landscape, in-depth discussion on how Next-Generation Firewalls addresses current threat, and then how to

deploy and safely enable the Next-Generation Firewalls in one's organization. https://www.paloaltonetworks.com/content/dam/paloaltonetworkscom/en_US/assets/pdf/education/NGFW_dummies.pdf (attached as Exhibit 34);

•       The "Getting Started Guide" for PAN-OS 5.0. This guide provides details on how to active Threat Prevention, URL Filtering, Global Protect and other services. The guide also instructs user how to set the security profiles for Threat Prevention including Content-ID and WildFire. https://live.paloaltonetworks.com/docs/DOC-4214 (attached as Exhibit 13);

•       The "WildFire Administrator's Guide" to its user on their website. This guide shows users how to set the WildFire privilege levels as well as configure other aspects of WildFire. https://live.paloaltonetworks.com/docs/DOC-5129 (attached as Exhibit 41).

198.     Palo Alto Networks provides the webcast "Threat Review Series: Combining the Power of App-ID with Wildfire. This webcast discusses how users should leverage the App-ID technology in the Next-Generation Firewall with WildFire in order to further protect against malware.  This webcast can be found at https://www.paloaltonetworks.com/resources/webcasts/trs-combiningthe-power-of-app-id-with-wildfire.html (attached as Exhibit 32).

199.     Defendant is well aware of Finjan's patents. Finjan's claim chart for the '494 Patent is confidential. As such, Finjan offered to Defendant a Non-Disclosure Agreement to maintain the confidential nature of its analysis. Defendant refused to sign the agreement. Defendant has continued its infringing activity without a good faith effort to assure Finjan that it is not infringing Finjan's '494 Patent. Even after receiving Finjan's original Complaint for patent infringement, Defendant continued to release new versions of the '494 Patent Accused Products with the same or similar infringing functionality while the case was stayed. As such, Defendant has acted recklessly and continues to willfully, wantonly, and deliberately engage in acts of infringement of the '494 Patent, justifying an award to Finjan of increased damages under 35 U.S.C. § 284, and attorneys' fees and costs incurred under 35 U.S.C. § 285.

200.     Defendant has had knowledge of the '494 Patent at least as of the time it learned of this action for infringement and by continuing the actions described above, has had the specific intent to or was willfully blind to the fact that its actions would induce infringement of the '494 Patent.

201.     Palo Alto Networks actively and intentionally maintains websites, including Palo Alto Networks Services and its ancillary components Solution Assurance, Education, Support and Consulting, to promote the Palo Alto '494 Patent Accused Products and to encourage potential customers, users and developers to use the '494 Patent Accused Products in the manner described by Finjan.  https://www.paloaltonetworks.com/services.html (attached as Exhibit 33).

202.     Palo Alto Networks actively updates its websites, including Palo Alto Networks Services and its ancillary components Solution Assurance, Education, Support and Consulting, to promote the Palo Alto Networks '494 Patent Accused Products including, but not limited to, the Palo Alto Networks WildFire Threat Intelligence Cloud and WildFire, to encourage customers, users and developers to practice the methods claimed in the '494 Patent. https://www.paloaltonetworks.com/services.html (attached as Exhibit 33).

203.     Palo Alto Networks has been on notice of its inducement since at least as early as the original Complaint filed on November 4, 2014, and has continued to induce infringement.

### **PRAYER FOR RELIEF**

WHEREFORE, Finjan prays for judgment and relief as follows:

A.     An entry of judgment holding Defendant has infringed the '780 Patent, the '731 Patent, the '926 Patent, the '633 Patent, the '154 Patent, the '408 Patent, and the '494 Patent and is infringing the '154 Patent and '408 Patent; has induced infringement of the '780 Patent, the '731 Patent, the '926 Patent, the '633 Patent, the '408 Patent, the '154 Patent, and the '494 Patent and is inducing infringement of the '408 Patent and the '154 Patent;

B.     A preliminary and permanent injunction against Defendant and its officers, employees, agents, servants, attorneys, instrumentalities, and/or those in privity with them, from infringing the '154 Patent and the '408 Patent, or inducing the infringement of the '408 Patent and

1   the '154 Patent, and for all further and proper injunctive relief pursuant to 35 U.S.C. § 283;

2         C.     An award to Finjan of such damages as it shall prove at trial against Defendant that

3   is adequate to fully compensate Finjan for Defendant's infringement of the '780 Patent, the '731

4   Patent, the '926 Patent, the '633 Patent, the '154 Patent, the '408 Patent, and the '494 Patent, said

5   damages to be no less than a reasonable royalty, and on information and belief and based on

6   publicly available information, Finjan anticipates it will seek no less than $100 million at trial;

7         D.     A determination that Defendant's infringement has been willful, wanton, and

8   deliberate as to all Asserted Patents and all versions of the accused products and that the damages

9   against it be increased up to treble on this basis;

10         E.     A finding that this case is "exceptional" and an award to Finjan of its costs and

11   reasonable attorney's fees, as provided by 35 U.S.C. § 285;

12         F.     An accounting of all infringing sales and revenues, together with post judgment

13   interest and prejudgment interest from the first date of infringement of the '780 Patent, the '731

14   Patent, the '926 Patent, the '633 Patent, the '154 Patent, the '408 Patent, and the '494 Patent; and

15         G.     Such further and other relief as the Court may deem proper and just.

16

17   Dated:  March 31, 2021           Respectfully Submitted,

18                           */s/ Roger A. Denning*

19                           Juanita R. Brooks (CA SBN 75934)
                        brooks@fr.com

20                           Roger A. Denning (CA SBN 228998)
                        denning@fr.com

21                           Frank J. Albert (CA SBN 247741)
                        albert@fr.com

22                           K. Nicole Williams (CA SBN 291900)
                        nwilliams@fr.com

23                           Jared A. Smith (CA SBN 306576)
                        jasmith@fr.com

24                           Tucker N. Terhufen (CA SBN 311038)
                        terhufen@fr.com

25                           FISH & RICHARDSON P.C.

26                           12860 El Camino Real, Ste. 400

27                           San Diego, CA 92130
                        Telephone: (858) 678-5070 / Fax: (858) 678-5099

28

Aamir Kazi (*Pro Hac Vice*)
kazi@fr.com
Lawrence Jarvis (*Pro Hac Vice*)
jarvis@fr.com
FISH & RICHARDSON P.C.
1180 Peachtree St. NE, 21st floor
Atlanta, GA  30309
Telephone: (404) 892-5005 / Fax: (404) 892-5002

Phillip W. Goter (*Pro Hac Vice*)
goter@fr.com
FISH & RICHARDSON P.C.
3200 RBC Plaza, 60 South Sixth Street
Minneapolis, MN  55402
Telephone: (612) 335-5070 / Fax: (612) 288-9696

Susan E. Morrison (*Pro Hac Vice*)
morrison@fr.com
FISH & RICHARDSON P.C.
222 Delaware Ave., 17th Floor
P.O. Box 1114
Wilmington, DE  19801
Telephone: (302) 652-5070 / Fax: (302) 652-0607

Tracea Rice (*Pro Hac Vice*)
trice@fr.com
FISH & RICHARDSON P.C.
1000 Maine Ave. Ste. 1000
Washington, DC 20024
Telephone: (202) 783-5070 / Fax: (202) 783-2331

Attorneys for Plaintiff, FINJAN LLC