Michael A. Jacobs (CA SBN 111664)
MJacobs@mofo.com
Matthew A. Chivvis (CA SBN 251325)
MChivvis@mofo.com
Diek O. Van Nort (CA SBN 273823)
DVanNort@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Telephone: (415) 268-7000/Fax: (415) 268-7522

Attorneys for Defendant
PALO ALTO NETWORKS, INC.

Additional counsel on signature page

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| FINJAN LLC,<br><br>Plaintiff,<br><br>v.<br><br>PALO ALTO NETWORKS, INC.,<br><br>Defendant. | Case No. 14-cv-04908-PJH<br><br>**DEFENDANT PALO ALTO NETWORKS, INC.'S ANSWER TO AMENDED COMPLAINT FOR PATENT INFRINGEMENT AND COUNTERCLAIMS**<br><br>**DEMAND FOR JURY TRIAL**<br><br>Judge: Honorable Phyllis J. Hamilton |

1       Defendant Palo Alto Networks, Inc. ("PAN"), by its attorneys, hereby responds to the

2  Amended Complaint of Finjan LLC ("Finjan") in the above-identified action as follows:

3  **THE PARTIES**

4       1.     PAN lacks knowledge or information sufficient to form a belief about the truth of

5  the allegations contained in paragraph 1 of the Amended Complaint, and on that basis denies

6  them.

7       2.     PAN admits the allegations in paragraph 2 of the Amended Complaint.

8  **JURISDICTION AND VENUE**

9       3.     In response to paragraph 3 of the Amended Complaint, PAN admits that this

10  action arises under the patent laws of the United States and that this Court has subject matter

11  jurisdiction over this controversy.  PAN denies the remaining allegations.

12       4.     In response to paragraph 4 of the Amended Complaint, PAN does not dispute that

13  venue in this juridical district is proper.  PAN denies the remaining allegations.

14       5.     In response to paragraph 5 of the Amended Complaint, PAN does not dispute that

15  this Court may exercise personal jurisdiction over PAN.  PAN admits that it does business and

16  markets its products in this District, and that it brought suit in this jurisdiction in *Palo Alto*

17  *Networks, Inc. v. Juniper Networks, Inc.*, Case No. 4:13-cv-04510-SBA (N.D. Cal. Sept. 30,

18  2013).  PAN denies that it infringes or induces infringement of the Patents-in-Suit in this or any

19  other District.  PAN lacks knowledge or information sufficient to form a belief about the truth of

20  the remaining allegations, and on that basis denies them.

21  **INTRADISTRICT ASSIGNMENT**

22       6.     Paragraph 6 of the Amended Complaint states the case assignment rule for patent

23  actions set forth in Civil Local Rule 3-2(c), to which no response is required.

24  **FINJAN'S INNOVATIONS**

25       7.     PAN lacks knowledge or information sufficient to form a belief about the truth of

26  the allegations contained in paragraph 7 of the Amended Complaint, and on that basis denies

27  them.

28       8.     In response to paragraph 8 of the Amended Complaint, PAN denies that Finjan

1    pioneered an approach to online security.  PAN lacks knowledge or information sufficient to form

2    a belief about the truth of the remaining allegations, and on that basis denies them.

3           9.      PAN lacks knowledge or information sufficient to form a belief about the truth of

4    the allegations contained in paragraph 9 of the Amended Complaint, and on that basis denies

5    them.

6           10.     In response to paragraph 10 of the Amended Complaint, PAN admits that U.S.

7    Patent No. 6,804,780 ("the '780 Patent") is entitled "SYSTEM AND METHOD FOR

8    PROTECTING A COMPUTER AND A NETWORK FROM HOSTILE DOWNLOADABLES"

9    and was issued on October 12, 2004.  PAN admits that Exhibit 1 to the Amended Complaint

10   appears to be a copy of the '780 Patent.  PAN lacks knowledge or information sufficient to form a

11   belief about the truth of the remaining allegations, and on that basis denies them.

12          11.     PAN lacks knowledge or information sufficient to form a belief about the truth of

13   the allegations contained in paragraph 11 of the Amended Complaint, and on that basis denies

14   them.

15          12.     PAN lacks knowledge or information sufficient to form a belief about the truth of

16   the allegations contained in paragraph 12 of the Amended Complaint, and on that basis denies

17   them.

18          13.     In response to paragraph 13 of the Amended Complaint, PAN admits that U.S.

19   Patent No. 7,418,731 ("the '731 Patent") is entitled "METHOD AND SYSTEM FOR CACHING

20   AT SECURE GATEWAYS" and was issued on August 26, 2008.  PAN admits that Exhibit 2 to

21   the Amended Complaint appears to be a copy of the '731 Patent.  PAN lacks knowledge or

22   information sufficient to form a belief about the truth of the remaining allegations, and on that

23   basis denies them.

24          14.     PAN lacks knowledge or information sufficient to form a belief about the truth of

25   the allegations contained in paragraph 14 of the Amended Complaint, and on that basis denies

26   them.

27          15.     PAN lacks knowledge or information sufficient to form a belief about the truth of

28   the allegations contained in paragraph 15 of the Amended Complaint, and on that basis denies

3

them.

16.     In response to paragraph 16 of the Amended Complaint, PAN admits that U.S. Patent No. 7,613,926 ("the '926 Patent") is entitled "METHOD AND SYSTEM FOR PROTECTING A COMPUTER AND A NETWORK FROM HOSTILE DOWNLOADABLES" and was issued on November 3, 2009.  PAN admits that Exhibit 3 to the Amended Complaint appears to be a copy of the '926 Patent.  PAN lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, and on that basis denies them.

17.     PAN lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 17 of the Amended Complaint, and on that basis denies them.

18.     PAN lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 18 of the Amended Complaint, and on that basis denies them.

19.     In response to paragraph 19 of the Amended Complaint, PAN admits that U.S. Patent No. 7,647,633 ("the '633 Patent") is entitled "MALICIOUS MOBILE CODE RUNTIME MONITORING SYSTEM AND METHODS" and was issued on January 12, 2010.  PAN admits that Exhibit 4 to the Amended Complaint appears to be a copy of the '780 Patent.  PAN lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, and on that basis denies them.

20.     PAN lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 20 of the Amended Complaint, and on that basis denies them.

21.     PAN lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 21 of the Amended Complaint, and on that basis denies them.

22.     In response to paragraph 22 of the Amended Complaint, PAN admits that U.S. Patent No. 8,141,154 ("the '154 Patent") is entitled "SYSTEM AND METHOD FOR INSPECTING DYNAMICALLY GENERATED EXECUTABLE CODE" and was issued on

4

March 20, 2012.  PAN admits that Exhibit 5 to the Amended Complaint appears to be a copy of the '154 Patent.  PAN lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, and on that basis denies them.

23.     PAN lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 23 of the Amended Complaint, and on that basis denies them.

24.     PAN lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 24 of the Amended Complaint, and on that basis denies them.

25.     In response to paragraph 10 of the Amended Complaint, PAN admits that U.S. Patent No. 8,225,408 ("the '408 Patent") is entitled "METHOD AND SYSTEM FOR ADAPTIVE RULE-BASED CONTENT SCANNERS" and was issued on July 17, 2012.  PAN admits that Exhibit 6 to the Amended Complaint appears to be a copy of the '408 Patent.  PAN lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, and on that basis denies them.

26.     PAN lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 26 of the Amended Complaint, and on that basis denies them.

27.     PAN lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 27 of the Amended Complaint, and on that basis denies them.

28.     In response to paragraph 28 of the Amended Complaint, PAN admits that U.S. Patent No. 8,677,494 ("the '494 Patent") is entitled "MALICIOUS MOBILE CODE RUNTIME MONITORING SYSTEM AND METHODS" and was issued on March 18, 2014.  PAN admits that Exhibit 7 to the Amended Complaint appears to be a copy of the '494 Patent.  PAN lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, and on that basis denies them.

29.     PAN lacks knowledge or information sufficient to form a belief about the truth of

5

1    the allegations contained in paragraph 29 of the Amended Complaint, and on that basis denies

2    them.

3        30.    PAN lacks knowledge or information sufficient to form a belief about the truth of

4    the allegations contained in paragraph 30 of the Amended Complaint, and on that basis denies

5    them.

6                                   **PALO ALTO NETWORKS**

7        31.    In response to paragraph 31 of the Amended Complaint, PAN admits that it

8    provides Next-Generation firewall products including Virtualized Firewall products, Security

9    Subscriptions including Threat Prevention, URL Filtering and WildFire, Advanced Endpoint

10   Protection products, and other security products.  PAN lacks knowledge or information sufficient

11   to form a belief about the truth of the remaining allegations, and on that basis denies them.

12       32.    In response to paragraph 32 of the Amended Complaint, PAN admits that it

13   provides Next-Generation firewall products including Virtualized Firewall products, Security

14   Subscriptions including Threat Prevention, URL Filtering and WildFire, Advanced Endpoint

15   Protection products, and other security products.  PAN also admits that it had a website that refers

16   to its corporate profile, including investor presentation materials, at

17   http://investors.paloaltonetworks.com/phoenix.zhtml?c=251350&p=irol-irhome.  PAN lacks

18   knowledge or information sufficient to form a belief about the truth of the remaining allegations,

19   and on that basis denies them.

20       33.    In response to paragraph 33 of the Amended Complaint, PAN admits that it offers

21   Next-Generation firewall products including Virtualized Firewall products, Security

22   Subscriptions including Threat Prevention, URL Filtering and WildFire, Advanced Endpoint

23   Protection products, and other security products.  PAN lacks knowledge or information sufficient

24   to form a belief about the truth of the remaining allegations, and on that basis denies them.

25       34.    In response to paragraph 34 of the Amended Complaint, PAN admits that Exhibit

26   9 appears to be a PAN publication entitled "App-ID Technology Brief" and that Exhibit 10

27   appears to be a PAN 10-K for the fiscal year that ended July 31, 2013.  To the extent Finjan

28   purports to excerpt, characterize, or summarize these publications, PAN refers Finjan and the

1   Court to the publications for their true and correct content.  Except as specifically admitted

2   herein, these allegations are denied.

3         35.    In response to paragraph 35 of the Amended Complaint, PAN admits that

4   Exhibit 11 appears to be a PAN publication entitled "User-ID Technology Brief" and that

5   Exhibit 10 appears to be a PAN 10-K for the fiscal year that ended July 31, 2013.  To the extent

6   Finjan purports to excerpt, characterize, or summarize these publications, PAN refers Finjan and

7   the Court to the publications for their true and correct content.  Except as specifically admitted

8   herein, these allegations are denied.

9         36.    In response to paragraph 36 of the Amended Complaint, PAN admits that

10  Exhibit 12 appears to be a PAN publication entitled "Content-ID Technology Brief" and that

11  Exhibit 13 appears to be a PAN publication entitled "Palo Alto Networks Getting Started Guide."

12  To the extent Finjan purports to excerpt, characterize, or summarize these publications, PAN

13  refers Finjan and the Court to the publications for their true and correct content.  Except as

14  specifically admitted herein, these allegations are denied.

15        37.    In response to paragraph 37 of the Amended Complaint, PAN admits that WildFire

16  is available on a subscription basis.  PAN also admits that WildFire is available using the WF-500

17  appliance.  PAN lacks knowledge or information sufficient to form a belief about the truth of the

18  remaining allegations, and on that basis denies them.

19        38.    In response to paragraph 38 of the Amended Complaint, PAN admits that

20  Exhibit 14 appears to be a PAN publication entitled "Moving from Detection to Prevention of

21  Modern Malware – Wildfire:  Modern Malware Prevention," and that Exhibit 15 appears to be a

22  PAN publication entitled "Palo Alto Networks Threat Visibility for Government Networks –

23  Learning About Your Risks."  To the extent Finjan purports to excerpt, characterize, or

24  summarize these publications, PAN refers Finjan and the Court to the publications for their true

25  and correct content.  Except as specifically admitted herein, these allegations are denied.

26        39.    In response to paragraph 39 of the Amended Complaint, PAN admits that

27  Exhibit 16 appears to be a PAN publication entitled "PAN-OS XML-based REST API Usage

28  Guide" and that Exhibit 17 appears to be a PAN publication entitled "Architecting User

7

Identification (User-ID) Deployments." To the extent Finjan purports to excerpt, characterize, or summarize these publications, PAN refers Finjan and the Court to the publications for their true and correct content. Except as specifically admitted herein, these allegations are denied.

40.     In response to paragraph 40 of the Amended Complaint, PAN admits that Exhibit 18 appears to be a PAN publication entitled "Traps: Advanced Endpoint Protection." To the extent Finjan purports to excerpt, characterize, or summarize these publications, PAN refers Finjan and the Court to the publications for their true and correct content. Except as specifically admitted herein, these allegations are denied.

41.     In response to paragraph 41 of the Amended Complaint, PAN admits that it has stated in an SEC filing that it acquired Cyvera Ltd. ("Cyvera") on April 9, 2014 for approximately $177,647,000 in cash and stock. PAN also admits that it acquired TRAPS technology from Cyvera. PAN lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, and on that basis denies them.

42.     In response to paragraph 42 of the Amended Complaint, PAN admits that it provides Strata, Prisma, and Cortex security products. PAN lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, and on that basis denies them.

43.     In response to paragraph 43 of the Amended Complaint, PAN admits that it provides Strata network security products including C-N Series, DNS Security, GlobalProtect, IOT Security, Next-Generation Firewalls, PA-Series, Panorama, Threat Prevention, URL Filtering, and WildFire. PAN lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, and on that basis denies them.

44.     PAN lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 44 of the Amended Complaint, and on that basis denies them.

45.     In response to paragraph 45 of the Amended Complaint, PAN admits that it provides Prisma cloud security products including Prisma Access, Prisma Cloud, Prisma SaaS, and VM-Series. PAN lacks knowledge or information sufficient to form a belief about the truth

8

of the remaining allegations, and on that basis denies them.

46.     PAN lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 46 of the Amended Complaint, and on that basis denies them.

47.     In response to paragraph 47 of the Amended Complaint, PAN admits that it provides Cortex security options products including Autofocus Threat Intelligence, Cortex Data Lake, Cortex XDR, and Cortex XSOAR.  PAN lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, and on that basis denies them.

48.     PAN lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 48 of the Amended Complaint, and on that basis denies them.

49.     PAN denies that it infringes or induces infringement of the Patents-in-Suit.  PAN lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in paragraph 49 of the Amended Complaint, and on that basis denies them.

**PALO ALTO NETWORKS' INFRINGEMENT OF FINJAN'S PATENTS**

50.     PAN denies the allegations in paragraph 50 of the Amended Complaint.

51.     PAN denies the allegations in paragraph 51 of the Amended Complaint.

**COUNT I**

**([Alleged] Direct Infringement of the '780 Patent pursuant to 35 U.S.C. § 279(a))**

52.     PAN repeats, realleges, and incorporates by reference its responses to the allegations of the preceding paragraphs.

53.     PAN denies the allegations in paragraph 53 of the Amended Complaint.

54.     PAN denies the allegations in paragraph 54 of the Amended Complaint.

55.     PAN denies the allegations in paragraph 55 of the Amended Complaint.

56.     PAN denies the allegations in paragraph 56 of the Amended Complaint.

57.     PAN denies the allegations in paragraph 57 of the Amended Complaint.

58.     In response to paragraph 58 of the Amended Complaint, PAN admits that Finjan sent PAN a letter regarding the '780 Patent dated October 4, 2013, and provided what it

represented as a claim chart of claim 1 of the '780 patent, which was the only patent claim identified by Finjan at that time.  PAN also admits that the parties conducted a teleconference on September 26, 2014, during which PAN identified deficiencies in Finjan's claim charts, as acknowledged by Finjan's own representative—Ivan Chaperot, Vice President, IP Licensing. (Oct. 13, 2014 email from Ritter to Chaperot (attached as Exhibit A).)  For example, during the September 26 call, PAN pointed out that Finjan failed to provide, among other things, any explanation as to how it reasonably believed PAN's accused technology satisfied the requirement of "performing a hashing function on the Downloadable and the fetched software components to generate a Downloadable ID" in claim 1 of the '780 Patent.  PAN informed Finjan that if it provided any additional or claim charts, PAN would review such information.  (*Id.*)  Finjan refused, however, to provide any additional information or support for its infringement allegations for the '780 Patent and, unless PAN agreed to enter into a non-disclosure agreement ("NDA"), Finjan would not provide PAN with additional claim charts.  (Oct. 13, 2014 Email from Chaperot to Ritter (attached as Exhibit A).)  Although PAN repeatedly stated to Finjan that it did not see any reason for an NDA, Finjan failed to provide a reasonable justification for its insistence on an NDA.  Finjan also did not explain why an NDA was necessary given that it had admittedly "shared detailed claim chart analysis with Palo Alto Networks without [an] NDA." (Oct. 10, 2014 Email from Chaperot to Ritter (attached as Exhibit A).)  PAN denies the remaining allegations.

## COUNT II

### ([Alleged] Indirect Infringement of the '780 Patent pursuant to 35 U.S.C. § 271(b))

59.  PAN repeats, realleges, and incorporates by reference its responses to the allegations of the preceding paragraphs.

60.  PAN denies the allegations in paragraph 60 of the Amended Complaint.

61.  PAN denies the allegations in paragraph 61 of the Amended Complaint.

62.  PAN denies the allegations in paragraph 62 of the Amended Complaint.

63.  In response to paragraph 63 of the Amended Complaint, PAN admits that it has a website that provides information regarding its products at

https://www.paloaltonetworks.com/customers.html.  PAN lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, and on that basis denies them.

64.     In response to paragraph 64 of the Amended Complaint, PAN admits that it had a website that stated the following:  (1) "[s]uccessful completion of this three-day, instructor led course will enable the student to install, configure, and manage the entire line of Palo Alto Networks Next-Generation firewalls" at https://www.paloaltonetworks.com/content/dam/paloaltonetworks-com/en_US/assets/pdf/datasheets/education/5.0-essentials-1.pdf; (2) "Firewall Management expands on 201 course topics, while introducing many new features and functions of Palo Alto Networks Next-Generation firewalls" at https://www.paloaltonetworks.com/content/dam/paloaltonetworks-com/en_US/assets/pdf/datasheets/education/5.0-essentials-2.pdf; and (3) "[t]he primary goal of the ACE exam is to serve as an objective indication of your ability to configure Palo Alto Networks firewalls using the PAN-OS" at https://www.paloaltonetworks.com/services/education/cnse.html.  PAN lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, and on that basis denies them.

65.     In response to paragraph 65 of the Amended Complaint, PAN admits that it had a website that referred to consulting services.  PAN lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, and on that basis denies them.

66.     In response to paragraph 66 of the Amended Complaint, PAN admits that it had a website that referred to consulting services.  PAN lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, and on that basis denies them.

67.     In response to paragraph 67 of the Amended Complaint, PAN admits that it has a website that provides a video entitled "Next-Generation Firewall Overview and Demo" at https://www.paloaltonetworks.com/resources/demos/ngfw-overview-and-demo.html.  PAN lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations,

and on that basis denies them.

68.     In response to paragraph 68 of the Amended Complaint, PAN admits that it has a website that provides certain technical documentation guides.  PAN lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, and on that basis denies them.

69.     In response to paragraph 69 of the Amended Complaint, PAN admits that it had a website that referred to "Threat Review Series: Combining the Power of App-ID with WildFire" at https://www.paloaltonetworks.com/resources/webcasts/trs-combining-the-power-of-app-idwithwildfire.html.  PAN lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, and on that basis denies them.

70.     In response to paragraph 70 of the Amended Complaint, PAN admits that it had a website that referred to an XML-based API at https://live.paloaltonetworks.com/docs/DOC-5939.  PAN lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, and on that basis denies them.

71.     In response to paragraph 71 of the Amended Complaint, PAN admits that Finjan sent PAN a letter regarding the '780 Patent dated October 4, 2013, and provided what it represented as a claim chart of claim 1 of the '780 patent, which was the only patent claim identified by Finjan at that time.  PAN also admits that the parties conducted a teleconference on September 26, 2014, during which PAN identified deficiencies in Finjan's claim charts, as acknowledged by Finjan's own representative—Ivan Chaperot, Vice President, IP Licensing. (Oct. 13, 2014 email from Ritter to Chaperot (attached as Exhibit A).)  For example, during the September 26 call, PAN pointed out that Finjan failed to provide, among other things, any explanation as to how it reasonably believed PAN's accused technology satisfied the requirement of "performing a hashing function on the Downloadable and the fetched software components to generate a Downloadable ID" in claim 1 of the '780 Patent.  PAN informed Finjan that if it provided any additional or claim charts, PAN would review such information.  (*Id.*)  Finjan refused, however, to provide any additional information or support for its infringement allegations for the '780 Patent and, unless PAN agreed to enter into a non-disclosure agreement

("NDA"), Finjan would not provide PAN with additional claim charts.  (Oct. 13, 2014 Email from Chaperot to Ritter (attached as Exhibit A).)  Although PAN repeatedly stated to Finjan that it did not see any reason for an NDA, Finjan failed to provide a reasonable justification for its insistence on an NDA.  Finjan also did not explain why an NDA was necessary given that it had admittedly "shared detailed claim chart analysis with Palo Alto Networks without [an] NDA." (Oct. 10, 2014 Email from Chaperot to Ritter (attached as Exhibit A).)  PAN denies the remaining allegations.

72.     On information and belief, Finjan sent PAN a letter dated October 4, 2013 that identified the '780 Patent.  PAN denies the remaining allegations in paragraph 72 of the Amended Complaint.

73.     In response to paragraph 73 of the Amended Complaint, PAN admits that it has a website that refers to support services at https://www.paloaltonetworks.com/services.html.  PAN lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, and on that basis denies them.

74.     In response to paragraph 74 of the Amended Complaint, PAN admits that it has a website that refers to support services at https://www.paloaltonetworks.com/services.html.  PAN lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, and on that basis denies them.

75.     PAN denies the allegations in paragraph 75 of the Amended Complaint.

## COUNT III

**([Alleged] Direct Infringement of the ''731 Patent pursuant to 35 U.S.C. § 271(a))**

76.     PAN repeats, realleges, and incorporates by reference its responses to the allegations of the preceding paragraphs.

77.     PAN denies the allegations in paragraph 77 of the Amended Complaint.

78.     PAN denies the allegations in paragraph 78 of the Amended Complaint.

79.     PAN denies the allegations in paragraph 79 of the Amended Complaint.

80.     PAN denies the allegations in paragraph 80 of the Amended Complaint.

81.     PAN denies the allegations in paragraph 81 of the Amended Complaint.

82.     In response to paragraph 82 of the Amended Complaint, PAN admits that Finjan contacted PAN regarding the '731 Patent on June 20, 2014, and offered to provide PAN with what it represented as a claim chart for the '731 Patent.  Finjan refused, however, to provide the claim chart, or to provide any additional information or support for its infringement allegations for the '731 Patent, unless PAN agreed to enter into a non-disclosure agreement ("NDA"). (Jun. 20, 2014 Email from Chaperot to Ritter (attached as Exhibit B).)  Although PAN repeatedly stated to Finjan that it did not see any reason for an NDA, Finjan failed to provide a reasonable justification for its insistence on an NDA.  Finjan also did not explain why an NDA was necessary given that it had admittedly "shared detailed claim chart analysis with Palo Alto Networks without [an] NDA."  (Oct. 10, 2014 Email from Chaperot to Ritter (attached as Exhibit A).)  Finjan never provided PAN with any claim chart explaining how PAN's products allegedly infringe the '731 Patent.  PAN denies the remaining allegations.

## COUNT IV

### ([Alleged] Indirect Infringement of the '731 Patent pursuant to 35 U.S.C. § 271(b))

83.     PAN repeats, realleges, and incorporates by reference its responses to the allegations of the preceding paragraphs.

84.     PAN denies the allegations in paragraph 84 of the Amended Complaint.

85.     PAN denies the allegations in paragraph 85 of the Amended Complaint.

86.     PAN denies the allegations in paragraph 86 of the Amended Complaint.

87.     In response to paragraph 87 of the Amended Complaint, PAN admits that it has a website that provides information regarding its products at https://www.paloaltonetworks.com/customers.html.  PAN lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, and on that basis denies them.

88.     In response to paragraph 88 of the Amended Complaint, PAN admits that it has a website that provides a video entitled "Next-Generation Firewall Overview and Demo" at https://www.paloaltonetworks.com/resources/demos/ngfw-overview-and-demo.html.  PAN lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations,

14

1    and on that basis denies them.

2         89.    In response to paragraph 89 of the Amended Complaint, PAN admits that it has a

3    website that provides certain technical documentation and guides.  PAN also admits that it had a

4    website that provided the following:  (1) the "Next-Generation Firewalls for Dummies" guide at

5    https://www.paloaltonetworks.com/content/dam/paloaltonetworks-

6    com/en_US/assets/pdf/education/NGFW_dummies.pdf; and (2) the "Getting Started Guide" for

7    PAN-OS 5.0 at https://live.paloaltonetworks.com/docs/DOC-4214.  PAN lacks knowledge or

8    information sufficient to form a belief about the truth of the remaining allegations, and on that

9    basis denies them.

10        90.    In response to paragraph 90 of the Amended Complaint, PAN admits that it had a

11   website that provided a video entitled "Application Visibility and Control" at

12   https://www.paloaltonetworks.com/resources/demos/applicationvisibility-and-control.html.  PAN

13   lacks knowledge or information sufficient to form a belief about the truth of the remaining

14   allegations, and on that basis denies them.

15        91.    In response to paragraph 91 of the Amended Complaint, PAN admits that it had a

16   website that provides a "Threat Prevention Deployment Tech Note" at

17   https://live.paloaltonetworks.com/docs/DOC-3094.  PAN lacks knowledge or information

18   sufficient to form a belief about the truth of the remaining allegations, and on that basis denies

19   them.

20        92.    In response to paragraph 92 of the Amended Complaint, PAN admits that it had a

21   website that referred to "policy control" and related functionality at

22   https://www.paloaltonetworks.com/products/features/policycontrol.html.  PAN lacks knowledge

23   or information sufficient to form a belief about the truth of the remaining allegations, and on that

24   basis denies them.

25        93.    In response to paragraph 93 of the Amended Complaint, PAN admits that Finjan

26   contacted PAN regarding the '731 Patent on June 20, 2014, and offered to provide PAN with

27   what it represented as a claim chart for the '731 Patent.  Finjan refused, however, to provide the

28   claim chart, or to provide any additional information or support for its infringement allegations

15

for the '731 Patent, unless PAN agreed to enter into a non-disclosure agreement ("NDA"). (Jun. 20, 2014 Email from Chaperot to Ritter (attached as Exhibit B).)  Although PAN repeatedly stated to Finjan that it did not see any reason for an NDA, Finjan failed to provide a reasonable justification for its insistence on an NDA.  Finjan also did not explain why an NDA was necessary given that it had admittedly "shared detailed claim chart analysis with Palo Alto Networks without [an] NDA."  (Oct. 10, 2014 Email from Chaperot to Ritter (attached as Exhibit A).)  Finjan never provided PAN with any claim chart explaining how PAN's products allegedly infringe the '731 Patent.  PAN denies the remaining allegations.

94.     In response to paragraph 94 of the Amended Complaint, PAN admits that Finjan contacted PAN regarding the '731 Patent on June 20, 2014.  PAN denies the remaining allegations.

95.     In response to paragraph 95 of the Amended Complaint, PAN admits that it has a website that refers to support services at https://www.paloaltonetworks.com/services.html.  PAN lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, and on that basis denies them.

96.     In response to paragraph 96 of the Amended Complaint, PAN admits that it has a website that refers to support services at https://www.paloaltonetworks.com/services.html.  PAN lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, and on that basis denies them.

97.     PAN denies the allegations in paragraph 97 of the Amended Complaint.

## COUNT V

**([Alleged] Direct Infringement of the '926 Patent pursuant to 35 U.S.C. § 271(a))**

98.     PAN repeats, realleges, and incorporates by reference its responses to the allegations of the preceding paragraphs.

99.     PAN denies the allegations in paragraph 99 of the Amended Complaint.

100.    PAN denies the allegations in paragraph 100 of the Amended Complaint.

101.    PAN denies the allegations in paragraph 101 of the Amended Complaint.

102.    PAN denies the allegations in paragraph 102 of the Amended Complaint.

103.    PAN denies the allegations in paragraph 103 of the Amended Complaint.

104.    In response to paragraph 104 of the Amended Complaint, PAN admits that Finjan never identified the '926 Patent, nor did it provide or offer to provide PAN with a claim chart for the '926 Patent.  PAN denies the remaining allegations.

## COUNT VI

### ([Alleged] Indirect Infringement of the '926 Patent pursuant to 35 U.S.C. § 271(b))

105.    PAN repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

106.    PAN denies the allegations in paragraph 106 of the Amended Complaint.

107.    PAN denies the allegations in paragraph 107 of the Amended Complaint.

108.    PAN denies the allegations in paragraph 108 of the Amended Complaint.

109.    In response to paragraph 109 of the Amended Complaint, PAN admits that it has a website that provides information regarding its products at https://www.paloaltonetworks.com/customers.html.  PAN lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, and on that basis denies them.

110.    In response to paragraph 110 of the Amended Complaint, PAN admits that it had a website that stated the following:  (1) "[s]uccessful completion of this three-day, instructor led course will enable the student to install, configure, and manage the entire line of Palo Alto Networks Next-Generation firewalls" at https://www.paloaltonetworks.com/content/dam/paloaltonetworks-com/en_US/assets/pdf/datasheets/education/5.0-essentials-1.pdf; (2) "Firewall Management expands on 201 course topics, while introducing many new features and functions of Palo Alto Networks Next-Generation firewalls" at https://www.paloaltonetworks.com/content/dam/paloaltonetworks-com/en_US/assets/pdf/datasheets/education/5.0-essentials-2.pdf; and (3) "[t]he primary goal of the ACE exam is to serve as an objective indication of your ability to configure Palo Alto Networks firewalls using the PAN-OS" at

17

https://www.paloaltonetworks.com/services/education/cnse.html.  PAN lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, and on that basis denies them.

111.    In response to paragraph 111 of the Amended Complaint, PAN admits that it had a website that referred to consulting services.  PAN lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, and on that basis denies them.

112.    In response to paragraph 112 of the Amended Complaint, PAN admits that it had a website that referred to consulting services.  PAN lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, and on that basis denies them.

113.    In response to paragraph 113 of the Amended Complaint, PAN admits that it has a website that provides a video entitled "Next-Generation Firewall Overview and Demo" at https://www.paloaltonetworks.com/resources/demos/ngfw-overview-and-demo.html.  PAN lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, and on that basis denies them.

114.    In response to paragraph 114 of the Amended Complaint, PAN admits that it has a website that provides certain technical documentation guides.  PAN lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, and on that basis denies them.

115.    In response to paragraph 115 of the Amended Complaint, PAN admits that Finjan never identified the '926 Patent, nor did it provide or offer to provide PAN with a claim chart for the '926 Patent.  PAN denies the remaining allegations.

116.    In response to paragraph 116 of the Amended Complaint, PAN admits that it had knowledge of the '926 Patent as of the time it learned of this action for alleged infringement. PAN denies the remaining allegations.

117.    In response to paragraph 117 of the Amended Complaint, PAN admits that it has a website that refers to support services at https://www.paloaltonetworks.com/services.html.  PAN lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, and on that basis denies them.

18

118.    In response to paragraph 118 of the Amended Complaint, PAN admits that it has a website that refers to support services at https://www.paloaltonetworks.com/services.html.  PAN lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, and on that basis denies them.

119.    PAN denies the allegations in paragraph 119 of the Amended Complaint.

## COUNT VII

### ([Alleged] Direct Infringement of the '633 Patent pursuant to 35 U.S.C. § 271(a))

120.    PAN repeats, realleges, and incorporates by reference its responses to the allegations of the preceding paragraphs.

121.    PAN denies the allegations in paragraph 121 of the Amended Complaint.

122.    PAN denies the allegations in paragraph 122 of the Amended Complaint.

123.    PAN denies the allegations in paragraph 123 of the Amended Complaint.

124.    PAN denies the allegations in paragraph 124 of the Amended Complaint.

125.    PAN denies the allegations in paragraph 125 of the Amended Complaint.

126.    In response to paragraph 126 of the Amended Complaint, PAN admits that Finjan never identified the '633 patent, nor did it provide or offer to provide PAN with a claim chart for the '633 patent.  PAN denies the remaining allegations.

## COUNT VIII

### ([Alleged] Indirect Infringement of the '633 Patent pursuant to 35 U.S.C. § 271(b))

127.    PAN repeats, realleges, and incorporates by reference its responses to the allegations of the preceding paragraphs.

128.    PAN denies the allegations in paragraph 128 of the Amended Complaint.

129.    PAN denies the allegations in paragraph 129 of the Amended Complaint.

130.    PAN denies the allegations in paragraph 130 of the Amended Complaint.

131.    In response to paragraph 131 of the Amended Complaint, PAN admits that it has a website that provides information regarding its products at https://www.paloaltonetworks.com/customers.html.  PAN lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, and on that basis denies

1     them.

2         132.    In response to paragraph 132 of the Amended Complaint, PAN admits that it has a

3     website that provides a video entitled "Next-Generation Firewall Overview and Demo" at

4     https://www.paloaltonetworks.com/resources/demos/ngfw-overview-and-demo.html.  PAN lacks

5     knowledge or information sufficient to form a belief about the truth of the remaining allegations,

6     and on that basis denies them.

7         133.    In response to paragraph 133 of the Amended Complaint, PAN admits that it has a

8     website that provides certain technical documentation and guides.  PAN also admits that it had a

9     website that provided the following:  (1) the "Next-Generation Firewalls for Dummies" guide at

10    https://www.paloaltonetworks.com/content/dam/paloaltonetworks-

11    com/en_US/assets/pdf/education/NGFW_dummies.pdf; and (2) the "Getting Started Guide" for

12    PAN-OS 5.0 at https://live.paloaltonetworks.com/docs/DOC-4214.  PAN lacks knowledge or

13    information sufficient to form a belief about the truth of the remaining allegations, and on that

14    basis denies them.

15        134.    In response to paragraph 134 of the Amended Complaint, PAN admits that it had a

16    website that provides a "Threat Prevention Deployment Tech Note" at

17    https://live.paloaltonetworks.com/docs/DOC-3094.  PAN lacks knowledge or information

18    sufficient to form a belief about the truth of the remaining allegations, and on that basis denies

19    them.

20        135.    In response to paragraph 135 of the Amended Complaint, PAN admits that Finjan

21    never identified the '633 Patent, nor did it provide or offer to provide PAN with a claim chart for

22    the '633 Patent.  PAN denies the remaining allegations.

23        136.    In response to paragraph 136 of the Amended Complaint, PAN admits it had

24    knowledge of the '633 patent as of the time it learned of this action for alleged infringement.

25    PAN denies the remaining allegations.

26        137.    In response to paragraph 137 of the Amended Complaint, PAN admits that it has a

27    website that refers to support services at https://www.paloaltonetworks.com/services.html.  PAN

28    lacks knowledge or information sufficient to form a belief about the truth of the remaining

20

1    allegations, and on that basis denies them.

2          138.    In response to paragraph 138 of the Amended Complaint, PAN admits that it has a

3    website that refers to support services at https://www.paloaltonetworks.com/services.html.  PAN

4    lacks knowledge or information sufficient to form a belief about the truth of the remaining

5    allegations, and on that basis denies them.

6          139.    PAN denies the allegations in paragraph 139 of the Amended Complaint.

7                                    **COUNT IX**

8    **([Alleged] Direct Infringement of the '154 Patent pursuant to 35 U.S.C. § 271(a))**

9          140.    PAN repeats, realleges, and incorporates by reference its responses to the

10   allegations of the preceding paragraphs.

11         141.    PAN denies the allegations in paragraph 141 of the Amended Complaint.

12         142.    PAN denies the allegations in paragraph 142 of the Amended Complaint.

13         143.    PAN denies the allegations in paragraph 143 of the Amended Complaint.

14         144.    PAN denies the allegations in paragraph 144 of the Amended Complaint.

15         145.    PAN denies the allegations in paragraph 145 of the Amended Complaint.

16         146.    PAN denies the allegations in paragraph 146 of the Amended Complaint.

17         147.    In response to paragraph 147 of the Amended Complaint, PAN admits that Finjan

18   contacted PAN regarding the '154 Patent on June 20, 2014, and offered to provide PAN with

19   what it represented as a claim chart for the '154 Patent.  Finjan refused, however, to provide the

20   claim chart, or to provide any other information or support for its infringement allegations for the

21   '154 Patent, unless PAN agreed to enter into a non-disclosure agreement ("NDA").  (Jun. 20,

22   2014 Email from Chaperot to Ritter (attached as Exhibit B).)  Although PAN repeatedly stated to

23   Finjan that it did not see any reason for an NDA, Finjan failed to provide a reasonable

24   justification for its insistence on an NDA.  Finjan also did not explain why an NDA was

25   necessary given that it had admittedly "shared detailed claim chart analysis with Palo Alto

26   Networks without [an] NDA."  (Oct. 10, 2014 Email from Chaperot to Ritter (attached as

27   Exhibit A).)  Finjan never provided PAN with any claim chart explaining how PAN's products

28   allegedly infringe the '154 Patent.  PAN denies the remaining allegations.

1

2

**COUNT X**

**([Alleged] Indirect Infringement of the '154 Patent pursuant to 35 U.S.C. § 271(b))**

3       148.    PAN repeats, realleges, and incorporates by reference its responses to the

4    allegations of the preceding paragraphs.

5       149.    PAN denies the allegations in paragraph 149 of the Amended Complaint.

6       150.    PAN denies the allegations in paragraph 150 of the Amended Complaint.

7       151.    PAN denies the allegations in paragraph 151 of the Amended Complaint.

8       152.    In response to paragraph 152 of the Amended Complaint, PAN admits that it has a

9    website that provides information regarding its products at

10    https://www.paloaltonetworks.com/customers.html.  PAN lacks knowledge or information

11    sufficient to form a belief about the truth of the remaining allegations, and on that basis denies

12    them.

13       153.    In response to paragraph 153 of the Amended Complaint, PAN admits that it had a

14    website that referred to the Authorized Academy Center endeavor and the Palo Alto Networks

15    Academy.  PAN lacks knowledge or information sufficient to form a belief about the truth of the

16    remaining allegations, and on that basis denies them.

17       154.    In response to paragraph 154 of the Amended Complaint, PAN admits that it had a

18    website that stated the following:  (1) "[s]uccessful completion of this three-day, instructor led

19    course will enable the student to install, configure, and manage the entire line of Palo Alto

20    Networks Next-Generation firewalls" at

21    https://www.paloaltonetworks.com/content/dam/paloaltonetworks-

22    com/en_US/assets/pdf/datasheets/education/5.0-essentials-1.pdf; (2) "Firewall Management

23    expands on 201 course topics, while introducing many new features and functions of Palo Alto

24    Networks Next-Generation firewalls" at

25    https://www.paloaltonetworks.com/content/dam/paloaltonetworks-

26    com/en_US/assets/pdf/datasheets/education/5.0-essentials-2.pdf; and (3) "[t]he primary goal of

27    the ACE exam is to serve as an objective indication of your ability to configure Palo Alto

28    Networks firewalls using the PAN-OS" at

https://www.paloaltonetworks.com/services/education/cnse.html.  PAN lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, and on that basis denies them.

155.    In response to paragraph 155 of the Amended Complaint, PAN admits that it has a website that refers to consulting services.  PAN lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, and on that basis denies them.

156.    In response to paragraph 156 of the Amended Complaint, PAN admits that it has a website that provides a "Next Generation Firewalls for Dummies" guide at https://www.paloaltonetworks.com/content/dam/paloaltonetworks-com/en_US/assets/pdf/education/NGFW_dummies.pdf.  PAN lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, and on that basis denies them.

157.    In response to paragraph 157 of the Amended Complaint, PAN admits that Finjan contacted PAN regarding the '154 Patent on June 20, 2014, and offered to provide PAN with what it represented as a claim chart for the '154 Patent.  Finjan refused, however, to provide the claim chart, or to provide any other information or support for its infringement allegations for the '154 Patent, unless PAN agreed to enter into a non-disclosure agreement ("NDA").  (Jun. 20, 2014 Email from Chaperot to Ritter (attached as Exhibit B).)  Although PAN repeatedly stated to Finjan that it did not see any reason for an NDA, Finjan failed to provide a reasonable justification for its insistence on an NDA.  Finjan also did not explain why an NDA was necessary given that it had admittedly "shared detailed claim chart analysis with Palo Alto Networks without [an] NDA."  (Oct. 10, 2014 Email from Chaperot to Ritter (attached as Exhibit A).)  Finjan never provided PAN with any claim chart explaining how PAN's products allegedly infringe the '154 Patent.  PAN denies the remaining allegations.

158.    In response to paragraph 158 of the Amended Complaint, PAN admits it had knowledge of the '154 patent as of the time it learned of this action for alleged infringement.  PAN denies the remaining allegations.

159.    In response to paragraph 159 of the Amended Complaint, PAN admits that it has a

website that refers to support services at https://www.paloaltonetworks.com/services.html.  PAN lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, and on that basis denies them.

160.    In response to paragraph 160 of the Amended Complaint, PAN admits that it has a website that refers to support services at https://www.paloaltonetworks.com/services.html.  PAN lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, and on that basis denies them.

161.    PAN denies the allegations in paragraph 161 of the Amended Complaint.

## COUNT XI

### ([Alleged] Direct Infringement of the '408 Patent pursuant to 35 U.S.C. § 271(a))

162.    PAN repeats, realleges, and incorporates by reference its responses to the allegations of the preceding paragraphs.

163.    PAN denies the allegations in paragraph 163 of the Amended Complaint.

164.    PAN denies the allegations in paragraph 164 of the Amended Complaint.

165.    PAN denies the allegations in paragraph 165 of the Amended Complaint.

166.    PAN denies the allegations in paragraph 166 of the Amended Complaint.

167.    PAN denies the allegations in paragraph 167 of the Amended Complaint.

168.    PAN denies the allegations in paragraph 168 of the Amended Complaint.

169.    In response to paragraph 169 of the Amended Complaint, PAN admits that Finjan never identified the '408 Patent, nor did it provide or offer to provide PAN with a claim chart for the '408 Patent.  PAN denies the remaining allegations.

## COUNT XII

### ([Alleged] Indirect Infringement of the '408 Patent pursuant to 35 U.S.C. § 271(b))

170.    PAN repeats, realleges, and incorporates by reference its responses to the allegations of the preceding paragraphs.

171.    PAN denies the allegations in paragraph 171 of the Amended Complaint.

172.    PAN denies the allegations in paragraph 172 of the Amended Complaint.

173.    PAN denies the allegations in paragraph 173 of the Amended Complaint.

174.     In response to paragraph 174 of the Amended Complaint, PAN admits that it has a website that provides information regarding its products at https://www.paloaltonetworks.com/customers.html.  PAN lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, and on that basis denies them.

175.     In response to paragraph 175 of the Amended Complaint, PAN admits that it had a website that referred to the Authorized Academy Center endeavor and the Palo Alto Networks Academy.  PAN lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, and on that basis denies them.

176.     In response to paragraph 176 of the Amended Complaint, PAN admits that it had a website that stated the following:  (1) "[s]uccessful completion of this three-day, instructor led course will enable the student to install, configure, and manage the entire line of Palo Alto Networks Next-Generation firewalls" at https://www.paloaltonetworks.com/content/dam/paloaltonetworks-com/en_US/assets/pdf/datasheets/education/5.0-essentials-1.pdf; (2) "Firewall Management expands on 201 course topics, while introducing many new features and functions of Palo Alto Networks Next-Generation firewalls" at https://www.paloaltonetworks.com/content/dam/paloaltonetworks-com/en_US/assets/pdf/datasheets/education/5.0-essentials-2.pdf; and (3) "[t]he primary goal of the ACE exam is to serve as an objective indication of your ability to configure Palo Alto Networks firewalls using the PAN-OS" at https://www.paloaltonetworks.com/services/education/cnse.html.  PAN lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, and on that basis denies them.

177.     In response to paragraph 177 of the Amended Complaint, PAN admits that it has a website that refers to consulting services.  PAN lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, and on that basis denies them.

178.     In response to paragraph 178 of the Amended Complaint, PAN admits that it has a

ANSWER TO AMENDED COMPLAINT
Case No. 14-cv-04908-PJH

website that provides a "Next Generation Firewalls for Dummies" guide at https://www.paloaltonetworks.com/content/dam/paloaltonetworks-com/en_US/assets/pdf/education/NGFW_dummies.pdf. PAN lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, and on that basis denies them.

179.    In response to paragraph 179 of the Amended Complaint, PAN admits that Finjan never identified the '408 Patent, nor did it provide or offer to provide PAN with a claim chart for the '408 Patent. PAN denies the remaining allegations.

180.    In response to paragraph 180 of the Amended Complaint, PAN admits it had knowledge of the '408 Patent as of the time it learned of this action for alleged infringement. PAN denies the remaining allegations.

181.    In response to paragraph 181 of the Amended Complaint, PAN admits that it has a website that refers to support services at https://www.paloaltonetworks.com/services.html. PAN lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, and on that basis denies them.

182.    In response to paragraph 182 of the Amended Complaint, PAN admits that it has a website that refers to support services at https://www.paloaltonetworks.com/services.html. PAN lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, and on that basis denies them.

183.    PAN denies the allegations in paragraph 183 of the Amended Complaint.

## COUNT XIII

**([Alleged] Direct Infringement of the '494 Patent pursuant to 35 U.S.C. § 271(a))**

184.    PAN repeats, realleges, and incorporates by reference its responses to the allegations of the preceding paragraphs.

185.    PAN denies the allegations in paragraph 185 of the Amended Complaint.

186.    PAN denies the allegations in paragraph 186 of the Amended Complaint.

187.    PAN denies the allegations in paragraph 187 of the Amended Complaint.

188.    PAN denies the allegations in paragraph 188 of the Amended Complaint.

189.    PAN denies the allegations in paragraph 189 of the Amended Complaint.

190.    In response to paragraph 190 of the Amended Complaint, PAN admits that Finjan never identified the '494 Patent, nor did it provide or offer to provide PAN with a claim chart for the '494 Patent.  PAN denies the remaining allegations.

## COUNT XIV

### (Indirect Infringement of the '494 Patent pursuant to 35 U.S.C. § 271(b))

191.    PAN repeats, realleges, and incorporates by reference its responses to the allegations of the preceding paragraphs.

192.    PAN denies the allegations in paragraph 192 of the Amended Complaint.

193.    PAN denies the allegations in paragraph 193 of the Amended Complaint.

194.    PAN denies the allegations in paragraph 194 of the Amended Complaint.

195.    In response to paragraph 195 of the Amended Complaint, PAN admits that it has a website that provides information regarding its products at https://www.paloaltonetworks.com/customers.html.  PAN lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, and on that basis denies them.

196.    In response to paragraph 196 of the Amended Complaint, PAN admits that it has a website that provides a video entitled "Next-Generation Firewall Overview and Demo" at https://www.paloaltonetworks.com/resources/demos/ngfw-overview-and-demo.html.  PAN lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, and on that basis denies them.

197.    In response to paragraph 197 of the Amended Complaint, PAN admits that it has a website that provides certain technical documentation and guides.  PAN also admits that it had a website that provided the following:  (1) the "Next-Generation Firewalls for Dummies" guide at https://www.paloaltonetworks.com/content/dam/paloaltonetworks-com/en_US/assets/pdf/education/NGFW_dummies.pdf; and (2) the "Getting Started Guide" for PAN-OS 5.0 at https://live.paloaltonetworks.com/docs/DOC-4214; and (3) the "Wildfire Administrator Guide 5.1" at https://live.paloaltonetworks.com/docs/DOC-5129.  PAN lacks

27

knowledge or information sufficient to form a belief about the truth of the remaining allegations, and on that basis denies them.

198.    In response to paragraph 198 of the Amended Complaint, PAN admits that it had a website that referred to a webcast entitled "Threat Review Series: Combining the Power of App-ID with WildFire" at https://www.paloaltonetworks.com/resources/webcasts/trs-combining-the-power-of-app-idwithwildfire.html.  PAN lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, and on that basis denies them.

199.    In response to paragraph 199 of the Amended Complaint, PAN admits that Finjan never identified the '494 Patent, nor did it provide or offer to provide PAN with a claim chart for the '494 Patent.  PAN denies the remaining allegations.

200.    In response to paragraph 200 of the Amended Complaint, PAN admits that it had knowledge of the '494 Patent as of the time it learned of this action for alleged infringement. PAN denies the remaining allegations.

201.    In response to paragraph 201 of the Amended Complaint, PAN admits that it has a website that refers to support services at https://www.paloaltonetworks.com/services.html.  PAN lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, and on that basis denies them.

202.    In response to paragraph 202 of the Amended Complaint, PAN admits that it has a website that refers to support services at https://www.paloaltonetworks.com/services.html.  PAN lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, and on that basis denies them.

203.    PAN denies the allegations in paragraph 203 of the Amended Complaint.

## **PLAINTIFF'S PRAYER FOR RELIEF**

204.    Paragraphs (A) through (G) of the section of the Amended Complaint titled "PRAYER FOR RELIEF" set forth a prayer for relief requested by Plaintiff to which no response is required.  For avoidance of doubt, PAN denies that Finjan is entitled to relief sought, or to any other relief, against PAN.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## DEMAND FOR JURY TRIAL

205.    PAN demands a trial by jury of all issues in this action so triable.

## AFFIRMATIVE DEFENSES

206.    PAN alleges the following as separate and affirmative defenses to the Amended Complaint.  By virtue of having listed the following defenses, PAN does not assume any legal or factual burden not otherwise assigned to it under the law.

## FIRST AFFIRMATIVE DEFENSE (Non-Infringement)

207.    PAN has not infringed any valid and enforceable claim of the '780, '731, '926, '633, '154, '408, and '494 Patents directly, indirectly, contributorily, or by inducement.

## SECOND AFFIRMATIVE DEFENSE (Invalidity)

208.    Each and every asserted claim of the '780, '731, '926, '633, '154, '408, and '494 Patents is invalid for failing to satisfy one or more of the conditions for patentability specified in 35 U.S.C. §§ 101 et seq., including without limitation, §§ 101, 102, 103, and 112.

## THIRD AFFIRMATIVE DEFENSE (Judicial Estoppel)

209.    Finjan is estopped from construing any valid claim of the '780, '731, '926, '633, '154, '408, and '494 Patents to be infringed directly, contributorily, by way of inducement, literally, or under the doctrine of equivalents due to admissions or statements made by Finjan during prior litigation of related patents.

## FOURTH AFFIRMATIVE DEFENSE (Prosecution History Estoppel and Disclaimer)

210.    Finjan's claims based on the '780, '731, '926, '633, '154, '408, and '494 Patents are barred in whole or in part by the doctrine of prosecution history estoppel and prosecution disclaimer.  The scopes of the claims of these patents are limited by amendment, the prior art, and by the statements made to the United States Patent and Trademark Office during their prosecution and reexamination proceedings, such that Finjan is now estopped or otherwise precluded from maintaining that such claims are of sufficient scope to cover the accused products, either literally or under the doctrine of equivalents.

## FIFTH AFFIRMATIVE DEFENSE (Prosecution Latches)

211.    Finjan's claims on at least the '731, '926, '633, and '494 Patents are barred in

whole or in part by the doctrine of prosecution latches.  For example, Finjan filed its first

provisional application that allegedly discloses the subject matter of the '494 Patent on

November 8, 1996.  But the 13/290,708 application, which would issue as the '494 Patent, was

not filed until November 7, 2011, and did not ultimately issue until March 18, 2014.  The

13/290,708 application claims the benefit of two partially-overlapping continuation chains, each

of which contains five successive continuations and continuations-in-part, each spanning

14 years, 364 days between the earliest provisional application and the most-recent application

filing.  Ultimately, Finjan's repetitious continuation strategy and undue delay caused the

'494 patent to issue more than 16 years after the alleged first filing of all of the claimed subject

matter.

### SIXTH AFFIRMATIVE DEFENSE (Ensnarement and Prior Art Estoppel)

212.    Finjan's claims are barred in whole or in part by the doctrines of ensnarement and

prior art estoppel.

### SEVENTH AFFIRMATIVE DEFENSE (Adequate Remedy at Law)

213.    Finjan has an adequate remedy at law, and no basis exists for a grant of equitable

relief.

### EIGHTH AFFIRMATIVE DEFENSE (Limitations on Damages)

214.    Finjan's claims for damages against PAN for alleged infringement are limited by

35 U.S.C. §§ 286, 287, and 288, and Finjan is specifically precluded from recovering costs under

35 U.S.C. §§ 288.

### NINTH AFFIRMATIVE DEFENSE (28 U.S.C. § 1498)

215.    Finjan's claims for relief are barred by 28 U.S.C. § 1498 to the extent that any

products accused of infringement in this action have been used or manufactured by or for the

United States.

### TENTH AFFIRMATIVE DEFENSE (Inequitable Conduct of the '494 Patent Regarding Conception and Inventorship of the '494 Patent)

216.    The '494 Patent is unenforceable for inequitable conduct that occurred during its

prosecution, including at least false material statements made to the USPTO regarding the

conception and inventorship of the '494 Patent.

217.    The application that issued as the '494 Patent, Application No. 13/290,708 ("the '708 Application"), was filed on November 6, 2011.  The '708 Application, as on the face of the '494 Patent, lists inventors:  Yigal Mordechai Edery; Nimrod Itzhak Vered; David R. Kroll; and Shlomo Touboul.  The '494 Patent purports to claim priority, through a series of continuations, continuations-in-part, and provisional applications, to a provisional application filed on November 8, 1996, No. 60/030,639 ("the '639 Application").  Shlomo Touboul is the only inventor identified for the '639 application.

218.    On November 6, 2011, Finjan submitted to the USPTO with the '708 Application a Declaration signed by all four inventors that stated "I hereby declare that . . . I believe that the inventor(s) named below to be the original and first inventor(s) of the subject matter which is claimed and for which a patent is sought on the Invention entitled Malicious Mobile Code Runtime Monitoring System and Methods."  This Declaration signed by all four inventors was the same Declaration that was submitted to the USPTO on June 23, 2005 during the prosecution of an application that later issued as U.S. Patent No. 7,058,822 (the "'822 Patent"), which was filed on May 17, 2001.  The '822 Patent contains a specification that is substantially identical to that of the '494 Patent.

219.    During the prosecution of the '708 Application, the USPTO issued a Final Office Action on January 7, 2013 rejecting all pending claims over Ji, U.S. Patent No. 5,983,348 ("the Ji Reference"), which was filed on September 10, 1997.

220.    In response to the Final Office Action, Finjan submitted a Declaration from one named inventor, Shlomo Touboul, on May 7, 2013 ("Touboul Declaration").  Under 37 C.F.R. 1.56, inventors owe a duty of candor to the PTO.  In the Touboul Declaration, Mr. Touboul declared under the penalty of perjury that the then pending "claims 1, 3, 4-6, 9, 10, 12-15 and 18" (which later issued as the same claim numbers in the '494 Patent) were his "sole invention" and that "[his] sole invention was in [his] mind and developed by at least November 18, 1996," thus antedating the Ji Reference.

221.    On August 29, 2013, the Examiner allowed the pending claims and specifically

stated that "The [Touboul] Declaration filed on May 7, 2013 under 37 CFR 1.131(a) is sufficient to overcome the Ji, U.S. Patent 5,893,348 reference . . . The rejection is hereby withdrawn and the claims are in conditions for allowance."

222.    On information and belief, Finjan's discovery responses in this and other lawsuits involving the '494 Patent include admissions regarding the conception and inventorship of the '494 Patent that contradict the Touboul Declaration.  For example, on information and belief, and based on publicly available documents, in its lawsuit against Symantec Corporation ("Symantec"), Finjan narrowed its asserted claims of the '494 Patent to only claims 10, 14, and 15 on June 26, 2017.  *See Finjan, Inc. v. Symantec Corp.,* Case No. 4:14-cv-02998-HSG (N.D. Cal., terminated Mar. 5, 2018), Dkt. No. 242 at 5:25-26.  On information and belief, Finjan served Supplemental Interrogatory Responses on July 26, 2017, in which it stated that "Yigal Edery, Nimrod Vered, David Kroll, and Shlomo Touboul were involved with, and may have knowledge related to the conception and reduction to practice of the '494 Patent."  *See Finjan, Inc. v. Symantec Corp.*, Case No. 4:14-cv-02998-HSG, Proposed Amended Answer (Dkt. 242-2) at ¶ 221.  On information and belief, in its June of 2017 response to Symantec's Requests for Admission, "Finjan admit[ted] that Yigal Edery, Nimrod Vered, David Kroll, and Shlomo Touboul collaborated as a group on the invention set forth in the . . . '494 Patent."  *See id.*  On information and belief, in another interrogatory response served in June of 2017, Finjan stated that "Yigal Edery, Nimrod Vered, David Kroll, and Shlomo Touboul collaboratively conceived of the inventions disclosed in the . . . '494 Patent[]."  *See id.*  On information and belief, Finjan served a fourth supplemental response to Symantec's Interrogatory No. 1 stating that "[t]he date of conception for the asserted claims of the [the '494 Patent] began October 31, 1996 and continued through May 2000.  The date of constructive reduction of practice to the asserted claims of the '494 Patent is no later than November 7, 2011."  *See Finjan, Inc. v. Symantec Corp.,* Case No. 4:14-cv-02998-HSG, Dkt. 242-10 at 12:16-18.

223.    On information and belief, none of the named inventors of the '494 Patent, other than Mr. Touboul, were employed by Finjan before 1998.

224.    On information and belief, in other lawsuits involving the '494 Patent, inventors

other than Mr. Touboul confirmed that they contributed to the conception of the claimed invention set forth in the independent claims of the '494 Patent.  For example, on information and belief, David R. Kroll has previously testified at trial that he "helped come up with the idea behind claim 10 [of the '494 Patent] during [his] time at Finjan."  *Finjan, Inc. v. Blue Coat Sys., Inc.,* Case No. 5:13-cv-03999-BLF, Dkt. 569 at 460:24-461:1 (N.D. Cal. Nov. 28, 2017).

225.    On information and belief, as set forth in Finjan's discovery responses at least in the *Symantec* lawsuit, Mr. Touboul's statement that he was the sole inventor of claims 1, 3, 4-6, 9, 10, 12-15 and 18 of the '494 Patent, was false.  Notably, "Finjan admit[ted] that Yigal Edery, Nimrod Vered, David Kroll, and Shlomo Touboul collaborated as a group on the invention set forth in the . . . '494 Patent" (*Finjan, Inc. v. Symantec Corp.,* Case No. 4:14-cv-02998-HSG, Proposed Amended Answer (Dkt. 242-2) at ¶ 221), which directly contradicts Mr. Touboul's claim that he was the sole inventor of claims 1, 3, 4-6, 9, 10, 12-15 and 18 of the '494 Patent in the Touboul Declaration.  Moreover, Finjan's fourth supplemental response to Symantec's Interrogatory No. 1 stating that "[t]he date of conception for the asserted claims [10, 14, and 15] of the ['494 Patent] began October 31, 1996 and continued through May 2000" directly contradicts the Touboul declaration that he was the sole inventor of the same claims by November 18, 1996. *See Finjan, Inc. v. Symantec Corp.,* Case No. 4:14-cv-02998-HSG, Dkt. 242-10 at 12:16-18.

226.    On information and belief, Mr. Touboul's misrepresentation that he was the "sole inventor" of claims 1, 3, 4-6, 9, 10, 12-15 and 18 of the '494 Patent, was intentional so that Mr. Touboul could falsely assert that those claims were entitled to an earlier priority date of November 18, 1996 in order to antedate the Ji Reference, despite the fact that the other named inventors of the '494 Patent were not employed by Finjan until after November 1996.

227.    Mr. Touboul's false representations during the prosecution of the '494 Patent were material to the patentability of the '494 Patent.  The Examiner explicitly stated that the rejection was withdrawn due to the Touboul Declaration.  But the Touboul Declaration falsely misrepresented that Mr. Touboul was the sole inventor of claims 1, 3, 4-6, 9, 10, 12-15 and 18 of the '494 Patent, and that he conceived of those claims before September 10, 1997, the filing date

of the Ji Reference.  Indeed, Finjan admitted later in its lawsuits that those claims were conceived collaboratively by all four named inventors.  Thus, if Mr. Touboul had not falsely claimed that he was the sole inventor of claims 1, 3, 4-6, 9, 10, 12-15 and 18 of the '494 Patent, he could not have claimed that he conceived the claimed subject matter of the '494 Patent prior to the September 10, 1997 filing date of the Ji Reference because the other three named inventors of the '494 Patent were not yet employed by Finjan.  In other words, the Examiner would not have withdrawn the rejection over the Ji Reference based on Mr. Touboul's claimed earlier conception date if Mr. Touboul had not made his false representations, thus making the Touboul Declaration material to the patentability of the '494 Patent.

228.    On information and belief, Mr. Touboul made these material false statements with the specific intent to deceive the USPTO, knowing that the Examiner would give credence to his statements because inventors owe a duty of candor to the USPTO and because the USPTO Examiners are unable verify the accuracy of the representations made by inventors.

229.    The foregoing facts constitute inequitable conduct, which renders the '494 Patent unenforceable, as summarized below:

- WHO:  Purported inventor of the '494 Patent, Shlomo Touboul.
- WHAT:  Mr. Touboul's material false representation that he was the sole inventor of claims 1, 3, 4-6, 9, 10, 12-15 and 18 of the '494 Patent, as of no later than November 18, 1996.
- WHERE:  The Touboul Declaration (Declaration of Prior Invention In The United States To Overcome Cited Patent Or Publication (37 C.F.R. § 131)) submitted to the USPTO on May 7, 2013 during the prosecution of the '494 Patent.
- WHEN:  The Touboul Declaration was signed on April 17, 2013, and submitted to the USPTO on May 7, 2013.
- WHY:  The Ji Reference was material prior art.  The USPTO would not have issued the '494 Patent but-for the Touboul Declaration, which backdated the claimed subject matter of the '494 Patent to overcome the Ji Reference's status

as prior art.  Mr. Touboul intentionally misrepresented material facts in order to ensure that the '494 Patent would be granted.

- HOW:  Mr. Touboul submitted a false declaration that he was the sole inventor of claims 1, 3, 4-6, 9, 10, 12-15 and 18 of the '494 Patent, as of no later than November 18, 1996.  However, the other named inventors of the '494 Patent were not employed by Finjan until years after Mr. Touboul's claimed date of conception.  Thus, Mr. Touboul materially misrepresented that he was the sole inventor of claims 1, 3, 4-6, 9, 10, 12-15 and 18 of the '494 Patent, in order to antedate the Ji Reference and put the claims of the '494 Patent in a condition for allowance.

230.    PAN's investigation is ongoing and discovery has yet to commence in this suit. PAN expressly reserves the right to assert additional facts relating to Finjan's inequitable conduct with respect to the '494 Patent.

**ELEVENTH AFFIRMATIVE DEFENSE (Inequitable Conduct Regarding Priority Date of the '494 Patent)**

231.    Finjan asserts that the '494 Patent is enforceable.

232.    PAN denies that the '494 Patent is enforceable and contend that it is unenforceable on the grounds of inequitable conduct.

233.    On November 7, 2011, patent attorney Dawn-Marie Bey filed a patent application on behalf of Finjan that would ultimately mature into the '494 Patent.

234.    Together with the filing of the application that issued as the '494 Patent, a Declaration was submitted, stating that "I hereby declare that . . . I believe the inventor(s) named below to be the original and first inventor(s) of the subject matter which is claimed and for which a patent is sought on the Invention entitled "Malicious Code Runtime Monitoring System And Methods" filed on May 17, 2001, with application number 09/881,229.  That application eventually issued as U.S. Patent No. 7,058,822 and contains a specification that is substantially identical to that of the '494 Patent.  The declaration was signed by all four named inventors.  This original application for the '494 Patent listed four inventors:  Yigal Mordechai Edery, Nimrod

1    Itzhak Vered, David R. Kroll, and Shlomo Touboul.

2         235.    The original application for the '494 Patent contained in its specification a long

3    chain of claimed priority, with the earliest claim to priority of a non-provisional application to

4    U.S. Patent No. 6,092,194 filed on November 6, 1997.

5         236.    On July 23, 2012, the Examiner from the USPTO issued a non-final rejection

6    rejecting all of the claims as anticipated by U.S. Patent No. 5,983,348 ("Ji").  The Ji reference

7    was filed on September 10, 1997; therefore, Ji was prior art since the application's claim of

8    priority only stretched back to November 6, 1997.

9         237.    On October 23, 2012, Ms. Bey, on behalf of Finjan, filed a "Petition To Accept

10   Unintentionally Delayed Claim Of Priority Under 35 U.S.C. § 119(e) and § 120 For The Benefit

11   Of A Prior-filed Application Filed Under 37 C.F.R. § 1.78(a)(3)."  This petition sought to extend

12   the chain of priority to include references to:  provisional U.S. application no. 60/030,639, filed

13   on November 8, 1996; and U.S. Patent No. 6,167,520, filed on January 29, 1997.  In this petition,

14   Ms. Bey represented that "the entire delay between the date the claim was due under 37 CFR

15   § 1.78(a)(2)(ii) and the date the claim was filed was unintentional."  A representation that the

16   entire delay in claiming priority was unintentional is required under 37 C.F.R. § 1.78(a).

17        238.    Upon information and belief, Ms. Bey's representation that the delayed priority

18   claim was "unintentional" was false and intended to deceive the USPTO.

19        239.    On November 27, 2012, the Petition was denied for failure to comply with the

20   formality of including the reference required to claim priority.  As a result, on January 7, 2013,

21   the USPTO issued a final rejection of the claims as anticipated by prior art Ji.

22        240.    On May 7, 2013, Ms. Bey, on behalf of Finjan, filed an "Amendment And

23   Response To Office Action Under 37 C.F.R. § 1.114."  Accompanying this filing, Ms. Bey

24   submitted a "Declaration Of Prior Invention In The United States To Overcome Cited Patent Or

25   Publication (37 C.F.R. § 131)" sworn by Shlomo Touboul, one of the alleged inventors of the

26   '494 Patent.  In his declaration, Mr. Touboul testified that he was the "sole" inventor of claims 1,

27   3-6, 9, 10, 12- 15, and 18 that were then-pending in the patent application, and that such claims

28   were conceived solely by Mr. Touboul no later than November 18, 1996.

                                                  36

241.    On August 29, 2013, the USPTO issued a Notice of Allowance.  In the Notice of Allowance, the Examiner found Ji was no longer prior art because "The Declaration filed on May 7, 2013 under 37 CFR 1.131(a) is sufficient to overcome the Ji" reference.

242.    Upon information and belief, Mr. Touboul's testimony that he was the "sole" inventor of certain of the claims under examination and that those claims were conceived by Mr. Touboul no later than November 18, 1996 was an intentional misrepresentation of material fact intended to deceive the USPTO.  For example, upon information and belief, on or about June 26, 2017, Finjan elected to assert claims 10, 14, and 15 of the '494 Patent against Symantec Corp. in Case No. 4:14-02998-HSG (N.D. Cal.). By that time, Symantec had already served an interrogatory asking Finjan to "State the date and location of the first conception and reduction to practice, whether actual or constructive, of each asserted claim of," among others, the '494 Patent.  On or about July 26, 2017, Finjan served a supplemental response to this interrogatory from Symantec stating:  "Yigal Edery, Nimrod Vered, David Kroll, and Shlomo Touboul were involved with, and may have knowledge related to the conception and reduction to practice of the '494 Patent."  Since the only claims of the '494 Patent asserted at the time that Finjan served its supplemental interrogatory were claims 10, 14, and 15, Finjan admitted that all four of the originally named inventors had, in fact, contributed to the conception of those claims.

243.    As further example demonstrating that Mr. Touboul's testimony that he was the "sole" inventor of certain of the claims under examination and that those claims were conceived by Mr. Touboul no later than November 18, 1996 was an intentional misrepresentation of material facts:  On November 1, 2017, Mr. David R. Kroll testified under oath about the '494 Patent during trial in *Finjan, Inc. v. Blue Coat Sys., Inc.*, Case No. CV-15-03295-BLF (N.D. Cal.).  Mr. Kroll is one of the inventors listed on the face of the '494 Patent.  During this trial, Mr. Kroll testified under oath that he "started [his employment] at Finjan in 1999" and that he "helped come up with the idea behind claim 10 [of the '494 Patent] while [he was] working at Finjan."  Upon information and belief, PAN alleges that Mr. Kroll's testimony under oath was truthful.  Mr. Kroll's trial testimony contradicts Mr. Touboul's declaration to the USPTO that he was the "sole" inventor of at least claim 10 (which is asserted in this case) of the '494 Patent, and

1   demonstrates that Mr. Touboul knowingly lied to the USPTO.

2        244.   Mr. Touboul's intentional misrepresentation that he was the "sole" inventor of

3   certain claims—including claim 10—allowed Mr. Touboul to falsely assert that those claims were

4   entitled to an earlier priority date of no later than November 18, 1996, despite the fact that the

5   other inventors listed on the '494 Patent application had not all started working for Finjan until

6   well after November 1996.

7        245.   The USPTO would not have withdrawn the Ji reference as prior art but for

8   Ms. Bey's false testimony that the entire delay in seeking an earlier priority date was

9   "unintentional" and/or Mr. Touboul's false testimony that he was the sole inventor of certain

10   claims and that he conceived of those claims by no later than November 18, 1996.  Therefore,

11   Ms. Bey's and/or Mr. Touboul's misrepresentations were material because the challenged claims

12   would not have issued but for those misrepresentations.  These misrepresentations were also

13   material because they constituted unmistakably false affidavits.

14        246.   Finjan, through its representative, Ms. Bey, has an unusually frequent pattern of

15   filing petitions to accept "unintentionally" delayed claims of priority.  PAN's Thirteenth

16   Affirmative Defense of Unclean Hands in incorporated herein by reference.

17        247.   Claims entitled to an earlier priority date also expire earlier, so Finjan is

18   incentivized to properly claim priority only to the extent it believes is necessary to overcome

19   otherwise invalidating prior art.

20        248.   Upon information and belief, Finjan and Ms. Bey delayed claiming priority in

21   order to attempt to maximize the value of the '494 Patent during pre-suit licensing negotiations

22   and only attempted to correct the claim of priority to overcome invalidity attacks on the

23   '494 Patent.

24        249.   Upon information and belief, Ms. Bey's misrepresentation of a material fact to the

25   USPTO in connection with the '494 Patent is also a part of an overarching scheme that Finjan has

26   deliberately planned and carefully executed to defraud the USPTO.

27        250.   The foregoing facts constitute inequitable conduct that renders the '494 Patent

28   unenforceable, as summarized below:

- WHO:  Purported inventor of the '494 Patent, Shlomo Touboul and Finjan's patent prosecutor, Dawn-Marie Bey.
- WHAT:  Mr. Touboul's material false representation that he was the sole inventor of the claims of the '494 Patent as of no later than November 18, 1996; Ms. Bey's false representation that the entire delay in seeking an earlier priority date was "unintentional."
- WHERE:  Declaration Of Prior Invention In The United States To Overcome Cited Patent Or Publication (37 C.F.R. § 131); Petition To Accept Unintentionally Delayed Claim Of Priority Under 35 U.S.C. § 119(e) and § 120 For The Benefit Of A Prior-filed Application Filed Under 37 C.F.R. § 1.78(a)(3).
- WHEN:  May 7, 2013; October 23, 2012.
- WHY:  The Ji prior art was material prior art.  The USPTO would not have issued the '494 Patent but for Ms. Bey's claim of "unintentional" delay and/or but for Mr. Touboul's declaration that backdated his invention in order to overcome Ji's status as prior art. Mr. Touboul and Ms. Bey intentionally misrepresented material fact in order to ensure that the '494 Patent would be granted.
- HOW:  Mr. Touboul falsely represented that he was the sole inventor of certain claims in order to avoid the constraint that the other inventors listed in the '494 Patent application had not even started working for Finjan until years after the claimed date of conception.  Ms. Bey also falsely represented that the delay in seeking the earlier priority date was "unintentional" as part of a pattern in which she intentionally deferred claiming priority until it appeared necessary to overcome prior art.

## TWELFTH AFFIRMATIVE DEFENSE (Inequitable Conduct Regarding Priority Date of the '154 Patent)

251.    Finjan asserts that the '154 Patent is enforceable.

39

252.   PAN has denied that the '154 Patent is enforceable and contend that this patent is unenforceable on the grounds of inequitable conduct.

253.   On June 14, 2010, Finjan filed the non-provisional patent application that matured into the '154 Patent.  That non-provisional patent application did not make any claim of priority in its specification.

254.   On March 20, 2012, the '154 Patent issued without any claim of priority listed on the face of the patent nor any claim of priority found in the specification.

255.   Approximately one and a half years after the '154 Patent issued, on October 16, 2013, Dawn-Marie Bey, Finjan's patent attorney at the time, filed a "Petition To Accept Unintentionally Delayed Claim Of Priority Under 35 U.S.C. § 120 For The Benefit Of A Prior-filed Application Filed Under 37 C.F.R. § 1.78(a)(3)."  In this petition, Ms. Bey sought to claim priority to U.S. Patent No. 7,757,289, which was filed on December 12, 2005.  In this petition, Ms. Bey represented that "the entire delay between the date the priority claim was due and the date that this petition with priority claim added to the specification is filed was unintentional."

256.   Upon information and belief, Finjan's representative, Ms. Bey, misrepresented a material fact to the USPTO and also violated her duty of candor to the USPTO when she represented that the delayed claim of priority in the '154 Patent was "unintentional."

257.   Ms. Bey's petition to the USPTO to accept a significantly delayed claim of priority on October 16, 2013 conspicuously coincided with a new campaign by Finjan to assert the '154 Patent.  Specifically, the petition was filed just a couple months after Finjan filed new litigation asserting the '154 Patent against Websense, Inc. on September 23, 2013 (No. 5:13-cv-04398, N.D. Cal.) and FireEye, Inc. on July 8, 2013 (No. 4:13-cv-03133-SBA, N.D. Cal.), and shortly before Finjan instigated other litigation asserting the '154 Patent against Proofpoint, Inc. on December 16, 2013 (No. 4:13-cv-05808-HSG, N.D. Cal.) and PAN in the present case.

258.   Claims entitled to an earlier priority date also expire earlier, so Finjan is incentivized to properly claim priority only to the extent it believes is necessary to overcome otherwise invalidating prior art.

259.   Upon information and belief, Finjan and Ms. Bey delayed claiming priority in

order to attempt to maximize the value of the '154 Patent during pre-suit licensing negotiations and only attempted to correct the claim of priority once it became clear that the '154 Patent would be subject to serious invalidity attacks in litigation.

260. Upon information and belief, Ms. Bey's misrepresentation of a material fact to the USPTO in connection with the '154 Patent is also a part of an overarching scheme that Finjan has deliberately planned and carefully executed to defraud the USPTO.

261. Finjan, through its representative, Ms. Bey, has an unusually frequent pattern of petitioning for allegedly "unintentionally" delayed claims of priority, particularly after one of Finjan's patents is under examination and has been rejected over prior art that predates the filing of the patent but post-dates the belatedly claimed priority document.  In other words, on multiple occasions it appears that Finjan has waited to see if a patent would be granted or validated with a later priority date in order to benefit from a later expiration date, and only when it becomes clear that the patent would not be granted or validated does Finjan seek to "correct" its "unintentionally" delayed priority claim in order to try to moot the asserted prior art.

262. For example, this was Finjan's strategy with respect to the '494 Patent.  PAN incorporates herein by reference the allegations set forth in its Eleventh Affirmative Defense.

263. As further example, Finjan also employed its strategy of submitting false declarations in support of petitions for allegedly "unintentionally" delayed claims of priority with respect to the '633 Patent and the '822 Patent, through which the '494 Patent claims priority. PAN incorporates herein by reference the allegations set forth in its Thirteenth Affirmative Defense.

264. Since patents expire sooner if their priority is extended farther back in time, upon information and belief, Ms. Bey, acting on behalf of Finjan, intentionally delayed properly claiming priority in these patents so that they might benefit from a deferred expiration date.

265. Finjan's overarching pattern of repeated misrepresentations to the USPTO regarding purportedly "unintentionally" delayed claims of priority constitutes affirmative egregious misconduct.

266. The foregoing facts constitute inequitable conduct that renders the '154 Patent

unenforceable, as summarized below:

- WHO:  Ms. Dawn-Marie Bey, patent attorney acting on behalf of Finjan.

- WHAT:  Ms. Bey's allegedly "unintentionally" delayed claim of priority.

- WHERE:  Petition To Accept Unintentionally Delayed Claim Of Priority Under 35 U.S.C. § 120 For The Benefit Of A Prior-filed Application Filed Under 37 C.F.R. § 1.78(a)(3).

- WHEN:  October 16, 2013.

- WHY:  Ms. Bey delayed properly claiming priority in the '154 Patent in order to defer the patent's expiration date, and she belatedly attempted to correct priority once the '154 Patent was asserted in multiple litigations and subject to substantial invalidity challenges.

- HOW:  Ms. Bey falsely represented that the entire delay in claiming priority from the '154 Patent to the '289 patent was "unintentional."  Such a false representation to the USPTO when viewed in the context of Finjan's overarching pattern of repeated misrepresentations to the USPTO regarding purportedly "unintentionally" delayed claims of priority constitutes affirmative egregious misconduct that is per se material.

## THIRTEENTH AFFIRMATIVE DEFENSE (Unclean Hands)

267.    In its Amended Complaint, Finjan asserts that the '154 and '494 Patents are enforceable.

268.    PAN has denied that the '154 and '494 Patents are enforceable and contends that the '154 and '494 Patents are unenforceable on the grounds of unclean hands.

269.    Finjan, through its representative, Ms. Bey, has an unusually frequent practice of petitioning for allegedly "unintentionally" delayed claims of priority, particularly after one of Finjan's patents is under examination and has been rejected over prior art that predates the filing of the patent but post-dates the belatedly claimed priority document.  In other words, on multiple occasions it appears that Finjan has waited to see if a patent would be granted or validated with a later priority date in order to benefit from a later expiration date, and only when it becomes clear

42

that the patent would not be granted or validated does Finjan seek to "correct" its "unintentionally" delayed priority claim in order to try to moot the asserted prior art.

270.    For example, this was Finjan's strategy with respect to the '494 and '154 Patents. PAN incorporates herein by reference the allegations set forth in its Eleventh and Twelfth Affirmative Defenses.

271.    As further example of Finjan's egregious misconduct in repeatedly intentionally delaying claims of priority in the hope of deferring expiration of a patent unless the priority claim appears necessary to validate the patent:  On May 17, 2001, Finjan's representatives filed a patent application on behalf of Finjan that would ultimately mature into U.S. Patent No. 7,058,822 ("the '822 Patent").

272.    The original application for the '822 Patent contained in its specification a priority claim from provisional application number 60/205,591 (filed May 17, 2000), and also a priority claim as a continuation-in-part to application number 09/539,667 (filed March 30, 2000) and as a continuation-in-part to application number 09/551,302 (filed April 18, 2000).

273.    On June 6, 2006, the '822 Patent issued. On its face, the '822 Patent issued with the same claim to priority.

274.    On October 7, 2013, an *ex parte* reexamination was filed against the '822 Patent, which was assigned Reexamination Control No. 90/013,017.

275.    On December 6, 2013, the USPTO instituted *ex parte* reexamination and issued a rejection of certain claims of the '822 Patent over combinations of references including U.S. Patent No. 6,058,482 ("Liu"), filed May 22, 1998, and U.S. Patent No. 5,974,549 ("Golan"), filed March 27 1997.

276.    On March 6, 2014—nearly eight years after the '822 Patent was issued and nearly thirteen years after the '822 Patent application was filed—Ms. Dawn-Marie Bey, Finjan's patent attorney, filed a "Petition To Accept Unintentionally Delayed Priority Claim Under 37 C.F.R. § 1.78."  The Petition sought to add claims of priority to U.S. Patent No. 6,092,194 ("the '194 Patent"), filed November 6, 1997, and U.S. Patent No. 6,167,520 ("the '520 Patent"), filed January 29, 1997—which could have antedated the Liu and Golan references. Ms. Bey

1    represented that "The entire delay between the date a correctly worded benefit claim was

2    under . . . and the date the correctly worded benefit claim was filed was unintentional."  Petitions

3    to accept delayed priority claims require that the entire delay be "unintentional."  *See* 37 C.F.R.

4    § 1.78(e).

5        277.    Upon information and belief, Ms. Bey misrepresented a material fact to the

6    USPTO and also violated her duty of candor to the USPTO when she represented that the delayed

7    claim of priority in the '822 Patent was "unintentional." Finjan intentionally delayed properly

8    claiming priority in the '822 Patent so that the '822 Patent might benefit from a later expiration

9    date unless an earlier priority date proved necessary to overcome prior art.

10       278.    Notwithstanding the USPTO's acceptance on July 25, 2014 of Finjan's delayed

11   claim of priority in its "Decision Granting Petition To Accept Unintentionally Delayed Priority

12   Claim Under 37 C.F.R. § 1.78(e)," on September 8, 2014, the USPTO issued a final rejection in

13   *ex parte* reexamination no. 90/013,017.  In the final rejection, the Examiner found, *inter alia*, that

14   "The priority documents US Patent[s] 6,092,194 and 6,167,520 do not describe" the challenged

15   claims of the '822 Patent in sufficient detail to meet the written description requirement.  Thus,

16   Ms. Bey's late claim of priority was, in fact, unsupported, and priority could not ever have been

17   properly claimed.

18       279.    The '494 Patent claims priority through the '822 Patent.  Since the '494 Patent

19   expires sooner if its priority is extended farther back in time, upon information and belief,

20   Ms. Bey, acting on behalf of Finjan, intentionally delayed properly claiming priority in the

21   '822 Patent so that the '822 Patent and its progeny—including the '494 Patent—might benefit

22   from a deferred expiration date.

23       280.    Finjan's repeated misrepresentations to the USPTO regarding purportedly

24   "unintentionally" delayed claims of priority constitutes egregious misconduct.  The '154 and

25   '494 Patents are unenforceable on account of Finjan's unclean hands.

26                    **FOURTEENTH AFFIRMATIVE DEFENSE (Failure to Mark)**

27       281.    35 U.S.C. § 287 limits and/or precludes recovery of damages, if any, by Finjan.

28   On information and belief, Finjan has made, offered for sale, sold, or imported articles

44

embodying one or more of the purported inventions of the Asserted Patents (including but not limited to the SurfinGate and SurfinShield products), but Finjan did not mark such articles as required under Section 287.

282.    On information and belief, Finjan has licensed the patents-in-suit to third parties that have made, offered for sale, sold, or imported articles embodying one or more of the purported inventions of the Asserted Patents (including, but not limited to: Sophos, Inc.; F5 Networks, Inc.; FireEye, Inc.; Proofpoint, Inc.; Armorize Technologies, Inc.; Symantec, Corp.; Blue Coat Systems, Inc.; Websense, Inc.; AVG technologies CZ, s.r.o. and related entities; Secure Computing Corporation; Cyberguard Corporation; WebSphere AG; Aladdin Knowledge Systems, Inc. and related entities; McAfee, Inc.; and Webroot Software Inc.), but such third parties did not mark such articles as required by Section 287.

## FIFTEENTH AFFIRMATIVE DEFENSE (Preclusion)

283.    PAN re-alleges and incorporates herein by reference the allegations contained in the foregoing paragraphs.

284.    Finjan's claims are barred by res judicata and/or collateral estoppel based on claims and issues that have already been adjudicated.

285.    For example, the United States Patent and Trademark Office ("USPTO") canceled claims 1, 2, and 6 of the '494 Patent ("the '494 Invalidated Claims"), as invalid.

286.    In this litigation, Finjan continues to assert claims 3-5, 7, 10-16 of the '494 Patent ("the '494 Asserted Claims").  The '494 Asserted Claims are not materially different in patentability to the '494 Invalidated Claims.  Res judicata and/or collateral estoppel therefore apply, and Finjan is estopped from asserting the '494 Asserted Claims.

287.    As another example, the Court in *Finjan LLC v. ESET, LLC, et al.* recently found that the term "Downloadable" as used in the asserted patents is indefinite and granted ESET's motion for summary judgment of invalidity of four of the five asserted patents for indefiniteness. Case No. 3:17-cv-00183-CAB-BGS, Dkt. 869 (S.D. Cal. Mar. 29, 2021).  The '780 Patent is one of those patents found to be invalid for indefiniteness.  The '494 and '926 Patents likewise include the same "Downloadable" term and same intrinsic record.  The ESET order therefore also

applies to the '494 and '926 Patents.  Accordingly, collateral estoppel applies to the '780, '494, and '926 Patents.

288.    As another example, multiple courts have already construed dozens of terms in the Patents-in-Suit.  Having already been heard as to these terms, Finjan is collaterally estopped from arguing that such previous constructions were incorrect.

## RESERVATION OF ADDITIONAL DEFENSES

289.    PAN's investigation on this matter is ongoing.  It reserves all defenses under the Federal Rules of Civil Procedure, the patent laws of the United States, other applicable state or federal laws, and any other defenses, at law or in equity, that may now exist or in the future be available based on discovery and further factual investigation in this case.

## PAN'S COUNTERCLAIMS

290.    PAN brings this action against Finjan pursuant to Rule 13 of the Federal Rules of Civil Procedure, for a declaratory judgment of invalidity and non-infringement of the '780, '731, '926, '633, '154, '408, and '494 Patents ("Finjan Asserted Patents").  For its Counterclaims against Finjan, PAN states, based upon personal knowledge as to all acts or events that it has undertaken or witnessed, and upon information and belief as to all others, as follows:

## PARTIES

291.    PAN is a Delaware corporation having its principal place of business at 3000 Tannery Way, Santa Clara, California 95054.

292.    Finjan alleges it is a Delaware limited liability company, with its principal place of business at 2000 University Avenue, Suite 600, East Palo Alto, California 94303.

## JURISDICTION AND VENUE

293.    These Counterclaims are for a declaratory judgment of invalidity and non-infringement of the Finjan Asserted Patents.

294.    Based on Finjan's filing of this suit and PAN's affirmative defenses, a true, actual, and justiciable controversy has arisen and now exists between PAN and Finjan regarding the validity and alleged infringement of the Finjan Asserted Patents.  This Court has subject matter jurisdiction over the matters pleaded herein under 28 U.S.C. §§ 1331, 1338, and the Federal

46

1  Declaratory Judgment Act (28 U.S.C. §§ 2201 et seq.), and the Patent Act of the United States, 35

2  U.S.C. §§ 101, et seq., including, but not limited to, §§ 101, 102, 103, and 112, and the rules,

3  regulations, and laws pertaining thereto.

4      295.    Venue is proper in this judicial district under 28 U.S.C. §§ 1391(b), (c), and

5  1400(b) because, among other reasons, Finjan has brought its Amended Complaint for patent

6  infringement of the Finjan Asserted Patents in this Court.

7                              **CLAIMS FOR RELIEF**

8  **COUNT I (Declaratory Judgment of Non-Infringement of U.S. Patent No. 6,804,780)**

9      296.    PAN incorporates by reference the allegations in the preceding paragraphs of these

10  Counterclaims and Answer.

11     297.    Finjan asserts that it is the owner of all right, title, and interest in and to the

12  '780 Patent.

13     298.    An actual and justiciable controversy exists between Finjan and PAN as to PAN's

14  non-infringement of the '780 Patent, as evidenced by Finjan's Amended Complaint and PAN's

15  Answer to Finjan's Amended Complaint.

16     299.    Pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 et seq., PAN is

17  entitled to a declaration of the Court that PAN has not infringed and does not currently infringe

18  any valid claim of the '780 Patent, either directly, contributorily, or by inducement.

19     300.    Finjan has also filed this action without a good faith basis, making this an

20  exceptional case.  Consequently, Finjan is liable for any and all attorneys' fees, expenses, and

21  costs incurred by PAN in connection with this action.

22  **COUNT II (Declaratory Judgment of Invalidity of U.S. Patent No. 6,804,780)**

23     301.    PAN incorporates by reference the allegations in the preceding paragraphs of these

24  Counterclaims and Answer.

25     302.    An actual and justiciable controversy exists between Finjan and PAN as to the

26  validity of the '780 Patent, as evidenced by Finjan's Amended Complaint and PAN's Answer to

27  Finjan's Amended Complaint.

28     303.    Pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 et seq., PAN is

entitled to a declaration of the Court that each claim of the '780 Patent is invalid for failing to satisfy the conditions for patentability specified in 35 U.S.C. §§ 101 et seq. including, without limitation, §§ 101, 102, 103, and 112.

304.     Finjan has also filed this action without a good faith basis, making this an exceptional case.  Consequently, Finjan is liable for any and all attorneys' fees, expenses, and costs incurred by PAN in connection with this action.

### COUNT III (Declaratory Judgment of Non-Infringement of U.S. Patent No. 7,418,731)

305.     PAN incorporates by reference the allegations in the preceding paragraphs of these Counterclaims and Answer.

306.     Finjan asserts that it is the owner of all right, title, and interest in and to the '731 Patent.

307.     An actual and justiciable controversy exists between Finjan and PAN as to PAN's non-infringement of the '731 Patent, as evidenced by Finjan's Amended Complaint and PAN's Answer to Finjan's Amended Complaint.

308.     Pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 et seq., PAN is entitled to a declaration of the Court that PAN has not infringed and does not currently infringe any valid claim of the '731 Patent, either directly, contributorily, or by inducement.

309.     Finjan has also filed this action without a good faith basis, making this an exceptional case.  Consequently, Finjan is liable for any and all attorneys' fees, expenses, and costs incurred by PAN in connection with this action.

### COUNT IV (Declaratory Judgment of Invalidity of U.S. Patent No. 7,418,731)

310.     PAN incorporates by reference the allegations in the preceding paragraphs of these Counterclaims and Answer.

311.     An actual and justiciable controversy exists between Finjan and PAN as to the validity of the '731 Patent, as evidenced by Finjan's Amended Complaint and PAN's Answer to Finjan's Amended Complaint.

312.     Pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 et seq., PAN is entitled to a declaration of the Court that each claim of the '731 Patent is invalid for failing to

satisfy the conditions for patentability specified in 35 U.S.C. §§ 101 et seq. including, without

limitation, §§ 101, 102, 103, and 112.

313.    Finjan has also filed this action without a good faith basis, making this an

exceptional case.  Consequently, Finjan is liable for any and all attorneys' fees, expenses, and

costs incurred by PAN in connection with this action.

**COUNT V (Declaratory Judgment of Non-Infringement of U.S. Patent No. 7,613,926)**

314.    PAN incorporates by reference the allegations in the preceding paragraphs of these

Counterclaims and Answer.

315.    Finjan asserts that it is the owner of all right, title, and interest in and to the

'926 Patent.

316.    An actual and justiciable controversy exists between Finjan and PAN as to PAN's

non-infringement of the '926 Patent, as evidenced by Finjan's Amended Complaint and PAN's

Answer to Finjan's Amended Complaint.

317.    Pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 et seq., PAN is

entitled to a declaration of the Court that PAN has not infringed and does not currently infringe

any valid claim of the '926 Patent, either directly, contributorily, or by inducement.

318.    Finjan has also filed this action without a good faith basis, making this an

exceptional case.  Consequently, Finjan is liable for any and all attorneys' fees, expenses, and

costs incurred by PAN in connection with this action.

**COUNT VI (Declaratory Judgment of Invalidity of U.S. Patent No. 7,613,926)**

319.    PAN incorporates by reference the allegations in the preceding paragraphs of these

Counterclaims and Answer.

320.    An actual and justiciable controversy exists between Finjan and PAN as to the

validity of the '926 Patent, as evidenced by Finjan's Amended Complaint and PAN's Answer to

Finjan's Amended Complaint.

321.    Pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 et seq., PAN is

entitled to a declaration of the Court that each claim of the '926 Patent is invalid for failing to

satisfy the conditions for patentability specified in 35 U.S.C. §§ 101 et seq. including, without

49

1  limitation, §§ 101, 102, 103, and 112.

2       322.   Finjan has also filed this action without a good faith basis, making this an

3  exceptional case.  Consequently, Finjan is liable for any and all attorneys' fees, expenses, and

4  costs incurred by PAN in connection with this action.

5      **COUNT VII (Declaratory Judgment of Non-Infringement of U.S. Patent No. 7,647,633)**

6       323.   PAN incorporates by reference the allegations in the preceding paragraphs of these

7  Counterclaims and Answer.

8       324.   Finjan asserts that it is the owner of all right, title, and interest in and to the

9  '633 Patent.

10       325.   An actual and justiciable controversy exists between Finjan and PAN as to PAN's

11  non-infringement of the '633 Patent, as evidenced by Finjan's Amended Complaint and PAN's

12  Answer to Finjan's Amended Complaint.

13       326.   Pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 et seq., PAN is

14  entitled to a declaration of the Court that PAN has not infringed and does not currently infringe

15  any valid claim of the '633 Patent, either directly, contributorily, or by inducement.

16       327.   Finjan has also filed this action without a good faith basis, making this an

17  exceptional case.  Consequently, Finjan is liable for any and all attorneys' fees, expenses, and

18  costs incurred by PAN in connection with this action.

19      **COUNT VIII (Declaratory Judgment of Invalidity of U.S. Patent No. 7,647,633)**

20       328.   PAN incorporates by reference the allegations in the preceding paragraphs of these

21  Counterclaims and Answer.

22       329.   An actual and justiciable controversy exists between Finjan and PAN as to the

23  validity of the '633 Patent, as evidenced by Finjan's Amended Complaint and PAN's Answer to

24  Finjan's Amended Complaint.

25       330.   Pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 et seq., PAN is

26  entitled to a declaration of the Court that each claim of the '633 Patent is invalid for failing to

27  satisfy the conditions for patentability specified in 35 U.S.C. §§ 101 et seq. including, without

28  limitation, §§ 101, 102, 103, and 112.

331.    Finjan has also filed this action without a good faith basis, making this an exceptional case.  Consequently, Finjan is liable for any and all attorneys' fees, expenses, and costs incurred by PAN in connection with this action.

### COUNT IX (Declaratory Judgment of Non-Infringement of U.S. Patent No. 8,141,154)

332.    PAN incorporates by reference the allegations in the preceding paragraphs of these Counterclaims and Answer.

333.    Finjan asserts that it is the owner of all right, title, and interest in and to the '154 Patent.

334.    An actual and justiciable controversy exists between Finjan and PAN as to PAN's non-infringement of the '154 Patent, as evidenced by Finjan's Amended Complaint and PAN's Answer to Finjan's Amended Complaint.

335.    Pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 et seq., PAN is entitled to a declaration of the Court that PAN has not infringed and does not currently infringe any valid claim of the '154 Patent, either directly, contributorily, or by inducement.

336.    Finjan has also filed this action without a good faith basis, making this an exceptional case.  Consequently, Finjan is liable for any and all attorneys' fees, expenses, and costs incurred by PAN in connection with this action.

### COUNT X (Declaratory Judgment of Invalidity of U.S. Patent No. 8,141,154)

337.    PAN incorporates by reference the allegations in the preceding paragraphs of these Counterclaims and Answer.

338.    An actual and justiciable controversy exists between Finjan and PAN as to the validity of the '154 Patent, as evidenced by Finjan's Amended Complaint and PAN's Answer to Finjan's Amended Complaint.

339.    Pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 et seq., PAN is entitled to a declaration of the Court that each claim of the '154 Patent is invalid for failing to satisfy the conditions for patentability specified in 35 U.S.C. §§ 101 et seq. including, without limitation, §§ 101, 102, 103, and 112.

340.    Finjan has also filed this action without a good faith basis, making this an

1    exceptional case.  Consequently, Finjan is liable for any and all attorneys' fees, expenses, and

2    costs incurred by PAN in connection with this action.

3            **COUNT XI (Declaratory Judgment of Non-Infringement of U.S. Patent No. 8,225,408)**

4            341.    PAN incorporates by reference the allegations in the preceding paragraphs of these

5    Counterclaims and Answer.

6            342.    Finjan asserts that it is the owner of all right, title, and interest in and to the

7    '408 Patent.

8            343.    An actual and justiciable controversy exists between Finjan and PAN as to PAN's

9    non-infringement of the '408 Patent, as evidenced by Finjan's Amended Complaint and PAN's

10   Answer to Finjan's Amended Complaint.

11           344.    Pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 et seq., PAN is

12   entitled to a declaration of the Court that PAN has not infringed and does not currently infringe

13   any valid claim of the '408 Patent, either directly, contributorily, or by inducement.

14           345.    Finjan has also filed this action without a good faith basis, making this an

15   exceptional case.  Consequently, Finjan is liable for any and all attorneys' fees, expenses, and

16   costs incurred by PAN in connection with this action.

17           **COUNT XII (Declaratory Judgment of Invalidity of U.S. Patent No. 8,225,408)**

18           346.    PAN incorporates by reference the allegations in the preceding paragraphs of these

19   Counterclaims and Answer.

20           347.    An actual and justiciable controversy exists between Finjan and PAN as to the

21   validity of the '408 Patent, as evidenced by Finjan's Amended Complaint and PAN's Answer to

22   Finjan's Amended Complaint.

23           348.    Pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 et seq., PAN is

24   entitled to a declaration of the Court that each claim of the '408 Patent is invalid for failing to

25   satisfy the conditions for patentability specified in 35 U.S.C. §§ 101 et seq. including, without

26   limitation, §§ 101, 102, 103, and 112.

27           349.    Finjan has also filed this action without a good faith basis, making this an

28   exceptional case.  Consequently, Finjan is liable for any and all attorneys' fees, expenses, and

52

1   costs incurred by PAN in connection with this action.

2   **COUNT XIII (Declaratory Judgment of Non-Infringement of U.S. Patent No. 8,677,494)**

3   350.    PAN incorporates by reference the allegations in the preceding paragraphs of these

4   Counterclaims and Answer.

5   351.    Finjan asserts that it is the owner of all right, title, and interest in and to the

6   '494 Patent.

7   352.    An actual and justiciable controversy exists between Finjan and PAN as to PAN's

8   non-infringement of the '494 Patent, as evidenced by Finjan's Amended Complaint and PAN's

9   Answer to Finjan's Amended Complaint.

10   353.    Pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 et seq., PAN is

11   entitled to a declaration of the Court that PAN has not infringed and does not currently infringe

12   any valid claim of the '494 Patent, either directly, contributorily, or by inducement.

13   354.    Finjan has also filed this action without a good faith basis, making this an

14   exceptional case.  Consequently, Finjan is liable for any and all attorneys' fees, expenses, and

15   costs incurred by PAN in connection with this action.

16   **COUNT XIV (Declaratory Judgment of Invalidity of U.S. Patent No. 8,677,494)**

17   355.    PAN incorporates by reference the allegations in the preceding paragraphs of these

18   Counterclaims and Answer.

19   356.    An actual and justiciable controversy exists between Finjan and PAN as to the

20   validity of the '494 Patent, as evidenced by Finjan's Amended Complaint and PAN's Answer to

21   Finjan's Amended Complaint.

22   357.    Pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 et seq., PAN is

23   entitled to a declaration of the Court that each claim of the '494 Patent is invalid for failing to

24   satisfy the conditions for patentability specified in 35 U.S.C. §§ 101 et seq. including, without

25   limitation, §§ 101, 102, 103, and 112.

26   358.    Finjan has also filed this action without a good faith basis, making this an

27   exceptional case.  Consequently, Finjan is liable for any and all attorneys' fees, expenses, and

28   costs incurred by PAN in connection with this action.

**COUNT XV (Declaratory Judgment of Unenforceability of U.S. Patent No. 8,677,494 Due to Inequitable Conduct)**

359.    The allegations contained in the foregoing paragraphs are incorporated by reference with the same force and effect as if set forth in full below.

360.    Finjan alleges in its Complaint that the '494 Patent is enforceable.

361.    PAN denies that the '494 Patent is enforceable and contends that this patent is unenforceable on the grounds of inequitable conduct.

362.    PAN incorporates by reference herein the allegations set forth in ¶¶ 216-250 of its Answer, which set forth the factual and legal basis for the inequitable conduct leading to the unenforceability of the '494 Patent.

363.    There exists an actual and justiciable controversy between PAN and Finjan as to whether one or more claims of the '494 Patent is enforceable.  The controversy is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

364.    PAN is entitled to a declaratory judgment that the '494 Patent is unenforceable due to Finjan's inequitable conduct.

**COUNT XVI (Declaratory Judgment of Unenforceability of U.S. Patent No. 8,141,154 Due to Inequitable Conduct)**

365.    The allegations contained in the foregoing paragraphs are incorporated by reference herein with the same force and effect as if set forth in full below.

366.    Finjan alleges in its Complaint that the '154 Patent is enforceable.

367.    PAN denies that the '154 Patent is enforceable and contends that this patent is unenforceable on the grounds of inequitable conduct.

368.    PAN incorporates by reference herein the allegations set forth in ¶¶ 251-266 of its Answer, which set forth the factual and legal basis for the inequitable conduct leading to the unenforceability of the '154 Patent.

369.    There exists an actual and justiciable controversy between PAN and Finjan as to whether one or more claims of the '154 Patent is enforceable.  The controversy is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

370.    PAN is entitled to a declaratory judgment that the '154 Patent is unenforceable due to Finjan's inequitable conduct.

## COUNT XVII (Declaratory Judgment of Unenforceability of U.S. Patent Nos. 8,677,494 and 8,141,154 Due to Unclean Hands)

371.    The allegations contained in the foregoing paragraphs are incorporated by reference herein with the same force and effect as if set forth in full below.

372.    Finjan alleges in its Complaint that the '494 and '154 Patents are enforceable.

373.    PAN denies that the '494 and '154 Patents are enforceable and contends that these patents are unenforceable on the grounds of unclean hands.

374.    PAN incorporates by reference herein the allegations set forth in ¶¶ 267-280 of its Answer, which set forth the factual and legal basis for the Finjan's unclean hands leading to the unenforceability of the '494 and '154 Patents.

375.    There exists an actual and justiciable controversy between PAN and Finjan as to whether one or more claims of the '494 and '154 Patents are enforceable.  The controversy is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

376.    PAN is entitled to a declaratory judgment that the '494 and '154 Patents are unenforceable due to Finjan's unclean hands.

## REQUEST FOR RELIEF

WHEREFORE, PAN respectfully requests:

A.    That Finjan's Amended Complaint be dismissed with prejudice;

B.    That Finjan take nothing by reasons of its Amended Complaint;

C.    A declaration that the '780, '731, '926, '633, '154, '408, and '494 Patents, and every claim thereof, are not infringed by PAN;

D.    A declaration that the '780, '731, '926, '633, '154, '408, and '494 Patents, and every claim thereof, are invalid;

E.    A declaration that the '494 and '154 Patents are unenforceable due to inequitable conduct;

F.    A declaration that the '494 and '154 Patents are unenforceable due to unclean

1    hands;

2        G.        That PAN be awarded its costs and attorneys' fees; and

3        H.        Such further equitable or legal relief as this Court deems just and proper.

4

5    DATED: April 14, 2021                    */s/ Colette Reiner Mayer*
                                              Michael A. Jacobs (CA SBN 111664)
6                                             MJacobs@mofo.com
                                              Matthew A. Chivvis (CA SBN 251325)
7                                             MChivvis@mofo.com
                                              Diek O. Van Nort (CA SBN 273823)
8                                             DVanNort@mofo.com
                                              MORRISON & FOERSTER LLP
9                                             425 Market Street
                                              San Francisco, California 94105-2482
10                                            Telephone: (415) 268-7000/Fax: (415) 268-7522

11                                            Rudy Y. Kim (CA SBN 99426)
                                              RudyKim@mofo.com
12                                            Colette Reiner Mayer (CA SBN 263630)
                                              CRMayer@mofo.com
13                                            MORRISON & FOERSTER LLP
                                              755 Page Mill Road
14                                            Palo Alto, California 94304-1018
                                              Telephone: (650) 813-5600/Fax: (650) 494-0792
15
                                              Eric W. Lin (*Pro Hac Vice*)
16                                            Elin@mofo.com
                                              Michael J. DeStefano (*Pro Hac Vice*)
17                                            Mdestefano@mofo.com
                                              MORRISON & FOERSTER LLP
18                                            250 West 55th Street
                                              New York, New York 10019-9601
19                                            Telephone: (212) 468-8000/Fax: (212) 468-7900

20                                            Attorneys for Defendant
                                              PALO ALTO NETWORKS, INC.
21

22

23

24

25

26

27

28