Juanita R. Brooks (CA SBN 75934) / brooks@fr.com
Roger A. Denning (CA SBN 228998) / denning@fr.com
Frank J. Albert (CA SBN 247741) / albert@fr.com
K. Nicole Williams (CA SBN 291900) / nwilliams@fr.com
Jared A. Smith (CA SBN 306576) / jasmith@fr.com
Tucker N. Terhufen (CA SBN 311038) / terhufen@fr.com
FISH & RICHARDSON P.C.
12860 El Camino Real, Ste. 400
San Diego, CA 92130
Telephone: (858) 678-5070 / Fax: (858) 678-5099

Susan E. Morrison (Pro Hac Vice) / morrison@fr.com
FISH & RICHARDSON P.C.
222 Delaware Avenue, 17th Floor
P.O. Box 1114
Wilmington, DE 19801
Telephone: (302) 652-5070 / Fax: (302) 652-0607

*Additional counsel listed on signature page*

**Attorneys for Plaintiff**
FINJAN LLC

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### (OAKLAND DIVISION)

| | |
|---|---|
| FINJAN LLC,<br><br>Plaintiff,<br><br>v.<br><br>PALO ALTO NETWORKS, INC.,<br><br>Defendant. | Case No. 14-cv-04908-PJH<br><br>**FINJAN LLC'S NOTICE OF MOTION AND MOTION TO STRIKE PALO ALTO NETWORKS, INC.'S TENTH, ELEVENTH, TWELFTH, AND THIRTEENTH AFFIRMATIVE DEFENSES AND MOTION TO DISMISS COUNTS XV, XVI, AND XVII OF PALO ALTO NETWORKS, INC.'S COUNTERCLAIMS**<br><br>**Date:  Thursday, June 24, 2021**<br>**Time: 1:30 p.m.**<br><br>**Hon. Phyllis J. Hamilton**<br>**Ctrm: 3, 3rd Floor** |

1

## <u>TABLE OF CONTENTS</u>

2

**Page**

3

NOTICE OF MOTION ........................................................................................................1

STATEMENT OF ISSUES ................................................................................................1

4

INTRODUCTION ..............................................................................................................1

5

FACTUAL BACKGROUND .............................................................................................3

6

I.   PROSECUTION OF THE '494 PATENT ................................................................3

7

    A.   Ms. Bey's Petition During Prosecution of the '494 Patent Corrected an Error in Priority Date, But the PTO Denied the Petition ......................................3

8

    B.   The Touboul Declaration Is Limited Only to Certain Claims of the '494 Patent ......4

9

II.   FINJAN'S DISCOVERY RESPONSES IN THE SYMANTEC CASE WERE AT ALL TIMES ACCURATE .........................................................................................4

10

LEGAL STANDARDS .......................................................................................................7

11

ARGUMENT .......................................................................................................................8

12

    A.   The '494 Patent ...............................................................................................9

13

        1.   PAN Mischaracterizes the File History and Prior Litigation Documents......9

        2.   Mr. Touboul's Declaration Is Accurate and Contains No Misrepresentations. ............................................................................10

14

        3.   PAN Alleges No Facts Supporting Materiality of the Alleged Misrepresentation. ..........................................................................12

15

        4.   PAN Alleges No Facts Supporting Finjan's Specific Intent to Deceive the PTO. ...............................................................................................13

16

17

    B.   The '154 Patent .............................................................................................14

18

        1.   PAN's Inequitable Conduct Claims Do Not Sufficiently Plead a Misrepresentation, Let Alone a Material Misrepresentation.......................14

19

        2.   PAN Fails To Allege But-For or Per Se Materiality.................................15

20

        3.   PAN's Inequitable Conduct Claims Do Not Sufficiently Plead Intent.......16

21

CONCLUSION .................................................................................................................17

22

23

24

25

26

27

28

1

## **TABLE OF AUTHORITIES**

2

**Page(s)**

3

**Cases**

4

*1st Media, LLC v. Elec. Arts, Inc.*,
    694 F.3d 1367 (Fed. Cir. 2012) ................................................................................................ 13

*Adobe Sys. Inc. v. Norwood*,
    No. C 10-03564 SI, 2011 WL 2650945 (N.D. Cal. July 6, 2011) ............................................. 8

*AirWair Int'l Ltd. v. Schultz*,
    84 F. Supp. 3d 943 (N.D. Cal. 2015) ................................................................................... 8, 9

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ............................................................................................................. 7, 8

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ................................................................................................................. 7

*BlackBerry Ltd. v. Typo Prods. LLC*,
    No. 14-cv-00023-WHO, 2014 23 ...................................................................................... 8, 14

*Exergen Corp. v. Wal-Mart Stores, Inc.*,
    575 F.3d 1312 (Fed. Cir. 2009) ......................................................................................... 8, 10

*Finjan v. Symantec*,
    Case No. 4:14-cv-02998-HSG (N.D. Cal.) . Dkt. No. 116 ......................................... 4, 5, 6, 10

*In re Gilead Scis. Sec. Litig.*,
    536 F.3d 1049 (9th Cir. 2008) ................................................................................................. 7

*Lucent Techs., Inc. v. Gateway, Inc.*,
    543 F.3d 710 (Fed. Cir. 2008) .............................................................................................. 11

*Mendiondo v. Centinela Hosp. Med. Ctr.*,
    521 F.3d 1097 (9th Cir. 2008) ................................................................................................. 7

*Oracle Corp. v. DrugLogic, Inc.*,
    807 F. Supp. 2d 885 (N.D. Cal. 16 2011) ............................................................................ 12

*Solis v. Zenith Capital, LLC*,
    No. C 08-4854 PJH, 2009 WL 1324051 (N.D. Cal. May 8, 2009) .................................... 7, 10

*Takeda Pharm. Co. v. TWi Pharms., Inc.*,
    87 F. Supp. 3d 1263 (N.D. Cal. 2015) .............................................................................. 13, 16

*Therasense, Inc. v. Becton, Dickinson & Co.*,
    649 F.3d 1276 (Fed. Cir. 2011) ............................................................8, 10, 14, 16

*U.S. Water Servs., Inc. v. Novozymes A/S*,
    843 F.3d 1345 (Fed. Cir. 2016) ....................................................................13, 16

*United States v. Ogden*,
    No. 20-CV-01691-DMR, 2021 WL 858467 (N.D. Cal. Mar. 8, 2021) .....................7

*Zep Solar Inc. v. Westinghouse Solar Inc.*,
    No. C 11-06493 JSW, 2012 WL 1293873 (N.D. Cal. Apr. 16, 2012) .......................8

**Statutes**

35 U.S.C. § 119(e) ......................................................................................................3

35 U.S.C. § 120 ......................................................................................................3, 14

**Other Authorities**

37 C.F.R. § 1.78 ......................................................................................................9, 14

37 C.F.R. § 1.78(a) ......................................................................................................9

37 C.F.R. § 1.78(a)(3) ............................................................................................3, 14

Fed. R. Civ. P. 12(f) ......................................................................................................7

Fed. R. Civ. P. 9(b) ......................................................................................................8

Fed. R. Civ. P. 12 ......................................................................................................16

Fed. R. Civ. P. 12(b)(6) ................................................................................................7

Fed. R. Civ. P. 16(b) ....................................................................................................6

MPEP § 201.11 (8th Ed., rev. 9, Aug. 2012) ..........................................................9, 14

CASE NO. 14-CV-04908-PJH
FINJAN'S MTS DEFENDANT'S 10TH, 11TH,
12TH & 13TH AFFIRMATIVE DEFENSES

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**NOTICE OF MOTION**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**NOTICE IS HEREBY GIVEN** that on June 24, 2021, at 1:30 p.m., or as soon thereafter as counsel may be heard by the Honorable Phyllis J. Hamilton in Courtroom 3, 3rd Floor, located at 1301 Clay Street, Oakland, California 94612, Plaintiff Finjan LLC ("Finjan") will and hereby does move the Court for an order granting Finjan's Motion to Strike Palo Alto Networks, Inc.'s ("PAN") Tenth, Eleventh, Twelfth, and Thirteenth Affirmative Defenses ("Motion to Strike") and Finjan's Motion to Dismiss the same affirmative defenses brought as counterclaims—Count XV, Count XVI, and Count XVII of PAN's Counterclaims.

This motion is based on this Notice of Motion, the following Memorandum of Points and Authorities, the Declaration of Phillip Goter filed herewith and exhibits attached thereto, the proposed order submitted herewith, the pleadings and papers on file in this action, any evidence and argument presented to the Court at or before the hearing on this motion, and all matters of which the Court may take judicial notice.

**STATEMENT OF ISSUES**

1.      Whether the Court should strike PAN's Tenth, Eleventh, Twelfth, and Thirteenth Affirmative Defenses, which relate to inequitable conduct and unclean hands, because they are not sufficiently pled.

2.      Whether the Court should dismiss Count XV, Count XVI, and Count XVII of PAN's Counterclaims, which relate to inequitable conduct and unclean hands, because they are not sufficiently pled.

**INTRODUCTION**

The Court should strike PAN's Tenth, Eleventh, Twelfth, and Thirteenth Affirmative Defenses and should dismiss Counts XV, XVI, and XVII of PAN's Counterclaims (collectively, "the Inequitable Conduct Claims") because PAN's Inequitable Conduct Claims are insufficiently pled and fail to state plausible defenses under the law. The Inequitable Conduct Claims for U.S. Patent Nos. 8,677,494, Dkt. No. 112-7 (the "'494 Patent") and 8,141,154, Dkt. No. 112-5 (the

"'154 Patent") are not facially plausible because they are based on allegations that do not include any material misrepresentation to the Patent Office ("PTO") during prosecution of these patents upon which the PTO actually relied.

These inequitable conduct claims are nothing more than a sideshow.  PAN rehashes nearly verbatim in its answer and counterclaims the claims and assertions made by other defendants—Cisco, Juniper, SonicWALL, and Rapid7—in their cases against Finjan.  Indeed, Judge Alsup granted a similar motion to strike by Finjan in the Juniper case, and Cisco (though its claims survived motion practice) has withdrawn the claims from its case "in the interests of streamlining issues in preparation for trial."  *See* Exh.[1] 1 at 7-9; Exh. 2 at 5-6.  The Inequitable Conduct Claims have no merit on their face and do not deserve to be rehashed here again.

First, PAN alleges that Finjan's patent prosecutor, Ms. Dawn-Marie Bey made false representations to the PTO by intentionally delaying in seeking an earlier priority date for the '494 and '154 Patents. Contrary to PAN's accusations, Ms. Bey actually filed a proper petition pursuant to the rules governing the prosecution of patents, seeking the earlier priority date. But in any event, the PTO denied the '494 Petitions, so there was no reliance on the petition that could support an inequitable conduct claim.

Second, PAN's other inequitable conduct allegations take factually true disclosures out of context. Mr. Shlomo Touboul, one of the inventors of the Patents, submitted to the PTO a declaration stating that he was the sole inventor of ***certain*** claims of the '494 Patent. PAN claims this is inconsistent with statements by Finjan that other inventors also contributed to the '494 patent. But Finjan never claimed that these other inventors invented the ***same claims*** that Mr. Touboul discussed in his declaration, and Mr. Touboul never claimed in his declaration to have invented ***all*** of the claims by himself. The actual pleadings at issue demonstrate there is no conflict between Mr. Touboul's declaration submitted to the PTO and other statements that Finjan made during litigation. Thus, PAN cannot identify any misrepresentations that support its

---

[1] All exhibits ("Exh.") cited herein are attached to the Declaration of Phillip Goter in Support of Finjan's Motion to Strike filed herewith.

Inequitable Conduct Claims. Moreover, PAN falls far short of the stringent Federal Circuit standard for pleading such claims with particularity. Specifically, PAN entirely fails to plead facts sufficient to claim that any purported misrepresentation was material, or that any individual had a specific intent to deceive the Patent Office.  Thus, the Inequitable Conduct Claims should be stricken and dismissed.[2]

## FACTUAL BACKGROUND

### I.  PROSECUTION OF THE '494 PATENT

**A.  Ms. Bey's Petition During Prosecution of the '494 Patent Corrected an Error in Priority Date, But the PTO Denied the Petition**

On October 23, 2012, as a part of the prosecution of the '494 Patent, Ms. Dawn-Marie Bey submitted a "Petition To Accept Unintentionally Delayed Claim of Priority Under 35 U.S.C. § 119(e) and § 120 For The Benefit Of A Prior-filed Application Filed Under 37 C.F.R. § 1.78(a)(3)" ("'494 Patent Petition").  Dkt. No. 116, ¶ 237; Exh. 3 at FINJAN-PAN 003519-24. The PTO *denied* the '494 Patent Petition on November 27, 2012, such that the PTO *did not rely upon* the '494 Patent Petition. Dkt. No. 116, ¶ 239; Exh. 3 at FINJAN-PAN 003555-56.

On January 7, 2013, the Patent Office initially determined that the Ji reference ("Ji") was prior art to the '494 Patent and rejected the amendments. Dkt. No. 116, ¶ 239; Exh. 3 at FINJAN-PAN 003557-63. On May 7, 2013, pursuant to the Manual of Patent Examining Procedure ("MPEP"), Ms. Bey submitted the Request for Continued Examination to overcome Ji as prior art, accompanied by Mr. Shlomo Touboul's declaration (the "Touboul Declaration"). Dkt. No. 116, ¶ 240. PAN acknowledges that following Ms. Bey's Petition of October 2012, the PTO still issued a rejection on January 7, 2013 based on the Ji reference.  Later, when the PTO issued a Notice of

---

[2] As the Thirteenth Affirmative Defense and Count XVII of the Counterclaims allege unclean hands, solely due to the alleged inequitable conduct related to the '494 and '154 patents, they cannot stand on their own.  Indeed, they are facially implausible because the facts that PAN alleges, and which are substantially the same as those PAN relies on for inequitable conduct, do not demonstrate bad faith or egregious misconduct during the prosecution.  Moreover, unclean hands (PAN's Count XVII) is improperly pled as a counterclaim.

Allowance for the '494 Patent, it cited Mr. Touboul's Declaration of May 7, 2013 as overcoming the Ji reference—not Ms. Bey's Petition. Dkt. No. 116, ¶ 241; Exh. 3 at FINJAN-PAN 004095-98.

**B.     The Touboul Declaration Is Limited Only to Certain Claims of the '494 Patent**

Mr. Touboul's declaration of May 7, 2013, submitted as a part of the prosecution of the '494 Patent, confirmed that he is the sole inventor of certain claims of the '494 Patent—namely, Claims 1, 3, 4–6,  9, 10, 12–15 and 18—and that he conceived of these claims in late 1996. Dkt. No. 116, ¶ 240; Exh. 3 at FINJAN-PAN 003571-73. Mr. Touboul corroborated the Touboul Declaration with documentation for the Finjan "Surfingate" product, attaching a draft press release from October 1996 as an exhibit. Exh. 3 at FINJAN-PAN 003572-73. Notably, Mr. Touboul did not allege in his affidavit that he was the sole inventor of all claims of the '494 Patent.

On August 29, 2013, the PTO issued a Notice of Allowance for the '494 Patent, stating that the Surfingate document attached to the Touboul Declaration corroborated the requested priority date. *Id.*; *e.g.*, Exh. 3 at FINJAN-PAN 004095-004104, 003571-003573, 003557-003564, 003555-003556 and 003551-003552 ("the submitted Exhibit A Surfingate™ product press release titled 'Gateway Level Corporate Security for the New World of Java™ and Downloadables' shows a publication date of October 31, 1996 which is prior to September 10, 1997. The rejection is hereby withdrawn and the claims are in conditions for allowance.").

## II.     FINJAN'S DISCOVERY RESPONSES IN THE SYMANTEC CASE WERE AT ALL TIMES ACCURATE

Finjan asserted the '494 Patent in *Finjan v. Symantec*, Case No. 4:14-cv-02998-HSG (N.D. Cal.) (the "Symantec Action"). Dkt. No. 116, ¶ 222. On December 4, 2014, Finjan identified the claims it was asserting against Symantec in its infringement contentions for the '494 Patent, which included Claims 1-6 and 10-15. *See* Exh. 4 at 2. On March 3, 2017, pursuant to the Scheduling Order in that case, Finjan narrowed the claims it was asserting against Symantec to Claims 1, 2, 5, 6, 10, 11, 14, and 15. Exh. 5 at 1.

1        During discovery, Symantec asked Finjan a broad interrogatory regarding the conception

2   and reduction to practice of the claims of the '494 Patent. *See* Exh. 6 at 2.[3]  On June 7, 2017,

3   Finjan served its Third Supplemental Response, indicating that the inventors would have

4   "knowledge related to the conception and reduction to practice of the '494 Patent," as follows:

5                 The date of conception for the asserted claims of U.S. Patent No.  8,667,494

6                 ("the '494 Patent") began October 31, 1996 and continued through May
                    2000. The date of constructive reduction of practice of the asserted claims of

7                 the '494 Patent is no later than November 7, 2011. Yigal Edery, Nimrod
                    Vered, David Kroll, and Shlomo Touboul were involved with, and may have

8                 knowledge related to the conception and reduction to practice of the '494
                    Patent.

9

10   *Id.* at 2, 10. Finjan's response addressed who had information regarding conception and reduction

11   to practice of the '494 Patent.  It only makes sense that co-inventors would have some knowledge

12   about the related claims that Mr. Touboul invented in the same patent. Thus, conception started

13   with the claims Mr. Touboul solely invented in October 1996 and continued until May 2000, when

14   the other named inventors of the '494 Patent contributed to certain additional claims. Finjan's

15   response referred to all the named inventors, but never stated that each inventor was involved with

16   every claim and it did not contend that all the named inventors were involved with claims 1, 3, 4-

17   6, 9, 10, 12-15, and 18 (discussed in the Touboul Declaration).

18        On June 26, 2017, after the close of fact discovery, Finjan served its Final Election of

19   Asserted Claims and narrowed its asserted claims of the '494 Patent to claims 10, 14, and 15

20   according to the Scheduling Order. Exh. 7 at 1. With this election, Finjan for the first time

21   narrowed the asserted claims of the '494 Patent to only those that were identified in the Touboul

22   Declaration.

23        On August 14, 2017, Finjan supplemented its response to Interrogatory No. 1 solely to

24   reference a certificate of correction that had issued for the '926 Patent. Dkt. No. 116, ¶ 222; Exh. 8

25

26

27   ---
[3] Exhs. 6-8 are exhibits originally attached to Declaration of Kate E. Cassidy in Support of
Symantec's Motion to Amend Answer, filed in the Symantec Action on August 18, 2017.

28

1    at 13-14.  As is standard practice, Finjan included its entire previous responses to Interrogatory

2    No. 1 when supplementing, including verbatim the prior response for the '494 Patent.

3         In August 2017, Symantec sought to amend its answer in the Symantec Action to assert an

4    inequitable conduct defense based on the same statements by Mr. Touboul that PAN alleges in its

5    Answer here.[4]  When Finjan and Symantec met and conferred regarding this proposed

6    amendment, Finjan explained that Symantec's interpretation was incorrect and that Finjan would

7    serve a clarifying supplement to its Response to Interrogatory No. 1 to address Symantec's

8    concerns. Finjan then in good faith served a supplemental response that day, August 14, 2017, to

9    Symantec's Interrogatory No. 1, clarifying that:

10              The date of conception for claims of U.S. Patent No. 8,667,494 ("the '494
                Patent") began October 31, 1996 and continued through May 2000. The date
11              of conception for the *currently* asserted claims of the '494 Patent is October
                31, 1996. The date of constructive reduction of practice of the asserted claims
12              of the '494 Patent is no later than November 7, 2011. Yigal Edery, Nimrod
                Vered, David Kroll, and Shlomo Touboul were involved with, and may have
13              knowledge related to the conception and reduction to practice claims of the
                '494 Patent.
14

15   Exh. 8 at 15 (emphasis added).

16        Thus, Finjan's responses stated that the asserted claims identified in Finjan's Final Election

17   (claims 10, 14, and 15 of the '494 Patent) were conceived in 1996, the date stated in the Touboul

18   Declaration. This supplementation made clear that conception of the complete set of claims of the

19   '494 Patent continued through 2000, due to contributions from the other named inventors. Finjan's

20   supplemental response also maintained the accurate statement that all named inventors were

21   involved with conception and reduction to practice of inventions of the '494 Patent, which are set

22   forth in various claims of the '494 Patent, including those for which Mr. Touboul is not the sole

23   inventor.

24

25

26   [4] The Court denied Symantec's motion to amend on the basis that "Symantec has not satisfied the
     'good cause' standard of Rule 16(b)" because it "has not been diligent." Thus, the Court did not
27   need to address the futility of the amendment. *See* Exh. 9 at 2–3.

28

1

**LEGAL STANDARDS**

2      The Court may dismiss PAN's Counterclaims under Rule 12(b)(6) for failure to state a

3 claim because they "lack[] a cognizable legal theory or sufficient facts to support a cognizable

4 legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008)

5 (citation omitted).  Similarly, the Court "may strike from a pleading an insufficient defense or any

6 redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). In particular, the

7 Court may strike any defense that is "insufficient" because it fails to plead the elements of the

8 defense or fails to provide an adequate factual basis. *See Solis v. Zenith Capital, LLC*, No. C 08-

9 4854 PJH, 2009 WL 1324051, at *3-7 (N.D. Cal. May 8, 2009) (striking affirmative defenses

10 because no factual bases were provided).

11      PAN's pleading must include "enough facts to state a claim [for] relief that is plausible on

12 its face."[5]  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Court is not required to

13 accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or

14 unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir.

15 2008)(citation omitted).  Here, the Inequitable Conduct Claims are facially implausible, such that

16 they fail as a matter of law. While this Court "must take all of the factual allegations" in PAN's

17 pleading "as true," it is "'not bound to accept as true a legal conclusion couched as a factual

18 allegation.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555).

19      PAN's Inequitable Conduct Claims refer to certain file histories and litigation documents

20 that are subject to judicial notice for the purposes of this Motion, and Finjan moves the Court to

21 take judicial notice of this record. It is appropriate to consider these materials here to underscore

22 the futility of PAN's inequitable conduct and unclean hands allegations, as demonstrated below.

23 Courts may consider on a motion to dismiss or strike material properly submitted as part of the

24

25 [5] "Although the Ninth Circuit has not spoken directly on pleading standards for affirmative
defenses, 'the majority of courts in [the Northern District of California] have held that the
26 heightened pleading standard of Twombly and Iqbal ... is now the correct standard to apply to
affirmative defenses.'" *United States v. Ogden*, No. 20-CV-01691-DMR, 2021 WL 858467, at *2
27 (N.D. Cal. Mar. 8, 2021) (quoting *Pertz v. Heartland Realty Inv'rs, Inc.*, No. 19-cv-06330-CRB,
2020 WL 95636, at *1 (N.D. Cal. Jan. 8, 2020)).

28

1   pleading and items that are proper subjects of judicial notice. *See AirWair Int'l Ltd. v. Schultz*, 84

2   F. Supp. 3d 943, 950–51 (N.D. Cal. 2015) ("Matters which are appropriate subjects of judicial

3   notice include 'matters of public record.'") (citing *Lee v. City of Los Angeles*, 250 F.3d 668, 689

4   (9th Cir. 2001)). A document is not outside the pleading if the pleading specifically refers to the

5   documents and if its authenticity is not questioned. *Adobe Sys. Inc. v. Norwood*, No. C 10-03564

6   SI, 2011 WL 2650945, at *3 (N.D. Cal. July 6, 2011) (citations omitted). The Court may consider

7   the full text of the document, even if the pleading quotes it only in part. *Id.* (citation omitted).

8       PAN's inequitable conduct allegations must allege with "particularity" under Rule 9(b)

9   that Finjan or its counsel deliberately withheld or misrepresented material information with the

10  specific intent to deceive the PTO during prosecution of the '494 and '154 Patents. *Therasense,*

11  *Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1287 (Fed. Cir. 2011) (citations omitted). Under

12  prevailing law, there must be allegations showing specific intent by specific individuals to deceive

13  the PTO, or at least that such deceptive intent is the "single most reasonable inference able to be

14  drawn from the evidence." *Id.* at 1290 (citation and internal quotation omitted); *see also Exergen*

15  *Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1326-27 (Fed. Cir. 2009); *see also Zep Solar Inc.*

16  *v. Westinghouse Solar Inc.*, No. C 11-06493 JSW, 2012 WL 1293873, at *2 (N.D. Cal. Apr. 16,

17  2012) (granting motion to strike affirmative defense of inequitable conduct); *BlackBerry Ltd. v.*

18  *Typo Prods. LLC*, No. 14-cv-00023-WHO, 2014 23 WL 1867009, at *1-4 (N.D. Cal. May 8,

19  2014) (same).

## ARGUMENT

21      The Court should strike and dismiss the Inequitable Conduct Claims because PAN cannot

22  meet the exacting standard for pleading inequitable conduct. At a fundamental level, PAN's

23  factual allegations fail to show any misrepresentation or reliance by the PTO on such purported

24  misrepresentations for materiality purposes, as required to plead the Inequitable Conduct Claims.

25  Further, there is no evidence of intent. PAN's allegations must "permit the court to infer more than

26  the mere possibility of misconduct" which the Court simply cannot do for PAN's Inequitable

27  Conduct Claims, as discussed below. *Iqbal*, 556 U.S. at 679.

28

## A.     The '494 Patent

Despite devoting numerous paragraphs to the Inequitable Conduct Claims (Dkt. No. 116, ¶¶ 216–251, 359-364. 371-376), PAN cannot muster a facially plausible claim of inequitable conduct for the '494 Patent under either of the two grounds it raises—i.e., the Touboul Declaration and Ms. Bey's filing of the petition. Dkt. No. 116, ¶ 250; Exh. 3 at FINJAN-PAN 003571-73, FINJAN-PAN 003519-24. As detailed above, PAN misconstrues the file history and prior litigation documents, which are subject to judicial notice and are the basis for PAN's inequitable conduct allegations for the '494 Patent. *See* Section I-II; *see also AirWair Int'l*, 84 F. Supp. 3d at 950–51 ("Matters which are appropriate subjects of judicial notice include 'matters of public record.'") (citing *Lee*, 250 F.3d at 689).  Indeed, PAN's inequitable conduct allegations are effectively a carbon copy of the Juniper allegations, which were rejected by Judge Alsup.

### 1.     PAN Mischaracterizes the File History and Prior Litigation Documents.

PAN alleges that Ms. Bey's prosecution of the '494 Patent gives rise to inequitable conduct because she filed the '494 Patent Petition, despite the fact that Ms. Bey followed the protocol provided for by the MPEP, which PAN acknowledges. 37 C.F.R. § 1.78; *see also* Dkt. No. 116, ¶ 237 ("A representation that the entire delay in claiming priority was unintentional is required under 37 C.F.R. § 1.78(a)."); MPEP § 201.11 (8th Ed., rev. 9, Aug. 2012), available at https://www.uspto.gov/web/offices/pac/mpep/index.html. The fact that the PTO rejected the '494 Patent Petition at issue in PAN's Answer is fatal to PAN's claim of inequitable conduct because it demonstrates that the PTO **did not rely upon** the '494 Patent Petition in issuing the '494 Patent. Dkt. No. 116, ¶ 239 ("the Petition was denied for failure to comply with the formality of including the reference required to claim priority."). Thus, there is no material misrepresentation because the PTO issued a rejection based on the Ji reference in January 7, 2013, after Ms. Bey submitted the Petition in October 2012.  *Id.*  In other words, even accepting as true PAN's allegations, there is no "but-for" materiality that Ms. Bey's Petition had any impact on the prosecution of the '494 Patent. Thus, the filing of the '494 Patent Petition and statements contained therein is not material,

much less a misrepresentation, and cannot be the basis for an inequitable conduct allegation. *Therasense, Inc.*, 649 F.3d at 1295 (stating that proof of reliance is equivalent to proof of but-for materiality, such that materiality is satisfied only when a party is compelled to do what it would not have otherwise done, but for the misrepresentation).

In addition to failing on the materiality prong, PAN also fails to provide any factual basis for its contention that Ms. Bey had the specific intent to deceive the PTO. Rather, PAN contends in a single, conclusory sentence that Ms. Bey's '494 Patent Petition "was false and intended to deceive the USPTO." Dkt. No. 116, ¶ 238. However, PAN offers this allegation of specific intent "[u]pon information and belief," without offering any basis for such belief. *Id*. Thus, PAN's allegations as to Ms. Bey fail to meet even the usual pleading standard because they lack any underlying facts to support its counterclaim and affirmative defense of inequitable conduct—the allegations certainly cannot meet the heightened pleading standard of "particularity" that a claim of inequitable conduct requires. *See Solis*, 2009 WL 1324051, at *3-7 (striking affirmative defenses because no factual bases were provided); *Exergen Corp.*, 575 F.3d at 1326-27.

### 2. Mr. Touboul's Declaration Is Accurate and Contains No Misrepresentations.

PAN's allegations that the Touboul Declaration "was an intentional misrepresentation of material fact intended to deceive the USPTO" are not facially plausible because Mr. Touboul never claimed that he invented every single claim of the '494 Patent on his own. Dkt. No. 116, ¶ 242. In fact, the Touboul Declaration and Finjan's positions during the Symantec action have been consistent and are not contradictory in any manner. By conflating *every* claim of the '494 Patent with responses addressing the ***asserted*** claims in the Symantec case, PAN attempts to invent an inequitable conduct allegation—an allegation that has been found lacking before by Judge Alsup: "A plausible reading of the record is that Finjan admitted that Touboul alone invented claims 10, 14, and 15 of the '494 patent, whereas the other co-inventors (who arrived at Finjan after November 1996) contributed to other claims in the '494 patent." Exh. 1 at 7-8.

1    Specifically, PAN misconstrues Finjan's statement in its discovery response to a very

2    broad interrogatory asking about many aspects of conception and reduction to practice. PAN is

3    attempting to transform the statement that the named inventors "were involved with, and may have

4    knowledge related to the conception and reduction to practice of the '494 Patent" to mean that

5    Finjan asserted that all of the named inventors invented every claim of the '494 Patent. Dkt. No.

6    116, ¶ 242; Exh. 8 at 6, 8, 10, 12, and 15. Rather, Finjan's discovery responses establish what

7    Finjan has always maintained—that the named inventors worked together on certain aspects of the

8    '494 Patent and the inventors had information regarding the claimed invention of the '494 Patent.

9    The facts set forth in the discovery responses are consistent with the Touboul Declaration, as

10   Mr. Touboul states that he was the sole inventor only on certain claims of the '494 Patent, a fact

11   that PAN pled. Dkt. No. 116, ¶ 242 ("Mr. Touboul's testimony that he was the 'sole' inventor of

12   certain of the claims under examination…."). The specific facts contained in the Touboul

13   Declaration and Finjan's discovery responses during litigation that separate inventors were

14   responsible for different claims in the '494 Patent is legally proper, because different claims in a

15   patent can have different inventors and priority claims. *See Lucent Techs., Inc. v. Gateway, Inc.*,

16   543 F.3d 710, 718 (Fed. Cir. 2008) ("Patent claims are awarded priority on a claim-by-claim basis

17   based on the disclosure in the priority applications.") (citations omitted). Additionally, a named

18   inventor on a patent is not required to have contributed to all claims of a patent; rather, the

19   inventor is required to have contributed only to a single claim. *Id*. at 721.

20   Moreover, PAN's allegations regarding Finjan's interrogatory response fails to account for

21   the timing of Finjan's disclosure. Dkt. No. 116, ¶ 242. Under the scheduling order, Finjan was

22   required to narrow its asserted claims and did so by identifying Claims 10, 14, and 15 (which

23   Mr. Touboul had identified in the Touboul Declaration as the claims for which he was the sole

24   inventor). *See* Exh. 7 at 1.  Thereafter, Finjan supplemented its response on August 14, 2017,

25   setting forth that "[t]he date of conception for the currently asserted claims of the '494 Patent is

26   October 31, 1996," thereby updating our responses to reflect the asserted claims, which had just

27   been narrowed in the case. Exh. 8 at 15 (emphasis added).

28

Thus, the Touboul Declaration is accurate and consistent with Finjan's discovery responses because Finjan used "asserted claims" to refer to those that Finjan originally asserted in its infringement contentions against Symantec, which included several claims for which Mr. Touboul did not claim to be sole inventor in his declaration. Thus, it was accurate for Finjan to identify the other inventors of the '494 Patent in its discovery responses at the time of the response because it was referring to the claims that were asserted at that point in the case.

Further, the Court can take judicial notice of facts that PAN elected not to plead, namely that after Symantec raised the issue with Finjan, Finjan immediately served a Fifth Supplemental Response to clarify that the subset of "currently asserted claims" (Claims 10, 14, and 15) were conceived in 1996. These are all claims that Mr. Touboul invented individually, and Finjan's supplemental response was meant to address Symantec's confusion over the issue. *See* Exh. 8 at 15.

Therefore, because there is no misrepresentation, much less a material one, there cannot be any inequitable conduct. *See Oracle Corp. v. DrugLogic, Inc.*, 807 F. Supp. 2d 885, 898–99 (N.D. Cal. 16 2011).

### 3.   PAN Alleges No Facts Supporting Materiality of the Alleged Misrepresentation.

PAN's claim of materiality of the purported misrepresentation is facially implausible. PAN alleges that the "USPTO would not have issued the '494 Patent . . . but for Mr. Touboul's declaration that backdated his invention in order to overcome Ji's status as prior art." Dkt. No. 116, ¶ 250. However, PAN has no support that Mr. Touboul submitted an allegedly false declaration "in order to overcome" prior art, because none of Finjan's statements cited in PAN's Affirmative Defense contradict Mr. Touboul's statements in the Touboul Declaration. As shown above, Finjan's statements are consistent with Mr. Touboul's statement that he was the inventor of Claims 1, 3, 4–6, 9, 10, 12–15, and 18 of the '494 Patent, and that one or more of the listed inventors were co-inventors of the remaining claims. Thus, because there is no misrepresentation, there cannot be a material misrepresentation.

Further, any purported misstatements in the Touboul Declaration (which do not exist) are immaterial because Mr. Touboul's statements regarding sole inventorship in his declaration were not the basis for the PTO's withdrawal of its rejection over the 1997 reference. Rather, in issuing the '494 Patent, the PTO referred to the Surfingate document, which was attached to the Touboul Declaration, that corroborated the 1996 priority date.  Exh. 3 at FINJAN-PAN 004100 ("withdrawing the rejection over the 1997 reference because 'the submitted Exhibit A SurfingateTM product press release titled 'Gateway Level Corporate Security for the New World of JavaTM and Downloadables' shows a publication date of October 31, 1996 which is prior to September 10, 1997.").  As such, PAN's assertion that the PTO would not have issued the patent but for Mr. Touboul's statement regarding his sole inventorship is implausible and there is nothing to support such a claim. Dkt. No. 116, ¶¶ 227–228. PAN cannot be permitted to make allegations and suggest there is inequitable conduct, when it has no basis to do so, especially where others have unsuccessfully made the same claims on the same facts.

### 4.    PAN Alleges No Facts Supporting Finjan's Specific Intent to Deceive the PTO.

Because PAN does not identify any facts showing a material misrepresentation as a matter of law, the Court need not consider whether PAN adequately pled an intent to deceive. *Takeda Pharm. Co. v. TWi Pharms., Inc.*, 87 F. Supp. 3d 1263, 1288 (N.D. Cal. 2015); *U.S. Water Servs., Inc. v. Novozymes A/S*, 843 F.3d 1345, 1354 (Fed. Cir. 2016).

Nonetheless, PAN's allegations are implausible because they fail to plead facts that demonstrate that Mr. Touboul specifically intended to deceive the PTO. *1st Media, LLC v. Elec. Arts, Inc.*, 694 F.3d 1367, 1375, 1376-77 (Fed. Cir. 2012) (finding no inequitable conduct where no evidence of a deliberate decision to withhold a reference that the applicant knew was material). PAN's allegations of specific intent are conclusory and legally insufficient, instead basing its allegations that Mr. Touboul specifically intended to deceive the PTO "on information and belief." Dkt. No. 116, ¶ 242 ("On information and belief, Mr. Touboul's testimony that he was the 'sole' inventor' … was an intentional misrepresentation of material fact intended to deceive the

USPTO"). The specific intent requirement for inequitable conduct defense, however, requires much more than mere supposition or a legal conclusion based on PAN's belief. It requires "specific facts upon which the belief is reasonably based." *BlackBerry*, 2014 WL 1867009, at *3 ("Pleading on 'information and belief' is permitted…*only if the pleading sets forth the specific facts upon which the belief is reasonably based.*") (emphasis in original) (citation omitted). PAN fails to allege these types of specific facts.

Indeed, there is no basis for any allegation of intent based simply on Mr. Touboul's statements that he is the inventor of certain claims of the '494 Patent and that the other inventors were responsible for some of the other dependent claims. Accordingly, PAN's allegations regarding intentional misrepresentation are not only unsupported by any facts, but also insufficient as a matter of law to plead his specific intent. *See id.*; *see also Therasense*, 649 F.3d at 1290 (finding that the misrepresentation or omission amounts to gross negligence or negligence under a "should have known" standard and does not satisfy this intent requirement) (citation omitted). Therefore, PAN's conclusory allegation of intent without any factual support cannot state a plausible claim for inequitable conduct.

**B.     The '154 Patent**

**1.     PAN's Inequitable Conduct Claims Do Not Sufficiently Plead a Misrepresentation, Let Alone a Material Misrepresentation.**

Similar to PAN's facially implausible allegations for the '494 Patent based on the '494 Patent Petition, PAN's allegations that Ms. Bey's filing of a "Petition to Accept Unintentionally Delayed Claim of Priority Under 35 U.S.C. § 120 For The Benefit Of A Prior-filed Application Filed Under 37 C.F.R. § 1.78(a)(3)" on October 16, 2013 ("'154 Patent Petition"), does not sufficiently plead inequitable conduct. Dkt. No. 116, ¶ 255 (Twelfth Affirmative Defense). First, there is no misrepresentation and PAN did not plead facts to support its theory that the '154 Patent is not entitled to claim priority to U.S. Patent No. 7,757,289. *Id.*, ¶¶ 251–266. Ms. Bey took the appropriate steps provided for under 37 C.F.R. § 1.78 to claim the benefit of an earlier filing date. MPEP § 201.11 (8th Ed., rev. 9, Aug. 2012), available at

https://www.uspto.gov/web/offices/pac/mpep/index.html. Thus, PAN has no support for asserting the '154 Patent Petition and statements contained therein, somehow amounts to a misrepresentation of material fact, as the PTO permits such actions. Dkt. No. 116, ¶ 256.

Second, PAN makes a number of assertions "upon information and belief." *Id.*, ¶ 256 ("Finjan's representative Ms. Bey misrepresented a material fact to the USPTO and also violated her duty of candor to the USPTO when she represented that the delayed claim of priority in the '154 Patent was 'unintentional'") and ¶ 259 ("Finjan and Ms. Bey delayed claiming priority in order to attempt to maximize the value of the '154 Patent during pre-suit licensing negotiations ….."). Allegations regarding material misrepresentations[6] and intent cannot be sufficiently pled for inequitable conduct upon "information and belief." This is insufficient for the same reasons and based upon the same law cited above for the '494 Patent. *See* Section III.A.

Third, PAN's allegation that "Finjan is incentivized to properly claim priority only to the extent it believes is necessary to overcome otherwise invalidating prior art" is facially implausible. Dkt. No. 116, ¶ 247. Specifically, the PTO acknowledged Finjan's priority claim to the '289 Patent around the time the '154 Patent was filed. The PTO presumably considered prior art in view of the earlier priority date. PAN's statement that Ms. Bey "only attempted to correct the claim of priority once it became clear that the '154 Patent would be subject to serious invalidity attacks in litigation" cannot stand because the PTO had acknowledged the priority claim to the '289 Patent before the PTO began to examine the '154 Patent. Dkt. No. 116, ¶ 259.

### 2.    PAN Fails To Allege But-For or Per Se Materiality.

PAN's Answer also fails to allege any but-for materiality for Ms. Bey's statements in the '154 Patent Petition. In fact, the '154 Patent Petition does not affect the patentability of the '154 Patent because the '154 Patent Petition was filed after the '154 Patent was issued. PAN tries to sidestep its obligation to show but-for materiality by arguing that Ms. Bey's statement is "per se material." Dkt. No. 116, ¶ 266. While the Federal Circuit has found that the but-for standard of

---

[6] While PAN mentions Finjan's litigation with other parties (Dkt. No. 116, ¶ 204), such discussion is irrelevant because there was no misrepresentation in any of the cases identified.

1    proof for materiality is not required in certain "extraordinary circumstances," PAN fails to state a

2    facially plausible defense that Ms. Bey engaged in any misconduct in the prosecution of the '154

3    Patent. *Therasense*, 649 F.3d at 1292–93. The '154 Patent Petition was used to correct a clerical

4    mistake in the printed patent and the file history of the '154 Patent clearly shows that the '154

5    Patent claims priority to the '289 Patent.

6         Additionally, the petitions in the '494 and '633 patents (and the petitions in the related

7    patents like the '822 patent) all involved correcting the ***same*** issue, *i.e.*, perfecting the priority

8    claim chain related to their common parent — U.S. Provisional Application No. 60/030,639 (the

9    "November 1996 provisional application"). *See* Exh. 3 at FINJAN-PAN 004201-4208; Exh. 10 at

10   2–3; Exh. 11 at 2.  Because the correction involves the same mistake, PAN's allegations that

11   Finjan has "an unusually frequent pattern of petitioning" for correcting priority claims is

12   categorically false. Dkt. No. 116, ¶ 261. Accordingly, Ms. Bey submitted multiple petitions to

13   correct the same mistake in order for Finjan's patent portfolio to maintain consistent priority

14   claims.

15              **3.    PAN's Inequitable Conduct Claims Do Not Sufficiently Plead Intent.**

16        As with PAN's claims of inequitable conduct for the '494 Patent, the Court need not

17   consider whether PAN adequately pled intent to deceive because PAN cannot plead any material

18   misrepresentation as a matter of law.  *Takeda*, 87 F. Supp. 3d at 1288; *U.S. Water Servs.*, 843 F.3d

19   at 1354. Notwithstanding PAN's failure to plead a material misrepresentation, PAN has not

20   provided with particularity allegations of inequitable conduct. PAN relies on the timing of the

21   '154 Patent Petition compared to other Finjan litigations and pre-licensing negotiations (Dkt. No.

22   116, ¶¶ 257–262) to support its purported inequitable conduct affirmative defense, which is ***not***

23   the single most reasonable inference in light of Ms. Bey's statement that the delay was

24   unintentional. *Id*., ¶¶ 255–256. There is nothing to indicate that the non-material '154 Patent

25   Petition was intentionally filed to specifically deceive the PTO. The only allegations that remotely

26   address intent are "upon information and belief." As explained above, such allegations do not

27   survive a Rule 12 motion.

28

1    Thus, PAN's allegations regarding the '154 Patent do not support any inference, much less

2    the single most reasonable inference, that there was a specific intent to deceive the PTO. For the

3    foregoing reasons, Finjan requests that the Court dismiss and strike PAN's inequitable conduct

4    claims regarding the '154 Patent.

5                                   **<u>CONCLUSION</u>**

6         For the foregoing reasons discussed above, the Court should strike PAN's Tenth, Eleventh,

7    Twelfth, and Thirteenth Affirmative Defenses and dismiss the same affirmative defenses brought

8    as counterclaims, Counts XV, XVI, and XVII.

9    Dated: May 5, 2021                    Respectfully submitted,
                                           */s/ Phillip W. Goter*
10   _____
                                           Juanita R. Brooks (CA SBN 75934)
11                                         brooks@fr.com
                                           Roger A. Denning (CA SBN 228998)
12                                         denning@fr.com
                                           Frank J. Albert (CA SBN 247741)
13                                         albert@fr.com
                                           K. Nicole Williams (CA SBN 291900)
14                                         nwilliams@fr.com
                                           Jared A. Smith (CA SBN 306576)
15                                         jasmith@fr.com
                                           Tucker N. Terhufen (CA SBN 311038)
16                                         terhufen@fr.com
                                           FISH & RICHARDSON P.C.
17                                         12860 El Camino Real, Ste. 400
                                           San Diego, CA 92130
18                                         Telephone: (858) 678-5070 / Fax: (858) 678-5099
19
                                           Aamir Kazi (*Pro Hac Vice*)
20                                         kazi@fr.com
                                           Lawrence Jarvis (*Pro Hac Vice*)
21                                         jarvis@fr.com
                                           FISH & RICHARDSON P.C.
22                                         1180 Peachtree St. NE, 21st floor
                                           Atlanta, GA 30309
23                                         Telephone: (404) 892-5005 / Fax: (404) 892-5002
24
                                           Phillip W. Goter (*Pro Hac Vice*)
25                                         goter@fr.com
                                           FISH & RICHARDSON P.C.
26                                         3200 RBC Plaza, 60 South Sixth Street
                                           Minneapolis, MN 55402
27
28

                              17          CASE NO. 14-CV-04908-PJH
                                          FINJAN'S MTS DEFENDANT'S 10TH, 11TH,
                                          12TH & 13TH AFFIRMATIVE DEFENSES

Telephone: (612) 335-5070 / Fax: (612) 288-9696

Susan Morrison (*Pro Hac Vice*)
morrison@fr.com
FISH & RICHARDSON P.C.
222 Delaware A venue, 17th Floor
P.O. Box 1114
Wilmington, DE 19801
Telephone: (302) 652-5070 / Fax: (302) 652-0607

Tracea Rice (*Pro Hac Vice*)
trice@fr.com
FISH & RICHARDSON P.C.
1000 Maine Ave. Ste. 1000
Washington, DC 20024
Telephone: (202) 783-5070 / Fax: (202) 783-2331

Attorneys for Plaintiff
**FINJAN LLC**