MICHAEL A. JACOBS (CA SBN 111664)
MJacobs@mofo.com
MATTHEW A. CHIVVIS (CA SBN 251325)
MChivvis@mofo.com
DIEK O. VAN NORT (CA SBN 273823)
DVanNort@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Telephone: (415) 268-7000
Facsimile: (415) 268-7522

RUDY Y. KIM (CA SBN 199426)
RudyKim@mofo.com
COLETTE REINER MAYER (CA SBN 263630)
CRMayer@mofo.com
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, California 94304-1018
Telephone: (650) 813-5600
Facsimile: (650) 494-0792

ROSE S. LEE (CA SBN 294658)
RoseLee@mofo.com
MORRISON & FOERSTER LLP
707 Wilshire Boulevard, Suite 6000
Los Angeles, California 90017-3543
Telephone: (213) 892-5200
Facsimile: (213) 892-5454

ERIC W. LIN (*Pro Hac Vice*)
Elin@mofo.com
MICHAEL J. DESTEFANO (*Pro Hac Vice*)
Mdestefano@mofo.com
MORRISON & FOERSTER LLP
250 West 55th Street
New York, New York 10019-9601
Telephone: (212) 468-8000
Facsimile: (212) 468-7900

Attorneys for Defendant
PALO ALTO NETWORKS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| FINJAN LLC,<br><br>                     Plaintiff,<br><br>          v.<br><br>PALO ALTO NETWORKS, INC.,<br><br>                     Defendant. | Case No.    4:14-CV-04908-PJH<br><br>**DEFENDANT PALO ALTO NETWORKS, INC.'S OPPOSITION TO FINJAN LLC'S MOTION TO STRIKE AND DISMISS PAN'S INEQUITABLE CONDUCT AND UNCLEAN HANDS DEFENSES AND COUNTERCLAIMS (DKT. NO. 120)**<br><br>Noticed Hearing Date:  June 24, 2021<br>Noticed Hearing Time:  1:30 pm<br>Courtroom: 3, 3rd Floor<br>Judge:  Honorable Phyllis J. Hamilton |

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION .................................................................................................. 1

II.   STATEMENT OF ISSUES TO BE DECIDED ................................................... 3

III.  ARGUMENT ........................................................................................................ 3

    A.   Legal Standard for a Motion to Strike and a Motion to Dismiss ................................. 3

    B.   PAN Adequately Pleads Inequitable Conduct (Tenth, Eleventh, and Twelfth Affirmative Defenses and Counterclaims XV and XVI) .............................................. 4

        1.   Legal Standard for Pleading—As Opposed to Proving—Inequitable Conduct.... 4

        2.   PAN Adequately Alleges Inequitable Conduct Regarding the '494 Patent (Tenth and Eleventh Affirmative Defenses and Counterclaim XV).......... 5

            a.   PAN Adequately Alleges Inequitable Conduct Based on Mr. Touboul's Declaration................................................................ 5

                (i)    PAN Adequately Alleges Mr. Touboul's Misrepresentations ............ 6

                (ii)   PAN Adequately Alleges Mr. Touboul's Misrepresentations Are Material ......................................................... 8

                (iii)  PAN Adequately Alleges Mr. Touboul's Specific Intent to Deceive the PTO ...................................................... 9

            b.   PAN Adequately Alleges Inequitable Conduct Based on Ms. Bey's Petition ................................................................. 10

                (i)    PAN Adequately Alleges Ms. Bey's Material Misrepresentation .... 11

                (ii)   PAN Adequately Alleges Ms. Bey's Specific Intent to Deceive the PTO ...................................................... 12

        3.   PAN Adequately Alleges Inequitable Conduct Regarding the '154 Patent (Twelfth Affirmative Defense and Counterclaim XVI)..................................... 13

            a.   PAN Adequately Alleges Ms. Bey's Misrepresentation.......................... 14

            b.   PAN Adequately Alleges Ms. Bey's Misrepresentation Is Material ......... 15

            c.   PAN Adequately Alleges Ms. Bey's Specific Intent to Deceive the PTO ................................................................ 16

    C.   PAN Adequately Pleads Unclean Hands (Thirteenth Affirmative Defense and Counterclaim XVII) ............................................................... 17

        1.   Legal Standard for Pleading Unclean Hands ........................................... 17

        2.   Finjan Does Not Dispute PAN's Unclean Hands Allegations ............................ 17

        3.   Courts Previously Found Similar Allegations Sufficient.................................... 18

IV.   CONCLUSION.................................................................................................... 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*1st Media, LLC v. Electrical Arts, Inc.*,
    694 F.3d 1367, 1371 (Fed. Cir. 2012) ................................................................................9

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .............................................................................................................3

*Barnes v. AT&T Pension Benefit Plan-Nonbargained Program*,
    718 F. Supp. 2d 1167 (N.D. Cal. 2010) ..............................................................................3

*BlackBerry, Ltd. v. Typo Prods. LLC*,
    No. 14-CV-00023-WHO, 2014 WL 1867009 (N.D. Cal. May 8, 2014) ..............................10

*CoolSystems, Inc. v. Nice Recovery Sys. LLC*,
    No. 16-CV-02958-PJH, 2016 WL 6091577 (N.D. Cal. Oct. 19, 2016)..................................3

*Delano Farms Co. v. Cal. Table Grape Comm'n*,
    655 F.3d 1337 (Fed. Cir, 2011) .........................................................................................16

*Exergen Corp. v. Wal-Mart Stores, Inc.*,
    575 F.3d 1312 (Fed. Cir. 2009) ................................................................................. *passim*

*Finjan, Inc. v. Bitdefender Inc.*,
    No. 17-CV-04790-HSG, 2018 WL 1811979 (N.D. Cal. Apr. 17, 2018)....................1, 8, 10

*Finjan, Inc. v. Check Point Software Techs., Inc.*,
    No. 18-CV-02621-WHO, 2019 WL 330912 (N.D. Cal. Jan. 25, 2019) ...................... *passim*

*Finjan, Inc. v. Cisco Sys., Inc.*,
    No. 17-CV-00072-BLF, 2018 WL 4361134 (N.D. Cal. Sept. 13, 2018)..................... *passim*

*Finjan, Inc. v. Juniper Network, Inc.*,
    No. C 17-05659 WHA, 2018 WL 4181905 (N.D. Cal. Aug. 31, 2018) ...........................17, 18

*Finjan, Inc. v. Juniper Network, Inc.*,
    No. C 17-05659 WHA, 2018 WL 5454318 (N.D. Cal. Oct. 29, 2018) ........................ *passim*

*Finjan, Inc. v. Rapid7, Inc.*,
    No. CV 18-1519-MN-MPT, 2019 WL 2590857 (D. Del. June 25, 2019),
    *report and recommendation adopted sub nom.*,
    No. CV 18-1519 (MN), 2019 WL 3207652 (D. Del. July 16, 2019)...............................1, 2, 19

*Finjan, Inc. v. SonicWALL Inc.*,
    No. 5:17-cv-04467-BLF-VKD, Dkt. No. 102 (N.D. Cal. Nov. 2, 2018)...............................1, 2

*Finjan, LLC v. Qualys Inc.*,
    No. 4:18-cv-07229-YGR (N.D. Cal.) ..................................................................................2

*Gilead Scis., Inc. v. Merck & Co., Inc.*,
    888 F.3d 1231 (Fed. Cir. 2018)................................................................................17, 18

*Maquet Cardiovascular LLC v. Saphena Med., Inc.*,
    No. C 16-07213 WHA, 2017 WL 3215355 (N.D. Cal. July 27, 2017) ...........................19 n. 3

*Miller v. Ghirardelli Chocolate Co.*,
    No. C 12-04936 LB, 2013 WL 3153388 (N.D. Cal. June 19, 2013) ..................................2, 16

*Molins PLC v. Textron, Inc.*,
    48 F.3d 1172 (Fed. Cir. 1995)...............................................................................................4

*Nilssen v. Osram Sylvania, Inc.*,
    504 F.3d 1223 (Fed. Cir. 2007).........................................................................8, 11, 12, 15

*Phigenix, Inc. v. Genentech Inc.*,
    No. 15-CV-01238-BLF, 2016 WL 7985261 (N.D. Cal. Jan. 12, 2016) ...................................8

*Powertech Tech., Inc. v. Tessera, Inc.*,
    No. C 10–945 CW, 2012 WL 1746848 (N.D. Cal. May 16, 2012) ...................................19 n. 3

*Precision Instrument Mfg. Co. v. Automotive Maintenance Machinery Co.*,
    324 U.S. 806 (1945)...........................................................................................................17

*SAP Am., Inc. v. Purple Leaf, LLC*,
    No. C 11-4601 PJH, 2012 WL 2237995 (N.D. Cal. June 15, 2012)...............................4, 10

*TASER Int'l, Inc. v. Stinger Sys.*,
    No. 07–042–PHX–MHM, 2008 WL 4183019 (D. Ariz. Sept. 8, 2008).................................3

*Therasense, Inc. v. Becton, Dickinson & Co.*,
    649 F.3d 1276 (Fed. Cir. 2011) ................................................................................. *passim*

*Usher v. City of Los Angeles*,
    828 F.2d 556 (9th Cir. 1987)................................................................................................7

*Vistan Corp. v. Fadei USA, Inc.*,
    No. C-10-4862 JCS, 2011 WL 1544796 (N.D. Cal. Apr. 25, 2011)........................................3

*Wyler Summit P'ship v. Turner Broad. Sys., Inc.*,
    135 F.3d 658 (9th Cir.1998)...............................................................................................15

**Other Authorities**

Fed. R. Civ. P. 9(b) ............................................................................................................4, 19

Fed. R. Civ. P. 12(f) ................................................................................................................3

1      Defendant Palo Alto Networks, Inc. ("PAN") hereby submits its Opposition to Plaintiff

2   Finjan LLC's ("Finjan") Motion to Strike PAN's Tenth, Eleventh, Twelfth, and Thirteenth

3   Affirmative Defenses and Motion to Dismiss Counts XV, XVI, and XVII of PAN's

4   Counterclaims.  (Dkt. No. 120 ("Motion").)

5      **I.      INTRODUCTION**

6      PAN's statement of its inequitable conduct and unclean hands defenses and counterclaims

7   readily satisfies the applicable pleading standard.  In its Answer to Amended Complaint and

8   Counterclaims ("Answer"), PAN details precisely "who, what, when, where, and how" Finjan,

9   through named inventor Shlomo Touboul and patent attorney Dawn-Marie Bey, intentionally

10  misrepresented material information regarding U.S. Patent No. 8,677,494 ("the '494 Patent") and

11  U.S. Patent No. 8,141,154 ("the '154 Patent") to the United States Patent and Trademark Office

12  ("PTO").  PAN also sufficiently alleges that Finjan's repeated misrepresentations to the PTO

13  regarding purportedly "unintentionally" delayed claims of priority constitute egregious

14  misconduct.

15     Defendants in other Finjan cases have pleaded very similar factual allegations that have

16  survived Finjan's repeated attempts to strike and dismiss.  In this very district, four different

17  judges presiding over five Finjan cases have held these factual claims to be sufficiently pleaded.

18  *See Finjan, Inc. v. Check Point Software Techs., Inc.*, No. 18-CV-02621-WHO, 2019 WL

19  330912, at *4-6 (N.D. Cal. Jan. 25, 2019) (Orrick, J.); *Finjan, Inc. v. Bitdefender Inc.*, No. 17-

20  CV-04790-HSG, 2018 WL 1811979, at *2-3 (N.D. Cal. Apr. 17, 2018) (Gilliam, J.); *Finjan, Inc.*

21  *v. Cisco Sys., Inc.*, No. 17-CV-00072-BLF, 2018 WL 4361134, at *4-5 (N.D. Cal. Sept. 13, 2018)

22  (Freeman, J.); *Finjan, Inc. v. SonicWALL Inc.*, No. 5:17-cv-04467-BLF-VKD, Dkt. No. 102 (N.D.

23  Cal. Nov. 2, 2018) (Freeman, J.) (Decl. of Eric W. Lin, filed herewith ("Lin Decl."), Ex. 1 at 5);

24  *Finjan, Inc. v. Juniper Network, Inc*., No. C 17-05659 WHA, 2018 WL 5454318, at *2-3 (N.D.

25  Cal. Oct. 29, 2018) (Alsup, J.).  Likewise, a judge in the District of Delaware found that these

26  claims satisfied the pleading standard.  *Finjan, Inc. v. Rapid7, Inc.*, No. CV 18-1519-MN-MPT,

27  2019 WL 2590857, at *5-8 (D. Del. June 25, 2019), *report and recommendation adopted sub*

28  *nom.*, No. CV 18-1519 (MN), 2019 WL 3207652 (D. Del. July 16, 2019).  And most recently in

1    April 2020, Finjan did not even challenge these claims when pleaded by Qualys in this district.

2    *Finjan, LLC v. Qualys Inc.*, No. 4:18-cv-07229-YGR (N.D. Cal.) (Gonzalez Rogers, J.).

3            Given this background, Finjan quickly brushes by its unsuccessful record and

4    mischaracterizes one of the seven Finjan cases that addressed these claims as favorable.  Finjan

5    states that Judge Alsup granted a similar motion to strike by Finjan in the *Juniper* case (Motion at

6    2:4-7), yet it fails to note that Judge Alsup subsequently granted leave for Juniper to amend and

7    permitted it to proceed to discovery on these same defenses and counterclaims.  *Juniper*, 2018

8    WL 5454318, at *3.  Finjan also states that "PAN rehashes nearly verbatim . . . the claims and

9    assertions made by other defendants—Cisco, Juniper, SonicWALL and Rapid7—in their cases

10   against Finjan."  (Motion at 2:4-6.)  But it fails to mention that in all four cases, courts have

11   considered those claims and assertions and determined that they satisfied the pleading

12   requirements.  *Cisco*, 2018 WL 4361134, at *4-5; *Juniper*, 2018 WL 5454318, at *2-3;

13   *SonicWALL* (Lin Decl. Ex. 1 at 5); *Rapid7*, 2019 WL 2590857, at *5-8.[1]  And Finjan does not

14   even mention the three other cases in which these claims passed the pleading stage—either

15   because courts found these claims to be sufficiently pleaded or Finjan did not even attempt a

16   challenge.

17           Throughout its Motion, Finjan conflates the proper inquiry of whether PAN has met its

18   pleading requirements with the improper inquiry of whether PAN may ultimately prevail at

19   summary judgment or trial.[2]  *See Miller v. Ghirardelli Chocolate Co.*, No. C 12-04936 LB, 2013

20   WL 3153388, at *4 (N.D. Cal. June 19, 2013) ("To the extent [the plaintiff] argues that the

21   defense fails on its merits, that is an argument for summary judgement.").  Finjan has deployed

22   the same tactic in its other cases—and multiple judges in this district have rejected it.  At this

23

24           [1] Finjan characterizes Cisco's withdrawal of the claims from its case "in the interests of
     streamlining issues in preparation for trial" as evidence that "[t]he Inequitable Conduct Claims
25   have no merit on their face[.]"  (Motion at 2:7-10.)  But as Finjan concedes, these claims were
     voluntarily withdrawn by Cisco, and indeed withdrawn "***solely*** in the interests of streamlining
26   issues in preparation for trial[.]"   (Lin Decl. Ex. 2 at 5-6 (emphasis added).)

27           [2] Notably, Finjan did not even attempt to file a motion for summary judgment on these
     claims in any of the seven Finjan cases, let alone prevail on one.
28

stage in the case, and without the benefit of discovery, PAN's pleading readily meets applicable requirements.

Finjan's Motion should be denied in its entirety.

## II.      STATEMENT OF ISSUES TO BE DECIDED

Whether Finjan's Motion should be denied because PAN's counterclaims and affirmative defenses adequately allege inequitable conduct and unclean hands.

## III.     ARGUMENT

### A.      Legal Standard for a Motion to Strike and a Motion to Dismiss

Rule 12(f) motions to strike are "generally disfavored." *Barnes v. AT&T Pension Benefit Plan-Nonbargained Program*, 718 F. Supp. 2d 1167, 1170 (N.D. Cal. 2010). This is because "the motions may be used as delaying tactics and because of the strong policy favoring resolution on the merits." *Id.* "A court must deny the motion to strike if there is any doubt whether the allegations in the pleadings might be relevant in the action." *CoolSystems, Inc. v. Nice Recovery Sys. LLC*, No. 16-CV-02958-PJH, 2016 WL 6091577, at *2–3 (N.D. Cal. Oct. 19, 2016) (Hamilton, J.). Similarly, "[a] claim should not be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Vistan Corp. v. Fadei USA, Inc.*, No. C-10-4862 JCS, 2011 WL 1544796, at *7 (N.D. Cal. Apr. 25, 2011).

PAN's well-pleaded factual allegations must be taken as true and all reasonable inferences must be drawn in PAN's favor. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *TASER Int'l, Inc. v. Stinger Sys.*, No. 07–042–PHX–MHM, 2008 WL 4183019, at *3 (D. Ariz. Sept. 8, 2008) (citing *Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir.1998)) ("In determining both Fed. R. Civ. P. 12(b)(6) motions to dismiss and Rule 12(f) motions to strike, all allegations of material fact must be taken as true and construed in the light most favorable to the nonmoving party.").

**B.** **PAN Adequately Pleads Inequitable Conduct (Tenth, Eleventh, and Twelfth Affirmative Defenses and Counterclaims XV and XVI)**

**1.** **Legal Standard for Pleading—As Opposed to Proving— Inequitable Conduct**

"Because inequitable conduct pertains to patent law, it is the law of the Federal Circuit— not the law of the regional circuit—that determines whether the party alleging inequitable conduct has done so with the particularity required under Rule 9(b)." *SAP Am., Inc. v. Purple Leaf, LLC*, No. C 11-4601 PJH, 2012 WL 2237995, at *2 (N.D. Cal. June 15, 2012) (Hamilton, J.).

Patent applicants owe a duty of candor, good faith, and honesty to the PTO in prosecuting patents, and "[a] breach of this duty constitutes inequitable conduct." *Molins PLC v. Textron, Inc.*, 48 F.3d 1172, 1178 (Fed. Cir. 1995). A finding of inequitable conduct bars enforcement of a patent unfairly obtained through misconduct. *See Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1292 (Fed. Cir. 2011).

To plead inequitable conduct, PAN must allege: "(1) an individual associated with the filing and prosecution of a patent application made an affirmative misrepresentation of a material fact, failed to disclose material information, or submitted false material information; and (2) the individual did so with the specific intent to deceive[.]" *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1328 n.3 (Fed. Cir. 2009).

PAN's inequitable conduct claims must satisfy the particularity requirements of Rule 9(b). To meet that standard, PAN must "identify the specific who, what, when, where, and how of the material misrepresentation or omission[.]" *Id.* at 1327-28. "The materiality required to establish inequitable conduct is but-for materiality," but "[w]hen the patentee has engaged in affirmative acts of egregious misconduct, such as the filing of an unmistakably false affidavit, the misconduct is material." *Therasense,* 649 F.3d at 1291-92.

Although the Federal Circuit's *Therasense* decision tightened the requirements for proving inequitable conduct at trial, that standard of proof does not apply at the pleading stage. *SAP Am.*, 2012 WL 2237995, at *4 ("[W]hile *Exergen* addresses the standard for pleading inequitable conduct, *Therasense* sets forth the standard for proving inequitable conduct."). At trial, PAN must prove that intent to deceive is the "single most reasonable inference."

*Therasense*, 649 F.3d at 1297.  At the pleading stage, however, PAN's allegations need only include "sufficient underlying facts from which a court may reasonably infer that a party acted with the requisite state of mind." *Exergen*, 575 F.3d at 1327-28.  They also must be taken as true and all reasonable inferences drawn in PAN's favor.  *See supra* Section III.B.1.  As demonstrated below, PAN easily satisfied this pleading standard.

> **2.    PAN Adequately Alleges Inequitable Conduct Regarding the '494 Patent (Tenth and Eleventh Affirmative Defenses and Counterclaim XV)**
>
> **a.    PAN Adequately Alleges Inequitable Conduct Based on Mr. Touboul's Declaration**

PAN sufficiently pleads the "who, what, when, where, and how" for its inequitable conduct allegations based on named inventor Shlomo Touboul's declaration.  Specifically, PAN alleges that Shlomo Touboul misrepresented his sole inventorship and date of conception with respect to one of the asserted patents in this litigation, U.S. Patent No. 8,677,494 ("the '494 Patent").  (Answer (Dkt. No. 116), ¶¶ 229, 250.)  PAN also alleges that Mr. Touboul materially misrepresented in the Declaration that he submitted to the PTO on May 7, 2013 ("the Touboul Declaration") in order to ensure that the '494 Patent would be granted.  (*Id.*)

PAN alleges that during prosecution of U.S. Application No. 13/290,708 ("the '708 Application")—the application leading to the '494 Patent—the PTO issued a Final Office Action on January 7, 2013.  (*Id.*, ¶¶ 217-19).  In the Final Office Action, the PTO rejected all pending claims over Ji, U.S. Patent No. 5,983,348 ("the Ji Reference"), which was filed on September 10, 1997.  (*Id.*)  In response, on May 7, 2013, Finjan submitted the Touboul Declaration.  (*Id.*, ¶ 220.)  In the Declaration, Mr. Touboul declared under the penalty of perjury that the then-pending "claims 1, 3, 4-6, 9, 10, 12-15 and 18" were his "sole invention" and that "[his] sole invention was in [his] mind and developed by at least November 18, 1996[.]"  (*Id.*)  After Mr. Touboul submitted his Declaration, on August 29, 2013, the Examiner allowed the pending claims and specifically stated that "[t]he [Touboul] Declaration filed on May 7, 2013 under 37 CFR 1.131(a) is sufficient to overcome the Ji, U.S. Patent 5,893,348 reference . . . The rejection is hereby withdrawn and the claims are in conditions for allowance."  (*Id.*, ¶¶ 221, 241.)  PAN also alleges

that Mr. Touboul's misrepresentations were intentional so that he could falsely assert that those claims were entitled to an earlier priority date of November 18, 1996 in order to antedate the Ji Reference.  (*Id.*, ¶¶ 226, 242-44.)

PAN also goes beyond its basic pleading obligation and alleges additional facts as proof of Mr. Touboul's inequitable conduct.  PAN alleges that the '708 Application lists four inventors on its face: Yigal Mordechai Edery; Nimrod Itzhak Vered; David R. Kroll; and Shlomo Touboul.  (*Id.*, ¶ 217.)  On November 6, 2011, Finjan submitted to the PTO with the '708 Application a Declaration signed by all four inventors that stated "I hereby declare that . . . I believe that the inventor(s) named below to be the original and first inventor(s) of the subject matter which is claimed and for which a patent is sought on the Invention entitled Malicious Mobile Code Runtime Monitoring System and Methods."  (*Id.*, ¶ 218.)

Moreover, PAN alleges that Finjan's discovery responses in other lawsuits contradict the Touboul Declaration.  For example, PAN alleges that in Finjan's lawsuit against Symantec Corporation ("Symantec"), Finjan narrowed its asserted claims of the '494 Patent to only claims 10, 14, and 15 on June 26, 2017.  (*Id.*, ¶ 222.)  And Finjan served its Supplemental Interrogatory Responses on July 26, 2017, in which it stated that "Yigal Edery, Nimrod Vered, David Kroll, and Shlomo Touboul were involved with, and may have knowledge related to the conception and reduction to practice of the '494 Patent."  (*Id.*)  PAN also alleges that Finjan served a fourth supplemental response to Symantec's Interrogatory No. 1 stating "[t]he date of conception for the asserted claims [10, 14, and 15] of the [the '494 Patent] began October 31, 1996 and continued through May 2000."  (*Id.*, ¶ 225.)  In addition, PAN alleges that David Kroll, one of the joint inventors, has previously testified at trial that he "helped come up with the idea behind claim 10 [of the '494 Patent] during [his] time at Finjan."  (*Id.*, ¶ 224.)

Finjan's attacks on PAN's well-pleaded allegations are misguided, and each is addressed below.

### (i)      PAN Adequately Alleges Mr. Touboul's Misrepresentations

Knowing that it cannot challenge the sufficiency of PAN's allegations, Finjan dives into the alleged factual record not yet explored or developed in this case, and argues that Mr.

Touboul's declaration contains no misrepresentations.  (Motion at 10:15-12:15.)

But Finjan overlooks PAN's allegation that one of the joint inventors, Mr. Kroll, has previously testified that he came up with the idea behind claim 10 of the '494 Patent, which contradicts the Touboul Declaration.  (Answer, ¶ 224.)  Specifically, during trial in *Finjan, Inc. v. Blue Coat Systems, Inc.*, Mr. Kroll testified under oath that:

> Q. Yes. You helped come up with the idea behind claim 10 during
> your time at Finjan; is that right?
> A. Yes.

(Lin Decl. Ex. 3 at 460:24-461:1.)  Notably, in the *Juniper* case, Judge Alsup found Mr. Kroll's statement "sufficient to support a showing of the falsehood of Touboul's statement under the heightened pleading standard."  *Juniper*, 2018 WL 5454318, at *2.

Moreover, Finjan's *post hoc* interpretation of what Mr. Touboul and Finjan meant in the respective statements to the PTO and in other litigations "speak[s] to the weight of the evidence and [is] not appropriate or persuasive at this stage in the litigation."  *Check Point*, 2019 WL 330912, at *6.  PAN alleges that Finjan's fourth supplemental response to Symantec's Interrogatory No. 1 stating that "[t]he date of conception for the asserted claims [10, 14, and 15] of the [the '494 Patent] began October 31, 1996 and continued through May 2000" directly contradicts the Touboul Declaration.  (Answer, ¶ 225; *see* Lin Decl. Ex. 4 at 12:16-17.)  Finjan disagrees over what claims "the asserted claims" refer to, and proposes that they refer to those that Finjan originally asserted in its infringement contentions against Symantec.  (Motion at 11:20-12:12.)  But Finjan is not entitled to such an inference; at this stage, PAN's allegations must be deemed true, and the inferences drawn in the manner most favorable to PAN.  *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987) ("On a motion to dismiss for failure to state a claim, the court must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party.").

Finjan's reliance on its service of a Fifth Supplemental Response in the *Symantec* case to "clarify that the subset of 'currently asserted claims' (Claims 10, 14, and 15) were conceived in 1996" is another evidence-based argument "which may be more appropriately directed to a

1    summary judgment motion." *See Cisco*, 2018 WL 4361134, at *5.  In any event, PAN has

2    adequately pleaded that the prosecution history of the '494 Patent and Finjan's discovery

3    responses in other lawsuits demonstrate that Mr. Touboul's representations in the Touboul

4    Declaration were false.

5        Therefore, "[w]hen viewing the [Answer] in the light most favorable to [PAN] …

6    [PAN's] allegations are sufficient to put Finjan on notice of the facts giving rise to Mr. Touboul's

7    purported misrepresentation regarding his sole inventorship and conception date of certain claims

8    in the 494 patent."  *Id*., at *5 (internal citations omitted); *Bitdefender*, 2018 WL 1811979, at *2;

9    *see also Check Point*, 2019 WL 330912, at *6.

10                    **(ii)    PAN Adequately Alleges Mr. Touboul's
                              Misrepresentations Are Material**

11       Finjan argues that "any purported misstatements in the Touboul Declaration . . . are

12   immaterial."  (Motion at 13:1-3.)  But this contradicts established case law.  *Therasense*, a case

13   cited repeatedly by Finjan, held that "[w]hen the patentee has engaged in affirmative acts of

14   egregious misconduct, such as the filing of an unmistakably false affidavit, the misconduct is

15   material."  649 F.3d at 1292.  PAN has alleged that Mr. Touboul filed, under the penalty of

16   perjury, a Declaration that falsely represented his sole inventorship and date of conception.

17   Therefore, "[PAN's] allegations, describing the filing of an unmistakably false affidavit, describe

18   material misconduct."  *Phigenix, Inc. v. Genentech Inc.*, No. 15-CV-01238-BLF, 2016 WL

19   7985261, at *4 (N.D. Cal. Jan. 12, 2016) (finding that defendant had sufficiently alleged

20   materiality because it "alleged that Dr. Wang filed, under penalty of perjury, a terminal disclaimer

21   that falsely asserted Plaintiff owned 100% of the '294 Application.").

22       Additionally, "[a] claim for priority is ***inherently material*** to patentability because a

23   priority date may determine validity, whether an issue arises in prosecution or later in court

24   challenges to validity."  *Nilssen v. Osram Sylvania, Inc.*, 504 F.3d 1223, 1233 (Fed. Cir. 2007)

25   (emphasis added).  The fact that the Touboul Declaration involves claims for priority inherently

26   makes the misrepresentations material.

27       Finjan's primary attack on the materiality element is that "in issuing the '494 Patent, the

28

1   PTO referred to the Surfingate document," and therefore the Touboul Declaration was not the

2   basis for the PTO's withdrawal of its rejection over the Ji Reference.  (Motion at 13:1-13.)

3   Again, this is another inference-based argument, not appropriate at the pleading stage.  *See Check*

4   *Point*, 2019 WL 330912, at *5.  Finjan's argument also does not make sense.  As Finjan

5   concedes, the Surfingate document was attached to the Touboul Declaration.  (Motion at 13:4-5.)

6   The Touboul Declaration states on its face that it is "made herein to establish that I had the ideas

7   described in the patent application, and first developed a working system that is described in the

8   patent application and in claims 1, 3, 4-6, 9, 10, 12-15 and 18 pending as of the signing of this

9   declaration (hereafter sole invention) prior to" the date of the Ji reference, and that Mr. Touboul's

10   "sole invention was embodied in a Finjan Software, Ltd. computer software product entitled

11   SURFINGATE$^{TM}$."  (Lin Decl. Ex. 5 at FINJAN-PAN 003571-72.)

12           That is, Mr. Touboul used the Surfingate product to corroborate his Declaration.  His

13   statements allowed Finjan to establish a date of invention prior to when any of the joint inventors

14   worked for Finjan.  Relying on Mr. Touboul's misrepresentations, the PTO issued the notice of

15   allowance, stating "[t]he [Touboul] Declaration filed on May 7, 2013 under 37 CFR 1.131(a) is

16   sufficient to overcome the Ji, U.S. Patent 5,893,348 reference . . . . The rejection is hereby

17   withdrawn and the claims are in conditions for allowance."  (Lin Decl. Ex. 6 at FINJAN-PAN

18   004102.)  This is a clear example of "but for" materiality.  As Judge Freeman acknowledged in

19   the *Cisco* case, "[PAN's] allegations are sufficient at this stage to support a reasonable inference

20   that the PTO withdrew its rejection based on Mr. Touboul's declaration which allegedly

21   contained misrepresentations."  *Cisco*, 2018 WL 4361134, at *5.

22                   **(iii)    PAN Adequately Alleges Mr. Touboul's Specific
                          Intent to Deceive the PTO**

23

24           Finjan retorts that PAN's specific intent allegations are "conclusory and legally

25   insufficient," and only based on "information and belief."  (Motion at 13:20-25.)  The cases

     Finjan cites are inapposite and distinguishable.

26

27           *1st Media, LLC v. Electrical Arts, Inc.* concerns ***proving***—not pleading—a specific intent

28   to deceive.  694 F.3d 1367, 1371 (Fed. Cir. 2012).  Finjan's citation to *Therasense* is similarly

misplaced as that case "sets forth the standing for **proving** inequitable conduct." *SAP Am.*, 2012 WL 2237995, at *4 (emphasis in original).  Finally, in *BlackBerry, Ltd. v. Typo Prods. LLC*, the court held that the defendant did not sufficiently plead inequitable conduct because the defendant "has not pleaded any **facts** from which [the court] can reasonably make" the inference of specific intent to deceive.  No. 14-CV-00023-WHO, 2014 WL 1867009, at *3 (N.D. Cal. May 8, 2014) (emphasis in original).  Unlike the defendant in *BlackBerry*, PAN has alleged more than sufficient facts to allow the Court to reasonably infer that Mr. Touboul specifically intended to deceive the PTO so that the '494 Patent could be issued.  *See supra* Section III.B.2.a.

Therefore, "[c]onstruing the Answer's allegations in a light most favorable to [PAN] and accepting the allegations related to the falsity of the Touboul Declaration as true, Kroll's [trial testimony] and Finjan's discovery responses together are sufficient to support a reasonable inference that Touboul made material affirmative misrepresentations with the intent to deceive the PTO in order to backdate the otherwise invalidating Ji Patent." *Check Point*, 2019 WL 330912, at *6; *Juniper*, 2018 WL 5454318, at *2 ("At the pleading stage, these additional factual allegations, when taken together as true, sufficiently support a reasonable inference that Touboul made material affirmative misrepresentations with the intent to deceive the PTO in order to backdate potentially invalidating prior art."); *Bitdefender*, 2018 WL 1811979, at *2; *see also Cisco*, 2018 WL 4361134, at *5.

### b.   PAN Adequately Alleges Inequitable Conduct Based on Ms. Bey's Petition

PAN sufficiently pleads the "who, what, when, where, and how" for its inequitable conduct allegations based on Ms. Bey's petition to the PTO.  Specifically, PAN alleges that on October 23, 2012, after the PTO rejected pending claims over the Ji reference, Finjan's patent attorney at the time, Ms. Dawn-Marie Bey, submitted a "Petition To Accept Unintentionally Delayed Claim Of Priority Under 35 U.S.C. § 119(e) and § 120 For The Benefit Of A Prior-filed Application Filed Under 37 C.F.R. § 1.78(a)(3)" ("the'494 Patent Petition"), seeking to extend the chain of priority.  (Answer, ¶¶ 236-37.)  In the Petition, Ms. Bey represented that "the entire delay between the date the claim was due under 37 CFR § 1.78(a)(2)(ii) and the date the claim

was filed was unintentional." (*Id.*)  On November 27, 2012, the '494 Patent Petition was denied for failure to comply with the formality of including the reference required to claim priority.  (*Id.*, ¶ 239.)  On May 7, 2013, Ms. Bey, on behalf of Finjan, filed an "Amendment And Response To Office Action Under 37 C.F.R. § 1.114." (*Id.*, ¶ 240.)  Accompanying this filing, Ms. Bey submitted the Touboul Declaration.  (*Id.*)  PAN also alleges that Finjan, through Ms. Bey, has established an intentional pattern of delayed priority claims when the validity of Finjan's patents has been, or is likely to be, challenged, and that Ms. Bey falsely asserted that these delays were unintentional.  (*Id.*, ¶ 246.)  PAN alleges that Finjan and Ms. Bey delayed claiming priority in order to attempt to maximize the value of the '494 Patent during pre-suit licensing negotiations and only attempted to correct the claim of priority to overcome invalidity attacks on the '494 Patent.  (*Id.*, ¶ 248.)

Finjan's attacks on PAN's well-pleaded allegations are misguided, and each is addressed below.

### (i)   PAN Adequately Alleges Ms. Bey's Material Misrepresentation

Finjan argues that "[t]he fact that the PTO rejected the '494 Patent Petition at issue in PAN's Answer is fatal to PAN's claim of inequitable conduct because it demonstrates that the PTO ***did not rely upon*** the '494 Patent Petition in issuing the '494 Patent." (Motion at 9:19-23 (emphasis in original).)  But the Federal Circuit has held that "[i]t is ***not necessary*** for a holding of inequitable conduct that an examiner ***rely on*** a claim for priority or that entitlement to an earlier priority be expressly argued in order to overcome prior art." *Nilssen*, 504 F.3d at 1233 (emphasis added).  "While an active misrepresentation made during prosecution in order to avoid prior art is no doubt highly material, a misrepresentation that would not have immediately affected patentability is still material." *Id.* (internal quotation marks and citations omitted).

Finjan cites to *Therasense* in support of its argument.  (Motion at 9:27-10:4.)  Finjan claims that *Therasense* states "that proof of reliance is equivalent to proof of but-for materiality, such that materiality is satisfied only when a party is compelled to do what it would not have otherwise done, but for the misrepresentation." (*Id.* at 9:25-10:4.)  Finjan however, omits that the Federal Circuit was then discussing but-for proof in common law fraud and the requirements for

1   meeting common law fraud's reliance element—not the materiality prong in inequitable conduct.

2   *Therasense*, 649 F.3d. at 1295.

3   Earlier in the decision, the Federal Circuit held that "although but-for materiality generally

4   must be proved to satisfy the materiality prong of inequitable conduct, this court recognizes an

5   exception in cases of affirmative egregious misconduct." *Id.* at 1292. "When the patentee has

6   engaged in affirmative acts of egregious misconduct, such as the filing of an unmistakably false

7   affidavit, the misconduct is material." *Id.*

8   Therefore, "[Ms.] Bey's alleged 'unmistakably false' affidavits in the form of certified

9   petitions of 'unintentionally' delayed priority are *per se* material." *Juniper*, 2018 WL 5454318, at

10   *3 (citing *Outside the Box Innovations, LLC v. Travel Caddy, Inc.*, 695 F.3d 1285, 1294 (Fed.

11   Cir. 2012)). Additionally, because Ms. Bey's '494 Patent Petition involves claims for priority,

12   her misrepresentation is also inherently material. *Nilssen*, 504 F.3d at 1233 ("A claim for priority

13   is inherently material to patentability because a priority date may determine validity, whether an

14   issue arises in prosecution or later in court challenges to validity.").

15   **(ii)      PAN Adequately Alleges Ms. Bey's Specific Intent to Deceive the PTO**

16   Finjan claims that "PAN contends in a single, conclusory sentence" that Ms. Bey intended

17   to deceive the PTO "without offering any basis for such belief." (Motion at 10:5-9.) This is

18   wrong. *See supra* Section III.B.2.b. For example, PAN alleges that Ms. Bey did not file the '494

19   Patent Petition until Finjan was faced with the July 23, 2012 non-final rejection rejecting all

20   claims over the Ji Reference. (Answer, ¶¶ 236-37.) The '494 Patent Petition sought to extend the

21   chain of priority to include a reference to U.S. Application No. 60/030,639, which predates the Ji

22   Reference. (*Id.*, ¶ 237; *see also* Lin Decl. Ex. 7 at FINJAN-PAN 003520.) PAN also alleges that

23   Finjan, through its representative, Ms. Bey, has an unusually frequent pattern of filing petitions to

24   accept "unintentionally" delayed claims of priority. (Answer, ¶ 246.)

25   As Judge Alsup recognized in the *Juniper* case, "[Ms.] Bey's submission of the allegedly

26   false petitions in order to avoid prior art—and the alleged pattern of such false petitions—'raise a

27   strong inference of intent to deceive.'" *Juniper*, 2018 WL 5454318, at *3 (citing *Intellect*

28

1   *Wireless, Inc. v. HTC Corp.*, 732 F.3d 1339, 1345 (Fed. Cir. 2013)).

2          **3.     PAN Adequately Alleges Inequitable Conduct Regarding the
              '154 Patent (Twelfth Affirmative Defense and Counterclaim
3              XVI)**

4          PAN sufficiently pleads the "who, what, when, where, and how" for its inequitable

5   conduct allegations related to U.S. Patent No. 8,141,154 ("the '154 Patent"), one of the asserted

6   patents in this litigation.  PAN alleges that on June 14, 2010, Finjan filed the non-provisional

7   patent application that matured into the '154 Patent.  (Answer, ¶ 253.)  The patent application did

8   not make any claim of priority in its specification.  (*Id.*)  On March 20, 2012, the '154 Patent

9   issued without any claim of priority listed on the face of the patent or any claim of priority found

10  in the specification.  (*Id.*, ¶ 254)  Approximately one and a half years after the '154 Patent issued,

11  on October 16, 2013, Ms. Bey filed a "Petition To Accept Unintentionally Delayed Claim Of

12  Priority Under 35 U.S.C. § 120 For The Benefit Of A Prior-filed Application Filed Under 37

13  C.F.R. § 1.78(a)(3)" ("the '154 Patent Petition").  (*Id.*, ¶ 255.)  In the Petition, Ms. Bey sought to

14  claim priority to U.S. Patent No. 7,757,289 ("the '289 Patent"), which was filed on December 12,

15  2005.  (*Id.*)  Ms. Bey also represented that "the entire delay between the date the priority claim

16  was due and the date that this petition with priority claim added to the specification is filed was

17  unintentional."  (*Id.*; *see also* Lin Decl. Ex. 8 at FINJAN-PAN 002110.)

18         PAN additionally alleges that Ms. Bey's Petition to the PTO to accept a significantly

19  delayed claim of priority on October 16, 2013 conspicuously coincided with a new campaign by

20  Finjan to assert the '154 Patent.  (*Id.*, ¶ 257.)  PAN alleges that Finjan, through its representative,

21  Ms. Bey, has established an intentional pattern of delayed priority claims when the validity of

22  Finjan's patents has been, or is likely to be, challenged, and that Ms. Bey falsely asserted that

23  these delays were unintentional.  (*Id.*, ¶ 261.)  PAN alleges that Ms. Bey delayed properly

24  claiming priority in the '154 Patent in order to defer the patent's expiration date, and she

25  belatedly attempted to correct priority once the '154 Patent was asserted in multiple litigations

26  and subject to substantial invalidity challenges.  (*Id.*, ¶ 266.)

27         Finjan's attacks on PAN's well-pleaded allegations are misguided, and each is addressed

28  below.

1

                         **a.       PAN Adequately Alleges Ms. Bey's Misrepresentation**

2         Finjan first retorts that Ms. Bey's '154 Patent Petition contains no misrepresentation

3   because she "took the appropriate steps provided for under 37 C.F.R. § 1.78 to claim the benefit

4   of an earlier filing date" and the PTO "permits such actions."  (Motion at 14:19-15:3.)  But as

5   Judge Orrick has pointed out in the *Check Point* case when Finjan made the same argument,

6   "Finjan's arguments address only whether it was allowed to file the '154 Petition, not whether

7   Bey misrepresented the delay as unintentional.  Compliance is not determinative of

8   reasonableness." *Check Point*, 2019 WL 330912, at *6 (citing *Reiffin v. Microsoft Corp.*, 270 F.

9   Supp. 2d 1132, 1155 (N.D. Cal. 2003)).

10        Finjan next argues that PAN makes a number of assertions "upon information and belief,"

11   and that "[a]llegations regarding material misrepresentations and intent cannot be sufficiently

12   pled for inequitable conduct upon 'information and belief.'"  (Motion at 15:4-11.)  Finjan further

13   states that those allegations are "insufficient for the same reasons and based upon the same law

14   cited above for the '494 Patent." (*Id.*)  But as Judge Alsup has acknowledged before, "[p]leading

15   on 'information and belief' is permitted under Rule 9(b) when essential information lies uniquely

16   within another party's control.'" *Juniper*, 2018 WL 5454318, at *2 (citing *Exergen*, 575 F.3d at

17   1330).

18        PAN's pleading does exactly what is required by *Exergen*.  For example, PAN alleges—

19   not on information and belief—that neither the '154 Patent when issued nor its patent application

20   made any claim of priority in its specification.  (Answer, ¶¶ 253-54.)  PAN also alleges that Ms.

21   Bey's Petition to the PTO to accept a significantly delayed claim of priority on October 16, 2013

22   conspicuously coincided with a new campaign by Finjan to assert the '154 Patent.  (*Id.*, ¶¶ 255,

23   257.)  PAN further pleads specific allegations regarding Finjan and Ms. Bey's unusually frequent

24   pattern of petitioning for "unintentionally" delayed claims of priority.  (*Id.*, ¶¶ 261-264.)

25   Therefore, PAN has alleged more than sufficient facts that support its other allegations regarding

26   information that lies uniquely within the control of Finjan.  *Exergen* 575 F.3d at 1330.

27        Finjan also briefly argues that "PAN's allegation that 'Finjan is incentivized to properly

28   claim priority only to the extent it believes is necessary to overcome otherwise invalidating prior

art' is facially implausible." (Motion at 15:12-13.)  Here again, however, Finjan raises an evidence-based argument, stating that "the PTO acknowledged Finjan's priority claim to the '289 Patent around the time the '154 Patent was filed" and that the "PTO presumably considered prior art in view of the earlier priority date." (*Id.* at 15:14-16.)  Finjan provides no record and instead invites the Court to speculate as to the PTO's state of mind.  In any event, PAN has sufficiently alleged that neither the patent application nor the '154 Patent when issued included any claim of priority, and that Finjan did not seek to claim priority to the '289 Patent until one and a half years after the '154 Patent issued.  Accepting PAN's allegations as true and construing them in the light most favorable to PAN, *see Wyler*, 135 F.3d at 661, PAN's allegations are therefore "sufficient to support a reasonable inference that [Ms.] Bey intentionally delayed filing the petition for the '154 Patent in order to maximize the value of the '154 Patent during pre-suit licensing negotiations and only filed [her] petition to correct the claim of priority once [Finjan] realized that the '154 Patent would be subject to invalidity attacks in litigation." *Check Point*, 2019 WL 330912, at *5; *see also Juniper*, 2018 WL 5454318, at *3 ("[PAN's] allegations, when taken together as true, sufficiently support a showing that [Ms.] Bey's petition of 'unintentional' delay in connection with the '154 Patent was false.").

                    **b.**     **PAN Adequately Alleges Ms. Bey's Misrepresentation Is Material**

Ms. Bey's misrepresentation in the '154 Patent Petition is inherently material because it is related to a priority claim. *Nilssen*, 504 F. 3d at 1233 ("A claim for priority is inherently material to patentability[.]"); *Check Point*, 2019 WL 330912, at *5 ("The alleged misrepresentation by [Ms.] Bey, as contained in the '154 Petition, is per se material." (citing *Outside the Box*, 695 F.3d at 1294 ("[W]here the patentee has engaged in affirmative acts of egregious misconduct, such as the filing of an unmistakably false affidavit, the misconduct is material." (citation omitted)))); *see also Juniper*, 2018 WL 5454318, at *3.

In an attempt to downplay this fact, Finjan raises a hodgepodge of facts or purported inferences, none of which challenges the sufficiency of PAN's materiality allegation at the pleading stage.  Finjan first states that "the '154 Patent Petition does not affect the patentability of

the '154 Patent because the '154 Patent Petition was filed after the '154 Patent was issued."
(Motion at 15:22-23.)  But PAN has never alleged that Ms. Bey misrepresented in the '154 Patent
Petition in order to get the '154 Patent allowed (like she did for the '494 Patent), but PAN rather
alleges that she did so to help the '154 Patent dodge serious invalidity attacks in litigation.
(Answer, ¶ 259.)

Finjan also suggests that Ms. Bey only "submitted multiple petitions to correct the same
mistake in order for Finjan's patent portfolio to maintain consistent priority claims."  (Motion at
16:12-14.)  It is not clear how this alleged inference questions PAN's materiality allegation.  In
any case, Finjan should raise those arguments at trial, or on summary judgment.  *Miller*, 2013 WL
3153388, at *4.

### c.   PAN Adequately Alleges Ms. Bey's Specific Intent to Deceive the PTO

Finjan argues that Finjan's "purported inequitable conduct affirmative defense … is ***not***
the single most reasonable inference in light of Ms. Bey's statement that the delay was
unintentional."  (Motion at 16:20-24 (emphasis in original).)  But Finjan, once again, applies the
wrong standard to PAN's pleading.

At trial or summary judgment, PAN must prove that the intent to deceive the PTO is the
"single most reasonable inference."  *Therasense*, 649 F.3d at 1297.  At the pleading stage, by
contrast, PAN need only plead facts giving rise to a reasonable inference of "intent to deceive."
*See Delano Farms Co. v. Cal. Table Grape Comm'n*, 655 F.3d 1337, 1350 (Fed. Cir, 2011);
*Exergen*, 575 F.3d at 1328 n.5.

PAN has adequately pleaded Ms. Bey's intent.  As courts in this district have repeatedly
held, "[Ms.] Bey's submission of the allegedly false petitions in order to avoid prior art—and the
alleged pattern of such false petitions—raise a strong inference of intent to deceive."  *Juniper*,
2018 WL 5454318, at *3; *see also Check Point*, 2019 WL 330912, at *5 ("[T]he submission of
the allegedly false '154 Petition raises a strong inference of intent to deceive the PTO.").

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### C.   PAN Adequately Pleads Unclean Hands (Thirteenth Affirmative Defense and Counterclaim XVII)

#### 1.   Legal Standard for Pleading Unclean Hands

"The defense of unclean hands is essentially a cousin to inequitable conduct that lowers the materiality threshold on a showing of 'egregious misconduct' like perjury or the suppression of evidence." *Finjan, Inc. v. Juniper Network, Inc.*, No. C 17-05659 WHA, 2018 WL 4181905, at *6 (N.D. Cal. Aug. 31, 2018). "[A] determination of unclean hands may be reached when 'misconduct' of a party seeking relief 'has immediate and necessary relation to the equity that he seeks in respect of the matter in litigation,' *i.e.*, 'for such violations of conscience as in some measure affect the equitable relations between the parties in respect of something brought before the court.'" *Gilead Scis., Inc. v. Merck & Co., Inc.*, 888 F.3d 1231, 1239 (Fed. Cir. 2018) (quoting *Keystone Driller Co. v. General Excavator Co.*, 290 U.S. 240, 245 (1933)). The unclean hands doctrine "necessarily gives wide range to the equity court's use of discretion in refusing to aid the unclean litigant." *Precision Instrument Mfg. Co. v. Automotive Maintenance Machinery Co.*, 324 U.S. 806, 815 (1945).

#### 2.   Finjan Does Not Dispute PAN's Unclean Hands Allegations

Finjan's 18-page-Motion contains just three conclusory statements in footnote 2 regarding PAN's unclean hands allegations. (Motion at 3, n.2.) Finjan states that these allegations "cannot stand on their own" because they are "solely due to the alleged inequitable conduct related to the '494 and '154 patents." (*Id.*) That is simply not true. PAN alleges that Finjan has an unusually frequent practice of petitioning for allegedly "unintentionally" delayed claims of priority, particularly after one of Finjan's patents is under examination and has been rejected over prior art that predates the filing of the patent but post-dates the belatedly claimed priority document. (Answer, ¶ 269.) PAN also details Finjan's egregious misconduct with respect to U.S. Patent No. 7,058,822 ("the '822 Patent") in eight paragraphs. (*Id.*, ¶¶ 271-78.)

Finjan's passing statement that "unclean hands . . . is improperly pled as a counterclaim" is equally wrong. (Motion at 3, n.2.) Finjan cites to no legal authority as to why unclean hands cannot be pleaded as a counterclaim. It should look no further than the *Juniper* case—cited

repeatedly by Finjan in its Motion—in which Judge Alsup denied Finjan's motion to dismiss Juniper's unclean hands counterclaim.  *Juniper*, 2018 WL 4181905, at *5-7.

### 3.   Courts Previously Found Similar Allegations Sufficient

In the *Juniper* case, Juniper's affirmative defense and counterclaim of unclean hands allege similar facts regarding Finjan's egregious misconduct.  (Lin Decl. Ex. 9 at 24-28 (Juniper's Sixth Counterclaim).)  Juniper alleges facts regarding Finjan's egregious misconduct with respect to the '494 and '154 Patents, and the '822 Patent.  (*Id.*)  Juniper also further fleshes out Finjan's alleged scheme of waiting to see if a patent would be granted or validated with a later priority date in order to benefit from a later expiration date, and, only when clearly challenged by potentially invalidating prior art, seeking to correct its "unintentionally" delayed priority claim in order to try to moot the asserted prior art.  (*Id.*)  Judge Alsup found Juniper's unclean hands allegations sufficient.  Specifically, Judge Alsup held:

> The totality of Juniper's allegations presents a troubling scheme. Looking at the forest instead of the trees, we see a pattern and practice of bringing to the attention to the PTO critical information only after the PTO examiner or industry itself has exposed the original priority date as ineffective to support a valid invention.  In light of this practice, it then becomes all the more suspicious that Attorney Bey, time and again, would—only after potentially invalidating prior art is interposed—give the same story of "unintentional delay" in petitioning for a priority date conveniently predating prior art.  Then Finjan tries to stretch the earlier disclosure to read on an accused product, using abstract concepts as needed to connect the dots between the earlier disclosure and the accused product.  The alleged delay tactics, if accepted as true, would be an abuse of the prosecution system, which this order finds would amount to "egregious misconduct."

*Juniper*, 2018 WL 4181905, at *7.

PAN has sufficiently pleaded that Finjan, as Plaintiff in this infringement action, is guilty of egregious misconduct directly related to the prosecution and priority claims of the patents at issue that would render the patents unenforceable.  *Gilead*, 888 F.3d at 1239.  Therefore, PAN has "[pleaded] sufficient facts regarding their defense of unclean hands.  The elements of misrepresentation of material fact and violation of Finjan's duty of candor are sufficiently supported by factual allegations which demonstrate bad faith misrepresentation or egregious misconduct."  *Rapid7*, 2019 WL 2590857, at *8.

1

## IV.   CONCLUSION

2

Five judges in two districts, including this one, have uniformly held similar factual

3

allegations to be sufficiently pleaded and satisfying *Exergen* and Rule 9(b).  Finjan is clearly on

4

notice as to the claims against it.  Finjan gives short shrift to that pleading standard and repeatedly

5

asks the Court to ignore PAN's well-pleaded allegations and to draw inferences against PAN.

6

Finjan's Motion confuses PAN's obligation to plead its claim with PAN's obligation to prove its

7

claim by clear and convincing evidence at trial.  Finjan's Motion should be denied in its entirety.[3]

8

9

10   Dated:  May 19, 2021                             MORRISON & FOERSTER LLP

11

12                                                    By:    */s/ Colette Reiner Mayer*
                                                            Colette Reiner Mayer

13
                                                      Attorneys for Defendant
14                                                    PALO ALTO NETWORKS, INC.

15

16

17

18

19

20

21

22

23

24      [3] To the extent the Court finds any of PAN's affirmative defenses or counterclaims
insufficiently pleaded, PAN requests leave to amend.  Courts in this district have routinely held
that if a defense is stricken, "[i]n the absence of prejudice to the opposing party, leave to amend
25   should be freely given."  *Powertech Tech., Inc. v. Tessera, Inc.*, No. C 10–945 CW, 2012 WL
1746848, at *3 (N.D. Cal. May 16, 2012) (quoting *Wyshak v. City Nat'l Bank,* 607 F.2d 824, 826
26   (9th Cir. 1979)); *Maquet Cardiovascular LLC v. Saphena Med., Inc.*, No. C 16-07213 WHA,
2017 WL 3215355, at *1 (N.D. Cal. July 27, 2017) ("Absent prejudice or a strong showing of
27   another factor, there is a presumption under Rule 15(a) in favor of granting leave to amend."
(citation omitted)).

28