1  MICHAEL A. JACOBS (CA SBN 111664)
   MJacobs@mofo.com
2  MATTHEW A. CHIVVIS (CA SBN 251325)
   MChivvis@mofo.com
3  DIEK O. VAN NORT (CA SBN 273823)
   DVanNort@mofo.com
4  MORRISON & FOERSTER LLP
   425 Market Street
5  San Francisco, California 94105-2482
   Telephone: (415) 268-7000
6  Facsimile: (415) 268-7522

7  RUDY Y. KIM (CA SBN 199426)
   RudyKim@mofo.com
8  COLETTE REINER MAYER (CA SBN 263630)
   CRMayer@mofo.com
9  MORRISON & FOERSTER LLP
   755 Page Mill Road
10 Palo Alto, California 94304-1018
   Telephone: (650) 813-5600
11 Facsimile: (650) 494-0792

   ROSE S. LEE (CA SBN 294658)
   RoseLee@mofo.com
   MORRISON & FOERSTER LLP
   707 Wilshire Boulevard, Suite 6000
   Los Angeles, California 90017-3543
   Telephone: (213) 892-5200
   Facsimile: (213) 892-5454

   ERIC W. LIN (*Pro Hac Vice*)
   Elin@mofo.com
   MICHAEL J. DESTEFANO (*Pro Hac Vice*)
   Mdestefano@mofo.com
   MORRISON & FOERSTER LLP
   250 West 55th Street
   New York, New York 10019-9601
   Telephone: (212) 468-8000
   Facsimile: (212) 468-7900

12 Attorneys for Defendant
   PALO ALTO NETWORKS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| FINJAN LLC,<br><br>Plaintiff,<br><br>v.<br><br>PALO ALTO NETWORKS, INC.,<br><br>Defendant. | Case No.   4:14-CV-04908-PJH<br><br>**DEFENDANT PALO ALTO NETWORKS, INC.'S NOTICE OF MOTION AND MOTION TO STRIKE FINJAN LLC'S INFRINGEMENT CONTENTIONS**<br><br>Date:   July 22, 2021<br>Time:   1:30 pm<br>Ctrm:   3, 3rd Floor<br>Judge:  Honorable Phyllis J. Hamilton |

# **TABLE OF CONTENTS**

**Page**

NOTICE OF MOTION AND MOTION ................................................................................................ 1
RELIEF REQUESTED ........................................................................................................................... 1
STATEMENT OF ISSUES ..................................................................................................................... 1
MEMORANDUM OF POINTS AND AUTHORITIES ........................................................................ 1
I.   INTRODUCTION ....................................................................................................................... 1
II.  BACKGROUND ......................................................................................................................... 3
III. LEGAL STANDARD ................................................................................................................. 4
IV.  ARGUMENTS ............................................................................................................................ 5
     A.  Finjan's Screenshots and Generic Statements Do Not Contain Sufficient Detail
         to Provide Notice of Its Infringement Theories ............................................................... 5
     B.  Finjan's General References to Source Code Filenames Fail to Provide PAN
         with Notice of Finjan's Infringement Theories .............................................................. 10
         1.  Patent Local Rule 3-1 and the Governing Case Law Require Finjan to
             Provide Pinpoint Citations to Source Code ........................................................ 10
         2.  Finjan Has Had A Sufficient Opportunity to Review the Source Code ............. 12
         3.  Courts in This District Have Repeatedly Ordered Finjan to Provide
             Pinpoint Citations to Source Code ...................................................................... 13
     C.  Finjan's Conclusory Doctrine of Equivalents Contentions Fail to Provide PAN
         with Notice of Finjan's Infringement Theories .............................................................. 14
V.   CONCLUSION .......................................................................................................................... 16

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Bender v. Maxim Integrated Prods., Inc.*,
   No. C09-01152 SI, 2010 WL 1135762 (N.D. Cal. Mar. 22, 2010) ............................................5

*Big Baboon Corp. v. Dell, Inc.*,
   723 F. Supp. 2d 1224 (C.D. Cal. 2010)...................................................................................11

*Creagri, Inc. v. Pinnaclife Inc., LLC*,
   No. 11-CV-06635-LHK-PSG, 2012 WL 5389775 (N.D. Cal. Nov. 2, 2012) .........................14

*CSR Tech. Inc. v. Freescale Semiconductor*,
   No. C-12-02619 RS (JSC), 2013 WL 503077 (N.D. Cal. Feb. 8, 2013) ................................15

*Diagnostic Sys. Corp. v. Symantec Corp.*,
   No. SACV 06-1211 DOC, 2009 WL 1607717 (C.D. Cal. June 5, 2009) ................................12

*Digital Reg of Texas, LLC v. Adobe Sys. Inc.*,
   No. CV 12-01971-CW (KAW), 2013 WL 3361241 (N.D. Cal. July 3, 2013) ........................16

*Droplets, Inc. v. Amazon.com, Inc.*,
   No. C12-03733 HRL, 2013 WL 1563256 (N.D. Cal. Apr. 12, 2013) ................................7, 11

*Finjan LLC v. ESET, LLC*,
   No. 17-cv-0183-CAB-BGS, 2021 WL 2012248 (S.D. Cal. May 20, 2021)..............................3

*Finjan, Inc. v. Check Point Software Techs., Inc.*,
   No. 18-CV-02621-WHO, Dkt. No. 29 (N.D. Cal. Sept. 10, 2018)..........................................14

*Finjan, Inc. v. Check Point Software Techs., Inc.*,
   No. 18-CV-02621-WHO, 2019 WL 955000 (N.D. Cal. Feb. 27, 2019).......................... *passim*

*Finjan, Inc. v. Cisco Sys., Inc.*,
   No. 17-cv-00072-BLF (SVK), Dkt. No. 696 (N.D. Cal. Oct. 12, 2017) ...................................2

*Finjan, Inc. v. FireEye, Inc.*,
   No. 13-cv-03133-SBA (JCS), Dkt. No. 134 (N.D. Cal. Oct. 16, 2017) ..............................2, 14

*Finjan, Inc. v. Proofpoint, Inc.*,
   No. 13-CV-05808-HSG, 2015 WL 1517920 (N.D. Cal. Apr. 2, 2015).......................... *passim*

*Finjan, Inc. v. Proofpoint, Inc.*,
   No. 13-CV-05808-HSG, 2015 WL 9023166 (N.D. Cal. Dec. 16, 2015)................................14

*Finjan, Inc. v. SonicWall, Inc.*,
   No. 17-CV-04467-BLF(VKD), 2019 WL 2077849 (N.D. Cal. May 10, 2019) ..................2, 11

*Finjan, Inc. v. Sophos, Inc.*,
   No. 14-CV-01197-WHO, 2015 WL 13728796 (N.D. Cal. July 14, 2015) .............................. 5

*Finjan, Inc. v. Sophos, Inc.*,
   No. 14-CV-01197-WHO, 2015 WL 5012679 (N.D. Cal. Aug. 24, 2015) ................... 2, 13, 15

*Finjan, Inc. v. Zscaler, Inc.*,
   No. 17-CV-06946-JST, 2018 WL 4181906 (N.D. Cal. Aug. 31, 2018),
   *enforcement granted*, 2019 WL 7589210 (N.D. Cal. Feb. 5, 2019) .................................. 2, 4, 9

*Genentech, Inc. v. The Trs. of Univ. of Pa.*,
   No. C 10–02037-LHK (PSG), 2010 WL 11509141 (N.D. Cal. Dec. 13, 2010) ..................... 10

*Geovector Corp. v. Samsung Elecs. Co.*,
   No. 16-CV-02463-WHO, 2017 WL 76950 (N.D. Cal. Jan. 9, 2017) ...................................... 16

*Implicit Networks Inc. v. Hewlett-Packard Co.*,
   No. C 10-03746 SI, 2011 WL 3954809 (N.D. Cal. Sept. 7, 2011) ......................................... 14

*Network Caching Tech. LLC v. Novell Inc.*,
   No. 01-cv-2079-VRW, 2002 WL 32126128 (N.D. Cal. Aug. 13, 2002) ...................... 5, 7, 15

*Perfect Surgical Techniques, Inc. v. Olympus Am., Inc.*,
   No. C 12-5967 PJH, 2013 WL 11319414 (N.D. Cal. Oct. 28, 2013) ........................................ 4

*Theranos, Inc. v. Fuisz Pharma LLC*,
   No. 11-CV-05236-YGR, 2012 WL 6000798 (N.D. Cal. Nov. 30, 2012) .................................. 5

*Vasudevan Software, Inc. v. Int'l Bus. Machines Corp.*,
   No. C09-05897 RS (HRL), 2011 WL 940263 (N.D. Cal. Feb. 18, 2011) ............................... 12

**Other Authorities**

Fed. R. Civ. P. 12(f) ......................................................................................................................... 1

Patent L.R. 3-1 ........................................................................................................................ *passim*

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on July 22, 2021, at 1:30 p.m., or as soon thereafter as the matter may be heard in the United States District Court for the Northern District of California, Oakland Division, located at 1301 Clay Street, Oakland, CA 94612, in Courtroom 3 before the Honorable Phyllis J. Hamilton, Defendant Palo Alto Networks, Inc. ("PAN") will and hereby does submit its motion to move the Court for an Order striking Plaintiff Finjan LLC's ("Finjan") infringement contentions ("Motion").

This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, all documents in the Court's file, any matters of which this Court may take judicial notice, and on such other written and oral argument as may be presented to the Court.

**RELIEF REQUESTED**

Pursuant to Patent Local Rule 3-1 and Rule 12(f) of the Federal Rules of Civil Procedure, PAN seeks an Order from the Court striking the infringement contentions served by Finjan.

**STATEMENT OF ISSUES**

Whether Finjan's infringement contentions fail to meet the standards set forth in Patent Local Rule 3-1 and fail to provide PAN with adequate notice of Finjan's theories of infringement, and should therefore be stricken.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

Despite Finjan's having had access to PAN's source code for ***over twelve months***, Finjan fails to identify with any particularity how each of PAN's accused products infringe each asserted claim. First, Finjan's infringement contentions merely parrot claim language and make generic statements about PAN's products, followed by pages of haphazard screenshots. Finjan makes no attempt to link the claims to specific features or functions of the accused products described in PAN's documents or source code. Second, Finjan cites entire source code files, comprising millions of lines of code, without pinpointing any line numbers that allegedly satisfy each claim

...
...

limitation.  Given the sheer volume of source code cited, without pinpoint citations, PAN has no way of knowing where and how Finjan contends each limitation of each asserted claim is found within each PAN product.  Third, Finjan asserts the doctrine of equivalents in a conclusory manner without explaining where in PAN's products the alleged equivalent for the element is found, and how the function, way, and result of that alleged equivalent is substantially the same as the claimed subject matter.

Finjan is well aware of the level of detail required to satisfy Patent Local Rule 3-1.  Indeed, **in at least seven cases**, courts in this district have held that Finjan violated Patent Local Rule 3-1 by serving infringement contentions that fail to provide notice of its infringement theories.[1]  In fact, with respect to the specific issue of pinpoint citations, Finjan has already been ordered to provide pinpoint citations.  *See, e.g.*, *Check Point*, 2019 WL 955000, at *7.  Otherwise, "the way Finjan frames its source code citations creates incalculable alternatives of infringement theories and it is next to impossible to know what its infringement theories are." *Id*.  Despite these prior rulings, and despite PAN's willingness during the meet and confer process to not oppose Finjan's serving amended contentions if it provided the required detail, Finjan refused.  Finjan's failure to provide sufficient infringement contentions amounts to nothing more than

---

[1] *See, e.g.*, *Finjan, Inc. v. SonicWall, Inc.*, No. 17-CV-04467-BLF(VKD), 2019 WL 2077849, at *4 (N.D. Cal. May 10, 2019) (Demarchi, Mag.) (ordering Finjan to amend infringement contentions); *Finjan, Inc. v. Check Point Software Techs., Inc.*, No. 18-CV-02621-WHO, 2019 WL 955000, at *8-9 (N.D. Cal. Feb. 27, 2019) (Orrick, J.) (ordering Finjan to provide source code citations and amend infringement contentions); *Finjan, Inc. v. Zscaler, Inc.*, No. 17-CV-06946-JST, 2018 WL 4181906, at *1 (N.D. Cal. Aug. 31, 2018) (Tigar, J.)("The Court agrees the contentions as a whole are insufficient to put Zscaler on notice of how its products specifically infringe the patent claims at issue."), *enforcement granted*, 2019 WL 7589210 (N.D. Cal. Feb. 5, 2019); *Finjan, Inc. v. FireEye, Inc.*, No. 13-cv-03133-SBA (JCS), Dkt. No. 134 (N.D. Cal. Oct. 16, 2017) (Spero, Mag.) ("Finjan shall provide pinpoint source code citations in its Infringement Contentions.") (Decl. of Diek Van Nort, filed herewith ("Van Nort Decl.") Ex. 1); *Finjan, Inc. v. Cisco Sys., Inc.*, No. 17-cv-00072-BLF (SVK), Dkt. No. 696 (N.D. Cal. Oct. 12, 2017) (van Keulen, Mag.) (ordering Finjan to amend its infringement contentions "across the board") (Van Nort Decl. Ex. 2 at 77-78); *Finjan, Inc. v. Sophos, Inc.*, No. 14-CV-01197-WHO, 2015 WL 5012679, at *6 (N.D. Cal. Aug. 24, 2015) (Orrick, J.) (ordering Finjan to provide source code citations and amend infringement contentions); *Finjan, Inc. v. Proofpoint, Inc.*, No. 13-CV-05808-HSG, 2015 WL 1517920, at * 6-10 (N.D. Cal. Apr. 2, 2015) (Gilliam, J.) (finding that "Finjan's infringement contentions do not satisfy the requirements of Patent Local Rule 3–1(c).").

gamesmanship and it is prejudicing PAN's ability to prepare its defense. This Court should strike Finjan's infringement contentions in their entirety.

**II.     BACKGROUND**

Finjan served its infringement contentions on April 1, 2021. (Van Nort Decl. Ex. 3.) These contentions assert infringement of seven patents: U.S. Patent No. 6,804,780 (the "'780 Patent"), U.S. Patent No. 7,418,731 (the "'731 Patent"), U.S. Patent No. 7,613,926 (the "'926 Patent"), U.S. Patent No. 7,647,633 (the "'633 Patent"), U.S. Patent No. 8,141,154 (the "'154 Patent"), U.S. Patent No. 8,225,408 (the "'408 Patent"), and U.S. Patent No. 8,677,494 (the "'494 Patent"). (*Id.* at 1-2.) On May 27, 2021, in light of Judge Bencivengo's May 20 judgment in *Finjan LLC v. ESET, LLC*,[2] Finjan agreed to dismiss the '780, '494, and '926 Patents.[3] (Van Nort Decl. Ex. 4.) Therefore, only four patents, the '633, '731, '408, and '154 Patents, remain at issue in this case ("the patents-in-suit").

Finjan's infringement contentions accuse the following PAN products of infringing the patents-in-suit: Next Generation Firewall Products ("NGFW"), WildFire Subscription ("WildFire"), Traps and Cortex XDR ("Traps"), Threat Prevention, and URL Filtering. (Van Nort Decl. Ex. 3 at 2-4.) Finjan served one claim chart each for the '633, '731[4], and '408 Patents, and two claim charts for the '154 Patent—one entitled "Infringement Chart for U.S. Patent No. 8,141,154 and NGFW, WildFire, Threat Prevention, and URL Filtering Products" (Van Nort Decl. Ex. 6, "Appendix E-1"), and the other "Infringement Chart for U.S. Patent No. 8,141,154 and Traps (Cortex XDR) and WildFire." (Van Nort Decl. Ex. 7, "Appendix E-2".) The five claim charts are largely filled with narrative, high-level descriptions of Finjan's infringement theory, pages of screenshots without any explanation or reference back to the alleged

---

[2] *Finjan LLC v. ESET, LLC*, No. 17-cv-0183-CAB-BGS, 2021 WL 2012248 (S.D. Cal. May 20, 2021).

[3] The parties are working towards a joint stipulation that would dismiss the '780, '494, and '926 Patents.

[4] An excerpt of the claim chart for the '731 Patent ("Appendix B-1") is attached as Exhibit 5 to the accompanying Van Nort Declaration.

infringement theory, and general citations to source code filenames—totaling millions of lines of code—with no pin cites.  These contentions do not provide PAN with reasonable notice of Finjan's infringement theories.

On May 12, 2021, PAN wrote Finjan identifying:  (1) Finjan's failure to provide source code pinpoint citations; (2) Finjan's deficient doctrine of equivalents contentions; and (3) patent-to-patent deficiencies.  (Van Nort Decl. Ex. 8.)  PAN also provided Finjan with an opportunity to amend its infringement contentions to address these failures.  (*Id.* at 2.)  Finjan responded on May 27, 2021.  (Van Nort Decl. Ex. 9.)  It refused to address any of the deficiencies PAN identified.  Instead, it "disagree[d] with [PAN's] assertions that Finjan's contentions are in any way deficient."  (*Id.* at 1).  The parties held a meet and confer via video conference on May 28, 2021 concerning these contentions.  (Van Nort Decl. ¶ 12.)  During the meet and confer, the parties reached an impasse when Finjan again disputed that its contentions were deficient and refused to provide pinpoint citations in the source code—stating that they were not required—and refused to remedy the other deficiencies.  (*Id.*)

### III.   LEGAL STANDARD

"To satisfy Patent Local Rule 3–1, [Finjan] must compare an accused product to its patents on a claim by claim, element by element basis for at least one of each [PAN's] products." *Zscaler*, 2018 WL 4181906, at *1 (internal citation and quotation marks omitted).  "Patent Local Rule 3-1 is intended to require the plaintiff to crystallize its theories of the case early in the litigation and to adhere to those theories once disclosed." *Check Point*, 2019 WL 955000, at * 3 (internal citations and quotation marks omitted).

"[A]ll courts agree that the degree of specificity under Local Rule 3–1 must be sufficient to provide reasonable notice to the defendant [as to] why the plaintiff believes it has a 'reasonable chance of proving infringement.'" *Proofpoint*, 2015 WL 1517920, at *2 (quoting *Shared Memory Graphics LLC v. Apple, Inc.*, 812 F.Supp.2d 1022, 1025 (N.D. Cal.2010)).  "At the Patent Local Rule 3-1 Disclosure stage, [Finjan] must put forth information so specific that either reverse engineering or its equivalent is required." *Id.* at *6 (internal citation and quotation marks omitted); *see also Perfect Surgical Techniques, Inc. v. Olympus Am., Inc.*, No. C 12-5967 PJH,

2013 WL 11319414, at *2 (N.D. Cal. Oct. 28, 2013) (Hamilton, J.). Infringement contentions that merely "parrot[] claim language or reference[] screenshots and/or website content" are insufficient. *Proofpoint*, 2015 WL 1517920, at *6. Instead, Finjan "bears the burden of providing infringement contentions that specify the location of every claim element within the accused products." *Bender v. Maxim Integrated Prods., Inc.*, No. C09-01152 SI, 2010 WL 1135762, at *2 (N.D. Cal. Mar. 22, 2010).

Infringement contentions that do not meet the requirements of Patent Local Rule 3-1 are subject to a motion to strike. *See, e.g.*, *Theranos, Inc. v. Fuisz Pharma LLC*, No. 11-CV-05236-YGR, 2012 WL 6000798, at *7 (N.D. Cal. Nov. 30, 2012) (granting motion to strike and requiring patentee to file a motion for leave to amend in order to serve revised contentions). A "motion to strike is not a discovery dispute." *Finjan, Inc. v. Sophos, Inc.*, No. 14-CV-01197-WHO, 2015 WL 13728796, at *1 (N.D. Cal. July 14, 2015) (denying Finjan's administrative motion to compel Sophos to comply with Judge Orrick's standing order regarding discovery disputes).

**IV.    ARGUMENTS**

    **A.    Finjan's Screenshots and Generic Statements Do Not Contain Sufficient Detail to Provide Notice of Its Infringement Theories**

Finjan's infringement contentions are largely comprised of screenshots with little to no explanation. This approach is routinely rejected by courts in this district. *See Proofpoint*, 2015 WL 1517920, at *6. The little explanation that Finjan does provide is framed in high-level generalities about PAN's products and lacks citations back to the screenshots that it does include. These generalities do not help identify what features or functions of the accused products purportedly meet each claim limitation. Finjan's screenshots and generic statements about PAN's products therefore do not meet the level of specificity required by Patent Local Rule 3-1. *See Network Caching Tech. LLC v. Novell Inc.*, No. 01-cv-2079-VRW, 2002 WL 32126128, at *4 (N.D. Cal. Aug. 13, 2002) (rejecting infringement contentions where the patentee "provides no explanation of how the proxies described in the literature map onto the claim language.").

Finjan's claim charts for the '154 Patent are representative of the deficiencies of Finjan's

infringement contentions.[5]  For example, claim 1[a] of the '154 Patent discloses:

> a content processor (i) for processing content received over a network, the content including a call to a first function, and the call including an input, and (ii) for invoking a second function within the input, only if a security computer indicates that such invocation is safe;

(Appendix E-1 at 10.)

As an example, Finjan offers no explanation of what a "first function" is.  Although Finjan's '154 infringement charts total 467 pages and use the term "first function" hundreds of times, not once does Finjan explain what a "first function" *actually is* in the accused products.  Instead, Finjan cites to pages of screenshots that have no apparent connection to a "first function."  As shown below, Finjan cites to screenshots and claims that "NGFW can insert *substitute functionality (first functions)* into email content and various other forms of received content to cause it to be sent to a security computer (WildFire) for analysis." (emphasis added).

| Claim 1[a] | Support |
|---|---|
|  | /HTTPS links contained in SMTP or POP3 messages. If a user downloads a file sample over a session that matches the security rule, the firewall performs a file hash check with WildFire to determine if WildFire has previously analyzed the sample. If the file is new, it is forwarded for analysis, even if it is contained within a ZIP file or over compressed HTTP. In the case of an email link, the firewall will extract HTTP /HTTPS links from SMTP and POP3 email messages that match the forwarding policy and will f01ward the link to WildFire (see WildFire Email Link Analysis. You can also configure the firewall to forward files inside of encrypted SSL sessions if SSL decryption is enabled." <br><br> **File/Email Link Forwarding** <br><br> With the integrated solution between WildFire and Palo Alto Networks firewalls, you configure the firewall with a file blocking profile and attach it to a security policy rule that instructs the firewall to automatically forward samples to the WildFire system for threat analysis. The samples can be specific file types or HTTP/HTTPS links contained in SMTP or POP3 messages. If a user downloads a file sample over a session that matches the security rule, the firewall performs a file hash check with WildFire to determine if WildFire has previously analyzed the sample. If the file is new, it is forwarded for analysis, even if it is contained within a ZIP file or over compressed HTTP. In the case of an email link, the firewall will extract HTTP/HTTPS links from SMTP and POP3 email messages that match the forwarding policy and will forward the link to WildFire (see WildFire Email Link Analysis. You can also configure the firewall to forward files inside of encrypted SSL sessions if SSL decryption is enabled. <br><br> PAN_FIN 00000623 at PAN_FIN00000633. <br><br> NGFW can insert substitute functionality (first functions) into email content and various other forms of received content to cause it to be sent to a security computer (WildFire) for analysis. |

(Appendix E-1 at 51 (emphasis added).)

---

[5] As explained herein, Finjan's infringement contentions are voluminous in pages but empty in the required substance.  For purposes of preserving judicial economy, PAN has included just the two excerpted claim charts for the '154 Patent and an excerpted claim chart for the '731 Patent as exhibits to this Motion.  The remaining claim charts are deficient for the same reasons.  PAN identified the specific deficiencies in each of the claim charts for the remaining patents in its May 12, 2021 letter (Van Nort Decl. Ex. 8), but Finjan similarly denies that they are deficient, and maintains that pinpoint citations to source code are not necessary.  (Van Nort Decl. Ex. 9 at 2-3.)  Upon request, PAN can file the complete versions of all claim charts served by Finjan.

| Claim 1[a] | Support |
|---|---|
| | **Supported File Types**<br>WildFire can analyze the following file types:<br>• **Email-link**—HTTP/HTTPS email links contained in SMTP and POP3 email messages. Note that the firewall only extracts links and associated session information (sender, recipient, and subject) from the email messages that traverse the firewall; it does not receive, store, forward, or view the email message. The WF-500 appliance does not support email link analysis.<br>• **Flash**—Adobe Flash applets and Flash content embedded in web pages<br>• **APK**—Android Application Package. Not supported on the WF-500 appliance.<br>• **PDF**—Portable Document Format<br>PAN_FIN 00000623 at PAN_FIN00000633. |

(*Id.* at 52.) But the screenshots do not mention a "first function" at all. They describe generally how PAN's WildFire products work with different files, but do not provide any guidance on what a "first function" is or how PAN's products insert this "first function." Finjan also summarily equates "first functions" with "substitute functionality," but similarly provides no information on what a "substitute functionality" is or how PAN's products insert this "substitute functionality." The screenshots also do not mention any "substitute functionality." These screenshots and Finjan's sparse explanation do not disclose any cogent infringement theory. *Proofpoint*, 2015 WL 1517920, at *6-10; *Droplets, Inc. v. Amazon.com, Inc.*, No. C12-03733 HRL, 2013 WL 1563256, at *5 (N.D. Cal. Apr. 12, 2013) (noting that "some association between the evidence and the language used in the claim limitations is necessary to understand where each claim limitation is found within the Accused Product"); *Network Caching*, 2002 WL 32126128, at *6 (striking infringement contentions because "NCT provides no link between the quoted passages and the infringement contention that simply mimics the language of the claim. . . . In essence, NCT has provided no further information to defendants than the claim language itself.").

Similarly, Finjan never identifies where a "second function" is allegedly found in the accused products. Again, Finjan's infringement charts merely parrot claim language and cite to screenshots that bear no link to a "second function." (*See, e.g.*, Appendix E-2 at 67-82.)

Finjan also fails to identify "input." In one of the infringement charts for the '154 chart, Finjan repeatedly conflates "input" with "content," despite the two being separate claim elements. (*See, e.g.*, Appendix E-1 at 13 ("the NGFW sends **content (inputs)** to WildFire for analysis.")

(emphasis added).) In its other infringement chart, Finjan either uses the term "input" without describing "input" at all (*see, e.g.*, Appendix E-2 at 38-41), or merely identifies a generic example "input" without identifying a "first function" or "second function" that is related to the "input." (*See, e.g., id.* at 88.)

As Judge Gilliam stated in his *Proofpoint* decision addressing the above claim limitations, "in order to satisfy Patent Local Rule 3–1(c) as to Claim 1a, Finjan was required to identify what structure, act, or material in each of the [accused products] infringes each claim element. In other words, what constitutes the 'first function,' 'second function,' and the 'input' in the allegedly infringing [accused products]?" *Proofpoint*, 2015 WL 1517920, at *7. Judge Gilliam found that "[t]hese are questions that Finjan's infringement contentions do not answer." *Id.* And the same is true here. "If Finjan believes that the first and second functions [and input] are contained within the [accused products], it was obligated to say so explicitly in its infringement contentions. Neither the Court nor [PAN] should be required to guess which aspects of the accused products allegedly infringe each claim element." *Id.*

Besides "first function," "second function," and "input," Finjan's infringement contentions also do not properly identify "content processor" or "security computer."[6] For example, in one of the claim charts for the '154 Patent, under "NGFW + WildFire + Threat Prevention," Finjan alleges that "[t]he accused content processor is comprised of structures, functionalities, operations, or systems of NGFW and Threat Prevention, together, or in combination with a client computer." (Appendix E-1 at 12.) Finjan also alleges that "the accused security computer is comprised of structures, functionalities, operations, or systems of WildFire

---

[6] Contrary to Finjan's apparent belief, *volume* does not equal *specificity*. *See, e.g.*, *Proofpoint*, 2015 WL 1517920 at *6 ("Finjan's infringement contentions are largely comprised of generic marketing literature and screenshots of the type routinely rejected by courts in this District. These unexplained references comprise the majority of Finjan's over 1,000 pages of claim charts."). In Finjan's May 27, 2021 letter to PAN, Finjan stated that it "identified the infringing functionalities and structures of the accused products that correspond with the claimed 'content processors.'" (Van Nort Decl. Ex. 9 at 5.) Finjan then boasted that it "laid out over 175 pages of explanations of the various infringing functionalities of the content processors within the PAN Accused Instrumentalities," without ever specifying the structures or components of PAN's accused products that correspond to "the accused content processor." (*Id.*)

and/or Threat Prevention." (*Id.*)  But that open-ended description is not helpful at all.  PAN's NGFW, WildFire, and Threat Prevention products contain thousands of structures, functionalities, operations, or systems.  Finjan's allegations therefore include an infinite number of possible combinations.  Finjan cannot merely "'provide[] generic allegations that do not identify specific components of the product or products[.]'"  *Zscaler*, 2018 WL 4181906, at *2 (quoting *Bender v. Infineon Techs. N. Am. Corp.*, No. C09-02112JW (HRL), 2010 WL 964197, at *2 (N.D. Cal. Mar. 16, 2010)) (internal alterations omitted).  Additionally, "[i]f Finjan believes that [PAN's] underlying instrumentalities infringe in combination, Finjan must specify the combination."  *Check Point*, 2019 WL 955000, at *4.

These are just some examples of Finjan's failure to identify any theory of infringement for the asserted claim limitation.  There are many other examples throughout Finjan's infringement contentions, all of which were identified by PAN to Finjan in writing leading up to the meet and confer process.  Indeed, Finjan fails to identify any theory of infringement for numerous limitations in each asserted claim of each patent-in-suit.  Below is an exemplary list of claim limitations for which Finjan has failed to identify any cogent, specific theory for how the accused products satisfy these claim limitations:

| Patent | Asserted Claim Limitation |
|---|---|
| '154 Patent | "content processor" |
| | "security computer" |
| | "first function" |
| | "second function" |
| | "input" |
| | "content" |
| '731 Patent | "a file cached for storing files that have been scanned by the scanner for future access, wherein each of the stored files is indexed by a file identifier" |
| | "a security profile cache for storing the security profiles derived by the scanner, wherein each of the security profiles is indexed in the security profile cache by a file identifier associated with a corresponding file stored in the file cache" |
| '633 Patent | "mobile protection code" |
| | "downloadable-information destination" |

| Patent | Asserted Claim Limitation |
|---|---|
| '408 Patent | "instantiating, by the computer, a scanner for the specific programming language" |
| | "in response to said determining, the scanner comprising parser rules and analyzer rules for the specific programming language, wherein the parser rules define certain patterns in terms of tokens, tokens being lexical constructs for the specific programming language, and wherein the analyzer rules identify certain combinations of tokens and patterns as being indicators for potential exploits" |
| | "identifying, by the computer, individual tokens within the incoming stream" |
| | "dynamically building, by the computer while said receiving receives the incoming stream, a parse tree whose nodes represent tokens and patterns in accordance with the parser rules" |
| | "dynamically detecting, by the computer while said dynamically building builds the parse tree, combinations of nodes in the parse tree which are indicators of potential exploits, based on the analyzer rules" |

### B. Finjan's General References to Source Code Filenames Fail to Provide PAN with Notice of Finjan's Infringement Theories

Perhaps knowing that its screenshots and general statements about PAN's products do not satisfy Patent Local Rule 3-1, Finjan includes citations of source code filenames to "identify" the location of the asserted limitation in PAN's products. But its citations to source code filenames do not cure its deficiencies.

#### 1. Patent Local Rule 3-1 and the Governing Case Law Require Finjan to Provide Pinpoint Citations to Source Code

Patent Local Rule 3-1 requires Finjan to explain "where and how each limitation of each asserted claim is found" within each accused product. Patent L. R. 3-1(c). When this accused product "includes computer software based upon source code made available to the patentee, patentees must provide 'pinpoint citations' to the code identifying the location of each limitation." *Genentech, Inc. v. The Trs. of Univ. of Pa.*, No. C 10–02037-LHK (PSG), 2010 WL 11509141, at *2 (N.D. Cal. Dec. 13, 2010); *see also Check Point,* 2019 WL 955000, at *6. Finjan's general citations to filenames fail to provide the required specificity for infringement

contentions.  In each of its charts, Finjan has listed "source code" sections that are merely filenames that Finjan alleges to contain the code responsible for practicing the claim limitations. For example, for element 1[a] of the '154 patent, Finjan cites over 100 individual filenames covering over 275,000 lines of source code without identifying any line numbers, functions, operations, or variable names. (Appendix E-1 at 163-194.)  And that is just for one element of one claim of one patent.  Neither the Court nor PAN should be required to comb through over 275,000 lines of source code to guess which lines allegedly infringe one single claim element of one patent. *Proofpoint*, 2015 WL 1517920, at *7 ("Neither the Court nor the Defendants should be required to guess which aspects of the accused products allegedly infringe each claim element.").

Finjan also does not explain how the source code informs its infringement contentions. For each citation to source code, Finjan provides the following language before listing a large number of source code filenames:  "Within the [accused product] source code, the modules that implement the operations of [claim language] … are implemented by source code in the following files[.]"  (*See, e.g.*, Appendix E-1 at 163.)  But Finjan's boilerplate language that the asserted claim limitation is implemented by source code within the dozens of listed source code files does not explain how any source code within the files—even if PAN can guess where the code is—satisfies the alleged claim limitation. *See, e.g.*, *Droplets*, 2013 WL 1563256, at *3-5 ("In instances where [the patentee] includes source code or tools, the source code or tools lack meaning unless somehow linked with the language of the claim limitations."); *SonicWall*, 2019 WL 2077849, at *6 ("It is not sufficient for Finjan to simply declare that a component that performs the claimed functionality exists in an accused instrumentality; Finjan must identify the infringing element and where it is found.").

Finjan's failure to provide pinpoint citations is striking given how little the rest of its infringement contentions explain Finjan's theories of infringement.  *See supra* Section IV. A. Without pinpoint citations or any mapping of the claim limitations onto the source code, PAN has no way of knowing Finjan's infringement theories.

### 2. Finjan Has Had A Sufficient Opportunity to Review the Source Code

PAN's source code was available for inspection to Finjan for over twelve months prior to the Patent Local Rule 3-1 deadline. "[T]he authority is clear that a plaintiff should provide citations once a plaintiff has had a sufficient opportunity to review the source code[.]" *Vasudevan Software, Inc. v. Int'l Bus. Machines Corp.*, No. C09-05897 RS (HRL), 2011 WL 940263, at *7 (N.D. Cal. Feb. 18, 2011). "The bottom line is that, after a plaintiff-patentee has had a reasonable opportunity to review the source code for the defendant's accused software product, the patentee's time for trolling the proverbial waters for a theory of infringement comes to an end, and the patentee must fish or cut bait with respect to its specific theory of infringement by providing [Preliminary Infringement Contentions] to the defendant that clearly identify and explain how the source code for the accused product infringes upon specific claims for the patent-in-suit." *Diagnostic Sys. Corp. v. Symantec Corp.*, No. SACV 06-1211 DOC (ANX), 2009 WL 1607717, at *5 (C.D. Cal. June 5, 2009).

Finjan has had plenty of time to review PAN's source code. Before the stay in December 2015, Finjan had access to PAN's source code for over nine months. On March 4, 2015, and again on April 10, 2015, PAN provided notice to Finjan that PAN's source code was available for inspection. (Van Nort Decl. Exs. 10, 11.) After the Court lifted the stay in January 2021, PAN has worked diligently to accommodate Finjan's continued review of PAN's source code. On February 5, 2021, PAN informed Finjan that PAN's source code would be available for inspection starting on February 16. (Van Nort Decl. Ex. 12.) On February 23, 2021, Finjan began its re-review of PAN's source code. (Van Nort Decl. Ex. 13.) On March 10, 2021, PAN produced newer versions of PAN's source code for review, even though PAN maintains that Finjan has not sufficiently explained how this source code is relevant to this case. (Van Nort Decl. Ex. 14)

That Finjan has had access to PAN's source code for a total of over twelve months, and refuses to provide pinpoint citations, is unacceptable under applicable case law. *See, e.g.*, *Diagnostic Sys.*, 2009 WL 1607717, at *4 ("***Eleven months*** is more than a reasonable period of

1  time.") (citing *Am. Video Graphics, L.P. v. Elec. Arts, Inc.*, 359 F. Supp. 2d 558, 561 (E.D. Tex.
2  2005) (ordering plaintiff to supplement its claim charts "with specific references to the source
3  code within **30 days** of Defendants depositing the code into escrow") (emphasis added)); *Big*
4  *Baboon Corp. v. Dell, Inc.*, 723 F. Supp. 2d 1224, 1228 (C.D. Cal. 2010) (ordering pinpoint
5  citations to source code where Amazon provided Big Baboon with the source code for its accused
6  programs over four months before the motion to compel adequate infringement contentions).

   Moreover, this is not the first time that PAN has raised the issue of pinpoint citations. PAN first informed Finjan that it is "required to provide pinpoint citations to source code in its infringement contentions" over six years ago on April 14, 2015. (Van Nort Decl. Ex. 15.) And again on May 11, 2015 and September 1, 2015, PAN reiterated that Patent Local Rule 3 and the governing case law require Finjan to provide pinpoint citations to source code in its infringement contentions. (Van Nort Decl. Exs. 16, 17.) PAN also raised this issue in the December 3, 2015 Joint Case Management Statement. (Dkt. No. 62 at 24.) After the stay was lifted, in the March 11, 2021 Joint Case Management Statement, PAN requested that the Court order Finjan to provide pinpoint citations to source code, citing Finjan's "history of providing deficient infringement contentions even when it has been afforded the opportunity to review the source code underlying the accused products." (Dkt. No. 104 at 23-25.) Although the Court said that PAN's request was premature at the Case Management Conference because Finjan had not yet served its infringement contentions (Van Nort Decl. ¶ 21), the issue is now ripe. Exactly what PAN had feared would happen has occurred: Finjan once again served deficient infringement contentions that fail to inform how the source code maps onto the specific claim language of the asserted claims.

### 3. Courts in This District Have Repeatedly Ordered Finjan to Provide Pinpoint Citations to Source Code

Finjan is aware that its failure to provide pinpoint citations violates Patent Local Rule 3-1, as applied by the Northern District of California. In at least three cases, courts in this district have ordered Finjan to provide pinpoint source code citations. *See, e.g.*, *Check Point*, 2019 WL 955000, at *6 ("It is Finjan's obligation to identify the particular claim components in each claim,

1  map those components onto the features of the allegedly infringing products, and pinpoint cite
2  source code that practices that component."); *Sophos*, 2015 WL 5012679, at *3 (ordering Finjan
3  to provide pinpoint source code citations, including "the actual full directory paths, file names,
4  function or procedure names and line numbers") (internal alterations omitted); *FireEye* (Van Nort
5  Decl. Ex. 1) ("Finjan shall provide pinpoint source code citations in its Infringement
6  Contentions.").

7      During meet and confer and leading up to the Case Management Conference, Finjan
8  argued that *Finjan, Inc. v. Proofpoint, Inc.*, No. 13-CV-05808-HSG, 2015 WL 9023166 (N.D.
9  Cal. Dec. 16, 2015) ("*Proofpoint II*") justified its refusal to provide pinpoint citations.  (Van Nort
10 Decl. Ex. 9 at 2-3.)  But *Proofpoint II*'s minority position on pinpoint citations has been rejected
11 by at least two courts in this district.  In both *FireEye* and *Check Point*, Finjan argued that
12 *Proofpoint II* supported its position that pinpoint source code citations are not required.  (Van
13 Nort Decl. Exs. 18 (*FireEye*) at 3-4 and 19 (*Check Point*) at 5-8.)  And in both times the judge
14 rejected Finjan's erroneous reliance on *Proofpoint II* and ordered Finjan to provide pinpoint
15 source code citations.  *See FireEye* (Van Nort Decl. Ex. 1); *Check Point*, No. 18-cv-02621-WHO,
16 Dkt. No. 29 (N.D. Cal. Sept. 10, 2018) (Van Nort Decl. Ex. 20.)

17         C.    **Finjan's Conclusory Doctrine of Equivalents Contentions Fail to Provide PAN with Notice of Finjan's Infringement Theories**
18

19     "The doctrine of equivalents exists to prevent fraud on the patent" and not "to give a
20 patentee a second shot at proving infringement" if it is not "literally present." *Creagri, Inc. v.*
21 *Pinnaclife Inc., LLC*, No. 11-CV-06635-LHK-PSG, 2012 WL 5389775, at *6 (N.D. Cal. Nov. 2,
22 2012) (internal citation omitted).  Therefore, "[Finjan] may not simply repeat the same boilerplate
23 language for each of its contentions, noting in the alternative that this element infringes directly
24 or under the doctrine of equivalents." *Proofpoint*, 2015 WL 1517920, at *10 ("strik[ing] all
25 language in Finjan's infringement contentions asserting the doctrine of equivalents") (internal
26 citation and quotation marks omitted).  Instead, Finjan's doctrine of equivalents contentions must
27 "provid[e] specific analysis, on an element-by-element basis, as to its theory of why there is
28 infringement under the doctrine of equivalents." *Implicit Networks Inc. v. Hewlett-Packard Co.*,

No. C 10-03746 SI, 2011 WL 3954809, at *3 (N.D. Cal. Sept. 7, 2011). Finjan has not done so.

Finjan's doctrine of equivalents contentions repeat the same boilerplate language that "[t]o the extent the Accused Products do not literally infringe this claim element," they infringe under the doctrine of equivalents. (*See, e.g.*, Appendix B-1 at 90.) Finjan then tacks on additional words that merely parrot the claim language. For example, element 1[b] of the '731 Patent states: "a file cache for storing files that have been scanned by the scanner for future access, wherein each of the stored files is indexed by a file identifier[.]" (*Id.* at 75.) As shown below, Finjan's doctrine of equivalents contentions simply reiterate the claim language in the guise of a function-way-result analysis:

> The Accused Products perform the same function because they have a memory for storing files that have been scanned by the scanner for future access. For example, each of the Accused Products at least temporarily stores and indexes the file in a memory for future use.
>
> The Accused Products perform this function in the same way because the stored file is indexed so that it can be retrieved for future access. For example, the Accused Products index the stored file by a file identifier, which can be a hash.
>
> The Accused Products achieve the same result as this element because they store a scanned file in memory and index it in a way that it can be retrieved for future access. For example, the Accused Products allow the file to be retrieved for future use by storing files in memory and index them.

(*Id.* at 90.) A closer look at the contentions shows that Finjan simply rehashes the claim language in a slightly different way for each of the "function," "way," and "result" elements and identifies no actual link to PAN's products at all. Finjan "merely references the entire Accused Product, rather than discrete components, as the equivalent structure that accomplishes the claimed function." *CSR Tech. Inc. v. Freescale Semiconductor*, No. C-12-02619 RS (JSC), 2013 WL 503077, at *9 (N.D. Cal. Feb. 8, 2013) (holding that "Plaintiff must specify in what way Defendant's products infringe under the doctrine of equivalents, or drop the contention altogether." (internal citation and quotation marks omitted)). Nowhere does Finjan "explain where in the accused products the alleged equivalent for this element is found, or how the

function, way, and result of that alleged equivalent is substantially the same as the claimed subject matter." *Sophos*, 2015 WL 5012679, at *4. "In essence, [Finjan] has provided no further information to [PAN] than the claim language itself." *Network Caching*, 2002 WL 32126128, at *6.

Additionally, Finjan lumps together three disparate lines of products—NGFW, WildFire, and Traps—under one single "Accused Products." (*See* Appendix B-1 at 1.) This is improper. "Rule 3-1(b) does not permit parties to identify accused products by using categorical or functional identifications." *Geovector Corp. v. Samsung Elecs. Co.*, No. 16-CV-02463-WHO, 2017 WL 76950, at *4 (N.D. Cal. Jan. 9, 2017) ("GeoVector does not identify a specific component within a particular Samsung product that infringes but instead uses general language to indicate that all accused products infringe the limitation at issue."). Because Finjan "fails to identify and differentiate between [PAN's] products," it "has not sufficiently articulated its theories of infringement to put [PAN] on reasonable notice." *Digital Reg of Texas, LLC v. Adobe Sys. Inc.*, No. CV 12-01971-CW (KAW), 2013 WL 3361241, at *3 (N.D. Cal. July 3, 2013). As Judge Gilliam pointed out, "[i]f [Finjan] does not have a factual basis to assert the doctrine of equivalents in its infringement contentions at [this] time, it should not do so." *Proofpoint*, 2015 WL 1517920, at *10.

## V.   CONCLUSION

For the foregoing reasons, PAN requests that the Court strike Finjan's infringement contentions in their entirety.

Dated: June 15, 2021                                 MORRISON & FOERSTER LLP

                                                    By:    */s/ Colette Reiner Mayer*
                                                           Colette Reiner Mayer

                                                    Attorneys for Defendant
                                                    PALO ALTO NETWORKS, INC.