# Exhibit 3

Juanita R. Brooks (CA SBN 75934) / brooks@fr.com
Roger A. Denning (CA SBN 228998) / denning@fr.com
Frank J. Albert (CA SBN 247741) / albert@fr.com
K. Nicole Williams (CA SBN 291900) / nwilliams@fr.com
Jared A. Smith (CA SBN 306576) / jasmith@fr.com
Tucker N. Terhufen (CA SBN 311038) / terhufen@fr.com
FISH & RICHARDSON P.C.
12860 El Camino Real, Ste. 400
San Diego, CA 92130
Telephone: (858) 678-5070 / Fax: (858) 678-5099

Susan Morrison (Pro Hac Vice) / morrison@fr.com
FISH & RICHARDSON P.C.
222 Delaware Avenue, 17th Floor
P.O. Box 1114
Wilmington, DE 19801
Telephone: (302) 652-5070 / Fax: (302) 652-0607
*Additional counsel listed on signature page*

Attorneys for Plaintiff,
FINJAN LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FINJAN LLC,<br><br>                    Plaintiff,<br><br>          v.<br><br>PALO ALTO NETWORKS, INC.,<br><br>                    Defendant. | Case No. 14-cv-04908-PJH<br><br>**PLAINTIFF FINJAN LLC'S INITIAL DISCLOSURE OF ASSERTED CLAIMS AND INFRINGEMENT CONTENTIONS AND DOCUMENT PRODUCTION PURSUANT TO PATENT LOCAL RULES 3-1 AND 3-2**<br><br>Hon. Phyllis J. Hamilton<br>Ctrm: 3, 3rd Floor |

Pursuant to Patent Local Rules 3-1 and 3-2 of the United States District Court for the Northern District of California, Plaintiff Finjan LLC ("Finjan") makes the following Initial Disclosure of Asserted Claims and Infringement Contentions and Document Production Accompanying Disclosure, including the attached claim charts (the "Disclosure") to Palo Alto Networks, Inc. (hereinafter "PAN" or "Defendant").

Finjan makes this Disclosure based upon information presently known and reasonably available to it as of this date, as Finjan's investigations are ongoing and Defendant has only provided limited discovery. The case has also been stayed for years, and Defendant's products and systems may have changed over time, which will require additional discovery. Accordingly, Finjan reserves the right to amend, modify, supplement, or narrow any portion of this Disclosure, including, but not limited to, the identification of the claims infringed by Defendant, the products and services accused of infringement and the bases and manner of infringement described in this Disclosure. Finjan reserves the right to supplement this Disclosure as necessary and as appropriate in accordance with the Federal Rules of Civil Procedure and this Court's Local Rules, including Patent Local Rule 3-6, in light of future document production, interrogatory responses, admissions, disclosures, contentions, fact witness testimony, expert discovery, any other discovery, future rulings from the Court (including claim construction), any amendments to the pleadings, any additional items of evidence, or for any other reason authorized by statute, rule, or applicable case law. Finjan further reserves the right to rely upon the opinions of one or more experts in support of its infringement contentions in accordance with the Court's scheduling order.

## I.   PATENT L.R. 3-1: DISCLOSURE OF ASSERTED CLAIMS AND INFRINGEMENT CONTENTIONS

### A.   Identification Of Asserted Claims And Applicable Subsections Of 35 U.S.C. § 271 [NDCA P.L.R. 3-1(a)]

Based on information obtained to date, Finjan asserts that PAN has infringed and/or is infringing pursuant to 35 U.S.C. § 271(a) the following claims of the patents asserted in this action ("Asserted Patents"):

- U.S. Patent No. 6,804,780 (the "'780 Patent"): 1, 2, 5, 9, 10, 13, 17, 18

- U.S. Patent No. 7,418,731 (the "'731 Patent"): 1-3, 14-15, 17

- U.S. Patent No. 7,613,926 (the "'926 Patent"): 1-30

- U.S. Patent No. 7,647,633 (the "'633 Patent"): 14

- U.S. Patent No. 8,141,154 (the "'154 Patent"): 1, 2, 4, 6, 7, 10

- U.S. Patent No. 8,225,408 (the "'408 Patent"): 1, 3-8, 22

- U.S. Patent No. 8,677,494 (the "'494 Patent"): 3-5, 7, 10-16

Based on information obtained to date, Finjan asserts that PAN has induced infringement pursuant to 35 U.S.C. § 271(b) of the following claims of the Asserted Patents:

- U.S. Patent No. 6,804,780 (the "'780 Patent"): 1, 2, 5, 9, 10, 13, 17, 18

- U.S. Patent No. 7,418,731 (the "'731 Patent"): 1-3, 14-15, 17

- U.S. Patent No. 7,613,926 (the "'926 Patent"): 1-30

- U.S. Patent No. 7,647,633 (the "'633 Patent"): 14

- U.S. Patent No. 8,141,154 (the "'154 Patent"): 1, 2, 4, 6, 7, 10

- U.S. Patent No. 8,225,408 (the "'408 Patent"): 1, 3-8, 22

- U.S. Patent No. 8,677,494 (the "'494 Patent"): 3-5, 7, 10-16

Finjan reserves the right to amend, modify, supplement, or narrow these contentions, as appropriate, pursuant to Patent Local Rule 3-6, including identifying additional asserted claims, as it obtains additional information over the course of discovery and in light of the Court's claim construction order.

### B.   Identification Of Accused Instrumentalities [NDCA P.L.R. 3-1(b)]

Based on Information to date, PAN makes, uses, offers to sell, or sells the following products that are accused of infringement in this case:

- **Next Generation Firewall Products ("NGFW"):** For purposes of these contentions, NGFW refers to at least the following accused products:

  o   Next Generation Firewalls, including PA-220R, PA-200P, PA-200, PA-220, PA-500, PA-820, PA-850, PA-2000, PA-2020, PA-2050, PA-3000, PA-3020, PA-3050, PA-3060, PA-3220, PA-3250, PA-3260, PA-4020, PA-4050, PA-4060, PA-5000, PA-5020, PA-5050, PA-5060, PA-5220, PA-5250, PA-5260, PA-5280, PA-7000, PA-7050, PA-7080, M series firewalls, M-100, M-

PLAINTIFF FINJAN LLC'S INITIAL DISCLOSURE OF ASSERTED CLAIMS AND
INFRINGEMENT CONTENTIONS AND DOCUMENT PRODUCTION PURSUANT TO
PATENT LOCAL RULES 3-1 AND 3-2

500 (*see, e.g.*, PAN_FIN00000847-852; FINJAN-PAN 366233);

- o Virtualized Firewalls, including VM-50 Lite, VM-50, VM-100, VM-200, VM-300, VM-500, VM-700, VM-1000-HV series virtual firewalls (*see, e.g.,* FINJAN-PAN 093607-11);

- o Any other PAN Firewall products running PAN-OS versions 6.0, 6.1, 7.0, 7.1, 8.0, 8.1, 9.0, 9.0-XFR, 9.1, and 10.0 and any subsequent infringing versions (*see, e.g.*, FINJAN-PAN 366214); and

- o To the extent there are additional products that contain these technologies, Finjan incorporates all such products as appropriate.

- **WildFire Subscription ("WildFire"):** For purposes of these contentions, WildFire refers to at least the following accused products:

- o Basic WildFire, WF-500 and WildFire Subscription. Basic WildFire functionality is available as part of the Threat Prevention license and as part of all platforms running PAN OS 4.1 and greater, including the NG Firewalls, and also including all platforms running WildFire 6.0, 6.1, 7.0, 7.1, and 8.0, 8.1, 9.0, 9.1, and 10.0. *See, e.g.*, FINJAN-PAN 093612-15; FINJAN-PAN 366404. Each accused WildFire product or subscription operates in substantially the same manner, with the differences being that Basic WildFire provides limited analysis on certain file types in comparison to WildFire Subscription. *See, e.g.*, FINJAN-PAN 093612-15. In addition, WF-500 is a hardware appliance that acts as a "private cloud" version of the WildFire Subscription. *See, e.g.*, FINJAN-PAN 093612-15; and

- o To the extent there are additional products that contain these technologies, Finjan incorporates all such technologies as appropriate.

- **Traps and Cortex XDR ("Traps"):** For purposes of these contentions, Traps refers to at least the following accused products:

- o Traps Advanced Endpoint Protection and any associated endpoint protection products, including EndPoint Security Manager and Cortex XDR Agent.

1  Finjan understands that Cortex XDR now includes Traps (*see, e.g.*, FINJAN-

2  PAN 366214);

3   o  Any other Traps, ESM, or Cortex XDR products including versions 3.1, 3.2,

4     3.3, 3.4, 4.0, 4.1, 4.2, 5.0, 6.0, 6.1, 7.0 (Cortex XDR agent), 7.1 (Cortex XDR

5     agent), 7.2 (Cortex XDR agent), 7.3 (Cortex XDR agent) (*see, e.g.*, FINJAN-

6     PAN 366214); and

7   o  To the extent there are additional products that contain these technologies,

8     Finjan incorporates all such products as appropriate.

9  • **Threat Prevention:** For purposes of these contentions, Threat Prevention includes

10  at least Threat Prevention subscriptions or licenses, and the technologies that Palo

11  Alto Networks identifies as "App-ID," "User-ID," and "Content-ID." To the extent

12  that there are additional products that contain these technologies, Finjan incorporates

13  all such products as appropriate.

14  • **URL Filtering:** For purposes of these contentions, URL Filtering includes at least

15  URL Filtering subscriptions and licenses, including the use of PAN-DB and Bright

16  Cloud. To the extent that there are additional products that contain these

17  technologies, Finjan incorporates all such products as appropriate.

18  Based on information obtained to date, Finjan asserts that PAN's products, services, and

19  associated software and subscriptions ("Accused Instrumentalities") listed below have infringed

20  and/or are infringing the following claims pursuant to 35 U.S.C. § 271:

21  • U.S. Patent No. 6,804,780: NGFW, WildFire, Traps, and Threat Prevention;

22  • U.S. Patent No. 7,418,731: NGFW, WildFire, and Traps;

23  • U.S. Patent No. 7,613,926: NGFW, WildFire, and Traps;

24  • U.S. Patent No. 7,647,633: NGFW, WildFire, and Traps;

25  • U.S. Patent No. 8,141,154: NGFW, WildFire, Traps, Threat Prevention, and URL

26  Filtering;

27  • U.S. Patent No. 8,225,408: NGFW, WildFire, and Traps; and

28  • U.S. Patent No. 8,677,494: NGFW, WildFire, and Traps.

The above identification is based on information available to Finjan as of the date of service. Finjan anticipates that discovery may reveal additional products, features, and services that infringe the Asserted Patents.   Finjan reserves the right to amend, modify, supplement, or narrow these contentions pursuant to Patent Local Rule 3-6, if necessary, including identifying additional products, features, and services, as it obtain additional information through discovery and in light of the Court's claim construction order.

Finjan further alleges that PAN's hardware and software products including the Accused Instrumentalities are manufactured in the United States, and that patented products sold abroad are manufactured in the United States. *See, e.g.*, https://blog.paloaltonetworks.com/2019/10/palo-alto-networks-statement-regarding-tariffs/                              (FINJAN-PAN 366264); https://blog.paloaltonetworks.com/2020/08/policy-product-integrity/      (FINJAN-PAN 366352). Upon information and belief, source code and software for PAN's Accused Instrumentalities is written, tested, developed, compiled, and copied in the United States. PAN compiles and loads the binary on the Accused Instrumentalities (making the computer-readable storage medium) and then PAN sells the Accused Instrumentalities with the binary (selling the computer-readable storage medium).  For example, PAN advertises engineering positions for its Santa Clara location, including a Senior Test Engineer. *See* FINJAN-PAN 366521. The job description lists responsibilities, including: "ensuring our products ship with the highest quality through extensive and complete testing"; "evaluate product design for test coverage"; "development of high stress testing platforms"; "manage the development of test fixtures and hardware requirements"; "build and scale manufacturing lines and ensure the smooth operation of the test lines in manufacture and repair facilities." *Id.* Based on at least this information, infringing acts, which include making, using, developing, compiling, testing, and copying, happen in the United States.

Based on information available to Finjan, the NGFW, WildFire, Threat Prevention, and URL Filtering products operate identically with respect to the identified claims and only vary based on hardware specifications and/or deployment options.  For example, based on Finjan's investigation to date, PAN provides instructional manuals and Admin Guides for the NGFW and WildFire products. Since the inception of the complaint through present, PAN has released various versions

of such guides corresponding to features in the Accused Instrumentalities. Such guides contain similar or identical explanations of the infringing functionalities of the NGFW, WildFire, Threat Prevention, and URL Filtering. *See, e.g.*, FINJAN-PAN 093233 (PAN-OS Admin Guide Version 6.0); FINJAN-PAN 364655 (PAN-OS Admin Guide Version 8.0); FINJAN-PAN 360561 (PAN-OS Admin Guide Version 9.0); FINJAN-PAN 361861 (PAN-OS Admin Guide Version 9.1); FINJAN-PAN 363183 (PAN-OS Admin Guide Version 10.0); FINJAN-PAN 358082 (WildFire Appliance Software 5.1); FINJAN-PAN 358209 (WildFire Admin Guide Version 6.0); PAN_FIN00000623 (WildFire Admin Guide Version 6.1); FINJAN-PAN 358453 (WildFire Admin Guide Version 7.0); FINJAN-PAN 358581 (WildFire Admin Guide Version 7.1); FINJAN-PAN 358692 (WildFire Admin Guide Version 8.0); FINJAN-PAN 358898 (WildFire Admin Guide Version 8.1); FINJAN-PAN 359106 (WildFire Admin Guide Version 9.1). Additionally, PAN has produced source code for PAN-OS versions 3.1, 4.1, 6.1, 7.0, 8.0, 9.0, and 10.0 for the Accused Instrumentalities, and that source code confirms that the infringing structures and methods have persisted through the product release progression. Additional evidence may also support this understanding, and Finjan reserves the right to rely on subsequently discovered information for this purpose.

In addition, based on information available to Finjan, the Traps and WildFire products operate together identically across the various versions with respect to the identified claims and only vary based on hardware specifications and/or deployment options.  For example, based on Finjan's investigation to date, PAN provides instructional manuals and Admin Guides for the Traps and WildFire products. Since the inception of the complaint through present, PAN has released various versions of such guides corresponding to features in the Accused Instrumentalities. Such guides contain similar or identical explanations of the infringing functionalities of the Traps and WildFire products. *See, e.g.*, PAN_FIN00007625 (Traps User and Admin Guide Version 2.3.6); PAN_FIN00000001 (Advanced Endpoint Protection Admin Guide Version 3.1); FINJAN-PAN 357341 (Traps Endpoint Security Manager Admin Guide Version 4.2); FINJAN-PAN 358082 (WildFire Appliance Software 5.1); FINJAN-PAN 358209 (WildFire Admin Guide Version 6.0); PAN_FIN00000623 (WildFire Admin Guide Version 6.1); FINJAN-PAN 358453 (WildFire Admin

PLAINTIFF FINJAN LLC'S INITIAL DISCLOSURE OF ASSERTED CLAIMS AND
INFRINGEMENT CONTENTIONS AND DOCUMENT PRODUCTION PURSUANT TO
PATENT LOCAL RULES 3-1 AND 3-2

Guide Version 7.0); FINJAN-PAN 358581 (WildFire Admin Guide Version 7.1); FINJAN-PAN 358692 (WildFire Admin Guide Version 8.0); FINJAN-PAN 358898 (WildFire Admin Guide Version 8.1); FINJAN-PAN 359106 (WildFire Admin Guide Version 9.1). Additionally, PAN has produced source code for PAN-OS versions 3.1, 4.1, 6.1, 7.0, 8.0, 9.0, and 10.0, and Traps versions 3.0 and 3.1.3 for the Accused Instrumentalities, and that source code confirms that the infringing structures and methods have persisted through the product release progression. Additional evidence may also support this understanding, and Finjan reserves the right to rely on subsequently discovered information for this purpose.

The citations to certain documents or other evidence in the Appendices are intended to be exemplary only and in no way foreclose Finjan from citing additional documents, information, testimony, or other evidence at a later time.  These contentions are preliminary, and additional analysis of the NGFW, WildFire, Threat Prevention, Traps, and URL Filtering products, internal documentation, source code, and testimony from relevant witnesses may be necessary to fully describe the infringing features of the NGFW, WildFire, Threat Prevention, Traps, and URL Filtering products.  Discovery is ongoing.  Accordingly, Finjan reserves the right to supplement, correct, modify, and/or amend these contentions as discovery in this cases progresses; in view of the Court's claim construction order(s); in view of any positions taken by PAN; and in connection with the preparation and exchange of expert reports.

Additionally, Finjan has identified to PAN several deficiencies with PAN's source code and document production, and has requested that PAN supplement on multiple occasions over the past two months. *See* February 25, 2021 letter from Smith to Van Nort regarding deficiencies with PAN's source code production; March 12, 2021 letter from Smith to Van Nort regarding deficiencies with PAN's source code production; March 22, 2021 letter from Smith to Van Nort regarding deficiencies with PAN's document production; March 23, 2021 email from Smith to Van Nort regarding deficiencies with PAN's source code production. Many of these requests have been ignored. Specific examples of source code and documents that PAN has withheld, and that are material to Finjan's allegations, include SML files, DFA files, hardware source code, Cuckoo Sandbox open source software, Traps-Reflector-server source code, all versions of Traps after version 3.1.3, and

PLAINTIFF FINJAN LLC'S INITIAL DISCLOSURE OF ASSERTED CLAIMS AND
INFRINGEMENT CONTENTIONS AND DOCUMENT PRODUCTION PURSUANT TO
PATENT LOCAL RULES 3-1 AND 3-2

1   FPGA hardware code. PAN has not supplemented its document production since the case was stayed

2   in May 2016. Thus, PAN's document production lacks years' worth of technical, financial, and other

3   development documents clearly within the scope of Finjan's Requests. As Finjan made clear in its

4   Amended Complaint, Finjan's allegations are not limited to products that existed before this case

5   was stayed, but extend to all versions of PAN's infringing products. On information and belief, these

6   materials withheld by PAN provide further evidence and support for Finjan's Infringement

7   Contentions. Finjan reserves the right to supplement its Infringement Contentions to incorporate

8   these materials following their production or otherwise rely on these materials, including for

9   purposes of expert discovery. Finjan also reserves the right to rely on any information that it has not

10   yet identified, but that PAN has not produced to date, for any purpose.

11   **C.     Claim Charts Identifying Claim Elements Present In Accused
            Instrumentalities [NDCA P.L.R. 3-1(c)]**

12   Finjan provides the following Appendices pursuant to Patent Local Rule 3-1(c):

13   •     Appendices A-1 through A-2 show how the Accused Instrumentalities of the '780

14         Patent infringe each of the asserted claims of the '780 Patent;

15   •     Appendix B-1 shows how the Accused Instrumentalities of the '731 Patent infringe

16         each of the asserted claims of the '731 Patent;

17   •     Appendices C-1 through C-2 show how the Accused Instrumentalities of the '926

18         Patent infringe each of the asserted claims of the '926 Patent;

19   •     Appendix D-1 shows how the Accused Instrumentalities of the '633 Patent infringe

20         each of the asserted claims of the '633 Patent;

21   •     Appendices E-1 through E-2 show how the Accused Instrumentalities of the '154

22         Patent infringe each of the asserted claims of the '154 Patent;

23   •     Appendix F-1 shows how the Accused Instrumentalities of the '408 Patent infringe

24         each of the asserted claims of the '408 Patent; and

25   •     Appendix G-1 shows how the Accused Instrumentalities of the '494 Patent infringe

26         each of the asserted claims of the '494 Patent.

27   The Appendices are incorporated by reference.   The citations in the Appendices are

28

exemplary.  In the attached Appendices, Finjan has subdivided each asserted claim to explain where the respective Accused Instrumentality meets each claim element.  The subdivisions in the Appendices are not to be taken as an indication of the boundaries of claim elements with respect to doctrine of equivalents, or any other issue.  Additionally, the Accused Instrumentalities and Defendant's other products may infringe the asserted claims in multiple ways.

The above identification is based on information available to Finjan as of the date of service. Finjan reserves the right to provide alternative claim mappings or infringement contentions for such Accused Instrumentalities or other products and services.  Finjan further reserves the right to rely on opinions of one or more experts in support of its infringement contentions according to the Court's scheduling order.

**D.      Identification Of Direct Infringement Underlying Allegations Of Indirect Infringement And Description Of Acts Of Indirect Infringement [NDCA P.L.R. 3-1(d)]**

Defendant induces infringement of claims 1, 2, 5, 9, 10, 13, 17, and 18 of the '780 Patent pursuant to 35 U.S.C. § 271(b), by taking active steps to cause infringement of claims 1, 2, 5, 9, 10, 13, 17, and 18 of the '780 Patent, both with the knowledge of the '780 Patent and the specific intent to cause, instruct, direct or require third parties, including its customers, subscribers, users and developers, to use the Accused Instrumentalities of the '780 Patent in a manner that infringes claims 1, 2, 5, 9, 10, 13, 17, and 18 of the '780 Patent. For example, direct infringement is committed by PAN customers and users who operate the Accused Instrumentalities in an infringing manner. The acts of direct infringement include without limitation, purchases and use of NGFW products and associated services, including WildFire, Threat Prevention, and URL Filtering (*see also* Appendices A-1 and A-2, Finjan's claim charts related to the '780 Patent). WildFire, Threat Prevention, and URL Filtering are licensed software products that PAN encourages its customers to purchase and use together with the NGFWs to infringe the claimed methods and systems of the '780 Patent.  By way of example, PAN's PAN-OS Admin Guide Version 10.0 explains to PAN customers and users that "[t]he following Palo Alto Networks subscriptions unlock certain features or enable the firewall to leverage a Palo Alto Networks cloud-delivered service (or both)."  FINJAN-PAN 363183 at 363245. PAN then explains, "[t]o enable a subscription, you must first Activate Subscription

PLAINTIFF FINJAN LLC'S INITIAL DISCLOSURE OF ASSERTED CLAIMS AND
INFRINGEMENT CONTENTIONS AND DOCUMENT PRODUCTION PURSUANT TO
PATENT LOCAL RULES 3-1 AND 3-2

Licenses; once active, most subscription services can use Dynamic Content Updates to provide new and updated functionality to the firewall." *Id*. PAN then lists the relevant products and services that its customers can use together with the NGFW products, including Threat Prevention, URL Filtering, and WildFire. *Id*. at 363245-246. PAN then provides its customers with step-by-step instructions for activating such subscription licenses. *Id*. at 363248. The same is true for the PAN Cortex XDR and Traps products. PAN's users and customers use Traps together with other accused services, including WildFire, to infringe the claimed methods and systems of the '780 Patent. By way of example, the Traps Endpoint Security Manager Administrator's Guide Version 4.2 explains "[y]ou can integrate WildFire with your Endpoint Security Manager using either of the following two options . . . ." FINJAN-PAN 357341 at 357355. PAN then instructs its customers that, "you must set up the ESM to communicate with Wildfire," after which it provides step-by-step instructions for doing so. *Id*. at 357503-505. At least these acts of direct infringement by PAN's customers and users underlie PAN's inducement.

Such inducing steps include, but are not limited to, advising third parties to use the Accused Instrumentalities of the '780 Patent in an infringing manner through product manuals and other product documentation; providing a mechanism through which third parties may infringe the patent, specifically through the use of the Accused Instrumentalities of the '780 Patent; requiring third parties to agree to its terms and conditions; advertising and promoting the use of the Accused Instrumentalities of the '780 Patent in an infringing manner; and distributing guidelines and instructions to third parties on how to use the Accused Instrumentalities of the '780 Patent in an infringing manner. The materials referenced in the Appendix are materials provided to third parties to use the Accused Instrumentalities of the '780 Patent in a manner that infringes the claims identified above. As further proof of Defendant's inducement of infringement, Finjan identifies the allegations and evidence identified in the Complaint. *See, e.g.,* ECF 112 (Amended Complaint) and attached exhibits.

Defendant induces infringement of claims 1-3, 14-15, and 17 of the '731 Patent pursuant to 35 U.S.C. § 271(b), by taking active steps to cause infringement of claims 1-3, 14-15, and 17 of the '731 Patent, both with the knowledge of the '731 Patent and the specific intent to cause, instruct,

direct or require third parties, including its customers, subscribers, users and developers, to use the Accused Instrumentalities of the '731 Patent in a manner that infringes claims 1-3, 14-15, and 17of the '731 Patent. For example, direct infringement is committed by PAN customers and users who operate the Accused Instrumentalities in an infringing manner. The acts of direct infringement include without limitation, purchases and use of NGFW products and associated services, including WildFire, Threat Prevention, and URL Filtering (*see also* Appendix B-1, Finjan's claim chart related to the '731 Patent). WildFire, Threat Prevention, and URL Filtering are licensed software products that PAN encourages its customers to purchase and use together with the NGFWs to infringe the claimed methods and systems of the '731 Patent.  By way of example, PAN's PAN-OS Admin Guide Version 10.0 explains to PAN customers and users that "[t]he following Palo Alto Networks subscriptions unlock certain features or enable the firewall to leverage a Palo Alto Networks cloud-delivered service (or both)."  FINJAN-PAN 363183 at 363245. PAN then explains, "[t]o enable a subscription, you must first Activate Subscription Licenses; once active, most subscription services can use Dynamic Content Updates to provide new and updated functionality to the firewall."  *Id*. PAN then lists the relevant products and services that its customers can use together with the NGFW products, including Threat Prevention, URL Filtering, and WildFire. *Id*. at 363245-246. PAN then provides its customers with step-by-step instructions for activating such subscription licenses. *Id*. at 363248. The same is true for the PAN Cortex XDR and Traps products. PAN's users and customers use Traps together with other accused services, including WildFire, to infringe the claimed methods and systems of the '731 Patent. By way of example, the Traps Endpoint Security Manager Administrator's Guide Version 4.2 explains "[y]ou can integrate WildFire with your Endpoint Security Manager using either of the following two options . . . ." FINJAN-PAN 357341 at 357355. PAN then instructs its customers that, "you must set up the ESM to communicate with Wildfire," after which it provides step-by-step instructions for doing so. *Id*. at 357503-505. At least these acts of direct infringement by PAN's customers and users underlie PAN's inducement.

Such inducing steps include, but are not limited to, advising third parties to use the Accused Instrumentalities of the '731 Patent in an infringing manner through product manuals and other product documentation; providing a mechanism through which third parties may infringe the patent,

1   specifically through the use of the Accused Instrumentalities of the '731 Patent; requiring third

2   parties to agree to its terms and conditions; advertising and promoting the use of the Accused

3   Instrumentalities of the '731 Patent in an infringing manner; and distributing guidelines and

4   instructions to third parties on how to use the Accused Instrumentalities of the '731 Patent in an

5   infringing manner. The materials referenced in the Appendix are materials provided to third parties

6   to use the Accused Instrumentalities of the '731 Patent in a manner that infringes the claims

7   identified above. As further proof of Defendant's inducement of infringement, Finjan identifies the

8   allegations and evidence identified in the Complaint. *See, e.g.,* ECF 112 (Amended Complaint) and

9   attached exhibits.

10          Defendant induces infringement of claims 1-30 of the '926 Patent pursuant to 35 U.S.C. §

11  271(b), by taking active steps to cause infringement of claims 1-30 of the '926 Patent, both with the

12  knowledge of the '926 Patent and the specific intent to cause, instruct, direct or require third parties,

13  including its customers, subscribers, users and developers, to use the Accused Instrumentalities of

14  the '926 Patent in a manner that infringes claims 1-30 of the '926 Patent. For example, direct

15  infringement is committed by PAN customers and users who operate the Accused Instrumentalities

16  in an infringing manner. The acts of direct infringement include without limitation, purchases and

17  use of NGFW products and associated services, including WildFire, Threat Prevention, and URL

18  Filtering (*see also* Appendices C-1 and C-2, Finjan's claim charts related to the '926 Patent).

19  WildFire, Threat Prevention, and URL Filtering are licensed software products that PAN encourages

20  its customers to purchase and use together with the NGFWs to infringe the claimed methods and

21  systems of the '926 Patent.  By way of example, PAN's PAN-OS Admin Guide Version 10.0

22  explains to PAN customers and users that "[t]he following Palo Alto Networks subscriptions unlock

23  certain features or enable the firewall to leverage a Palo Alto Networks cloud-delivered service (or

24  both)."  FINJAN-PAN 363183 at 363245. PAN then explains, "[t]o enable a subscription, you must

25  first Activate Subscription Licenses; once active, most subscription services can use Dynamic

26  Content Updates to provide new and updated functionality to the firewall." *Id*. PAN then lists the

27  relevant products and services that its customers can use together with the NGFW products,

28  including Threat Prevention, URL Filtering, and WildFire. *Id*. at 363245-246. PAN then provides

PLAINTIFF FINJAN LLC'S INITIAL DISCLOSURE OF ASSERTED CLAIMS AND
INFRINGEMENT CONTENTIONS AND DOCUMENT PRODUCTION PURSUANT TO
PATENT LOCAL RULES 3-1 AND 3-2

1    its customers with step-by-step instructions for activating such subscription licenses. *Id*. at 363248.

2    The same is true for the PAN Cortex XDR and Traps products. PAN's users and customers use

3    Traps together with other accused services, including WildFire, to infringe the claimed methods and

4    systems of the '926 Patent. By way of example, the Traps Endpoint Security Manager

5    Administrator's Guide Version 4.2 explains "[y]ou can integrate WildFire with your Endpoint

6    Security Manager using either of the following two options . . . ." FINJAN-PAN 357341 at 357355.

7    PAN then instructs its customers that, "you must set up the ESM to communicate with Wildfire,"

8    after which it provides step-by-step instructions for doing so. *Id*. at 357503-505. At least these acts

9    of direct infringement by PAN's customers and users underlie PAN's inducement.

10        Such inducing steps include, but are not limited to, advising third parties to use the Accused

11   Instrumentalities of the '926 Patent in an infringing manner through product manuals and other

12   product documentation; providing a mechanism through which third parties may infringe the patent,

13   specifically through the use of the Accused Instrumentalities of the '926 Patent; requiring third

14   parties to agree to its terms and conditions; advertising and promoting the use of the Accused

15   Instrumentalities of the '926 Patent in an infringing manner; and distributing guidelines and

16   instructions to third parties on how to use the Accused Instrumentalities of the '926 Patent in an

17   infringing manner. The materials referenced in the Appendix are materials provided to third parties

18   to use the Accused Instrumentalities of the '926 Patent in a manner that infringes the claims

19   identified above. As further proof of Defendant's inducement of infringement, Finjan identifies the

20   allegations and evidence identified in the Complaint. *See, e.g.,* ECF 112 (Amended Complaint) and

21   attached exhibits.

22        Defendant induces infringement of claim 14 of the '633 Patent pursuant to 35 U.S.C. §

23   271(b), by taking active steps to cause infringement of claim 14 of the '633 Patent, both with the

24   knowledge of the '633 Patent and the specific intent to cause, instruct, direct or require third parties,

25   including its customers, subscribers, users and developers, to use the Accused Instrumentalities of

26   the '633 Patent in a manner that infringes claim 14 of the '633 Patent. For example, direct

27   infringement is committed by PAN customers and users who operate the Accused Instrumentalities

28   in an infringing manner. The acts of direct infringement include without limitation, purchases and

use of NGFW products and associated services, including WildFire, Threat Prevention, and URL Filtering (*see also* Appendix D-1, Finjan's claim chart related to the '633 Patent). WildFire, Threat Prevention, and URL Filtering are licensed software products that PAN encourages its customers to purchase and use together with the NGFWs to infringe the claimed methods and systems of the '633 Patent.  By way of example, PAN's PAN-OS Admin Guide Version 10.0 explains to PAN customers and users that "[t]he following Palo Alto Networks subscriptions unlock certain features or enable the firewall to leverage a Palo Alto Networks cloud-delivered service (or both)."  FINJAN-PAN 363183 at 363245. PAN then explains, "[t]o enable a subscription, you must first Activate Subscription Licenses; once active, most subscription services can use Dynamic Content Updates to provide new and updated functionality to the firewall."  *Id*. PAN then lists the relevant products and services that its customers can use together with the NGFW products, including Threat Prevention, URL Filtering, and WildFire. *Id*. at 363245-246. PAN then provides its customers with step-by-step instructions for activating such subscription licenses. *Id*. at 363248. The same is true for the PAN Cortex XDR and Traps products. PAN's users and customers use Traps together with other accused services, including WildFire, to infringe the claimed methods and systems of the '633 Patent. By way of example, the Traps Endpoint Security Manager Administrator's Guide Version 4.2 explains "[y]ou can integrate WildFire with your Endpoint Security Manager using either of the following two options . . . ." FINJAN-PAN 357341 at 357355. PAN then instructs its customers that, "you must set up the ESM to communicate with Wildfire," after which it provides step-by-step instructions for doing so. *Id*. at 357503-505. At least these acts of direct infringement by PAN's customers and users underlie PAN's inducement.

Such inducing steps include, but are not limited to, advising third parties to use the Accused Instrumentalities of the '633 Patent in an infringing manner through product manuals and other product documentation; providing a mechanism through which third parties may infringe the patent, specifically through the use of the Accused Instrumentalities of the '633 Patent; requiring third parties to agree to its terms and conditions; advertising and promoting the use of the Accused Instrumentalities of the '633 Patent in an infringing manner; and distributing guidelines and instructions to third parties on how to use the Accused Instrumentalities of the '633 Patent in an

PLAINTIFF FINJAN LLC'S INITIAL DISCLOSURE OF ASSERTED CLAIMS AND
INFRINGEMENT CONTENTIONS AND DOCUMENT PRODUCTION PURSUANT TO
PATENT LOCAL RULES 3-1 AND 3-2

1  infringing manner. The materials referenced in the Appendix are materials provided to third parties

2  to use the Accused Instrumentalities of the '633 Patent in a manner that infringes the claims

3  identified above. As further proof of Defendant's inducement of infringement, Finjan identifies the

4  allegations and evidence identified in the Complaint. *See, e.g.,* ECF 112 (Amended Complaint) and

5  attached exhibits.

6          Defendant induces infringement of claims 1, 2, 4, 6, 7, and 10 of the '154 Patent pursuant to

7  35 U.S.C. § 271(b), by taking active steps to cause infringement of claims 1, 2, 4, 6, 7, and 10 of the

8  '154 Patent, both with the knowledge of the '154 Patent and the specific intent to cause, instruct,

9  direct or require third parties, including its customers, subscribers, users and developers, to use the

10 Accused Instrumentalities of the '154 Patent in a manner that infringes claims 1, 2, 4, 6, 7, and 10

11 of the '154 Patent. For example, direct infringement is committed by PAN customers and users who

12 operate the Accused Instrumentalities in an infringing manner. The acts of direct infringement

13 include without limitation, purchases and use of NGFW products and associated services, including

14 WildFire, Threat Prevention, and URL Filtering (*see also* Appendices E-1 and E-2, Finjan's claim

15 charts related to the '154 Patent). WildFire, Threat Prevention, and URL Filtering are licensed

16 software products that PAN encourages its customers to purchase and use together with the NGFWs

17 to infringe the claimed methods and systems of the '154 Patent.  By way of example, PAN's PAN-

18 OS Admin Guide Version 10.0 explains to PAN customers and users that "[t]he following Palo Alto

19 Networks subscriptions unlock certain features or enable the firewall to leverage a Palo Alto

20 Networks cloud-delivered service (or both)."  FINJAN-PAN 363183 at 363245. PAN then explains,

21 "[t]o enable a subscription, you must first Activate Subscription Licenses; once active, most

22 subscription services can use Dynamic Content Updates to provide new and updated functionality

23 to the firewall."  *Id*. PAN then lists the relevant products and services that its customers can use

24 together with the NGFW products, including Threat Prevention, URL Filtering, and WildFire. *Id*. at

25 363245-246. PAN then provides its customers with step-by-step instructions for activating such

26 subscription licenses. *Id*. at 363248. The same is true for the PAN Cortex XDR and Traps products.

27 PAN's users and customers use Traps together with other accused services, including WildFire, to

28 infringe the claimed methods and systems of the '154 Patent. By way of example, the Traps

1    Endpoint Security Manager Administrator's Guide Version 4.2 explains "[y]ou can integrate

2    WildFire with your Endpoint Security Manager using either of the following two options . . . ."

3    FINJAN-PAN 357341 at 357355. PAN then instructs its customers that, "you must set up the ESM

4    to communicate with Wildfire," after which it provides step-by-step instructions for doing so. *Id*. at

5    357503-505. At least these acts of direct infringement by PAN's customers and users underlie

6    PAN's inducement.

7          Such inducing steps include, but are not limited to, advising third parties to use the Accused

8    Instrumentalities of the '154 Patent in an infringing manner through product manuals and other

9    product documentation; providing a mechanism through which third parties may infringe the patent,

10   specifically through the use of the Accused Instrumentalities of the '154 Patent; requiring third

11   parties to agree to its terms and conditions; advertising and promoting the use of the Accused

12   Instrumentalities of the '154 Patent in an infringing manner; and distributing guidelines and

13   instructions to third parties on how to use the Accused Instrumentalities of the '154 Patent in an

14   infringing manner. The materials referenced in the Appendix are materials provided to third parties

15   to use the Accused Instrumentalities of the '154 Patent in a manner that infringes the claims

16   identified above. As further proof of Defendant's inducement of infringement, Finjan identifies the

17   allegations and evidence identified in the Complaint. *See, e.g.,* ECF 112 (Amended Complaint) and

18   attached exhibits.

19          Defendant induces infringement of claims 1, 3-8, and 22 of the '408 Patent pursuant to 35

20   U.S.C. § 271(b), by taking active steps to cause infringement of claims 1, 3-8, and 22 of the '408

21   Patent, both with the knowledge of the '408 Patent and the specific intent to cause, instruct, direct

22   or require third parties, including its customers, subscribers, users and developers, to use the

23   Accused Instrumentalities of the '408 Patent in a manner that infringes claims 1, 3-8, and 22 of the

24   '408 Patent. For example, direct infringement is committed by PAN customers and users who

25   operate the Accused Instrumentalities in an infringing manner. The acts of direct infringement

26   include without limitation, purchases and use of NGFW products and associated services, including

27   WildFire, Threat Prevention, and URL Filtering (*see also* Appendix F-1, Finjan's claim chart related

28   to the '408 Patent). WildFire, Threat Prevention, and URL Filtering are licensed software products

PLAINTIFF FINJAN LLC'S INITIAL DISCLOSURE OF ASSERTED CLAIMS AND
INFRINGEMENT CONTENTIONS AND DOCUMENT PRODUCTION PURSUANT TO
PATENT LOCAL RULES 3-1 AND 3-2

that PAN encourages its customers to purchase and use together with the NGFWs to infringe the claimed methods and systems of the '408 Patent.  By way of example, PAN's PAN-OS Admin Guide Version 10.0 explains to PAN customers and users that "[t]he following Palo Alto Networks subscriptions unlock certain features or enable the firewall to leverage a Palo Alto Networks cloud-delivered service (or both)."  FINJAN-PAN 363183 at 363245. PAN then explains, "[t]o enable a subscription, you must first Activate Subscription Licenses; once active, most subscription services can use Dynamic Content Updates to provide new and updated functionality to the firewall."  *Id*. PAN then lists the relevant products and services that its customers can use together with the NGFW products, including Threat Prevention, URL Filtering, and WildFire. *Id*. at 363245-246. PAN then provides its customers with step-by-step instructions for activating such subscription licenses. *Id*. at 363248. The same is true for the PAN Cortex XDR and Traps products. PAN's users and customers use Traps together with other accused services, including WildFire, to infringe the claimed methods and systems of the '408 Patent. By way of example, the Traps Endpoint Security Manager Administrator's Guide Version 4.2 explains "[y]ou can integrate WildFire with your Endpoint Security Manager using either of the following two options . . . ." FINJAN-PAN 357341 at 357355. PAN then instructs its customers that, "you must set up the ESM to communicate with Wildfire," after which it provides step-by-step instructions for doing so. *Id*. at 357503-505. At least these acts of direct infringement by PAN's customers and users underlie PAN's inducement.

Such inducing steps include, but are not limited to, advising third parties to use the Accused Instrumentalities of the '408 Patent in an infringing manner through product manuals and other product documentation; providing a mechanism through which third parties may infringe the patent, specifically through the use of the Accused Instrumentalities of the '408 Patent; requiring third parties to agree to its terms and conditions; advertising and promoting the use of the Accused Instrumentalities of the '408 Patent in an infringing manner; and distributing guidelines and instructions to third parties on how to use the Accused Instrumentalities of the '408 Patent in an infringing manner. The materials referenced in the Appendix are materials provided to third parties to use the Accused Instrumentalities of the '408 Patent in a manner that infringes the claims identified above. As further proof of Defendant's inducement of infringement, Finjan identifies the

1  allegations and evidence identified in the Complaint. *See, e.g.,* ECF 112 (Amended Complaint) and

2  attached exhibits.

3     Defendant induces infringement of claims 3-5, 7, and 10-16 of the '494 Patent pursuant to

4  35 U.S.C. § 271(b), by taking active steps to cause infringement of claims 3-5, 7, and 10-16 of the

5  '494 Patent, both with the knowledge of the '494 Patent and the specific intent to cause, instruct,

6  direct or require third parties, including its customers, subscribers, users and developers, to use the

7  Accused Instrumentalities of the '494 Patent in a manner that infringes claims 3-5, 7, and 10-16 of

8  the '494 Patent. For example, direct infringement is committed by PAN customers and users who

9  operate the Accused Instrumentalities in an infringing manner. The acts of direct infringement

10  include without limitation, purchases and use of NGFW products and associated services, including

11  WildFire, Threat Prevention, and URL Filtering (*see also* Appendix G-1, Finjan's claim chart

12  related to the '494 Patent). WildFire, Threat Prevention, and URL Filtering are licensed software

13  products that PAN encourages its customers to purchase and use together with the NGFWs to

14  infringe the claimed methods and systems of the '494 Patent.  By way of example, PAN's PAN-OS

15  Admin Guide Version 10.0 explains to PAN customers and users that "[t]he following Palo Alto

16  Networks subscriptions unlock certain features or enable the firewall to leverage a Palo Alto

17  Networks cloud-delivered service (or both)."  FINJAN-PAN 363183 at 363245. PAN then explains,

18  "[t]o enable a subscription, you must first Activate Subscription Licenses; once active, most

19  subscription services can use Dynamic Content Updates to provide new and updated functionality

20  to the firewall."  *Id*. PAN then lists the relevant products and services that its customers can use

21  together with the NGFW products, including Threat Prevention, URL Filtering, and WildFire. *Id*. at

22  363245-246. PAN then provides its customers with step-by-step instructions for activating such

23  subscription licenses. *Id*. at 363248. The same is true for the PAN Cortex XDR and Traps products.

24  PAN's users and customers use Traps together with other accused services, including WildFire, to

25  infringe the claimed methods and systems of the '494 Patent. By way of example, the Traps

26  Endpoint Security Manager Administrator's Guide Version 4.2 explains "[y]ou can integrate

27  WildFire with your Endpoint Security Manager using either of the following two options . . . ."

28  FINJAN-PAN 357341 at 357355. PAN then instructs its customers that, "you must set up the ESM

PLAINTIFF FINJAN LLC'S INITIAL DISCLOSURE OF ASSERTED CLAIMS AND
INFRINGEMENT CONTENTIONS AND DOCUMENT PRODUCTION PURSUANT TO
PATENT LOCAL RULES 3-1 AND 3-2

to communicate with Wildfire," after which it provides step-by-step instructions for doing so. *Id*. at 357503-505. At least these acts of direct infringement by PAN's customers and users underlie PAN's inducement.

Such inducing steps include, but are not limited to, advising third parties to use the Accused Instrumentalities of the '494 Patent in an infringing manner through product manuals and other product documentation; providing a mechanism through which third parties may infringe the patent, specifically through the use of the Accused Instrumentalities of the '494 Patent; requiring third parties to agree to its terms and conditions; advertising and promoting the use of the Accused Instrumentalities of the '494 Patent in an infringing manner; and distributing guidelines and instructions to third parties on how to use the Accused Instrumentalities of the '494 Patent in an infringing manner. The materials referenced in the Appendix are materials provided to third parties to use the Accused Instrumentalities of the '494 Patent in a manner that infringes the claims identified above. As further proof of Defendant's inducement of infringement, Finjan identifies the allegations and evidence identified in the Complaint. *See, e.g.,* ECF 112 (Amended Complaint) and attached exhibits.

The above identification is based on the information publicly available to Finjan as of the date of service. Finjan reserves the right to amend, modify, supplement, or narrow these contentions, as appropriate, pursuant to Patent Local Rule 3-6, including providing additional manners of infringement, as it obtains additional information over the course of discovery and in light of the Court's claim construction order.

### E.      Identification Of Elements Present Literally And Present Under The Doctrine Of Equivalents [NDCA P.L.R. 3-1(e)]

The Accused Instrumentalities literally meet each Asserted Claim. In addition, as detailed in the Appendices, Finjan asserts that the Accused Instrumentalities also infringe under the doctrine of equivalents for the Asserted Claims. In the Appendices, Finjan provides an analysis of an application of the Doctrine of Equivalents to various claim elements. Should Defendant contend that any element or limitation of the Asserted Claims is absent in an Accused Instrumentality, Finjan reserves the right to demonstrate that the allegedly missing element or limitation is present in the Accused

PLAINTIFF FINJAN LLC'S INITIAL DISCLOSURE OF ASSERTED CLAIMS AND
INFRINGEMENT CONTENTIONS AND DOCUMENT PRODUCTION PURSUANT TO
PATENT LOCAL RULES 3-1 AND 3-2

Instrumentality under the doctrine of equivalents. Finjan further reserves the right to rely upon the opinions of one or more experts in support of its infringement contentions in accordance with the Court's scheduling order.

The above identification is based on the information publicly available to Finjan as of the date of service. Finjan reserves the right to amend, modify, supplement, or narrow these contentions, as appropriate, pursuant to Patent Local Rule 3-6, including providing additional bases of infringement, and applying the doctrine of equivalents to additional claim elements, as it obtains additional information over the course of discovery and in light of the Court's claim construction order.

**F.    Identification Of Priority Dates [NDCA P.L.R. 3-1(f)]**

Because Patent Local Rule 3-1(f) requires disclosure of the claimed priority date and not the date of conception or reduction to practice, Finjan distinguishes between "priority date" and "invention date." Finjan alleges that the priority dates for each Asserted Patent are as follows:

- U.S. Patent No. 6,804,780: November 8, 1996 (all claims);
- U.S. Patent No. 7,418,731: November 8, 1996 (all claims);
- U.S. Patent No. 7,613,926: November 8, 1996 (all claims);
- U.S. Patent No. 7,647,633: January 29, 1997 (all claims);
- U.S. Patent No. 8,141,154: December 12, 2005 (all claims);
- U.S. Patent No. 8,225,408: August 30, 2004 (all claims);
- U.S. Patent No. 8,677,494: November 8, 1996 (all claims).

Finjan reserves the right to amend, modify, supplement, or narrow these contentions pursuant to Patent Local Rule 3-6.

**G.    Practice Of The Claimed Invention [NDCA P.L.R. 3-1(g)]**

Finjan previously produced and sold Vital Security appliances version 7.0 and later versions ("Vital Security"), which are related to the '731, '780, and '633 Patents.

Finjan also released its FinjanMobile VitalSecurity Browser, which was renamed the FinjanMobile VitalSecurityVPN Browser, and ultimately became the InvinciBull product (collectively, the "FinjanMobile VitalSecurity Browser"). The FinjanMobile VitalSecurity Browser

is related to the '494 and '154 Patents.

Finjan reserves the right to amend, modify, supplement, or narrow these contentions pursuant to Patent Local Rule 3-6.

**H.      Timing of First Infringement and Damages [NDCA P.L.R. 3-1(h)]**

The date on which PAN's infringement first began will be determined through discovery. Finjan provides the following contentions pursuant to Patent Local Rule 3-1(h):

Based on information presently known to Finjan, Finjan asserts that the date of first infringement and the start of the claimed damages for the '780 patent is October 4, 2013.  Finjan asserts that the date of first infringement and the start of claimed damages for the '154 and '731 patents is June 20, 2014.  Finjan asserts that the date of first infringement and the start of claimed damages for the '926, '633, '408, and '494 patents is November 4, 2014.

Based on information presently known to Finjan, Finjan asserts that the end of claimed damages for the '494 patent is January 29, 2017.  Finjan asserts that the end of claimed damages for the '780 and '926 patents is November 6, 2017.  Finjan asserts that the end of the claimed damages for the '731 patent is April 27, 2019.  Finjan asserts that the end of claimed damages for the '633 patent is November 8, 2019.  Finjan asserts that the end of claimed damages for the '408 patent is May 27, 2021.  Finjan asserts that the end of claimed damages for the '154 patent is December 12, 2025.

The above identification is based on information available to Finjan as of the date of service. Finjan reserves the right to amend, modify, supplement, or narrow these contentions pursuant to Patent Local Rule 3-6.

**I.      Willful Infringement [NDCA P.L.R. 3-1(i)]**

Defendant has been well aware of Finjan's patents, including the Asserted Patents, and has continued its infringing activity, despite this knowledge, for years.  PAN has willfully infringed at least the '780 Patent since at least October 2013, when Finjan approached PAN regarding infringement and provided PAN with a claim chart of how a representative product infringed the '780 Patent.  PAN has willfully infringed the '154 Patent and '731 Patent since at least June 2014, when Finjan approached PAN regarding infringement and offered to provide a confidential claim

PLAINTIFF FINJAN LLC'S INITIAL DISCLOSURE OF ASSERTED CLAIMS AND
INFRINGEMENT CONTENTIONS AND DOCUMENT PRODUCTION PURSUANT TO
PATENT LOCAL RULES 3-1 AND 3-2

1  chart if PAN would sign a non-disclosure agreement.  PAN has willfully infringed the '926, '633,

2  '408, and '494 Patents since at least the time it was served with the Complaint.

3       Despite PAN's knowledge of the Asserted Patents by the foregoing notice of and receipt of

4  claim charts regarding the Asserted Patents as well as receipt of Finjan's Complaint, PAN continues

5  to proceed willfully, wantonly, and deliberately with its infringing conduct.  It refused to sign a non-

6  disclosure agreement prior to this litigation to receive certain claim charts, and refused to engage in

7  good faith negotiations with Finjan for more than a year between the time Finjan approached PAN,

8  in October 2013, and when Finjan filed this complaint.

9       At all times when PAN was aware of the Asserted Patents, PAN undertook no efforts to

10  design its products/services around the Asserted Patents to avoid infringement, despite PAN's

11  knowledge and understanding that its products/services infringe these patents.  PAN proceeded with

12  the infringing conduct despite knowledge of the Asserted Patents.

13       PAN proceeded in the face of an unjustifiably high risk that it was infringing valid and

14  enforceable claims of the Asserted Patents.

15       PAN cannot formulate a credible defense to infringement.  Because PAN is very familiar

16  with the features and operation of the Accused Products and PAN's other products/services, PAN

17  is aware that each and every element of each Asserted Claim of the Asserted Patents is present in

18  the Accused Products and PAN's other products/services.  Given the facts and circumstances

19  available prior to and during PAN's infringing actions, a reasonable person in PAN's position would

20  have appreciated a high likelihood that acting in PAN's manner would infringe the Asserted Patents.

21  Furthermore, PAN has known or should have known that its actions constitute an unjustifiably high

22  risk of infringing the Asserted Patents, which are valid and enforceable.

23       In addition to the correspondence described above, PAN has had notice of its infringement

24  since at least as early as November 4, 2014, when Finjan filed its Complaint in this action.  Despite

25  this notice, PAN has continued its infringing activity, and has done so willfully.  In addition, PAN's

26  purported defenses have been rejected repeatedly by the PTAB, where PAN failed to invalidate any

27  Finjan Asserted Patent. Despite filing 13 separate IPR petitions challenging 198 claims across 10

28  patents, PAN was able to invalidate only 3 claims in 1 patent.  Contrary to PAN's goal, the IPR

PLAINTIFF FINJAN LLC'S INITIAL DISCLOSURE OF ASSERTED CLAIMS AND
INFRINGEMENT CONTENTIONS AND DOCUMENT PRODUCTION PURSUANT TO
PATENT LOCAL RULES 3-1 AND 3-2

rulings have demonstrated that Finjan's patents truly are valid and claim real inventions. Thus, PAN has continued to infringe with full knowledge that the Asserted Patents are valid and enforceable. That infringement has been ongoing for over five years, where PAN successfully had this case stayed, all the while PAN continued its infringing activities and improperly profited from Finjan's technologies.

Thus, despite Finjan's best efforts to inform PAN that its products infringe Finjan's patents and to engage PAN in good-faith licensing discussions, PAN refused to take a license to Finjan's patents. As shown above, PAN knew that it infringed the Asserted Patents well before Finjan filed this action, and PAN acted egregiously and willfully in that it continued to infringe Finjan's patents and, on information and belief, took no action to avoid infringement. Instead, and rather than making any attempt to avoid further and continued infringement of the Asserted Patents as it developed new versions of the Accused Products, PAN continued to develop additional technologies and products that infringe the Asserted Patents. As such, PAN has continued to willfully, wantonly, and deliberately engage in continued and additional acts of infringement of the Asserted Patents.

Finjan further incorporates by reference its allegations of willfulness set forth in its Complaint and Amended Complaint. (ECF 1; ECF 112.)

## II.    PATENT L.R. 3-2: DOCUMENT PRODUCTION ACCOMPANYING DISCLOSURE

### A.    Disclosure, Transfer, Sale, Offers To Sell, Public Use Of Claimed Invention Prior To Application Date [NDCA P.L.R. 3-2(a)]

Based upon information presently available or known and subject to the limitations and reservations set forth above, Finjan is not aware of any responsive, relevant, non-privileged, non-immune documents that correspond to the documents described in Patent Local Rule 3-2(a). Finjan reserves the right to supplement this disclosure if necessary.

### B.    Conception And Reduction To Practice [NDCA P.L.R. 3-2(b)]

Based upon information presently available or known and subject to the limitations and reservations set forth above, pursuant to Patent Local Rule 3-2(b), Finjan refers Defendant to the documents produced in conjunction with service of this disclosure and identified by the following production numbers: FINJAN-PAN 000019-FINJAN-PAN 000175; FINJAN-PAN 000739-

FINJAN-PAN 000949; FINJAN-PAN 001300-FINJAN-PAN 001590; FINJAN-PAN 001617-FINJAN-PAN 001925; FINJAN-PAN 001942-FINJAN-PAN 002207; FINJAN-PAN 002230-FINJAN-PAN 003296; FINJAN-PAN 003325-FINJAN-PAN 004272; and FINJAN-PAN 366614-FINJAN-PAN 366622. Finjan may also rely on any deposition testimony from the inventors. Finjan reserves the right to supplement this disclosure if it becomes aware of any additional relevant information.

### C.    File Histories [NDCA P.L.R. 3-2(c)]

Based upon information presently available or known and subject to the limitations and reservations set forth above, pursuant to Patent Local Rule 3-2(c), Finjan refers Defendant to the file histories previously produced and identified by the following production numbers: FINJAN-PAN 000019-FINJAN-PAN 000175; FINJAN-PAN 000739-FINJAN-PAN 000949; FINJAN-PAN 001300-FINJAN-PAN 001590; FINJAN-PAN 001617-FINJAN-PAN 001925; FINJAN-PAN 001942-FINJAN-PAN 002207; FINJAN-PAN 002230-FINJAN-PAN 003296; and FINJAN-PAN 003325-FINJAN-PAN 004272 and FINJAN-PAN 366623-FINJAN-PAN 366890. Finjan reserves the right to supplement this disclosure if it becomes aware of any additional relevant information.

### D.    Ownership [NDCA P.L.R. 3-2(d)]

Based upon information presently available or known and subject to the limitations and reservations set forth above, pursuant to Patent Local Rule 3-2(d), Finjan refers Defendant to the assignment records produced in conjunction with the service of this disclosure and identified by the following production numbers: FINJAN-PAN 366891-FINJAN-PAN 367150. Finjan reserves the right to supplement this disclosure if it becomes aware of any additional relevant information.

### E.    Practice Of The Invention [NDCA P.L.R. 3-2(e)]

Based upon information presently available or known and subject to the limitations and reservations set forth above, pursuant to Patent Local Rule 3-2(e), Finjan refers Defendant to the documents produced in conjunction with the service of this disclosure and identified by the following production numbers: FINJAN-PAN 367151-FINJAN-PAN 372299. Finjan reserves the right to supplement this disclosure if it becomes aware of any additional relevant information.

**F.      Transfer of Interest Agreements [NDCA P.L.R. 3-2(f)]**

Based upon information presently available or known and subject to the limitations and reservations set forth above, pursuant to Patent Local Rule 3-2(f), Finjan refers Defendant to the documents produced in conjunction with the service of this disclosure and identified by the following production numbers: FINJAN-PAN 107114-FINJAN-PAN 107158 and FINJAN-PAN 110151-FINJAN-PAN 110190.  Finjan reserves the right to supplement this disclosure if it becomes aware of any additional relevant information.

**G.      Comparable License Agreements [NDCA P.L.R. 3-2(g)]**

Based upon information presently available or known and subject to the limitations and reservations set forth above, pursuant to Patent Local Rule 3-2(g), Finjan refers Defendant to the documents produced in conjunction with the service of this disclosure and identified by the following production numbers, which includes Finjan's license agreements, including agreements that are comparable to a license that would result from a hypothetical reasonably royalty negotiation: FINJAN-PAN  093617-FINJAN-PAN  093635;  FINJAN-PAN  107271-FINJAN-PAN  107309; FINJAN-PAN  109041-FINJAN-PAN  109054;  FINJAN-PAN  110608-FINJAN-PAN  110644; FINJAN-PAN 129012-FINJAN-PAN 129097; and FINJAN-PAN 372300-FINJAN-PAN 372694. Finjan reserves the right to supplement this disclosure if it becomes aware of any additional relevant information.

**H.      Other Agreements [NDCA P.L.R. 3-2(h)]**

Based upon information presently available or known and subject to the limitations and reservations set forth above, pursuant to Patent Local Rule 3-2(h), Finjan refers Defendant to the documents produced in conjunction with the service of this disclosure and identified by the following production numbers: FINJAN-PAN 372695-FINJAN-PAN 374638.  Finjan reserves the right to supplement this disclosure if it becomes aware of any additional relevant information.

**I.      Marking [NDCA P.L.R. 3-2(i)]**

Based upon information presently available or known and subject to the limitations and reservations set forth above, pursuant to Patent Local Rule 3-2(i), Finjan refers Defendant to the documents produced in conjunction with the service of this disclosure and identified by the

following production numbers: FINJAN-PAN 374639-FINJAN-PAN 379783. Finjan also identifies physical copies of the Vital Security Appliance, FinjanMobile VitalSecurity Browser, and source code for the Vital Security Appliance and FinjanMobile VitalSecurity Browser. Source code and physical copies of the Vital Security Appliance and FinjanMobile VitalSecurity Browser are available for inspection upon request. Finjan reserves the right to supplement this disclosure if it becomes aware of any additional relevant information.

### J.    F/RAND [NDCA P.L.R. 3-2(j)]

Based upon information presently available or known and subject to the limitations and reservations set forth above, Finjan is not aware of any responsive, relevant, non-privileged documents that correspond to the documents described in Patent Local Rule 3-2(j). Finjan reserves the right to supplement this disclosure if it becomes aware of additional information.

Dated: April 1, 2021                    Respectfully Submitted,

By:    */s/ Roger A. Denning*
Juanita R. Brooks (CA SBN 75934)
brooks@fr.com
Roger A. Denning (CA SBN 228998)
denning@fr.com
Frank J. Albert (CA SBN 247741)
albert@fr.com
K. Nicole Williams (CA SBN 291900)
nwilliams@fr.com
Jared A. Smith (CA SBN 306576)
jasmith@fr.com
Tucker N. Terhufen (CA SBN 311038)
terhufen@fr.com
FISH & RICHARDSON P.C.
12860 El Camino Real, Ste. 400
San Diego, CA 92130
Telephone: (858) 678-5070 / Fax: (858) 678-5099

Aamir Kazi (*Pro Hac Vice*)
kazi@fr.com
Lawrence Jarvis (*Pro Hac Vice*)
jarvis@fr.com
FISH & RICHARDSON P.C.
1180 Peachtree St. NE, 21st floor
Atlanta, GA  30309
Telephone: (404) 892-5005 / Fax: (404) 892-5002

Phillip W. Goter (*Pro Hac Vice*)
goter@fr.com
FISH & RICHARDSON P.C.
3200 RBC Plaza, 60 South Sixth Street
Minneapolis, MN  55402
Telephone: (612) 335-5070 / Fax: (612) 288-9696

Susan E. Morrison (*Pro Hac Vice*)
morrison@fr.com
FISH & RICHARDSON P.C.
222 Delaware Ave., 17th Floor
P.O. Box 1114
Wilmington, DE  19801
Telephone: (302) 652-5070 / Fax: (302) 652-0607

Tracea Rice (*Pro Hac Vice*)
trice@fr.com
FISH & RICHARDSON P.C.
1000 Maine Ave. Ste. 1000
Washington, DC 20024
Telephone: (202) 783-5070 / Fax: (202) 783-2331

Attorneys for Plaintiff FINJAN LLC

PLAINTIFF FINJAN LLC'S INITIAL DISCLOSURE OF ASSERTED CLAIMS AND
INFRINGEMENT CONTENTIONS AND DOCUMENT PRODUCTION PURSUANT TO
PATENT LOCAL RULES 3-1 AND 3-2

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 1, 2021, a true and correct copy of the above and foregoing

document has been served on the following counsel via electronic mail at the e-mail address(es)

set forth below:

Michael A. Jacobs (CA SBN 111664)
MJacobs@mofo.com
Matthew A. Chivvis (CA SBN 251325)
MChivvis@mofo.com
Diek O. Van Nort (CA SBN 273823)
DVanNort@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Telephone: (415) 268-7000/Fax: (415) 268-7522

Rudy Y. Kim (CA SBN 99426)
RudyKim@mofo.com
Colette Reiner Mayer (CA SBN 263630)
CRMayer@mofo.com
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, California 94304-1018
Telephone: (650) 813-5600/Fax: (650) 494-0792

Eric W. Lin (*Pro Hac Vice*)
Elin@mofo.com
Michael J. DeStefano (*Pro Hac Vice*)
Mdestefano@mofo.com
MORRISON & FOERSTER LLP
250 West 55th Street
New York, New York 10019-9601
Telephone: (212) 468-8000/Fax: (212) 468-7900

**SERVICE EMAIL**: MoFo-PAN-Finjan@mofo.com

Attorneys for Defendant
PALO ALTO NETWORKS, INC.

*/s/ Kristen Coolidge*
Kristen Coolidge
Legal Secretary
Fish & Richardson P.C.
12860 El Camino Real, Suite 400
San Diego, CA  92130
Telephone: 858-678-4302

PLAINTIFF FINJAN LLC'S INITIAL DISCLOSURE OF ASSERTED CLAIMS AND
INFRINGEMENT CONTENTIONS AND DOCUMENT PRODUCTION PURSUANT TO
PATENT LOCAL RULES 3-1 AND 3-2