MICHAEL A. JACOBS (CA SBN 111664)
MJacobs@mofo.com
MATTHEW A. CHIVVIS (CA SBN 251325)
MChivvis@mofo.com
DIEK O. VAN NORT (CA SBN 273823)
DVanNort@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Telephone: (415) 268-7000
Facsimile: (415) 268-7522

RUDY Y. KIM (CA SBN 199426)
RudyKim@mofo.com
COLETTE REINER MAYER (CA SBN 263630)
CRMayer@mofo.com
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, California 94304-1018
Telephone: (650) 813-5600
Facsimile: (650) 494-0792

ROSE S. LEE (CA SBN 294658)
RoseLee@mofo.com
MORRISON & FOERSTER LLP
707 Wilshire Boulevard, Suite 6000
Los Angeles, California 90017-3543
Telephone: (213) 892-5200
Facsimile: (213) 892-5454

ERIC W. LIN (*Pro Hac Vice*)
Elin@mofo.com
MICHAEL J. DESTEFANO (*Pro Hac Vice*)
Mdestefano@mofo.com
MORRISON & FOERSTER LLP
250 West 55th Street
New York, New York 10019-9601
Telephone: (212) 468-8000
Facsimile: (212) 468-7900

Attorneys for Defendant
PALO ALTO NETWORKS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| FINJAN LLC,<br><br>                Plaintiff,<br><br>        v.<br><br>PALO ALTO NETWORKS, INC.,<br><br>                Defendant. | Case No.    4:14-CV-04908-PJH<br><br>**DEFENDANT PALO ALTO NETWORKS, INC.'S REPLY IN SUPPORT OF MOTION TO STRIKE FINJAN LLC'S INFRINGEMENT CONTENTIONS**<br><br>Date:      July 22, 2021<br>Time:      1:30 pm<br>Ctrm:    3, 3rd Floor<br>Judge:    Honorable Phyllis J. Hamilton |

# TABLE OF CONTENTS

**Page**

I.   Introduction ................................................................................................................. 1

II.  Argument .................................................................................................................... 2

    A.   Finjan Had Sufficient Time to Review All Relevant Source Code and Technical Documents ................................................................................................ 2

    B.   Finjan Does Not Argue That It Is Unable to Provide Pinpoint Source Code Citations . 3

    C.   Finjan Must Provide Pinpoint Citations to Source Code ................................. 4

    D.   Finjan Repeatedly Misrepresents the Law ...................................................... 5

    E.   Finjan's General Citations to Source Code Filenames Are Insufficient ......................... 7

    F.   Finjan's Screenshots and Generic Statements Do Not Provide Notice of Its Infringement Theories ................................................................................... 8

        1.   Finjan's Infringement Contentions Are Voluminous in Pages But Empty in the Required Substance .......................................................... 8

        2.   The Examples in Finjan's Opposition Confirm that Finjan's Infringement Contentions Are Deficient ................................................ 9

    G.   Finjan's Doctrine of Equivalents Contentions Are Inadequate.................................. 12

    H.   Finjan's Failure to Provide Sufficient Infringement Contentions Prevents PAN from Providing More Detailed Invalidity Contentions ........................................................ 12

III. Conclusion ............................................................................................................... 13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bender v. Maxim Integrated Products, Inc.*,
   No. C09-01152 SI, 2010 WL 1135762 (N.D. Cal. Mar. 22, 2010) ...........................................8

*CSR Tech. Inc. v. Freescale Semiconductor*,
   No. C-12-02619 RS JSC, 2013 WL 503077 (N.D. Cal. Feb. 8, 2013)....................................12

*Diagnostic Sys. Corp. v. Symantec Corp.*,
   No. 06-cv-1211-DOC-(ANX), 2009 WL 1607717 (C.D. Cal. Jun. 5, 2009) ...........................6

*Droplets, Inc. v. Yahoo! Inc.*,
   No. 4:12-cv-03733-JST (KAW), 2020 WL 4045211 (N.D. Cal. May 6, 2020)...................5, 6

*Finjan, Inc. v. Check Point Software Techs., Inc.*,
   No. 18-cv-02621-WHO, 2019 WL 955000 (N.D. Cal. Feb. 27, 2019) ........................... *passim*

*Finjan, Inc. v. Proofpoint, Inc.*,
   No. 13-CV-05808-HSG, 2015 WL 1517920 (N.D. Cal. Apr. 2, 2015)................................3, 8

*Finjan, Inc. v. Proofpoint, Inc.*,
   No. 13-cv-05808-HSG, 2015 WL 9023166 (N.D. Cal. Dec. 16, 2015) ...................................6

*Finjan, Inc. v. SonicWall, Inc.*,
   No. 17-cv-04467-BLF (VKD), 2019 WL 2077849 (N.D. Cal. May 10, 2019).......................10

*Finjan, Inc. v. Sophos, Inc.*,
   No. 14-cv-01197-WHO, 2015 WL 5012679 (N.D. Cal. Aug. 24, 2015) ..................................7

*Finjan, Inc. v. Zscaler, Inc.*,
   No. 17-CV-06946-JST, 2018 WL 4181906 (N.D. Cal. Aug. 31, 2018),
   *enforcement granted*, No. 17-CV-06946-JST, 2019 WL 7589210 (N.D. Cal.
   Feb. 5, 2019) ...................................................................................................................11, 12

*Kinglite Holdings Inc. v. Micro-Star International Co.*,
   No. CV 14-03009 JVS (PJWx), 2016 WL 6762573 (C.D. Cal. June 15, 2016).......................4

*Oracle America, Inc. v. Google, Inc.*,
   No. C10-03561 WHA, 2011 WL 4479305 (N.D. Cal. Sept. 26, 2011)....................................5

*Tech. Licensing Corp. v. Grass Valley USA, Inc.*,
   No. 3:12–cv–06060–PSG, 2014 WL 3752108 (N.D. Cal. July 30, 2014)................................4

*Treehouse Avatar LLC v. Valve Corp.*,
   No. C17-1860-RAJ, 2019 WL 917403 (W.D. Wash. Feb. 25, 2019)...................................4-5

## <u>TABLE OF AUTHORITIES (CONT'D)</u>

**Page(s)**

*Vasudevan Software, Inc. v. Int'l Bus. Machines Corp.*,
No. C09-05897 RS (HRL), 2011 WL 940263 (N.D. Cal. Feb. 18, 2011) ..........................4, 5, 6

**Other Authorities**

Patent Local Rule 3-1 ................................................................................................................2, 4

Patent Local Rule 3-1(c) ..............................................................................................................4

Patent Local Rule 3-4 ...................................................................................................................3

1

## I.      INTRODUCTION

2       This is a software patent infringement case.  Source code is what underlies PAN's

3   products and defines how the accused products work.  Yet Finjan steadfastly refuses to specify

4   exactly what it believes in PAN's source code (and by extension, PAN's products) infringes the

5   asserted patents.  Finjan's mere identification of hundreds of source code files is insufficient.

6   Many source code files contain hundreds to tens of thousands lines of code encompassing dozens

7   of functions.  And Finjan cites to the same source code files for different limitations under

8   different infringement theories.  Without pinpoint citations, PAN does not have reasonable notice

9   of Finjan's infringement theories, and Finjan can alter its infringement theories at any time

10  without providing PAN notice.  This shifting sand approach is precisely what the Patent Local

11  Rules prohibit, and it is prejudicing PAN's ability to prepare its defense.

12      Finjan repeatedly boasts that its infringement contentions total over 2,100 pages.  But

13  those voluminous contentions do not give PAN reasonable notice of Finjan's infringement

14  theories.  Rather, they are designed to obscure what is actually at issue in a veritable haystack of

15  paper.  Finjan's Opposition is another such smoke screen.  Finjan spends most of its 25-page-

16  Opposition excusing its failure to particularly identify its infringement theories by (1) citing to

17  examples that purportedly demonstrate its contentions are sufficient but actually confirm their

18  failings and (2) blaming PAN.  Notably absent, however, is any argument that it is impossible (or

19  even difficult) for Finjan to provide pinpoint citations.  Nor does Finjan state that its experts will

20  forgo pinpoint citations when it comes time to present their infringement theories.  Finjan also

21  does not claim that PAN has not provided source code.  It rather admits that PAN has provided

22  relevant source code: 1,179,116 files to be exact.  (Opp. at 17:9-10.)  And indeed Finjan liberally

23  identifies allegedly relevant filenames but refuses to tell PAN where exactly in those files and

24  their millions of lines of code PAN allegedly infringes.  The only explanation for Finjan's

25  persistent refusal to provide pinpoint citations is that Finjan intends to play "hide the ball" with

26  PAN and to only reveal its specific—or more likely, lack of—infringement theories at the last

27  minute.

28      At the March Case Management Conference, PAN requested that the Court order Finjan

1    to provide pinpoint citations to source code, citing Finjan's pattern in prior litigations of

2    providing deficient infringement contentions.  (Dkt. No. 104 at 23-25.)  Indeed, in at least seven

3    cases, Finjan has forced defendants to move the courts to obtain the clarity required by the Patent

4    Local Rules.  (*See* Motion at 2, n.1.)  Contrary to Finjan's characterization, the Court did not deny

5    PAN's request on the merits, but rather stated that it was premature to order anything on the

6    infringement contentions before they were served.  (Motion Decl. ¶ 21.)  The Court made this

7    decision after Finjan promised that its infringement contentions would "provide PAN with

8    sufficient specificity to comply with Patent Local Rule 3-1."  (Dkt. No. 104 at 27.)  As shown in

9    PAN's Motion and below, Finjan has not lived up to its promise.

10   **II.    ARGUMENT**

11          **A.    Finjan Had Sufficient Time to Review All Relevant Source Code and
12                 Technical Documents**

13          Finjan has access to all relevant source code.  Despite Finjan's quibbles about PAN's

14   production, it in fact admits that "PAN had made some of the relevant source code available."

15   (Opp. at 20:19-20.)  Indeed, before the stay, PAN produced complete code of all versions of the

16   accused products: PAN-OS 3.1, 4.1, and 6.1 and Traps 3.0 and 3.1.3. (Opp. at 9:1-3.)  These files

17   total tens of millions of lines of code.  PAN also provided Finjan with tools for code review:

18   Windows, Linux, emacs, and UltraEdit.  (Van Nort Decl. Ex. 21.)  PAN even produced a Rule

19   30(b)(6) witness whom Finjan deposed regarding the organization of PAN's source code and the

20   identities and organization of source code components and modules.  (Dkt. No. 104 at 19:1.)

21   PAN also produced over 100,000 pages of documents prior to the stay.  (Van Nort Decl. Ex. 22.)

22   After the Court lifted the stay, PAN diligently complied with Finjan's discovery requests.  PAN

23   renewed Finjan's access to the previously produced source code.  PAN also produced complete

24   versions of PAN-OS 7.0, 8.0, 9.0 and 10.0 (Motion Ex. 14), Traps 4.0, 5.0, 6.0 and 7.0 (Van Nort

25   Decl. Ex. 23), and ▮▮▮▮▮▮▮▮ source code (Opp. Ex. W)—even though PAN maintains that

26   those newer versions of source code are irrelevant to this case because they were released after

27

28

Finjan filed this lawsuit.  PAN has produced all requested versions of its source code.[1]

Finjan has had plenty of time to review all relevant source code and technical documents. The Patent Local Rules require the patentee to include in its infringement contentions "all facts known to it, including those discovered in [its] pre-filing inquiry." *Finjan, Inc. v. Proofpoint, Inc.*, No. 13-CV-05808-HSG, 2015 WL 1517920, at *2 (N.D. Cal. Apr. 2, 2015) (quoting *Renesas Tech. Corp. v. Nanya Tech. Corp.*, No. C03-05709JFHRL, 2004 WL 2600466, at *2 (N.D. Cal. Nov. 10, 2004)).  Finjan has had access to relevant source code for over twelve months.  It had access to technical documents about PAN's products since before the stay.  In fact, when the Court stayed the case, Finjan was only two weeks away from its deadline for serving infringement contentions.  (Dkt. No. 104 at 19:1-2.)  And Finjan has had more than five years during the stay to revise its strategy in light of other cases and the IPRs.  Yet Finjan's infringement contentions fail to provide PAN with any notice of its infringement theories.

**B.    Finjan Does Not Argue That It Is Unable to Provide Pinpoint Source Code Citations**

Finjan does not argue that it is infeasible for it to provide pinpoint citations.  Finjan claims that "PAN also has not produced the core technical documents that would enable Finjan to narrow its identification of source code files to specific functions, lines, modules, or the like."  (Opp. at 16:27-17:1.)  But Finjan does not explain what these "core technical documents" are, or provide any case law to illuminate this issue.  Nor does Finjan cite a case that holds that until such documents are produced, no pinpoint citations are required.

Even if there were such "core technical documents," Finjan did not complain about them until far too late.  Notably, as Finjan admits, it did not identify any purported deficiencies in PAN's document production until March 22 (Opp. at 8:5-6), merely nine days before its infringement contentions were due.  And Finjan had a 30(b)(6) deposition on the organization of

---

[1] Finjan's quibbles about PAN's production omit that the Patent Local Rules do not require the production of source code—certainly not any and all versions of the source code—until after the infringement contentions are served.  Patent L. R. 3-4.  Finjan in fact acknowledges that.  (Opp. at 18:10-17.)

1    the source code years before this deadline.  (Dkt. No. 104 at 19:1.)

2           Judge Orrick dismissed a similar argument of Finjan's in *Check Point*: "If the technical

3    documents are critical for Finjan to provide adequate pinpoint source code citations, it should not

4    have waited so long to request them."  *Finjan, Inc. v. Check Point Software Techs., Inc.*, No. 18-

5    cv-02621-WHO, 2019 WL 955000, at *7 (N.D. Cal. Feb. 27, 2019).  Judge Orrick also found that

6    "Finjan had raised the same argument in other cases in this district to excuse its failure to serve

7    compliant infringement contentions" and "[t]his raises doubts as to whether the requested

8    technical documents would allow Finjan to provide adequate source code citations."  *Id.*

9           The fact that Finjan has access to relevant source code and has the ability to provide

10   pinpoint citations should conclude this dispute.  In *Kinglite Holdings Inc. v. Micro-Star*

11   *International Co.*, the patentee, just like Finjan, "does not contend it does not have access to the

12   relevant source code"; it also "does not argue that it is unable, for any reason, to provide pinpoint

13   source code citations."  No. CV 14-03009 JVS (PJWx), 2016 WL 6762573, at *2 (C.D. Cal. June

14   15, 2016).  The Court found "that should be the end of the inquiry into whether [patentee] is

15   required to disclose those citations in its infringement contentions."  *Id.* at *3 (ordering patentee

16   to "serve amended infringement contentions with specific reference to pinpoint source code

17   citations").

18           **C.     Finjan Must Provide Pinpoint Citations to Source Code**

19           Patent Local Rule 3-1 requires Finjan to identify "specifically where and how each

20   limitation of each asserted claim is found within each Accused Instrumentality."  Patent L. R. 3-

21   1(c).  Finjan cannot deny that source code citations are the only effective means of precisely

22   identifying where in each accused product the asserted limitations are located.  After all, PAN's

23   products are defined by source code—not user manuals, marketing materials, or testing results.

24   In fact, Finjan has itself previously admitted that several of the patents at issue are directed to

25   specific elements that must be identified through source code.  (Van Nort Decl. Ex. 24

26   (Proofpoint Hearing Tr.).)

27           Because source code is the best source of information regarding how software products

28   work, courts routinely require pinpoint citations to source code once the code is available.  *See,*

1    *e.g.*, *Vasudevan Software, Inc. v. Int'l Bus. Machines Corp.*, No. C09-05897 RS (HRL), 2011 WL

2    940263, at \*7 (N.D. Cal. Feb. 18, 2011); *Tech. Licensing Corp. v. Grass Valley USA, Inc.*, No.

3    3:12–cv–06060–PSG, 2014 WL 3752108, at \*2, n.14 (N.D. Cal. July 30, 2014).

4           This district and its Patent Local Rules require pinpoint citations to source code.  The

5    Western District of Washington recently noted that "[o]ther jurisdictions, such as **the Northern**

6    **District of California**, Central District of California, and Eastern District of Texas, generally hold

7    that in software cases, once source code has been provided to plaintiffs, they must supplement

8    their infringement contentions with pinpoint source code citations." *Treehouse Avatar LLC v.*

9    *Valve Corp.*, No. C17-1860-RAJ, 2019 WL 917403, at \*2 (W.D. Wash. Feb. 25, 2019) (emphasis

10   added).

11          Finjan incorrectly argues that pinpoint citations are not required because the Patent Local

12   Rules require production of source code after infringement contentions are served.  Finjan ignores

13   that pinpoint citations are not required "only when the plaintiff did not yet have the source code

14   information." *Vasudevan*, 2011 WL 940263, at \*7 (internal citations omitted).  But "[o]nce

15   source code has been provided to the plaintiffs, however, courts have required plaintiffs to

16   supplement their infringement charges with pinpoint citations." *Id.*  (internal citations omitted).

17   Finjan has had relevant source code for over twelve months.  It now has access to all versions of

18   PAN's source code.  Finjan cannot simply make vague references to user manuals and marketing

19   materials and refuse to specifically cite to the best source of information that defines the

20   operations of the accused products: source code.  *See Droplets, Inc. v. Yahoo! Inc.*, No. 4:12-cv-

21   03733-JST (KAW), 2020 WL 4045211, at \*4 (N.D. Cal. May 6, 2020) (finding that the

22   "exemplar source code [did] not clearly identify which portion contains the interactive link" and

23   "[t]his lack of specificity is not cured by written explanations of how the interactive link works or

24   screenshots that show how the accused instrumentalities … appear to the end user.").

25          **D.      Finjan Repeatedly Misrepresents the Law**

26          Perhaps knowing that the case law is not on its side, Finjan resorts to mischaracterization

27   of the law and PAN's arguments.  First, its reliance on *Oracle America, Inc. v. Google, Inc.*, No.

28   C10-03561 WHA, 2011 WL 4479305 (N.D. Cal. Sept. 26, 2011) is inapposite.  (Opp. at 18: 24-

27.)  That decision did not address whether pinpoint citations to source code are required in infringement contentions, but rather whether the court should strike a source code citation from an "expert report … that w[as] not disclosed in [the patentee's] infringement contentions." *Oracle*, 2011 WL 4479305, at *3-4.  And in fact the patentee in *Oracle v. Google* did specifically cite to source code function names in its infringement contentions.  *Id.* at *3 ("[T]he DvmDex.h file contains the source code for the dvmDexSetResolvedMethod function, which serves to store the resolved symbolic reference.").

Second, Finjan's attack on PAN's citation to *Droplets* is a straw man.  (Opp. at 19:20-20:2.)  PAN is not asking Finjan "to cite to every bit of source code" as Finjan falsely claims.  (*Id.* at 19:21-22.)  Rather, because Finjan has access to all the relevant source code and has referenced it in it infringement contentions, PAN is requesting that Finjan "provide pinpoint citations" to the source code, as the *Droplets* court ordered the patentee to do.  *Droplets,* 2020 WL 4045211, at *4.

Third, PAN's attempt to distinguish *Check Point* and *FireEye* fails.  Finjan does not deny that in both cases, the court rejected Finjan's reliance on *Finjan, Inc. v. Proofpoint, Inc.,* No. 13-cv-05808-HSG, 2015 WL 9023166 (N.D. Cal. Dec. 16, 2015) ("*Proofpoint II*") to justify its refusal to provide pinpoint citations, just as Finjan is attempting to do in this case.  And specifically, Judge Orrick in *Check Point* ordered Finjan to provide pinpoint citations in its Narrowing Order after considering Finjan's same "gambit" of "serv[ing] contentions that cite vaguely to entire products, functions, marketing terms, and screenshots, without ***specifically*** saying which instrumentalities are accused or how they are alleged to infringe."  (Motion Ex. 19 at 4 (emphasis in original).)  In this present case, Finjan is playing the same gambit.

Fourth, Finjan appears to have created its own rule that if all versions of source code for all products are not produced at the same time, pinpoint citations are not required for any version of any product.  (Opp. at 20:23-21:8.)  Even setting aside the fact that PAN produced all relevant source code to Finjan before its contentions were due, Finjan's cases do not support such an argument.  In *Vasudevan*, the court ordered the patentee to provide pinpoint citations after the accused infringer "made its source code available."  *Vasudevan*, 2011 WL 940263, at *6.  Contrary to Finjan's assertion, there was no discussion of whether the patentee provided "all

1 relevant source code." (Opp. at 20:25-26.) Similarly, *Diagnostic Systems* did not discuss

2 whether "all relevant source code" was required. *Diagnostic Sys. Corp. v. Symantec Corp.*, No.

3 06-cv-1211-DOC-(ANX), 2009 WL 1607717, at *6 (C.D. Cal. Jun. 5, 2009). In any event, PAN

4 has now produced all versions of the source code, so it cannot be "premature for PAN to request

5 pinpoint citations to source code." (Opp. at 17:2.)

6        Finally, Finjan argues that pinpoint source code citations may be required in interrogatory

7 responses, but not infringement contentions. (Opp. at 21:8-12 (citing *Big Baboon Corp. v. Dell,*

8 *Inc.*, 723 F. Supp. 2d 1224, 1228 (C.D. Cal. 2010).) But this distinction ignores that "[t]his

9 district's patent local rules 'require disclosures early in a case and streamline discovery by

10 ***replacing the series of interrogatories*** that parties would likely have propounded without them.'"

11 *Finjan, Inc. v. Sophos, Inc.*, No. 14-cv-01197-WHO, 2015 WL 5012679, at *1 (N.D. Cal. Aug.

12 24, 2015) (emphasis added).

13              **E.      Finjan's General Citations to Source Code Filenames Are Insufficient**

14        Finjan cannot seriously contend that its citations to filenames and its little explanation

15 provide adequate notice of its infringement theories. In its Opposition, Finjan cites to an example

16 for limitation 1[a] of the '154 Patent to demonstrate that it "identifies and discusses the relevant

17 source code files that show how the accused product meets the limitations." (Opp. at 6:10-22.)

18 In this example, Finjan cites to five source code files that implement "the modules that receive the

19 network packets corresponding to executable files." (*Id.* at 6:17-22.) In fact, the five source code

20 files contain over 38,000 lines of code. (Van Nort Decl. at ¶ 7.) Because Finjan does not provide

21 pinpoint citations, PAN has no way of knowing which functions or which lines of code within

22 those files are allegedly responsible for "receiv[ing] the network packets corresponding to

23 executable files."

24        To make matters worse, Finjan also cites to these five filenames for other limitations,

25 sometimes of different claims and of different patents, with different—albeit equally vague—

26 explanations for their relevance. For example, for limitation 1[b] of the '154 Patent, Finjan cites

27 to dozens of source code filenames, including these five filenames as the source code that

28 implements "a transmitter for transmitting the input to the security computer for inspection, when

1   the first function is invoked."  (Opp. Ex. H at 223-28.)  Finjan also cites to these five filenames as

2   the source code that processes "the URI code" for claim 7 of the '408 Patent.  (Opp. Ex. J at 252-

3   54.)

4          How can Finjan contend that it has provided sufficient notice of its infringement theories

5   when it cites to the same files, for disparate claim limitations, using different theories for their

6   relevance?  Nowhere does Finjan explain how the same source code files simultaneously "receive

7   the network packets," "transmit[] the input to the security computer for inspection," and process

8   "the URI code."  Judge Orrick in *Check Point* spotted the same problem:

9              Finjan cites to the same sets of source code for different claims. It is
               not clear how source code to "implement a TE add file tool" meets
10             both claim limitations as a "computer gateway for an intranet of
               computers" and "retrieving a requested file from the Internet."
11

12  *Check Point*, 2019 WL 955000, at *6.  Without specific, pinpoint citations to the function names and

13  line numbers within those five files, PAN has to "guess which part of the source code citations (either

    shared or not shared) allegedly infringe each claim element."  *Id.*
14

15         In its Opposition, Finjan cherry-picks one example for which it cites the fewest source code

16  filenames.  In in its infringement charts, Finjan typically lists dozens of source code filenames after its

    vague explanation that the following source code implements the claim language.  (*See, e.g.*, Opp.
17

18  Exs. H at 170-74; J at 23-24; G at 38-40.)  Despite bearing the burden of specifying the location of

19  every claim element within the accused products, *Bender v. Maxim Integrated Products, Inc.*, No.

20  C09-01152 SI, 2010 WL 1135762, at *2 (N.D. Cal. Mar. 22, 2010), Finjan imposes on PAN to guess

21  which portions of the files correspond to one claim limitation and whether the same or different

22  portions of the same files correspond to another disparate claim limitation.  Finjan cannot "hide the

    ball" on where in PAN's source code files the claim limitations are located.
23

24         **F.      Finjan's Screenshots and Generic Statements Do Not Provide Notice of
                      Its Infringement Theories**

25             **1.     Finjan's Infringement Contentions Are Voluminous in Pages
                        But Empty in the Required Substance**
26

27         Finjan's Opposition does not deny that its infringement contentions are largely filled with

28  generic screenshots and statements about PAN's products.  Instead, its strategy opposing this

1   Motion is the same as that of its infringement contentions: throw in as much seemingly technical

2   information as possible and hope that the Court will conflate **volume** with **specificity**.

3         Finjan's characterization of PAN's decision to provide the Court with just three excerpted

4   claim charts is disingenuous and inaccurate.  (Opp. at 1:21-24; 12:9-12.)  As PAN predicted at the

5   Case Management Conference, Finjan served voluminous yet deficient infringement contentions,

6   just as it did in its other cases.  *See, e.g.*, *Finjan, Inc. v. Proofpoint, Inc.*, No. 13-CV-05808-HSG,

7   2015 WL 1517920, at *6 (N.D. Cal. Apr. 2, 2015) ("Finjan's infringement contentions are largely

8   comprised of generic marketing literature and screenshots of the type routinely rejected by courts

9   in this District. These unexplained references comprise the majority of Finjan's over 1,000 pages

10   of claim charts").  Instead of burdening the Court with 2,100 pages of exhibits, PAN highlighted

11   that it was providing specific examples and excerpts "[f]or purposes of preserving judicial

12   economy."  (Motion at 6, n. 5.)  Finjan omits PAN's explanation and that PAN specifically stated

13   in its Motion that "[u]pon request, PAN can file the complete versions of all claim charts served

14   by Finjan."  (*Id.*)  PAN maintains that the full charts are not necessary to decide this Motion,

15   given that the three excerpted charts are representative of the deficiencies of Finjan's

16   infringement contentions.

17                    **2.    The Examples in Finjan's Opposition Confirm that Finjan's
                              Infringement Contentions Are Deficient**
18

19         In another example of Finjan's preference for volume over specificity, Finjan points to its

20   infringement theory for "how NGFW with WildFire meets limitation 1[a] of the '154 Patent,"

21   which Finjan boasts "span[s] five pages" (Opp. at 3:24-5:12.)  A close look at this theory shows

22   that **Finjan's own example** contains the same deficiencies PAN identified in its Motion.

23         As PAN pointed out, Finjan's infringement contentions do not identify the "content

24   processor" or "security computer."  (Motion at 8:14-9:8.)  Finjan's open-ended descriptions that

25   the accused "content processor" and "security computer" are "comprised of structures,

26   functionalities, operations, or systems" of NGFW, WildFire, or URL Filtering (Opp. at 4:1-5)

27   include a nearly infinite number of possible combinations.  Finjan's examples on page 14 of its

28   Opposition are no better.  Finjan claims that it explains "which specific functionalities of the

1    accused products satisfy the 'security computer' limitation[.]"  (Opp. at 14:14-16.)  But Finjan

2    does not identify any such "specific functionalities."  It rather continues to state generally that the

3    "accused security computer" includes "functionalities of the WildFire hardware, public cloud,

4    PAN-DB cloud, and Bright Cloud."  (Opp. at 14:17-19.)  But what exactly are these

5    functionalities?  Finjan does not say.[2]  As courts in this district have repeatedly held: "It is not

6    sufficient for Finjan to simply declare that a component that performs the claimed functionality

7    exists in an accused instrumentality; Finjan must identify the infringing element and where it is

8    found."  *Finjan, Inc. v. SonicWall, Inc.,* No. 17-cv-04467-BLF (VKD), 2019 WL 2077849, at *6

9    (N.D. Cal. May 10, 2019).

10        The cited infringement theory also merely equates a "first function" with "substitute

11   functionality."  Finjan in fact concedes that.  (Opp. at 13:6-14.)  Finjan blames PAN's alleged late

12   production of the ▮▮▮▮▮  for its failure.[3]  Yet PAN produced those files before the

13   infringement contentions were due and well before PAN requested Finjan to provide pinpoint

14   citations.  (Ex. 3. 2021-6-29 Van Nort Letter.)  Even if the ▮▮▮▮▮  were key to enabling Finjan

15   to provide pinpoint citations (a suggestion that PAN disputes), now that Finjan has had the access

16   it claims it needs for over three months, it should provide the citations.[4]  Finjan's attempt to fault

17   PAN is just another example of it being inconsistent with its own statements.  Finjan admits in its

18   infringement contentions that the "first function" is implemented by at least ***the source code cited***

19   ***below*** and the ▮▮▮▮▮ ."  (Opp. at 13:11-12 (emphasis added).)  Therefore, even before having

20

21   ───────────────

22   [2] The first screenshot on page 14 provides even less information.  Even if the contentions
     in the screenshot "explain the operation of the accused content processor and security computer"
23   as Finjan claims (Opp. at 14:4-5), they do not identify what components of PAN's products
     constitute the "content processor" and "security computer."

24   [3] The ▮▮▮▮▮ were loaded onto the review laptop on March 29, 2021, approximately
     one month after Finjan requested them on February 25, 2021.  (Van Nort Decl. Ex. 23 at 1.)
25   Finjan served its infringement contentions on April 1, 2021.  Finjan did not inspect the ▮▮▮▮▮
     until about two months later.  And it only reviewed the ▮▮▮▮▮ for six days: from May 24 to
26   May 26, on May 28, and from June 1 to June 2.  (Opp. Ex. W; Van Nort Decl. Ex. 25.)  Finjan
     has not inspected any source code since.

27   [4] The ▮▮▮▮▮ consist of fewer than 225 files in total.
28

1   access to the ███████, Finjan had access to the other source code that implements the so-called

2   "substitute functionality" before it served infringement contentions.  But it still refuses to explain

3   what exactly is "substitute functionality" or how PAN's products allegedly insert this "substitute

4   functionality."

5          The two examples Finjan cites on page 13 do not help either.  (Opp. at 13:18-19 and 21-

6   25.)  Again, Finjan never explains what "substitute functionality" is.  Finjan's redefinition of

7   "first function" only confuses the issue and obscures what is accused.  Finjan also conclusorily

8   states that NGFW "inserts substitute functionality" without "identifying [] specific components

9   of" NGFW to give PAN "fair notice as to where the alleged infringing products are located."

10  *Finjan, Inc. v. Zscaler, Inc.*, No. 17-CV-06946-JST, 2018 WL 4181906, at *2 (N.D. Cal. Aug. 31,

11  2018), *enforcement granted*, No. 17-CV-06946-JST, 2019 WL 7589210 (N.D. Cal. Feb. 5, 2019).

12         Finally, Finjan's exemplary "technical documentation" and "testing results" do not clarify

13  its infringement contentions.  (Opp. at 5:21-6:9; 6:23-7:11.)  According to Finjan, the exemplary

14  technical documentation illustrates "the usage of the NGFW with the security computer (PAN-

15  DB) to ensure that the content processor only invokes the second function (retrieving the content

16  at the requested URL) if the invocation is safe."  (*Id.* at 6:1-2.)  But again, Finjan is silent as to

17  what constitutes "the content processor" and what components of PAN-DB constitute "the

18  security computer."  And the screenshot does not help identify them either.

19         Its exemplary testing screenshot is even less helpful.  Finjan claims that it uses the

20  screenshot "to show that NGFW takes action on URLs (e.g., block or alert) based on whether the

21  claimed 'security computer' (e.g., WildFire) indicates invocation is safe, meeting limitation 1[a]

22  of the '154 Patent."  (Opp. at 6:24-27.)  First, the screenshot, even viewed in the original claim

23  chart on a computer screen, is extremely blurry.  (*See* Opp. Ex. H at 197-98.)  One cannot

24  ascertain any information from the screenshot.  This is just another example of Finjan choosing

25  form over substance.  Second, despite its verbiage, Finjan does not even claim that this testing

26  screenshot helps identify what components of NGFW and WildFire meet the claim limitation.

27  *See Zscaler*, 2018 WL 4181906, at *2 ("While the contentions purport to describe how Zscaler's

28  products send mobile protection code, a closer examination makes clear that the contentions lack

1    any meaningful, clear, or specific description.").

2                    **G.      Finjan's Doctrine of Equivalents Contentions Are Inadequate**

3         Finjan's infringement contentions do not support its arguments.  It claims that it "does not

4    reference the entire accused product in a blanket statement[.]"  (Opp. at 22:15-17.)  That is not

5    true.  (*See* Opp. Ex. Y. at 90 ("The Accused Products perform the same function because they

6    have a memory for storing files that have been scanned by the scanner for future access"; "The

7    Accused Products perform this function in the same way because the stored file is indexed so that

8    it can be retrieved for future access.").)  Finjan also argues that PAN is "wrong to draw parallels"

9    to *CSR Tech.* (Opp. at 22:14-17).  The contentions at issue in *CSR Tech.*, however, look very

10   similar to Finjan's.  *CSR Tech. Inc. v. Freescale Semiconductor*, No. C-12-02619 RS JSC, 2013

11   WL 503077, at \*9 (N.D. Cal. Feb. 8, 2013) ("In particular, each of the Accused Instrumentalities

12   obtains data bit information from the received signals in order to perform the same function of

13   getting data bits in the same way of extracting the data bits from the received signal for the same

14   purpose of obtaining the data bits.").

15        Finjan also argues that its contentions are sufficient because they allege that "NGFW and

16   the combination of NGFW and Wild[F]ire infringe based on their joint or common features."

17   (Opp. at 23:2-3.)  But that is exactly one deficiency PAN identified in its Motion.  (Motion at 9:1-

18   9.)  NGFW and WildFire contain thousands of features.  It is not enough for Finjan to just allege

19   that NGFW and WildFire alone or in combination infringe.  Finjan must "identify specific . . .

20   components" of NGFW and WildFire that infringe the asserted limitation.  *Zscaler*, 2018 WL

21   4181906, at \*2.  Additionally, "[i]f Finjan believes that [PAN's] underlying instrumentalities

22   infringe in combination, Finjan must specify the combination."  *Check Point*, 2019 WL 955000,

23   at \*4.  In other words, Finjan must specify which components of NGFW and which components

24   of WildFire, combined together, practice the asserted limitation.

25                    **H.      Finjan's Failure to Provide Sufficient Infringement Contentions**
                              **Prevents PAN from Providing More Detailed Invalidity Contentions**
26

27        Finjan complains that PAN's invalidity contentions are less detailed than its infringement

28   contentions.  (Opp. 15:11-14.)  First, this is not true.  PAN's invalidity contentions are detailed

1   and are more than sufficient to provide the bases for invalidating the asserted patents.  Second,

2   Finjan ignores that in order to accuse PAN's products, it stretches its claims and includes a nearly

3   infinite number of infringement theories.  Because Finjan refuses to narrow its infringement

4   theories, PAN has no choice but to attempt to capture all possible invalidity theories that

5   correspond to Finjan's infringement theories.  Once Finjan provides more detailed infringement

6   contentions and pinpoint citations to source code, PAN will be able to further narrow its

7   invalidity contentions.

8       **III.    CONCLUSION**

9           For the reasons explained above, the Court should strike Finjan's infringement

10  contentions in their entirety.  Even if the Court is not inclined to strike Finjan's infringement

11  contentions in their entirety, the Court should order Finjan to provide pinpoint citations to the

12  source code cited in its infringement contentions.

13

14  Dated:  July 6, 2021                            MORRISON & FOERSTER LLP

15

16                                      By:    */s/ Colette Reiner Mayer*
                                               Colette Reiner Mayer

17                                             Attorneys for Defendant
18                                             PALO ALTO NETWORKS, INC.

19

20

21

22

23

24

25

26

27

28