Juanita R. Brooks (CA SBN 75934) / brooks@fr.com
Roger A. Denning (CA SBN 228998) / denning@fr.com
Frank J. Albert (CA SBN 247741) / albert@fr.com
K. Nicole Williams (CA SBN 291900) / nwilliams@fr.com
Jared A. Smith (CA SBN 306576) / jasmith@fr.com
Tucker Terhufen (CA SBN 311038) / terhufen@fr.com
FISH & RICHARDSON P.C.
12860 El Camino Real, Ste. 400
San Diego, CA 92130
Telephone: (858) 678-5070 / Fax: (858) 678-5099

Susan Morrison (*Pro Hac Vice*) / morrison@fr.com
FISH & RICHARDSON P.C.
222 Delaware Avenue, 17th Floor
P.O. Box 1114
Wilmington, DE 19801
Telephone: (302) 652-5070 / Fax: (302) 652-0607
Additional counsel listed on signature page

*Attorneys for Plaintiff,*
*FINJAN LLC*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FINJAN LLC,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>PALO ALTO NETWORKS, INC.,<br><br>　　　　　Defendant. | Case No. 4:14-cv-04908-PJH<br><br>**FINJAN LLC'S OPPOSITION TO PALO ALTO NETWORKS, INC.'S MOTION TO STRIKE FINJAN LLC'S INFRINGEMENT CONTENTIONS**<br><br>**[UNREDACTED VERSION]**<br><br>Hon. Phyllis J. Hamilton<br>Ctrm: 3, 3rd Floor |

# **TABLE OF CONTENTS**

**Page**

I.     INTRODUCTION ................................................................................................ 1

II.    FACTUAL BACKGROUND ............................................................................... 2

    A.    Finjan's Infringement Contentions Are Detailed And Thorough ...................... 2

    B.    PAN Has Failed To Produce Many Relevant Documents .................................. 7

        1.    PAN Has Not Yet Produced Core Internal Technical Documents ................................................................................................ 8

        2.    PAN Produced Much Of Its Source Code Late And Still Has Not Yet Produced Some Source Code ................................................ 8

III.   PAN'S MOTION TO STRIKE SHOULD BE DENIED ..................................... 10

    A.    Finjan's Infringement Contentions Comport With This District's Law And Rules ................................................................................................ 10

    B.    PAN Demands More Of Finjan Than It Requires Of Itself ............................. 15

    C.    Finjan's Source Code Citations Comply With Pat. L.R. 3-1 And This Court's Prior Rulings ............................................................................... 16

        1.    This Court Already Rejected PAN's Request To Require Finjan To Include Pinpoint Citations To Source Code .......................... 16

        2.    While PAN Demands Pinpoint Citations, It Has Not Produced All of The Source Code .......................................................... 16

        3.    Finjan's Contentions Put PAN On Notice Of Finjan's Theories ................................................................................................. 17

        4.    The Patent Local Rules Do Not Require Pinpoint Citations ................................................................................................. 18

        5.    Finjan's Review Of PAN's Late-Produced Source Code Is Ongoing ............................................................................................... 20

    D.    Finjan's Doctrine Of Equivalents Contentions Are Specific And Detailed ........................................................................................................... 21

    E.    PAN's Motion To Strike Is Improper And Untimely ...................................... 23

    F.    Other Finjan Cases Are No Reason To Strike Here .......................................... 24

IV.    CONCLUSION ................................................................................................. 25

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Big Baboon Corp. v. Dell, Inc.*,
   723 F. Supp. 2d 1224 (C.D. Cal. 2010) ................................................................ 21

*Blue Spike v. Adobe Sys.*,
   No. 14-cv-01647-YGR-JSC, 2015 WL 335842 (N.D. Cal. Jan. 26, 2015) .......................... 23

*Comcast Cable Commc'ns, LLC v. OpenTV, Inc.*,
   No. C 16-cv-06180-WHA, 2017 WL 2630088 (N.D. Cal. June 19, 2017) .......................... 24

*CSR Tech. Inc. v. Freescale Semiconductor*,
   No. 12-cv-02619-RS-JSC, 2013 WL 503077 (N.D. Cal. Feb. 8, 2013) .............................. 22

*Diagnostic Sys. Corp. v. Symantec Corp.*,
   No. 06-cv-1211-DOC-ANX, 2009 WL 1607717 (C.D. Cal. June 5, 2009) .......................... 21

*Droplets, Inc. v. Yahoo! Inc.*,
   No. 4:12-cv-03733-JST-KAW, 2020 WL 4045211 (N.D. Cal. May 6, 2020) ..... 17, 18, 19, 20

*Finjan, Inc. v. Check Point Software Tech., Inc.*,
   No. 18-cv-02621-WHO, 2019 WL 955000 (N.D. Cal. Feb. 27, 2019) ................................ 25

*Finjan, Inc. v. Check Point Software Techs., Inc.*,
   No. 18-cv-02621-WHO, 2020 WL 1929250 (N.D. Cal. Apr. 21, 2020) .............................. 19

*Finjan, Inc. v. Proofpoint, Inc.*,
   No. 13-CV-05808-HSG, 2015 WL 9023166 (N.D. Cal. Dec. 16, 2015).............. 15, 18, 19, 21

*Finjan, Inc. v. Qualys Inc.*,
   No. 4:18-cv-07229-YGR, 2021 WL 1253651 (N.D. Cal. Apr. 5, 2021) .............................. 25

*Finjan, Inc. v. SonicWall, Inc.*,
   No.17-cv-04467-BLF (VKD), 2019 WL 2077849 (N.D. Cal. May 10, 2019)...................... 25

*Finjan, Inc. v. SonicWall, Inc.*,
   No. 5:17-cv-04467-BLF, Dkt. No. 436 (N.D. Cal. Mar. 22, 2021) ...................................... 24

*Finjan, Inc. v. Sophos, Inc.*,
   No. 14–cv–01197–WHO, 2015 WL 5012679 (N.D. Cal. Aug. 24, 2015) ................ 22, 24, 25

*FusionArc, Inc. v. Solidus Networks, Inc.*,
   No. 06-cv-06760-RMW-RS, 2007 WL 1052900 (N.D. Cal. Apr. 5, 2007) .......................... 24

*Geovector Corp. v. Samsung Elecs. Co.*,
   No. 16-cv-02463-WHO, 2017 WL 76950 (N.D. Cal. Jan. 9, 2017).................................... 23

*Mitsubishi Elec. Corp. v. Sceptre, Inc.*,
    No. 2:14-cv-04994-ODW, 2015 WL 2369557 (C.D. Cal. May 18, 2015) ............................ 15

*Network Caching Technology, LLC v. Novell, Inc.*,
    No. 3:01-cv-02079-VRW, 2002 WL 32126128 (N.D. Cal. August 13, 2002) ...................... 22

*Oracle Am., Inc. v. Google Inc.*,
    No. C 10-cv-03561-WHA, 2011 WL 4479305 (N.D. Cal. Sept. 26, 2011) ........................... 18

*Plexxikon Inc. v. Novartis Pharms. Corp.*,
    No. 17-CV-04405-HSG-EDL, 2018 WL 11317255 (N.D. Cal. Apr. 23, 2018) .............. 10, 11

*Slot Speaker Tech., Inc. v. Apple, Inc.*,
    No. 13-cv-01161-HSG, 2017 WL 235049 (N.D. Cal. Jan. 19, 2017) .................................... 15

*Uniloc 2017 LLC v. Apple, Inc.*,
    No. 19-:cv-1929-EJD-VKD, 2020 WL 978678 (N.D. Cal. Feb. 28, 2020) ........................... 10

*Uniloc USA, Inc. v. Apple Inc.*,
    No. 19-cv-01692-EJD-VKD, 2020 WL 1984305 (N.D. Cal. Apr. 27, 2020) ....................... 23

*Vasudevan Software, Inc. v. Int'l Bus. Machines Corp.*,
    No. C 09-cv-05897-RS-HRL, 2011 WL 940263 (N.D. Cal. Feb. 18, 2011) ........................ 20

*Word to Info Inc v. Google Inc.*,
    No. 15-CV-03486-WHO, 2016 WL 3648605 (N.D. Cal. July 8, 2016) ................................ 10

1

## I.     INTRODUCTION

2        Palo Alto Networks ("PAN") decided it was going to file this motion to strike Finjan's

3 infringement contentions even before PAN saw them.  In the Joint Case Management Statement—

4 filed on March 11, three weeks *before* Finjan's contentions were due—PAN requested that the Court

5 require Finjan to provide extra detail in its infringement contentions, citing previous cases where

6 Finjan was ordered to supplement.  This Court *denied* PAN's request.  Aware of PAN's game plan,

7 Finjan went to great lengths to exceed all requirements for infringement contentions under the Patent

8 Local Rules, serving infringement contentions that total over 2,100 pages and far surpass those that

9 required supplementation in prior cases.  For each limitation of the asserted claims, Finjan's

10 infringement contentions provide a detailed narrative (often running multiple pages by itself)

11 explaining how each accused product meets that particular limitation.  Then, Finjan cites to each of

12 three types of evidence to support the infringement theories—technical documents, source code,

13 and actual test results—and provides additional narratives or highlights to explain how that

14 particular evidence shows the accused product meets the claim limitation.  Finjan's infringement

15 contentions are different from those in prior Finjan cases, they include much greater detail than the

16 Patent Local Rules require, and they provide much greater detail than PAN itself provided in its

17 invalidity contentions in this case.

18        Undeterred by the significant detail in Finjan's infringement contentions, PAN filed the

19 instant motion seeking not to compel supplementation but instead to *strike* all 2,100+ pages of

20 Finjan's contentions.  In support of its arguments, PAN relies on cherry-picked snippets, lifted from

21 Finjan's claim charts without including Finjan's narrative explanations.  PAN also chose not to

22 provide the Court with the full versions of Finjan's contentions that it seeks to strike.  Had it done

23 so, the Court would see just how thorough the contentions are—and how baseless PAN's motion

24 is—which is why Finjan has attached the contentions in their entirety to this brief.

25        Additionally, PAN has not yet provided much of the technical documentation for the accused

26 products, which Finjan otherwise would have included in its infringement contentions.  Finjan has

27 requested PAN to update its production of internal technical documents and make available specific

28 source code files.  While PAN has said in meet-and-confer meetings that it is not refusing to produce

1    the documents, it continues to delay.  Finjan has asked PAN to supplement its production by a date

2    certain; otherwise, Finjan will have to move to compel.  Until PAN has produced those technical

3    documents and Finjan has had time to consider them, this motion to strike is premature.

4    **II.    FACTUAL BACKGROUND**

5         Despite being filed in 2014, this case is still in its early stages, largely due to a five-year stay

6    for IPR proceedings that resulted in only three of the 198 challenged claims being found

7    unpatentable.  Fact discovery is under way, but only one deposition has been taken.  The parties'

8    claim construction exchanges are ongoing, and the *Markman* hearing is set for October 13 or 14,

9    2021.  No close of fact discovery has been set.

10        **A.    Finjan's Infringement Contentions Are Detailed And Thorough**

11        On April 1, 2021, pursuant to the Patent Local Rules, Finjan served its infringement

12   contentions for the seven patents-in-suit.[1]  The contentions comprise ten claim charts, total 2,141

13   pages, and lay out in detail Finjan's theories for how PAN's products infringe the asserted claims.[2]

14   The discussion of each limitation of the asserted claims begins with a detailed narrative describing

15   how each accused product meets that limitation.  Following the narrative, the charts then point to

16   evidence supporting Finjan's infringement theory, including: (1) excerpts from PAN's public and

17   confidential documents describing the accused products (to the extent provided by PAN); (2) source

18   code files for each version of each accused product (to the extent provided by PAN); and (3)

19   screenshots from Finjan's testing of PAN's products showing the infringing functionality.  The

---

[1] Unlike PAN, Finjan is providing its infringement contentions with this opposition so the Court can review them in their entirety.  *See* Exh. A (Finjan Initial Infringement Contentions), Exh. B (Appendix A-1, '780 Patent, Next Generation Firewall ("NGFW") and WildFire products), Exh. C (Appendix A-2, '780 Patent, Traps product), Exh. D (Appendix B-1, '731 Patent, NGFW, WildFire, and Traps products), Exh. E (Appendix C-1, '926 Patent, NGFW and Wildfire products), Exh. F (Appendix C-2, '926 Patent, Traps and WildFire products), Exh. G (Appendix D-1, '633 Patent, NGFW, WildFire, and Traps products), Exh. H (Appendix E-1, '154 Patent, NGFW and WildFire products), Exh. I (Appendix E-2, '154 Patent, Traps and Endpoint Security products), Exh. J (Appendix F-1, '408 Patent, Wildfire and Traps products), Exh. K (Appendix G-1, '494 Patent, NGFW, WildFire, and Traps products).

[2] PAN does not dispute that Finjan has: (1) identified each asserted claim of each patent-in-suit (Pat. L.R. 3-1(a)); (2) identified the Accused Instrumentalities by "name or model number" (Pat. L.R. 3-1(b)); (3) provided "an identification of any direct infringement and a description of the acts of the alleged indirect infringer that contribute to or are inducing that direct infringement" (Pat. L.R. 3-1(d)); and (4) described "[w]hether each limitation of each asserted claim is alleged to be literally present or present under the doctrine of equivalents." (Pat. L.R. 3-1(e)).

charts also include narrative discussions explaining how the cited evidence supports Finjan's infringement theories.

Example: '154 Patent, limitation 1[a] applied to NGFW and WildFire.

To demonstrate the lengths to which Finjan went to identify its infringement theories, the following discussion uses, as an example, Finjan's claim chart for one accused product combination (Next Generation Firewall or "NGFW" and WildFire) and one limitation (limitation [a]) of one claim (claim 1) of one patent (the '154 Patent).  Finjan has not cherry-picked this particular limitation because the description is more thorough than others.  Rather, ***it was PAN who picked this limitation***, saying in its brief (at pp. 5-6) it is "representative of the deficiencies of Finjan's infringement contentions."  The discussion below shows that is not the case, as do the 195 pages Finjan devotes to explaining how the accused products meets this single claim limitation in its contentions.  (Exh. H at pp. 10-204.)

Identification of accused products: Each of Finjan's infringement charts begins by identifying the specific accused products by product family and model number.  In our example of limitation 1[a] of the '154 Patent, Finjan identifies PAN's NGFW, WildFire, Threat Prevention, and URL Filtering products, including each model number (*e.g.*, NGFW PA-220R) and/or software version (*e.g.*, PAN-OS v4.1).  (Exh. H at pp. 1-3.)  Next, for each limitation, Finjan states whether the accused product practices the limitation on its own or in combination with other products.  For limitation 1[a] of the '154 Patent, Finjan states: "PAN NGFW alone and in combination with WildFire includes a content processor (i) for processing content received over a network, the content including a call to a first function, and the call including an input, and (ii) for invoking a second function with the input, only if a security computer indicates that such invocation is safe."  (Exh. H at p. 10.)

Narrative explanation of infringement theories: After identifying each accused product or combination of products, Finjan provides a narrative, in its own words, detailing its infringement theories for that product.  The following excerpt includes only portions of one of Finjan's theories— which spans five pages—for how NGFW with WildFire meets limitation 1[a] of the '154 Patent:

**NGFW + WildFire + URL Filtering**

The accused content processor is comprised of structures, functionalities, operations, or systems of NGFW, alone, or in combination with a host computer within the protected network.

The accused security computer is comprised of structures, functionalities, operations, or systems of WildFire and/or URL Filtering. This includes functionalities of the WildFire hardware, public cloud, PAN-DB cloud, and Bright Cloud. NGFW inserts functionality (substitute functions) into content received over the network (URLs), and that inserted functionality causes received content (comprised of URLs) to be sent to WildFire and its associated systems for analysis. WildFire (security computer) analysis can be performed on a public cloud, on a private cloud, and on a hybrid cloud. Additionally the security computer is Inline Machine Learning, which can render a verdict in real time to prevent malware from executing. …

The accused content processor invokes a second function with the input only if WildFire and/or URL Filtering (including at least PAN-DB cloud and/or Bright Cloud) indicate that such invocation is safe. For example, for email received by the NGFW, the NGFW sends links included in the emails to WildFire public cloud for analysis. A virtual machine does dynamic analysis on the links and determines whether they include malicious content. WildFire will send the URL and verdicts to the PAN-DB cloud server. The PAN-DB cloud server will create a profile for malicious links. When a user clicks a link in an email received and attempts to retrieve the associated content, the request flows through the NGFW, which queries PAN-DB or Bright Cloud for the categorization of the associated URL. If the URL contains malicious content, the user's browser session can be blocked using a URL Filtering profile. …

The accused content received over a network including a call to a first function (substitute function), the call including an input is comprised of content requested by the client computer, which is received over a network combined with SML files received over a network at the NGFW. The SML files enforce the NGFW security policies to substitute function calls which cause the requested input to be sent to the security computer (WildFire) for inspection when the first function is invoked. Exemplary calls to first functions (substitute functions) are necessarily variable based on the nature of the content that the system is seeking to invoke, and is the call to the substitute functionality that is invoked by the content processor that results in the input being transmitted to a security computer when the first function is invoked, rather than executing the desired content. Communications among the structures within the NGFW that modify the content and that execute the modified content take place over a network, because those communications deliver data using a standard communication protocol. For example, communications between

structures and processes in the NGFW take place using at least Transmission Control Protocol/Internet Protocol (TCP/IP), Sockets, Proxy protocol, User Datagram Protocol (UDP), function calls, shared data structures, and inter-process communications mechanisms. Accordingly, the content processor processes content received over a network, the content including a call to a first function (substitute function), and the call including an input. For example, content is received and parsed within the Data Plane (DP) of the NGFW, where the SML files parse the network packets for content inspection and create calls to substitute functions which identify data (e.g., files or URLs) of interest. The call to a substitute function and the corresponding input are passed to the Management Plane (MP) over a network, including at least using Transmission Control Protocol/Internet Protocol (TCP/IP), Sockets, Proxy protocol, User Datagram Protocol (UDP), function calls, shared data structures, or inter-process communications mechanisms. The MP transmits the input to WildFire (security computer) when the first function is invoked. The call to a first function, the call including an input, varies in each instance depending on the nature of the requested content, and is implemented by at least the source code cited below and the SML files, which to date, PAN has not produced despite repeated requests by Finjan.

…

(*Id*. at pp. 15-19.)

Evidentiary Support:  After explaining its infringement theories in narrative form, Finjan next references exemplary evidence for support, including citations to PAN's documents describing its products, relevant portions of source code for those products, and screenshots of testing of those products in use.  For each of these categories of evidence, Finjan also provides explanations of how the particular evidence shows an aspect of infringement, highlights the important aspect of the evidence (*e.g.*, quotes certain language from a document excerpt), or both.

Technical Documentation:  Finjan's claim chart for limitation 1[a] of the '154 Patent identifies numerous PAN technical documents to illustrate how NGFW and WildFire meet the limitation.  (Exh. H at pp. 10-163.)  In the excerpt below, for example, Finjan provides a narrative explaining that, in this example, PAN-DB is the claimed "security computer" and the claimed "second function" is satisfied by retrieving content at the requested URL.



(Exh. H at p. 116.)

Source Code:  Then Finjan identifies and discusses the relevant source code files that show how the accused product meets the limitations.  Below, Finjan discusses the source code within PAN-OS—the operating system that runs on PAN's NGFW products—that implements the claimed "content processor [] for processing content received over a network" element within limitation 1[a].

> **Inline Machine Learning**
>
> The PAN-OS that runs on the PAN firewall products implements a content processor for processing content received over a network. As an example, the modules within the PAN-OS that receive the network packets corresponding to files (e.g., downloaded files, files embedded within emails, files embedded within webpages, etc.) or URLs (e.g., URLs within downloaded files, URLs embedded within emails, URLs embedded within webpages, etc.) and process these network packets using Inline Machine Learning ("Inline ML") implement a content processor for processing content received over a network.
>
> Within the PAN-OS source code, the modules that receive the network packets corresponding to executable files are implemented by source code in the following files:
>
> **PAN-OS 10.0**
>
> /PANOS 10.0/src/apps/dp/task/src/pan_task.c
>
> /PANOS 10.0/src/libs/dp/flow/src/pan_flow_proc.c
>
> /PANOS 10.0/src/libs/dp/ctd/src/pan_ctd.c
>
> /PANOS 10.0/src/libs/dp/mlav/src/pan_ctd_mlav.c
>
> /PANOS 10.0/src/libs/dp/detector/src/pan_sml_vm.c

Finjan's added narrative

(*Id.* at p. 182.)

Testing Results:  Finally, the excerpt below is an example of Finjan's use of testing screenshots throughout its contentions.  Finjan uses this particular screenshot, captured during Finjan's testing of PAN's NGFW product, to show that NGFW takes action on URLs (*e.g.*, block or alert) based on whether the claimed "security computer" (*e.g.*, WildFire) indicates invocation is safe, meeting limitation 1[a] of the '154 Patent.  Finjan provided the explanatory narrative seen in the screenshot below.

In the context of URLs and URL Filtering, the NGFW transmits URLs to WildFire and/or PAN-DB/Bright Cloud (security computers) for analysis. If the security computer indicates that invocation is safe, the NGFW invokes the URL (second function). If the invocation is not safe, such as in the instance where the security computer indicates that the "url category list" is "malware," then the NGFW takes the "action" of "block url." The NGFW may also just "alert" the user that the URL is potentially malicious.

Finjan's added narrative

(*Id.* at pp. 197-98.)

Finjan's contentions follow the same process and similar formatting for each limitation of the asserted patents and provide similarly detailed charts for the accused products.

**B.      PAN Has Failed To Produce Many Relevant Documents**

While Finjan's infringement contentions are detailed and thorough, Finjan has been hampered by PAN's delay in producing many of its core technical documents and much of the relevant source code for its accused products. Finjan has raised these deficiencies with PAN through multiple discovery letters, and Finjan's counsel has had meet-and-confer discussions with PAN's counsel regarding the necessary supplementation. PAN's counsel has stated that PAN is not refusing to produce the missing documents and source code, but PAN has yet to supplement its production or make the missing source code available for inspection. Finjan's counsel has requested a date certain for PAN's supplementation. Should PAN produce the requested documents by a date certain, Finjan will then add them to its infringement contentions and move for leave to supplement based on PAN's late production, as necessary. Should PAN not agree to produce the missing documents by the date certain, Finjan will have to file a motion to compel. But for purposes of this motion, PAN should not be heard to complain about the sufficiency of Finjan's infringement contentions when it continues to withhold requested documents regarding the accused products.

1

          **1.**      **PAN Has Not Yet Produced Core Internal Technical Documents**

2

      This case was stayed on December 9, 2015 (Dkt. No. 67), and the Court lifted the stay on

3

January 25, 2021.  (Dkt. No. 84.)  After the stay was lifted, Finjan promptly and repeatedly identified

4

deficiencies in PAN's document production and has requested on multiple occasions that PAN

5

supplement its production.  (*See* Exh. L (March 22, 2021 letter from Smith to Van Nort regarding

6

PAN's deficient production); Exh. M (April 23, 2021 letter from Goter to Van Nort regarding PAN's

7

deficient production); Exh. N (May 25, 2021 letter from Smith to Van Nort regarding several issues

8

including PAN's failure to produce documents related to software for use with Traps); Exh. O (May

9

28, 2021 letter from Goter to Van Nort regarding PAN's deficient production); Exh. Q (June 4, 2021

10

email from Smith to Van Nort regarding several issues including PAN's deficient production); Exh.

11

P (June 7, 2021 letter from Smith to Van Nort regarding several issues including PAN's deficient

12

document and source code productions); Exh. Q (June 15, 2021 email from Smith to Van Nort

13

regarding PAN's deficient document and source code production).)  Finjan requested to meet and

14

confer with PAN regarding its deficiencies, and counsel for the parties met on June 8, 2021.  (Exh.

15

Q (June 8, 2021 email from Smith to Van Nort providing summary of meet and confer).)  During

16

that conference, counsel for PAN indicated PAN was not refusing to produce the requested technical

17

documents, but so far, PAN has produced none.

18

      Of primary relevance, PAN has released new versions of the accused products since the case

19

was stayed in 2015.  But PAN has not yet produced ***any*** internal technical or development

20

documents for those new versions.  Indeed, the only non-source-code technical documents that PAN

21

has produced since 2016 have been a handful of documents that are publicly available on PAN's

22

website, documents that Finjan had already downloaded and produced to PAN.

23

          **2.**      **PAN Produced Much Of Its Source Code Late And Still Has Not Yet**
                **Produced Some Source Code**

24

25

      Even before the stay was lifted on January 25, 2021, Finjan requested that PAN make the

26

source code for the accused products available for inspection, in light of the April 1st deadline for

27

Finjan's infringement contentions.  (*See* Exh. R (January 22, 2021 email from Smith to Van Nort

28

requesting inspection of PAN's source code for *all* accused instrumentalities).)  But PAN delayed.

1     Initially, PAN made available for inspection only the same source code it made available before the

2     stay, which was pre-2015 versions of PAN-OS (versions 3.1, 4.1, and 6.1) and Traps (versions 3.0

3     and 3.1.3).  (*See* Exh. R (January 26, 2021 email from Van Nort to Smith pushing back on allowing

4     Finjan to inspect any post-2015 source code for the accused instrumentalities); Exh. R (February 1,

5     2021 email from Van Nort to Smith regarding same).)  Finjan demanded that PAN produce the new

6     source code, and on March 10, 2021 (only three weeks before Finjan's contentions were due), PAN

7     made available for inspection PAN-OS versions 7.0, 8.0, 9.0, and 10.0.  (Exh. R (March 10, 2021

8     email from Van Nort to Smith confirming PAN would be providing PAN-OS versions 7.0, 8.0, 9.0,

9     and 10.0).)  But PAN still has not made available for inspection any post-2015 versions of Traps,

10    which is an accused product for every asserted patent.  (*See* Exh. S (March 12, 2021 letter from

11    Smith to Van Nort regarding deficiencies with PAN's source code production including failing to

12    produce any post-2015 versions of Traps); Exh. T (March 18, 2021 email from Smith to Van Nort

13    regarding same).)

14    Finjan continued to request PAN to supplement, and on June 2, 2021, PAN told Finjan for

15    the first time that, "the Traps team is mainly in Israel, which has introduced complications in the

16    collection and transfer of source code" and that "we are collecting additional Traps source code and

17    will produce it soon."  (Exh. Q (June 2, 2021 email from Van Nort to Smith regarding deficiencies

18    with PAN's source code production).)  Despite continued assurances, PAN still has not produced

19    these additional Traps versions for inspection.

20    Further, Finjan complained in a February 25, 2021 letter that PAN's source code production

21    did not include SML files and FPGA (or "hardware") source code.  (Exh. U (February 25, 2021

22    letter from Smith to Van Nort regarding deficiencies with PAN's source code production).)  After

23    initially refusing to produce this source code—saying it was not relevant—PAN finally populated

24    the source code computer with the SML files on March 29, 2021, just three days before Finjan's

25    infringement contentions were due. (Exh. W (April 8, 2021 email from Van Nort to Smith informing

26    Finjan that PAN loaded requested SML and FPGA files on source code computer on March 29 and

27    April 8, respectively).)  And even worse, PAN waited until ***after*** Finjan served its contentions to

28    notify Finjan that the SML files were available on the source code computer for review.  (*Id.*)

1   Moreover, PAN did not produce the requested FPGA files for inspection until April 8, 2021, seven

2   days *after* Finjan served its infringement contentions.  (*Id.*)

3   What follows is a list of all of the source code that PAN has not yet produced or did not

4   produce in time for Finjan to include in its infringement contentions:  all versions of Traps after

5   version 3.1.3, SML files, DFA files, and FPGA hardware source code.  Having reviewed the late-

6   produced SML and FPGA files, Finjan believes they are relevant and plans to move to amend its

7   contentions to incorporate this additional evidence.  Finjan believes the remaining Traps source code

8   that PAN has not yet produced will also be relevant, and if so, Finjan intends to include it in amended

9   infringement contentions, as well, after PAN finally makes it available.

10  **III.    PAN'S MOTION TO STRIKE SHOULD BE DENIED**

11  **A.    Finjan's Infringement Contentions Comport With This District's Law And Rules**

12  Finjan's infringement contentions provide sufficient notice to PAN, which is the purpose of

13  infringement contentions, as courts in this District have stated repeatedly.  "[A]ll courts agree that

14  the degree of specificity under Local Rule 3–1 must be sufficient to provide reasonable notice to the

15  defendant why the plaintiff believes it has a reasonable chance of proving infringement."  *Word to*

16  *Info Inc v. Google Inc.*, No. 15-CV-03486-WHO, 2016 WL 3648605, at *4 (N.D. Cal. July 8, 2016).

17  "The local rules do not require the disclosure of specific evidence nor do they require a plaintiff to

18  prove its infringement case."  *Uniloc 2017 LLC v. Apple, Inc.*, No. 19-:cv-1929-EJD-VKD, 2020

19  WL 978678, at *2 (N.D. Cal. Feb. 28, 2020).  "The local patent rules in the Northern District of

20  California . . . requir[e] both the plaintiff and the defendant in patent cases to provide early notice

21  of their infringement and invalidity contentions, and to proceed with diligence in amending those

22  contentions when new information comes to light in the course of discovery.  The rules thus seek to

23  balance the right to develop new information in discovery with the need for certainty as to the legal

24  theories."  *Plexxikon Inc. v. Novartis Pharms. Corp.*, No. 17-CV-04405-HSG-EDL, 2018 WL

25  11317255, at *2 (N.D. Cal. Apr. 23, 2018) (quoting *O2 Micro Int'l Ltd. v. Monolithic Power Sys.,*

26  *Inc.*, 467 F.3d 1355, 1365–66 (Fed. Cir. 2006)).

27  Finjan's infringement contentions provide PAN with more than sufficient notice as to its

28  legal theories and the supporting evidence (at least the evidence to which Finjan had access as of

the date of its contentions), and PAN cannot credibly argue otherwise.  As outlined above, Finjan's contentions include narrative explanations of each infringement theory for each claim limitation and each product or product combination.  (*See, e.g.*, Exh. H at pp. 10-21 (element 1[a]).)  Again, using the '154 Patent as an example, the contentions provide headings for each individual theory, and Finjan lays out in detail the theory along with the accused functionalities.  (*Id.*)  The contentions also contain subheadings within each limitation mapping the claim language to the evidence.  (*See id.* at p. 21 (content received over a network); p. 38 (content including a call to a first function, the call including an input); p. 93 (for invoking a second function with the input, only if a security computer indicates that such invocation is safe).)  Within each of these subheadings mapped to the specific claim language, the contentions include additional subheadings for each theory and again provide detailed prose explaining how the claim limitations are satisfied by each product/theory combination.  (*See id.* at pp. 40-47 (explaining how the NGFW alone satisfies the first function limitation); *id.* at pp. 47-74 (explaining how the NGFW with WildFire and Threat Prevention satisfy the first function limitation); *id.* at pp. 74-87 (explaining how the NGFW with WildFire and URL Filtering satisfy the first function limitation); *id.* at pp. 87-93 (explaining how the Credential Phishing Prevention feature infringes the first function limitation).)

PAN's complaints really amount to a dispute about the evidence.  But Finjan is not required to marshal all of its evidence at this early stage.  *Plexxikon Inc.*, 2018 WL 11317255, at *2.  Rather, the contentions need to put PAN on notice of Finjan's infringement theories, which they do.

Nonetheless, Finjan's contentions do cite substantial evidence in support of its theories.  For each limitation and for each accused product, the contentions point to PAN's public and confidential documents, including narrative explanations detailing how the cited evidence applies to the particular limitation.  (*See, e.g.*, Exh. H at pp. 10-151 (explaining how the documents show infringement of limitation 1[a]); *id.* at pp. 204-219 (same for limitation 1[b]); *id.* at pp. 238-259 (same for limitation 1[c]).)  The contentions further include detailed prose explaining PAN marketing videos that disclose the infringing functions.  (*See id.* at pp. 151-163.)  The contentions also include source code citations for each accused product and limitation, along with narrative explanations for how the source code meets the claim limitation.  (*See, e.g., id.* at pp. 162-194

1   (explaining how the source code illustrates infringement of limitation 1[a]); *id.* at pp. 219-232 (same

2   for limitation 1[b]); *id.* at pp. 260-269 (same for limitation 1[c]).)   Finjan's contentions also include

3   evidence from Finjan's hands-on testing of PAN's accused products in operation pertaining to each

4   limitation.  (*See, e.g.*, *id.*  at pp. 194-202 (explaining how product testing confirms infringement of

5   limitation 1[a]); *id.* at pp. 232-238 (same for limitation 1[b]); *id.* at pp. 269-275 (same for limitation

6   1[c]).)  Overall, Finjan's contentions explain in great detail which features and functionalities of the

7   accused products satisfy each limitation of the claims and how they do so.

8          Despite all of this, PAN has asked the Court to strike completely Finjan's initial infringement

9   contentions.  If Finjan's infringement contentions really were deficient, one would have expected

10  PAN to provide them in full for the Court to see.  But PAN withheld the actual contentions and,

11  instead, tried to characterize them as merely containing "screenshots and generic statements," like

12  those found insufficient in the cases PAN cited.  (Mot. at pp. 5-7.)  Finjan's contentions do not fit

13  the facts of those cases.  PAN has ignored that Finjan provided explanatory narratives for its citations

14  to evidence, identifying their relevance to infringement of the claim limitation.  (*See supra*, Section

15  II.A; *see also* Exh. H at pp. 10-151 (explanation of theories using documents for limitation 1[a]);

16  *id.* at pp. 204-219 (same for limitation 1[b]); *id.* at pp. 238-259 (same for limitation 1[c]).)  And

17  contrary to PAN's assertions, the contentions include detailed descriptions tying the theories to the

18  documentary evidence.

19         PAN points to limitation 1[a] of the '154 Patent as being "representative of the deficiencies"

20  in Finjan's contentions and claims that Finjan offers no explanation of the "first function," "second

21  function," and "input" portions of that limitation.  (Mot. at pp. 5-7.)  As the discussion of that

22  limitation in the factual background section above shows, Finjan's contentions make clear how the

23  accused products meet each part of that limitation.  (*See, e.g.*, Exh. H at pp. 10-21.)  PAN wholly

24  ignores that Finjan's contentions contain a 12-page narrative explaining its infringement theory for

25  the accused products with respect to just limitation 1[a], including the "first function," "second

26  function," and "input."  (*Id.*)  For example, Finjan's contentions explain: "Portions of the NGFW

27  substitute functionality (substitute function calls) into received content that causes that content to be

28  marked for and sent to be processed by pattern recognition modules to identify malicious content

1  when the first function is invoked." (Exh. H at p. 10.)  And "[i]f the input marked for inspection

2  and inspected by pattern recognition modules is determined to be unsafe or malicious, the NGFW

3  (content processor) blocks that content and does not permit the content to load on the destination

4  computer.  Thus, the content processor invokes the second function with the input (original function)

5  only if a security computer indicates that such invocation is safe." (*Id.* at p. 11.)

6        PAN claims that, "Finjan also summarily equates 'first functions' with 'substitute

7  functionality,' but similarly provides no information on what a 'substitute functionality' is or how

8  PAN's products insert this 'substitute functionality.'" (Mot. at p. 7.)  First, the information PAN

9  claims is missing is exactly the information PAN failed to make available to Finjan, and Finjan

10  made that clear in the contentions:  "The call to a first function, the call including an input, varies

11  in each instance depending on the nature of the requested content, and is implemented by at least

12  the source code cited below and the SML files, ***which to date, PAN has not produced despite***

13  ***repeated requests by Finjan.***" (*Id.* at p. 12 (emphasis added).)[3]  PAN cannot withhold the source

14  code that implements the "substitute functionality," but then fault Finjan for not including it.

15        Second, despite that PAN had not produced the SML files, Finjan explains in narrative form

16  that the call to the first function depends on the nature of the requested content, and Finjan provides

17  specific examples including supporting document excerpts:

18
19  > In addition to files received over the network, NGFW also captures links in received emails (content), and inserts functionality (substitute functions) into the content that causes the email links (inputs) to be sent to WildFire, PAN-DB, and Inline ML (security computers) for analysis.

20  (*Id.* at pp. 74, 83; *see generally* pp. 74-87.)

21
22  > The following illustration from the WildFire Admin. Guide illustrates the infringing processing of the call to the first function, the call including an input. The following is an example of how NGFW and WildFire can work together to detect zero-day malware. A PAN customer receives an email having a download link included to an executable corresponding to a sales tool (content received over a network). The user clicks Download.
23  > ...
24  > As soon as the sales rep clicks download, the NGFW inserts substitute functionality (call to a first function, the call including an input) into the content to cause it to be transmitted to WildFire (security computer) for analysis.
25

26  _____

27  [3] PAN produced these files for inspection only after Finjan served its contentions.  Notably, based on Finjan's preliminary analysis of these files, they provide key information about the identity of the "first functions" and "second functions" that PAN complains are missing in the contentions.

28  Once Finjan has had a chance to fully analyze the remaining unproduced source code and any corresponding documentary descriptions (should PAN produce them), it fully intends to supplement its contentions.

(*Id*. at pp. 53-55; *see generally* pp. 53-58.)

PAN's complaints with respect to "content processor" and "security computer" are similarly unfounded.  (Mot. at pp. 8-9.)  PAN cites to Finjan's recitation of its theory, but fails to show the Court exactly what Finjan's contentions say.  In fact, the contentions explain the operation of the accused content processor and security computer:

> The accused content processor invokes a second function with the input only if WildFire indicates that such invocation is safe. WildFire analyzes content received over the network, and sends verdicts to NGFW with a WildFire subscription and/or with a Threat Prevention license. For example, for content received by the NGFW, the NGFW sends content (inputs) to WildFire for analysis. WildFire analyzes content using static, dynamic, and bare metal analysis. If content is malicious, WildFire creates signatures for the malicious content. Users with WildFire subscriptions and/or Threat Prevention licenses have new signatures pushed to their NGFWs every five minutes. When a malicious file is subsequently encountered, NGFW will block the file. If a malicious file attempts to travel within the network, NGFW will block further propagation. Additionally, WildFire Inline ML can dynamically detect malicious content, and can block that malicious content in real time. In newer versions, WildFire provides real-time signature updates and provides real-time verdicts to the NGFW, which causes malicious content to be blocked in real-time. Thus, the content processor invokes the second function with the input (the original function) only if a security computer indicates that such invocation is safe.

(*See, e.g.*, Exh. H at p. 12-13.)  The contentions also discuss in detail Finjan's theory for the claimed "security computer," explaining which specific functionalities of the accused products satisfy the "security computer" limitations of the claims:

> The accused security computer is comprised of structures, functionalities, operations, or systems of WildFire and/or Threat Prevention. This includes functionalities of the WildFire hardware, public cloud, PAN-DB cloud, and Bright Cloud. NGFW inserts functionality (substitute function calls) into content received over the network, and that inserted functionality causes received content to be sent to WildFire and its associated systems for analysis. WildFire (security computer) analysis can be performed on a public cloud, on a private cloud, and on a hybrid cloud. Additionally, the accused security computer is WildFire Inline ML, which conducts dynamic analysis to detect malicious files and provide real-time file blocking. WildFire ML can be implemented by a WildFire ML Cloud service (security computer). WildFire also provides real-time signature updates and real-time verdicts for Office documents, portable executables, executable and linkable format, and PDF documents.

(*See, e.g.*, Exh. H at p. 12)  Moreover, Finjan cites source code files with respect to these elements in this limitation, identifying specific content processor modules, again preceded by a narrative:

> The content processor implemented within PAN-OS implements the operations for invoking a second function with the input, only if a security computer indicates that such invocation is safe. As an example, once the input marked by the system is processed by the pattern recognition modules and is determined to be safe, the content processor transfers the content input to the first function to the destination computer to be processed by the second function.

1   (Exh. H at pp. 168-70.)  Finjan's charts illustrate that the accused products meet these limitations

2   and further provide explanations of Finjan's theories and any asserted product combinations.

3          Even at this early stage, Finjan's infringement contentions satisfy the Patent Local Rules and

4   more than pass muster based on previous determinations of courts in this District.  While PAN wants

5   to draw a parallel to Finjan's contentions in *Proofpoint,* Finjan's contentions here more than satisfy

6   Judge Gilliam's directive there.  (Mot. at p. 8.)  For instance, Finjan has provided "separate charts

7   detailing its theory of infringement as to each individual product," *Proofpoint,* 2015 WL 1517920,

8   at *3. And Finjan has explained PAN's discovery failures and why it expects additional discovery

9   to further support infringement.  *Id.* at *5.

10         **B.     PAN Demands More Of Finjan Than It Requires Of Itself**

11         PAN's demand for exacting infringement charts is especially remarkable in light of the scant

12  details provided in PAN's invalidity contentions.  PAN does not provide close to the detail that

13  Finjan provided in its infringement contentions, much less the same level of detail that PAN

14  demands in its motion.   Yet, "the level of specificity required by Rule 3-3(c) for invalidity

15  contentions is the same as that required by Rule 3-1 for infringement contentions." *Slot Speaker*

16  *Tech., Inc. v. Apple, Inc.*, No. 13-cv-01161-HSG, 2017 WL 235049, at *2 (N.D. Cal. Jan. 19, 2017);

17  *see also Mitsubishi Elec. Corp. v. Sceptre, Inc.*, No. 2:14-cv-04994-ODW, 2015 WL 2369557, at

18  *2 (C.D. Cal. May 18, 2015) (applying N.D. Cal. Patent L.R. 3-3(c) and explaining "broad or general

19  disclosures are insufficient to provide a crystallized view of invalidity theories and thus also do not

20  comply with L.R. 3-3(c).").

21         For example, PAN complains (Mot. at p. 5.) that, "Finjan's infringement contentions are

22  largely comprised of screenshots with little to no explanation," and that Finjan's charts "do not help

23  identify what features or function of the accused products purportedly meet each claim limitation."

24  That is not true; as demonstrated above, Finjan's infringement contentions include lengthy

25  explanations of Finjan's theories and detailed narratives tying the claim language to documents,

26  source code, and product testing.  PAN's invalidity contentions, on the other hand, provide nothing

27  more than screenshots of prior art, with ***no explanation*** of how that prior art allegedly teaches each

28  element of the claims.  (*See, e.g.*, Exh. V (PAN's Revised Ex. F-3 (Janus System)) at pp. 2-58.)

1    Finjan is not moving to strike PAN's invalidity contentions at this stage, but PAN should not be

2    heard to complain about Finjan's contentions while simultaneously providing contentions of its own

3    that are far less detailed.

4    **C.      Finjan's Source Code Citations Comply With Pat. L.R. 3-1 And This Court's
            Prior Rulings**

5

6    **1.      This Court Already Rejected PAN's Request To Require Finjan To
            Include Pinpoint Citations To Source Code**

7    The Court has already ***rejected*** PAN's attempt to impose a requirement that Finjan include

8    pinpoint citations to source code in its infringement contentions.  In the "Other Matters" section of

9    the parties' Joint Case Management Statement (at pp. 23-25), PAN asked the Court to require Finjan

10   to include in its infringement contentions, "pinpoint citations to the product literature and source

11   code." (Dkt. No. 104.)  Finjan responded (at pp. 25-27) that—while it "intends to include citations

12   to PAN's source code and documentation in its infringement contentions" (as Finjan indeed has

13   done)—***pinpoint citations*** to source code are not required under the Patent Local Rules.  At the Case

14   Management Conference on March 18, 2021, the Court denied PAN's request and did ***not*** order

15   Finjan to include pinpoint citations to source code in its infringement contentions.

16   Now PAN moves to strike Finjan's infringement contentions in their entirety on the basis

17   that Finjan has failed to meet a requirement this Court expressly declined to impose in the first place.

18   To strike the contentions—as PAN requests—would be profoundly unfair to Finjan.  And, as

19   discussed below, given Finjan's fulsome contentions, PAN's discovery failures, and the Patent

20   Local Rules, the Court should not even require Finjan to supplement its contentions to include

21   pinpoint citations to source code.

22   **2.      While PAN Demands Pinpoint Citations, It Has Not Produced All of The
            Source Code**

23

24   PAN's demands for pinpoint source code citations at this stage of the litigation are

25   incompatible with its discovery conduct.  PAN seeks a complete set of specific source code

26   analysis—the type typically seen only in expert reports—yet it has not produced the relevant source

27   code for at least the Traps product.  Moreover, PAN's delay in making the SML and FPGA files

28   available for inspection made it impossible for Finjan to include them in its contentions.  PAN also

     has not produced the core technical documents that would enable Finjan to narrow its identification

1   of source code files to specific functions, lines, modules, or the like.  As such, due to PAN's own

2   actions, it is premature for PAN to request pinpoint citations to source code at this stage of the case.

3   *See Droplets, Inc. v. Yahoo! Inc.*, No. 4:12-cv-03733-JST-KAW, 2020 WL 4045211, at *4 (N.D.

4   Cal. May 6, 2020) (allowing amendment "because Droplets has not had access to all of Nordstrom's

5   relevant source code and technical documents").

6                     **3.      Finjan's Contentions Put PAN On Notice Of Finjan's Theories**

7           Finjan's identification of source code and source code modules for each claim limitation,

8   along with Finjan's narrative explanations of its infringement theories, provide PAN with more than

9   adequate notice of Finjan's infringement theories.  To start, Finjan culled through *1,179,116 files* in

10  PAN's source code production—not including the late produced SML and FPGA files—and

11  narrowed those down to just *502 unique files* across all of the accused products and all of the

12  asserted claims.  Finjan's infringement contentions then identify—on a limitation-by-limitation

13  basis—which of those specific source code files are relevant to each asserted claim under Finjan's

14  infringement theory.

15          In addition to identifying the specific source code files, Finjan's contentions also provide

16  detailed descriptions explaining how the referenced source code is relevant to its infringement

17  theories.  For example, again with reference to claim 1 of the '154 Patent, before listing the relevant

18  source code files, Finjan explains the operation of the source code files and maps that operation to

19  the limitations of the asserted claims:

20  > PAN-OS includes modules that implement the operations of processing the network packets corresponding to the received files using the PAN's State Machine Language ("SML") that call a first function and the call includes an input. The first function that is implemented within the SML files receives the input, e.g., portions of the content requested by a webpage, executable files, executable code embedded within a webpage, executable code attached to an email, URLs embedded within a webpage, etc. Note that SML files are separate from PAN-OS and are received over a network, e.g., in the form of an update to the PAN-OS. Upon identifying and receiving the input, PAN-OS performs two operations. First, the system marks the input to be processed by the pattern recognition modules to identify any malicious content. Second, the system marks the input to be transferred to the Wildfire server for further analysis. Thus, PAN-OS inserts substitute functionality into the content received by the system that causes inputs to be sent to security computers for analysis.
>
> Within the PAN-OS source code, the modules that implement the operations of processing the network packets corresponding to the received files using PAN's SML and calling a first function, where the call includes an input are implemented by source code in the following files:

27  (*See, e.g.*, Exh. H at pp. 164-66 (listing relevant files).)  This is only exemplary, and a review of

28  Finjan's infringement chart illustrates substantial explanations tying source code files to the claim

1   limitations.  (*See, e.g.*, Exh. H at pp. 162-194 (limitation 1[a] for each theory); *id.* at pp. 219-232

2   (limitation 1[b] for each theory); *id.* at pp. 260-269 (limitation 1[c] for each theory)).)  PAN ignores

3   this disclosure when it claims that it is left to "guess" as to the relevance of the files given the

4   explanatory text that introduces the files, when it claims that "Finjan also does not explain how the

5   source code informs its infringement contentions," and when it claims this is "boilerplate language."

6   (Mot. at p. 11.)  Those assertions are demonstrably wrong.

7               **4.      The Patent Local Rules Do Not Require Pinpoint Citations**

8               The Patent Local Rules do not require pinpoint citations to source code in infringement

9   contentions, despite what PAN contends.  Indeed, the Patent Local Rules do not even mention source

10  code at all in Rule 3-1, which covers infringement contentions.  The first time the Patent Local Rules

11  mention source code is in Rule 3-4, which covers invalidity contentions and the documents the

12  defendant must produce with the invalidity contentions, which comes well after the date for serving

13  infringement contentions.  *See* Pat. L.R. 3-4 ("With the 'Invalidity Contentions,' the party opposing

14  a claim of patent infringement shall produce or make available for inspection and copying: (a) source

15  code, specifications, schematics, flow charts, artwork, formulas, or other documentation sufficient

16  to show the operation of any aspects or elements of an Accused Instrumentality identified by the

17  patent claimant in its Patent L.R. 3-1(c) chart.").

18              "[P]inpoint citations are not an inherent requirement of Patent Local Rule 3-1."  *Finjan, Inc.*

19  *v. Proofpoint, Inc.*, No. 13-CV-05808-HSG, 2015 WL 9023166, at *2 (N.D. Cal. Dec. 16, 2015)

20  ("*Proofpoint II*").  The court in *Proofpoint II* reasoned that "[a]lthough pinpoint citations to source

21  code are ***one way*** of meeting Rule 3-1(c)'s requirement," there is no "authority holding that pinpoint

22  citations are the ***only way*** to meet its requirements."  *Id.* at *3 (emphasis added).  Contrary to PAN's

23  assertion, *Proofpoint II* is not the "minority position" on this issue in this jurisdiction.  (Mot. at p.

24  14.)  *See Oracle Am., Inc. v. Google Inc.*, No. C 10-cv-03561-WHA, 2011 WL 4479305, at *3 (N.D.

25  Cal. Sept. 26, 2011) (denying defendant's motion to strike where plaintiff provided source code

26  files, noting that "Google's heavy reliance on a nonbinding decision requiring 'pinpoint citations'

27  to source code files is misplaced.");  *Droplets, Inc. v. Yahoo! Inc.*, No. 4:12-cv-03733-JST-KAW,

28

1    2020 WL 4045211, at *4 (N.D. Cal. May 6, 2020) ("To satisfy Patent Local Rule 3-1, courts in this

2    district *sometimes* require pinpoint source code citations . . .") (emphasis added).

3         PAN relies on *Check Point* and *FireEye* to argue that the Patent Local Rules require pinpoint

4    citations to source code.  But PAN omits a crucial fact from its argument: it was the Court's

5    Narrowing Order—not the Patent Local Rules—that required pinpoint citations in *Check Point*.

6    *Finjan, Inc. v. Check Point Software Techs., Inc.*, No. 18-cv-02621-WHO, 2020 WL 1929250, at

7    *10 (N.D. Cal. Apr. 21, 2020) ("Finjan's infringement contentions had to meet not only Patent Local

8    Rule 3-1, but also the criteria specified in the Narrowing Order. … *[T]he Narrowing Order directed*

9    *Finjan* to provide pinpoint source code citations given the circumstances in this case.") (emphasis

10   added).  PAN also neglects to mention that the *Check Point* court expressly refused to "impose a

11   blanket rule that all software cases require universal pin cites to source code." *Id*. at *6.  Rather,

12   "[t]he Narrowing Order was a *tailored* order made in light of the facts." *Id.* at *3.  This Court has

13   not issued a narrowing order in this case, and given Finjan's detailed and thorough contentions,

14   there is no call for one.  Similarly, in *FireEye*, the defendant attempted to distinguish *Proofpoint II*

15   on the basis that the infringement contentions in *FireEye* contained no source code citations, while

16   in *Proofpoint II* they included citations to source code directories.  (Dkt. No. 128-19.)  But here,

17   Finjan has provided much more detail in its infringement contentions than it did even in *Proofpoint*

18   *II*—including not just source code directory citations, but also identifying specific source code *files*

19   and providing narrative explanations for how that source code meets the claim limitations.

20        PAN's reliance on *Droplets* is also misplaced.  The Court in *Droplets* acknowledged that a

21   plaintiff "is not required to cite to every bit of source code that supports its theory of infringement

22   so long as it has adequately disclosed its infringement theory."  *Droplets, Inc.*, 2020 WL 4045211,

23   at *4 (internal quotations omitted).  Moreover, the court in *Droplets* granted leave to amend because

24   the plaintiff did not have access to relevant source code and technical documents.  *Id.* (granting

25   leave to amend "because Droplets has not had access to all of Nordstrom's relevant source code and

26   technical documents, and the remaining deficiencies are relatively minor and surely curable by

27   amendment").  This is especially fatal to PAN's argument because so much of PAN's source code

28

1   was made available too late for Finjan to include in its infringement contentions (or still has not

2   been made available).

### 5.   Finjan's Review Of PAN's Late-Produced Source Code Is Ongoing

4   PAN's motion is especially surprising given that PAN knows of its own deficiencies in its

5   source code production.  (*See* Exh. W (May 17, 2021 email from Smith to Van Nort requesting

6   inspection of PAN's late-produced source code May 24 through May 28); *id.* (May 18, 2021 email

7   from Van Nort to Smith accommodating Finjan's request); Exh. X (May 28, 2021 email from Smith

8   to Van Nort requesting additional inspection of PAN's late-produced source code June 1 through

9   June 3).)  Finjan included references to PAN's deficiencies in its infringement contentions and told

10  PAN that it intended to rely on the withheld documents and source code for purposes of

11  supplemental infringement contentions and expert reports.  (*See* Exh. A at pp. 7-8 ("source code and

12  documents that PAN has withheld, and that are material to Finjan's allegations, include SML files,

13  DFA files, hardware source code, Cuckoo Sandbox open source software, Traps-Reflector-server

14  source code, all versions of Traps after version 3.1.3, and FPGA hardware code").)  And Finjan has

15  explained to PAN during the meet and confer process that Finjan expects to supplement its

16  infringement contentions based on its ongoing source code review, in combination with review of

17  PAN's technical documents, once produced and analyzed.

18  PAN repeatedly states that the source code has been available to Finjan for twelve months.

19  That number is not accurate.  That number relies largely on the time period before the stay—nearly

20  six years ago—when PAN had made *some* of the relevant code available, particularly the code for

21  only a few versions of PAN's pre-2015 products.  But Finjan has had access to much of PAN's

22  source code for only three months or less, and Finjan still has had no access to significant portions.

23  PAN pulls soundbites out of context from the cases it cites to argue now is the time for

24  pinpoint citations, but none of these cases support PAN's motion to strike.  For example, the

25  *Vasudevan* case is not relevant for two reasons: (1) the defendant requested pinpoint citations *after*

26  providing all relevant source code; and (2) the plaintiff had failed to provide citations to any level

27  of source code, instead stating simply that source code was required to illustrate infringement.  *See*

28  *Vasudevan Software, Inc. v. Int'l Bus. Machines Corp.*, No. C 09-cv-05897-RS-HRL, 2011 WL

940263, at *8 (N.D. Cal. Feb. 18, 2011). In *Diagnostic Systems*—which is not from this District— the defendant challenged the plaintiff's updated (not initial) infringement contentions, which the plaintiff served after having access to the source code and "executable copies and operating manuals for the accused products" for a year. *Diagnostic Sys. Corp. v. Symantec Corp.*, No. 06-cv-1211-DOC-ANX, 2009 WL 1607717, at *2-4 (C.D. Cal. June 5, 2009). Here, Finjan just served its infringement contentions two and a half months ago, PAN has yet to produce all the source code or the accompanying documents, and Finjan has told PAN that it will supplement once it has received the necessary information and had adequate time to review. Finally, the *Big Baboon* case is also inapposite, as it did not involve infringement contentions under the Northern District's Patent Local Rules, but rather a response to an interrogatory in a case in the Central District of California. *Big Baboon Corp. v. Dell, Inc.*, 723 F. Supp. 2d 1224, 1225 (C.D. Cal. 2010). Indeed, the court in *Proofpoint II* distinguished the *Big Baboon* case on that ground. 2015 WL 9023166, at *2.

### D. Finjan's Doctrine Of Equivalents Contentions Are Specific And Detailed

PAN argues that the Court should strike Finjan's doctrine of equivalents arguments from its infringement contentions, saying they are similar to the arguments stricken in *Proofpoint I*. (Mot. at 14-15.) But unlike in that case—where the court held that Finjan had asserted blanket, boilerplate DOE theories—Finjan's doctrine of equivalents theories in this case are thoughtful, reasoned, and sufficiently explained in its contentions. For example, below is an excerpt showing Finjan's doctrine of equivalents argument for claim element 1[c] of the '408 Patent:

1    (*See, e.g.*, Exh. J at pp. 129-130; *see also* Exh. H at pp. 202-04.)

2        Again, PAN's cases are inapposite.  Unlike in *CSR Tech.*, Finjan has provided its complete

3    doctrine of equivalents theory, not just a "sampling."  *CSR Tech. Inc. v. Freescale Semiconductor*,

4    No. 12-cv-02619-RS-JSC, 2013 WL 503077, at *9 (N.D. Cal. Feb. 8, 2013) (ordering amended

5    contentions because "Plaintiff includes only a sampling of its doctrine of equivalents theory"

6    through the use of transition phrases like "For instance").  And unlike in *Sophos*, this is not a case

7    of "boilerplate" reservation of rights.  2015 WL 5012679, at *4.  Finally, *Network Caching Tech. v.*

8    *Novell, Inc.* never even mentions doctrine of equivalents contentions.  2002 WL 32126128, at *6.

9        PAN cherry-picks one limitation from Finjan's contentions (limitation 1[b] from the '731

10   Patent) and ignores all of the other doctrine of equivalents contentions in Finjan's charts.  Yet, even

11   in PAN's example, Finjan has set forth an identification of the structures accused of infringing under

12   the doctrine of equivalents.  PAN calls this "reiterate[ing] the claim language in the guise of a

13   function-way-result analysis," (Mot. at p. 15), but there is nothing wrong with linking the accused

14   structures to the relevant limitations using the claim language.  PAN is wrong to draw parallels to

15   *CSR Tech. Inc.*, because Finjan does not reference the entire accused product in a blanket statement,

16   but instead focuses on the memory, the file identifier or hash, and indexing the files in the memory.

17   (Mot. at p. 15; Exh. Y ('731 Patent) at p. 90.)

18       Finally, PAN complains that Finjan has identified multiple "Accused Products."  While it is

19   unclear whether this complaint extends beyond Finjan's doctrine of equivalents contentions, PAN

20   ignores that Finjan has set out in great detail how each accused product, alone and in combination,

21   infringes the asserted claims, and PAN ignores that certain of Finjan infringement theories

22   encompass a combination of products, as explained in the contentions.  For example, with respect

23   to '731 claim element 1[b], Finjan explains how WildFire and NGFW interact:

24       Basic WildFire, WF-500 and WildFire Subscription. Basic WildFire functionality is available as part of the Threat Prevention
         license and as part of all platforms running PAN OS 4.1 and greater, including the NG Firewalls, and also including all platforms
25       running WildFire 6.0, 6.1, 7.0, 7.1, and 8.0. *See* FINJAN-PAN 093612-15. Each accused WildFire product or subscription
         operates in substantially the same manner, with the differences being that Basic WildFire provides limited analysis on certain file
26       types in comparison to WildFire Subscription. *See* FINJAN-PAN 093612-15. In addition, WF-500 is a hardware appliance that
         acts as a "private cloud" version of the WildFire Subscription. *See* FINJAN-PAN 093612-15.

27

28

1   (Exh. D at p. 1.)  And Finjan proceeds to explain why, again using the '731 patent as an example,

2   NGFW and the combination of NGFW and Wildfire infringe based on their joint or common

3   features:

> NGFW alone or in combination with WildFire provide a file cache for storing files that have been scanned by the scanner for **future access**, wherein each of the stored files is indexed by a file identifier.
>
> NGFWs alone or in combination with WildFire meet the recited claim language because they provide a file cache for storing files that have been scanned by the scanner for future access, wherein each of the stored files is indexed by a file identifier.
>
> NGFW have a file cache for storing files that have been scanned by the scanner for future access in form of software and/or hardware.
>
> NG Firewalls cache the results of Content-ID, which "enables customers to apply policies to inspect and control content traversing the network." FINJAN-PAN 093593-97.  This includes entries related to the allowability of particular content relative to a policy. For example:

10  (Exh. D at p. 75.)

11      PAN's argument that Finjan does not differentiate the accused products with respect to its

12  infringement reads is inaccurate.  (Mot. at p. 16 ("Additionally, Finjan lumps together three

13  disparate lines of products—NGFW, WildFire, and Traps—under one single 'Accused

14  Products.'").)  Finjan specifically identified different accused PAN products (e.g., NGFW,

15  WildFire, and Traps) and explained how each product infringed alone or in combination within each

16  of its claim charts.  (*See, e.g.*, Exh. D at pp. 1, 75; Exh. J at pp. 1-3, 10-11.)

17      **E.      PAN's Motion To Strike Is Improper And Untimely**

18      If the Court is to consider PAN's motion at all, it should consider it instead as a motion to

19  compel given the early stage of litigation, and even in that context the motion should be denied in

20  light of Finjan's detailed and thorough contentions.  "Striking a patentee's infringement contentions

21  is a severe sanction that should be used sparingly and only for good cause."  *Uniloc USA, Inc. v.*

22  *Apple Inc.*, No. 19-cv-01692-EJD-VKD, 2020 WL 1984305, at *2 (N.D. Cal. Apr. 27, 2020).

23  Finjan's infringement contentions are far from insufficient, but even if the Court were to find that

24  they are, the proper remedy would be for the Court to order supplementation, not to strike the

25  contentions entirely, as PAN requests.  *See Blue Spike v. Adobe Sys.*, No. 14-cv-01647-YGR-JSC,

26  2015 WL 335842, at *4 (N.D. Cal. Jan. 26, 2015) ("Where appropriate, courts treat a motion to

27  strike as a motion to compel amendment to include additional information infringement

28  contentions."); *see also Geovector Corp. v. Samsung Elecs. Co.*, No. 16-cv-02463-WHO, 2017 WL

76950, at *7 (N.D. Cal. Jan. 9, 2017) ("In this district, motions to strike initial infringement contents are frequently treated as motions to compel amendment of the infringement contentions."); *FusionArc, Inc. v. Solidus Networks, Inc.*, No. 06-cv-06760-RMW-RS, 2007 WL 1052900, at *2 (N.D. Cal. Apr. 5, 2007) ("Case precedent recognizes such 'motions to strike' as requests that plaintiffs be compelled to amend their preliminary contentions to provide additional information.").

That is especially true where—as here—the defendant has not yet produced technical documents and source code that are necessary for the infringement contentions.  *See Finjan, Inc. v. Sophos, Inc.*, No. 14–cv–01197–WHO, 2015 WL 5012679 (N.D. Cal. Aug. 24, 2015) (resolving motion to strike as a discovery dispute where defendant's source code production was deficient); *Comcast Cable Commc'ns, LLC v. OpenTV, Inc.*, No. C 16-cv-06180-WHA, 2017 WL 2630088, at *6 (N.D. Cal. June 19, 2017) (explaining that "striking with prejudice is unwarranted, at least at this stage" in regards to defendant's motion to strike initial infringement contentions).  In the *Sophos* case, the court found that the defendant failed to provide adequate information about its source code—as PAN has failed to do here—and the court determined that Sophos had to cure its discovery failures ***before*** Finjan would be required to ***supplement*** its infringement contentions.  2015 WL 5012679, at *3 ("[I]t is easy to conclude that the appropriate resolution of the parties' dispute is for Sophos to provide Finjan additional guidance regarding its source code.").

Despite saying it will produce technical documents and additional source code for the accused products, PAN has not yet done so.  The best path forward would be for PAN to produce the requested technical information, and allow Finjan to supplement, as appropriate.

### F.    Other Finjan Cases Are No Reason To Strike Here

Much of PAN's motion focuses not on Finjan's infringement contentions in this case, but instead on previous cases where courts have found Finjan's contentions lacking.  (*See* Mot. at pp. 2-3.)  But PAN ignores that, in just the past few months, courts in this District have found Finjan's infringement contentions sufficient, even when the contentions were far less detailed than the contentions here.  *See e.g., Finjan, Inc. v. SonicWall, Inc.*, No. 5:17-cv-04467-BLF, Dkt. No. 436, at *3 (N.D. Cal. Mar. 22, 2021) ("As required by the Patent Local Rules, Finjan has specified 'where and how each limitation of each asserted claim is found within each Accused Instrumentality' …

The Court highlights that the Patent Local Rules do not require perfect clarity, only reasonable notice."); *see also Finjan, Inc. v. Qualys Inc.*, No. 4:18-cv-07229-YGR, 2021 WL 1253651 at *5 (N.D. Cal. Apr. 5, 2021) ("While these contentions could have been more specific, the Court finds that Finjan sufficiently disclosed its overall theory for this limitation.").

PAN's mudslinging ignores the particular circumstances of each case.  For example, PAN overlooks that the Court in *Sophos* resolved the motion to strike as a discovery dispute.  *See* 2015 WL 5012679, at *3 ("Having now received and reviewed Finjan's opposition to the motion to strike, I see that this was essentially a discovery dispute. … alleged deficiencies in Sophos's source code production have prevented it from making its contentions better").  And as mentioned above, the Court in *Checkpoint* ordered Finjan to provide pinpoint citations based not on the Patent Local Rules, but on a Narrowing Order, which does not exist here.  Finally, while PAN cites to a few cases where courts struck Finjan's infringement contentions, they did so only after first ordering Finjan to supplement its contentions.  *See Finjan, Inc. v. Check Point Software Tech., Inc.*, No. 18-cv-02621-WHO, 2019 WL 955000, at *9 (N.D. Cal. Feb. 27, 2019); *Finjan, Inc. v. SonicWall, Inc.*, No.17-cv-04467-BLF (VKD), 2019 WL 2077849, at *16 (N.D. Cal. May 10, 2019); *Finjan, Inc. v. Sophos, Inc.*, No. 14–cv–01197–WHO, 2015 WL 5012679, at *4 (N.D. Cal. Aug. 24, 2015). Infringement contentions are unique from case to case.  Finjan's infringement contentions in this case stand on their own, and the Court should consider them as such.  They are detailed, thorough, and far from insufficient.

## IV.   CONCLUSION

For all of the foregoing reasons, Finjan respectfully requests that the Court deny PAN's motion in its entirety.  If the Court is inclined to order Finjan to supplement its infringement contentions, Finjan respectfully requests it should not be required to do so until after PAN remedies its discovery deficiencies, including document production and source code production, to avoid any additional prejudice to Finjan due to PAN's discovery conduct.[4]

---

[4] On the day this opposition brief was due (June 29, 2021)—nearly three months after Finjan's infringement contentions were served—PAN finally made later versions of Traps source code (versions 4.0, 5.0, 6.0, and 7.0) available for inspection.

Dated:  July 27, 2021

Respectfully Submitted,

/s/ Phillip W. Goter

Juanita R. Brooks (CA SBN 75934)
brooks@fr.com
Roger A. Denning (CA SBN 228998)
denning@fr.com
Frank J. Albert (CA SBN 247741)
albert@fr.com
K. Nicole Williams (CA SBN 291900)
nwilliams@fr.com
Jared A. Smith (CA SBN 306576)
jasmith@fr.com
Tucker Terhufen (CA SBN 311038)
terhufen@fr.com
FISH & RICHARDSON P.C.
12860 El Camino Real, Ste. 400
San Diego, CA 92130
Telephone: (858) 678-5070 / Fax: (858) 678-5099

Aamir Kazi (*Pro Hac Vice*)
kazi@fr.com
Lawrence Jarvis (*Pro Hac Vice*)
jarvis@fr.com
FISH & RICHARDSON P.C.
1180 Peachtree St. NE, 21st floor
Atlanta, GA  30309
Telephone: (404) 892-5005 / Fax: (404) 892-5002

Phillip W. Goter (*Pro Hac Vice*)
goter@fr.com
FISH & RICHARDSON P.C.
3200 RBC Plaza, 60 South Sixth Street
Minneapolis, MN  55402
Telephone: (612) 335-5070 / Fax: (612) 288-9696

Susan E. Morrison (*Pro Hac Vice*)
morrison@fr.com
FISH & RICHARDSON P.C.
222 Delaware Ave., 17th Floor, P.O. Box 1114
Wilmington, DE  19801
Telephone: (302) 652-5070 / Fax: (302) 652-0607

Tracea Rice (*Pro Hac Vice*)
trice@fr.com
FISH & RICHARDSON P.C.
1000 Maine Ave. Ste. 1000
Washington, DC 20024
Telephone: (202) 783-5070 / Fax: (202) 783-2331

Attorneys for Plaintiff FINJAN LLC