Juanita R. Brooks (CA SBN 75934) / brooks@fr.com
Roger A. Denning (CA SBN 228998) / denning@fr.com
Frank J. Albert (CA SBN 247741) / albert@fr.com
K. Nicole Williams (CA SBN 291900) / nwilliams@fr.com
Jared A. Smith (CA SBN 306576) / jasmith@fr.com
Tucker Terhufen (CA SBN 311038) / terhufen@fr.com
FISH & RICHARDSON P.C.
12860 El Camino Real, Ste. 400
San Diego, CA 92130
Telephone: (858) 678-5070 / Fax: (858) 678-5099

Susan E. Morrison (*Pro Hac Vice*) / morrison@fr.com
FISH & RICHARDSON P.C.
222 Delaware Avenue, 17th Floor
P.O. Box 1114
Wilmington, DE 19801
Telephone: (302) 652-5070 / Fax: (302) 652-0607
Additional counsel listed on signature page

*Attorneys for Plaintiff,*
FINJAN LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

(SAN FRANCISCO DIVISION)

| | |
|---|---|
| FINJAN LLC, | Case No. 4:14-cv-04908-JD |
| Plaintiff, | **FINJAN LLC'S REPLY CLAIM CONSTRUCTION BRIEF** |
| v. | |
| PALO ALTO NETWORKS, INC., | Hon. James Donato |
| Defendant. | Ctrm: 11, 19th Floor |

**TABLE OF CONTENTS**

**Page**

I.    ARGUMENT ................................................................................................................ 1

    A.    Term 1: "file cache" ('731 Patent Claims 1, 3, 14, 17).......................................... 1

    B.    Term 2: "incoming files from the Internet" ('731 Patent Claims 1-3) .................................................................................................................. 2

    C.    Term 3: Preamble of Claim 14 ('633 Patent Claim 14) ....................................... 2

        1.    The Correction to Claim 14 Is Not Subject to Reasonable Debate ...................................................................................................... 2

        2.    Claim 14 Is Not Indefinite Under *IPXL* ....................................... 3

    D.    Term 4: "mobile protection code" ('633 Patent Claim 14).................................. 5

    E.    Term 5: "downloadable-information destination" ('633 Patent Claim 14)............................................................................................................ 5

    F.    Term 6: "parse tree" ('408 Patent Claims 1, 3-8, 22) .......................................... 6

    G.    Term 7: "programming language" ('408 Patent Claims 1, 3-8, 22)..................... 6

    H.    Term 8: "lexical constructs for the specific programming language" ('408 Patent Claims 1, 3-8, 22)................................................................ 8

    I.    Term 9: "content processor" ('154 Patent Claims 1, 2, 6, 7) and Term 10: "content" ('154 Patent Claims 1, 2, 4, 6, 7, 10) .................................... 8

II.    CONCLUSION........................................................................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*e.Digital Corp. v. Futurewei Techs., Inc.*,
   772 F.3d 723 (Fed. Cir. 2014).................................................................................................. 10

*Finjan, Inc. v. Blue Coat Sys., Inc.*,
   No. 13-CV-03999-BLF, 2014 WL 5361976 (N.D. Cal. Oct. 20, 2014) ....................... 2, 3, 4, 5

*Finjan, Inc. v. Blue Coat Sys., LLC*,
   283 F. Supp. 3d 839 (N.D. Cal. 2017) ......................................................................................5

*Finjan, Inc. v. Cisco Sys. Inc.*,
   No. 17-CV-00072-BLF, 2019 WL 452038 (N.D. Cal. Feb. 5, 2019)............................... 2, 3, 7

*Finjan, Inc., v. Proofpoint, Inc.*,
   No. 13-CV-05808-HSG, 2015 WL 7770208 (N.D. Cal. Dec. 3, 2015)...................................5

*Finjan, Inc. v. Sonicwall, Inc.*,
   No. 17-CV-04467-BLF, 2019 WL 1369938 (N.D. Cal. Mar. 26, 2019) .............................. 2, 3

*Halliburton Energy Services, Inc. v. M-I LLC*,
   514 F.3d 1244 (Fed. Cir. 2008).................................................................................................2

*HTC Corp. v. IPCom GmbH & Co., KG*,
   667 F.3d 1270 (Fed. Cir. 2012).................................................................................................4

*Implicit, LLC v. Imperva, Inc.*,
   No. 2:19-CV-00037-JRG-RSP, 2020 WL 10356908 (E.D. Tex. Apr. 22, 2020).....................3

*IPXL Holdings, L.L.C. v. Amazon.com, Inc.*,
   430 F.3d 1377 (Fed. Cir. 2005).................................................................................................4

*MasterMine Software, Inc. v. Microsoft Corp.*,
   874 F.3d 1307 (Fed. Cir. 2017).................................................................................................4

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
   572 U.S. 898 (2014) ..................................................................................................................6

I.   ARGUMENT

   A.   Term 1: "file cache" ('731 Patent Claims 1, 3, 14, 17)

PAN's opposition fails to adequately address three key points from Finjan's opening brief: (1) claim 1 must be broad enough to cover a "file cache" where the files are ***not*** deleted, because it supports dependent claims where files ***are*** deleted (Dkt. No. 158 at p. 3); (2) PAN's construction is confusing for the jury; and (3) PAN's construction contradicts teachings in the '731 patent that disclose using a cache to store security policy files that need not be deleted. (*Id.* at pp. 3-4.)  PAN has no response of any kind for the first two points. *See* Dkt. No. 159 at pp. 2-4.  On the third point, PAN asserts that Finjan mischaracterizes the patent, but PAN points to nothing stating that the security policy files are deleted except attorney argument.  Dkt. No. 159 at pp. 3-4.

Instead of addressing these issues, PAN incorrectly argues that Finjan's proposal is a change from its prior position.  Dkt. No. 159 at p. 3.  Finjan has always asserted that the plain and ordinary meaning for "file cache" is a "memory for storing a file at least temporarily," which the PTAB agreed with and adopted.  Dkt. No. 158-6 at p. 6.  PAN tries to stretch an unrelated statement Finjan previously made regarding "caching," but Finjan never said that caching is ***limited*** to temporary storage and Finjan's prior statement is entirely consistent with its proposal.  Finally, PAN argues that extrinsic evidence supports limiting "file cache" to only temporary storage, but even if relevant, none of this evidence requires that a "file cache" must be limited to temporary storage.

PAN separately argues that a "cache" should be limited to a data structure.  But there is simply no support for this interpretation (PAN points only to statements from its paid expert).  PAN acknowledges that it improperly includes "data structure" in making its compromise proposal of "software or hardware to temporarily store files for faster retrieval later," which removes "data structure."  Dkt. No. 159 at p. 4.  Thus, PAN's proposal should be rejected

PAN's compromise proposal still limits "file cache" to only temporary storage and should be rejected for the reasons previously discussed.  PAN's inclusion of "faster retrieval later" is also unsupported and would improperly import a non-recited limitation into the claims.  Thus, PAN's comprise proposal should also be rejected.

**B.      Term 2: "incoming files from the Internet" ('731 Patent Claims 1-3)**

PAN's proposal is not the plain and ordinary meaning because it adds a non-recited limitation of "requested by an intranet computer." PAN does not address that claim 1 does not tie the "incoming files" to any "request," much less a "request by an intranet computer." *See* Dkt. No. 159 at pp. 5-6. PAN's argument about claim 6 being directed to "different files in different locations" is misleading and incorrect. *Id*. Claim 6 explicitly requires a "request for files" whereas claim 1 **does not**. *Compare* Dkt. No. 158-2 at cl. 1 *with* Dkt. No. 158-2 at cl. 6. PAN cannot rewrite the claims to add the "requested by an intranet computer" limitation.

PAN also argues that the specification requires that incoming files from the Internet must be the result of a requested by an intranet computer. *See* Dkt. No. 159 at pp. 5-6. PAN is incorrect. The specification lists multiple preferred embodiments where a computer gateway and scanner process files that are not requested by any computer, let alone an intranet computer. PAN does not address these disclosures. *See* Dkt. No. 159 at pp. 5-6. Nor does PAN deny that it attempts to improperly import limitations from the specification into the claims. *See id*. Thus, PAN's proposal should be rejected.

**C.      Term 3: Preamble of Claim 14 ('633 Patent Claim 14)**

PAN offers *no* authority that Finjan must fix the claim through a certificate of correction.[1] Indeed, three prior times this District interpreted the claim as Finjan suggests. *See Finjan, Inc. v. Blue Coat Sys., Inc.*, No. 13-CV-03999-BLF, 2014 WL 5361976, at *7-8 (N.D. Cal. Oct. 20, 2014) (correcting claim); *Finjan, Inc. v. Cisco Sys. Inc.*, No. 17-CV-00072-BLF, 2019 WL 452038, at *4-5 (N.D. Cal. Feb. 5, 2019) (same); *Finjan, Inc. v. Sonicwall, Inc.*, No. 17-CV-04467-BLF, 2019 WL 1369938, at *5 (N.D. Cal. Mar. 26, 2019) (same).

**1.      The Correction to Claim 14 Is Not Subject to Reasonable Debate**

PAN appears to be contending that the preamble of a Beauregard claim must include the magic words "instructions for a computer to perform," and because Claim 14 does not include them, it is not a Beauregard claim. Neither *CyberSource*, nor any other legal precedent establishes such a

---

[1] PAN relies on *Halliburton Energy Services, Inc. v. M-I LLC*, but that case does not address certificates of correction, and the portion PAN quotes relates to patent drafting and examination. *See* 514 F.3d 1244, 1255 (Fed. Cir. 2008).

requirement. Indeed, courts in this District—in view of *CyberSource*—have already found **three times** that Claim 14 is, in fact, a Beauregard claim. *Blue Coat,* 2014 WL 5361976, at *7 ("[T]he corrected preamble can be reasonably interpreted to set forth a computer readable program code that, when executed, performs the limitations of the claim."); *Cisco*, 2019 WL 452038, at *4 (same); *Sonicwall*, 2019 WL 1369938, at *5 (same). At least one other court has also agreed with this construction. *Implicit, LLC v. Imperva, Inc.*, No. 2:19-CV-00037-JRG-RSP, 2020 WL 10356908, at *7 (E.D. Tex. Apr. 22, 2020) (citing *Blue Coat*, 2015 WL 3630000, at *13) ("The claims here appear to take the traditional form of a Beauregard claim. … The Court finds that these claims are analogous to the claims analyzed in Finjan.").

Next, PAN argues (at 9) that removing "the method" from Claim 14 introduces antecedent basis issues into dependent Claims 15-20. But PAN does not dispute that those claims could be similarly corrected, removing "the method" and referring to the computer program product of Claim 14. Dkt. No. 159 at pp. 8-10; Dkt. No. 158-10 at ¶¶ 48-52. Courts in this District have twice rejected PAN's very argument. *See Cisco*, 2019 WL 452038, at *5; *Sonicwall*, 2019 WL 1369938, at *6.

Finally, there is no reasonable debate that the intrinsic evidence (in particular, the file history) indicates that the applicant intended to amend Claim 30 (now Claim 14) to be a computer readable medium claim rather than a method claim. PAN does not dispute that its own expert stated as much. Dkt. No. 158 at p. 8 (citing Dr. Rubin's discussion of the prosecution history). PAN points (at pp. 9-10) to the fact that the applicant added the word "the" before "method," and that the applicant referred to the other independent claims as "computer-readable storage medium" claims. But the applicant amended the preamble of rejected Claim 30 from "A processor-based method, …" to "***A computer program product***, comprising a computer usable medium having a computer readable program code therein, the computer readable program code adapted to be executed for computer security, …" (*see* Dkt. No. 158-11 at p. 6)—evincing clear intent to change the claim from a method claim to a Beauregard claim.

    **2.**    **Claim 14 Is Not Indefinite Under *IPXL***

Finally, neither the uncorrected nor corrected version of Claim 14 is indefinite under *IPXL*. "The concern underlying [the Court's] holding in *IPXL Holdings* was that claiming both an

1  apparatus and method of using the apparatus within a single claim can make it unclear whether
2  infringement occurs when one creates an infringing system, or whether the user actually uses the
3  system in an infringing manner." *MasterMine Software, Inc. v. Microsoft Corp.*, 874 F.3d 1307,
4  1313 (Fed. Cir. 2017).  In *IPXL*, the Federal Circuit determined that a system claim with a limitation
5  that "the user uses the input means" to perform a certain function was indefinite because it recited
6  both a system and a method for using that system such that the scope of the claimed invention would
7  not be reasonably clear to one of skill in the art.  *IPXL Holdings, L.L.C. v. Amazon.com, Inc.*, 430
8  F.3d 1377 (Fed. Cir. 2005).  PAN fails to point to a single limitation—such as the "user uses the
9  input means" limitation in *IPXL*—that makes the manner of infringement unclear.  That is because
10 Claim 14, like the claims in *MasterMine* and *HTC Corp.*, "merely use[s] permissible functional
11 language to describe the capabilities of the claimed system," and therefore "it is clear that
12 infringement occurs when one makes, uses, offers to sell, or sells the claimed system."  *See*
13 *MasterMine*, 874 F.3d at 1313; *see also HTC Corp. v. IPCom GmbH & Co., KG*, 667 F.3d 1270,
14 1274, 1277-78 (Fed. Cir. 2012); Dkt. No. 158-10 at ¶ 58 ("[A] POSITA would readily understand
15 [] the scope of the claim even if it were to include the phrase "the method").  Instead, PAN argues
16 in conclusory fashion (at 10) that "in the ***uncorrected*** version of claim 14, it is unclear whether one
17 infringes by making a "computer program product" or practicing "the method," (emphasis added),
18 which is far from sufficient to satisfy its clear and convincing burden.

19     PAN also argues in conclusory fashion (at 11) that the ***corrected*** version of Claim 14 "is
20 indefinite because it is not clear how the claimed 'steps' are included in the claimed product or
21 whether the 'steps' must be performed for infringement."  A POSITA, however, would understand
22 that the claim refers to a product that includes a computer useable medium having computer readable
23 program code therein adapted to be executed for computer security, and the subsequent limitations
24 refer to instructions stored on that medium.  *See* Dkt. No. 158-10 at ¶ 58.  The *Blue Coat* court
25 examined this specific issue in the context of summary judgment, opined that it "finds no confusion
26 over when infringement of Claim 14 occurs," and found that corrected Claim 14 is not indefinite
27 under *IPXL*.  *See Blue Coat*, 2015 WL 3630000, at *13 (N.D. Cal. June 2, 2015) ("[T]he Court
28 gathers that Claim 14 is infringed when an accused infringer makes, uses, offers to sell, or sells an

apparatus containing a computer usable medium."). This Court should also find that Claim 14—uncorrected or corrected—is not indefinite.

### D.     Term 4: "mobile protection code" ('633 Patent Claim 14)

Finjan's opening brief cites several examples from the claim and the specification that confirm that the "mobile protection code" need not be executable. Dkt. No. 158 at pp. 9-10. PAN does not address those examples. PAN argues that the courts in *Blue Coat II* and *Sonicwall* adopted the construction PAN proposes here. But PAN completely ignores that Finjan's proposal—minus the agreed upon "without modifying the executable code" portion—was adopted in *Blue Coat*, *Proofpoint*, and IPR2019-00060. *See Blue Coat*, 2014 WL 5361976, at *7-8; *Finjan, Inc., v. Proofpoint, Inc.*, No. 13-CV-05808-HSG, 2015 WL 7770208, at *5 (N.D. Cal. Dec. 3, 2015); Exh. 20 (IPR2019-00060, Paper 7) at p. 6. PAN also ignores that neither PAN nor Dr. Rubin sought to add this extraneous requirement to the construction of the term in IPR2019-01974. *See* Dkt. No. 158-8 at pp. 18-20 (construing "mobile protection code"); Dkt. No. 158-9 at ¶¶ 81-83 (same).

*Blue Coat II* did not find, as PAN urges, that "the patent describes that mobile protection code is 'initiated,' and that the operating system 'executes' mobile protection code." *See generally Finjan, Inc. v. Blue Coat Sys., LLC*, 283 F. Supp. 3d 839, 870 (N.D. Cal. 2017). And assuming for argument mobile protection code is capable of being "initiated" or "execute[d]," neither means it is necessarily itself "executable." Finally, PAN fails to explain how mobile protection code "execut[ing] the protection policies," "installing mobile protection code elements," "loading 'Downloadables," and "forming and 'access monitor" teaches that mobile protection code must itself be executable. Accordingly, the Court should adopt Finjan's proposed construction.

### E.     Term 5: "downloadable-information destination" ('633 Patent Claim 14)

PAN's argument relies entirely on the fact that the court in *Cisco* adopted the construction PAN proposes here (while failing to acknowledge that the court in *Proofpoint* adopted Finjan's proposed construction). *Proofpoint, Inc.*, 2015 WL 7770208, at *5. But more importantly, PAN fails to address the biggest problem that results from blindly applying the *Cisco* construction in this case: including "user device" in the construction here will cause juror confusion.

PAN does not dispute that the '633 Patent broadly defines "user device" to refer to anything

from a client device to a firewall or server.  Dkt. No. 158 at p. 11; *see generally* Dkt. No. 159.  PAN also does not dispute that injecting "user device" into this construction will confuse the fact finder, who will be forced to determine what is a "user device," but without the guidance from the specification.

PAN's only response is an assertion that Finjan's position that adding "user device" to the construction of "downloadable-information destination" ('633 Patent) will cause juror confusion is somehow at odds with Finjan's unrelated position that no construction is necessary for "parse tree" and "lexical constructs" ('408 Patent), is inapposite.  Unlike those other patents, the '633 patent expressly defines "user device."  Thus, the Court should reject PAN's proposed construction.  But to the extent the Court determines that "user device" should be included in the construction, the Court should clarify the scope of a "user device" (which PAN does not dispute):  "any device from a client device to a firewall or server."  *See* Dkt. No. 158-3 at 7:37-62.

F. **Term 6: "parse tree" ('408 Patent Claims 1, 3-8, 22)**

Finjan maintains that this term does not require construction.  PAN criticizes Finjan, but PAN too previously believed this term should be construed more broadly.  Dkt. No. 158 at p. 12.  But, in an effort to minimize disputes, Finjan does not oppose PAN's proposal in this instance.

G. **Term 7: "programming language" ('408 Patent Claims 1, 3-8, 22)**

Despite everyone (Finjan, PAN, and both experts) agreeing that "programming language" has a plain and ordinary meaning, PAN argues that the claim is indefinite, which under the law requires PAN to offer clear and convincing evidence that the claims fail to "inform those skilled in the art about the scope of the invention with reasonable certainty."  *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 910 (2014).  PAN's argument fails to meet that standard because the '408 Patent clarifies the alleged "ambiguity" that PAN identifies, as does the extrinsic evidence.

PAN's basis for arguing indefiniteness is that the dependent claims refer to HTML and URIs as "programming languages."  If anything, this clarifies the scope of the term: "programming language" is to be given its plain and ordinary meaning, which would include HTML and URI.  Thus, the "claims, viewed in light of the specification and prosecution history, inform those skilled in the art about the scope of the invention with reasonable certainty." *Nautilus*, 572 U.S. at 910.  In

1  fact, PAN is not able to dispute that HTML and URI satisfy criteria that even PAN's expert identifies
2  as associated with a programming language. *See* Dkt. No. 158 at 13 (identifying criteria that PAN's
3  expert associates with "programming language" and that are found in HTML and UR); Dkt. No.
4  159 at pp. 12-14 (failing to rebut Finjan's argument).

5  PAN instead offers conclusory criticisms that are not supported by the record evidence. For
6  example, PAN contends URI and HTML do not result in an "executable" or "executable code." But
7  programming languages need not result in "executables" (such as an EXE file)—only steps that can
8  be executed by a computer. And as Dr. Orso explains, both HTML and URI results in specific steps
9  that are executed by a computer. Dkt. No. 158-10 ¶¶ 75-77. PAN then argues that HTML is not
10 able to add two numbers together, but that is not a requirement of a programming language. PAN
11 states that URI cannot define a series of instructions, but fails to address the excerpt from the URI
12 standard that explains how a URI is translated into a scheme and path components, which
13 correspond to a series of instructions. Dkt. No. 158-10 ¶ 73.

14 The remainder of PAN's arguments on this term are improper characterizations of Dr. Orso's
15 deposition. While it is technically accurate that Dr. Orso did not recall telling anyone that URI is a
16 programming language, he offered the same testimony about other languages (such as Java, Lisp
17 and Fortran), all of which PAN appears to agree are programming languages. Exh. 21 (Orso Tr.) at
18 93:25-95:19. The larger point in Dr. Orso's testimony is that he does not recall engaging in that
19 type of dialogue regarding programming languages in general. *See id*. at 89:19-91:6, 93:25-98:6.
20 And PAN's argument that Dr. Orso was unable to "exclude anything as a programming language"
21 is both incorrect and misleading. Dkt. No. 159 at 14. Dr. Orso was presented with a number of
22 hypotheticals on which he had not offered an opinion and was being asked improper
23 noninfringement and/or invalidity questions. Dr. Orso's testimony was only that he was not offering
24 an opinion on those issues during this claim construction deposition.

25 Finally, PAN improperly presents some undisclosed extrinsic evidence to argue that HTML
26 and URI are not a programming language. Dkt. No. 159 at pp. 12-13. However, PAN's own expert
27 explicitly acknowledges that others believe HTML is a programming language and that HTML and
28

URI contain characteristics that would qualify as programming languages as do other sources.[2]  *See, e.g.*, Dkt. No. 158 at pp. 12-13; Dkt. No. 158-10 at ¶¶ 67-82.  Thus, PAN's argument should be rejected as incorrect and untimely, and the Court should find the term definite.

### H. Term 8: "lexical constructs for the specific programming language" ('408 Patent Claims 1, 3-8, 22)

PAN fails to identify any support in the intrinsic record for its inclusion of the non-recited limitation of "defining the operation of the program code."  Dkt. No. 159 at pp. 14-15.  The specification describes "lexical constructs for a specific programming language" in connection with a few exemplary embodiments consistent with its plain and ordinary meaning.  *See, e.g.*, Dkt. No. 158-5 at 2:6-15, 2:25-34.  The specification says nothing about "defining the operation of the program code" that PAN attempts to import into the claims.  *See generally* Dkt. No. 158-5.

PAN's extrinsic support is both untimely and insufficient.  The only support PAN identifies for adding "defining the operation of the program code" is deposition testimony from its expert not found in his declaration.  *See* Dkt. No. 158-12 at ¶¶ 76-79.  Even if the testimony had been properly disclosed, neither PAN nor its expert provided any intrinsic or extrinsic evidence to support this conclusory testimony.  Moreover, the expert testimony PAN provides is not reliable, as it contradicts his prior testimony.  Dkt. No. 158 at pp. 14-15 (noting PAN's expert never proposed a construction for this term despite opining on this patent in numerous matters).

PAN argues that Finjan is attempting to limit the claims to definitions for terms, such as "lexical" and "lexical analysis," but that is incorrect.  Dkt. No. 159 at p. 15.  Rather, Finjan offers that this term does not need construction, which was PAN and its expert's prior position in several matters.  To the extent the Court construes this term, no reason exists to depart from the plain and ordinary meaning to incorporate an unsupported and non-recited limitation into the claims.

### I. Term 9: "content processor" ('154 Patent Claims 1, 2, 6, 7) and Term 10: "content" ('154 Patent Claims 1, 2, 4, 6, 7, 10)

The Court should reject PAN's attempts to (1) limit the location of the "content processor" to "***on the protected client/user computer***" and (2) limit the content to only "modified" content.

---

[2] Finjan objects to PAN's previously undisclosed extrinsic material (*e.g.*, Dkt. Nos. 159-12, 159-13, and 159-14).  PAN first added this undisclosed extrinsic evidence to the final amended joint claim construction statement today, and it should be afforded no weight.

*First*, there is no requirement in the intrinsic record limiting the location of a "content processor" to a client computer, and injecting this limitation into the claims is not advancing the objectives of the '154 Patent. The '154 patent is directed to **shielding** the client computer from malicious content. *See, e.g.*, Dkt. No. 158-4 ('154 Patent) at 4:23-36; 4:35-37. The claimed "content processor" processes and invokes functions (which may or may not be malicious). *Id.* at cl. 1. Requiring that the processing and invoking of potentially malicious functions occurs at the client computer (as PAN's construction requires) does not contribute to shielding the client computer—but rather increases the risks posed by malicious content.

In fact, as PAN notes, the '154 Patent's solution lies not in the location of the content processor, but in the use of a **security computer** to inspect code at a location that is separate from the client computer. Dkt. No. 159 at p. 15. The '154 Patent emphasizes "shielding" the client computer from malicious content by **not** running code on it. *See* Dkt. No. 158-4 ('154 Pat.) at 4:23-26 ("[T]here is a need for a new form of behavioral analysis, which can **shield computers** from dynamically generated malicious code **without running on the computer itself that is being shielded**.") (emphasis added). The claim reflects this approach. *Id.* at cl. 1. PAN asserts that the '154 Patent requires keeping the content processor on the client computer, but in doing so, selectively quotes from the patent. Dkt. No. 159. at pp. 19-20 (using ellipses). The full statement, consistent with the above, focuses on the fact that the client computer is shielded from processing potentially malicious content: "[t]he present invention operates through a security computer that is **preferably** remote from a **client computer that is being shielded while processing network content**." Dkt. No. 158-4 ('154 Pat.) at 4:35-37 (emphasis added). PAN otherwise cites to examples from the specification that use permissive language such as "preferably" and "may," as Finjan highlighted in its opening brief. Dkt. No. 158 at pp. 19-20. For example, the patent states that a "content processor *may be* a web browser running on a client computer 210" (Dkt. No. 158-4 at 10:61-62 (emphasis added)), leaving open that a content processor may be something else located somewhere else. There is no basis for limiting the "content processor" to the location set forth in these examples—and only that location—when doing so would not be consistent with the overall goals of the patent.

*Second*, the Court should decline to include "modified" in the constructions of both content and content processor. PAN makes no attempt to justify its construction in the intrinsic record. PAN cites to two passages in the specification, neither of which require that content is "modified" and otherwise relies entirely on referencing the *Juniper* case. However, the *Rapid7* court found that content processor should not include "modified" even **after** the *Juniper* decision. PAN criticizes Finjan's reliance on *Proofpoint*, *Bitdefender*, and *Symantec* because, according to PAN, those cases dealt only with an attempt to limit the content processor to a specific embodiment. But that is exactly what PAN attempts to do here by limiting the content and content processor to "modified content." These four courts found in Finjan's favor on these related terms.

PAN falls short of carrying its burden to show collateral estoppel applies because there is no identity of issues. PAN proposes a construction for "content processor" that has not been adopted by any court. *See e.Digital Corp. v. Futurewei Techs., Inc.*, 772 F.3d 723, 727 (Fed. Cir. 2014) (for collateral estoppel to apply, "[e]ach case requires a determination that each of the requirements for collateral estoppel are met, including that the issue previously decided *is identical* to the one sought to be litigated.") (emphasis added). In *Juniper*, Judge Alsup construed "content processor" as "a processor that processes modified content." PAN proposes a narrower construction that would limit the location of the content processor and would require that it be an application—two issues that were not litigated in *Juniper*. PAN concedes that Judge Alsup did not reach the location portion of PAN's construction. Dkt. No. 159 at p. 19 (quoting *Juniper*: "this order need not and does not reach that issue in construing the term."). And no court has addressed the application portion that PAN now attempts to abandon. Accordingly, collateral estoppel does not apply.

Finally, PAN concedes that the content processor need not be "an application," instead reverting to the claim language "processor." This concession further confirms that the plain meaning is readily understood. Indeed, given that PAN's construction uses "processor," the only term being construed is "content" (twice), which is readily understandable to the jury. The Court should reject PAN's proposals and apply the plain meaning, as several other courts have done.

## II. CONCLUSION

For the foregoing reasons, Finjan requests that the Court adopt its proposed constructions.

| | | |
|---|---|---|
| 1 | Dated: September 20, 2021 | Respectfully Submitted, |
| 2 | | /s/ Phillip W. Goter |
| | | Juanita R. Brooks (CA SBN 75934) |
| 3 | | brooks@fr.com |
| 4 | | Roger A. Denning (CA SBN 228998) |
| | | denning@fr.com |
| 5 | | Frank J. Albert (CA SBN 247741) |
| | | albert@fr.com |
| 6 | | K. Nicole Williams (CA SBN 291900) |
| 7 | | nwilliams@fr.com |
| | | Jared A. Smith (CA SBN 306576) |
| 8 | | jasmith@fr.com |
| | | Tucker Terhufen (CA SBN 311038) |
| 9 | | terhufen@fr.com |
| | | FISH & RICHARDSON P.C. |
| 10 | | 12860 El Camino Real, Ste. 400 |
| 11 | | San Diego, CA 92130 |
| | | Telephone: (858) 678-5070 / Fax: (858) 678-5099 |
| 12 | | |
| 13 | | Aamir Kazi (*Pro Hac Vice*) |
| | | kazi@fr.com |
| 14 | | Lawrence Jarvis (*Pro Hac Vice*) |
| | | jarvis@fr.com |
| 15 | | FISH & RICHARDSON P.C. |
| 16 | | 1180 Peachtree St. NE, 21st floor |
| | | Atlanta, GA 30309 |
| 17 | | Telephone: (404) 892-5005 / Fax: (404) 892-5002 |
| 18 | | Phillip W. Goter (*Pro Hac Vice*) |
| | | goter@fr.com |
| 19 | | FISH & RICHARDSON P.C. |
| | | 3200 RBC Plaza, 60 South Sixth Street |
| 20 | | Minneapolis, MN 55402 |
| 21 | | Telephone: (612) 335-5070 / Fax: (612) 288-9696 |
| 22 | | Susan E. Morrison (*Pro Hac Vice*) |
| | | morrison@fr.com |
| 23 | | FISH & RICHARDSON P.C. |
| | | 222 Delaware Ave., 17th Floor |
| 24 | | P.O. Box 1114 |
| 25 | | Wilmington, DE 19801 |
| | | Telephone: (302) 652-5070 / Fax: (302) 652-0607 |
| 26 | | |
| 27 | | |
| 28 | | |

| | |
|---|---|
| 1 | Tracea Rice (*Pro Hac Vice*) |
| 2 | trice@fr.com |
| | FISH & RICHARDSON P.C. |
| 3 | 1000 Maine Ave. Ste. 1000 |
| | Washington, DC 20024 |
| 4 | Telephone: (202) 783-5070 / Fax: (202) 783-2331 |

Attorneys for Plaintiff FINJAN LLC