Juanita R. Brooks (CA SBN 75934) / brooks@fr.com
Roger A. Denning (CA SBN 228998) / denning@fr.com
Frank J. Albert (CA SBN 247741) / albert@fr.com
K. Nicole Williams (CA SBN 291900) / nwilliams@fr.com
Jared A. Smith (CA SBN 306576) / jasmith@fr.com
Tucker N. Terhufen (CA SBN 311038) / terhufen@fr.com
FISH & RICHARDSON P.C.
12860 El Camino Real, Ste. 400
San Diego, CA 92130
Telephone: (858) 678-5070 / Fax: (858) 678-5099

Susan Morrison (*Pro Hac Vice*) / morrison@fr.com
FISH & RICHARDSON P.C.
222 Delaware Avenue, 17th Floor
P.O. Box 1114
Wilmington, DE 19801
Telephone: (302) 652-5070 / Fax: (302) 652-0607
Additional counsel listed on signature page

*Attorneys for Plaintiff,*
FINJAN LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FINJAN LLC,<br><br>      Plaintiff,<br><br>v.<br><br>PALO ALTO NETWORKS, INC.,<br><br>      Defendant. | Case No. 4:14-cv-04908-JD<br><br>**FINJAN LLC'S OPPOSITION TO DEFENDANT PALO ALTO NETWORKS, INC.'S MOTION TO CONFIRM FINJAN LLC HAS NO OPERATIVE INFRINGEMENT CONTENTIONS FOR THE '633, '408, AND '731 PATENTS AND STRIKE FINJAN'S AMENDED INFRINGEMENT CONTENTIONS FOR THE '154 PATENT**<br><br>**[REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED]**<br><br>Hon. James Donato<br>Ctrm: 11, 19th Floor |

# TABLE OF CONTENTS

Page

I. Introduction ..................................................................................................................... 1

II. Factual Background ........................................................................................................ 2

    A. Judge Hamilton's Order Was Limited to the '154 Patent ................................... 2

    B. Prior to the Order, Finjan Served Infringement Contentions with Pinpoint Citations to Source Code on July 16 ....................................................... 4

    C. Finjan Served Supplemental Infringement Contentions on August 19 ................................................................................................................ 4

    D. PAN's Failure to Properly Meet and Confer ....................................................... 5

III. Argument ......................................................................................................................... 5

    A. Judge Hamilton's Order Addressed Only the '154 Patent ................................... 5

    B. If PAN Correctly Reads the Order, the July 16 Amendments Are Operative .............................................................................................................. 6

    C. The Amended Contentions for the '154 Patent Comply with the Order ........................................................................................................................ 7

    D. Finjan's Contentions for the Other Patents Comply with the Rules ................................................................................................................. 12

        1. The '633 Patent: Finjan set forth a theory for "mobile protection code" .............................................................................. 12

        2. The '408 Patent: Finjan set forth a theory for "parser rules," "analyzer rules," and "tokens" ...................................................... 14

        3. The '731 Patent: Finjan set forth a theory for "file cache" ........................ 15

IV. Conclusion .................................................................................................................... 15

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Apple Inc. v. Samsung Elecs. Co.*,
 5:12-CV-0630-LHK-PSG, 2014 WL 173409 (N.D. Cal. Jan. 9, 2014).................................. 15

*Finjan, Inc. v. Proofpoint, Inc.*,
 No. 13-CV-05808-HSG, 2015 WL 1517920 (N.D. Cal. Apr. 2, 2015)........................... 11, 12

*Finjan, Inc. v. Zscaler, Inc.*,
 No. 17-cv-06946-JST, 2019 WL 7589210 (N.D. Cal. Feb. 5, 2019)..................................... 13

*Google v. Pers. Audio*,
 743 F. App'x 978 (Fed. Cir. 2018) ...................................................................................... 14

*Slot Speaker Tech., Inc. v. Apple, Inc.*,
 No. 13-cv-01161-HSG, 2017 WL 235049 (N.D. Cal. Jan. 19, 2017).................................... 12

*Uniloc 2017 LLC v. Apple, Inc.*,
 No. 19-cv-1929-EJD-VKD, 2020 WL 978678 (N.D. Cal. Feb. 28, 2020) .............................. 8

*Word to Info Inc v. Google Inc.*,
 No. 15-CV-03486-WHO, 2016 WL 3648605 (N.D. Cal. July 8, 2016).................................. 8

**Other Authorities**

Patent L.R. 3–1.................................................................................................... 1, 2, 8, 12

Patent L.R. 3-3(c)............................................................................................................ 12

## I. INTRODUCTION

Addressing separately each of the three grounds in PAN's motion to strike Finjan's infringement contentions, Judge Hamilton's Order (Dkt. No. 146, "the Order"): (1) granted *only in part* PAN's motion regarding more detailed contentions; (2) *denied entirely* PAN's motion regarding pinpoint citations to source code; and (3) *denied entirely* PAN's motion regarding Finjan's doctrine of equivalents contentions. In the first portion of the Order—granted *only in part*—the Court addressed only the '154 Patent, and particularly only the "first function" and "second function" limitations of Claim 1, just as PAN discussed in detail only the '154 Patent in its motion. In opposing, Finjan pointed out that PAN had withheld the source code relevant to the "first function" and "second function" limitations until after Finjan's infringement contentions were due. Rather than strike Finjan's contentions, the Court ordered Finjan to supplement in light of that newly produced source code. Finjan did so, using the new source code to show how PAN's accused products meet the "first function" and "second function" limitations. The supplement is thorough and comprehensive, setting forth Finjan's infringement theories and the supporting evidence at a level of detail usually only seen in expert reports and providing the requisite notice of P.L.R. 3-1.

With regard to the other three patents—the '731, '633, and '408 Patents—PAN's motion relies upon a tortured reading of the Order and the procedural history of this case. The Order did not strike Finjan's infringement contentions for these patents. Nor did Judge Hamilton discuss any deficiencies with regard to these patents in the Order. Indeed, PAN did not even submit Finjan's infringement contentions for these three patents as part of its briefing, and Judge Hamilton stated that she had not read the contentions.[1] On this record, Judge Hamilton *could not have* struck the contentions for these patents. That the Order granted *only in part* that section of PAN's motion indicates that Judge Hamilton did not grant it as to all four patents, but only as to the '154 Patent.

Even if the Court were to agree with PAN regarding the scope of the Order, which it should not, the Court should find that Finjan's proposed amended contentions served on July 16 are operative for the '731, '633, and '408 Patents. Just days before Judge Hamilton entered the Order

---

[1] PAN submitted four pages for the '731 Patent as part of its argument that Finjan did not disclose its doctrine of equivalents theory—which Judge Hamilton denied.

on July 20, Finjan voluntarily served PAN with supplemental infringement contentions for the above three patents plus the '154 Patent.  PAN does not dispute that Finjan served these before the Order's August 19 deadline.  If PAN is correct that the Order required Finjan to supplement for these three patents, then Finjan did not need leave to amend.  PAN's assertion that these contentions are not operative as they were served four days before the Order is procedural gamesmanship.  There is no prejudice to PAN that Finjan served these contentions before the deadline set by Judge Hamilton.

For the '633, '731, and '408 Patents, Finjan's initial contentions and the proposed amended contentions provide more than sufficient notice of Finjan's infringement theories to comply with P.L.R. 3-1.  Though Judge Hamilton made clear that Finjan need not provide pinpoint citations to source code in its infringement contentions, Finjan provided substantial pinpoint citations to PAN's source code for all patents, providing even more specific identification of the accused structures in PAN's products for each limitation.  The contentions are extremely detailed.  PAN's motion should be denied in its entirety, and the parties should proceed on the merits.

## II. FACTUAL BACKGROUND

On April 1, 2021, working with new counsel, Finjan served detailed infringement contentions that are more substantial than contentions in any previous case.  On June 15, 2021, PAN moved to strike all of Finjan's infringement contentions on multiple grounds—the majority of which the Court denied.  Now, PAN again moves to eliminate Finjan's contentions, the premise being an incorrect reading of Judge Hamilton's Order and the procedural history preceding it.

### A. Judge Hamilton's Order Was Limited to the '154 Patent

In its June 15 motion, PAN sought to strike Finjan's infringement contentions in their entirety on three bases:  (1) that the contentions were insufficiently detailed; (2) that the contentions did not include pinpoint citations to source code; and (3) that the doctrine of equivalents contentions were inadequate.  On the first basis, PAN's motion addressed only one limitation in any detail, limitation 1[a] of the '154 Patent, containing the "first function" and "second function" terms.  (Dkt. No. 128 at pp. 5-9.)  At the end of that discussion, PAN provided a table listing other allegedly deficient limitations for the '154 Patent and the other three patents, but PAN provided ***no explanation or analysis for the Court***.  (*Id.* at pp. 9-10.)  Despite requesting the Court to strike the

contentions for all four patents in their entirety, PAN did not provide the Court Finjan's infringement contentions for the '633 and '408 Patents and provided just four pages from the '731 contentions, relating only to Finjan's doctrine of equivalents theory.  (*Id.* at p. 6, n.5; Dkt. No. 127-3.)  PAN argues that its motion referenced—in a footnote—a May 12, 2021 letter that allegedly identified other purported deficiencies, but PAN did not make those arguments in its motion and the Court's Order did not mention the letter or the other alleged deficiencies.  (Dkt. No. 128 at p. 6, n.5),

In its opposition brief, Finjan explained that the contentions for all patents complied with the Patent Local Rules.  (Dkt. No. 148 at pp. 2-15.)  Finjan also provided the Court with the full contentions for all four patents to show the Court the level of detail included.  (*Id.* at p. 2, n.1.)  Finjan addressed PAN's only argument about lack of sufficiency—directed to limitation 1[a] of the '154 Patent—by pointing out that its contentions were as complete as possible given PAN's failure to produce much of the relevant source code before the deadline.  (*Id.* at pp. 10-15.)  In its reply brief, PAN once again dealt only with this single limitation from the '154 Patent, and PAN did not provide any arguments on the other patents.  (Dkt. No. 149 at pp. 8-11.)

On July 20, 2021, Judge Hamilton entered the Order on PAN's motion, denying PAN's arguments regarding pinpoint citations and Finjan's doctrine of equivalents theories. (Dkt. No. 146 at p. 5.)  Regarding PAN's remaining argument, she granted the motion ***in part***.  (*Id.* at pp. 3-4.)

As to whether the contentions were sufficiently detailed, the Order begins by noting that PAN used claim 1[a] of the '154 Patent as an exemplar for the '154 Patent contentions.  (*Id.* at pp. 1-2.)  The Court's analysis then addressed only this single limitation from this single claim in the '154 Patent, including just the "first function" and "second function" terms of the limitation.  (*Id.* at pp. 1-4.)  Referencing PAN's late document production, the Court noted that, "after it served its contentions, [Finjan] received discovery containing 'key information about the identity of' the 'first function' and 'second function.'" (*Id.* at p. 3.)  The Court also noted, "it is not entirely clear whether Finjan or Palo Alto Networks (or both) are to blame for the current dispute," and further noted Finjan's intention to amend the contentions to include the additional late-produced source code.  (*Id.*)  The Court then concluded, "to the extent that Palo Alto Networks seeks to strike Finjan's infringement contentions on the grounds that they do not adequately identify where and how each

of the claim limitations, including the 'first function' and 'second function,' can be found in the accused products, the motion is **GRANTED in part**," and "the court gives Finjan 30 days to serve amended infringement contentions in accordance with this order." (*Id.* at pp. 3-4 (emphasis added).) The Court noted it had not reviewed Finjan's contentions for the other patents. (*Id.* at p. 4.)

### B. Prior to the Order, Finjan Served Infringement Contentions with Pinpoint Citations to Source Code on July 16

While PAN's motion to strike was pending, Finjan continued to seek the missing source code from PAN and to further supplement its contentions with this new information. In an attempt to compromise with PAN and to provide additional detail in its contentions, on July 16, 2021, Finjan served amended infringement contentions for all four of the asserted patents, providing pinpoint citations to the source code along with detailed narratives explaining how the source code aligns with the claim language—precisely what PAN had requested in its May 12 letter. (Dkt. No. 161-4 at p. 2 of 3.) On July 19, Finjan filed a motion for leave to amend its contentions. (Dkt. No. 143.)

On July 20, the same day it ruled on PAN's motion to strike, the Court also terminated Finjan's motion for leave to amend its contentions, stating in part:

> Because another motion has already been filed and ruled on regarding Finjan's infringement contentions, Finjan's motion is TERMINATED rather than re-set for hearing on an appropriate day. The parties are ordered to meet and confer in person to resolve the issue themselves before re-noticing the motion—in accordance with the Local Rules—on the court's docket.

(Dkt. No. 147.) Although the Court indicated that the parties should meet and confer if any issues remained after the July 19th Order on PAN's motion to strike, PAN never sought a meet and confer.

### C. Finjan Served Supplemental Infringement Contentions on August 19

Finjan served the supplemental contentions for the '154 Patent to identify in more detail how the evidence shows that PAN's accused products meet the "first function" and "second function" limitations—the only deficiency addressed in the Order. (Exh. 1 (Coolidge August 19 email).) Notably, even as of the time that Finjan served the amended contentions, PAN still had not produced most of its core technical documents in this case. (Exhs. 2 (Goter August 11 letter) and 3 (Goter August 27 email).) PAN only recently—on September 7, 2021—produced 70GB (over 250,000

pages) of documents that it represents are its core technical documents.[2]  (Dkt. No. 161-1 (Van Nort Decl.) at ¶ 5.)  Finjan is reviewing these documents, and intends to amend further, if necessary.

### D. PAN's Failure to Properly Meet and Confer

On August 27, 2021, PAN wrote Finjan requesting a meet and confer, alleging—for the first time—that Finjan had no operative infringement contentions for the '633, '731, and '408 Patents, and that the supplemental contentions for the '154 Patent were deficient.  (Dkt. No. 161-5 at p. 8.)  At first, PAN refused to explain either assertion.  (*Id.* at pp. 5-7.)  Even after repeated requests and a meet and confer, PAN failed to identify specific examples of deficiencies in Finjan's contentions, but admitted that had Finjan's July 16 proposed amended contentions been served four days *later*—after Judge Hamilton's July 20 Order—they would be "operative."  (*Id*. at pp. 2-8.)

## III. ARGUMENT

The Court should deny PAN's Motion in its entirety for multiple reasons.  First, Judge Hamilton's Order applied to only the '154 Patent, and PAN's argument that all contentions were struck cannot withstand scrutiny.  Second, if PAN is correct about the scope of the Order, the amended contentions that Finjan served on July 16 provide more than adequate notice of Finjan's theories.  Finjan served these amended contentions before the deadline set forth in the Order, PAN has had them for months, and PAN agrees they would be operative had they been served four days later (*i.e.*, after the Order).  Third, the amendments for the '154 Patent provide notice of Finjan's infringement theories, including as to the first and second functions.  Fourth, both the original and amended contentions for the other patents provide requisite notice of Finjan's infringement theories.

### A. Judge Hamilton's Order Addressed Only the '154 Patent

Judge Hamilton's Order is unambiguous.  The Order addresses only whether Finjan adequately identified the "first function" and "second function" of limitation 1[a] of the '154 Patent.  (Dkt. No. 146 at p. 4.)  PAN argues (at p. 7) that "Judge Hamilton only discussed the '154 Patent *at length* (emphasis added)," but that is incorrect.  The '154 Patent is the only patent discussed *at all*.

It is no surprise that the Court addressed only the '154 Patent, because PAN's motion to strike focused only on that patent.  PAN did not provide the Court with the contentions that it sought

---

[2] PAN's deficient source code and document production history is detailed in Finjan's opposition to PAN's previous motion to strike, incorporated herein by reference.  (Dkt. No. 148 at pp. 7-10.)

to strike for the other patents.  It strains reason to argue that the Court struck the infringement contentions for all four patents based on its analysis of a single limitation in the '154 Patent, without even considering the contentions for the other three patents.  Judge Hamilton stated as much noting, "rather than file over 2,000 pages of exhibits, which the court neither has the time nor the inclination to read, the parties are directed to streamline their future filings for the purpose of judicial economy." (Dkt. No. 146 at p. 4.)  Furthermore, under PAN's interpretation, Finjan would have no guidance from the Court on the other patents and would not know what to supplement to comply with the Order.  PAN refers to its May 12 letter that enumerates PAN's complaints about the *original* contentions, but the Court did not even mention that letter.  The Court—not PAN—determined the bounds of the dispute, and only ordered Finjan to identify the "first function" and "second function."

Putting these common sense issues aside, the Order provides additional reasons that PAN's reading is wrong.  As to the first portion of PAN's motion—the portion addressing the sufficiency of Finjan's contentions—the Court granted it only "in part," not in its entirety.  (*Id.* at p. 4.)  In that portion, PAN sought to strike the contentions for all four patents.  PAN's entire argument hinges on the word "including" in the Order, but that only frames the scope of the relief sought.  If the Order struck the contentions for all patents for lacking sufficient notice—as PAN contends—the Order would have *granted* the motion as to that argument in its entirety, rather than granting it *in part*.

PAN incorrectly argues (at p. 7) that that Order says granted "in part" only because the Court denied the Motion as to pinpoint source code citations and DOE.  But those are discussed separately in the Order, and the Court outright "DENIED" those portions.  The part of the Order that was "GRANTED in part" applies only to PAN's argument about sufficiency of notice.  In other words, the Order granted part of PAN's notice argument, while denying other parts of that argument.  It only stands to reason that the portion granted related to the '154 Patent contentions actually discussed in the Order (*i.e.*, "first function" and "second function"); the portion denied related to the unaddressed portion of the '154 Patent and the three unaddressed patents.

### B.     If PAN Correctly Reads the Order, the July 16 Amendments Are Operative

If the Court were to find that the Order of July 20 did strike Finjan's April 1 infringement contentions for all four patents—which it should not—Finjan is not left without contentions. Rather,

1  Finjan served amended contentions on July 16 for all four patents, and those contentions were not
2  the subject of PAN's June 15 motion to strike or the Court's Order.  As discussed in Section D
3  below, those contentions provide additional and more than adequate details regarding Finjan's
4  infringement theories for all four patents, including pinpoint citations to source code.  If the Court
5  finds the July 20 Order applies to the '633, '731, and '408 Patents—not just the '154 Patent—Finjan
6  respectfully requests the Court to find that the July 16 amended contentions are operative.

7  PAN's argument (at p. 8) that the July 16 amended contentions are not operative because
8  Finjan did not seek leave to amend is directly at odds with its argument that the July 20 Order
9  ordered Finjan to amend its contentions.  Both things cannot be true.  Either Finjan was ordered to
10 amend before August 19 (which it did, with the July 16 amended contentions), or Finjan was not
11 ordered to amend and the April 1 contentions are still operative.

12 PAN admits the amendments would be operative had Finjan served them later—after the
13 July 20 Order.  (Dkt. No. 161-5 at p. 2 ("It is PAN's position that if Finjan had served amended
14 contentions on August 19 in response to Judge Hamilton's July 20 order striking Finjan contentions,
15 then those contentions would have been operative.").)  By arguing that Finjan served its amended
16 contentions *too early*, PAN is placing form over substance in the extreme.  The substance in the
17 infringement contentions—the detailed explanation of Finjan's infringement theories—is the same
18 whether Finjan served them on July 16 or July 20 or any other date before the August 19 deadline.

19 There is no prejudice to PAN in finding the July 16 contentions operative.  Indeed, Judge
20 Hamilton acknowledged Finjan's intention to amend the contentions to include the additional late-
21 produced source code.  (Dkt. No. 146 at p. 3.)  And because Finjan served them over a month before
22 August 19, PAN has had additional time to review and assess them.  PAN has obviously done so,
23 as its present Motion challenges them on the merits.  On the other hand, siding with PAN on the
24 scope of the Order and finding the amended contentions inoperative would greatly prejudice Finjan,
25 as it would leave Finjan with no infringement contentions for three patents, despite twice serving
26 detailed contentions on PAN.  Accordingly, if the Court agrees with PAN as to the Order's scope,
27 Finjan respectfully requests that it find Finjan's July 16 amended contentions operative.

28     **C.**    **The Amended Contentions for the '154 Patent Comply with the Order**

1    Pursuant to the Order, Finjan timely served amended contentions for the '154 Patent on
2    August 19, 2021.³  PAN's complaints about these contentions are superficial, especially given
3    PAN's own disclosure of what it alleged satisfied these same claims in its IPR challenges, most of
4    which tracks Finjan's theories in the contentions.  In addition, even though not required, Finjan
5    provided voluminous pinpoint citations to PAN's source code, with detailed narratives explaining
6    how the claim limitations are found in the accused products.  This is more than what is required of
7    infringement contentions at this juncture.  "[A]ll courts agree that the degree of specificity under
8    Local Rule 3–1 must be sufficient to provide reasonable notice to the defendant why the plaintiff
9    believes it has a reasonable chance of proving infringement." *Word to Info Inc v. Google Inc.*, No.
10   15-CV-03486-WHO, 2016 WL 3648605, at *4 (N.D. Cal. July 8, 2016).  "The local rules do not
11   require the disclosure of specific evidence nor do they require a plaintiff to prove its infringement
12   case." *Uniloc 2017 LLC v. Apple, Inc.*, No. 19-cv-1929-EJD-VKD, 2020 WL 978678, at *2 (N.D.
13   Cal. Feb. 28, 2020).  Striking Finjan's detailed contentions would set a nearly impossible standard.

14        PAN continues to focus on limitation 1[a] of the '154 Patent, which requires "a content
15   processor (i) for processing content received over a network, the content including a call to a first
16   function, and the call including an input, and (ii) for invoking a second function with the input, only
17   if a security computer indicates that such invocation is safe."  Finjan's contentions for this limitation
18   begin with a detailed narrative, providing multiple theories of infringement that each explain which
19   structures and operations of the accused products are accused of satisfying each limitation. (Ex. 6
20   to Van Nort Decl. at pp. 10-23.)  For example, in Section 1.1, Finjan provided its theory as to how
21   the PAN Next Generation Firewalls ("NGFW") satisfy limitation 1[a] (*id.* at pp. 10-12):

| **Content Processor** | **Security Computer** | **Content** | **First Function** | **Second Function** |
|---|---|---|---|---|
| NGFW structures that process network | Pattern recognition modules on the | Content requested by user computers | Substitute functions that are inserted by PAN | Original functions, which are invoked by |

---

³ Based on Finjan's review, PAN provided all of limitation 1[a] from Finjan's Court-ordered amended contentions for the '154 Patent as Ex. 6 to the Van Nort Declaration.  Because PAN continues to focus only on this limitation, Finjan relies on the version that PAN filed under seal. Finjan will provide the complete contentions if requested by the Court.  Finjan understands that the Court cannot review every page of the contentions, but to assist the Court in its review, Finjan has provided some pinpoint citations herein.  Those pinpoint citations are to internal page numbers assigned by Finjan (*e.g.*, "Page XX of 420").  "Ex. 6 to Van Nort Decl." refers to both the sealed and redacted versions.  Finjan similarly cites to the contentions for the other three patents below.

| content, including first and second functions, identified in the source code Sections 3.1-3.9. | NGFW (dedicated security hardware and software). | combined with SML files, both of which are received over a network, and identified in source code Sections 3.2-3.8. | into content that cause content to be checked by pattern recognition modules, and identified in source code Sections 3.3-3.9. | the content processor if safe, and identified in source code Sections 3.2-3.8. Inputs are the parameters or arguments to the original functions. |
|---|---|---|---|---|

The above summary just from Finjan's ***narrative*** in Section 1.1, which alone provides the requisite explanation of Finjan's theories. In Section 2 of the contentions, Finjan provides ***evidentiary support*** for its theories with narratives explaining accused product operations identified in PAN's documents. (*Id.* at pp. 22-165.) In Section 3, Finjan provides ***pinpoint citations*** to PAN's code tying specific code structures and functions to each limitation identified above. (*Id.* at pp. 165-284.) In Section 4, Finjan provides ***product testing evidence*** showing infringing operations. (*Id.* at pp. 284-292.) This more than satisfies Finjan's burden. (*See* Dkt. No. 148 at pp. 2-7.)

PAN complains that Finjan does not adequately identify: (1) first function; (2) second function; (3) content processor; (4) security computer; (5) input; and (6) content. Even though only ordered to more clearly identify the "first function" and "second function," Finjan addresses each.

With respect to the "first function," PAN's assertion (at p. 9) that it does not understand what is a "substitute function" is belied by PAN's positions in its IPRs, where PAN equates a first function with a substitute function. (*See* Exh. 4 (IPR2015-01979 Petition) at p. 9 ("The BRI of 'first function' is 'substitute function.' . . . As such, any function that accepts at least one input/variable meets the claim limitation. The claims also recite that the input is inspected when the first function is invoked.").) PAN's theory in the IPR is nearly identical to Finjan's theory, so PAN clearly understands the theory for the first function limitation. (*See, e.g.*, Ex. 6 to Van Nort Decl. at pp. 12, 14-15, 17-18, 21, 42-43, 46, 49-50, 65-66, 76-79, 83, 116-18, 173, 188-190, 288, 290-91.) Regardless of PAN's feigned ignorance, Finjan went a step further and listed, in a dedicated section, specific instances of first functions identified in PAN's source code. (*Id.* at pp. 281-83.)

PAN admits that Finjan identified the first functions. (Dkt No. 161 at p. 11 (acknowledging Finjan lists over a dozen "first functions" and "second functions").) By their very identification as

1  "first functions," PAN is on notice that Finjan alleges these functions align with the "first function"
2  of the patent.  PAN may disagree on the technical merits, but that is not the inquiry on a motion to
3  strike.  PAN's complaint (at p. 11) that the contentions do not explain how the first functions can be
4  found in the accused products ignores pinpoint citations and narratives for each of the identified
5  functions.  For example, the following identified first functions are described in detail:

| **First Function** | **Identification in Contentions** |
|---|---|
| ▮▮▮▮▮▮ | *Id.* at pp. 178, 188, and 192 (each with detailed narratives and explanations). |
| ▮▮▮▮ | *Id.* at p. 193 (explaining that calling this function initiates the DFA matching process (i.e., security function)). |
| ▮▮▮▮▮▮▮ | *Id.* at pp. 201-02 (explaining this function searches the local cache for any malicious or benign URLs). |
| ▮▮▮▮▮▮▮▮ | *Id.* at p. 253 (explaining this function uses inline ML (security function) to determine if content includes any malicious patterns). |
| ▮▮▮▮▮▮▮▮▮▮ | *Id.* at p. 263 (invoking functionality in WildFire (security computer)). |

The contentions likewise identify the other functions, with detailed explanations of their operation, including how that operation ties to the claims and Finjan's theories of infringement.  PAN alleges that Finjan improperly uses open-ended language , such as "exemplary," (at p. 11) but such language indicates that certain *evidence* is not limiting, not that the *theories* remain open-ended.  (*See, e.g.*, Ex. 6 to Van Nort Declaration at p. 3 ("[a]ll ***citations [to evidence] below are exemplary only*** and in no way limit the disclosed theories.") (emphasis added).)  Likewise, Finjan's reference to "exemplary" first and second functions in the code indicates that the cited *evidence* is exemplary.  PAN's cases suggest that the disclosed *theories* may not be open-ended, and Finjan's are not.

   PAN's purported confusion about "second functions" is again disingenuous.  PAN explained in its IPR that, "[t]he BRI of 'second function' is 'original function'" that can vary based on the nature of the requested content.  (*See* Exh. 4 (IPR2015-01979 Petition) at p. 11.)  That is also Finjan's theory in this case.  (*See* Ex. 6 to Van Nort Decl. at p. 11 ("Thus, the content processor invokes the second function with the input (***original function***) only if a security computer indicates that such invocation is safe.") (emphasis added); *Id.*  at p. 284 ("Since the second functions correspond to the requested content (***original functions and inputs***), the second functions themselves vary.") (emphasis added).)  Like with the "first function," Finjan identified specific

instances of the "second functions." (*Id.* at pp. 283-84.) And again, the source code section includes detailed explanations of these second functions. (*See id.* at pp. 205-215 (setting forth multiple examples of second functions processed and invoked by the NGFW).) Because Finjan identified first and second functions in detail in the amended contentions, Finjan has complied with the Order.

As to the other elements that PAN complains are deficient in the '154 Patent, they were not briefed in PAN's original motion and the Court did not address them. PAN should not get another bite at the apple when it already failed to carry its burden in the first instance. Nevertheless, Finjan's contentions more than adequately identify how and where the accused products satisfy these limitations. For "content processor," Finjan set forth its theory against certain modules in the NGFW (*e.g.*, *id.* at p. 11) and then provided detailed explanations with pinpoint citations in PAN's source code illustrating the modules that comprise the accused "content processors." (*Id.* at pp. 165-284.) Regarding "security computers," taking the example provided above where the accused security computer is pattern recognition modules on the NGFW, Finjan explained how PAN's hardware and software security computers operate in the NGFW to satisfy the claim. (*Id.* at pp. 190-230; *id.* at pp. 193-97 (explaining how PAN's dedicated hardware security computers operate to satisfy the claim).) Finally, regarding "content" and "input," Finjan explained that the content is comprised of requested content (with its unique original functions having their own inputs) combined with PAN's SML files. (*Id.* at pp. 12, 172.) Finjan also explained that inputs are parameters or arguments to the functions received with incoming content that provide certain outputs when executed with a given function. (*Id.* at pp. 205, 220, 283-84.)

PAN understands Finjan's theories as PAN unsuccessfully litigated the '154 patent for half a decade before the PTAB and relied on similar theories. (*See, e.g.*, Exh. 4 (IPR2015-01979) at p.19 (content processor); *id.* at p. 19 (content); *id.* at p. 9 (content with inputs); *id.* at pp. 18, 27 (equating inputs with "parameters").) PAN tries to denigrate Finjan's contentions here by pointing to contentions from prior cases.[4] For example, PAN cites *Finjan, Inc. v. Proofpoint, Inc.*, No. 13-CV-

---

[4] For example, PAN asserts (at p. 10) that Finjan re-used the same source code in the claim charts for three patents, which had been addressed in other cases. The portions that PAN opts to highlight to the Court are just a few pages of the more than 100 pages of pinpoint source code citations and narratives for the '154 Patent, and describe how the NGFW receives content, an operation that is relevant to each of the '154, '408, and '731 Patents, and is a fundamental operation of a firewall.

1  05808-HSG, 2015 WL 1517920 (N.D. Cal. Apr. 2, 2015), but PAN makes no attempt to compare
2  the contentions here to the *Proofpoint* contentions, nor does PAN attempt to show the issues
3  addressed in *Proofpoint* are present here. At most, PAN argues (at p. 10) that Finjan provided only
4  descriptions of the operation of its products with no ties to the claims, but that is demonstrably
5  wrong. As illustrated above, Finjan's contentions here identify the first and second functions
6  processed and invoked in PAN's products, with descriptions tying that operation to the claims.

7  Finally, juxtaposing PAN's invalidity contentions with Finjan's infringement contentions
8  refutes PAN's arguments. PAN provides none of the detail that it demands from Finjan, (*e.g.*, Exh.
9  5 (Ross '154) at pp. 3-7)—a point Finjan is pressing with PAN. For element 1[a], PAN provides
10  just 4 pages of copied-and-pasted excerpts of the Ross patent application, without **any** narrative or
11  identification of the "first function," "second function," "content processor," "security computer,"
12  "content," or "input." (*Id.*) PAN does not even use the claim language in its contentions, and its
13  other charts do the exact same thing. PAN should not be heard to complain about the thoroughness
14  of Finjan's infringement contentions when its own invalidity contentions are a hollow shell of what
15  Finjan provided. *See, e.g.*, *Slot Speaker Tech., Inc. v. Apple, Inc.*, No. 13-cv-01161-HSG, 2017 WL
16  235049, at *2 (N.D. Cal. Jan. 19, 2017) ("the level of specificity required by Rule 3-3(c) for
17  invalidity contentions is the same as that required by Rule 3-1 for infringement contentions.").

18  **D.  Finjan's Contentions for the Other Patents Comply with the Rules**

19  First, the Court should deny PAN's Motion because Judge Hamilton already denied the same
20  motion as to the initial, April 1 contentions for the '633, '731, and '408 Patents. That motion did
21  not analyze the alleged deficiencies in those contentions, PAN did not provide the contentions to
22  the Court, and the Court did not address them. PAN again should not get another bite at the apple
23  when it already failed to carry its burden in the first instance. Regardless, Finjan's contentions more
24  than adequately identify where and how each of the claim limitations can be found in the accused
25  products, and PAN has more than reasonable notice of how it infringes the asserted patents.

26  **1.  The '633 Patent: Finjan set forth a theory for "mobile protection code"**

27  Finjan's original and amended contentions explain that the WildFire product includes what
28  PAN's confidential documents call ▬▬▬▬▬▬▬▬ (*E.g.*, Unredacted Ex. 7 to Van Nort

1  Decl. (Dkt No. 161-1) at pp. 15, 72, 78-89; Dkt. No. 160-8 (Redacted).)  WildFire's ▮▮▮
2  ▮▮▮ includes a **component** that PAN calls ▮▮▮ comprising a number of
3  **sub-components** including ▮▮▮[5] each
4  performing certain functions that enable WildFire to analyze executable files suspected of being
5  malware. (*Id*.)  Of those, Finjan's contentions specifically identify WildFire's ▮▮▮
6  sub-component as "mobile protection code" because it executes suspect files and monitors or
7  intercepts actually or potentially malicious code operations.[6]  (*E.g.*, *id*. at p. 81.)  Finjan's
8  contentions further identify the ▮▮▮ source code (by file names, pinpoint citations,
9  and detailed narrative) that satisfies the "mobile protection code" limitation. (*Id*. at pp. 103-109.)

10  PAN's reliance (at 13) on *Finjan, Inc. v. Zscaler, Inc.* is inapposite.  There, the court agreed
11  that "Finjan's contention that each allegedly infringing **product** it identifies '**is or contains** a
12  [claimed] communications engine'" was insufficient to specify where and how the claim limitation
13  is found. Case No. 17-cv-06946-JST, 2019 WL 7589210, *4 (N.D. Cal. Feb. 5, 2019) (emphasis
14  added).  Here, Finjan does not merely contend that WildFire (the relevant accused product for the
15  "mobile protection code" limitation) "is or contains" "mobile protection code."  Instead, Finjan
16  points to specific **components** ▮▮▮ within PAN's WildFire product, specific
17  **sub-components** ▮▮▮ of those components, and specific **source code** of those sub-
18  components to provide PAN with notice of Finjan's infringement theories.

19  Finally, PAN calls Finjan's contentions "inconsistent" (at 13) because Finjan allegedly
20  points to the same structure for different limitations.  However, Finjan points to WildFire's ▮▮▮
21  ▮▮▮ as the "downloadable-information destination," not ▮▮▮ as PAN states.
22  (Ex. 7 to Van Nort Decl. at pp. 83-84.)  Even if PAN's mischaracterizations of Finjan's contentions
23  were correct, it is well established that for infringement, "a single element, feature, or mechanism
24  can ordinarily satisfy multiple claim limitations, including by performing multiple claimed

---

[5] PAN's documents sometimes refer to ▮▮▮
▮▮▮
[6] The parties agree that the claim construction for "mobile protection code" should include "code that, at runtime, monitors or intercepts actually or potentially malicious code operations without modifying the executable code." (*See* Dkt. No. 164-1 (JCCS, Ex. A) at p. 9.)  The parties disagree on whether to include "where the mobile protection code itself must be executable." *Id*.

functions." *Google v. Pers. Audio*, 743 F. App'x 978, 985 (Fed. Cir. 2018).

### 2. The '408 Patent: Finjan set forth a theory for "parser rules," "analyzer rules," and "tokens"

Finjan explicitly identified what it contends are "parser rules," "analyzer rules," and "tokens" in its original contentions despite PAN's refusal to produce source code relating to the State Machine Language ("SML") and Deterministic Finite Automata ("DFA") source code that Finjan identified as parser rules and analyzer rules. (*E.g.*, Unredacted Ex. 8 to Van Nort Decl. (Dkt No. 161-1) at p. 113; Dkt. No. 160-7 (Redacted) ("PAN-OS utilizes SML files and Deterministic Finite Automata ("DFA") constructs that describe parser and analyzer rules for the specific programming language.").) Finjan explained that "[t]he scanner utilizes the rules specified by the SML and DFA to determine tokens from the incoming stream of program code" in addition to providing details regarding how the claims are satisfied, such as how the SML virtual machine utilizes SML analyzer rules to identify certain combinations of tokens generated by the SML and DFA as indicators of potential exploits. (*Id.* at p. 117; *see also id.* at p. 121.)

Once PAN finally made the SML and DFA source code available, Finjan supplemented its contentions to explain how this source code aligns with the claims. For example, Finjan identified functions in the source code that specify parser rules for parsing ▆▆▆▆▆▆▆▆▆▆▆ ▆▆▆▆▆▆▆▆ content and the corresponding ▆▆▆▆▆▆▆▆▆▆▆▆▆▆ ▆▆▆▆▆▆▆▆▆▆▆ content in satisfaction of the claims. (*E.g.*, *id.* at p. 117.) Finjan also explained how PAN's code specifies parser rules to identify tokens within the ▆▆▆▆▆▆ ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆. (*E.g.*, *id.* at p. 120.) Finjan further identified relevant source code functions and explained how NGFW products perform DFA pattern matching operations, with or without specialized hardware, to satisfy the claims by generating matched tokens that are then utilized for content inspection; Finjan explained that also includes analyzing the network packets in the incoming stream to identify a combination of tokens according to the DFA rules determined by the content specific parser. (*E.g.*, *id.* at pp. 129-131.) Finjan further explained and identified relevant source code functions that process and analyze the matched tokens for malicious content. (*E.g.*, *id.* at pp. 131-132.) These are but a few examples of Finjan's detailed contentions explaining how PAN's products satisfy each limitation that PAN complains were not adequately disclosed.

### 3. The '731 Patent: Finjan set forth a theory for "file cache"

Finjan identified "file caches" and explained how the infringing file caches satisfy the claims, including storing files that have been scanned. In its original contentions, Finjan explained that PAN-OS stores previously scanned files: "PAN-OS specifies at least two file caches, i.e., ▮▮▮, for storing files that have been scanned by the scanner for future access." (Unredacted Ex. 9 to Van Nort Decl. (Dkt No. 161-1) at p. 101; Dkt. No. 160-9 (Redacted).)

PAN incorrectly asserts (at p. 14) that Finjan never identifies any alleged file cache that stores files after the scanner has derived a security profile. Yet, Finjan's contentions identify infringing file caches that store files after they have been scanned along with relevant source code for performing the infringing functionality. (*See, e.g.*, *id.* at p. 101; *Id.* at pp. 103-104 (explaining how ▮▮▮ and ▮▮▮ store files and corresponding information that have been scanned by the scanner for future access and identifying the relevant source code)). Finjan also identified infringing security profile caches that store security profiles that have been derived by the scanner in addition to explaining how the security profile caches are updated. (*E.g.*, *id.* at p. 133 (explaining how "the modules within the Wildfire servers that parse and derive security profiles include *a security profile cache in the form of a database for storing the security profiles derived by the scanner*" and how the security profiles corresponding to the file stored in the ▮▮▮ are updated); *id.* at p. 137 (explaining how security profiles are stored after the static analysis process).)

PAN complains that Finjan uses "optional language" (at p. 14) when explaining a portion of its infringement theory relating to PAN's ▮▮▮ in WildFire serving as the security profile cache; however, PAN cannot deny that it has notice of what components of its systems Finjan contends serve as the claimed security profile cache. *See Apple Inc. v. Samsung Elecs. Co.*, 5:12-CV-0630-LHK-PSG, 2014 WL 173409, at *1 (N.D. Cal. Jan. 9, 2014) (infringement contentions need not identify evidence of implementation level details—only notice of the infringement theory). Finjan indisputably identified its theories for the "file cache" and "security profile cache" here.

### IV. CONCLUSION

For the foregoing reasons, Finjan respectfully requests that the Court deny PAN's Motion.

| | | |
|---|---|---|
| 1 | Dated: September 30, 2021 | Respectfully Submitted, |
| 2 | | */s/ Phillip W. Goter* |
| 3 | | Juanita R. Brooks (CA SBN 75934) |
| | | brooks@fr.com |
| 4 | | Roger A. Denning (CA SBN 228998) |
| | | denning@fr.com |
| 5 | | Frank J. Albert (CA SBN 247741) |
| | | albert@fr.com |
| 6 | | K. Nicole Williams (CA SBN 291900) |
| | | nwilliams@fr.com |
| 7 | | Jared A. Smith (CA SBN 306576) |
| 8 | | jasmith@fr.com |
| | | Tucker N. Terhufen (CA SBN 311038) |
| 9 | | terhufen@fr.com |
| | | FISH & RICHARDSON P.C. |
| 10 | | 12860 El Camino Real, Ste. 400 |
| | | San Diego, CA 92130 |
| 11 | | Telephone: (858) 678-5070 / Fax: (858) 678-5099 |
| 12 | | Aamir Kazi (*Pro Hac Vice*) |
| | | kazi@fr.com |
| 13 | | Lawrence Jarvis (*Pro Hac Vice*) |
| 14 | | jarvis@fr.com |
| | | FISH & RICHARDSON P.C. |
| 15 | | 1180 Peachtree St. NE, 21st floor |
| | | Atlanta, GA 30309 |
| 16 | | Telephone: (404) 892-5005 / Fax: (404) 892-5002 |
| 17 | | Phillip W. Goter (*Pro Hac Vice*) |
| | | goter@fr.com |
| 18 | | FISH & RICHARDSON P.C. |
| 19 | | 3200 RBC Plaza, 60 South Sixth Street |
| | | Minneapolis, MN 55402 |
| 20 | | Telephone: (612) 335-5070 / Fax: (612) 288-9696 |
| 21 | | Susan E. Morrison (*Pro Hac Vice*) |
| | | morrison@fr.com |
| 22 | | FISH & RICHARDSON P.C. |
| | | 222 Delaware Ave., 17th Floor, P.O. Box 1114 |
| 23 | | Wilmington, DE 19801 |
| 24 | | Telephone: (302) 652-5070 / Fax: (302) 652-0607 |
| | | Tracea Rice (*Pro Hac Vice*) |
| 25 | | trice@fr.com |
| | | FISH & RICHARDSON P.C. |
| 26 | | 1000 Maine Ave. Ste. 1000 |
| 27 | | Washington, DC 20024 |
| | | Telephone: (202) 783-5070 / Fax: (202) 783-2331 |
| 28 | | Attorneys for Plaintiff FINJAN LLC |