| | |
|---|---|
| MICHAEL A. JACOBS (CA SBN 111664) <br> MJacobs@mofo.com <br> MATTHEW A. CHIVVIS (CA SBN 251325) <br> MChivvis@mofo.com <br> DIEK O. VAN NORT (CA SBN 273823) <br> DVanNort@mofo.com <br> MORRISON & FOERSTER LLP <br> 425 Market Street <br> San Francisco, California 94105-2482 <br> Telephone: (415) 268-7000 <br> Facsimile: (415) 268-7522 <br><br> RUDY Y. KIM (CA SBN 99426) <br> RudyKim@mofo.com <br> MORRISON & FOERSTER LLP <br> 755 Page Mill Road <br> Palo Alto, California 94304-1018 <br> Telephone: (650) 813-5600 <br> Facsimile: (650) 494-0792 | ROSE S. LEE (CA SBN 294658) <br> RoseLee@mofo.com <br> MORRISON & FOERSTER LLP <br> 707 Wilshire Boulevard, Suite 6000 <br> Los Angeles, California 90017-3543 <br> Telephone: (213) 892-5200 <br> Facsimile: (213) 892-5454 <br><br> KYLE W.K. MOONEY (*Pro Hac Vice*) <br> KMooney@mofo.com <br> ERIC W. LIN (*Pro Hac Vice*) <br> ELin@mofo.com <br> MICHAEL J. DESTEFANO (*Pro Hac Vice*) <br> MDeStefano@mofo.com <br> MORRISON & FOERSTER LLP <br> 250 West 55th Street <br> New York, New York 10019-9601 <br> Telephone: (212) 468-8000 <br> Facsimile: (212) 468-7900 |

Attorneys for Defendant
PALO ALTO NETWORKS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FINJAN LLC, <br><br> Plaintiff, <br><br> v. <br><br> PALO ALTO NETWORKS, INC., <br><br> Defendant. | Case No.   4:14-CV-04908-JD <br><br> **DEFENDANT PALO ALTO NETWORKS, INC.'S REPLY IN SUPPORT OF ITS MOTION TO CONFIRM FINJAN LLC HAS NO OPERATIVE INFRINGEMENT CONTENTIONS FOR THE '633, '408, AND '731 PATENTS AND STRIKE FINJAN'S AMENDED INFRINGEMENT CONTENTIONS FOR THE '154 PATENT** <br><br> Date: October 21, 2021 <br> Time: 10:00 a.m. <br> Courtroom: 11, 19th Floor <br> Judge: Honorable James Donato |

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ................................................................................................................. 1

II. ARGUMENT ....................................................................................................................... 1

    A. Judge Hamilton's July 20 Order Struck Finjan's Infringement Contentions for All Four Patents ................................................................................................ 1

    B. Finjan's July 16 Contentions Are Not Operative ..................................................... 3

    C. The Court Should Strike Finjan's Contentions for the '154 Patent ........................ 4

    D. Even If Finjan's Amended Contentions for the Other Three Patents Were Operative, the Court Should Strike Them ............................................................... 7

        1. The '633 Patent ............................................................................................. 7

        2. The '408 Patent ............................................................................................. 9

        3. The '731 Patent ............................................................................................. 9

III. CONCLUSION ................................................................................................................... 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Apple Inc. v. Samsung Elecs. Co.*,
   No. C-11-1846 LHK (PSG), 2012 WL 2862613 (N.D. Cal. July 11, 2012) ............... 3

*Becton, Dickinson & Co. v. Tyco Healthcare Grp., LP*,
   616 F.3d 1249 (Fed. Cir. 2010) ............... 8

*Bender v. Advanced Micro Devices, Inc.*,
   No. C-09-1149 MMC (EMC), 2010 WL 363341 (N.D. Cal. Feb. 1, 2010) ............... 10

*Droplets, Inc. v. Amazon.com, Inc.*,
   No. C12-03733 HRL, 2013 WL 1563256 (N.D. Cal. Apr. 12, 2013) ............... 5, 9

*Engel Indus., Inc. v. Lockformer Co.*,
   96 F.3d 1398 (Fed. Cir. 1996) ............... 9

*Finjan, Inc. v. Check Point Software Techs., Inc.*,
   No. 18-CV-02621-WHO, 2020 WL 597630 (N.D. Cal. Jan. 17, 2020) ............... 7

*Finjan, Inc. v. Proofpoint, Inc.*,
   No. 13-CV-05808-HSG, 2015 WL 1517920 (N.D. Cal. Apr. 2, 2015) ............... 2

*Finjan, Inc. v. Zscaler, Inc.*,
   No. 17-CV-06946-JST, 2018 WL 4181906 (N.D. Cal. Aug. 31, 2018),
   *enforcement granted*, 2019 WL 7589210 (N.D. Cal. Feb. 5, 2019) ............... 8

*Finjan, Inc. v. Zscaler, Inc.*,
   No. 17-cv-06946-JST, 2019 WL 7589210 (N.D. Cal. Feb. 5, 2019) ............... 8

*Google LLC v. Personal Audio LLC*,
   743 F. App'x. 978 (Fed. Cir. 2018) ............... 8

*Renesas Tech. Corp. v. Nanya Tech. Corp.*,
   No. C03-05709JF(HRL), 2005 WL 2000926 (N.D. Cal. Aug. 18, 2005) ............... 7

**Other Authorities**

Patent L.R. 3-1 ............... 4, 5, 9

### I.      INTRODUCTION

Finjan's Opposition ("Opp.", Dkt. No. 165) overcomplicates the issues by taking one phrase in the July 20 Order (Dkt. No. 146) out of context, repeatedly misrepresenting the facts and PAN's positions,[1] and raising arguments with no legal support or relevance to this Motion. But the issues are straightforward.  First, Judge Hamilton struck Finjan's contentions for all four patents—nothing in the Order limited it to just a single limitation of the '154 Patent.  Judge Gilliam's *Proofpoint* decision, on which Judge Hamilton relied, confirms that PAN's position is correct.  Second, the July 20 Order required Finjan to provide sufficient infringement theories. Finjan's July 16 amended contentions made no changes to the insufficient infringement theories in its original contentions.  Further, those contentions *predated* the July 20 Order.  They were not responsive to it.  Finally, Finjan's contentions do not identify the specific components that allegedly satisfy the claim elements or explain *how* they might do so.  In fact, many of Finjan's infringement theories are self-contradictory.

### II.      ARGUMENT

#### A.      Judge Hamilton's July 20 Order Struck Finjan's Infringement Contentions for All Four Patents

The July 20 Order is clear: Judge Hamilton struck Finjan's infringement contentions for all four patents and ordered Finjan to serve amended contentions to "identify where and how *each* of the claim limitations, *including* the 'first function' and 'second function,' can be found in the accused products." (Dkt. No. 146 at 4 (emphasis added).)  Judge Hamilton did not limit the Order to the '154 Patent but merely used the infringement contentions for the '154 Patent as an "exemplar" of how Finjan's "contentions do not contain sufficient detail to provide notice of Finjan's infringement theories."  (*Id.* at 1-2.)  Finjan acknowledges that "claim 1[a] of the '154 Patent" was an "exemplar" (Opp. at 3) but fails to reconcile it with its position.  Because Judge

---

[1] For example, contrary to Finjan's misrepresentation (Opp. at 5), PAN properly met and conferred with Finjan.  As shown by the very correspondence that Finjan cites to, PAN identified specific examples of deficiencies in Finjan's contentions before the meet and confer, during the meet and confer, and after the meet and confer.  (Dkt. No. 161-5 at 2, 4, 6 (PAN identifying previously described deficiencies).)  Finjan refused to acknowledge the deficiencies.

Hamilton "neither ha[d] the time nor the inclination to read" Finjan's "over 2,000 pages of exhibits," Judge Hamilton considered Finjan's contentions based on the "first function" and "second function" elements and found the contentions deficient. (*Id.* at 4.) The Order recognized that the two claim elements were "representative of the deficiencies in Finjan's contentions" (Dkt. No. 128 at 5-6) and struck Finjan's contentions for all four patents. (Dkt. No. 146 at 4.)

Finjan claims that Judge Hamilton could not have stricken Finjan's contentions for the other three patents because PAN and Judge Hamilton did not expressly address them substantively. (Opp. at 5-6.) But *Finjan v. Proofpoint*, the very case that Judge Hamilton relied on, shows this is not true. Proofpoint focused on two exemplary patents (including the '154 Patent) of eight asserted patents—just as PAN focused on one exemplary patent (the '154 Patent) of four asserted patents. (Lin Decl., filed herewith, Ex. 12 at 12-13.) Proofpoint used the "first function," "second function," and "input" elements of the '154 Patent as examples—just as PAN did. (*Id.* at 14.) Proofpoint's motion to strike did not analyze the other six patents' contentions. And just like Judge Hamilton, Judge Gilliam addressed only the '154 Patent in his order. *Finjan, Inc. v. Proofpoint, Inc.*, No. 13-CV-05808-HSG, 2015 WL 1517920, at *6-8 (N.D. Cal. Apr. 2, 2015). But Judge Gilliam did not limit his order to the '154 Patent. *Id.* at *10. And subsequent filings showed that Finjan understood that. (*See* Lin Decl. Ex. 13 at 2 ("[T]he Court ordered Finjan to supplement its infringement contentions to . . . identify its infringement theories on a claim-by-claim, element-by-element basis.").) Far from being in the dark about "what to supplement to comply with the Order" (Opp. at 6), Judge Hamilton gave Finjan the exact guidance it needed: "identify where and how each of the claim limitations . . . can be found in the accused products." (Dkt. No. 146 at 4.)

Finjan's last argument is that Judge Hamilton's use of "GRANTED in part" versus "DENIED" implied that she was striking only the '154 Patent's contentions. (Opp. at 6.) As explained in the Motion, however, the only reasonable reading of the Order is that the "GRANTED in part" reflected that Judge Hamilton granted one of PAN's three grounds for striking the contentions and denied the other two. (Mot. at 6-7.) And to the extent Finjan was "unclear" about the scope of the Order, "the proper course was for [Finjan] to seek clarification

immediately," "not to read self-serving limitations into the order." *Apple Inc. v. Samsung Elecs. Co.*, No. C 11-1846 LHK (PSG), 2012 WL 2862613, at *6 (N.D. Cal. July 11, 2012).

### B. Finjan's July 16 Contentions Are Not Operative

Finjan's efforts to defend the status of its July 16 contentions ignore the actual sequence of events. Judge Hamilton ordered Finjan to amend its contentions to provide sufficient notice of its infringement theories. Because Finjan did not amend its contentions for the other three patents in response to the Order, Finjan has no operative contentions for the other three patents. First, Judge Hamilton terminated Finjan's motion for leave to amend on July 20 (Dkt. No. 147), and therefore, Finjan did not obtain leave of Court to serve the July 16 contentions. Second, Judge Hamilton ordered Finjan to amend its contentions to provide sufficient notice of its infringement theories. But because Finjan made no attempt to do so in its July 16 contentions, they cannot be responsive to the July 20 Order.

Finjan's emphasis on how easily it could have served the July 16 contentions after the Order issued misses the point. (Opp. at 5.)[2] Even if Finjan had served the same July 16 amended contentions after the July 20 Order, the contentions still would not be responsive to Judge Hamilton's Order. As Finjan admitted, the July 16 proposed amendments only added source code citations. (Dkt. No. 161-4 at 3; *see also* Dkt. No. 143.) They made no changes to Finjan's deficient articulations of infringement theories, as Judge Hamilton ordered. The redlines in the July 16 contentions confirm that. (*See* Dkt. No. 161-7, 161-8, 161-9, 161-10 (showing changes only to source code citations and narratives.) Finjan did not even pretend to address the deficiencies. It stated that "Finjan disagrees that its previously-served contentions were in any way deficient, maintains that its theories were fully disclosed." (*See, e.g.*, Dkt. No. 161-8 at 3.) The amendments were only to "provide[] these exemplary citations to the code in good faith to assist PAN with understanding the infringement theories already disclosed." (*Id.*)

---

[2] And Finjan mischaracterizes PAN's position. PAN stated that "if Finjan had served amended contentions on August 19 *in response* to Judge Hamilton's July 20 order," then those contentions would have been operative. (Dkt. No. 161-5 at 2 (emphasis added).) But Finjan chose not to do so. And Finjan's attempt to retroactively serve old contentions only highlights how they are not responsive to the Order. PAN's previous correspondence clarified this point. (*Id.* at 3.)

DEFENDANT PAN's REPLY ISO MOTION TO CONFIRM AND STRIKE
CASE NO. 4:14-CV-04908-JD                                                                                       3

### C. The Court Should Strike Finjan's Contentions for the '154 Patent

Finjan's Opposition confirms that its amended contentions fail to "identify where and how" the "content processor," "security computer," "content," "input," "first function," and "second function" claim elements can be found in PAN's products. Patent L.R. 3-1(c). Arguing sufficient identification for these limitations, Finjan cites large ranges of its contentions from dozens to over 100 pages. (Opp. at 11.) But as Judge Hamilton noted, "any focus on the length of the contentions is a distraction from the real issue—the substantive content of the contentions." (Dkt. 146 at 4.) Rather, the contentions "must be sufficiently detailed." (*Id.*) They are not.

The Opposition also provides a summary of its infringement theory "narratives." (Opp. at 8-9.) But this summary only highlights the deficiencies and inconsistencies in the contentions.

Finjan equates a "first function" with a "substitute function," and a "second function" with an "original function," but nowhere identifies the alleged "substitute function" and "original function" in PAN's products. Finjan's reference to PAN's IPR claim construction in the IPR proceeding is a distraction. (*Id.* at 9-10.)[3] The Patent Local Rules required Finjan to "identify[] specifically where and how each limitation of each asserted claim is found within each" accused product. Patent L. R. 3-1(c). That PAN understands what a "substitute function" and an "original function" mean within the context of the '154 Patent does not mean that Finjan satisfied the Local Rules when it simply used these terms in place of "first function" and "second function." The issue is that Finjan failed to identify specifically the components and functionality of the accused products that it believes correspond to those functions, regardless of whether they are called first function and second function or substituted function and original function.

Finjan's opposition confirms that its contentions fail to articulate an infringement theory for the "first function" limitations. Under its "Content Processor" section, Finjan alleges that the received "content" "includ[es] first and second functions," as the claim clearly requires. (Opp. at 8-9.) But under the "First Function" section, Finjan alleges that "[s]ubstitute functions" (corresponding to the alleged "first functions") are "*inserted by PAN* into content[.]" (*Id.*) If

---

[3] Notably, during the claim construction meet and confer process, Finjan disputed that the first and second functions should be construed in this case as substitute and original functions, respectively, as they were in the IPR and as Finjan seemingly concedes now.

"first functions" are inserted into the "content," then by logic, they did not exist in the received "content," as the claim requires.  Finjan's allegations that PAN *inserts* "first functions" into "content" after the "content" is received does not articulate an infringement theory in which "the first function" must be present in the "content" when received.

Moreover, Finjan's exemplary "first functions" and "second functions" do not provide PAN with reasonable notice of Finjan's infringement theories.  Finjan ignores that both the Patent Local Rules and the July 20 Order require Finjan to identify not only "where" each claim limitation is found in the accused products, but also "how" it meets the claim language. (Dkt. No. 146 at 3-4; Patent L.R. 3-1(c).)  In other words, Finjan must provide "some association between the evidence and the language used in the claim limitations [that] is necessary to understand where each claim limitation is found within the Accused Product." *Droplets, Inc. v. Amazon.com, Inc.*, No. C12-03733 HRL, 2013 WL 1563256, at *5 (N.D. Cal. Apr. 12, 2013).  But Finjan does explain *how* the alleged PAN functions map onto any of the claim elements.  In fact, Finjan concedes, in a footnote, that its alleged source code explanations for the "first function" are an exact copy-and-paste of its explanations for other limitations of other patents. (Opp. at 11 n.4.)  The generic explanations do not explain how those alleged "first functions" are invoked by a call that is included in the "content," or how the alleged "first functions" and "second functions" share the same "input," as is plainly required by the claim. (*See, e.g.*, Dkt. No. 161-7 at 178-82.)  Similarly, nowhere in the other cited pages does Finjan explain how those alleged "first functions" map to the claim language. (*See* Opp. at 10.)  As Finjan's own summaries of its identifications show, Finjan at best explains the procedural operation of the source code without tying the operation to the claim language. (*See, e.g.*, *id*. ("explaining this function searches the local cache for any malicious or benign URLs").)

Finjan's open-ended statements also fail to identify specifically the claims' "content processor" and "security computer."[4]  Finjan states that the "content processor" is "NGFW

---

[4]  Finjan's claim that other than "first function" and "second function," PAN's original motion (Dkt. No. 128) did not analyze the other claim elements of the '154 Patent is another misrepresentation of the facts. (Opp. at 11.)  PAN clearly did so in its original motion. (Dkt. No. 128 at 7-9.)

structures that process network content" and the "security computer" is "pattern recognition modules on the NGFW (dedicated security hardware and software)." (Opp. at 8-9.) But PAN's NGFW products contain thousands of structures and hardware and software components. PAN has no way of knowing which structures allegedly constitute "NGFW structures" and which hardware and software components allegedly constitute "pattern recognition modules." By rewriting quotes from its contentions to insert the word "evidence," Finjan argues that the "exemplary" and open-ended language in its claim charts is referring to evidence, not its infringement theories. (Opp. at 10.) But if everything that follows Finjan's "exemplary" language is just evidence and does not limits its theories, then the only infringement theory that is left is the high-level, open-ended descriptions like "structures" and "pattern recognition modules." Those do not provide notice of Finjan's infringement theory.

Finjan also points to pages of its contentions where it allegedly provided "pinpoint citations in PAN's source code illustrating the modules that comprise the accused 'content processors.'" (*Id.* at 11.) But those pages do not articulate Finjan's theories because they describe the accused "content processor" in terms of functionality not present in the claims. For example, acknowledging that the alleged "content" in PAN's products does not include "a call to a first function" when received, as the claims require, Finjan argues that the alleged "content processor" "*inserts* substitute functionality [*i.e.*, the first function] into the content received by the system." (Dkt. No. 161-7 at 173 (emphasis added).) Finjan cannot satisfy the Patent Local Rules by identifying alleged infringing functionality that does not map to the claim language.

Its narratives also confirm that Finjan fails to articulate an infringement theory because it conflates "input" with "content," despite these being different claim elements. In the claims, when a "first function" is invoked, the "input" is inspected by the "security computer." (*Id.* at 294.) If the "input" is safe, the "content processor" invokes the "second function" with the same "input." (*Id.* at 10.) In Finjan's narrative, however, it is not the "input" that is checked by the alleged "security computer" (*i.e.*, "pattern recognition modules") but the "content." (Opp. at 8:22-9:6 ("First Function: Substitute functions that are inserted by PAN into content that cause *content to be checked by pattern recognition modules*.") (emphasis added).) Finjan's attempts to

articulate an infringement theory fail due to same incorrect mapping throughout its infringement contentions.  (*See, e.g.*, Dkt. No. 161-7 at 13 ("[F]or content received by the NGFW, the NGFW sends *content (inputs)* to WildFire for analysis."), 43 ("NGFW inserts functionality (substitute function call) that causes *content (inputs)* to be sent to other structures in the NGFW (security computer) to be analyzed.") (emphasis added).)  Additionally, despite that the same "input" is included both in a call to a "first function" and when invoking a "second function," Finjan's narrative does not connect the "input" with the "first function."  It only identifies "Inputs" as "parameters or arguments to the original functions," the alleged "second function."  (Opp. at 8-9.)

Finally, Finjan's argument regarding PAN's invalidity contentions (*id.* at 12) is another distraction.  As Judge Orrick noted when Finjan attempted the same tactic: "Check Point's invalidity contentions are not the subject of this pending motion [to strike infringement contentions]; whether Finjan's [Second Amended Infringement Contentions] have complied with my previous three orders is." *Finjan, Inc. v. Check Point Software Techs., Inc.*, No. 18-CV-02621-WHO, 2020 WL 597630, at *20 (N.D. Cal. Jan. 17, 2020).  In any event, PAN has supplemented its contentions per Finjan's request (Lin Decl. Ex. 14), so the argument is moot.

> **D.  Even If Finjan's Amended Contentions for the Other Three Patents Were Operative, the Court Should Strike Them**

Even if, as Finjan claims, Judge Hamilton had denied PAN's previous motion with respect to the other three patents, the present motion is not "another bite at the apple."  (Opp. at 12.)  Finjan cites no authority that would prohibit PAN from challenging Finjan's July 16 amended contentions.  To the contrary, Finjan's position conflicts with *Renesas Tech. Corp. v. Nanya Tech. Corp.*, where the plaintiff similarly claimed that the defendant "is barred from bringing this motion because of its unsuccessful prior motion to strike."  No. C03-05709JF(HRL), 2005 WL 2000926, at * 2 (N.D. Cal. Aug. 18, 2005).  The court "disagree[d]" because "the motion is based on a new set of [Preliminary Infringement Contentions]."  *Id.*  Similarly, this motion is based on Finjan's July 16 contentions, not the initial April 1 contentions.

> **1.  The '633 Patent**

For both of the '633 Patent's "mobile code executor" and "mobile protection code,"

Finjan points to a high-level component, WildFire's Virtual Machine, not a "*specific* component or data structure within [PAN's] system that constitutes the claimed item[.]" *Finjan, Inc. v. Zscaler, Inc.*, No. 17-CV-06946-JST, 2018 WL 4181906, at *1 (N.D. Cal. Aug. 31, 2018), *enforcement granted*, 2019 WL 7589210 (N.D. Cal. Feb. 5, 2019) (emphasis added). Finjan's argument that it did not identify the WildFire product as the "mobile protection code" (Opp. at 13) is irrelevant. Finjan's conclusory allegations that the claim element must be somewhere in the "high-level system components," such as the Virtual Machine, are still "insufficient to meet the requirements of Patent Local Rule 3-1." *Finjan, Inc. v. Zscaler, Inc.*, No. 17-cv-06946-JST, 2019 WL 7589210, at *4 (N.D. Cal. Feb. 5, 2019).

Finjan does not deny that it points to the same thing for different claim elements. Claim limitation 14[c] involves three elements: (1) "mobile protection code" that is "executed by" (2) the "mobile code executor at" (3) a "downloadable-information destination." (Dkt. No. 161-8 at 72.) Conceding that it points to the same high-level component for the first two elements, Finjan only disputes whether it identifies the Virtual Machine as the "downloadable-information destination." (Opp. at 13.) But the contentions clearly equate "virtual machine" with "runtime environment" and "sandbox" (Dkt. No. 161-8 at 83 ("runtime environment/virtual machine/sandbox")), while at the same time identifying "runtime environment" and "sandbox" as the "downloadable-information destination." (*Id.* at 83, 91.) Finjan is thus pointing to the same high-level component for all three elements.

Finjan's only justification for its triple mapping to the Virtual Machine—*Google LLC v. Personal Audio LLC*, 743 F. App'x. 978, 985 (Fed. Cir. 2018)—is inapposite. *Google* held that the same portions of prior art could perform two claimed functions, the "skip" and "go" functions. *Id.* It did not hold that when a claim limitation includes multiple separate elements, those elements could all be the same thing. In fact, courts have repeatedly held that "[w]here a claim lists elements separately, the clear implication of the claim language is that those elements are distinct component[s] of the patented invention." *See, e.g.*, *Becton, Dickinson & Co. v. Tyco Healthcare Grp., LP*, 616 F.3d 1249, 1254 (Fed. Cir. 2010) (internal quotations and citation omitted). Further, Finjan's theories do not make sense. The Virtual Machine cannot be

"executed" "by" itself "at" itself, as the limitation would require if the Virtual Machine is all three elements. *See Engel Indus., Inc. v. Lockformer Co.*, 96 F.3d 1398, 1404-05 (Fed. Cir. 1996) (concluding that where a claim provides for two separate elements, a "second portion" and a "return portion," these two elements "logically cannot be one and the same").

### 2. The '408 Patent

Finjan's Opposition confirms that it never identifies "where and how" the "parser rule," "analyzer rules," and "tokens" are found in the accused products. *See* Patent L.R. 3-1(c). Despite its verbiage, Finjan's Opposition never once explains what these claim elements are in PAN's products. Finjan first claims that it "explicitly identified what it contends are 'parser rules,' 'analyzer rules,' and tokens' in its original contentions[.]" (Opp. at 14.) But the language that Finjan quotes merely points to the SML files and DFA constructs that allegedly "*describe* parser and analyzer rules" (*id.* (emphasis added)), not the specific components that constitute the "parser rules" and "analyzer rules." And all Finjan does in its subsequent explanation is use the claim elements without identifying the specific components that allegedly correspond to them. (*See, e.g., id*. ("SML virtual machine utilizes SML analyzer rules to identify certain combinations of tokens generated by the SML and DFA.").)

Finjan's source code explanations do not help. As Finjan acknowledges, its amended contentions merely identify source code functions that "*specify* parser rules" (*id.* at 14 (emphasis added)) and that "*process and analyze* the matched tokens." (*Id.* (emphasis added).) Finjan also points to pages where it explained how PAN's products operate. (*Id.*) But neither the Opposition nor the contentions map the generic explanations to the claim language. *Droplets*, 2013 WL 1563256, at *3-5 ("In instances where [the patentee] includes source code or tools, the source code or tools lack meaning unless somehow linked with the language of the claim limitations.").

### 3. The '731 Patent

Finjan provides no cognizable infringement theory for the claim element "file cache." In claim 1, a "file cache" must store "files that have been scanned by the scanner" (Dkt. No. 161-10 at 92), which entails the scanner "deriving security profiles" that include "a list of computer commands" for the files (*id.* at 10-11). Finjan claims that, in its original contentions, it

"explained that PAN-OS stores previously scanned files," but the only evidence that it points to is a restatement of the claim language with the insertion of filecache1 and filecache2 in the front. (Opp. at 15 ("PAN-OS specifies at least two file caches, i.e., filecache1 and filecache2 for storing files that have been scanned by the scanner for future access.").)

Finjan then claims that on pages 103 and 104 of its infringement contentions, it explained "how 'filecache1' and 'filecache2' store files and corresponding information that have been scanned by the scanner for future access." (*Id.*) But Finjan never articulates how the filecache2 stores files that *have been "scanned."* (Mot. at 14.) In fact, as Finjan explains, the accused functionality "cancels receiving the file" after finding that the file has been allegedly "scanned." (*See* Dkt. No. 161-10 at 104.) Finjan never addresses this failure in its Opposition. And although the patent requires that the file cache store the incoming files after the scanner derives security profiles corresponding to the files, Finjan fails to identify any "security profiles" that correspond to the files stored in filecache1. (*See* Opp. at 15.) Finjan therefore fails to articulate any infringement theory for how filecache1 and filecache2 meet each of the "file cache" related limitations of claim 1.

Finjan concedes that it uses optional language such as "the *potential* security profile cache" in its contentions. (*See* Mot. at 14 (emphasis added); Opp. at 15.) Yet it argues that PAN nevertheless has notice of Finjan's infringement theory for the "security profile cache." (Opp. at 15.) That is not true. Patent Local Rules require Finjan, as "the party claiming infringement to crystallize its theories of the case early in the litigation and to adhere to those theories once disclosed." *Bender v. Advanced Micro Devices, Inc.*, No. C-09-1149 MMC (EMC), 2010 WL 363341, at *1 (N.D. Cal. Feb. 1, 2010). By using optional language and therefore not committing to any infringement theory, Finjan can change its infringement theory anytime.

### III.     CONCLUSION

For the reasons above, the Court should confirm Finjan has no operative infringement contentions for the '633, '408, and '731 Patents, and strike Finjan's amended infringement contentions for the '154 Patent with prejudice.

| | | |
|---|---|---|
| 1 | Dated: October 7, 2021 | MORRISON & FOERSTER LLP |

By:   */s/ Diek O. Van Nort*
       Diek O. Van Nort

Attorneys for Defendant
PALO ALTO NETWORKS, INC.