# Exhibit 6

MICHAEL A. JACOBS (CA SBN 111664)
MJacobs@mofo.com
MATTHEW A. CHIVVIS (CA SBN 251325)
MChivvis@mofo.com
DIEK O. VAN NORT (CA SBN 273823)
DVanNort@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Telephone: (415) 268-7000
Facsimile: (415) 268-7522

RUDY Y. KIM (CA SBN 99426)
RudyKim@mofo.com
COLETTE REINER MAYER (CA SBN 263630)
CRMayer@mofo.com
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, California 94304-1018
Telephone: (650) 813-5600
Facsimile: (650) 494-0792

ROSE S. LEE (CA SBN 294658)
RoseLee@mofo.com
MORRISON & FOERSTER LLP
707 Wilshire Boulevard, Suite 6000
Los Angeles, California 90017-3543
Telephone: (213) 892-5200
Facsimile: (213) 892-5454

ERIC W. LIN (*Pro Hac Vice*)
Elin@mofo.com
MICHAEL J. DESTEFANO (*Pro Hac Vice*)
Mdestefano@mofo.com
MORRISON & FOERSTER LLP
250 West 55th Street
New York, New York 10019-9601
Telephone: (212) 468-8000
Facsimile: (212) 468-7900

Attorneys for Defendant
PALO ALTO NETWORKS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| FINJAN LLC,<br><br>Plaintiff,<br><br>v.<br><br>PALO ALTO NETWORKS, INC.,<br><br>Defendant. | Case No.    4:14-CV-04908-PJH<br><br>**DEFENDANT PALO ALTO NETWORKS, INC.'S INVALIDITY CONTENTIONS AND RELATED DISCLOSURES PURSUANT TO PATENT LOCAL RULES 3-3 AND 3-4**<br><br>Courtroom:  3, 3rd Floor<br>Judge:  Honorable Phyllis J. Hamilton |

1

## I.    PATENT LOCAL RULE 3-3 INVALIDITY CONTENTIONS

2

In accordance with Patent Local Rules 3-3 and 3-4, Defendant Palo Alto Networks, Inc.

3

("PAN") submits invalidity contentions for U.S. Patent No. 6,804,780 ("the '780 Patent"), U.S.

4

Patent No. 7,418,731 ("the '731 Patent"), U.S. Patent No. 7,613,926 ("the '926 Patent"), U.S.

5

Patent No. 7,647,633 ("the '633 Patent"), U.S. Patent No. 8,141,154 ("the '154 Patent"), U.S.

6

Patent No. 8,225,408 ("the '408 Patent"), and U.S. Patent No. 8,677,494 ("the '494 Patent")

7

(collectively, the Asserted Patents").

8

PAN's Contentions address the following claims asserted by Finjan LLC ("Finjan") in its

9

Infringement Contentions, served on April 1, 2021:

10

| **U.S. Patent No.** | **Asserted Claims** |
|---|---|
| 6,804,780 | 1-2, 5, 9-10, 13, 17-18 |
| 7,418,731 | 1-3, 14-15, 17 |
| 7,613,926 | 1-30 |
| 7,647,633 | 14 |
| 8,141,154 | 1-2, 4, 6, 7, 10 |
| 8,225,408 | 1, 3-8, 22 |
| 8,677,494 | 3-5, 7, 10-16 |

11
12
13
14
15
16
17
18

19

PAN's discovery and investigation in connection with this lawsuit are ongoing, and these

20

disclosures are based on PAN's current knowledge and understanding of the '780, '731, '926,

21

'633, '154, '408, and '494 Patents, Finjan's Infringement Contentions, the prior art, and other

22

facts and information available at this time in the present action.  PAN reserves the right, to the

23

extent permitted by the Court and the applicable rules, to amend, modify, and/or supplement these

24

Contentions and associated document production if PAN obtains additional or different

25

information or if PAN asserts additional or different claims or otherwise modifies its assertions.

26

In particular, Finjan's deficient Infringement Contentions fail to provide PAN with adequate

27

notice as to Finjan's infringement theories.  Thus, PAN reserves the right to amend, modify, or

28

1  supplement the information provided herein, including identifying, charting, and relying on
2  additional references.

3       Furthermore, the Court has not yet construed the Asserted Claims in the present action.
4  Accordingly, PAN reserves the right to amend, modify, or supplement these Contentions should
5  any of the claim limitations be construed by the Court.  PAN further reserves the right to amend,
6  modify, or supplement these Contentions in response to any proposed claim construction or
7  alleged supporting evidence offered by Finjan, any report from any expert witness for Finjan
8  regarding claim construction, any claim construction briefing filed by Finjan, and any position
9  taken by Finjan concerning claim construction, infringement, validity, or other relevant issues.

10       To the extent that these Contentions reflect constructions of claim terms that may be
11  consistent with or implicit in Finjan's Infringement Contentions, no inference is intended or
12  should be drawn that PAN agrees with such claim constructions.  These Contentions are not
13  intended to reflect PAN's claim construction positions, which will be disclosed in due course in
14  accordance with this Court's Scheduling Order.  Moreover, PAN's Contentions, including the
15  attached claim charts, may reflect alternative positions as to claim construction and claim scope.
16  Nothing in this document should be construed as an admission that PAN agrees with Finjan's
17  assertions or that any claim is valid, enforceable, or infringed.

18       The accompanying claim charts list specific examples of prior art that included and/or
19  disclosed, either expressly or inherently, each limitation of the identified claims and/or made
20  obvious each limitation of the identified claims.  PAN has endeavored to identify relevant
21  portions and/or features of the identified prior art.  The identified prior art, however, may
22  contain additional descriptions of or alternative support for the claim limitations.  The citations
23  included in each chart are illustrative, not exhaustive.  PAN may rely on un-cited portions or
24  features of the identified prior art, other documents, and fact and expert testimony to provide
25  context or to aid in understanding the identified prior art.  Where PAN cites to a particular
26  figure in a reference, the citation should be understood to encompass the caption and
27  description of the figure and any text relating to the figure.  Similarly, where PAN cites to
28  particular text referring to a figure, the citation should be understood to include the figure and

1   caption as well.  The claims addressed in the charts are anticipated and/or rendered obvious under

2   35 U.S.C. § 102 and/or § 103.

3          Finjan has not provided sufficient evidence of conception and reduction to practice of the

4   '780, '731, '926, '633, '154, '408, and '494 Patents.  Thus, the '780, '731, '926, '633, '154, '408,

5   and '494 Patents are not entitled to any date of invention earlier than their effective filing date.

6   To the extent Finjan is able to assert an earlier date of invention for the '780, '731, '926, '633,

7   '154, '408, and '494 Patents, PAN further reserves its right to amend, modify, or supplement its

8   Contentions, including, but not limited to its identification and production of prior art.

9          To the extent a prior art reference is identified as part of one or more combinations of

10  references under 35 U.S.C. § 103, PAN reserves the right to chart that reference independently

11  under 35 U.S.C. § 102 at a later date should circumstances dictate.  Further, in many instances

12  where a particular contention calls for combining references, any one of a number of references

13  can be combined.  The inclusion of certain exemplary combinations of prior art references does

14  not exclude other combinations.

15         Moreover, as certain prior art references and inventions are described in multiple related

16  patents or publications with similar or identical specifications or disclosures, to the extent PAN

17  has identified a citation in one reference, PAN reserves the right to rely on parallel or similar

18  citations in related patents or publications.  Persons of ordinary skill in the art ("POSITA") would

19  read a prior art reference and understand a prior art invention as a whole and in the context of

20  other publications and known technologies.  Therefore, to understand and interpret any specific

21  statement or disclosure of a prior art reference or invention, such persons would rely on other

22  information within the reference or invention, along with other publications and known

23  technologies.  PAN reserves the right to establish what was known to persons of ordinary skill in

24  the art through other publications, products, and/or testimony.  PAN also reserves the right to rely

25  on uncited portions of the prior art references, other publications, and testimony to establish that a

26  POSITA would have been motivated to combine certain of the cited references so as to render the

27  claims obvious.

28         PAN may also rely on other documents and information, including inventor admissions,

4

1    concerning the scope of the Asserted Claims, and prior art relevant to the Asserted Claims, found

2    in:  the '780, '731, '926, '633, '154, '408, and '494 Patents, the patent prosecution histories for

3    the '780, '731, '926, '633, '154, '408, and '494 Patents, and related patents and/or patent

4    applications; any deposition testimony of any inventor of the '780, '731, '926, '633, '154, '408,

5    and '494 Patents; any previous trial testimony of any inventor of the '780, '731, '926, '633, '154,

6    '408, and '494 Patents; and any papers filed or any evidence produced or submitted by Finjan in

7    connection with this litigation, any pending litigation, or any previous litigation, related to the

8    '780, '731, '926, '633, '154, '408, and '494 Patents.  In particular, PAN reserves the right to

9    contend that the Asserted Claims are invalid under 35 U.S.C. § 102(f) in the event PAN obtains

10   evidence that the inventors named on the '780, '731, '926, '633, '154, '408, and '494 Patents did

11   not invent (either alone or in conjunction with others) the subject matter claimed in the '780,

12   '731, '926, '633, '154, '408, and '494 Patents.

13        PAN's investigation of prior art systems and products is ongoing.  PAN has diligently

14   sought and will continue to diligently seek discovery from Finjan and third parties to

15   demonstrate earlier invention and reserves its right to contend that the Asserted Claims are

16   invalid under 35 U.S.C. § 102(g).  To date, Finjan has not produced all relevant discovery

17   requested by PAN regarding, among other things, prior art systems and products; therefore, PAN

18   reserves the right to raise any such or further deficiencies with Finjan and/or the Court as needed

19   and further reserves the right to amend, modify, and/or supplement its Contentions.  PAN has

20   also sought discovery and is continuing to seek discovery on the issues of public use and/or the

21   on-sale bar, which discovery is ongoing, and reserves its right to contend that the Asserted

22   Claims are invalid under 35 U.S.C. § 102(b).  PAN's further investigation and/or subsequent

23   discovery from Finjan or third parties with knowledge regarding prior art systems and products

24   may reveal additional relevant prior art systems and products and/or further information

25   regarding the systems and products in these Contentions.  PAN reserves the right to amend,

26   modify, and/or supplement these Contentions, based on further and subsequent investigation and

27   discovery.

28        PAN has received initial production of documents from third parties, including Sophos,

5

1    Trend Micro, and Check Point in response to PAN's subpoenas.  PAN is reviewing these

2    documents and will amend, modify, and/or supplement its Contentions as necessary and/or as

3    further productions are made from these parties, including source code productions.

4         In addition to the prior art identified below and the accompanying invalidity claim charts,

5    PAN also incorporates by reference any invalidity contentions, identified prior art, or

6    invalidity claim charts disclosed at any date by any party to any other litigation or U.S. Patent &

7    Trademark Office proceeding involving the '780, '731, '926, '633, '154, '408, and '494 Patents

8    or any related patent.  PAN also hereby incorporates by reference the prior art, invalidity

9    grounds, and expert testimony submitted in connection with any petitions for *inter partes* review

10   of the '780, '731, '926, '633, '154, '408, and '494 Patents.

11        For each Asserted Claim, PAN:  (a) identifies each currently known item of prior art that

12   either anticipates or renders obvious each asserted claim; (b) specifies whether each such item of

13   prior art anticipates or renders obvious the applicable claims; and (c) submits charts for

14   illustrative prior art references identifying exemplary reference portions where each element is

15   disclosed or rendered obvious by the prior art.

16        Based on PAN's present understanding of the Asserted Claims and/or Finjan's apparent

17   construction of the claims, as set forth in Finjan's Infringement Contentions, PAN has identified

18   grounds for invalidating asserted claims based on indefiniteness, enablement, or written

19   description under 35 U.S.C. § 112.  PAN is not adopting Finjan's apparent constructions, nor is

20   PAN agreeing that any of Finjan's apparent constructions are correct.  PAN reserves all rights to

21   advance claim construction positions different from Finjan's apparent constructions.

22        Moreover, Finjan's deficient Infringement Contentions fail to provide PAN with adequate

23   notice as to Finjan's infringement theories.  In light of the deficiencies in Finjan's Infringement

24   Contentions, PAN reserves the right to amend, modify, and/or supplement these Contentions to

25   further identify bases for invalidity under 35 U.S.C. § 112, ¶¶ 1, 2.  PAN's Contentions shall not

26   be construed as an admission that any claim construction advanced by PAN in this case is in any

27   way inconsistent, flawed or erroneous.  Nor should these Contentions prevent PAN from

28   advancing claim construction and/or non-infringement positions in lieu of, in addition to, or as an

6

1   alternative basis for, its invalidity positions.  Further, PAN's Contentions shall not be construed

2   as an admission of or acquiescence to Finjan's purported construction of the claim language or of

3   other positions advanced by Finjan during the course of this litigation.

4          Finjan also has failed to timely update its production of materials from its other cases.

5   PAN incorporates the prior art, claims charts, and invalidity theories disclosed, listed and/or

6   asserted by any entity during the course of other litigation (past, present/ongoing, or future) or

7   patent office challenges (either reexaminations or IPRs).  Finjan has failed to timely update its

8   production of these materials, which has prejudiced PAN in its preparation of these contentions.

9   PAN reserves the right to rely on any prior art reference, prior art combination, motivation to

10  combine, invalidity theory, and/or materials disclosed in these other proceedings.

11         **A.      Invalidity of the '780 Patent**

12               **1.      Priority Date**

13         Finjan alleges that each of the Asserted Claims of the '780 Patent is entitled to a priority

14  date of November 8, 1996.  Finjan's Initial Disclosure of Asserted Claims and Infringement

15  Contentions, at 20.  Finjan apparently alleges that the Asserted Claims of the '780 Patent are

16  entitled to the benefit of the filing date of a provisional application which was filed on

17  November 8, 1996, rather than the filing date of the '780 Patent's parent application, which was

18  filed on November 6, 1997, and which eventually matured into U.S. Patent No. 6,092,194 ("the

19  '194 Patent").  The provisional application to which Finjan claims priority, however, does not

20  disclose the subject matter claimed in the '780 Patent nor the subject matter disclosed in the non-

21  asserted '194 Patent.  Thus, based on the information presently available to PAN, the earliest date

22  to which the '780 Patent may claim priority is November 6, 1997, the date on which the

23  application which issued as the '194 Patent was filed, or March 30, 2000, the date on which the

24  application which led to the '780 Patent was filed.

25               **2.      Patent L.R. 3-3(a) Identification of Prior Art**

26         Subject to the reservations of rights above, PAN identifies prior art that anticipates and/or

27  renders obvious one or more of the Asserted Claims of the '780 Patent.  The prior art references

28  identified are also relevant to show the state of the art and reasons and motivations for making

7

improvements, additions, modifications, and combinations.

In addition, PAN incorporates the prior art, claims charts, and invalidity theories disclosed, listed and/or asserted by any entity during the course of other litigation (past, present/ongoing, or future) or patent office challenges (either reexaminations or IPRs).  Finjan has failed to timely update its production of these materials, which has prejudiced PAN in its preparation of these contentions.  PAN reserves the right to rely on any prior art reference, prior art combination, motivation to combine, invalidity theory, and/or materials disclosed in these other proceedings.  At least the following prior art references anticipate and/or render obvious the Asserted Claims of the '780 Patent, and/or illustrate the state of the art at the time of the alleged invention:

a.      **Patent Prior Art**

| Ref. No. | Publication No. | Short Name | Filing Date | Publication Date | Priority Date |
|---|---|---|---|---|---|
| 1. | U.S. 6,263,442 | "Mueller" | May 30, 1996 | July 17, 2001 | May 30, 1996 |
| 2. | U.S. 6,083,279 | "Cuomo" | October 10, 1996 | July 4, 2000 | October 10, 1996 |
| 3. | U.S. 5,983,348 | "Ji '348" | September 10, 1997 | November 9, 1999 | September 10, 1997 |
| 4. | U.S. 5,337,360 | "Fischer" | January 5, 1994 | August 9, 1994 | January 5, 1994 |
| 5. | U.S. 5,815,709 | "Waldo" | April 23, 1996 | September 29, 1998 | April 23, 1996 |
| 6. | U.S. 5,894,516 | "Brandenburg" | July 10, 1996 | April 13, 1999 | July 10, 1996 |
| 7. | U.S. 6,253,323 | "Cox" | November 1, 1996 | June 26, 2001 | November 1, 1996 |
| 8. | U.S. 6,367,012 | Atkinson | December 6, 1996 | April 2, 2002 | December 6, 1996 |

8

b.     **Non-Patent Publication Prior Art**

| Ref. No. | Publication | Short Name | Publication Date |
|---|---|---|---|
| 1. | Secure Mobile Code Management: Enabling Java for the Enterprise | Herbert | May 1997 |
| 2. | Sale Web Surfing with the Internet Component Download Service | Kirtland | July 1996 |
| 3. | Internet Component Download | Microsoft | January 1996 |
| 4. | Trust Management for the World Wide Web | Chu | June 13, 1997 |
| 5. | A Flexible Security Model for Using Internet Content | Islam | October 1997 |
| 6. | Blocking Applets at the Firewall | Martin | February 10, 1997 |

PAN additionally identifies and relies on each of the additional patent or publication references that describe or are otherwise related to the prior art systems identified below.

c.     **System or Product Prior Art**

PAN sets forth numerous prior art products or systems in the table below. For such prior art products and systems, PAN has identified, based on its current knowledge, approximate dates on which such products were sold, on sale, made, known, and/or used in the U.S. PAN's investigation of prior art products and systems is ongoing. Further information and/or documents regarding such products and their sale, offer for sale, and use dates will be produced or disclosed as it is (they are) obtained in discovery or otherwise becomes available to PAN. PAN reserves the right to amend, modify, and/or supplement these Contentions based on further and subsequent investigation and discovery. Additionally, PAN reserves the right to rely on the documents identified below as standalone prior art references separate from the prior art system or product they describe.

PAN additionally identifies and relies on any system, product, or public knowledge or use that embodies or otherwise incorporates any of the prior art patents and publications listed above. PAN reserves the right to identify and rely on systems that represent different versions or are

9

otherwise related variations of the identified products and systems.

| Ref No. | System Name | Short Name | Date Made, Known, Used, Sold, or On Sale |
|---------|-------------|------------|-------------------------------------------|
| 1. | InterScan AppletTrap | AppletTrap | March 23, 1999 |

(i)  InterScan AppletTrap ("AppletTrap")

AppletTrap was sold, on sale, made, known, and/or used at least by March 23, 1999.  The features, operations, and functionality of AppletTrap are described throughout the Trend Micro, Inc. documentation produced in this case.  These documents include:

- TFS00000001 – TFS00005934

- TM-FIN000001 – TM-FIN000563

d.  35 U.S.C. § 102(f)

PAN reserves the right to assert that the Asserted Claims are invalid under 35 U.S.C. § 102(f) in the event PAN obtains additional evidence that the inventors named in any of the Asserted Patents did not invent the subject matter claimed therein.  Should PAN obtain such evidence, it will provide the name of the person(s) from whom and the circumstances under which the alleged invention or any part of it was derived.

e.  35 U.S.C. § 102(g)

PAN reserves the right to assert that the Asserted Claims are invalid under 35 U.S.C. § 102(g) in the event PAN obtains additional evidence that any of the inventions claimed in the Asserted Patents were made in the United States by another inventor who had not abandoned, suppressed or concealed it, prior to the alleged invention by the applicant of the Asserted Patents. Should PAN obtain such evidence, it will provide the identities of the persons or entities involved in and the circumstances surrounding the making the inventions before the patent applicants.

3.  Patent L.R. 3-3(b) Anticipation and Obviousness

The references in Table 1, alone or in combination with the knowledge of one skilled in the art, anticipate or render obvious the Asserted Claims of the '780 Patent.

10

**Table 1: Prior Art References: Anticipation and Primary/Secondary Obviousness References**

| Short Name | Prior Art Under | Priority Date | Exemplary Claim Chart |
|---|---|---|---|
| Mueller | 102(e) | May 30, 1996 | A-1 |
| Cuomo | 102(e) | October 10, 1996 | A-2 |
| Herbert | 102(a) | May 1997 | A-3 |
| Ji '348 | 102(e) | September 10, 1997 | A-4 |
| Fischer | 102(a) | January 5, 1994 | A-5 |
| Waldo | 102(e) | April 23, 1996 | A-6 |
| Brandenburg | 102(e) | July 10, 1996 | A-7 |
| Cox | 102(e) | November 1, 996 | A-8 |
| Kirtland | 102(a) | July 1996 | A-9 |
| Microsoft | 102(a) | January 1996 | A-10 |

In addition, each of the references in Table 1 above and Table 2 below, either alone, in view of the knowledge of a POSITA, and/or in combination with one or more references in Table 1 or Table 2, renders obvious the Asserted Claims of the '780 Patent.

**Table 2: Additional Prior Art References: Obviousness**

| Short Name | Prior Art Under | Priority Date |
|---|---|---|
| Islam | 102(a) | October 1997 |
| Chu | 102(a) | June 13, 1997 |
| Atkinson | 102(e) | December 6, 1996 |
| Martin | 102(a) | Feburary 10, 1997 |

In addition, PAN incorporates by reference each and every prior art reference of record in the prosecution of the '780 Patent and any related patent or application, the statements made

therein by the applicant, as well as the prior art discussed in the specification.

The cited portions of each prior art reference are exemplary and representative of the content of the reference, and should be understood in the context of the reference as a whole, as understood by one of ordinary skill in the art.  To the extent a prior art reference is deemed not to anticipate or render obvious a claim as noted in the attached charts for failing to disclose, teach, or suggest one or more limitations of a claim, that claim would nonetheless have been obvious to one of ordinary skill in the art at the time of the alleged invention over the reference itself or by the combination of the reference with one or more other references disclosing the missing claim limitations or the knowledge of a person having ordinary skill in the art.

### a.    Prior Art Combinations

All of the Asserted Claims of the '780 Patent are obvious based on one or more combinations of the prior art references above.  The sections below provide motivations to combine the prior art references above.  These obviousness combinations are provided in the alternative to PAN's anticipation and single-reference obviousness contentions and are not to be construed to suggest that any reference included in the combination is not itself anticipatory or would not render the Asserted Claims obvious in light of the knowledge of a person having ordinary skill in the art.  PAN also hereby incorporates by reference the prior art, invalidity grounds, and expert testimony submitted in connection with any petitions for *inter partes* review of the '780 Patent.

### b.    Motivation to Combine

A POSITA would have been motivated to combine the preceding references for any number of reasons, such as the following exemplary reasons.  Teachings, suggestions, motivations, and/or reasons to modify any of the references and/or to combine any two or more of the references can come from many sources, including the prior art, common knowledge, common sense, predictability, expectations, industry trends, design incentives or need, market demand or pressure, market forces, obviousness to try, the nature of the problem faced, and/or knowledge possessed by a POSITA.

Although a patent claim may be invalidated based on a teaching-suggestion-motivation

("TSM") rationale—*i.e.*, that some teaching, suggestion, or motivation in the prior art that would have led one of ordinary skill to modify the prior-art reference or to combine prior-art reference teachings to arrive at the claimed invention—the Supreme Court identified additional rationales in *KSR Int'l Co. v. Teleflex, Inc.*, 550 U.S. 398 (2007).  The following of these rationales apply here:

> (A) the Asserted Claims combine prior-art elements according to known methods to yield predictable results;

> (B) the Asserted Claims involve the simple substitution of one known element for another to obtain predictable results;

> (C) the Asserted Claims involve the use of a known technique to improve similar devices (methods, or products) in the same way;

> (D) the Asserted Claims apply a known technique to a known device (method, or product) ready for improvement to yield predictable results;

> (E) the Asserted Claims involve combinations of prior-art references that would have been "obvious to try'"—a person of ordinary skill in the art could have reached the Asserted Claims by choosing from a finite number of identified, predictable solutions, with a reasonable expectation of success;

> (F) the Asserted Claims are simply variations of work from one field of endeavor or a different one that would have been prompted based on design incentives or other market forces because the variations were predictable to one of ordinary skill in the art.

*See KSR*, 550 U.S. at 415-18 (rejecting the Federal Circuit's "rigid" application of the teaching, suggestion, or motivation to combine test, and instead espousing an "expansive and flexible" approach).  Indeed, the Supreme Court held that a person of ordinary skill in the art is "a person of ordinary creativity, not an automaton" and "in many cases a person of ordinary skill in the art will be able to fit the teachings of multiple patents together like pieces of a puzzle." *KSR*, 550 U.S. at 420-21.

Thus, even in the absence of a specific teaching, suggestion, or motivation to combine references, the Asserted Claims here are obvious and therefore invalid.  Each of the cited references or devices is in the same field, making it obvious for someone of ordinary skill in the art to identify and combine elements from these references.  One of ordinary skill in the art would have recognized that improvements could be achieved by combining or modifying prior-art references that described such improvements.  Each of the above prior-art references describes

1   devices or methods that were known to offer such improvements, and, accordingly, one of

2   ordinary skill in the art would have been motivated to combine or modify the references as

3   identified in each of the combinations above.

4         Indeed, given that the references are in the same field, one of ordinary skill would have

5   readily, with predictable results, taken teachings from one reference and applied them to other

6   references.  As referenced above, multiple prior art references teach or suggest the concepts

7   claimed in the '780 Patent.  To the extent Finjan argues that any concepts claimed in the

8   '780 Patent were not contained in any prior art reference, it would, at a minimum, have been

9   obvious to adapt each reference to include the concept or combine it with other references that

10  disclose the concept.  In addition, each of the constituent techniques described here was well

11  known to those of ordinary skill in the art, and understood to be among a menu of available

12  design choices for computer and network security, including the prevention and identification of

13  malicious executables via a firewall or similar technology.  This is one of many motivations to

14  combine the above references.

15        Furthermore, because common techniques such as fetching software components and

16  creating hash functions for the prevention and identification of malicious executables via a

17  firewall or similar technology were well known and studied extensively prior to the '780 Patent

18  priority date, common industry knowledge supplied a reason to combine the above references

19  with each other.  Each combination would have produced no unexpected results and would

20  simply represent a known alternative to one of ordinary skill in the art.  This is a further

21  motivation to combine any of the above references.

22        The below sections further address particular reasons to combine the above references.

23  The below should not be construed as an admission that there is any value to the alleged invention

24  of the '780 Patent.  As discussed previously, these contentions are based largely on how Finjan is

25  apparently construing the Asserted Claims in its Initial Infringement Contentions, which is an

26  incorrect and overbroad interpretation of the alleged invention of the '780 Patent.  Accordingly,

27  to the extent the below refers to benefits of certain elements or industry trends towards these

28  elements, this is not an admission that the alleged invention of the '780 Patent provides any

14

benefits—to the contrary, properly construed and compared to the prior art, the '780 Patent provides no benefits. Likewise, to the extent the below refers to substituting elements, this is not an admission that the elements subject to the substitution are in any way similar, *e.g.*, perform the same function, in the same way, to reach the same result.

The various elements of the Asserted Claims were well-known in the prior art at the time of the alleged invention, and the combination was obvious to one of ordinary skill in the art. The combination simply (a) combines prior-art elements according to known methods to yield predictable results; (b) involves the simple substitution of one known element for another to obtain predictable results; (c) involves the use of a known technique to improve similar devices (methods, or products) in the same way; (d) applies a known technique to a known device (method, or product) ready for improvement to yield predictable results; (e) involves combinations of prior-art references that would have been "obvious to try"—a person of ordinary skill in the art could have reached the Asserted Claims by choosing from a finite number of identified, predictable solutions, with a reasonable expectation of success; and/or (f) would have been prompted by known work, based on design incentives or other market forces, because such variations were predictable to one of ordinary skill in the art.

Moreover, the Supreme Court has stated that a motivation to combine may be simply "common sense" and that "familiar items may have obvious uses beyond their primary purposes, and in many cases a person of ordinary skill will be able to fit the teachings of multiple patents together like pieces of a puzzle." *KSR*, 550 U.S. at 420. Indeed, the Supreme Court held that it is sufficient that a combination of elements was "obvious to try," holding that, "[w]hen there is a design need or market pressure to solve a problem and there are a finite number of identified, predictable solutions, a person of ordinary skill has good reason to pursue the known options within his or her technical grasp." *Id*. at 421. Here, all the claim elements are common sense and are easily fit together by one of ordinary skill in the art.

While not necessary, a motivation to combine may also be found in the references themselves. One of ordinary skill in the art would have been motivated to combine a reference that refers to, or otherwise explicitly invites combination with, another reference. Where the

references cited herein have such an explicit invitation to combine, that invitation would have motivated one of ordinary skill in the art to combine any such references.

### c.      Exemplary Obviousness Combinations

The accompanying claim charts explain how different portions of each prior art reference discloses each limitation of the Asserted Claims.  If Finjan argues that any particular prior art reference lacks any feature, a POSITA as of the '780 Patent's priority date would at a minimum have been motivated to modify the reference to include the allegedly missing feature, or to combine it with other references that include that feature, as discussed in the previous section.

To the extent Finjan asserts that the prior art in Table 1 does not disclose these claim limitations, it would have been obvious to combine or modify each of the prior art references in Table 1 and/or Table 2 with one or more prior art references in Table 1 and/or Table 2 to create computer-based methods, systems and products for identifying, categorizing and preventing malicious Downloadables, as discussed in Mueller, Cuomo, Herbert, Ji '348, Fischer, Waldo, Brandenburg, Cox, Kirtland, and Microsoft.

To the extent that Finjan argues that any of these references do not satisfy the "obtaining a Downloadable" limitations, it would have been obvious to modify those references to allow for the obtaining of a Downloadable in some form for identification analysis to be performed on the Downloadable, as described in Mueller, Cuomo, Herbert, Ji '348, Fischer, Waldo, Brandenburg, Cox, Kirtland, and Microsoft.  One of ordinary skill in the art would have been motivated to combine Mueller, Cuomo, Herbert, Ji '348, Fischer, Waldo, Brandenburg, Cox, Kirtland, and Microsoft, with one or more other references identified in Table 1 and/or 2 and would have reasonably expected that the combination would achieve the intended purpose. Each reference relates to computer and network security. A person of ordinary skill in the art looking to create improved computer security methods and products would look to consider solutions implemented in other computer security methods and products such as those disclosed in Mueller, Cuomo, Herbert, Ji '348, Fischer, Waldo, Brandenburg, Cox, Kirtland, Microsoft, and other references as described in PAN's Invalidity Contentions and associated claim charts. A person of ordinary skill in the art looking to solve this problem would review patents, patent publications and prior art

16

systems in the field of computer and network security such as Mueller, Cuomo, Herbert, Ji '348, Fischer, Waldo, Brandenburg, Cox, Kirtland, Microsoft, and other references as described in PAN's Invalidity Contentions and associated claim charts. One of ordinary skill in the art also would have reasonably expected that such combination of Mueller, Cuomo, Herbert, Ji '348, Fischer, Waldo, Brandenburg, Cox, Kirtland, Microsoft, Martin, and other references as described in Table 1 and/or 2 and associated claim charts would achieve the desired structure and functionality of obtaining incoming Downloadables, for such structures and mechanisms were well known in the art and would have been obvious to one of ordinary skill in the art.

To the extent that Finjan argues that any of these references do not satisfy the "fetching" limitations, it would have been obvious to modify those references to be able to fetch one or more software components, and to be able to reference them in a number of ways, as described in Mueller, Cuomo, Herbert, Ji '348, Fischer, Waldo, Brandenburg, Cox, Kirtland, and Microsoft. One of ordinary skill in the art would have been motivated to combine Mueller, Cuomo, Herbert, Ji '348, Fischer, Waldo, Brandenburg, Cox, Kirtland, and Microsoft, with one or more other references identified in Table 1 and/or 2 and would have reasonably expected that the combination would achieve the intended purpose. Each reference relates to computer and network security. A person of ordinary skill in the art looking to create improved computer security methods and products would look to consider solutions implemented in other computer security methods and products such as those disclosed in Mueller, Cuomo, Herbert, Ji '348, Fischer, Waldo, Brandenburg, Cox, Kirtland, Microsoft, and other references as described in PAN's Invalidity Contentions and associated claim charts. A person of ordinary skill in the art looking to solve this problem would review patents, patent publications and prior art systems in the field of computer and network security such as Mueller, Cuomo, Herbert, Ji '348, Fischer, Waldo, Brandenburg, Cox, Kirtland, Microsoft, and other references as described in PAN's Invalidity Contentions and associated claim charts. One of ordinary skill in the art also would have reasonably expected that such combination of Mueller, Cuomo, Herbert, Ji '348, Fischer, Waldo, Brandenburg, Cox, Kirtland, Microsoft, Martin, and other references as described in Table 1 and/or 2 and associated claim charts would achieve the desired structure and functionality of

17

"fetching" Downloadables and other software components, for such structures and mechanisms were well known in the art and would have been obvious to one of ordinary skill in the art.

To the extent that Finjan argues that any of these references do not satisfy the "hashing" limitations, it would have been obvious to modify those references to allow for the hashing of a Downloadable with fetched software components to generate a Downloadable ID, or substantially similar process, because the process of hashing one or more software components via a mathematical process to create a unique identification code was well known in the art and would have been obvious to one of ordinary skill in the art, and was a well-known method in the field of computer security as described in Mueller, Cuomo, Herbert, Ji '348, Fischer, Waldo, Brandenburg, Cox, Kirtland, and Microsoft. One of ordinary skill in the art would have been motivated to combine Mueller, Cuomo, Herbert, Ji '348, Fischer, Waldo, Brandenburg, Cox, Kirtland, and Microsoft with one or more other references identified in Table 1 and/or Table 2 and would have reasonably expected that the combination would achieve the intended purpose. Each reference relates to computer and network security. A person of ordinary skill in the art looking to create improved computer security methods and products would look to consider solutions implemented in other computer security methods and products such as those disclosed in Mueller, Cuomo, Herbert, Ji '348, Fischer, Waldo, Brandenburg, Cox, Kirtland, Microsoft and other references as described in PAN's Invalidity Contentions and associated claim charts. A person of ordinary skill in the art looking to solve this problem would review patents, patent publications and prior art systems in the field of computer and network security such as Mueller, Cuomo, Herbert, Ji '348, Fischer, Waldo, Brandenburg, Cox, Kirtland, Microsoft and other references as described in PAN's Invalidity Contentions and associated claim charts. One of ordinary skill in the art also would have reasonably expected that such combination of Mueller, Cuomo, Herbert, Ji '348, Fischer, Waldo, Brandenburg, Cox, Kirtland, Microsoft and other references as described in Table 1 and/or Table 2 and associated claim charts would achieve the desired structure and functionality of performing a hashing function on a Downloadable and its fetched software components to generate a Downloadable ID, for such structures and mechanisms were well known in the art and would have been obvious to one of ordinary skill in the art.

18

1      To the extent that Finjan argues that any of these references do not satisfy limitations

2  related to different items which a Downloadable "includes" (such as an applet, active control, and

3  program script), it would have been obvious to modify those references to allow for a

4  Downloadable to include these features, as described in Mueller, Cuomo, Herbert, Ji '348,

5  Fischer, Waldo, Brandenburg, Cox, Kirtland, Microsoft, Martin, Islam (*see, e.g.*, at 2, 10), Chu

6  (*see, e.g.* at 23, 30), and Atkinson (*see, e.g.* at 2:35-43).  One of ordinary skill in the art would

7  have been motivated to combine Mueller, Cuomo, Herbert, Ji '348, Fischer, Waldo, Brandenburg,

8  Cox, Kirtland, Microsoft, Martin, Islam (*see, e.g.*, at 2, 10), Chu (*see, e.g.* at 23, 30), and

9  Atkinson (*see, e.g.* at 2:35-43), with one or more other references identified in Table 1 and/or

10  Table 2 and would have reasonably expected that the combination would achieve the intended

11  purpose.  Each reference relates to computer and network security.  A person of ordinary skill in

12  the art looking to create improved computer security methods and products would look to

13  consider solutions implemented in other computer security methods and products such as those

14  disclosed in Mueller, Cuomo, Herbert, Ji '348, Fischer, Waldo, Brandenburg, Cox, Kirtland,

15  Microsoft, Martin, Islam (*see, e.g.*, at 2, 10), Chu (*see, e.g.* at 23, 30), Atkinson (*see, e.g.* at 2:35-

16  43) and other references as described in PAN's Invalidity Contentions and associated claim

17  charts.  A person of ordinary skill in the art looking to solve this problem would review patents,

18  patent publications and prior art systems in the field of computer and network security such as

19  Mueller, Cuomo, Herbert, Ji '348, Fischer, Waldo, Brandenburg, Cox, Kirtland, Microsoft,

20  Martin, Islam (*see, e.g.*, at 2, 10), Chu (*see, e.g.* at 23, 30), Atkinson (*see, e.g.* at 2:35-43) and

21  other references as described in PAN's Invalidity Contentions and associated claim charts. One of

22  ordinary skill in the art also would have reasonably expected that such combination of Mueller,

23  Cuomo, Herbert, Ji '348, Fischer, Waldo, Brandenburg, Cox, Kirtland, Microsoft, Martin, Islam

24  (*see, e.g.*, at 2, 10), Chu (*see, e.g.* at 23, 30), Atkinson (*see, e.g.* at 2:35-43) and other references

25  as described in Table 1 and/or Table 2 and associated claim charts would achieve the desired

26  structure and functionality of including commonly used types of files for carrying malware in a

27  Downloadable, for such structures and mechanisms were well known in the art and would have

28  been obvious to one of ordinary skill in the art.

PAN reserves the right to rely on additional combinations.

### 4.    Patent L.R. 3-3(c) Invalidity Contentions Charts

Pursuant to Patent Local Rule 3-3(c), charts identifying specifically where and how in each alleged item of prior art each limitation of each asserted claim is found are attached as Exhibits A-1 to A-10.  Where elements are disclosed at multiple locations within a single item of prior art, PAN has not necessarily identified every iteration of every disclosure.

### 5.    Patent L.R. 3-3(d) Invalidity Based on 35 U.S.C. § 101, Indefiniteness Under 35 U.S.C. § 112(2), or Enablement or Written Description Under 35 U.S.C. § 112(1)

Based on PAN's present understanding of the Asserted Claims and/or PAN's apparent construction of the claims, as set forth in Finjan's Infringement Contentions, and subject to the reservation of rights above, PAN lists below the grounds upon which the Asserted Claims of the '780 Patent are invalid based on 35 U.S.C. § 101, indefiniteness, lack of written description, and/or lack of enablement under 35 U.S.C. § 112.  To the extent PAN's identified grounds for invalidity are based on Finjan's apparent constructions, PAN is not adopting Finjan's apparent constructions, nor is PAN agreeing that any of Finjan's apparent constructions are correct. Moreover, Finjan's deficient Infringement Contentions fail to provide PAN with adequate notice as to Finjan's infringement theories.  PAN reserves all rights to advance claim construction positions different from Finjan's apparent constructions.

PAN's contentions that the following claims are invalid under 35 U.S.C. § 112 are made in the alternative, and do not constitute, and should not be interpreted as, admissions regarding the construction or scope of the Asserted Claims, or that any of the Asserted Claims are not anticipated or rendered obvious by any prior art.  Where PAN identifies a claim term in an independent claim as being invalid, PAN further contends any asserted dependent claim is invalid based on the presence of the same term.

In light of the deficiencies in Finjan's Infringement Contentions, PAN reserves the right to amend, modify, and/or supplement these Contentions to further identify bases for invalidity under 35 U.S.C. § 112.  PAN's Contentions shall not be construed as an admission that any claim construction advanced by PAN in this case is in any way inconsistent, flawed or erroneous.  Nor

should these Contentions prevent PAN from advancing claim construction and/or non-infringement positions in lieu of, or in addition to, invalidity positions.  Further, PAN's Contentions shall not be construed as an admission of or acquiescence to Finjan's purported construction of the claim language or of other positions advanced by Finjan during the course of this litigation.  PAN's Contentions under 35 U.S.C. § 112 may depend, in part, on the Court's claim construction, as well as Finjan's asserted claim scope.  Consequently, PAN only identifies herein the issues under 35 U.S.C. § 112 of which it is presently aware based on PAN's present understanding of the asserted claims and/or Finjan's apparent construction of the claims, as set forth in Finjan's Infringement Contentions.  PAN reserves all rights to advance claim construction positions different from Finjan's apparent constructions and to amend these contentions as it better understands Finjan's construction of the claims during the claim construction process.

### a.  Unpatentable Subject Matter Under 35 U.S.C. § 101

The '780 Patent claims are directed to a number of abstract ideas, such as, *e.g.*, of obtaining and hashing a Downloadable which includes multiple parts. The steps for completing the process described in the '780 Patent were conventional steps which do not contribute to patent eligible subject matter. The '780 Patent does not transform any patent ineligible abstract idea into a patent eligible application, and there is no inventive step present in the claims of the '780 Patent.  Additionally, claims 9, 10, 13, and 17 are directed to software per se.  Accordingly, each of the asserted claims of the '780 Patent are invalid as directed to patent ineligible subject matter.

### b.  Indefiniteness Under 35 U.S.C. § 112(2)

"[A] patent is invalid for indefiniteness if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 901 (2014).

The following claim limitations of the Asserted Claims are invalid based on indefiniteness.

- "Downloadable"

21

1

- "means for obtaining a Downloadable that includes one or more references to

2

  software components required to be executed by the Downloadable"

3

- "means for fetching at least one software component identified by the one or more

4

  references"

5

- "means for performing a hashing function on the Downloadable and the fetched

6

  software components to generate a Downloadable ID"

7

- "ID generator"

8

### c.     Lack of Written Description Under 35 U.S.C. § 112(1)

9

To satisfy the written description requirement, the description must "clearly allow persons

10

of ordinary skill in the art to recognize that [the inventor] invented what is claimed." *Ariad*

11

*Pharm., Inc. v. Eli Lilly and Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010) (internal citation omitted).

12

The test for sufficiency is whether the disclosure of the application relied upon reasonably

13

conveys to those skilled in the art that the inventor had possession of the claimed subject matter

14

as of the filing date. *Id.*

15

The test requires an objective inquiry into the four corners of the specification from the

16

perspective of a POSITA.  Based on that inquiry, the specification must describe an invention

17

understandable to that skilled artisan and show that the inventor actually invented the invention

18

claimed.  "Whether the written description requirement is satisfied is a fact-based inquiry that will

19

depend on the nature of the claimed invention, and the knowledge of one skilled in the art at the

20

time an invention is made and a patent application is filed." *Carnegie Mellon Univ. v. Hoffmann*

21

*La Roche Inc.*, 541 F.3d 1115, 1122 (Fed. Cir. 2008) (internal citation omitted).  Actual

22

"possession" or reduction to practice outside of the specification is not enough.  Instead, the

23

specification itself must demonstrate possession.

24

While the written description requirement does not demand any particular form of

25

disclosure, a description that merely renders the invention obvious does not satisfy the

26

requirement.  *Lockwood v. Am. Airlines*, 107 F.3d 1565, 1571-72 (Fed. Cir. 1997).

27

The following claim limitations of the Asserted Claims are invalid for lack of written

28

description:

22

1   • Finjan's apparent interpretation of the asserted claims of the '780 Patent is that

2       they are broad enough to encompass any computing device that receives any file

3       over a network and performs a hashing function on the received file.  Accordingly,

4       all asserted claims of the '780 Patent lack written description support.

5                          **d.      Lack of Enablement Under 35 U.S.C. § 112(1)**

6           To satisfy the enablement requirement of 35 U.S.C § 112, the disclosure "must teach those

7   skilled in the art how to make and use the full scope of the claimed invention without 'undue

8   experimentation.'"  *Genentech, Inc. v. Novo Nordisk, A/S*, 108 F.3d 1361, 1365 (Fed. Cir. 1997)

9   (citations omitted).  Moreover, "[i]t is the specification, not the knowledge of one skilled in the

10  art, that must supply the novel aspects of [the] invention in order to constitute adequate

11  enablement." *Id.* at 1366.  The Federal Circuit has enumerated several factors to consider in

12  determining whether a disclosure would require "undue experimentation":  "(1) the quantity of

13  experimentation necessary, (2) the amount of direction or guidance presented, (3) the presence or

14  absence of working examples, (4) the nature of the invention, (5) the state of the prior art, (6) the

15  relative skill of those in the art, (7) the predictability or unpredictability of the art, and (8) the

16  breadth of the claims." *In re Wands*, 858 F.2d 731, 737 (Fed. Cir. 1988).

17          The following claim limitations of the Asserted Claims are invalid for lack of enablement:

18  • Finjan's apparent interpretation of the asserted claims of the '780 Patent is that

19      they are broad enough to encompass any computing device that receives any file

20      over a network and performs a hashing function on the received file.  Accordingly,

21      all asserted claims of the '780 Patent are invalid for lack of enablement.

22  **B.     Invalidity of the '731 Patent**

23          **1.      Priority Date**

24          Finjan alleges that each of the Asserted Claims of the '731 Patent are entitled to the

25  priority date of November 8, 1996.  Finjan's Initial Disclosure of Asserted Claims and

26  Infringement Contentions, at 20.  Finjan apparently alleges that the Asserted Claims of the

27  '731 Patent are entitled to the benefit of the November 8, 1996 filing date of U.S. Provisional

28  App. No. 60/030,639, which later matured into U.S. Patent No. 6,092,194.  Neither the

                                              23

'194 Patent, nor any of the other patents in the ancestry of the '731 Patent, however, discloses the subject matter claimed by the Asserted Claims of '731 Patent. Moreover, the '731 Patent does not properly claim priority to the U.S. Provisional App. No. 60/030,639. Thus, based on the information presently available to PAN, the earliest date to which the '731 Patent may claim priority is May 3, 2004, the date on which the application that issued as the '731 Patent was filed, or November 6, 1997, the date on which the application that later issued as the '194 Patent was filed.

### 2.    Patent L.R. 3-3(a) Identification of Prior Art

Subject to the reservations of rights above, PAN identifies prior art that anticipates and/or renders obvious one or more of the Asserted Claims of the '731 Patent. The prior art references identified are also relevant to show the state of the art and reasons and motivations for making improvements, additions, modifications, and combinations.

In addition, PAN incorporates the prior art, claims charts, and invalidity theories disclosed, listed and/or asserted by any entity during the course of other litigation (past, present/ongoing, or future) or patent office challenges (either reexaminations or IPRs). Finjan has failed to timely update its production of these materials, which has prejudiced PAN in its preparation of these contentions. PAN reserves the right to rely on any prior art reference, prior art combination, motivation to combine, invalidity theory, and/or materials disclosed in these other proceedings. At least the following prior art references anticipate and/or render obvious the Asserted Claims of the '731 Patent, and/or illustrate the state of the art at the time of the alleged invention:

### a.    Patent Prior Art

| Ref. No. | Publication No. | Short Name | Filing Date | Publication Date | Priority Date |
|---|---|---|---|---|---|
| 1. | U.S. Patent No. 6,088,803 | "Tso" | December 30, 1997 | July 11, 2000 | March 27, 1997 |
| 2. | U.S. Patent No. 5,623,600 | "Ji '600" | September 26, 1995 | April 22, 1997 | September 26, 1995 |

| Ref. No. | Publication No. | Short Name | Filing Date | Publication Date | Priority Date |
|---|---|---|---|---|---|
| 3. | U.S. Patent No. 6,170,012 | "Coss" | September 12, 1997 | January 2, 2001 | September 12, 1997 |
| 4. | U.S. Patent No. 5,983,348 | "Ji '348" | September 10, 1997 | November 9, 1999 | September 10, 1997 |
| 5. | U.S. Patent No. 6,275,938 | "Bond" | August 28, 1997 | August 14, 2001 | August 28, 1997 |
| 6. | U.S. Patent No. 6,038,601 | "Lambert" | July 21, 1997 | March 14, 2000 | July 21, 1997 |
| 7. | U.S. Pat. Pub. No. 2003/0167325 | "Shah" | October 21, 2002 | September 4, 2003 | June 21, 1996 |

**b.      Non-Patent Publication Prior Art**

| Ref. No. | Publication | Short Name | Publication Date |
|---|---|---|---|
| 1. | Proxy Servers and Databases for Managing Web-based Information | "Thomson" | May 1997 |
| 2. | Trust Management for the World Wide Web | "Chu" | June 13, 1997 |
| 3. | Computer Viruses and Artificial Intelligence | "Stang" | September 26, 1995 |
| 4. | A Hierarchical Internet Object Cache | "Chankhunt-hod" | January 1996 |

PAN additionally identifies and relies on each of the additional patent or publication references that describe or are otherwise related to the prior art systems identified below.

**c.      System or Product Prior Art**

PAN sets forth numerous prior art products or systems in the table below.  For such prior art products and systems, PAN has identified, based on its current knowledge, approximate dates on which such products were sold, on sale, made, known, and/or used in the U.S.  PAN's investigation of prior art products and systems is ongoing.  Further information and/or documents regarding such products and their sale, offer for sale, and use dates will be produced or disclosed as it is (they are) obtained in discovery or otherwise becomes available to PAN.  PAN reserves

25

the right to amend, modify, and/or supplement these Contentions based on further and subsequent investigation and discovery. Additionally, PAN reserves the right to rely on the documents identified below as standalone prior art references separate from the prior art system or product they describe.

PAN additionally identifies and relies on any system, product, or public knowledge or use that embodies or otherwise incorporates any of the prior art patents and publications listed above. PAN reserves the right to identify and rely on systems that represent different versions or are otherwise related variations of the identified products and systems.

| Ref No. | System Name | Short Name | Date Made, Known, Used, Sold, or On Sale |
|---------|-------------|------------|------------------------------------------|
| 1. | Squid System | Squid | July 1996 |
| 2. | VICEd System | VICEd | January 1997 |

### (i)    Squid System

Squid was sold, on sale, made, known, and/or used at least by July 1996. The features, operations, and functionality of Squid are described throughout the documentation produced in this case. These documents include:

- Beta version available at http://squid.mirror.colo-serv.net/archive/1.0.beta/1.0.beta1/ChangeLog), initial release July 1996

### (ii)    VICEd System

VICEd was sold, on sale, made, known, and/or used at least by 1997. The features, operations, and functionality of VICEd are described throughout the documentation produced in this case. These documents include:

- J. S. Lee, J. Hsiang, and P. H. Tsang, "A Generic Virus Detection Agent on the Internet," Proceedings of the Thirtieth Hawaii International Conference on System Science, Vol. 4, Jan. 1997, pp. 210-219.

### d.    35 U.S.C. § 102(f)

PAN reserves the right to assert that the Asserted Claims are invalid under 35 U.S.C.

§ 102(f) in the event PAN obtains additional evidence that the inventors named in any of the Asserted Patents did not invent the subject matter claimed therein.  Should PAN obtain such evidence, it will provide the name of the person(s) from whom and the circumstances under which the alleged invention or any part of it was derived.

### e.    35 U.S.C. § 102(g)

PAN reserves the right to assert that the Asserted Claims are invalid under 35 U.S.C. § 102(g) in the event PAN obtains additional evidence that any of the inventions claimed in the Asserted Patents were made in the United States by another inventor who had not abandoned, suppressed or concealed it, prior to the alleged invention by the applicant of the Asserted Patents. Should PAN obtain such evidence, it will provide the identities of the persons or entities involved in and the circumstances surrounding the making the inventions before the patent applicants.

### 3.    Patent L.R. 3-3(b) Anticipation and Obviousness

The references in Table 1, alone or in combination with the knowledge of one skilled in the art, anticipate or render obvious the Asserted Claims of the '731 Patent.

**Table 1: Prior Art References: Anticipation and Primary/Secondary Obviousness References**

| Short Name | Prior Art Under | Priority Date | Exemplary Claim Chart |
|---|---|---|---|
| Squid | 102(a), (b), (g) | July 1996 | Ex. G-1 |
| Thomson | 102(a), (b) | May 1997 | Ex. G-2 |
| Tso | 102(e) | March 27, 1997 | Ex. G-3 |
| Chu | 102(a), (b) | June 13, 1997 | Ex. G-4 |
| Ji '600 | 102(a), (b), (e) | September 26, 1995 | Ex. G-5 |
| Coss | 102(e) | September 12, 1997 | Ex. G-6 |
| Ji '348 | 102(e) | September 10, 1997 | Ex. G-7 |
| Bond | 102(e) | August 28, 1997 | Ex. G-8 |
| VICEd | 102(a), (b), (g) | January 1997 | Ex. G-9 |

In addition, each of the references in Table 1 above and Table 2 below, either alone, in

27

view of the knowledge of a POSITA, and/or in combination with one or more references in Table 1 or Table 2, renders obvious the Asserted Claims of the '731 Patent.

**Table 2: Additional Prior Art References: Obviousness**

| Short Name | Prior Art Under | Priority Date |
|---|---|---|
| Shah | 102(e) | June 21, 1996 |
| Lambert | 102(e) | July 21, 1997 |
| Stang | 102(a), (b) | September 26, 1995 |
| Chankhunt-hod | 102(a), (b) | January 1996 |

In addition, PAN incorporates by reference each and every prior art reference of record in the prosecution of the '731 Patent and any related patent or application, the statements made therein by the applicant, as well as the prior art discussed in the specification.

The cited portions of each prior art reference are exemplary and representative of the content of the reference, and should be understood in the context of the reference as a whole, as understood by one of ordinary skill in the art.  To the extent a prior art reference is deemed not to anticipate or render obvious a claim as noted in the attached charts for failing to disclose, teach, or suggest one or more limitations of a claim, that claim would nonetheless have been obvious to one of ordinary skill in the art at the time of the alleged invention over the reference itself or by the combination of the reference with one or more other references disclosing the missing claim limitations or the knowledge of a person having ordinary skill in the art.

### a.      Prior Art Combinations

All of the Asserted Claims of the '731 Patent are obvious based on one or more combinations of the prior art references above.  The sections below provide motivations to combine the prior art references above.  These obviousness combinations are provided in the alternative to PAN's anticipation and single-reference obviousness contentions and are not to be construed to suggest that any reference included in the combination is not itself anticipatory or would not render the Asserted Claims obvious in light of the knowledge of a person having

ordinary skill in the art. PAN also hereby incorporates by reference the prior art, invalidity grounds, and expert testimony submitted in connection with any petitions for *inter partes* review of the '731 Patent.

### b.     Motivation to Combine

A POSITA would have been motivated to combine the preceding references for any number of reasons, such as the following exemplary reasons. Teachings, suggestions, motivations, and/or reasons to modify any of the references and/or to combine any two or more of the references can come from many sources, including the prior art, common knowledge, common sense, predictability, expectations, industry trends, design incentives or need, market demand or pressure, market forces, obviousness to try, the nature of the problem faced, and/or knowledge possessed by a POSITA.

Although a patent claim may be invalidated based on a teaching-suggestion-motivation ("TSM") rationale—*i.e.*, that some teaching, suggestion, or motivation in the prior art that would have led one of ordinary skill to modify the prior-art reference or to combine prior-art reference teachings to arrive at the claimed invention—the Supreme Court identified additional rationales in *KSR Int'l Co. v. Teleflex, Inc.*, 550 U.S. 398 (2007). The following of these rationales apply here:

(A) the Asserted Claims combine prior-art elements according to known methods to yield predictable results;

(B) the Asserted Claims involve the simple substitution of one known element for another to obtain predictable results;

(C) the Asserted Claims involve the use of a known technique to improve similar devices (methods, or products) in the same way;

(D) the Asserted Claims apply a known technique to a known device (method, or product) ready for improvement to yield predictable results;

(E) the Asserted Claims involve combinations of prior-art references that would have been "obvious to try"'—a person of ordinary skill in the art could have reached the Asserted Claims by choosing from a finite number of identified, predictable solutions, with a reasonable expectation of success;

(F) the Asserted Claims are simply variations of work from one field of endeavor or a different one that would have been prompted based on design incentives or other market forces because the variations were predictable to one of ordinary skill in the art.

1   *See KSR*, 550 U.S. at 415-18 (rejecting the Federal Circuit's "rigid" application of the teaching,

2   suggestion, or motivation to combine test, and instead espousing an "expansive and flexible"

3   approach).  Indeed, the Supreme Court held that a person of ordinary skill in the art is "a person

4   of ordinary creativity, not an automaton" and "in many cases a person of ordinary skill in the art

5   will be able to fit the teachings of multiple patents together like pieces of a puzzle." *KSR*, 550

6   U.S. at 420-21.

7   Thus, even in the absence of a specific teaching, suggestion, or motivation to combine

8   references, the Asserted Claims here are obvious and therefore invalid.  Each of the cited

9   references or devices is in the same field, making it obvious for someone of ordinary skill in the

10   art to identify and combine elements from these references.  One of ordinary skill in the art would

11   have recognized that improvements could be achieved by combining or modifying prior-art

12   references that described such improvements.  Each of the above prior-art references describes

13   devices or methods that were known to offer such improvements, and, accordingly, one of

14   ordinary skill in the art would have been motivated to combine or modify the references as

15   identified in each of the combinations above.

16   Indeed, given that the references are in the same field, one of ordinary skill would have

17   readily, with predictable results, taken teachings from one reference and applied them to other

18   references.  As referenced above, multiple prior art references teach or suggest the concepts

19   claimed in the '731 Patent.  To the extent Finjan argues that any concepts claimed in the

20   '731 Patent were not contained in any prior art reference, it would, at a minimum, have been

21   obvious to adapt each reference to include the concept or combine it with other references that

22   disclose the concept.  In addition, each of the constituent techniques described here was well

23   known to those of ordinary skill in the art, and understood to be among a menu of available

24   design choices for improving network security.  This is one of many motivations to combine the

25   above references.

26   Furthermore, because methods and systems related to a computer gateway for an intranet

27   of computers were well known and studied extensively prior to the '731 Patent priority date,

28   common industry knowledge supplied a reason to combine the above references with each other.

Each combination would have produced no unexpected results and would simply represent a known alternative to one of ordinary skill in the art.  This is a further motivation to combine any of the above references.

The below sections further address particular reasons to combine the above references. The below should not be construed as an admission that there is any value to the alleged invention of the '731 Patent.  As discussed previously, these contentions are based largely on how Finjan is apparently construing the Asserted Claims in its Initial Infringement Contentions, which is an incorrect and overbroad interpretation of the alleged invention of the '731 Patent.  Accordingly, to the extent the below refers to benefits of certain elements or industry trends towards these elements, this is not an admission that the alleged invention of the '731 Patent provides any benefits—to the contrary, properly construed and compared to the prior art, the '731 Patent provides no benefits.  Likewise, to the extent the below refers to substituting elements, this is not an admission that the elements subject to the substitution are in any way similar, *e.g.*, perform the same function, in the same way, to reach the same result.

The various elements of the Asserted Claims were well-known in the prior art at the time of the alleged invention, and the combination was obvious to one of ordinary skill in the art.  The combination simply (a) combines prior-art elements according to known methods to yield predictable results; (b) involves the simple substitution of one known element for another to obtain predictable results; (c) involves the use of a known technique to improve similar devices (methods, or products) in the same way; (d) applies a known technique to a known device (method, or product) ready for improvement to yield predictable results; (e) involves combinations of prior-art references that would have been "obvious to try"—a person of ordinary skill in the art could have reached the Asserted Claims by choosing from a finite number of identified, predictable solutions, with a reasonable expectation of success; and/or (f) would have been prompted by known work, based on design incentives or other market forces, because such variations were predictable to one of ordinary skill in the art.

Moreover, the Supreme Court has stated that a motivation to combine may be simply "common sense" and that "familiar items may have obvious uses beyond their primary purposes,

31

and in many cases a person of ordinary skill will be able to fit the teachings of multiple patents together like pieces of a puzzle." *KSR*, 550 U.S. at 420.  Indeed, the Supreme Court held that it is sufficient that a combination of elements was "obvious to try," holding that, "[w]hen there is a design need or market pressure to solve a problem and there are a finite number of identified, predictable solutions, a person of ordinary skill has good reason to pursue the known options within his or her technical grasp." *Id*. at 421.  Here, all the claim elements are common sense and are easily fit together by one of ordinary skill in the art.

While not necessary, a motivation to combine may also be found in the references themselves.  One of ordinary skill in the art would have been motivated to combine a reference that refers to, or otherwise explicitly invites combination with, another reference.  Where the references cited herein have such an explicit invitation to combine, that invitation would have motivated one of ordinary skill in the art to combine any such references.

### c.      Exemplary Obviousness Combinations

The accompanying claim charts explain how different portions of each prior art reference discloses each limitation of the Asserted Claims.  If Finjan argues that any particular prior art reference lacks any feature, a POSITA as of the '731 Patent's priority date would at a minimum have been motivated to modify the reference to include the allegedly missing feature, or to combine it with other references that include that feature, as discussed in the previous section.

To the extent Finjan asserts that the prior art in Table 1 does not disclose these claim limitations, it would have been obvious to combine or modify each of the prior art references in Table 1 and Table 2 with one or more prior art references in Table 1 and/or Table 2 to create computer-based methods, systems and products for retrieving, scanning, and storing files as well as deriving and storing corresponding security profiles, as discussed in Thomson, Tso, Chu, Ji '600, Coss, Ji '348, Bond, Stang (*see, e.g.*, Stang at 237, 239, 240, 241, 242, 243, 246, 247, 248), Chankhunthod (*see, e.g.*, Chankhunthod at 4.), Squid, and VICEd.  Exemplary combinations are provided below but do not limit the potential invalidating combinations disclosed in these contentions or that PAN intends to rely on.

To the extent that Finjan argues that the prior art references are missing the scanning

32

1   related elements, it would have been obvious to modify those reference to derive and/or cache a

2   security profile comprising a list of computer commands a corresponding file is programmed to

3   perform, as described in Thomson, Tso, Chu, Ji '600, Coss, Ji '348, Bond, Stang (*see, e.g.*, Stang

4   at 239, 240, 241, 242, 243, 246, 247, 248), and Chankhunthod (*see, e.g.*, Chankhunthod at 3, 6,

5   11).  One of ordinary skill in the art would have been motivated to combine Thomson, Tso, Chu,

6   Ji '600, Coss, Ji '348, Bond, Stang and/or Chankhunthod with one or more other references

7   identified in Table 1 and would have reasonably expected that the combination would achieve the

8   intended purpose.  Each reference relates to computer and network security.  A person of ordinary

9   skill in the art looking to create improved computer security methods and products would look to

10   consider solutions implemented in other computer security methods and products such as those

11   disclosed in at least Thomson, Tso, Chu, Ji '600, Coss, Ji '348, Bond, Stang and/or

12   Chankhunthod, and other references as described in PAN's Invalidity Contentions and associated

13   claim charts.  A person of ordinary skill in the art looking to solve this problem would review

14   patents, patent publications and prior art systems in the field of computer and network security

15   such as Thomson, Tso, Chu, Ji '600, Coss, Ji '348, Bond, Stang and/or Chankhunthod and other

16   references as described in PAN's Invalidity Contentions and associated claim charts.

17   One of ordinary skill in the art also would have reasonably expected that such

18   combination of Thomson, Tso, Chu, Ji '600, Coss, Ji '348, Bond, Stang and/or Chankhunthod

19   and other references as described in Table 1 and associated claim charts would achieve the

20   desired structure and functionality of scanning a file, for such structures and mechanisms were

21   well known in the art and would have been obvious to one of ordinary skill in the art.

22   To the extent that Finjan argues that the prior art references are missing the security

23   profile related elements, it would have been obvious to modify those reference to derive and/or

24   cache a security profile comprising a list of computer commands a corresponding file is

25   programmed to perform, as described in Thomson, Tso, Chu, Ji '600, Coss, Ji '348, Bond, and

26   Stang (*see e.g.*, Stang at 239, 240, 241, 242, 243, 246, 247, 248.)  One of ordinary skill in the art

27   would have been motivated to combine Thomson, Tso, Chu, Ji '600, Coss, Ji '348, Bond, and/or

28   Stang with one or more other references identified in Table 1 and would have reasonably

33

expected that the combination would achieve the intended purpose. Each reference relates to computer and network security. A person of ordinary skill in the art looking to create improved computer security methods and products would look to consider solutions implemented in other computer security methods and products such as those disclosed in at least Thomson, Tso, Chu, Ji '600, Coss, Ji '348, Bond, and/or Stang and other references as described in PAN's Invalidity Contentions and associated claim charts. A person of ordinary skill in the art looking to solve this problem would review patents, patent publications and prior art systems in the field of computer and network security such as Thomson, Tso, Chu, Ji '600, Coss, Ji '348, Bond, and/or Stang and other references as described in PAN's Invalidity Contentions and associated claim charts.

One of ordinary skill in the art also would have reasonably expected that such combination of Thomson, Tso, Chu, Ji '600, Coss, Ji '348, Bond, and/or Stang and other references as described in Table 1 and associated claim charts would achieve the desired structure and functionality of a security profile comprising a list of computer commands that a corresponding file is programmed to perform, deriving a security profile, and storing a security profile within a security profile cache, for such structures and mechanisms were well known in the art and would have been obvious to one of ordinary skill in the art.

To the extent that Finjan argues that the prior art references are missing the file cache related elements, it would have been obvious to modify those reference to include a file cache for storing files that have been scanned by the scanner for future access, wherein each of the stored files is indexed by an identifier, as described in Thomson, Tso, Chu, Ji '600, and Chankhunthod (*see, e.g.*, Chankhunthod at 3, 6, and 11).  One of ordinary skill in the art would have been motivated to combine Thomson, Tso, Chu, Ji '600 and/or Chankhunthod with one or more other references identified in Table 1 or Table 2 and would have reasonably expected that the combination would achieve the intended purpose. Each reference relates to computer and network security. A person of ordinary skill in the art looking to create improved computer security methods and products would look to consider solutions implemented in other computer security methods and products such as those disclosed in at least Thomson, Tso, Chu, Ji '600, and/or Chankhunthod and other references as described in PAN's Invalidity Contentions and associated

34

1   claim charts. A person of ordinary skill in the art looking to solve this problem would review

2   patents, patent publications and prior art systems in the field of computer and network security

3   such as Thomson, Tso, Chu, Ji '600, and/or Chankhunthod and other references as described in

4   PAN's Invalidity Contentions and associated claim charts.

5          One of ordinary skill in the art also would have reasonably expected that such

6   combination of Thomson, Tso, Chu, Ji '600, and/or Chankhunthod and other references as

7   described in Table 1 and associated claim charts would achieve the desired structure and

8   functionality of a file cache for storing files for future access, wherein each of the security

9   profiles is indexed by a file identifier associated with a corresponding file, for such structures and

10  mechanisms were well known in the art and would have been obvious to one of ordinary skill in

11  the art.

12         To the extent that Finjan argues that the prior art references are missing the security policy

13  cache for storing security policies, it would have been obvious to modify those references to

14  include a security policy cache for storing security policies, where the security policies include a

15  list of restrictions for files, as described in Thomson, Tso, Chu, Ji '600, Coss, Ji '348, Bond,

16  Stang (*see e.g.*, Stang at 237, 239, 240, 241), and Chankhunthod (*see, e.g.*, Chankhunthod at 3, 6,

17  and 11).  One of ordinary skill in the art would have been motivated to combine Thomson, Tso,

18  Chu, Ji '600, Coss, Bond, Stang, and/or Chankhunthod with one or more other references

19  identified in Table 1 and would have reasonably expected that the combination would achieve the

20  intended purpose.  Each reference relates to computer and network security.  A person of ordinary

21  skill in the art looking to create improved computer security methods and products would look to

22  consider solutions implemented in other computer security methods and products such as those

23  disclosed in at least Thomson, Tso, Chu, Ji '600, Coss, Ji '348, Bond, Stang, and/or

24  Chankhunthod and other references as described in PAN's Invalidity Contentions and associated

25  claim charts.  A person of ordinary skill in the art looking to solve this problem would review

26  patents, patent publications and prior art systems in the field of computer and network security

27  such as Thomson, Tso, Chu, Ji '600, Coss, Bond, Stang and/or Chankhunthod and other

28  references as described in PAN's Invalidity Contentions and associated claim charts.

One of ordinary skill in the art also would have reasonably expected that such combination of Thomson, Tso, Chu, Ji '600, Coss, Ji '348, Bond, Stang and/or Chankhunthod and other references as described in Table 1 and associated claim charts would achieve the desired structure and functionality of a security policy cache for storing security policies, for such structures and mechanisms were well known in the art and would have been obvious to one of ordinary skill in the art.

To the extent that Finjan argues that any of the prior art references are missing the hash value related elements, it would have been obvious to modify those references to have a file identifier include a hash value derived from a corresponding file, as described in Coss and Chankhunthod (*see e.g.*, Chankhunthod at 4). One of ordinary skill in the art would have been motivated to combine Coss and/or Chankhunthod with one or more other references identified in Table 1 and would have reasonably expected that the combination would achieve the intended purpose. Each reference relates to computer and network security. A person of ordinary skill in the art looking to create improved computer security methods and products would look to consider solutions implemented in other computer security methods and products such as those disclosed in at least Coss and/or Chankhunthod and other references as described in PAN's Invalidity Contentions and associated claim charts. A person of ordinary skill in the art looking to solve this problem would review patents, patent publications and prior art systems in the field of computer and network security such as Coss and/or Chankhunthod and other references as described in PAN's Invalidity Contentions and associated claim charts.

One of ordinary skill in the art also would have reasonably expected that such combination of Coss and/or Chankhunthod and other references as described in Table 1 and associated claim charts would achieve the desired structure and functionality of using a hash value as a file identifier to index the files, for such structures and mechanisms were well known in the art and would have been obvious to one of ordinary skill in the art.

### 4.    Patent L.R. 3-3(c) Invalidity Contentions Charts

Pursuant to Patent Local Rule 3-3(c), charts identifying specifically where and how in each alleged item of prior art each limitation of each asserted claim is found are attached as

36

Exhibits G-1 to G-8.  Where elements are disclosed at multiple locations within a single item of prior art, PAN has not necessarily identified every iteration of every disclosure.

### 5. Patent L.R. 3-3(d) Invalidity Based on 35 U.S.C. § 101, Indefiniteness Under 35 U.S.C. § 112(2), or Enablement or Written Description Under 35 U.S.C. § 112(1)

Based on PAN's present understanding of the Asserted Claims and/or PAN's apparent construction of the claims, as set forth in Finjan's Infringement Contentions, and subject to the reservation of rights above, PAN lists below the grounds upon which the Asserted Claims of the '731 Patent are invalid based on 35 U.S.C. § 101, indefiniteness, lack of written description, and/or lack of enablement under 35 U.S.C. § 112.  To the extent PAN's identified grounds for invalidity are based on Finjan's apparent constructions, PAN is not adopting Finjan's apparent constructions, nor is PAN agreeing that any of Finjan's apparent constructions are correct.  Moreover, Finjan's deficient Infringement Contentions fail to provide PAN with adequate notice as to Finjan's infringement theories.  PAN reserves all rights to advance claim construction positions different from Finjan's apparent constructions.

PAN's contentions that the following claims are invalid under 35 U.S.C. § 112 are made in the alternative, and do not constitute, and should not be interpreted as, admissions regarding the construction or scope of the Asserted Claims, or that any of the Asserted Claims are not anticipated or rendered obvious by any prior art.  Where PAN identifies a claim term in an independent claim as being invalid, PAN further contends any asserted dependent claim is invalid based on the presence of the same term.

In light of the deficiencies in Finjan's Infringement Contentions, PAN reserves the right to amend, modify, and/or supplement these Contentions to further identify bases for invalidity under 35 U.S.C. § 112.  PAN's Contentions shall not be construed as an admission that any claim construction advanced by PAN in this case is in any way inconsistent, flawed or erroneous.  Nor should these Contentions prevent PAN from advancing claim construction and/or non-infringement positions in lieu of, or in addition to, invalidity positions.  Further, PAN's Contentions shall not be construed as an admission of or acquiescence to Finjan's purported construction of the claim language or of other positions advanced by Finjan during the course of

1   this litigation.  PAN's Contentions under 35 U.S.C. § 112 may depend, in part, on the Court's

2   claim construction, as well as Finjan's asserted claim scope.  Consequently, PAN only identifies

3   herein the issues under 35 U.S.C. § 112 of which it is presently aware based on PAN's present

4   understanding of the asserted claims and/or Finjan's apparent construction of the claims, as set

5   forth in Finjan's Infringement Contentions.  PAN reserves all rights to advance claim

6   construction positions different from Finjan's apparent constructions and to amend these

7   contentions as it better understands Finjan's construction of the claims during the claim

8   construction process.

### a.      Unpatentable Subject Matter Under 35 U.S.C. § 101

The Asserted Claims of the '731 Patent are directed to non-statutory subject matter, under 35 U.S.C. § 101, because the claims are directed to merely scanning a file, deriving a security profile, storing the file, and storing the security profile, which is an abstract concept.  The recitation of generic computer components does not amount to significantly more than the abstract idea itself.  *See CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1370 (Fed. Cir. 2011) (reasoning that the use of the Internet to verify a credit card transaction does not meaningfully add to the abstract idea of verifying the transaction).  Additionally, claims 1-3 are directed to software per se.  Therefore, the Asserted Claims of the '731 Patent are not directed to patent-eligible subject matter under 35 U.S.C. §101, and are invalid.

### b.      Indefiniteness Under 35 U.S.C. § 112(2)

"[A] patent is invalid for indefiniteness if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention."  *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 901 (2014).

The following claim limitations of the Asserted Claims are invalid based on indefiniteness.

- "a file identifier"
- "the file identifiers"
- "scanning the retrieved file to determine computer commands that the file is

38

programmed to perform"

- "its security profile"
- "without the need to perform said scanning"
- "scanner"

### c.    Lack of Written Description Under 35 U.S.C. § 112(1)

To satisfy the written description requirement, the description must "clearly allow persons of ordinary skill in the art to recognize that [the inventor] invented what is claimed." *Ariad Pharm., Inc. v. Eli Lilly and Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010) (internal citation omitted). The test for sufficiency is whether the disclosure of the application relied upon reasonably conveys to those skilled in the art that the inventor had possession of the claimed subject matter as of the filing date. *Id.*

The test requires an objective inquiry into the four corners of the specification from the perspective of a POSITA.  Based on that inquiry, the specification must describe an invention understandable to that skilled artisan and show that the inventor actually invented the invention claimed.  "Whether the written description requirement is satisfied is a fact-based inquiry that will depend on the nature of the claimed invention, and the knowledge of one skilled in the art at the time an invention is made and a patent application is filed." *Carnegie Mellon Univ. v. Hoffmann La Roche Inc.*, 541 F.3d 1115, 1122 (Fed. Cir. 2008) (internal citation omitted).  Actual "possession" or reduction to practice outside of the specification is not enough.  Instead, the specification itself must demonstrate possession.

While the written description requirement does not demand any particular form of disclosure, a description that merely renders the invention obvious does not satisfy the requirement.  *Lockwood v. Am. Airlines*, 107 F.3d 1565, 1571-72 (Fed. Cir. 1997).  Finjan's apparent construction of "to ensure that duplicate files are not scanned" is not adequately described in the '731 patent, and therefore these claims are invalid for lack of written description support.  The same goes for related claims reciting "without the need to perform said scanning".

### d.    Lack of Enablement Under 35 U.S.C. § 112(1)

To satisfy the enablement requirement of 35 U.S.C § 112, the disclosure "must teach those

39

1  skilled in the art how to make and use the full scope of the claimed invention without 'undue

2  experimentation.'" *Genentech, Inc. v. Novo Nordisk, A/S*, 108 F.3d 1361, 1365 (Fed. Cir. 1997)

3  (citations omitted).  Moreover, "[i]t is the specification, not the knowledge of one skilled in the

4  art, that must supply the novel aspects of [the] invention in order to constitute adequate

5  enablement." *Id.* at 1366.  The Federal Circuit has enumerated several factors to consider in

6  determining whether a disclosure would require "undue experimentation":  "(1) the quantity of

7  experimentation necessary, (2) the amount of direction or guidance presented, (3) the presence or

8  absence of working examples, (4) the nature of the invention, (5) the state of the prior art, (6) the

9  relative skill of those in the art, (7) the predictability or unpredictability of the art, and (8) the

10 breadth of the claims." *In re Wands*, 858 F.2d 731, 737 (Fed. Cir. 1988).  Finjan's apparent

11 construction of "to ensure that duplicate files are not scanned" is not adequately described in the

12 '731 patent, and therefore these claims are invalid for lack of enablement.  The same goes for

13 related claims reciting "without the need to perform said scanning".

14      C.      **Invalidity of the '926 Patent**

15          1.      **Priority Date**

16          Finjan alleged that each of the Asserted Claims of the '926 Patent is entitled to a priority

17 date of November 8, 1996.  Finjan's Initial Disclosure of Asserted Claims and Infringement

18 Contentions, at 20.  Finjan seems to allege based on this that the Asserted Claims of the '926

19 Patent are entitled to the benefit of a provisional application which was filed well before the '926

20 Patent was filed on March 7, 2006.  The '926 Patent on its face claims priority to November 6,

21 1997—the filing date of U.S. Patent No. 6,092,194—at the earliest.  The '926 Patent issued from

22 a series of continuation applications which began with the parent application to the '926, which

23 was filed on May 17, 2001, and which ultimately matured into U.S. Patent No. 7,058,822 ("the

24 '822 Patent").  The un-asserted '822 Patent claims priority to a provisional application filed on

25 May 17, 2000.  Simultaneously, the '822 Patent appears to claim priority through two separate

26 continuation in part applications, which ultimately issued as the un-asserted U.S. Patent No.

27 6,480,962, and asserted '780 Patent.  The subject matter claimed in the '822 Patent, and by

28 extension the '926 Patent, is not disclosed in the '780 Patent, nor in the '962 Patent.  Therefore,

40

the chain of priority for the '926 Patent cannot go beyond its parent '822 Patent. Thus, based on the information presently available to PAN, the earliest date to which the '926 Patent may claim priority is May 17, 2000, the date in which the provisional application which led to the '822 Patent was filed, or alternatively the '822 Patent's filing date of May 17, 2001, or the '926 Patent's filing date of March 7, 2006. However, as described below, the Asserted Claims are invalid even under Finjan's alleged priority date.

### 2.    Patent L.R. 3-3(a) Identification of Prior Art

Subject to the reservations of rights above, PAN identifies prior art that anticipates and/or renders obvious one or more of the Asserted Claims of the '926 Patent. The prior art references identified are also relevant to show the state of the art and reasons and motivations for making improvements, additions, modifications, and combinations.

In addition, PAN incorporates the prior art, claims charts, and invalidity theories disclosed, listed and/or asserted by any entity during the course of other litigation (past, present/ongoing, or future) or patent office challenges (either reexaminations or IPRs). Finjan has failed to timely update its production of these materials, which has prejudiced PAN in its preparation of these contentions. PAN reserves the right to rely on any prior art reference, prior art combination, motivation to combine, invalidity theory, and/or materials disclosed in these other proceedings. At least the following prior art references anticipate and/or render obvious the Asserted Claims of the '926 Patent, and/or illustrate the state of the art at the time of the alleged invention:

### a.    Patent Prior Art

| Ref. No. | Publication No. | Short Name | Filing Date | Publication Date | Priority Date |
|---|---|---|---|---|---|
| 1. | U.S. 5,757,915 | Aucsmith | August 25, 1995 | May 26, 1998 | August 25, 1995 |
| 2. | U.S. 5,983,348 | Ji '348 | September 10, 1997 | November 9, 1999 | September 10, 1997 |
| 3. | W.O. 98/21683 | Touboul '683 | November 6, 1997 | May 22, 1998 | May 22, 1998 |

| Ref. No. | Publication No. | Short Name | Filing Date | Publication Date | Priority Date |
|---|---|---|---|---|---|
| 4. | W.O. 99/35583 | Touboul '583 | December 16, 1998 | July 15, 1999 | July 15, 1999 |
| 5. | U.S. 6,367,012 | Atkinson | December 6, 1996 | April 2, 2002 | December 6, 1996 |
| 6. | U.S. 6,067,575 | McManis | December 8, 1995 | May 23, 2000 | December 8, 1995 |
| 7. | U.S. 6,128,774 | Necula | October 28, 1997 | October 3, 2000 | October 28, 1997 |
| 8. | U.S. 6,092,147 | Levy '147 | April 15, 1997 | July 18, 2000 | April 15, 1997 |
| 9. | U.S. 6,622,247 | Issak '247 | December 19, 1997 | September 16, 2003 | December 19, 1997 |
| 10. | U.S. 6,253,370 | Abadi '370 | December 1, 1997 | January 26, 2001 | December 1, 1997 |
| 11. | U.S. 5,283,830 | Hinsley '830 | September 30, 1992 | February 1, 1994 | September 30, 1992 |
| 12. | U.S. 6,357,008 | Nachenberg '008 | September 23, 1997 | March 12, 2002 | September 23, 1997 |

**b.      Non-Patent Publication Prior Art**

| Ref. No. | Publication | Short Name | Publication Date |
|---|---|---|---|
| 1. | MiSFIT: A Freely Available Tool for Building Safe Estensible Systems | MiSFIT | 1996 |
| 2. | Trust Management for the World Wide Web | Chu | June 13, 1997 |
| 3. | Encapsulating Mobile Objects | Härtig | 1997 |
| 4. | A Flexible Security Model for Using Internet Content | Islam | October 1997 |
| 5. | An Immune System for Cyberspace | Kephart | 1997 |
| 6. | MIME Encapsulation | Bahreman | June 13, 1996 |

| Ref. No. | Publication | Short Name | Publication Date |
|----------|-------------|------------|------------------|
| 7. | Blocking Applets at the Firewall | Martin | February 10, 1997 |
| 8. | Dynamic Detection and Classification of Computer Viruses Using General Behavior Patterns | Swimmer | September 1995 |
| 9. | Poison Java | Chen | August 1999 |

PAN additionally identifies and relies on each of the additional patent or publication references that describe or are otherwise related to the prior art systems identified below.

### c.       System or Product Prior Art

PAN sets forth numerous prior art products or systems in the table below.  For such prior art products and systems, PAN has identified, based on its current knowledge, approximate dates on which such products were sold, on sale, made, known, and/or used in the U.S.  PAN's investigation of prior art products and systems is ongoing.  Further information and/or documents regarding such products and their sale, offer for sale, and use dates will be produced or disclosed as it is (they are) obtained in discovery or otherwise becomes available to PAN.  PAN reserves the right to amend, modify, and/or supplement these Contentions based on further and subsequent investigation and discovery.  Additionally, PAN reserves the right to rely on the documents identified below as standalone prior art references separate from the prior art system or product they describe.

PAN additionally identifies and relies on any system, product, or public knowledge or use that embodies or otherwise incorporates any of the prior art patents and publications listed above.  PAN reserves the right to identify and rely on systems that represent different versions or are otherwise related variations of the identified products and systems.

| Ref No. | System Name | Short Name | Date Made, Known, Used, Sold, or On Sale |
|---------|-------------|------------|-------------------------------------------|
| 1. | InterScan AppletTrap | AppletTrap | March 23, 1999 |

43

(i)     InterScan AppletTrap ("AppletTrap")

AppletTrap was sold, on sale, made, known, and/or used at least by March 23, 1999.  The features, operations, and functionality of AppletTrap are described throughout the Trend Micro, Inc. documentation produced in this case.  These documents include:

- TFS00000001 – TFS00005934
- TM-FIN000001 – TM-FIN000563

### d.     35 U.S.C. § 102(f)

PAN reserves the right to assert that the Asserted Claims are invalid under 35 U.S.C. § 102(f) in the event PAN obtains additional evidence that the inventors named in any of the Asserted Patents did not invent the subject matter claimed therein.  Should PAN obtain such evidence, it will provide the name of the person(s) from whom and the circumstances under which the alleged invention or any part of it was derived.

### e.     35 U.S.C. § 102(g)

PAN reserves the right to assert that the Asserted Claims are invalid under 35 U.S.C. § 102(g) in the event PAN obtains additional evidence that any of the inventions claimed in the Asserted Patents were made in the United States by another inventor who had not abandoned, suppressed or concealed it, prior to the alleged invention by the applicant of the Asserted Patents. Should PAN obtain such evidence, it will provide the identities of the persons or entities involved in and the circumstances surrounding the making the inventions before the patent applicants.

### 3.     Patent L.R. 3-3(b) Anticipation and Obviousness

The references in Table 1, alone or in combination with the knowledge of one skilled in the art, anticipate or render obvious the Asserted Claims of the '926 Patent.

**Table 1: Prior Art References: Anticipation and Primary/Secondary Obviousness References**

| Short Name | Prior Art Under | Priority Date | Exemplary Claim Chart |
|---|---|---|---|
| AppletTrap | 102(a) | March 23, 1999 | B-1 |
| Aucsmith | 102(e) | August 25, 1995 | B-2 |

44

| Short Name | Prior Art Under | Priority Date | Exemplary Claim Chart |
|---|---|---|---|
| Ji '348 | 102(e) | September 10, 1997 | B-3 |
| Touboul '583 | 102(a) | July 15, 1999 | B-4 |
| MiSFIT | 102(a) | 1996 | B-5 |
| Touboul '683 | 102(a) | May 22, 1998 | B-6 |
| Atkinson | 102(e) | December 6, 1996 | B-7 |
| McManis | 102(e) | December 8, 1995 | B-8 |
| Chu | 102(a) | June 13, 1997 | B-9 |
| Härtig | 102(a) | 1997 | B-10 |
| Islam | 102(a) | October 1997 | B-11 |
| Kephart | 102(a) | 1997 | B-12 |
| Necula | 102(e) | October 28, 1997 | B-13 |
| Chen | 102(a) | August 1999 | B-14 |

In addition, each of the references in Table 1 above and Table 2 below, either alone, in view of the knowledge of a POSITA, and/or in combination with one or more references in Table 1 or Table 2, renders obvious the Asserted Claims of the '926 Patent.

**Table 2: Additional Prior Art References: Obviousness**

| Short Name | Prior Art Under | Priority Date |
|---|---|---|
| Levy '147 | 102(e) | April 15, 1997 |
| Isaak '247 | 102(e) | December 19, 1997 |
| Abadi '370 | 102(e) | December 1, 1997 |
| Hinsley '830 | 102(e) | September 30, 1992 |
| Nachenberg '008 | 102(e) | September 23, 1997 |
| Bahreman | 102(a) | June 13, 1996 |
| Martin | 102(a) | February 10, 1997 |

45

| Short Name | Prior Art Under | Priority Date |
|---|---|---|
| Swimmer | 102(a) | September 1995 |

In addition, PAN incorporates by reference each and every prior art reference of record in the prosecution of the '926 Patent and any related patent or application, the statements made therein by the applicant, as well as the prior art discussed in the specification.

The cited portions of each prior art reference are exemplary and representative of the content of the reference, and should be understood in the context of the reference as a whole, as understood by one of ordinary skill in the art. To the extent a prior art reference is deemed not to anticipate or render obvious a claim as noted in the attached charts for failing to disclose, teach, or suggest one or more limitations of a claim, that claim would nonetheless have been obvious to one of ordinary skill in the art at the time of the alleged invention over the reference itself or by the combination of the reference with one or more other references disclosing the missing claim limitations or the knowledge of a person having ordinary skill in the art.

### a.     Prior Art Combinations

All of the Asserted Claims of the '926 Patent are obvious based on one or more combinations of the prior art references above. The sections below provide motivations to combine the prior art references above. These obviousness combinations are provided in the alternative to PAN's anticipation and single-reference obviousness contentions and are not to be construed to suggest that any reference included in the combination is not itself anticipatory or would not render the Asserted Claims obvious in light of the knowledge of a person having ordinary skill in the art. PAN also hereby incorporates by reference the prior art, invalidity grounds, and expert testimony submitted in connection with any petitions for *inter partes* review of the '926 Patent.

### b.     Motivation to Combine

A POSITA would have been motivated to combine the preceding references for any number of reasons, such as the following exemplary reasons. Teachings, suggestions,

motivations, and/or reasons to modify any of the references and/or to combine any two or more of the references can come from many sources, including the prior art, common knowledge, common sense, predictability, expectations, industry trends, design incentives or need, market demand or pressure, market forces, obviousness to try, the nature of the problem faced, and/or knowledge possessed by a POSITA.

Although a patent claim may be invalidated based on a teaching-suggestion-motivation ("TSM") rationale—*i.e.*, that some teaching, suggestion, or motivation in the prior art that would have led one of ordinary skill to modify the prior-art reference or to combine prior-art reference teachings to arrive at the claimed invention—the Supreme Court identified additional rationales in *KSR Int'l Co. v. Teleflex, Inc.*, 550 U.S. 398 (2007).  The following of these rationales apply here:

    (A) the Asserted Claims combine prior-art elements according to known methods to yield predictable results;

    (B) the Asserted Claims involve the simple substitution of one known element for another to obtain predictable results;

    (C) the Asserted Claims involve the use of a known technique to improve similar devices (methods, or products) in the same way;

    (D) the Asserted Claims apply a known technique to a known device (method, or product) ready for improvement to yield predictable results;

    (E) the Asserted Claims involve combinations of prior-art references that would have been "obvious to try"'—a person of ordinary skill in the art could have reached the Asserted Claims by choosing from a finite number of identified, predictable solutions, with a reasonable expectation of success;

    (F) the Asserted Claims are simply variations of work from one field of endeavor or a different one that would have been prompted based on design incentives or other market forces because the variations were predictable to one of ordinary skill in the art.

*See KSR*, 550 U.S. at 415-18 (rejecting the Federal Circuit's "rigid" application of the teaching, suggestion, or motivation to combine test, and instead espousing an "expansive and flexible" approach).  Indeed, the Supreme Court held that a person of ordinary skill in the art is "a person of ordinary creativity, not an automaton" and "in many cases a person of ordinary skill in the art will be able to fit the teachings of multiple patents together like pieces of a puzzle." *KSR*, 550 U.S. at 420-21.

Thus, even in the absence of a specific teaching, suggestion, or motivation to combine references, the Asserted Claims here are obvious and therefore invalid.  Each of the cited references or devices is in the same field, making it obvious for someone of ordinary skill in the art to identify and combine elements from these references.  One of ordinary skill in the art would have recognized that improvements could be achieved by combining or modifying prior-art references that described such improvements.  Each of the above prior-art references describes devices or methods that were known to offer such improvements, and, accordingly, one of ordinary skill in the art would have been motivated to combine or modify the references as identified in each of the combinations above.

Indeed, given that the references are in the same field, one of ordinary skill would have readily, with predictable results, taken teachings from one reference and applied them to other references.  As referenced above, multiple prior art references teach or suggest the concepts claimed in the '926 Patent.  To the extent Finjan argues that any concepts claimed in the '926 Patent were not contained in any prior art reference, it would, at a minimum, have been obvious to adapt each reference to include the concept or combine it with other references that disclose the concept.  In addition, each of the constituent techniques described here was well known to those of ordinary skill in the art, and understood to be among a menu of available design choices for developing methods of computer security via obtaining and hashing a Downloadable, creating a security profile for the Downloadable, and creating and transmitting an appended Downloadable or a security profile with a representation of the Downloadable, including through a variety of Downloadable types and with various features common to the security profile.  This is one of many motivations to combine the above references.

Furthermore, because computer security techniques using features such as firewalls, security profiles, and the obtaining and transfer of Downloadables and security profiles were well known and studied extensively prior to the 926 Patent priority date, common industry knowledge supplied a reason to combine the above references with each other.  Each combination would have produced no unexpected results and would simply represent a known alternative to one of ordinary skill in the art.  This is a further motivation to combine any of the above references.

The below sections further address particular reasons to combine the above references. The below should not be construed as an admission that there is any value to the alleged invention of the '926 Patent. As discussed previously, these contentions are based largely on how Finjan is apparently construing the Asserted Claims in its Initial Infringement Contentions, which is an incorrect and overbroad interpretation of the alleged invention of the '926 Patent. Accordingly, to the extent the below refers to benefits of certain elements or industry trends towards these elements, this is not an admission that the alleged invention of the '926 Patent provides any benefits—to the contrary, properly construed and compared to the prior art, the '926 Patent provides no benefits. Likewise, to the extent the below refers to substituting elements, this is not an admission that the elements subject to the substitution are in any way similar, *e.g.*, perform the same function, in the same way, to reach the same result.

The various elements of the Asserted Claims were well-known in the prior art at the time of the alleged invention, and the combination was obvious to one of ordinary skill in the art. The combination simply (a) combines prior-art elements according to known methods to yield predictable results; (b) involves the simple substitution of one known element for another to obtain predictable results; (c) involves the use of a known technique to improve similar devices (methods, or products) in the same way; (d) applies a known technique to a known device (method, or product) ready for improvement to yield predictable results; (e) involves combinations of prior-art references that would have been "obvious to try"—a person of ordinary skill in the art could have reached the Asserted Claims by choosing from a finite number of identified, predictable solutions, with a reasonable expectation of success; and/or (f) would have been prompted by known work, based on design incentives or other market forces, because such variations were predictable to one of ordinary skill in the art.

Moreover, the Supreme Court has stated that a motivation to combine may be simply "common sense" and that "familiar items may have obvious uses beyond their primary purposes, and in many cases a person of ordinary skill will be able to fit the teachings of multiple patents together like pieces of a puzzle." *KSR*, 550 U.S. at 420. Indeed, the Supreme Court held that it is sufficient that a combination of elements was "obvious to try," holding that, "[w]hen there is a

49

design need or market pressure to solve a problem and there are a finite number of identified, predictable solutions, a person of ordinary skill has good reason to pursue the known options within his or her technical grasp." *Id*. at 421.  Here, all the claim elements are common sense and are easily fit together by one of ordinary skill in the art.

While not necessary, a motivation to combine may also be found in the references themselves.  One of ordinary skill in the art would have been motivated to combine a reference that refers to, or otherwise explicitly invites combination with, another reference.  Where the references cited herein have such an explicit invitation to combine, that invitation would have motivated one of ordinary skill in the art to combine any such references.

### a.    Exemplary Obviousness Combinations

The accompanying claim charts explain how different portions of each prior art reference discloses each limitation of the Asserted Claims.  If Finjan argues that any particular prior art reference lacks any feature, a POSITA as of the '926 Patent's priority date would at a minimum have been motivated to modify the reference to include the allegedly missing feature, or to combine it with other references that include that feature, as discussed in the previous section.

To the extent Finjan asserts that the prior art in Table 1 does not disclose these claim limitations, it would have been obvious to combine or modify each of the prior art references in Table 1 and Table 2 with one or more prior art references in Table 1 and/or Table 2 to create computer-based methods, systems and products for identifying, categorizing, and transmitting Downloadables along with their security profiles in and appended fashion, as discussed in AppletTrap, Aucsmith, Ji '348, Touboul '583, MiSFIT, Touboul '683, Atkinson, McManis, Chu, Härtig, Islam, Kephart, Necula, and Chen.  Exemplary combinations are provided below but do not limit the potential invalidating combinations disclosed in these contentions or that PAN intends to rely on.

To the extent that Finjan argues that any of these references do not satisfy the "receiving an incoming Downloadable" limitations, it would have been obvious to modify those references to allow for the receiving of a Downloadable in some form, as described in AppletTrap, Aucsmith, Ji '348, Touboul '583, MiSFIT, Touboul '683, Atkinson, McManis, Chu, Härtig,

Islam, Kephart, Necula, and Chen. One of ordinary skill in the art would have been motivated to combine AppletTrap, Aucsmith, Ji '348, Touboul '583, MiSFIT, Touboul '683, Atkinson, McManis, Chu, Härtig, Islam, Kephart, Necula, and Chen with one or more other references identified in Table 1 and/or Table 2 and would have reasonably expected that the combination would achieve the intended purpose. Each reference relates to computer and network security.  A person of ordinary skill in the art looking to create improved computer security methods and products would look to consider solutions implemented in other computer security methods and products such as those disclosed in AppletTrap, Aucsmith, Ji '348, Touboul '583, MiSFIT, Touboul '683, Atkinson, McManis, Chu, Härtig, Islam, Kephart, Necula, Chen and other references as described in PAN's Invalidity Contentions and associated claim charts.  A person of ordinary skill in the art looking to solve this problem would review patents, patent publications and prior art systems in the field of computer and network security such as AppletTrap, Aucsmith, Ji '348, Touboul '583, MiSFIT, Touboul '683, Atkinson, McManis, Chu, Härtig, Islam, Kephart, Necula, Chen and other references as described in PAN's Invalidity Contentions and associated claim charts.  One of ordinary skill in the art also would have reasonably expected that such combination of AppletTrap, Aucsmith, Ji '348, Touboul '583, MiSFIT, Touboul '683, Atkinson, McManis, Chu, Härtig, Islam, Kephart, Necula, Chen and other references as described in Table 1 and associated claim charts would achieve the desired structure and functionality of receiving incoming Downloadables, for such structures and mechanisms were well known in the art and would have been obvious to one of ordinary skill in the art.

To the extent that Finjan argues that any of these references do not satisfy the "performing a hashing function on the incoming Downloadable" limitations, it would have been obvious to modify those references to allow for the performance of mathematical operations to create a hash of an incoming Downloadable, as described in AppletTrap, Aucsmith, Ji '348, Touboul '583, MiSFIT, Touboul '683, Atkinson, McManis, Chu, Härtig, Islam, Kephart, Necula, and Chen. One of ordinary skill in the art would have been motivated to combine AppletTrap, Aucsmith, Ji '348, Touboul '583, MiSFIT, Touboul '683, Atkinson, McManis, Chu, Härtig, Islam, Kephart, Necula, and Chen with one or more other references identified in Table 1 and/or Table 2 and would have

reasonably expected that the combination would achieve the intended purpose. Each reference relates to computer and network security.  A person of ordinary skill in the art looking to create improved computer security methods and products would look to consider solutions implemented in other computer security methods and products such as those disclosed in AppletTrap, Aucsmith, Ji '348, Touboul '583, MiSFIT, Touboul '683, Atkinson, McManis, Chu, Härtig, Islam, Kephart, Necula, Chen and other references as described in PAN's Invalidity Contentions and associated claim charts.  A person of ordinary skill in the art looking to solve this problem would review patents, patent publications and prior art systems in the field of computer and network security such as AppletTrap, Aucsmith, Ji '348, Touboul '583, MiSFIT, Touboul '683, Atkinson, McManis, Chu, Härtig, Islam, Kephart, Necula, Chen other references as described in PAN's Invalidity Contentions and associated claim charts.  One of ordinary skill in the art also would have reasonably expected that such combination of AppletTrap, Aucsmith, Ji '348, Touboul '583, MiSFIT, Touboul '683, Atkinson, McManis, Chu, Härtig, Islam, Kephart, Necula, Chen other references as described in Table 1 and associated claim charts would achieve the desired structure and functionality of performing a hashing function on an incoming Downloadable to compute a Downloadable ID, for such structures and mechanisms were well known in the art and would have been obvious to one of ordinary skill in the art.

To the extent that Finjan argues that any of these references do not satisfy the "retrieving security profile data" limitations, it would have been obvious to modify those references to allow for retrieval of security profile data from an obtained Downloadable, as described in AppletTrap, Aucsmith, Ji '348, Touboul '583, MiSFIT, Touboul '683, Atkinson, McManis, Chu, Härtig, Islam, Kephart, Necula, and Chen. One of ordinary skill in the art would have been motivated to combine AppletTrap, Aucsmith, Ji '348, Touboul '583, MiSFIT, Touboul '683, Atkinson, McManis, Chu, Härtig, Islam, Kephart, Necula, and Chen with one or more other references identified in Table 1 and/or Table 2 and would have reasonably expected that the combination would achieve the intended purpose.  Each reference relates to computer and network security.  A person of ordinary skill in the art looking to create improved computer security methods and products would look to consider solutions implemented in other computer security methods and

products such as those disclosed in AppletTrap, Aucsmith, Ji '348, Touboul '583, MiSFIT, Touboul '683, Atkinson, McManis, Chu, Härtig, Islam, Kephart, Necula, Chen and other references as described in PAN's Invalidity Contentions and associated claim charts. A person of ordinary skill in the art looking to solve this problem would review patents, patent publications and prior art systems in the field of computer and network security such as AppletTrap, Aucsmith, Ji '348, Touboul '583, MiSFIT, Touboul '683, Atkinson, McManis, Chu, Härtig, Islam, Kephart, Necula, Chen and other references as described in PAN's Invalidity Contentions and associated claim charts. One of ordinary skill in the art also would have reasonably expected that such combination of AppletTrap, Aucsmith, Ji '348, Touboul '583, MiSFIT, Touboul '683, Atkinson, McManis, Chu, Härtig, Islam, Kephart, Necula and other references as described in Table 1 and associated claim charts would achieve the desired structure and functionality of retrieving security profile data, for such structures and mechanisms were well known in the art and would have been obvious to one of ordinary skill in the art.

To the extent that Finjan argues that any of these references do not satisfy the "appending" and "transmitting" limitations, including the transmission of a "representation" of a Downloadable, it would have been obvious to modify those references to allow for the appending and transmission of a Downloadable, security profile, and a "representation" of either, as described in AppletTrap, Aucsmith, Ji '348, Touboul '583, MiSFIT, Touboul '683, Atkinson, McManis, Chu, Härtig, Islam, Kephart, Necula, Chen, Levy '147 (*see, e.g.*, 6:28-50), Isaak '247 (*see, e.g.*, 1:16-25, 3:6-12, 4:59-65, Fig. 6), Abadi '370 (*see, e.g.*, 6:51-7:5, 3:47-65), Bahreman (*see, e.g.* at 3), and Hinsley '830 (*see, e.g.*, 2:26-45). One of ordinary skill in the art would have been motivated to combine AppletTrap, Aucsmith, Ji '348, Touboul '583, MiSFIT, Touboul '683, Atkinson, McManis, Chu, Härtig, Islam, Kephart, Necula, Chen, Levy '147 (*see, e.g.*, 6:28-50), Isaak '247 (*see, e.g.*, 1:16-25, 3:6-12, 4:59-65, Fig. 6), Abadi '370 (*see, e.g.*, 6:51-7:5, 3:47-65), Bahreman (*see, e.g.* at 3), and Hinsley '830 (*see, e.g.*, 2:26-45) with one or more other references identified in Table 1 and/or Table 2 and would have reasonably expected that the combination would achieve the intended purpose. Each reference relates to computer and network security. A person of ordinary skill in the art looking to create improved computer security methods and

1    products would look to consider solutions implemented in other computer security methods and

2    products such as those disclosed in AppletTrap, Aucsmith, Ji '348, Touboul '583, MiSFIT,

3    Touboul '683, Atkinson, McManis, Chu, Härtig, Islam, Kephart, Necula, Chen, Levy '147 (*see,*

4    *e.g.*, 6:28-50), Isaak '247 (*see, e.g.*, 1:16-25, 3:6-12, 4:59-65, Fig. 6), Abadi '370 (*see, e.g.*, 6:51-

5    7:5, 3:47-65), Bahreman (*see, e.g.* at 3), and Hinsley '830 (*see, e.g.*, 2:26-45) and other references

6    as described in PAN's Invalidity Contentions and associated claim charts. A person of ordinary

7    skill in the art looking to solve this problem would review patents, patent publications and prior

8    art systems in the field of computer and network security such as AppletTrap, Aucsmith, Ji '348,

9    Touboul '583, MiSFIT, Touboul '683, Atkinson, McManis, Chu, Härtig, Islam, Kephart, Necula,

10   Chen and other references as described in PAN's Invalidity Contentions and associated claim

11   charts. One of ordinary skill in the art also would have reasonably expected that such combination

12   of AppletTrap, Aucsmith, Ji '348, Touboul '583, MiSFIT, Touboul '683, Atkinson, McManis,

13   Chu, Härtig, Islam, Kephart, Necula, Chen and other references as described in Table 1 and

14   associated claim charts would achieve the desired structure and functionality of appending and

15   transmitting Downloadables, associated security profiles and a representation of either, for such

16   structures and mechanisms were well known in the art and would have been obvious to one of

17   ordinary skill in the art.

18        To the extent that Finjan argues that any of these references do not satisfy limitations

19   related to different items which a Downloadable "includes" (such as an applet, active control, and

20   program script), it would have been obvious to modify those references to allow for a

21   Downloadable to include these features, as described in AppletTrap, Aucsmith, Ji '348, Touboul

22   '583, MiSFIT, Touboul '683, Atkinson, McManis, Chu, Härtig, Islam, Kephart, Necula, and

23   Martin. One of ordinary skill in the art would have been motivated to combine AppletTrap,

24   Aucsmith, Ji '348, Touboul '583, MiSFIT, Touboul '683, Atkinson, McManis, Chu, Härtig,

25   Islam, Kephart, Necula, Chen and Martin with one or more other references identified in Table 1

26   and/or Table 2 and would have reasonably expected that the combination would achieve the

27   intended purpose.  Each reference relates to computer and network security. A person of ordinary

28   skill in the art looking to create improved computer security methods and products would look to

54

consider solutions implemented in other computer security methods and products such as those disclosed in AppletTrap, Aucsmith, Ji '348, Touboul '583, MiSFIT, Touboul '683, Atkinson, McManis, Chu, Härtig, Islam, Kephart, Necula, Chen, Martin and other references as described in PAN's Invalidity Contentions and associated claim charts. A person of ordinary skill in the art looking to solve this problem would review patents, patent publications and prior art systems in the field of computer and network security such as AppletTrap, Aucsmith, Ji '348, Touboul '583, MiSFIT, Touboul '683, Atkinson, McManis, Chu, Härtig, Islam, Kephart, Necula, Chen, Martin and other references as described in PAN's Invalidity Contentions and associated claim charts. One of ordinary skill in the art also would have reasonably expected that such combination of AppletTrap, Aucsmith, Ji '348, Touboul '583, MiSFIT, Touboul '683, Atkinson, McManis, Chu, Härtig, Islam, Kephart, Necula, Chen, Martin and other references as described in Table 1 and associated claim charts would achieve the desired structure and functionality of including commonly used types of files for carrying malware in a Downloadable, for such structures and mechanisms were well known in the art and would have been obvious to one of ordinary skill in the art.

To the extent that Finjan argues that any of these references do not satisfy limitations related to wherein suspicious computer operations include calls made to an operating system, a file system, a network system, and to memory, it would have been obvious to modify those references to allow for a Downloadable to include these features, as described in AppletTrap, Aucsmith, Ji '348, Touboul '583, MiSFIT, Touboul '683, Atkinson, McManis, Chu, Härtig, Islam, Kephart, Necula, and Swimmer.  One of ordinary skill in the art would have been motivated to combine AppletTrap, Aucsmith, Ji '348, Touboul '583, MiSFIT, Touboul '683, Atkinson, McManis, Chu, Härtig, Islam, Kephart, Necula, Chen, and Swimmer with one or more other references identified in Table 1 and/or Table 2 and would have reasonably expected that the combination would achieve the intended purpose. Each reference relates to computer and network security.  A person of ordinary skill in the art looking to create improved computer security methods and products would look to consider solutions implemented in other computer security methods and products such as those disclosed in AppletTrap, Aucsmith, Ji '348, Touboul '583,

MiSFIT, Touboul '683, Atkinson, McManis, Chu, Härtig, Islam, Kephart, Necula, Chen, Swimmer and other references as described in PAN's Invalidity Contentions and associated claim charts.  A person of ordinary skill in the art looking to solve this problem would review patents, patent publications and prior art systems in the field of computer and network security such as AppletTrap, Aucsmith, Ji '348, Touboul '583, MiSFIT, Touboul '683, Atkinson, McManis, Chu, Härtig, Islam, Kephart, Necula '774, Chen, Swimmer and other references as described in PAN's Invalidity Contentions and associated claim charts. One of ordinary skill in the art also would have reasonably expected that such combination of AppletTrap, Aucsmith, Ji '348, Touboul '583, MiSFIT, Touboul '683, Atkinson, McManis, Chu, Härtig, Islam, Kephart, Necula, Chen, Swimmer and other references as described in Table 1 and associated claim charts would achieve the desired structure and functionality of including suspicious computer operations which include calls made to an operating system, a file system, a network system, and to memory (common and well-known types of malicious attacks), for such structures and mechanisms were well known in the art and would have been obvious to one of ordinary skill in the art.

To the extent that Finjan argues that any of these references do not satisfy limitations related to wherein the Downloadable security profile data includes a URL from where the Downloadable originated, it would have been obvious to modify those references to allow for a Downloadable to include these features, as described in AppletTrap, Aucsmith, Ji '348, Touboul '583, MiSFIT, Touboul '683, Atkinson, McManis, Chu, Härtig, Islam, Kephart, and Necula. One of ordinary skill in the art would have been motivated to combine AppletTrap, Aucsmith, Ji '348, Touboul '583, MiSFIT, Touboul '683, Atkinson, McManis, Chu, Härtig, Islam, Kephart, and Necula with one or more other references identified in Table 1 and/or Table 2 and would have reasonably expected that the combination would achieve the intended purpose.  Each reference relates to computer and network security.  A person of ordinary skill in the art looking to create improved computer security methods and products would look to consider solutions implemented in other computer security methods and products such as those disclosed in AppletTrap, Aucsmith, Ji '348, Touboul '583, MiSFIT, Touboul '683, Atkinson, McManis, Chu, Härtig, Islam, Kephart, Necula and other references as described in PAN's Invalidity Contentions and

1   associated claim charts.  A person of ordinary skill in the art looking to solve this problem would

2   review patents, patent publications and prior art systems in the field of computer and network

3   security such as AppletTrap, Aucsmith, Ji '348, Touboul '583, MiSFIT, Touboul '683, Atkinson,

4   McManis, Chu, Härtig, Islam, Kephart, Necula and other references as described in PAN's

5   Invalidity Contentions and associated claim charts.  One of ordinary skill in the art also would

6   have reasonably expected that such combination of AppletTrap, Aucsmith, Ji '348, Touboul '583,

7   MiSFIT, Touboul '683, Atkinson, McManis, Chu, Härtig, Islam, Kephart, Necula and other

8   references as described in Table 1 and associated claim charts would achieve the desired structure

9   and functionality of including suspicious computer operations which include a URL as a means of

10  designating the origin of a Downloadable, for such structures and mechanisms were well known

11  in the art and would have been obvious to one of ordinary skill in the art.

12      To the extent that Finjan argues that any of these references do not satisfy limitations

13  related to wherein the Downloadable security profile data includes a digital certificate, it would

14  have been obvious to modify those references to allow for a Downloadable to include these

15  features, as described in AppletTrap, Aucsmith, Ji '348, Touboul '583, MiSFIT, Touboul '683,

16  Atkinson, McManis, Chu, Härtig, Islam, Kephart, Necula, and Chen. One of ordinary skill in the

17  art would have been motivated to combine AppletTrap, Aucsmith, Ji '348, Touboul '583,

18  MiSFIT, Touboul '683, Atkinson, McManis, Chu, Härtig, Islam, Kephart, Necula, and Chen with

19  one or more other references identified in Table 1 and/or Table 2 and would have reasonably

20  expected that the combination would achieve the intended purpose.  Each reference relates to

21  computer and network security.  A person of ordinary skill in the art looking to create improved

22  computer security methods and products would look to consider solutions implemented in other

23  computer security methods and products such as those disclosed in AppletTrap, Aucsmith, Ji

24  '348, Touboul '583, MiSFIT, Touboul '683, Atkinson, McManis, Chu, Härtig, Islam, Kephart,

25  Necula, Chen and other references as described in PAN's Invalidity Contentions and associated

26  claim charts.  A person of ordinary skill in the art looking to solve this problem would review

27  patents, patent publications and prior art systems in the field of computer and network security

28  such as AppletTrap, Aucsmith, Ji '348, Touboul '583, MiSFIT, Touboul '683, Atkinson,

McManis, Chu, Härtig, Islam, Kephart, Necula, Chen and other references as described in PAN's Invalidity Contentions and associated claim charts. One of ordinary skill in the art also would have reasonably expected that such combination of AppletTrap, Aucsmith, Ji '348, Touboul '583, MiSFIT, Touboul '683, Atkinson, McManis, Chu, Härtig, Islam, Kephart, Necula, Chen and other references as described in Table 1 and associated claim charts would achieve the desired structure and functionality of including Downloadable security profile data which includes a digital certificate, for such structures and mechanisms were well known in the art and would have been obvious to one of ordinary skill in the art.

PAN reserves the right to rely on additional combinations.

### 4. Patent L.R. 3-3(c) Invalidity Contentions Charts

Pursuant to Patent Local Rule 3-3(c), charts identifying specifically where and how in each alleged item of prior art each limitation of each asserted claim is found are attached as Exhibits B-1 to B-14.  Where elements are disclosed at multiple locations within a single item of prior art, PAN has not necessarily identified every iteration of every disclosure.

### 5. Patent L.R. 3-3(d) Invalidity Based on 35 U.S.C. § 101, Indefiniteness Under 35 U.S.C. § 112(2), or Enablement or Written Description Under 35 U.S.C. § 112(1)

Based on PAN's present understanding of the Asserted Claims and/or PAN's apparent construction of the claims, as set forth in Finjan's Infringement Contentions, and subject to the reservation of rights above, PAN lists below the grounds upon which the Asserted Claims of the '780 Patent are invalid based on 35 U.S.C. § 101, indefiniteness, lack of written description, and/or lack of enablement under 35 U.S.C. § 112.  To the extent PAN's identified grounds for invalidity are based on Finjan's apparent constructions, PAN is not adopting Finjan's apparent constructions, nor is PAN agreeing that any of Finjan's apparent constructions are correct. Moreover, Finjan's deficient Infringement Contentions fail to provide PAN with adequate notice as to Finjan's infringement theories.  PAN reserves all rights to advance claim construction positions different from Finjan's apparent constructions.

PAN's contentions that the following claims are invalid under 35 U.S.C. § 112 are made in the alternative, and do not constitute, and should not be interpreted as, admissions regarding

58

the construction or scope of the Asserted Claims, or that any of the Asserted Claims are not anticipated or rendered obvious by any prior art.  Where PAN identifies a claim term in an independent claim as being invalid, PAN further contends any asserted dependent claim is invalid based on the presence of the same term.

In light of the deficiencies in Finjan's Infringement Contentions, PAN reserves the right to amend, modify, and/or supplement these Contentions to further identify bases for invalidity under 35 U.S.C. § 112.  PAN's Contentions shall not be construed as an admission that any claim construction advanced by PAN in this case is in any way inconsistent, flawed or erroneous.  Nor should these Contentions prevent PAN from advancing claim construction and/or non-infringement positions in lieu of, or in addition to, invalidity positions.  Further, PAN's Contentions shall not be construed as an admission of or acquiescence to Finjan's purported construction of the claim language or of other positions advanced by Finjan during the course of this litigation.  PAN's Contentions under 35 U.S.C. § 112 may depend, in part, on the Court's claim construction, as well as Finjan's asserted claim scope.  Consequently, PAN only identifies herein the issues under 35 U.S.C. § 112 of which it is presently aware based on PAN's present understanding of the asserted claims and/or Finjan's apparent construction of the claims, as set forth in Finjan's Infringement Contentions.  PAN reserves all rights to advance claim construction positions different from Finjan's apparent constructions and to amend these contentions as it better understands Finjan's construction of the claims during the claim construction process.

### a.      Unpatentable Subject Matter Under 35 U.S.C. § 101

The Asserted Claims of the '926 Patent are directed to non-statutory subject matter, under 35 U.S.C. § 101, because the claims are directed to merely creating a file identifier, looking up data based on the identifier, and appending the data to the file, which is an abstract concept. The recitation of generic computer components does not amount to significantly more than the abstract idea itself. *See CyberSource Corp. v. Retail Decisions, Inc*., 654 F.3d 1366, 1370 (Fed. Cir. 2011) (reasoning that the use of the Internet to verify a credit card transaction does not meaningfully add to the abstract idea of verifying the transaction). Additionally, claims 8-14 and

59

22-28 are directed to software per se.  Therefore, the Asserted Claims of the '926 Patent are not directed to patent-eligible subject matter under 35 U.S.C. §101, and are invalid.

### b.       Indefiniteness Under 35 U.S.C. § 112(2)

"[A] patent is invalid for indefiniteness if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention."  *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 901 (2014).

The following claim limitations of the Asserted Claims are invalid based on indefiniteness.

- "Downloadable"
- "Downloadable identifier"
- "receiver"
- "database manager"
- "file appender"
- "transmitter"

### c.       Lack of Written Description Under 35 U.S.C. § 112(1)

To satisfy the written description requirement, the description must "clearly allow persons of ordinary skill in the art to recognize that [the inventor] invented what is claimed."  *Ariad Pharm., Inc. v. Eli Lilly and Co*., 598 F.3d 1336, 1351 (Fed. Cir. 2010) (internal citation omitted). The test for sufficiency is whether the disclosure of the application relied upon reasonably conveys to those skilled in the art that the inventor had possession of the claimed subject matter as of the filing date.  *Id.*

The test requires an objective inquiry into the four corners of the specification from the perspective of a POSITA.  Based on that inquiry, the specification must describe an invention understandable to that skilled artisan and show that the inventor actually invented the invention claimed.  "Whether the written description requirement is satisfied is a fact-based inquiry that will depend on the nature of the claimed invention, and the knowledge of one skilled in the art at the time an invention is made and a patent application is filed."  *Carnegie Mellon Univ. v. Hoffmann*

60

1   *La Roche Inc.*, 541 F.3d 1115, 1122 (Fed. Cir. 2008) (internal citation omitted).  Actual

2   "possession" or reduction to practice outside of the specification is not enough.  Instead, the

3   specification itself must demonstrate possession.

4   　　While the written description requirement does not demand any particular form of

5   disclosure, a description that merely renders the invention obvious does not satisfy the

6   requirement.  *Lockwood v. Am. Airlines*, 107 F.3d 1565, 1571-72 (Fed. Cir. 1997).

7   　　The following claim limitations of the Asserted Claims are invalid for lack of written

8   description:

9   　　　　• Finjan's apparent construction of "append" to mean "link" is not adequately

10   　　　　described in the '926 patent, and therefore these claims are invalid for lack of

11   　　　　written description support.  The same goes for related claims directed to

12   　　　　transporting a "representation" of a retrieved Downloadable along with security

13   　　　　profile data.

14   ### d.　　Lack of Enablement Under 35 U.S.C. § 112(1)

15   　　To satisfy the enablement requirement of 35 U.S.C § 112, the disclosure "must teach those

16   skilled in the art how to make and use the full scope of the claimed invention without 'undue

17   experimentation.'"  *Genentech, Inc. v. Novo Nordisk, A/S*, 108 F.3d 1361, 1365 (Fed. Cir. 1997)

18   (citations omitted).  Moreover, "[i]t is the specification, not the knowledge of one skilled in the

19   art, that must supply the novel aspects of [the] invention in order to constitute adequate

20   enablement." *Id.* at 1366.  The Federal Circuit has enumerated several factors to consider in

21   determining whether a disclosure would require "undue experimentation":  "(1) the quantity of

22   experimentation necessary, (2) the amount of direction or guidance presented, (3) the presence or

23   absence of working examples, (4) the nature of the invention, (5) the state of the prior art, (6) the

24   relative skill of those in the art, (7) the predictability or unpredictability of the art, and (8) the

25   breadth of the claims." *In re Wands*, 858 F.2d 731, 737 (Fed. Cir. 1988).

26   　　The following claim limitations of the Asserted Claims are invalid for lack of enablement:

27   　　　　• Finjan's apparent construction of "append" to mean "link" is not adequately

28   　　　　described in the '926 patent, and therefore these claims are invalid for lack of

61

1    enablement.  The same goes for related claims directed to transporting a

2    "representation" of a retrieved Downloadable along with security profile data.

3

4    **D.    Invalidity of the '633 Patent**

5        **1.    Priority Date**

6        Finjan alleges that the Asserted Claim of the '633 Patent is entitled to the priority date of

7    January 29, 1997.  Finjan's Initial Disclosure of Asserted Claims and Infringement Contentions,

8    at 20.  Finjan apparently alleges that the Asserted Claim of the '633 Patent is entitled to the

9    benefit of the filing date of the nonprovisional application that later matured into U.S. Patent No.

10   6,167,520, which was filed on January 29, 1997.  Neither the '520 Patent, nor any of the other

11   patents in the ancestry of the '633 Patent, however, discloses the subject matter claimed by the

12   Asserted Claim of '633 Patent.  Thus, based on the information presently available to PAN, the

13   earliest date to which the '633 Patent may claim priority is June 22, 2005, the date on which the

14   application that issued as the '633 Patent was filed, or May 17, 2001, the date on which the

15   application that later issued as the '822 Patent was filed, or May 17, 2000, the date of provisional

16   application No. 60/205,591.

17       **2.    Patent L.R. 3-3(a) Identification of Prior Art**

18       Subject to the reservations of rights above, PAN identifies prior art that anticipates and/or

19   renders obvious the Asserted Claim of the '633 Patent.  The prior art references identified are also

20   relevant to show the state of the art and reasons and motivations for making improvements,

21   additions, modifications, and combinations.

22       In addition, PAN incorporates the prior art, claims charts, and invalidity theories

23   disclosed, listed and/or asserted by any entity during the course of other litigation (past,

24   present/ongoing, or future) or patent office challenges (either reexaminations or IPRs).  Finjan has

25   failed to timely update its production of these materials, which has prejudiced PAN in its

26   preparation of these contentions.  PAN reserves the right to rely on any prior art reference, prior

27   art combination, motivation to combine, invalidity theory, and/or materials disclosed in these

28   other proceedings.  At least the following prior art references anticipate and/or render obvious the

Asserted Claim of the '633 Patent, and/or illustrate the state of the art at the time of the alleged

invention:

a.        **Patent Prior Art**

| Ref. No. | Publication No. | Short Name | Filing Date | Publication Date | Priority Date |
|---|---|---|---|---|---|
| 1. | U.S. Patent No. 6,253,370 | "Abadi" | December 1, 1997 | June 26, 2001 | December 1, 1997 |
| 2. | U.S. Patent No. 5,440,723 | "Arnold" | January 19, 1993 | August 8, 1995 | January 19, 1993 |
| 3. | U.S. Patent No. 6,275,938 | "Bond" | August 28, 1997 | August 14, 2001 | August 28, 1997 |
| 4. | U.S. Patent No. 6,065,118 | "Bull" | September 24, 1996 | May 6, 2000 | September 24, 1996 |
| 5. | U.S. Patent No. 5,974,549 | "Golan" | March 27, 1997 | October 26, 1999 | March 27, 1997 |
| 6. | WO 98/31124 | "Hanson" | January 10, 1997 | July 16, 1998 | January 10, 1997 |
| 7. | U.S. Patent No. 5,983,348 | "Ji '348" | September 10, 1997 | November 9, 1999 | September 10, 1997 |
| 8. | U.S. Patent No. 5,623,600 | "Ji '600" | September 26, 1995 | April 22, 1997 | September 26, 1995 |
| 9. | U.S. Patent No. 5,940,590 | "Lynne" | May 31, 1997 | August 17, 1999 | May 31, 1997 |
| 10. | U.S. Patent No. 6,088,803 | "Tso" | March 27, 1997 | July 11, 2000 | March 27, 1997 |
| 11. | U.S Patent No. 5,987,610 | "Franczek" | February 12, 1998 | November 16, 1999 | February 12, 1998 |

b.        **Non-Patent Publication Prior Art**

| Ref. No. | Publication | Short Name | Publication Date |
|---|---|---|---|
| 1. | Ülfar Erlingsson, Fred B. Schneider, "SASI Enforcement of Security Policy: A Retrospective," NSPW '99: Proceedings of the 1999 workshop on New security paradigms, 87-95 (Sept. 1999) | "Erlingsson" | September 1999 |

| Ref. No. | Publication | Short Name | Publication Date |
|---|---|---|---|
| 2. | Brant Hashii et al. "Securing Systems Against External Programs," IEEE Internet Computing, 35-45 (Nov./Dec. 1998) | "Hashii" | November/ December 1998 |
| 3. | Andrew Herbert, "Secure Mobile Code Management; Enabling Java for the Enterprise" (May, 1997) | "Herbert" | May 1997 |
| 4. | Dahlia Malkhi, Michael Reiter, and Avi Rubin,"The Design and Implementation of a Java Playground," DIMACS Technical Report 97-64, September, 1997 | "Malkhi" | September 1997 |
| 5. | Raju Pandey, Brant Hashii, "Providing Fine-Grained Access Control for Mobile Programs Through Binary Editing," DARPA, Technical Report TR-98-08 (1998) | "Pandey" | 1998 |
| 6. | David M. Martin Jr., Sivaramakrishnan Rajagopalan, Aviel D. Rubin, "Blocking Java Applets at the Firewall," Proceedings of the 1997 Symposium on Network and Distributed System Security (Feb. 10-11, 1997), IEEE, pp. 16-26 | "Rubin" | February 1997 |
| 7. | Insik Shin and John C. Mitchell, "Java Bytecode Modification and Applet Security," Stanford CS Tech Report, 1998 | "Shin" | 1998 |
| 8. | Emin Gun Sirer, Robert Grimm, Arthur J. Gregory, and Brian N. Bershad, "Design and implementation of a distributed virtual machine for networked computers," SOSP '99 Proceedings of the Seventeenth ACM Symposium on Operating Systems Principles, 202-216 (Dec. 1999) | "Sirer" | December 1999 |

PAN additionally identifies and relies on each of the additional patent or publication references that describe or are otherwise related to the prior art systems identified below.

### c.     System or Product Prior Art

PAN sets forth numerous prior art products or systems in the table below.  For such prior art products and systems, PAN has identified, based on its current knowledge, approximate dates on which such products were sold, on sale, made, known, and/or used in the U.S.  PAN's investigation of prior art products and systems is ongoing.  Further information and/or documents regarding such products and their sale, offer for sale, and use dates will be produced or disclosed

1   as it is (they are) obtained in discovery or otherwise becomes available to PAN.  PAN reserves

2   the right to amend, modify, and/or supplement these Contentions based on further and subsequent

3   investigation and discovery.  Additionally, PAN reserves the right to rely on the documents

4   identified below as standalone prior art references separate from the prior art system or product

5   they describe.

6        PAN additionally identifies and relies on any system, product, or public knowledge or use

7   that embodies or otherwise incorporates any of the prior art patents and publications listed

8   above.PAN reserves the right to identify and rely on systems that represent different versions or

9   are otherwise related variations of the identified products and systems.

| Ref No. | System Name | Short Name | Date Made, Known, Used, Sold, or On Sale |
|---------|-------------|------------|-------------------------------------------|
| 1. | InterScan VirusWall | "VirusWall" | 1996 |
| 2. | InterScan AppletTrap | "AppletTrap" | March 1999 |
| 3. | Janus System | "Janus System" | 1999 |

**(i)      InterScan VirusWall**

     VirusWall was sold, on sale, made, known, and/or used at least by 1996.  The features,

operations, and functionality of VirusWall are described throughout the VirusWall documentation

produced in this case.  These documents include:

- TFS00000001 – TFS00005934

- TM-FIN000001 – TM-FIN000563

**(ii)      InterScan AppletTrap**

     AppletTrap was sold, on sale, made, known, and/or used at least by March 1999.  The

features, operations, and functionality of AppletTrap are described throughout the AppletTrap

documentation produced in this case.  These documents include:

- TFS00000001 – TFS00005934

- TM-FIN000001 – TM-FIN000563

### (iii)    Janus System

Janus System was sold, on sale, made, known, and/or used at least by 1999.  The features, operations, and functionality of Janus System are described throughout the Janus System documentation produced in this case.  These documents include:

- David A. Wagner, "Janus: an Approach for Confinement of Untrusted Applications," EECS Dept., University of California, Berkeley, Technical Report No. UCB/CSD-99-1056 (1999)

### d.    35 U.S.C. § 102(f)

PAN reserves the right to assert that the Asserted Claim are invalid under 35 U.S.C. § 102(f) in the event PAN obtains additional evidence that the inventors named in any of the Asserted Patents did not invent the subject matter claimed therein.  Should PAN obtain such evidence, it will provide the name of the person(s) from whom and the circumstances under which the alleged invention or any part of it was derived.

### e.    35 U.S.C. § 102(g)

PAN reserves the right to assert that the Asserted Claim is invalid under 35 U.S.C. § 102(g) in the event PAN obtains additional evidence that any of the inventions claimed in the Asserted Patents were made in the United States by another inventor who had not abandoned, suppressed or concealed it, prior to the alleged invention by the applicant of the Asserted Patents. Should PAN obtain such evidence, it will provide the identities of the persons or entities involved in and the circumstances surrounding the making the inventions before the patent applicants.

### 3.    Patent L.R. 3-3(b) Anticipation and Obviousness

The references in Table 1, alone or in combination with the knowledge of one skilled in the art, anticipate or render obvious the Asserted Claim of the '633 Patent.

**Table 1: Prior Art References: Anticipation and Primary/Secondary Obviousness References**

| Short Name | Prior Art Under | Priority Date | Exemplary Claim Chart |
|---|---|---|---|
| Abadi | 102(a), (b), (e) | December 1, 1997 | D-1 |

66

| Short Name | Prior Art Under | Priority Date | Exemplary Claim Chart |
|---|---|---|---|
| AppletTrap | 102(a), (b) | March 1999 | D-2 |
| Arnold | 102(a), (b) | January 19, 1993 | D-3 |
| Bond | 102(a), (b), (e) | August 28, 1997 | D-4 |
| Bull | 102(a), (b), (e) | September 24, 1996 | D-5 |
| Erlingsson | 102(a), (b) | September 1999 | D-6 |
| Golan | 102(a), (b), (e) | March 27, 1997 | D-7 |
| Hanson | 102(a), (b) | January 10, 1997 | D-8 |
| Hashii | 102(a), (b) | November/December 1998 | D-9 |
| Herbert | 102(a), (b) | May 1997 | D-10 |
| Ji '348 | 102(a), (b), (e) | September 10, 1997 | D-11 |
| Lynne | 102(a), (b), (e) | May 31, 1997 | D-12 |
| Malkhi | 102(a), (b) | September 1997 | D-13 |
| Pandey | 102(a), (b) | 1998 | D-14 |
| Rubin | 102(a), (b) | February 1997 | D-15 |
| Shin | 102(a), (b) | 1998 | D-16 |
| Sirer | 102(a), (b) | December 1999 | D-17 |
| Tso | 102(a), (b), (e) | March 27, 1997 | D-18 |
| VirusWall | 102(a), (b) | 1996 | D-19 |
| Janus System | 102(a), (b) | 1999 | D-20 |

In addition, each of the references in Table 1 above and Table 2 below, either alone, in view of the knowledge of a POSITA, and/or in combination with one or more references in Table 1 or Table 2, renders obvious the Asserted Claim of the '633 Patent.

**Table 2: Additional Prior Art References: Obviousness**

| Short Name | Prior Art Under | Priority Date |
|---|---|---|
| Ji '600 | 102(a), (b), (e) | September 26, 1995 |
| Franczek | 102(a), (b), (e) | February 12, 1998 |

In addition, PAN incorporates by reference each and every prior art reference of record in the prosecution of the '633 Patent and any related patent or application, the statements made therein by the applicant, as well as the prior art discussed in the specification.

The cited portions of each prior art reference are exemplary and representative of the content of the reference, and should be understood in the context of the reference as a whole, as understood by one of ordinary skill in the art. To the extent a prior art reference is deemed not to anticipate or render obvious a claim as noted in the attached charts for failing to disclose, teach, or suggest one or more limitations of a claim, that claim would nonetheless have been obvious to one of ordinary skill in the art at the time of the alleged invention over the reference itself or by the combination of the reference with one or more other references disclosing the missing claim limitations or the knowledge of a person having ordinary skill in the art.

### a. Prior Art Combinations

The Asserted Claim of the '633 Patent is obvious based on one or more combinations of the prior art references above. The sections below provide motivations to combine the prior art references above. These obviousness combinations are provided in the alternative to PAN's anticipation and single-reference obviousness contentions and are not to be construed to suggest that any reference included in the combination is not itself anticipatory or would not render the Asserted Claim obvious in light of the knowledge of a person having ordinary skill in the art. PAN also hereby incorporates by reference the prior art, invalidity grounds, and expert testimony submitted in connection with any petitions for *inter partes* review of the '633 Patent.

### b. Motivation to Combine

A POSITA would have been motivated to combine the preceding references for any number of reasons, such as the following exemplary reasons. Teachings, suggestions,

motivations, and/or reasons to modify any of the references and/or to combine any two or more of the references can come from many sources, including the prior art, common knowledge, common sense, predictability, expectations, industry trends, design incentives or need, market demand or pressure, market forces, obviousness to try, the nature of the problem faced, and/or knowledge possessed by a POSITA.

Although a patent claim may be invalidated based on a teaching-suggestion-motivation ("TSM") rationale—*i.e.*, that some teaching, suggestion, or motivation in the prior art that would have led one of ordinary skill to modify the prior-art reference or to combine prior-art reference teachings to arrive at the claimed invention—the Supreme Court identified additional rationales in *KSR Int'l Co. v. Teleflex, Inc.*, 550 U.S. 398 (2007).  The following of these rationales apply here:

> (A) the Asserted Claim combines prior-art elements according to known methods to yield predictable results;
>
> (B) the Asserted Claim involves the simple substitution of one known element for another to obtain predictable results;
>
> (C) the Asserted Claim involves the use of a known technique to improve similar devices (methods, or products) in the same way;
>
> (D) the Asserted Claim applies a known technique to a known device (method, or product) ready for improvement to yield predictable results;
>
> (E) the Asserted Claim involves combinations of prior-art references that would have been "obvious to try"'—a person of ordinary skill in the art could have reached the Asserted Claim by choosing from a finite number of identified, predictable solutions, with a reasonable expectation of success;
>
> (F) the Asserted Claim is simply variations of work from one field of endeavor or a different one that would have been prompted based on design incentives or other market forces because the variations were predictable to one of ordinary skill in the art.

*See KSR*, 550 U.S. at 415-18 (rejecting the Federal Circuit's "rigid" application of the teaching, suggestion, or motivation to combine test, and instead espousing an "expansive and flexible" approach).  Indeed, the Supreme Court held that a person of ordinary skill in the art is "a person of ordinary creativity, not an automaton" and "in many cases a person of ordinary skill in the art will be able to fit the teachings of multiple patents together like pieces of a puzzle." *KSR*, 550 U.S. at 420-21.

69

1    Thus, even in the absence of a specific teaching, suggestion, or motivation to combine

2    references, the Asserted Claim here is obvious and therefore invalid.  Each of the cited references

3    or devices is in the same field, making it obvious for someone of ordinary skill in the art to

4    identify and combine elements from these references.  One of ordinary skill in the art would have

5    recognized that improvements could be achieved by combining or modifying prior-art references

6    that described such improvements.  Each of the above prior-art references describes devices or

7    methods that were known to offer such improvements, and, accordingly, one of ordinary skill in

8    the art would have been motivated to combine or modify the references as identified in each of

9    the combinations above.

10    Indeed, given that the references are in the same field, one of ordinary skill would have

11    readily, with predictable results, taken teachings from one reference and applied them to other

12    references.  As referenced above, multiple prior art references teach or suggest the concepts

13    claimed in the '633 Patent.  To the extent Finjan argues that any concepts claimed in the

14    '633 Patent were not contained in any prior art reference, it would, at a minimum, have been

15    obvious to adapt each reference to include the concept or combine it with other references that

16    disclose the concept.  In addition, each of the constituent techniques described here was well

17    known to those of ordinary skill in the art, and understood to be among a menu of available

18    design choices for improving network security.  This is one of many motivations to combine the

19    above references.

20    Furthermore, because methods and systems related to a computer gateway for an intranet

21    of computers were well known and studied extensively prior to the '633 Patent priority date,

22    common industry knowledge supplied a reason to combine the above references with each other.

23    Each combination would have produced no unexpected results and would simply represent a

24    known alternative to one of ordinary skill in the art.  This is a further motivation to combine any

25    of the above references.

26    The below sections further address particular reasons to combine the above references.

27    The below should not be construed as an admission that there is any value to the alleged invention

28    of the '633 Patent.  As discussed previously, these contentions are based largely on how Finjan is

70

1    apparently construing the Asserted Claim in its Initial Infringement Contentions, which is an

2    incorrect and overbroad interpretation of the alleged invention of the '633 Patent.  Accordingly,

3    to the extent the below refers to benefits of certain elements or industry trends towards these

4    elements, this is not an admission that the alleged invention of the '633 Patent provides any

5    benefits—to the contrary, properly construed and compared to the prior art, the '633 Patent

6    provides no benefits.  Likewise, to the extent the below refers to substituting elements, this is not

7    an admission that the elements subject to the substitution are in any way similar, *e.g.*, perform the

8    same function, in the same way, to reach the same result.

9        The various elements of the Asserted Claim were well-known in the prior art at the time

10   of the alleged invention, and the combination was obvious to one of ordinary skill in the art.  The

11   combination simply (a) combines prior-art elements according to known methods to yield

12   predictable results; (b) involves the simple substitution of one known element for another to

13   obtain predictable results; (c) involves the use of a known technique to improve similar devices

14   (methods, or products) in the same way; (d) applies a known technique to a known device

15   (method, or product) ready for improvement to yield predictable results; (e) involves

16   combinations of prior-art references that would have been "obvious to try"—a person of ordinary

17   skill in the art could have reached the Asserted Claim by choosing from a finite number of

18   identified, predictable solutions, with a reasonable expectation of success; and/or (f) would have

19   been prompted by known work, based on design incentives or other market forces, because such

20   variations were predictable to one of ordinary skill in the art.

21       Moreover, the Supreme Court has stated that a motivation to combine may be simply

22   "common sense" and that "familiar items may have obvious uses beyond their primary purposes,

23   and in many cases a person of ordinary skill will be able to fit the teachings of multiple patents

24   together like pieces of a puzzle."  *KSR*, 550 U.S. at 420.  Indeed, the Supreme Court held that it is

25   sufficient that a combination of elements was "obvious to try," holding that, "[w]hen there is a

26   design need or market pressure to solve a problem and there are a finite number of identified,

27   predictable solutions, a person of ordinary skill has good reason to pursue the known options

28   within his or her technical grasp."  *Id.* at 421.  Here, all the claim elements are common sense and

1   are easily fit together by one of ordinary skill in the art.

2          While not necessary, a motivation to combine may also be found in the references

3   themselves.  One of ordinary skill in the art would have been motivated to combine a reference

4   that refers to, or otherwise explicitly invites combination with, another reference.  Where the

5   references cited herein have such an explicit invitation to combine, that invitation would have

6   motivated one of ordinary skill in the art to combine any such references.

7                          **c.      Exemplary Obviousness Combinations**

8          The accompanying claim charts explain how different portions of each prior art reference

9   discloses each limitation of the Asserted Claim.  If Finjan argues that any particular prior art

10  reference lacks any feature, a POSITA as of the '633 Patent's priority date would at a minimum

11  have been motivated to modify the reference to include the allegedly missing feature, or to

12  combine it with other references that include that feature, as discussed in the previous section.

13         To the extent Finjan asserts that the prior art in Table 1 does not disclose these claim

14  limitations, it would have been obvious to combine or modify each of the prior art references in

15  Table 1 and Table 2 with one or more prior art references in Table 1 and/or Table 2 to create

16  computer-based methods, systems and products wherein the system comprises distinct software

17  modules, wherein the distinct software modules comprise an information recommunicator and a

18  mobile code executor, and causes mobile protection code to be executed by the mobile code

19  executor at a downloadable-information destination such that one or more operations of the

20  executable code at the destination, if attempted, will be processed by the mobile protection code,

21  as discussed in Abadi, AppletTrap, Arnold, Bond, Bull, Erlingsson, Golan, Hanson, Hashii,

22  Herbert, Ji '348, Lynne, Malkhi, Pandey, Rubin, Shin, Sirer, Tso, VirusWall, and/or the Janus

23  System.  Exemplary combinations are provided below but do not limit the potential invalidating

24  combinations disclosed in these contentions or that PAN intends to rely on.

25         To the extent that Finjan argues that the prior art references are missing the causing

26  mobile protection code to be executed by the mobile code executor at a downloadable-

27  information destination element, it would have been obvious to modify those references as

28  described in Abadi, AppletTrap, Arnold, Bond, Bull, Erlingsson, Golan, Hanson, Hashii, Herbert,

72

1   Ji '348, Lynne, Malkhi, Pandey, Rubin, Shin, Sirer, Tso, VirusWall, and/or the Janus System.

2   One of ordinary skill in the art would have been motivated to combine Abadi, AppletTrap,

3   Arnold, Bond, Bull, Erlingsson, Golan, Hanson, Hashii, Herbert, Ji '348, Lynne, Malkhi, Pandey,

4   Rubin, Shin, Sirer, Tso, VirusWall, and/or the Janus System with one or more other references

5   identified in Table 1 and would have reasonably expected that the combination would achieve the

6   intended purpose.  Each reference relates to computer and network security.  A person of ordinary

7   skill in the art looking to create improved computer security methods and products would look to

8   consider solutions implemented in other computer security methods and products such as those

9   disclosed in at least Abadi, AppletTrap, Arnold, Bond, Bull, Erlingsson, Golan, Hanson, Hashii,

10  Herbert, Ji '348, Lynne, Malkhi, Pandey, Rubin, Shin, Sirer, Tso, VirusWall, and/or the Janus

11  System and other references as described in PAN's Invalidity Contentions and associated claim

12  charts.  A person of ordinary skill in the art looking to solve this problem would review patents,

13  patent publications and prior art systems in the field of computer and network security such as

14  Abadi, AppletTrap, Arnold, Bond, Bull, Erlingsson, Golan, Hanson, Hashii, Herbert, Ji '348,

15  Lynne, Malkhi, Pandey, Rubin, Shin, Sirer, Tso, VirusWall, and/or the Janus System and other

16  references as described in PAN's Invalidity Contentions and associated claim charts.

17       One of ordinary skill in the art also would have reasonably expected that such

18  combination of Abadi, AppletTrap, Arnold, Bond, Bull, Erlingsson, Golan, Hanson, Hashii,

19  Herbert, Ji '348, Lynne, Malkhi, Pandey, Rubin, Shin, Sirer, Tso, VirusWall, and/or the Janus

20  System and other references as described in Table 1 and associated claim charts would achieve

21  the desired structure and functionality of causing mobile protection code to be executed by the

22  mobile code executor at a downloadable-information destination because such a combination

23  would constitute combining prior art elements according to known methods to yield predictable

24  results, and a simple substitution of one known element for another to obtain predictable results.

25  Such a combination also would have been simply applying a known technique to a known method

26  ready for improvement to yield predictable results and would have been obvious to try.

27       PAN reserves the right to rely on additional combinations.

28

73

1

### 4.    Patent L.R. 3-3(c) Invalidity Contentions Charts

2

Pursuant to Patent Local Rule 3-3(c), charts identifying specifically where and how in

3

each alleged item of prior art each limitation of each asserted claim is found are attached as

4

Exhibits D-1 to D-20.  Where elements are disclosed at multiple locations within a single item of

5

prior art, PAN has not necessarily identified every iteration of every disclosure.

6

### 5.    Patent L.R. 3-3(d) Invalidity Based on 35 U.S.C. § 101, Indefiniteness Under 35 U.S.C. § 112(2), or Enablement or Written Description Under 35 U.S.C. § 112(1)

7

8

Based on PAN's present understanding of the Asserted Claim and/or PAN's apparent

9

construction of the claims, as set forth in Finjan's Infringement Contentions, and subject to the

10

reservation of rights above, PAN lists below the grounds upon which the Asserted Claim of the

11

'633 Patent is invalid based on 35 U.S.C. § 101, indefiniteness, lack of written description, and/or

12

lack of enablement under 35 U.S.C. § 112.  To the extent PAN's identified grounds for invalidity

13

are based on Finjan's apparent constructions, PAN is not adopting Finjan's apparent

14

constructions, nor is PAN agreeing that any of Finjan's apparent constructions are correct.

15

Moreover, Finjan's deficient Infringement Contentions fail to provide PAN with adequate notice

16

as to Finjan's infringement theories.  PAN reserves all rights to advance claim construction

17

positions different from Finjan's apparent constructions.

18

PAN's contentions that the following claims are invalid under 35 U.S.C. § 112 are made

19

in the alternative, and do not constitute, and should not be interpreted as, admissions regarding

20

the construction or scope of the Asserted Claim, or that the Asserted Claim is not anticipated or

21

rendered obvious by any prior art.  Where PAN identifies a claim term in an independent claim as

22

being invalid, PAN further contends any asserted dependent claim is invalid based on the

23

presence of the same term.

24

In light of the deficiencies in Finjan's Infringement Contentions, PAN reserves the right to

25

amend, modify, and/or supplement these Contentions to further identify bases for invalidity under

26

35 U.S.C. § 112.  PAN's Contentions shall not be construed as an admission that any claim

27

construction advanced by PAN in this case is in any way inconsistent, flawed or erroneous.  Nor

28

should these Contentions prevent PAN from advancing claim construction and/or non-

74

infringement positions in lieu of, or in addition to, invalidity positions.  Further, PAN's

Contentions shall not be construed as an admission of or acquiescence to Finjan's purported

construction of the claim language or of other positions advanced by Finjan during the course of

this litigation.  PAN's Contentions under 35 U.S.C. § 112 may depend, in part, on the Court's

claim construction, as well as Finjan's asserted claim scope.  Consequently, PAN only identifies

herein the issues under 35 U.S.C. § 112 of which it is presently aware based on PAN's present

understanding of the asserted claims and/or Finjan's apparent construction of the claims, as set

forth in Finjan's Infringement Contentions.  PAN reserves all rights to advance claim

construction positions different from Finjan's apparent constructions and to amend these

contentions as it better understands Finjan's construction of the claims during the claim

construction process.

### a.      Unpatentable Subject Matter Under 35 U.S.C. § 101

The Asserted Claim of the '633 Patent is directed to non-statutory subject matter, under 35

U.S.C. § 101, because the claims are directed to merely determining if some receiving

information has executable code and providing mobile protection code in response thereto, which

is an abstract concept.  The recitation of generic computer components does not amount to

significantly more than the abstract idea itself.  *See CyberSource Corp. v. Retail Decisions, Inc*.,

654 F.3d 1366, 1370 (Fed. Cir. 2011) (reasoning that the use of the Internet to verify a credit card

transaction does not meaningfully add to the abstract idea of verifying the transaction).

Therefore, the Asserted Claim of the '633 Patent is not directed to patent-eligible subject matter

under 35 U.S.C. §101, and is invalid.

### b.      Indefiniteness Under 35 U.S.C. § 112(2)

"[A] patent is invalid for indefiniteness if its claims, read in light of the specification

delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those

skilled in the art about the scope of the invention."  *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572

U.S. 898, 901 (2014).

The following claim limitations of the Asserted Claim are invalid based on indefiniteness.

- "downloadable-information"

75

1

2

3

4

5

6

7

8

9

- "downloadable information-destination"

- "mobile protection code"

- Claim 14 is indefinite for claiming mixed statutory classes (i.e., both apparatus and method). *See IPXL Holdings v. Amazon.com, Inc.*, 430 F.3d 1377 (Fed. Cir. 2005):

  o "A computer program product, comprising a computer usable medium having a computer readable program code therein, the computer readable program code adapted to be executed for computer security, the method comprising: providing a system, . . ."

10

### c.      Lack of Written Description Under 35 U.S.C. § 112(1)

11      To satisfy the written description requirement, the description must "clearly allow persons

12  of ordinary skill in the art to recognize that [the inventor] invented what is claimed." *Ariad*

13  *Pharm., Inc. v. Eli Lilly and Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010) (internal citation omitted).

14  The test for sufficiency is whether the disclosure of the application relied upon reasonably

15  conveys to those skilled in the art that the inventor had possession of the claimed subject matter

16  as of the filing date. *Id.*

17      The test requires an objective inquiry into the four corners of the specification from the

18  perspective of a POSITA.  Based on that inquiry, the specification must describe an invention

19  understandable to that skilled artisan and show that the inventor actually invented the invention

20  claimed.  "Whether the written description requirement is satisfied is a fact-based inquiry that will

21  depend on the nature of the claimed invention, and the knowledge of one skilled in the art at the

22  time an invention is made and a patent application is filed." *Carnegie Mellon Univ. v. Hoffmann*

23  *La Roche Inc.*, 541 F.3d 1115, 1122 (Fed. Cir. 2008) (internal citation omitted).  Actual

24  "possession" or reduction to practice outside of the specification is not enough.  Instead, the

25  specification itself must demonstrate possession.

26      While the written description requirement does not demand any particular form of

27  disclosure, a description that merely renders the invention obvious does not satisfy the

28  requirement. *Lockwood v. Am. Airlines*, 107 F.3d 1565, 1571-72 (Fed. Cir. 1997).

1   Finjan's apparent claim constructions render the Asserted Claim extremely broad in scope

2   and well beyond the purported inventions described in the '633 Patent.  Finjan is attempting to

3   construe the '633 Patent in an idiosyncratic manner that is entirely inconsistent with the written

4   specifications and prosecution histories of the '633 Patent as well as with the understanding of

5   one of ordinary skill in the art at the time the applications that issued as the '633 Patent were

6   filed.  These allegations are inconsistent with the plain language of the claims, the supporting

7   description, and the prosecution history.

8   The following claim limitations of the Asserted Claim are invalid for lack of written

9   description:

10   • "mobile protection code"

11   • "downloadable information-destination"

12   ### d.   Lack of Enablement Under 35 U.S.C. § 112(1)

13   To satisfy the enablement requirement of 35 U.S.C § 112, the disclosure "must teach those

14   skilled in the art how to make and use the full scope of the claimed invention without 'undue

15   experimentation.'"  *Genentech, Inc. v. Novo Nordisk, A/S*, 108 F.3d 1361, 1365 (Fed. Cir. 1997)

16   (citations omitted).  Moreover, "[i]t is the specification, not the knowledge of one skilled in the

17   art, that must supply the novel aspects of [the] invention in order to constitute adequate

18   enablement." *Id.* at 1366.  The Federal Circuit has enumerated several factors to consider in

19   determining whether a disclosure would require "undue experimentation":  "(1) the quantity of

20   experimentation necessary, (2) the amount of direction or guidance presented, (3) the presence or

21   absence of working examples, (4) the nature of the invention, (5) the state of the prior art, (6) the

22   relative skill of those in the art, (7) the predictability or unpredictability of the art, and (8) the

23   breadth of the claims." *In re Wands*, 858 F.2d 731, 737 (Fed. Cir. 1988).

24   Finjan's apparent claim constructions render the Asserted Claim extremely broad in scope

25   and well beyond the purported inventions described in the '633 Patent.  Finjan is attempting to

26   construe the '633 Patent in an idiosyncratic manner that is entirely inconsistent with the written

27   specifications and prosecution histories of the '633 Patent as well as with the understanding of

28   one of ordinary skill in the art at the time the applications that issued as the '633 Patent were

77

filed.  These allegations are inconsistent with the plain language of the claims, the supporting description, and the prosecution history.

The following claim limitations of the Asserted Claim are invalid for lack of enablement:

- "mobile protection code"
- "downloadable information-destination"

### E.     Invalidity of the '154 Patent

#### 1.     Priority Date

Finjan alleges that the Asserted Claim of the '154 Patent is entitled to the priority date of December 12, 2005.  Finjan's Initial Disclosure of Asserted Claims and Infringement Contentions, at 20.  Finjan apparently alleges that the Asserted Claims of the '154 Patent are entitled to the benefit of the filing date of the application that matured into U.S. Patent No. 7,757,289, which was filed on December 12, 2005.  Finjan, however, failed to properly claim priority to this patent when it filed the application for the '154 patent.  Finjan's certificate of correction where it claimed that the entire delayed claim to priority was "unintentional" is insufficient to reset the priority date for the '154 patent to December 12, 2005.  Thus, based on the information presently available to PAN, the earliest date to which the '154 patent may claim priority is June 14, 2010.

#### 2.     Patent L.R. 3-3(a) Identification of Prior Art

Subject to the reservations of rights above, PAN identifies prior art that anticipates and/or renders obvious the Asserted Claim of the '154 Patent.  The prior art references identified are also relevant to show the state of the art and reasons and motivations for making improvements, additions, modifications, and combinations.

In addition, PAN incorporates the prior art, claims charts, and invalidity theories disclosed, listed and/or asserted by any entity during the course of other litigation (past, present/ongoing, or future) or patent office challenges (either reexaminations or IPRs).  Finjan has failed to timely update its production of these materials, which has prejudiced PAN in its preparation of these contentions.  PAN reserves the right to rely on any prior art reference, prior art combination, motivation to combine, invalidity theory, and/or materials disclosed in these

78

other proceedings.  At least the following prior art references anticipate and/or render obvious the

Asserted Claim of the '154 Patent, and/or illustrate the state of the art at the time of the alleged

invention:

### a.      Patent Prior Art

| Ref. No. | Publication No. | Short Name | Filing Date | Publication Date | Priority Date |
|---|---|---|---|---|---|
| 1. | U.S. Pat. Pub. No. 2005/0108562 | "Khazan" | June 18, 2003 | May 19, 2005 | June 18, 2003 |
| 2. | U.S. Pat. No. 5,974,549 | "Gilad" | March 27, 1997 | October 26, 1999 | March 27, 1997 |
| 3. | U.S. Pat. No. 5,983,348 | "Ji 348" | September 10, 1997 | November 9, 1999 | September 10, 1997 |
| 4. | U.S. Pat. No. 5,623,600 | "Ji 600" | September 26, 1995 | April 22, 1997 | September 26, 1995 |
| 5. | U.S. Pat. No. 7,487,540 | "Shipp" | August 23, 2004 | February 3, 2009 | April 25, 2003 |
| 6. | U.S. Pat. No. 7,694,328 | "Joshi" | October 21, 2004 | April 6, 2010 | October 21, 2003 |
| 7. | U.S. Pat. No. 8,225,392 | "Dubrovsky" | July 15, 2005 | July 17, 2012 | July 15, 2005 |
| 8. | U.S. Pat. No. 7,865,961 | "Hasegawa" | June 28, 2004 | January 4, 2011 | February 23, 2004 |
| 9. | U.S. Pat. No. 8,244,910 | "Davis" | July 14, 2004 | August 14, 2012 | July 14, 2004 |
| 10. | U.S. Pat. No. 8,281,401 | "Pennington" | January 24, 2006 | October 2, 2012 | January 25, 2005 |
| 11. | U.S. Pat. Pub. No. 2007/0113282 | "Ross" | November 17, 2005 | May 17, 2007 | November 17, 2005 |
| 12. | U.S. Pat. Pub. No. 2009/0193497 | "Kikuchi" | November 25, 2008 | July 30, 2009 | January 25, 2008 |
| 13. | U.S. Pat. No. 8,424,090 | "Kang" | March 25, 2009 | April 16, 2013 | July 23, 2008 |
| 14. | U.S. Pat. No. 8,522,350 | "Davenport" | November 19, 2009 | August 27, 2013 | November 19, 2008 |

79

| Ref. No. | Publication No. | Short Name | Filing Date | Publication Date | Priority Date |
|---|---|---|---|---|---|
| 15. | U.S. Pat. Pub. No. 2008/0083012 | "Yu" | June 20, 2007 | April 3, 2008 | June 20, 2007 |
| 16. | U.S. Pat. Pub. No. 2002/0066022 | "Calder" | November 29, 2000 | May 30, 2002 | November 29, 2000 |
| 17. | U.S. Pat. No. 7,437,362 | "Ben-Natan" | November 25, 2003 | October 13, 2008 | November 25, 2003 |
| 18. | U.S. Pat. No. 8,220,055 | "Kennedy" | February 6, 2004 | July 10, 2012 | February 6, 2004 |

**b.      Non-Patent Publication Prior Art**

| Ref. No. | Publication | Short Name | Publication Date |
|---|---|---|---|
| 1. | "Mobile Code Security by Java Bycode Instrumentation," 2001 | "Chander" | 2001 |
| 2. | "Flexible Policy-Directed Code Safety," 1998 Data Fellows Corp. | "Evans" | May 1999 |
| 3. | "Java Bytecode Modication and Applet Security" | "Shin" | 1998 |
| 4. | "Design and implementation of a distributed virtual machine for networked computers" | "Sirer" | December 1999 |

PAN additionally identifies and relies on each of the additional patent or publication

references that describe or are otherwise related to the prior art systems identified below.

**c.      System or Product Prior Art**

PAN sets forth numerous prior art products or systems in the table below.  For such prior

art products and systems, PAN has identified, based on its current knowledge, approximate dates

on which such products were sold, on sale, made, known, and/or used in the U.S.  PAN's

investigation of prior art products and systems is ongoing.  Further information and/or documents

regarding such products and their sale, offer for sale, and use dates will be produced or disclosed

as it is (they are) obtained in discovery or otherwise becomes available to PAN.  PAN reserves

the right to amend, modify, and/or supplement these Contentions based on further and subsequent

investigation and discovery. Additionally, PAN reserves the right to rely on the documents identified below as standalone prior art references separate from the prior art system or product they describe.

PAN additionally identifies and relies on any system, product, or public knowledge or use that embodies or otherwise incorporates any of the prior art patents and publications listed above. PAN reserves the right to identify and rely on systems that represent different versions or are otherwise related variations of the identified products and systems.

| Ref No. | System Name | Short Name | Date Made, Known, Used, Sold, or On Sale |
|---------|-------------|------------|------------------------------------------|
| 1. | InterScan VirusWall | "VirusWall" | 1996 |
| 2. | InterScan AppletTrap | "AppletTrap" | March 1999 |
| 3. | Check Point Firewall-1 | "Firewall-1" | 1999 |
| 4. | Janus System | "Janus System" | 1999 |

(i)      InterScan VirusWall

VirusWall was sold, on sale, made, known, and/or used at least by 1996. The features, operations, and functionality of VirusWall are described throughout the VirusWall documentation produced in this case. These documents include:

- TFS00000001 – TFS00005934
- TM-FIN000001 – TM-FIN000563

(ii)      InterScan AppletTrap

AppletTrap was sold, on sale, made, known, and/or used at least by March 1999. The features, operations, and functionality of AppletTrap are described throughout the AppletTrap documentation produced in this case. These documents include:

- TFS00000001 – TFS00005934
- TM-FIN000001 – TM-FIN000563

(iii)      Check Point Firewall-1

The first version of Firewall-1 was sold, on sale, made, known, and/or used at least by

81

1993 and other versions were available before 2005.  PAN is in progress of obtaining additional
information regarding Firewall-1 from Check Point and will update its contentions with respect to
Firewall-1.

**(iv)      Janus System**

Janus System was sold, on sale, made, known, and/or used at least by 1999.  The features,
operations, and functionality of Janus System are described throughout the Janus System
documentation produced in this case.  These documents include:

- David A. Wagner, "Janus: an Approach for Confinement of Untrusted Applications,"
  EECS Dept., University of California, Berkeley, Technical Report No. UCB/CSD-99-
  1056 (1999).

**d.      35 U.S.C. § 102(f)**

PAN reserves the right to assert that the Asserted Claim are invalid under 35 U.S.C.
§ 102(f) in the event PAN obtains additional evidence that the inventors named in any of the
Asserted Patents did not invent the subject matter claimed therein.  Should PAN obtain such
evidence, it will provide the name of the person(s) from whom and the circumstances under
which the alleged invention or any part of it was derived.

**e.      35 U.S.C. § 102(g)**

PAN reserves the right to assert that the Asserted Claim is invalid under 35 U.S.C.
§ 102(g) in the event PAN obtains additional evidence that any of the inventions claimed in the
Asserted Patents were made in the United States by another inventor who had not abandoned,
suppressed or concealed it, prior to the alleged invention by the applicant of the Asserted Patents.
Should PAN obtain such evidence, it will provide the identities of the persons or entities involved
in and the circumstances surrounding the making the inventions before the patent applicants.

**3.      Patent L.R. 3-3(b) Anticipation and Obviousness**

The references in Table 1, alone or in combination with the knowledge of one skilled in
the art, anticipate or render obvious the Asserted Claim of the '154 Patent.

**Table 1: Prior Art References: Anticipation and Primary/Secondary Obviousness
References**

82

| Short Name | Prior Art Under | Priority Date | Exemplary Claim Chart |
|---|---|---|---|
| AppletTrap | 102(a), (b) | March 1999 | F-1 |
| Ross | 102(e) | November 17, 2005 | F-2 |
| Janus System | 102(a), (b) | 1999 | F-3 |
| Chander | 102(a), (b) | 2001 | F-4 |
| Shipp | 102(e) | April 25, 2003 | F-5 |
| Sirer | 102(a), (b) | December 1999 | F-6 |
| Davis | 102(a), (e) | July 14, 2004 | F-7 |
| Khazan | 102(a), (b), (e) | June 18, 2003 | F-8 |

In addition, each of the references in Table 1 above and Table 2 below, either alone, in view of the knowledge of a POSITA, and/or in combination with one or more references in Table 1 or Table 2, renders obvious the Asserted Claim of the '154 Patent.

**Table 2: Additional Prior Art References: Obviousness**

| Short Name | Prior Art Under | Priority Date |
|---|---|---|
| InterScan VirusWall | 102(a), (b) | 1996 |
| Check Point Firewall-1 | 102(a), (b) | 1999 |
| Gilad | 102(a), (b), (e) | March 27, 1997 |
| Ji 348 | 102(a), (b), (e) | September 10, 1997 |
| Ji 600 | 102(a), (b), (e) | September 26, 1995 |
| Joshi | 102(e) | October 21, 2004 |
| Dubrovsky | 102(e) | July 15, 2005 |
| Hasegawa | 102(e) | June 28, 2004 |
| Pennington | 102(e) | January 24, 2006 |
| Kikuchi | 102(e) | November 25, 2008 |
| Kang | 102(e) | March 25, 2009 |

| Short Name | Prior Art Under | Priority Date |
|------------|-----------------|---------------|
| Davenport | 102(e) | November 19, 2009 |
| Yu | 102(e) | June 20, 2007 |
| Calder | 102(a), (b), (e) | November 29, 2000 |
| Ben-Natan | 102(a), (b), (e) | November 25, 2003 |
| Kennedy | 102(e) | February 6, 2004 |
| Evans | 102(a), (b) | May 1999 |
| Shin | 102(a), (b) | 1998 |

In addition, PAN incorporates by reference each and every prior art reference of record in the prosecution of the '154 Patent and any related patent or application, the statements made therein by the applicant, as well as the prior art discussed in the specification.

The cited portions of each prior art reference are exemplary and representative of the content of the reference, and should be understood in the context of the reference as a whole, as understood by one of ordinary skill in the art. To the extent a prior art reference is deemed not to anticipate or render obvious a claim as noted in the attached charts for failing to disclose, teach, or suggest one or more limitations of a claim, that claim would nonetheless have been obvious to one of ordinary skill in the art at the time of the alleged invention over the reference itself or by the combination of the reference with one or more other references disclosing the missing claim limitations or the knowledge of a person having ordinary skill in the art.

### a.      Prior Art Combinations

The Asserted Claim of the '154 Patent is obvious based on one or more combinations of the prior art references above. The sections below provide motivations to combine the prior art references above. These obviousness combinations are provided in the alternative to PAN's anticipation and single-reference obviousness contentions and are not to be construed to suggest that any reference included in the combination is not itself anticipatory or would not render the Asserted Claim obvious in light of the knowledge of a person having ordinary skill in the art. PAN also hereby incorporates by reference the prior art, invalidity grounds, and expert testimony

submitted in connection with any petitions for *inter partes* review of the '154 Patent.

### b. Motivation to Combine

A POSITA would have been motivated to combine the preceding references for any number of reasons, such as the following exemplary reasons. Teachings, suggestions, motivations, and/or reasons to modify any of the references and/or to combine any two or more of the references can come from many sources, including the prior art, common knowledge, common sense, predictability, expectations, industry trends, design incentives or need, market demand or pressure, market forces, obviousness to try, the nature of the problem faced, and/or knowledge possessed by a POSITA.

Although a patent claim may be invalidated based on a teaching-suggestion-motivation ("TSM") rationale—*i.e.*, that some teaching, suggestion, or motivation in the prior art that would have led one of ordinary skill to modify the prior-art reference or to combine prior-art reference teachings to arrive at the claimed invention—the Supreme Court identified additional rationales in *KSR Int'l Co. v. Teleflex, Inc.*, 550 U.S. 398 (2007). The following of these rationales apply here:

> (A) the Asserted Claim combines prior-art elements according to known methods to yield predictable results;
>
> (B) the Asserted Claim involves the simple substitution of one known element for another to obtain predictable results;
>
> (C) the Asserted Claim involves the use of a known technique to improve similar devices (methods, or products) in the same way;
>
> (D) the Asserted Claim applies a known technique to a known device (method, or product) ready for improvement to yield predictable results;
>
> (E) the Asserted Claim involves combinations of prior-art references that would have been "obvious to try"'—a person of ordinary skill in the art could have reached the Asserted Claim by choosing from a finite number of identified, predictable solutions, with a reasonable expectation of success;
>
> (F) the Asserted Claim is simply variations of work from one field of endeavor or a different one that would have been prompted based on design incentives or other market forces because the variations were predictable to one of ordinary skill in the art.

*See KSR*, 550 U.S. at 415-18 (rejecting the Federal Circuit's "rigid" application of the teaching, suggestion, or motivation to combine test, and instead espousing an "expansive and flexible"

approach).  Indeed, the Supreme Court held that a person of ordinary skill in the art is "a person of ordinary creativity, not an automaton" and "in many cases a person of ordinary skill in the art will be able to fit the teachings of multiple patents together like pieces of a puzzle." *KSR*, 550 U.S. at 420-21.

Thus, even in the absence of a specific teaching, suggestion, or motivation to combine references, the Asserted Claim here is obvious and therefore invalid.  Each of the cited references or devices is in the same field, making it obvious for someone of ordinary skill in the art to identify and combine elements from these references.  One of ordinary skill in the art would have recognized that improvements could be achieved by combining or modifying prior-art references that described such improvements.  Each of the above prior-art references describes devices or methods that were known to offer such improvements, and, accordingly, one of ordinary skill in the art would have been motivated to combine or modify the references as identified in each of the combinations above.

Indeed, given that the references are in the same field, one of ordinary skill would have readily, with predictable results, taken teachings from one reference and applied them to other references.  As referenced above, multiple prior art references teach or suggest the concepts claimed in the '154 Patent.  To the extent Finjan argues that any concepts claimed in the '154 Patent were not contained in any prior art reference, it would, at a minimum, have been obvious to adapt each reference to include the concept or combine it with other references that disclose the concept.  In addition, each of the constituent techniques described here was well known to those of ordinary skill in the art, and understood to be among a menu of available design choices for improving network security.  This is one of many motivations to combine the above references.

Furthermore, because methods and systems related to a computer gateway for an intranet of computers were well known and studied extensively prior to the '154 Patent priority date, common industry knowledge supplied a reason to combine the above references with each other.  Each combination would have produced no unexpected results and would simply represent a known alternative to one of ordinary skill in the art.  This is a further motivation to combine any

1   of the above references.

2   The below sections further address particular reasons to combine the above references.

3   The below should not be construed as an admission that there is any value to the alleged invention

4   of the '154 Patent.  As discussed previously, these contentions are based largely on how Finjan is

5   apparently construing the Asserted Claim in its Initial Infringement Contentions, which is an

6   incorrect and overbroad interpretation of the alleged invention of the '154 Patent.  Accordingly,

7   to the extent the below refers to benefits of certain elements or industry trends towards these

8   elements, this is not an admission that the alleged invention of the '154 Patent provides any

9   benefits—to the contrary, properly construed and compared to the prior art, the '154 Patent

10  provides no benefits.  Likewise, to the extent the below refers to substituting elements, this is not

11  an admission that the elements subject to the substitution are in any way similar, *e.g.*, perform the

12  same function, in the same way, to reach the same result.

13  The various elements of the Asserted Claim were well-known in the prior art at the time

14  of the alleged invention, and the combination was obvious to one of ordinary skill in the art.  The

15  combination simply (a) combines prior-art elements according to known methods to yield

16  predictable results; (b) involves the simple substitution of one known element for another to

17  obtain predictable results; (c) involves the use of a known technique to improve similar devices

18  (methods, or products) in the same way; (d) applies a known technique to a known device

19  (method, or product) ready for improvement to yield predictable results; (e) involves

20  combinations of prior-art references that would have been "obvious to try"—a person of ordinary

21  skill in the art could have reached the Asserted Claim by choosing from a finite number of

22  identified, predictable solutions, with a reasonable expectation of success; and/or (f) would have

23  been prompted by known work, based on design incentives or other market forces, because such

24  variations were predictable to one of ordinary skill in the art.

25  Moreover, the Supreme Court has stated that a motivation to combine may be simply

26  "common sense" and that "familiar items may have obvious uses beyond their primary purposes,

27  and in many cases a person of ordinary skill will be able to fit the teachings of multiple patents

28  together like pieces of a puzzle."  *KSR*, 550 U.S. at 420.  Indeed, the Supreme Court held that it is

87

sufficient that a combination of elements was "obvious to try," holding that, "[w]hen there is a design need or market pressure to solve a problem and there are a finite number of identified, predictable solutions, a person of ordinary skill has good reason to pursue the known options within his or her technical grasp." *Id*. at 421.  Here, all the claim elements are common sense and are easily fit together by one of ordinary skill in the art.

While not necessary, a motivation to combine may also be found in the references themselves.  One of ordinary skill in the art would have been motivated to combine a reference that refers to, or otherwise explicitly invites combination with, another reference.  Where the references cited herein have such an explicit invitation to combine, that invitation would have motivated one of ordinary skill in the art to combine any such references.

### c.      Exemplary Obviousness Combinations

The accompanying claim charts explain how different portions of each prior art reference discloses each limitation of the Asserted Claim.  If Finjan argues that any particular prior art reference lacks any feature, a POSITA as of the '154 Patent's priority date would at a minimum have been motivated to modify the reference to include the allegedly missing feature, or to combine it with other references that include that feature, as discussed in the previous section.

To the extent Finjan asserts that the prior art in Table 1 does not disclose these claim limitations, it would have been obvious to combine or modify each of the prior art references in Table 1 and Table 2 with one or more prior art references in Table 1 and/or Table 2 to create computer-based methods, systems and products.  Exemplary combinations are provided below but do not limit the potential invalidating combinations disclosed in these contentions or that PAN intends to rely on.

For example, to the extent Finjan argues that any of AppletTrap, Ross, Janus System, Chander, Shipp, Sirer, Khazan, and/or Davis do not disclose or suggest the use of modified inputs as recited in the asserted claims, it would have been obvious to modify the techniques and/or systems described in these references with the teachings of any of these references or the references listed in Table 2.  For example, this feature is taught in Ben-Natan (*see, e.g.*, 10:37-48), Davenport (*see, e.g.*, 2:9:38), Calder, and Golan (*see, e.g.*, Abstract, 2:12-27, 6:63-7:9).  To

88

1   the extent Finjan argues that any of AppletTrap, Ross, Janus System, Chander, Shipp, Sirer,

2   Khazan, and/or Davis do not disclose or suggest the use of modified inputs as recited in the

3   asserted claims, it would have been obvious to modify the techniques and/or systems described in

4   these references with the teachings of any of these references or the references listed in Table 2.

5   For example, this feature is taught in Golan (*see, e.g.*, Abstract, 2:12-27, 6:63-7:9, 9:1-13) and

6   Calder.  To the extent Finjan argues that any of AppletTrap, Ross, Janus System, Chander, Shipp,

7   Sirer, Khazan, and/or Davis do not disclose or suggest the use of a security computer, it would

8   have been obvious to modify the techniques and/or systems described in these references with the

9   teachings of any of these references or the references listed in Table 2.  For example, this feature

10  is taught in Tso (*see, e.g.,* 3:2-10), Calder, and Golan (*see, e.g.,* Abstract, 2:12-27, 6:63-7:9, 9:1-

11  13).

12          PAN reserves the right to rely on additional combinations.

### 4.      Patent L.R. 3-3(c) Invalidity Contentions Charts

14          Pursuant to Patent Local Rule 3-3(c), charts identifying specifically where and how in

15  each alleged item of prior art each limitation of each asserted claim is found are attached as

16  Exhibits F-1 to F-8.  Where elements are disclosed at multiple locations within a single item of

17  prior art, PAN has not necessarily identified every iteration of every disclosure.

18
### 5.      Patent L.R. 3-3(d) Invalidity Based on 35 U.S.C. § 101, Indefiniteness Under 35 U.S.C. § 112(2), or Enablement or Written Description Under 35 U.S.C. § 112(1)
19

20          Based on PAN's present understanding of the Asserted Claim and/or PAN's apparent

21  construction of the claims, as set forth in Finjan's Infringement Contentions, and subject to the

22  reservation of rights above, PAN lists below the grounds upon which the Asserted Claim of the

23  '154 Patent is invalid based on 35 U.S.C. § 101, indefiniteness, lack of written description, and/or

24  lack of enablement under 35 U.S.C. § 112.  To the extent PAN's identified grounds for invalidity

25  are based on Finjan's apparent constructions, PAN is not adopting Finjan's apparent

26  constructions, nor is PAN agreeing that any of Finjan's apparent constructions are correct.

27  Moreover, Finjan's deficient Infringement Contentions fail to provide PAN with adequate notice

28  as to Finjan's infringement theories.  PAN reserves all rights to advance claim construction

89

1    positions different from Finjan's apparent constructions.

2         PAN's contentions that the following claims are invalid under 35 U.S.C. § 112 are made

3    in the alternative, and do not constitute, and should not be interpreted as, admissions regarding

4    the construction or scope of the Asserted Claim, or that the Asserted Claim is not anticipated or

5    rendered obvious by any prior art.  Where PAN identifies a claim term in an independent claim as

6    being invalid, PAN further contends any asserted dependent claim is invalid based on the

7    presence of the same term.

8         In light of the deficiencies in Finjan's Infringement Contentions, PAN reserves the right to

9    amend, modify, and/or supplement these Contentions to further identify bases for invalidity under

10   35 U.S.C. § 112.  PAN's Contentions shall not be construed as an admission that any claim

11   construction advanced by PAN in this case is in any way inconsistent, flawed or erroneous.  Nor

12   should these Contentions prevent PAN from advancing claim construction and/or non-

13   infringement positions in lieu of, or in addition to, invalidity positions.  Further, PAN's

14   Contentions shall not be construed as an admission of or acquiescence to Finjan's purported

15   construction of the claim language or of other positions advanced by Finjan during the course of

16   this litigation.  PAN's Contentions under 35 U.S.C. § 112 may depend, in part, on the Court's

17   claim construction, as well as Finjan's asserted claim scope.  Consequently, PAN only identifies

18   herein the issues under 35 U.S.C. § 112 of which it is presently aware based on PAN's present

19   understanding of the asserted claims and/or Finjan's apparent construction of the claims, as set

20   forth in Finjan's Infringement Contentions.  PAN reserves all rights to advance claim

21   construction positions different from Finjan's apparent constructions and to amend these

22   contentions as it better understands Finjan's construction of the claims during the claim

23   construction process.

24                  a.      **Unpatentable Subject Matter Under 35 U.S.C. § 101**

25        The Asserted Claims of the '154 Patent re directed to non-statutory subject matter, under

26   35 U.S.C. § 101, because the claims are directed to merely determining if some receiving

27   information has executable code and providing mobile protection code in response thereto, which

28   is an abstract concept.  The recitation of generic computer components does not amount to

90

significantly more than the abstract idea itself.  *See CyberSource Corp. v. Retail Decisions, Inc*., 654 F.3d 1366, 1370 (Fed. Cir. 2011) (reasoning that the use of the Internet to verify a credit card transaction does not meaningfully add to the abstract idea of verifying the transaction). Additionally, claims 1, 2, 7, and 7 are directed to software per se.  Therefore, the Asserted Claim of the '154 Patent is not directed to patent-eligible subject matter under 35 U.S.C. §101, and is invalid.

### b.      Indefiniteness Under 35 U.S.C. § 112(2)

"[A] patent is invalid for indefiniteness if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention."  *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 901 (2014).  Under Finjan's apparent interpretation of the asserted claims, the recited "content received over a network" is the same thing as the "input" that is used with the "first function call" and the "second function call."  Yet the claims require that the "content" includes the "input."  Finjan's contradiction in its application of the asserted claims cause them to be indefinite.   Additionally, the following claim limitations of the Asserted Claim are invalid based on indefiniteness.

- "safe"
- "content"
- "input"
- "content processor"
- "transmitter"
- "receiver"

### c.      Lack of Written Description Under 35 U.S.C. § 112(1)

To satisfy the written description requirement, the description must "clearly allow persons of ordinary skill in the art to recognize that [the inventor] invented what is claimed."  *Ariad Pharm., Inc. v. Eli Lilly and Co*., 598 F.3d 1336, 1351 (Fed. Cir. 2010) (internal citation omitted). The test for sufficiency is whether the disclosure of the application relied upon reasonably conveys to those skilled in the art that the inventor had possession of the claimed subject matter

91

1   as of the filing date. *Id.*

2         The test requires an objective inquiry into the four corners of the specification from the

3   perspective of a POSITA.  Based on that inquiry, the specification must describe an invention

4   understandable to that skilled artisan and show that the inventor actually invented the invention

5   claimed.  "Whether the written description requirement is satisfied is a fact-based inquiry that will

6   depend on the nature of the claimed invention, and the knowledge of one skilled in the art at the

7   time an invention is made and a patent application is filed." *Carnegie Mellon Univ. v. Hoffmann*

8   *La Roche Inc.*, 541 F.3d 1115, 1122 (Fed. Cir. 2008) (internal citation omitted).  Actual

9   "possession" or reduction to practice outside of the specification is not enough.  Instead, the

10   specification itself must demonstrate possession.

11         While the written description requirement does not demand any particular form of

12   disclosure, a description that merely renders the invention obvious does not satisfy the

13   requirement. *Lockwood v. Am. Airlines*, 107 F.3d 1565, 1571-72 (Fed. Cir. 1997).  Under

14   Finjan's apparent interpretation of the Asserted Claims, they are invalid for lacking written

15   description support.  Finjan seems to interpret the claims as encompassing receiving "content"

16   that is also "input" for the "first function" and the "second function" that are called with the

17   "input."  But this concept is not disclosed anywhere in the specification.

18         **d.    Lack of Enablement Under 35 U.S.C. § 112(1)**

19         To satisfy the enablement requirement of 35 U.S.C § 112, the disclosure "must teach those

20   skilled in the art how to make and use the full scope of the claimed invention without 'undue

21   experimentation.'" *Genentech, Inc. v. Novo Nordisk, A/S*, 108 F.3d 1361, 1365 (Fed. Cir. 1997)

22   (citations omitted).  Moreover, "[i]t is the specification, not the knowledge of one skilled in the

23   art, that must supply the novel aspects of [the] invention in order to constitute adequate

24   enablement." *Id.* at 1366.  The Federal Circuit has enumerated several factors to consider in

25   determining whether a disclosure would require "undue experimentation":  "(1) the quantity of

26   experimentation necessary, (2) the amount of direction or guidance presented, (3) the presence or

27   absence of working examples, (4) the nature of the invention, (5) the state of the prior art, (6) the

28   relative skill of those in the art, (7) the predictability or unpredictability of the art, and (8) the

breadth of the claims." *In re Wands*, 858 F.2d 731, 737 (Fed. Cir. 1988).

Under Finjan's apparent interpretation of the asserted claims, they are invalid for lacking enablement.  Finjan seems to interpret the claims as encompassing receiving "content" that is also "input" for the "first function" and the "second function" that are called with the "input."  But the specification fails to provide any explanation for how a person of ordinary skill in the art could implement a system where the received "content" includes and is the same thing as the "input" used to call the "first function" and the "second function."

### F.     Invalidity of the '408 Patent

#### 1.     Priority Date

Finjan alleges that each of the Asserted Claims of the '408 Patent is entitled to the priority date of August 30, 2004, the filing date of Appl. No. 10/930,884.  PAN agrees that the Asserted Claims of the '408 Patent are not entitled to an earlier priority date.

#### 2.     Patent L.R. 3-3(a) Identification of Prior Art

Subject to the reservations of rights above, PAN identifies prior art that anticipates and/or renders obvious the Asserted Claims of the '408 Patent.  The prior art references identified are also relevant to show the state of the art and reasons and motivations for making improvements, additions, modifications, and combinations.

In addition, PAN incorporates the prior art, claims charts, and invalidity theories disclosed, listed and/or asserted by any entity during the course of other litigation (past, present/ongoing, or future) or patent office challenges (either reexaminations or IPRs).  Finjan has failed to timely update its production of these materials, which has prejudiced PAN in its preparation of these contentions.  PAN reserves the right to rely on any prior art reference, prior art combination, motivation to combine, invalidity theory, and/or materials disclosed in these other proceedings.  At least the following prior art references anticipate and/or render obvious the Asserted Claims of the '408 Patent, and/or illustrate the state of the art at the time of the alleged invention:

#### a.     Patent Prior Art

93

| Ref. No. | Publication No. | Short Name | Filing Date | Publication Date | Priority Date |
|---|---|---|---|---|---|
| 1. | U.S. Patent No. 6,636,945 | "Chandnani" | July 14, 2000 | December 22, 2009 | July 14, 2000 |
| 2. | U.S. Provisional Application No. 60/156,872 | "Huang" | September 30, 1999 | November 22, 2005 | September 30, 1999 |
| 3. | U.S. Patent No. 5,860,011 | "Kolawa" | February 29, 1996 | January 12, 1999 | February 29, 1996 |
| 4. | U.S. Patent No. 7,398,553 | "Li" | October 30, 2000 | July 8, 2008 | October 30, 2000 |
| 5. | U.S. Patent 6,128,774 | "Necula" | October 28, 1997 | October 3, 2000 | October 28, 1997 |
| 6. | U.S. Patent No. 7,284,274 | "Walls" | January 18, 2001 | October 16, 2007 | January 18, 2001 |
| 7. | U.S. Patent Application 2005/0198692 A1 | "Zurko" | March 2, 2004 | September 8, 2005 | March 2, 2004 |
| 8. | U.S. Patent No. 6,571,338 | "Shaio" | December 20, 1995 | May 27, 2003 | December 20, 1995 |
| 9. | U.S. Patent No. 6,269,447 | "Maloney" | July 19, 1999 | July 31, 2001 | July 21, 1998 |

**b.      Non-Patent Publication Prior Art**

| Ref. No. | Publication | Short Name | Publication Date |
|---|---|---|---|
| 1. | Matt Bishop, "A Taxonomy of UNIX System and Network Vulnerabilities," May 1995 | "Bishop" | May 1995 |
| 2. | "F-SCRIPT F-Secure Script Viruses Script Viruses Detector and Eliminator Version 1.6," 1998 Data Fellows Corp. | "F-Script" | 1998 |
| 3. | Thomas Reps, Tim Teitelbaum, Alan Demers, "Incremental Context-Dependent Analysis for Language-Based Editors," 1983 | "Reps" | 1983 |

PAN additionally identifies and relies on each of the additional patent or publication

references that describe or are otherwise related to the prior art systems identified below.

### c.     System or Product Prior Art

PAN sets forth numerous prior art products or systems in the table below.  For such prior art products and systems, PAN has identified, based on its current knowledge, approximate dates on which such products were sold, on sale, made, known, and/or used in the U.S.  PAN's investigation of prior art products and systems is ongoing.  Further information and/or documents regarding such products and their sale, offer for sale, and use dates will be produced or disclosed as it is (they are) obtained in discovery or otherwise becomes available to PAN.  PAN reserves the right to amend, modify, and/or supplement these Contentions based on further and subsequent investigation and discovery.  Additionally, PAN reserves the right to rely on the documents identified below as standalone prior art references separate from the prior art system or product they describe.

PAN additionally identifies and relies on any system, product, or public knowledge or use that embodies or otherwise incorporates any of the prior art patents and publications listed above. PAN reserves the right to identify and rely on systems that represent different versions or are otherwise related variations of the identified products and systems.

| Ref No. | System Name | Short Name | Date Made, Known, Used, Sold, or On Sale |
|---|---|---|---|
| 1. | Privoxy System | "Privoxy" | January 31, 2004 |
| 2. | JSLint | "JSLint" | March 17, 2003 |
| 3. | Bison | "Bison" | 1988 |
| 4. | Flex | "Flex" | March 1995 |

### (i)     Privoxy

Privoxy was sold, on sale, made, known, and/or used at least by January 31, 2004.  The features, operations, and functionality of Privoxy are described throughout the Privoxy documentation produced in this case.  These documents include:

95

1
2
3
4
5

- Privoxy 3.0.3 User Manual, doc/webserver/user-manual, available as part of privoxy_3.0.3.orig.tar.gz (downloaded from https://sourceforge.net/projects/ijbswa/files/Debian/3.0.3%20%28stable%29%20woody) (PAN_FIN00118281)project.h (PAN_FIN00103579 to PAN_FIN00103603) (native also available as part of privoxy_3.0.3.orig.tar.gz)

6
7

- filters.c (PAN_FIN00103532 to PAN_FIN00103559) (native also available as part of privoxy_3.0.3.orig.tar.gz)

8
9

- pcrs.c (PAN_FIN00103560 to PAN_FIN00103575) (native available as part of privoxy_3.0.3.orig.tar.gz)

10
11

- pcrs.h (PAN_FIN00103576 to PAN_FIN00103578) (native available as part of privoxy_3.0.3.orig.tar.gz)

12

### (ii)     JSLint

13
14
15

JSLint was sold, on sale, made, known, and/or used at least by March 17, 2003.  The features, operations, and functionality of JSLint are described throughout the JSLint documentation produced in this case.  These documents include:

16

- JSLINT, The JavaScript Verifier (PAN_FIN00103666 to PAN_FIN00103671)

17

- fulljsling.js (PAN_FIN00103638 to PAN_FIN00103664)

18

- JavaScript Lint (PAN_FIN00103665)

19

- Top Down Operator Precedence (PAN_FIN00103672 to PAN_FIN00103685)

20

### (iii)     Bison

21
22
23

Bison was sold, on sale, made, known, and/or used at least by 1988.  The features, operations, and functionality of Bison are described throughout the Bison documentation produced in this case.  These documents include:

24

- Bison 3.7.6 Manual (PAN_FIN00103687 to PAN_FIN00104010)

25

- Bison 1.35 Manual (PAN_FIN00142988 to PAN_FIN00143074)

26

- Bison 1.35 Table of Contents (PAN_FIN00142987)

27

- Flex and Bison (PAN_FIN00118282 to PAN_FIN00118291)

28

96

(iv)     **Flex**

Flex was sold, on sale, made, known, and/or used at least by March 1995.  The features, operations, and functionality of Flex are described throughout the Flex documentation produced in this case.  These documents include:

- Flex Manual (PAN_FIN00104011 to PAN_FIN00104048)
- Flex and Bison (PAN_FIN00118282 to PAN_FIN00118291)

**d.     35 U.S.C. § 102(f)**

PAN reserves the right to assert that the Asserted Claims are invalid under 35 U.S.C. § 102(f) in the event PAN obtains additional evidence that the inventors named in any of the Asserted Patents did not invent the subject matter claimed therein.  Should PAN obtain such evidence, it will provide the name of the person(s) from whom and the circumstances under which the alleged invention or any part of it was derived.

**e.     35 U.S.C. § 102(g)**

PAN reserves the right to assert that the Asserted Claims are invalid under 35 U.S.C. § 102(g) in the event PAN obtains additional evidence that any of the inventions claimed in the Asserted Patents were made in the United States by another inventor who had not abandoned, suppressed or concealed it, prior to the alleged invention by the applicant of the Asserted Patents.  Should PAN obtain such evidence, it will provide the identities of the persons or entities involved in and the circumstances surrounding the making the inventions before the patent applicants.

**3.     Patent L.R. 3-3(b) Anticipation and Obviousness**

The references in Table 1, alone or in combination with the knowledge of one skilled in the art, anticipate or render obvious the Asserted Claims of the '408 Patent.

**Table 1: Prior Art References: Anticipation and Primary/Secondary Obviousness References**

| Short Name | Prior Art Under | Priority Date | Exemplary Claim Chart |
|---|---|---|---|
| Bishop | 102(a), (b) | May 1995 | E-11 |
| Chandnani | 102(a), (b), (e) | July 14, 2000 | E-8 |

97

| Short Name | Prior Art Under | Priority Date | Exemplary Claim Chart |
|---|---|---|---|
| F-Script | 102(a), (b) | 1998 | E-10 |
| Huang | 102(a), (b), (e) | September 30, 1999 | E-9 |
| JSLint | 102(a), (b) | 2002 | E-2 |
| Kolawa | 102(a), (b), (e) | February 29, 1996 | E-7 |
| Li | 102(a), (b), (e) | October 30, 2000 | E-5 |
| Necula | 102(a), (b), (e) | October 28, 1997 | E-6 |
| Privoxy | 102(a) | January 31, 2004 | E-1 |
| Reps | 102(a), (b) | 1983 | E-12 |
| Walls | 102(a), (b), (e) | January 18, 2001 | E-13 |
| Zurko | 102(a), (e) | March 2, 2004 | E-4 |

In addition, each of the references in Table 1 above and Table 2 below, either alone, in view of the knowledge of a POSITA, and/or in combination with one or more references in Table 1 or Table 2, renders obvious the Asserted Claims of the '408 Patent.

**Table 2: Additional Prior Art References: Obviousness**

| Short Name | Prior Art Under | Priority Date |
|---|---|---|
| Shaio | 102(a), (e) | December 20, 1995 |
| Maloney | 102(a), (e) | July 21, 1998 |

In addition, PAN incorporates by reference each and every prior art reference of record in the prosecution of the '408 Patent and any related patent or application, the statements made therein by the applicant, as well as the prior art discussed in the specification.

The cited portions of each prior art reference are exemplary and representative of the content of the reference, and should be understood in the context of the reference as a whole, as understood by one of ordinary skill in the art. To the extent a prior art reference is deemed not to anticipate or render obvious a claim as noted in the attached charts for failing to disclose, teach,

98

or suggest one or more limitations of a claim, that claim would nonetheless have been obvious to one of ordinary skill in the art at the time of the alleged invention over the reference itself or by the combination of the reference with one or more other references disclosing the missing claim limitations or the knowledge of a person having ordinary skill in the art.

### a.    Prior Art Combinations

All of the Asserted Claims of the '408 Patent are obvious based on one or more combinations of the prior art references above.  The sections below provide motivations to combine the prior art references above.  These obviousness combinations are provided in the alternative to PAN's anticipation and single-reference obviousness contentions and are not to be construed to suggest that any reference included in the combination is not itself anticipatory or would not render the Asserted Claims obvious in light of the knowledge of a person having ordinary skill in the art.  PAN also hereby incorporates by reference the prior art, invalidity grounds, and expert testimony submitted in connection with any petitions for *inter partes* review of the '408 Patent.

### b.    Motivation to Combine

A POSITA would have been motivated to combine the preceding references for any number of reasons, such as the following exemplary reasons.  Teachings, suggestions, motivations, and/or reasons to modify any of the references and/or to combine any two or more of the references can come from many sources, including the prior art, common knowledge, common sense, predictability, expectations, industry trends, design incentives or need, market demand or pressure, market forces, obviousness to try, the nature of the problem faced, and/or knowledge possessed by a POSITA.

Although a patent claim may be invalidated based on a teaching-suggestion-motivation ("TSM") rationale—*i.e.*, that some teaching, suggestion, or motivation in the prior art that would have led one of ordinary skill to modify the prior-art reference or to combine prior-art reference teachings to arrive at the claimed invention—the Supreme Court identified additional rationales in *KSR Int'l Co. v. Teleflex, Inc.*, 550 U.S. 398 (2007).  The following of these rationales apply here:

99

(A) the Asserted Claims combine prior-art elements according to known methods to yield predictable results;

(B) the Asserted Claims involve the simple substitution of one known element for another to obtain predictable results;

(C) the Asserted Claims involve the use of a known technique to improve similar devices (methods, or products) in the same way;

(D) the Asserted Claims apply a known technique to a known device (method, or product) ready for improvement to yield predictable results;

(E) the Asserted Claims involve combinations of prior-art references that would have been "obvious to try"'—a person of ordinary skill in the art could have reached the Asserted Claims by choosing from a finite number of identified, predictable solutions, with a reasonable expectation of success;

(F) the Asserted Claims are simply variations of work from one field of endeavor or a different one that would have been prompted based on design incentives or other market forces because the variations were predictable to one of ordinary skill in the art.

*See KSR*, 550 U.S. at 415-18 (rejecting the Federal Circuit's "rigid" application of the teaching, suggestion, or motivation to combine test, and instead espousing an "expansive and flexible" approach). Indeed, the Supreme Court held that a person of ordinary skill in the art is "a person of ordinary creativity, not an automaton" and "in many cases a person of ordinary skill in the art will be able to fit the teachings of multiple patents together like pieces of a puzzle." *KSR*, 550 U.S. at 420-21.

Thus, even in the absence of a specific teaching, suggestion, or motivation to combine references, the Asserted Claims here are obvious and therefore invalid. Each of the cited references or devices is in the same field, making it obvious for someone of ordinary skill in the art to identify and combine elements from these references. One of ordinary skill in the art would have recognized that improvements could be achieved by combining or modifying prior-art references that described such improvements. Each of the above prior-art references describes devices or methods that were known to offer such improvements, and, accordingly, one of ordinary skill in the art would have been motivated to combine or modify the references as identified in each of the combinations above.

Indeed, given that the references are in the same field, one of ordinary skill would have readily, with predictable results, taken teachings from one reference and applied them to other

references.  As referenced above, multiple prior art references teach or suggest the concepts claimed in the '408 Patent.  To the extent Finjan argues that any concepts claimed in the '408 Patent were not contained in any prior art reference, it would, at a minimum, have been obvious to adapt each reference to include the concept or combine it with other references that disclose the concept.  In addition, each of the constituent techniques described here was well known to those of ordinary skill in the art, and understood to be among a menu of available design choices for improving network security.  This is one of many motivations to combine the above references.

Furthermore, because methods and systems related to a computer gateway for an intranet of computers were well known and studied extensively prior to the '408 Patent priority date, common industry knowledge supplied a reason to combine the above references with each other. Each combination would have produced no unexpected results and would simply represent a known alternative to one of ordinary skill in the art.  This is a further motivation to combine any of the above references.

The below sections further address particular reasons to combine the above references. The below should not be construed as an admission that there is any value to the alleged invention of the '408 Patent.  As discussed previously, these contentions are based largely on how Finjan is apparently construing the Asserted Claims in its Initial Infringement Contentions, which is an incorrect and overbroad interpretation of the alleged invention of the '408 Patent.  Accordingly, to the extent the below refers to benefits of certain elements or industry trends towards these elements, this is not an admission that the alleged invention of the '408 Patent provides any benefits—to the contrary, properly construed and compared to the prior art, the '408 Patent provides no benefits.  Likewise, to the extent the below refers to substituting elements, this is not an admission that the elements subject to the substitution are in any way similar, *e.g.*, perform the same function, in the same way, to reach the same result.

The various elements of the Asserted Claims were well-known in the prior art at the time of the alleged invention, and the combination was obvious to one of ordinary skill in the art.  The combination simply (a) combines prior-art elements according to known methods to yield

predictable results; (b) involves the simple substitution of one known element for another to obtain predictable results; (c) involves the use of a known technique to improve similar devices (methods, or products) in the same way; (d) applies a known technique to a known device (method, or product) ready for improvement to yield predictable results; (e) involves combinations of prior-art references that would have been "obvious to try"—a person of ordinary skill in the art could have reached the Asserted Claims by choosing from a finite number of identified, predictable solutions, with a reasonable expectation of success; and/or (f) would have been prompted by known work, based on design incentives or other market forces, because such variations were predictable to one of ordinary skill in the art.

Moreover, the Supreme Court has stated that a motivation to combine may be simply "common sense" and that "familiar items may have obvious uses beyond their primary purposes, and in many cases a person of ordinary skill will be able to fit the teachings of multiple patents together like pieces of a puzzle." *KSR*, 550 U.S. at 420. Indeed, the Supreme Court held that it is sufficient that a combination of elements was "obvious to try," holding that, "[w]hen there is a design need or market pressure to solve a problem and there are a finite number of identified, predictable solutions, a person of ordinary skill has good reason to pursue the known options within his or her technical grasp." *Id.* at 421. Here, all the claim elements are common sense and are easily fit together by one of ordinary skill in the art.

While not necessary, a motivation to combine may also be found in the references themselves. One of ordinary skill in the art would have been motivated to combine a reference that refers to, or otherwise explicitly invites combination with, another reference. Where the references cited herein have such an explicit invitation to combine, that invitation would have motivated one of ordinary skill in the art to combine any such references.

### c.   Exemplary Obviousness Combinations

The accompanying claim charts explain how different portions of each prior art reference discloses each limitation of the Asserted Claim. If Finjan argues that any particular prior art reference lacks any feature, a POSITA as of the '408 Patent's priority date would at a minimum have been motivated to modify the reference to include the allegedly missing feature, or to

102

1  combine it with other references that include that feature, as discussed in the previous section.

2  To the extent Finjan asserts that the prior art in Table 1 does not disclose these claim

3  limitations, it would have been obvious to combine or modify each of the prior art references in

4  Table 1 and Table 2 with one or more prior art references in Table 1 and/or Table 2 to create

5  computer-based methods, systems and products for scanning content, including identifying tokens

6  within an incoming byte stream, the tokens being lexical constructs for a specific language,

7  identifying patterns of tokens, generating a parse tree for the identified patens, and identifying the

8  presence of potential exploits within the parse tree, as discussed in Bishop, Chandnani, F-Script,

9  Huang, Kolawa, Li, Necula, Privoxy, Reps, Walls, and Zurko.  One of ordinary skill in the art

10  would have been motivated to combine Bishop, Chandnani, F-Script, Huang, Kolawa, Li, Necula,

11  Privoxy, Reps, Walls, and Zurko with one or more other references identified in Table 1 and

12  would have reasonably expected that the combination would achieve the intended purpose.  Each

13  reference relates to computer and network security.  A person of ordinary skill in the art looking

14  to create improved computer security methods and products would look to consider solutions

15  implemented in other computer security methods and products such as those disclosed in at least

16  Bishop, Chandnani, F-Script, Huang, Kolawa, Li, Necula, Privoxy, Reps, Walls, and/or Zurko

17  and other references as described in PAN's Invalidity Contentions and associated claim charts.  A

18  person of ordinary skill in the art looking to solve this problem would review patents, patent

19  publications and prior art systems in the field of computer and network security such as Bishop,

20  Chandnani, F-Script, Huang, Kolawa, Li, Necula, Privoxy, Reps, Walls, and/or Zurko and other

21  references as described in PAN's Invalidity Contentions and associated claim charts.  Exemplary

22  combinations are provided below but do not limit the potential invalidating combinations

23  disclosed in these contentions or that PAN intends to rely on.

24  To the extent that Finjan argues that the prior art references in Table 1 do not satisfy the

25  parser and analyzer rules limitations, it would have been obvious to a person of ordinary skill in

26  the art to modify or combine those references with another open-source tool, such as Bison, Flex,

27  and/or JSLint to create a scanner comprising parser and analyzer rules for a specific programming

28  language.  Such a combination would have been simply applying a known technique to a known

103

1   method ready for improvement to yield predictable results and would have been obvious to try.

2          To the extent Finjan argues that the prior art references do not satisfy the dynamically

3   building and dynamically detecting limitations, it would have been obvious to modify these

4   references to dynamically build a parse tree and dynamically detect combinations and nodes in

5   the parse tree which are indicators of potential exploits, as described in Bishop, Chandnani, F-

6   Script, Huang, Kolawa, Li, Necula, Privoxy, Reps, Walls, and Zurko.  One of ordinary skill in the

7   art also would have reasonably expected that such a combination would achieve the desired

8   structure and functionality of scanning content, including identifying tokens within an incoming

9   byte stream, the tokens being lexical constructs for a specific language, identifying patterns of

10  tokens, generating a parse tree for the identified patens, and identifying the presence of potential

11  exploits within the parse tree, as discussed in Bishop, Chandnani, F-Script, Huang, Kolawa, Li,

12  Necula, Privoxy, Reps, Walls, and Zurko, and would constitute combining prior art elements

13  according to known methods to yield predictable results, and a simple substitution of one known

14  element for another to obtain predictable results.  Such a combination also would have been

15  simply applying a known technique to a known method ready for improvement to yield

16  predictable results and would have been obvious to try.

17         PAN reserves the right to rely on additional combinations.

18         **4.      Patent L.R. 3-3(c) Invalidity Contentions Charts**

19         Pursuant to Patent Local Rule 3-3(c), charts identifying specifically where and how in

20  each alleged item of prior art each limitation of each asserted claim is found are attached as

21  Exhibits E-1 to E-13.  Where elements are disclosed at multiple locations within a single item of

22  prior art, PAN has not necessarily identified every iteration of every disclosure.

23         **5.      Patent L.R. 3-3(d) Invalidity Based on 35 U.S.C. § 101, Indefiniteness
                    Under 35 U.S.C. § 112(2), or Enablement or Written Description**
24                  **Under 35 U.S.C. § 112(1)**

25         Based on PAN's present understanding of the Asserted Claim and/or PAN's apparent

26  construction of the claims, as set forth in Finjan's Infringement Contentions, and subject to the

27  reservation of rights above, PAN lists below the grounds upon which the Asserted Claims of the

28  '408 Patent are invalid based on indefiniteness, lack of written description, and/or lack of

1    enablement under 35 U.S.C. § 112.  To the extent PAN's identified grounds for invalidity are

2    based on Finjan's apparent constructions, PAN is not adopting Finjan's apparent constructions,

3    nor is PAN agreeing that any of Finjan's apparent constructions are correct.  Moreover, Finjan's

4    deficient Infringement Contentions fail to provide PAN with adequate notice as to Finjan's

5    infringement theories.  PAN reserves all rights to advance claim construction positions different

6    from Finjan's apparent constructions.

7         PAN's contentions that the following claims are invalid under 35 U.S.C. § 112 are made

8    in the alternative, and do not constitute, and should not be interpreted as, admissions regarding

9    the construction or scope of the Asserted Claims, or that any of the Asserted Claims are not

10   anticipated or rendered obvious by any prior art.  Where PAN identifies a claim term in an

11   independent claim as being invalid, PAN further contends any asserted dependent claim is invalid

12   based on the presence of the same term.

13        In light of the deficiencies in Finjan's Infringement Contentions, PAN reserves the right to

14   amend, modify, and/or supplement these Contentions to further identify bases for invalidity under

15   35 U.S.C. § 112.  PAN's Contentions shall not be construed as an admission that any claim

16   construction advanced by PAN in this case is in any way inconsistent, flawed or erroneous.  Nor

17   should these Contentions prevent PAN from advancing claim construction and/or non-

18   infringement positions in lieu of, or in addition to, invalidity positions.  Further, PAN's

19   Contentions shall not be construed as an admission of or acquiescence to Finjan's purported

20   construction of the claim language or of other positions advanced by Finjan during the course of

21   this litigation.  PAN's Contentions under 35 U.S.C. § 112 may depend, in part, on the Court's

22   claim construction, as well as Finjan's asserted claim scope.  Consequently, PAN only identifies

23   herein the issues under 35 U.S.C. § 112 of which it is presently aware based on PAN's present

24   understanding of the asserted claims and/or Finjan's apparent construction of the claims, as set

25   forth in Finjan's Infringement Contentions.  PAN reserves all rights to advance claim

26   construction positions different from Finjan's apparent constructions and to amend these

27   contentions as it better understands Finjan's construction of the claims during the claim

28   construction process.

1

### a.      Indefiniteness Under 35 U.S.C. § 112(2)

2

"[A] patent is invalid for indefiniteness if its claims, read in light of the specification

3

delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those

4

skilled in the art about the scope of the invention."  *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572

5

U.S. 898, 901 (2014).

6

The following claim limitations of the Asserted Claims are invalid based on

7

indefiniteness.

8

- "programming language"

9

- "instantiating, by the computer, a scanner for the specific programming language,

10

in response to said determining"

11

- "wherein the analyzer rules identify certain combinations of tokens and patterns"

### b.      Lack of Written Description Under 35 U.S.C. § 112(1)

12

13

To satisfy the written description requirement, the description must "clearly allow persons

14

of ordinary skill in the art to recognize that [the inventor] invented what is claimed."  *Ariad*

15

*Pharm., Inc. v. Eli Lilly and Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010) (internal citation omitted).

The test for sufficiency is whether the disclosure of the application relied upon reasonably

16

conveys to those skilled in the art that the inventor had possession of the claimed subject matter

17

as of the filing date.  *Id.*

18

19

The test requires an objective inquiry into the four corners of the specification from the

20

perspective of a POSITA.  Based on that inquiry, the specification must describe an invention

21

understandable to that skilled artisan and show that the inventor actually invented the invention

22

claimed.  "Whether the written description requirement is satisfied is a fact-based inquiry that will

23

depend on the nature of the claimed invention, and the knowledge of one skilled in the art at the

time an invention is made and a patent application is filed."  *Carnegie Mellon Univ. v. Hoffmann*

24

*La Roche Inc.*, 541 F.3d 1115, 1122 (Fed. Cir. 2008) (internal citation omitted).  Actual

25

"possession" or reduction to practice outside of the specification is not enough.  Instead, the

26

specification itself must demonstrate possession.

27

28

While the written description requirement does not demand any particular form of

106

1    disclosure, a description that merely renders the invention obvious does not satisfy the

2    requirement.  *Lockwood v. Am. Airlines*, 107 F.3d 1565, 1571-72 (Fed. Cir. 1997).

3         Finjan's apparent claim constructions render the Asserted Claims extremely broad in

4    scope and well beyond the purported inventions described in the '408 Patent.  Finjan is

5    attempting to construe the '408 Patent in an idiosyncratic manner that is entirely inconsistent with

6    the written specifications and prosecution histories of the '408 Patent as well as with the

7    understanding of one of ordinary skill in the art at the time the applications that issued as the

8    '408 Patent were filed.  These allegations are inconsistent with the plain language of the claims,

9    the supporting description, and the prosecution history.

10        The following claim limitations of the Asserted Claims are invalid for lack of written

11   description:

12        • "wherein the analyzer rules identify certain combinations of tokens and patterns"

13        • "dynamically building, while said receiving receives the incoming stream, a parse

14           tree whose nodes represent tokens and patterns in accordance with the parser

15           rules"

16        • "dynamically detecting, while said dynamically building builds the parse tree,

17           combinations of nodes in the parse tree which are indicator of potential exploits,

18           based on the analyzer rules"

19                         **c.    Lack of Enablement Under 35 U.S.C. § 112(1)**

20        To satisfy the enablement requirement of 35 U.S.C § 112, the disclosure "must teach those

21   skilled in the art how to make and use the full scope of the claimed invention without 'undue

22   experimentation.'"  *Genentech, Inc. v. Novo Nordisk, A/S*, 108 F.3d 1361, 1365 (Fed. Cir. 1997)

23   (citations omitted).  Moreover, "[i]t is the specification, not the knowledge of one skilled in the

24   art, that must supply the novel aspects of [the] invention in order to constitute adequate

25   enablement."  *Id.* at 1366.  The Federal Circuit has enumerated several factors to consider in

26   determining whether a disclosure would require "undue experimentation":  "(1) the quantity of

27   experimentation necessary, (2) the amount of direction or guidance presented, (3) the presence or

28   absence of working examples, (4) the nature of the invention, (5) the state of the prior art, (6) the

107

1    relative skill of those in the art, (7) the predictability or unpredictability of the art, and (8) the

2    breadth of the claims." *In re Wands*, 858 F.2d 731, 737 (Fed. Cir. 1988).

3         Finjan's apparent claim constructions render the Asserted Claims extremely broad in

4    scope and well beyond the purported inventions described in the '408 Patent.  Finjan is

5    attempting to construe the '408 Patent in an idiosyncratic manner that is entirely inconsistent with

6    the written specifications and prosecution histories of the '408 Patent as well as with the

7    understanding of one of ordinary skill in the art at the time the applications that issued as the

8    '408 Patent were filed.  These allegations are inconsistent with the plain language of the claims,

9    the supporting description, and the prosecution history.

10        The following claim limitations of the Asserted Claims are invalid for lack of enablement:

11        • "wherein the analyzer rules identify certain combinations of tokens and patterns"

12        • "dynamically building, while said receiving receives the incoming stream, a parse

13          tree whose nodes represent tokens and patterns in accordance with the parser

14          rules"

15        • "dynamically detecting, while said dynamically building builds the parse tree,

16          combinations of nodes in the parse tree which are indicator of potential exploits,

17          based on the analyzer rules"

18    **G.    Invalidity of the '494 Patent**

19         **1.    Priority Date**

20        Finjan alleges that each of the Asserted Claims of the '494 Patent is entitled to a priority

21    date of November 8, 1996.  Finjan's Initial Disclosure of Asserted Claims and Infringement

22    Contentions, at 20.  The '494 Patent purports to claim priority to that date via U.S. Patent No.

23    7,613,926, which claims priority to November 6, 1997—the filing date of U.S. Patent No.

24    6,092,194—at the earliest.  Moreover, the '494 Patent purports to claim priority to November 8,

25    1996, via U.S. Patent No. 7,058,822, which claims priority to March 30, 2000, at the earliest.

26    Any priority claim of the '494 Patent to a date earlier than March 30, 2000, is ineffective.  *See*

27    *Medtronic Corevalve v. Edwards Lifesciences Corp.*, 741 F.3d 1359, 1362 (Fed. Cir. 2014) ("To

28    claim priority to International Application 2b, each intermediate application must recite every

intervening application before it all the way back to International Application 2b.")  Finjan has not established that any Asserted Claims of the '494 Patent are entitled to a priority date earlier than March 30, 2000.  However, as described below, the Asserted Claims are invalid even under Finjan's alleged priority date.

## 2.    Patent L.R. 3-3(a) Identification of Prior Art

Subject to the reservations of rights above, PAN identifies prior art that anticipates and/or renders obvious the Asserted Claims of the '494 Patent.  The prior art references identified are also relevant to show the state of the art and reasons and motivations for making improvements, additions, modifications, and combinations.

In addition, PAN incorporates the prior art, claims charts, and invalidity theories disclosed, listed and/or asserted by any entity during the course of other litigation (past, present/ongoing, or future) or patent office challenges (either reexaminations or IPRs).  Finjan has failed to timely update its production of these materials, which has prejudiced PAN in its preparation of these contentions.  PAN reserves the right to rely on any prior art reference, prior art combination, motivation to combine, invalidity theory, and/or materials disclosed in these other proceedings.  At least the following prior art references anticipate and/or render obvious the Asserted Claims of the '494 Patent, and/or illustrate the state of the art at the time of the alleged invention:

### a.    Patent Prior Art

| Ref. No. | Publication No. | Short Name | Filing Date | Publication Date | Priority Date |
|---|---|---|---|---|---|
| 1. | U.S. 5,757,915 | Aucsmith | August 25, 1995 | May 26, 1998 | August 25, 1995 |
| 2. | U.S. 5,983,348 | Ji '348 | September 10, 1997 | November 9, 1999 | September 10, 1997 |
| 3. | U.S. 5,623,600 | Ji '600 | September 6, 1995 | April 22, 1997 | September 6, 1995 |
| 4. | W.O. 98/21683 | Touboul '683 | November 6, 1997 | May 22, 1998 | May 22, 1998 |

| Ref. No. | Publication No. | Short Name | Filing Date | Publication Date | Priority Date |
|---|---|---|---|---|---|
| 5. | W.O. 99/35583 | Touboul '583 | December 16, 1998 | July 15, 1999 | July 15, 1999 |
| 6. | U.S. 6,367,012 | Atkinson | December 6, 1996 | April 2, 2002 | December 6, 1996 |
| 7. | U.S. 6,067,575 | McManis | December 8, 1995 | May 23, 2000 | December 8, 1995 |
| 8. | U.S. 6,128,774 | Necula | October 28, 1997 | October 3, 2000 | October 28, 1997 |
| 9. | U.S. 6,092,147 | Levy '147 | April 15, 1997 | July 18, 2000 | April 15, 1997 |
| 10. | U.S. 6,622,247 | Isaak '247 | December 19, 1997 | September 16, 2003 | December 19, 1997 |
| 11. | U.S. 6,253,370 | Abadi '370 | December 1, 1997 | January 26, 2001 | December 1, 1997 |
| 12. | U.S. 5,283,830 | Hinsley '830 | September 30, 1992 | February 1, 1994 | September 30, 1992 |
| 13. | U.S. 6,357,008 | Nachenberg '008 | September 23, 1997 | March 12, 2002 | September 23, 1997 |

### b.    Non-Patent Publication Prior Art

| Ref. No. | Publication | Short Name | Publication Date |
|---|---|---|---|
| 1. | Dr. Solomon's Virus Encyclopedia | DSVE | 1995 |
| 2. | MiSFIT: A Freely Available Tool for Building Safe Estensible Systems | MiSFIT | 1996 |
| 3. | Trust Management for the World Wide Web | Chu | June 13, 1997 |
| 4. | Encapsulating Mobile Objects | Härtig | 1997 |
| 5. | A Flexible Security Model for Using Internet Content | Islam | October 1997 |
| 6. | An Immune System for Cyberspace | Kephart | 1997 |
| 7. | MIME Encapsulation | Bahreman | June 13, 1996 |

110

| Ref. No. | Publication | Short Name | Publication Date |
|---|---|---|---|
| 8. | Int'l. Publ. No. WO 95/33237 | Schnurer | December 7, 1995 |
| 9. | Blocking Applets at the Firewall | Martin | February 10, 1997 |
| 10. | Dynamic Detection and Classification of Computer Viruses Using General Behavior Patterns | Swimmer | September 1995 |

PAN additionally identifies and relies on each of the additional patent or publication references that describe or are otherwise related to the prior art systems identified below.

### c.    System or Product Prior Art

PAN sets forth numerous prior art products or systems in the table below.  For such prior art products and systems, PAN has identified, based on its current knowledge, approximate dates on which such products were sold, on sale, made, known, and/or used in the U.S.  PAN's investigation of prior art products and systems is ongoing.  Further information and/or documents regarding such products and their sale, offer for sale, and use dates will be produced or disclosed as it is (they are) obtained in discovery or otherwise becomes available to PAN.  PAN reserves the right to amend, modify, and/or supplement these Contentions based on further and subsequent investigation and discovery.  Additionally, PAN reserves the right to rely on the documents identified below as standalone prior art references separate from the prior art system or product they describe.

PAN additionally identifies and relies on any system, product, or public knowledge or use that embodies or otherwise incorporates any of the prior art patents and publications listed above.  PAN reserves the right to identify and rely on systems that represent different versions or are otherwise related variations of the identified products and systems.

| Ref No. | System Name | Short Name | Date Made, Known, Used, Sold, or On Sale |
|---|---|---|---|
| 1. | ThunderBYTE Anti-Virus Utilities | "ThunderBYTE" | 1995 |
| 2. | Norton Antivirus for Internet Email Gateways | "NAV for Gateways" | 1997 |
| 3. | Norton Antivirus 4.0 | "NAV 4.0" | 1997 |
| 4. | Dr. Solomon's Anti-Virus Toolkit | "AVTK" | 1995 |
| 5. | MIMEsweeper | "MIMEsweeper" | 1995 |
| 6. | Sophos Sweep/Intercheck | "Sweep" | 1997 |
| 7. | InterScan AppletTrap | "AppletTrap" | March 1999 |
| 8. | VICEd | "VICEd" | January 1997 |

(i)      **ThunderBYTE Anti-Virus Utilities**

ThunderBYTE was sold, on sale, made, known, and/or used at least by 1995.  The features, operations, and functionality of ThunderBYTE are described throughout the ThunderBYTE documentation produced in this case.  These documents include:

- ThunderBYTE Anti-Virus Utilities User Manual ("ThunderBYTE Manual") (PAN_FIN00102692 to PA_FIN00102890)

(ii)      **Norton Antivirus for Internet Email Gateways**

NAV for Gateways was sold, on sale, made, known, and/or used at least by 1997.  The features, operations, and functionality of NAV for Gateways are described throughout the NAV for Gateways documentation produced in this case.  These documents include:

- "Understanding Symantec's Anti-virus Strategy for Internet Gateways," The Symantec Enterprise Papers Vol. XXX (1997) ("Gateways WP") (PAN_FIN00106864 to PAN_FIN00106877)

- "Understanding and Managing Polymorphic Viruses," The Symantec Enterprise Papers Vol. XXX (1997) ("Striker WP") (PAN_FIN00106878 to PAN_FIN00106893)

112

- "Symantec Announces Norton Internet Email Gateway at Internet World," Symantec Press Release (1996) (PAN_FIN00106901 to PAN_FIN00106904)

- "Symantec Ships Norton AntiVirus for Internet Email Gateways," Symantec Press Release (1997) (PAN_FIN00106905 to PAN_FIN00106908)

- "Symantec Announces Norton Antivirus For Firewalls For Maximum Protection From Internet-Borne Viruses," Symantec Press Release (1997) (PAN_FIN00106894 to PAN_FIN00106900)

- "Symantec, The Worldwide Leader in Antivirus, Ships Norton Antivirus for Firewalls,"
- Symantec Press Release (1997) (PAN_FIN00106909 to PAN_FIN00106912)

### (iii)     Norton Antivirus 4.0

NAV 4.0 was sold, on sale, made, known, and/or used at least by 1997.  The features, operations, and functionality of NAV 4.0 are described throughout the NAV 4.0 documentation produced in this case.  These documents include:

- "Understanding Heuristics: Symantec's Bloodhound Technology," Symantec White Paper Series Vol. XXXIV (1997) ("Bloodhound WP") (PAN_FIN00106921 to PAN_FIN00106937)

- "Symantec's Norton AntiVirus 4.0 Delivers Multi-Platform Support," Symantec Press Release (1997) (PAN_FIN00106917 to PAN_FIN00106920)

- "Symantec's AntiVirus Research Center Responds To Mutating Macro Viruses With Bloodhound-Macro Technology," Symantec Press Release (1997) (PAN_FIN00106913 to PAN_FIN00106916)

### (iv)     Dr. Solomon's Anti-Virus Toolkit

AVTK was sold, on sale, made, known, and/or used at least by 1995.  The features, operations, and functionality of AVTK are described throughout the AVTK documentation produced in this case.  These documents include:

- Dr. Solomon's Anti-Virus Toolkit for Windows and DOS, User Manual ("AVTK Manual") (PAN_FIN00105097 to PAN_FIN00105337)

### (v)   MIMEsweeper

MIMEsweeper was sold, on sale, made, known, and/or used at least by 1995.  The features, operations, and functionality of MIMEsweeper are described throughout the MIMEsweeper documentation produced in this case.  These documents include:

- MIMEsweeper Administrator Guide, Version 1.0d, Integralis Ltd. (Sept. 1995) ("MIMEsweeper Guide") (PAN_FIN00114688 to PAN_FIN00114767)

- "MIMEsweeper package catches computer mail viruses before they are delivered," Government Computer News (April 28, 1997) (PAN_FIN00114768 to PAN_FIN001147770)

- "MIMEsweeper defuses virus network, 'net mail bombs," InfoWorld (May 20, 1996) (PAN_FIN00114771 to PAN_FIN00114775)

- "Integralis rolls out smart firewall," Computerworld (Jan. 29, 1996) (PAN_FIN00114776 to PAN_FIN00114779)

### (vi)   Sophos Sweep/Intercheck

Sweep was sold, on sale, made, known, and/or used at least by 1997.  The features, operations, and functionality of Sweep are described throughout the Sweep documentation produced in this case.  These documents include:

- SWEEP for Windows NT Virus Detection User Manual (Oct. 1995) ("Sweep NT Manual") (PAN_FIN00105957 to PAN_FIN00106069)

- SWEEP for Windows 95 Virus Detection User Manual (Dec. 1995) ("Sweep Win95 Manual") (PAN_FIN00114599 to PAN_FIN00114680)

### (vii)   InterScan AppletTrap

AppletTrap was sold, on sale, made, known, and/or used at least by March 1999.  The features, operations, and functionality of AppletTrap are described throughout the AppletTrap documentation produced in this case.  These documents include:

- TFS00000001 – TFS00005934

- TM-FIN000001 – TM-FIN000563

114

1

**(viii)   VICEd**

2     VICEd was sold, on sale, made, known, and/or used at least by 1997.  The features,

3   operations, and functionality of VICEd are described throughout the documentation produced in

4   this case.  These documents include:

5   - J. S. Lee, J. Hsiang, and P.  H. Tsang, "A Generic Virus Detection Agent on the Internet,"

6     Proceedings of the Thirtieth Hawaii International Conference on System Science, Vo1. 4,

7     Jan. 1997, pp. 210-219.

8

**d.      35 U.S.C. § 102(f)**

9     PAN reserves the right to assert that the Asserted Claims are invalid under 35 U.S.C.

10  § 102(f) in the event PAN obtains additional evidence that the inventors named in any of the

11  Asserted Patents did not invent the subject matter claimed therein.  Should PAN obtain such

12  evidence, it will provide the name of the person(s) from whom and the circumstances under

13  which the alleged invention or any part of it was derived.

14

**e.      35 U.S.C. § 102(g)**

15    PAN reserves the right to assert that the Asserted Claims are invalid under 35 U.S.C.

16  § 102(g) in the event PAN obtains additional evidence that any of the inventions claimed in the

17  Asserted Patents were made in the United States by another inventor who had not abandoned,

18  suppressed or concealed it, prior to the alleged invention by the applicant of the Asserted Patents.

19  Should PAN obtain such evidence, it will provide the identities of the persons or entities involved

20  in and the circumstances surrounding the making the inventions before the patent applicants.

21

**3.      Patent L.R. 3-3(b) Anticipation and Obviousness**

22    The references in Table 1, alone or in combination with the knowledge of one skilled in

23  the art, anticipate or render obvious the Asserted Claims of the '494 Patent.

24  **Table 1: Prior Art References: Anticipation and Anticipation and Primary/Secondary**

25  **Obviousness References**

26

27

28

| Short Name | Prior Art Under | Priority Date | Exemplary Claim Chart |
|---|---|---|---|
| ThunderBYTE | 102(a), (b) | 1995 | C-2 |
| NAV for Gateways | 102(a), (b) | 1997 | C-3 |
| NAV 4.0 | 102(a), (b) | 1997 | C-8 |
| AVTK | 102(a), (b) | 1995 | C-4 |
| MIMEsweeper | 102(a), (b) | 1995 | C-7 |
| Sweep | 102(a), (b) | 1997 | C-9 |
| AppletTrap | 102(a), (b) | March 1999 | C-5 |
| VICEd | 102(a), (b) | January 1997 | C-1 |
| Martin | 102(a), (b) | February 10, 1997 | C-6 |
| Swimmer | 102(a), (b) | September 1995 | C-10 |

In addition, each of the references in Table 1 above, either alone, in view of the knowledge of a POSITA, and/or in combination with one or more references in Table 1 or Table 2, renders obvious the Asserted Claims of the '494 Patent.

**Table 2: Additional Prior Art References: Obviousness**

| Short Name | Prior Art Under | Priority Date |
|---|---|---|
| Aucsmith | 102(a), (b), (e) | August 25, 1995 |
| Ji '348 | 102(a), (b), (e) | September 10, 1997 |
| Ji '600 | 102(a), (b), (e) | September 6, 1995 |
| Touboul '683 | 102(a), (b) | May 22, 1998 |
| Touboul '583 | 102(a), (b) | July 15, 1999 |
| Atkinson | 102(a), (b), (e) | December 6, 1996 |
| McManis | 102(a), (b), (e) | December 8, 1995 |
| Necula | 102(a), (b), (e) | October 28, 1997 |
| Levy '147 | 102(a), (b), (e) | April 15, 1997 |

116

| Short Name | Prior Art Under | Priority Date |
|---|---|---|
| Isaak '247 | 102(a), (b), (e) | December 19, 1997 |
| Abadi '370 | 102(a), (b), (e) | December 1, 1997 |
| Hinsley '830 | 102(a), (b), (e) | September 30, 1992 |
| Nachenberg '008 | 102(a), (b), (e) | September 23, 1997 |
| DSVE | 102(a), (b) | 1995 |
| MiSFIT | 102(a), (b) | 1996 |
| Chu | 102(a), (b) | June 13, 1997 |
| Härtig | 102(a), (b) | 1997 |
| Islam | 102(a), (b) | October 1997 |
| Kephart | 102(a), (b) | 1997 |
| Bahreman | 102(a), (b) | June 13, 1996 |
| Schnurer | 102(a), (b) | December 7, 1995 |

In addition, PAN incorporates by reference each and every prior art reference of record in the prosecution of the '494 Patent and any related patent or application, the statements made therein by the applicant, as well as the prior art discussed in the specification.

The cited portions of each prior art reference are exemplary and representative of the content of the reference, and should be understood in the context of the reference as a whole, as understood by one of ordinary skill in the art. To the extent a prior art reference is deemed not to anticipate or render obvious a claim as noted in the attached charts for failing to disclose, teach, or suggest one or more limitations of a claim, that claim would nonetheless have been obvious to one of ordinary skill in the art at the time of the alleged invention over the reference itself or by the combination of the reference with one or more other references disclosing the missing claim limitations or the knowledge of a person having ordinary skill in the art.

### a. Prior Art Combinations

All of the Asserted Claims of the '494 Patent are obvious based on one or more

1  combinations of the prior art references above.  The sections below provide motivations to

2  combine the prior art references above.  These obviousness combinations are provided in the

3  alternative to PAN's anticipation and single-reference obviousness contentions and are not to be

4  construed to suggest that any reference included in the combination is not itself anticipatory or

5  would not render the Asserted Claims obvious in light of the knowledge of a person having

6  ordinary skill in the art.  PAN also hereby incorporates by reference the prior art, invalidity

7  grounds, and expert testimony submitted in connection with any petitions for *inter partes* review

8  of the '494 Patent.

9                           **b.      Motivation to Combine**

10          A POSITA would have been motivated to combine the preceding references for any

11  number of reasons, such as the following exemplary reasons.  Teachings, suggestions,

12  motivations, and/or reasons to modify any of the references and/or to combine any two or more of

13  the references can come from many sources, including the prior art, common knowledge,

14  common sense, predictability, expectations, industry trends, design incentives or need, market

15  demand or pressure, market forces, obviousness to try, the nature of the problem faced, and/or

16  knowledge possessed by a POSITA.

17          Although a patent claim may be invalidated based on a teaching-suggestion-motivation

18  ("TSM") rationale—*i.e.*, that some teaching, suggestion, or motivation in the prior art that would

19  have led one of ordinary skill to modify the prior-art reference or to combine prior-art reference

20  teachings to arrive at the claimed invention—the Supreme Court identified additional rationales

21  in *KSR Int'l Co. v. Teleflex, Inc.*, 550 U.S. 398 (2007).  The following of these rationales apply

22  here:

23          (A) the Asserted Claims combine prior-art elements according to known methods
            to yield predictable results;

24          (B) the Asserted Claims involve the simple substitution of one known element for
            another to obtain predictable results;

25

26          (C) the Asserted Claims involve the use of a known technique to improve similar
            devices (methods, or products) in the same way;

27          (D) the Asserted Claims apply a known technique to a known device (method, or
            product) ready for improvement to yield predictable results;

28

                                    118

(E) the Asserted Claims involve combinations of prior-art references that would have been "obvious to try"—a person of ordinary skill in the art could have reached the Asserted Claims by choosing from a finite number of identified, predictable solutions, with a reasonable expectation of success;

(F) the Asserted Claims are simply variations of work from one field of endeavor or a different one that would have been prompted based on design incentives or other market forces because the variations were predictable to one of ordinary skill in the art.

*See KSR*, 550 U.S. at 415-18 (rejecting the Federal Circuit's "rigid" application of the teaching, suggestion, or motivation to combine test, and instead espousing an "expansive and flexible" approach). Indeed, the Supreme Court held that a person of ordinary skill in the art is "a person of ordinary creativity, not an automaton" and "in many cases a person of ordinary skill in the art will be able to fit the teachings of multiple patents together like pieces of a puzzle." *KSR*, 550 U.S. at 420-21.

Thus, even in the absence of a specific teaching, suggestion, or motivation to combine references, the Asserted Claims here are obvious and therefore invalid. Each of the cited references or devices is in the same field, making it obvious for someone of ordinary skill in the art to identify and combine elements from these references. One of ordinary skill in the art would have recognized that improvements could be achieved by combining or modifying prior-art references that described such improvements. Each of the above prior-art references describes devices or methods that were known to offer such improvements, and, accordingly, one of ordinary skill in the art would have been motivated to combine or modify the references as identified in each of the combinations above.

Indeed, given that the references are in the same field, one of ordinary skill would have readily, with predictable results, taken teachings from one reference and applied them to other references. As referenced above, multiple prior art references teach or suggest the concepts claimed in the '494 Patent. To the extent Finjan argues that any concepts claimed in the '494 Patent were not contained in any prior art reference, it would, at a minimum, have been obvious to adapt each reference to include the concept or combine it with other references that disclose the concept. In addition, each of the constituent techniques described here was well known to those of ordinary skill in the art, and understood to be among a menu of available

design choices for improving network security. This is one of many motivations to combine the above references.

Furthermore, because methods and systems related to protecting network-connectable devices from undesirable downloadable operation were well known and studied extensively prior to the '494 Patent priority date, common industry knowledge supplied a reason to combine the above references with each other. Each combination would have produced no unexpected results and would simply represent a known alternative to one of ordinary skill in the art. This is a further motivation to combine any of the above references.

The below sections further address particular reasons to combine the above references. The below should not be construed as an admission that there is any value to the alleged invention of the '494 Patent. As discussed previously, these contentions are based largely on how Finjan is apparently construing the Asserted Claims in its Initial Infringement Contentions, which is an incorrect and overbroad interpretation of the alleged invention of the '494 Patent. Accordingly, to the extent the below refers to benefits of certain elements or industry trends towards these elements, this is not an admission that the alleged invention of the '494 Patent provides any benefits—to the contrary, properly construed and compared to the prior art, the '494 Patent provides no benefits. Likewise, to the extent the below refers to substituting elements, this is not an admission that the elements subject to the substitution are in any way similar, *e.g.*, perform the same function, in the same way, to reach the same result.

The various elements of the Asserted Claims were well-known in the prior art at the time of the alleged invention, and the combination was obvious to one of ordinary skill in the art. The combination simply (a) combines prior-art elements according to known methods to yield predictable results; (b) involves the simple substitution of one known element for another to obtain predictable results; (c) involves the use of a known technique to improve similar devices (methods, or products) in the same way; (d) applies a known technique to a known device (method, or product) ready for improvement to yield predictable results; (e) involves combinations of prior-art references that would have been "obvious to try"—a person of ordinary skill in the art could have reached the Asserted Claims by choosing from a finite number of

120

identified, predictable solutions, with a reasonable expectation of success; and/or (f) would have been prompted by known work, based on design incentives or other market forces, because such variations were predictable to one of ordinary skill in the art.

Moreover, the Supreme Court has stated that a motivation to combine may be simply "common sense" and that "familiar items may have obvious uses beyond their primary purposes, and in many cases a person of ordinary skill will be able to fit the teachings of multiple patents together like pieces of a puzzle." *KSR*, 550 U.S. at 420.  Indeed, the Supreme Court held that it is sufficient that a combination of elements was "obvious to try," holding that, "[w]hen there is a design need or market pressure to solve a problem and there are a finite number of identified, predictable solutions, a person of ordinary skill has good reason to pursue the known options within his or her technical grasp." *Id*. at 421.  Here, all the claim elements are common sense and are easily fit together by one of ordinary skill in the art.

While not necessary, a motivation to combine may also be found in the references themselves.  One of ordinary skill in the art would have been motivated to combine a reference that refers to, or otherwise explicitly invites combination with, another reference.  Where the references cited herein have such an explicit invitation to combine, that invitation would have motivated one of ordinary skill in the art to combine any such references.

### c.      Exemplary Obviousness Combinations

The accompanying claim charts explain how different portions of each prior art reference discloses each limitation of the Asserted Claim.  If Finjan argues that any particular prior art reference lacks any feature, a POSITA as of the '494 Patent's priority date would at a minimum have been motivated to modify the reference to include the allegedly missing feature, or to combine it with other references that include that feature, as discussed in the previous section.

To the extent Finjan asserts that the prior art in Table 1 does not disclose these claim limitations, it would have been obvious to combine or modify each of the prior art references in Table 1 with one or more prior art references in Table 1 and/or Table 2 to meet the limitations of the Asserted Claims, as discussed in ThunderBYTE, NAV for Gateways, NAV 4.0, AVTK, MIMEsweeper, Sweep, AppleTrap, VICEd, Aucsmith, Ji '348, Ji '600, Touboul '683, Touboul

1   '583,  Atkinson, McManis, Necula, Levy '147, Isaak '247, Abadi '370, Hinsley '830, Nachenberg

2   '008, DSVE, MiSFIT, Chu, Härtig, Islam, Kephart, Bahreman, Schnurer, Martin and/or

3   Swimmer.  Exemplary combinations are provided below but do not limit the potential

4   invalidating combinations disclosed in these contentions or that PAN intends to rely on.

5          To the extent that Finjan argues that the prior art references are missing one or more

6   elements of the Asserted Claims, it would have been obvious to modify those references such as

7   described in ThunderBYTE, NAV for Gateways, NAV 4.0, AVTK, MIMEsweeper, Sweep,

8   AppleTrap, VICEd, Aucsmith, Ji '348, Ji '600, Touboul '683, Touboul '583,  Atkinson,

9   McManis, Necula, Levy '147, Isaak '247, Abadi '370, Hinsley '830, Nachenberg '008, DSVE,

10  MiSFIT, Chu, Härtig, Islam, Kephart, Bahreman, Schnurer, Martin and/or Swimmer .  One of

11  ordinary skill in the art would have been motivated to combine Aucsmith, Ji '348, Ji '600,

12  Touboul '683, Touboul '583,  Atkinson, McManis, Necula, Levy '147, Isaak '247, Abadi '370,

13  Hinsley '830, Nachenberg '008, DSVE, MiSFIT, Chu, Härtig, Islam, Kephart, Bahreman,

14  Schnurer, Martin and/or Swimmer with one or more other references identified in Table 1 and

15  would have reasonably expected that the combination would achieve the intended purpose.  Each

16  reference relates to computer and network security.  A person of ordinary skill in the art looking

17  to create improved computer security methods and products would look to consider solutions

18  implemented in other computer security methods and products such as those disclosed in at least

19  ThunderBYTE, NAV for Gateways, NAV 4.0, AVTK, MIMEsweeper, Sweep, AppleTrap,

20  VICEd, Aucsmith, Ji '348, Ji '600, Touboul '683, Touboul '583,  Atkinson, McManis, Necula,

21  Levy '147, Isaak '247, Abadi '370, Hinsley '830, Nachenberg '008, DSVE, MiSFIT, Chu, Härtig,

22  Islam, Kephart, Bahreman, Schnurer, Martin and/or Swimmer and other references as described

23  in PAN's Invalidity Contentions and associated claim charts.  A person of ordinary skill in the art

24  looking to solve this problem would review patents, patent publications and prior art systems in

25  the field of computer and network security such as ThunderBYTE, NAV for Gateways, NAV 4.0,

26  AVTK, MIMEsweeper, Sweep, AppleTrap, VICEd, Aucsmith, Ji '348, Ji '600, Touboul '683,

27  Touboul '583,  Atkinson, McManis, Necula, Levy '147, Isaak '247, Abadi '370, Hinsley '830,

28  Nachenberg '008, DSVE, MiSFIT, Chu, Härtig, Islam, Kephart, Bahreman, Schnurer, Martin

1  and/or Swimmer and other references as described in PAN's Invalidity Contentions and

2  associated claim charts.

3        One of ordinary skill in the art also would have reasonably expected that such

4  combination of ThunderBYTE, NAV for Gateways, NAV 4.0, AVTK, MIMEsweeper, Sweep,

5  AppleTrap, VICEd, Aucsmith, Ji '348, Ji '600, Touboul '683, Touboul '583,  Atkinson,

6  McManis, Necula, Levy '147, Isaak '247, Abadi '370, Hinsley '830, Nachenberg '008, DSVE,

7  MiSFIT, Chu, Härtig, Islam, Kephart, Bahreman, Schnurer, Martin and/or Swimmer and other

8  references as described in Table 1, Table 2, and the associated claim charts would achieve the

9  structure and functionality of the Asserted Claims because such a combination would constitute

10  combining prior art elements according to known methods to yield predictable results, and a

11  simple substitution of one known element for another to obtain predictable results.  Such a

12  combination also would have been simply applying a known technique to a known method ready

13  for improvement to yield predictable results and would have been obvious to try.

14                    **4.       Patent L.R. 3-3(c) Invalidity Contentions Charts**

15        Pursuant to Patent Local Rule 3-3(c), charts identifying specifically where and how in

16  each alleged item of prior art each limitation of each asserted claim is found are attached as

17  Exhibits C-1 to C-10.  Where elements are disclosed at multiple locations within a single item of

18  prior art, PAN has not necessarily identified every iteration of every disclosure.

19                    **5.       Patent L.R. 3-3(d) Invalidity Based on 35 U.S.C. § 101, Indefiniteness
                               Under 35 U.S.C. § 112(2), or Enablement or Written Description**
20                             **Under 35 U.S.C. § 112(1)**

21        Based on PAN's present understanding of the Asserted Claims and/or PAN's apparent

22  construction of the claims, as set forth in Finjan's Infringement Contentions, and subject to the

23  reservation of rights above, PAN lists below the grounds upon which the Asserted Claims of the

24  '494 Patent are invalid based on 35 U.S.C. § 101, indefiniteness, lack of written description,

25  and/or lack of enablement under 35 U.S.C. § 112.  To the extent PAN's identified grounds for

26  invalidity are based on Finjan's apparent constructions, PAN is not adopting Finjan's apparent

27  constructions, nor is PAN agreeing that any of Finjan's apparent constructions are correct.

28  Moreover, Finjan's deficient Infringement Contentions fail to provide PAN with adequate notice

as to Finjan's infringement theories.  PAN reserves all rights to advance claim construction positions different from Finjan's apparent constructions.

PAN's contentions that the following claims are invalid under 35 U.S.C. § 112 are made in the alternative, and do not constitute, and should not be interpreted as, admissions regarding the construction or scope of the Asserted Claims, or that any of the Asserted Claims are not anticipated or rendered obvious by any prior art.  Where PAN identifies a claim term in an independent claim as being invalid, PAN further contends any asserted dependent claim is invalid based on the presence of the same term.

In light of the deficiencies in Finjan's Infringement Contentions, PAN reserves the right to amend, modify, and/or supplement these Contentions to further identify bases for invalidity under 35 U.S.C. § 112.  PAN's Contentions shall not be construed as an admission that any claim construction advanced by PAN in this case is in any way inconsistent, flawed or erroneous.  Nor should these Contentions prevent PAN from advancing claim construction and/or non-infringement positions in lieu of, or in addition to, invalidity positions.  Further, PAN's Contentions shall not be construed as an admission of or acquiescence to Finjan's purported construction of the claim language or of other positions advanced by Finjan during the course of this litigation.  PAN's Contentions under 35 U.S.C. § 112 may depend, in part, on the Court's claim construction, as well as Finjan's asserted claim scope.  Consequently, PAN only identifies herein the issues under 35 U.S.C. § 112 of which it is presently aware based on PAN's present understanding of the asserted claims and/or Finjan's apparent construction of the claims, as set forth in Finjan's Infringement Contentions.  PAN reserves all rights to advance claim construction positions different from Finjan's apparent constructions and to amend these contentions as it better understands Finjan's construction of the claims during the claim construction process.

### a.    Unpatentable Subject Matter Under 35 U.S.C. § 101

The Asserted Claims of the '494 Patent are directed to non-statutory subject matter, under 35 U.S.C. § 101, because the claims are directed to the general idea of deriving security profile data and storing security profile data, which is an abstract concept. The recitation of generic

124

computer components does not amount to significantly more than the abstract idea itself.  *See CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1370 (Fed. Cir. 2011) (reasoning that the use of the Internet to verify a credit card transaction does not meaningfully add to the abstract idea of verifying the transaction).  Moreover, the claims can be performed in the human mind; and to the extent the claims recite any limitations that could not be performed mentally, those limitations are conventional and well-understood activities that do not change the mental character of the claims.  *See Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1147 (Fed. Cir. 2016) (finding that claims for translating a functional description of a logic circuit into a hardware component description were abstract because they "can be performed mentally or with pencil and paper").  Additionally, claims 11-16 are directed to software per se.  Therefore, the Asserted Claims of the '494 Patent are not directed to patent-eligible subject matter under 35 U.S.C. §101, and are invalid.

### b.      Indefiniteness Under 35 U.S.C. § 112(2)

"[A] patent is invalid for indefiniteness if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention."  *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 901 (2014).

At least the following claim limitations of the Asserted Claims are invalid based on indefiniteness.

- "Downloadable"
- "security profile data"
- "suspicious computer operations"
- "list of suspicious computer operations that may be attempted by the Downloadable"
- "active control"
- "program script"
- "database manager"

125

1

### c.      Lack of Written Description Under 35 U.S.C. § 112(1)

2   To satisfy the written description requirement, the description must "clearly allow persons

3   of ordinary skill in the art to recognize that [the inventor] invented what is claimed." *Ariad*

4   *Pharm., Inc. v. Eli Lilly and Co*., 598 F.3d 1336, 1351 (Fed. Cir. 2010) (internal citation omitted).

5   The test for sufficiency is whether the disclosure of the application relied upon reasonably

6   conveys to those skilled in the art that the inventor had possession of the claimed subject matter

7   as of the filing date. *Id.*

8   The test requires an objective inquiry into the four corners of the specification from the

9   perspective of a POSITA.  Based on that inquiry, the specification must describe an invention

10   understandable to that skilled artisan and show that the inventor actually invented the invention

11   claimed.  "Whether the written description requirement is satisfied is a fact-based inquiry that will

12   depend on the nature of the claimed invention, and the knowledge of one skilled in the art at the

13   time an invention is made and a patent application is filed." *Carnegie Mellon Univ. v. Hoffmann*

14   *La Roche Inc*., 541 F.3d 1115, 1122 (Fed. Cir. 2008) (internal citation omitted).  Actual

15   "possession" or reduction to practice outside of the specification is not enough.  Instead, the

16   specification itself must demonstrate possession.

17   While the written description requirement does not demand any particular form of

18   disclosure, a description that merely renders the invention obvious does not satisfy the

19   requirement.  *Lockwood v. Am. Airlines*, 107 F.3d 1565, 1571-72 (Fed. Cir. 1997).

20   At least the following claim limitations of the Asserted Claims are invalid for lack of

21   written description:

22   - "deriving security profile data for the Downloadable, including a list of suspicious

23     computer operations that may be attempted by the Downloadable"

24   - "storing the Downloadable security profile data in a database"

25   - "wherein the Downloadable includes an active control"

26   - "wherein the Downloadable includes program script"

27   - "a Downloadable scanner coupled with said receiver, for deriving security profile

28     data for the Downloadable, including a list of suspicious computer operations that

126

1    may be attempted by the Downloadable"

2    • "a database manager coupled with said Downloadable scanner, for storing the

3     Downloadable security profile data in a database"

4    • "suspicious computer operations include calls made to an operating system, a file

5     system, a network system, and to memory"

6      **d.  Lack of Enablement Under 35 U.S.C. § 112(1)**

7    To satisfy the enablement requirement of 35 U.S.C § 112, the disclosure "must teach those

8 skilled in the art how to make and use the full scope of the claimed invention without 'undue

9 experimentation.'"  *Genentech, Inc. v. Novo Nordisk, A/S*, 108 F.3d 1361, 1365 (Fed. Cir. 1997)

10 (citations omitted).  Moreover, "[i]t is the specification, not the knowledge of one skilled in the

11 art, that must supply the novel aspects of [the] invention in order to constitute adequate

12 enablement."  *Id.* at 1366.  The Federal Circuit has enumerated several factors to consider in

13 determining whether a disclosure would require "undue experimentation":  "(1) the quantity of

14 experimentation necessary, (2) the amount of direction or guidance presented, (3) the presence or

15 absence of working examples, (4) the nature of the invention, (5) the state of the prior art, (6) the

16 relative skill of those in the art, (7) the predictability or unpredictability of the art, and (8) the

17 breadth of the claims."  *In re Wands*, 858 F.2d 731, 737 (Fed. Cir. 1988).

18    At least the following claim limitations of the Asserted Claims are invalid for lack of

19 enablement:

20     • "deriving security profile data for the Downloadable, including a list of suspicious

21      computer operations that may be attempted by the Downloadable"

22     • "storing the Downloadable security profile data in a database"

23     • "a Downloadable scanner coupled with said receiver, for deriving security profile

24      data for the Downloadable, including a list of suspicious computer operations that

25      may be attempted by the Downloadable"

26     • "a database manager coupled with said Downloadable scanner, for storing the

27      Downloadable security profile data in a database"

28     • "suspicious computer operations include calls made to an operating system, a file

1   system, a network system, and to memory"

2

## II.   PATENT LOCAL RULE 3-4 DOCUMENT PRODUCTION ACCOMPANYING
3        INVALIDITY CONTENTIONS

### A.   Patent L.R. 3-4(a) Accused Product Documentation
4

5       Pursuant to Patent L.R. 3-4(a), PAN has produced the following documentation sufficient

6   to show the operation of aspects or elements of accused instrumentalities identified by Finjan in

7   its Patent L.R. 3-1(c) charts located during a reasonable search:  PAN_FIN00000225 to

8   PAN_FIN00000414; PAN_FIN00000847 to PAN_FIN00001020; PAN_FIN00001036 to

9   PAN_FIN00001058; PAN_FIN00001127 to PAN_FIN00001178; PAN_FIN00000236 to

10  PAN_FIN00000388; PAN_FIN00000593 to PAN_FIN00000764; PAN_FIN00000789 to

11  PAN_FIN00000806; PAN_FIN00001059 to PAN_FIN00001073; PAN_FIN00001088 to

12  PAN_FIN00001094; PAN_FIN00001179 to PAN_FIN00001189; PAN_FIN00001332 to

13  PAN_FIN00001341; PAN_FIN00003642 to PAN_FIN00003671; PAN_FIN00004734 to

14  PAN_FIN00004742; PAN_FIN00005972 to PAN_FIN00005988; PAN_FIN00006044 to

15  PAN_FIN00006053; PAN_FIN00006124 to PAN_FIN00006132; PAN_FIN00008165 to

16  PAN_FIN00008166; PAN_FIN00008281 to PAN_FIN00008414; PAN_FIN00008682 to

17  PAN_FIN00008684; PAN_FIN00008710 to PAN_FIN00008712; PAN_FIN00008755 to

18  PAN_FIN00008772; PAN_FIN0008914 to PAN_FIN00008940; PAN_FIN0008957 to

19  PAN_FIN00008966; PAN_FIN00008977 to PAN_FIN00009003; PAN_FIN00009005 to

20  PAN_FIN00009013; PAN_FIN00009015 to PAN_FIN00009021; PAN_FIN00009040 to

21  PAN_FIN00009044; PAN_FIN00009058 to PAN_FIN00009068; PAN_FIN00009074 to

22  PAN_FIN00009077; PAN_FIN0009203 to PAN_FIN00009212; PAN_FIN00010141 to

23  PAN_FIN00010308; and PAN_FIN00010328 to PAN_FIN00010409; PAN_FIN0000001 to -

24  PAN_FIN00000224; PAN_FIN00000807 to PAN_FIN00000846; PAN_FIN00000853 to

25  PAN_FIN00000858; PAN_FIN00001021 to PAN_FIN00001035; PAN_FIN00001074 to

26  PAN_FIN00001087; PAN_FIN00001095 to PAN_FIN00001126; PAN_FIN00001190 to

27  PAN_FIN00001331; and PAN_FIN00006190 to PAN_FIN00008043; PAN_FIN00118323 to

28  PAN_FIN00141098;.  Moreover, PAN has made source code related to the accused

instrumentalities available for Finjan's inspection for over one year.  Before the stay order in December 2015, Finjan had over nine months of access to PAN source code and deposed a PAN witness on that code.  After the stay was lifted in January 2021, Finjan has had over three months of access to updated PAN source code.  PAN continues to make its source code available for inspection.  PAN reserves the right to supplement or amend this disclosure if, and as, warranted.

**B.      Patent L.R. 3-4(b) Prior Art**

Pursuant to Patent L.R. 3-4(b), PAN has produced or is concurrently producing copies of the prior art identified in the tables above:  PAN_FIN00100675 to PAN_FIN00118322, PAN_FIN00142987 to PAN_FIN00143822.  PAN reserves the right to supplement or amend this disclosure if, and as, warranted.

**C.      Patent L.R. 3-4(d) Sales, Revenue, Cost, and Profits**

Pursuant to Patent L.R. 3-4(d), PAN has produced the following documents sufficient to show the sales, revenue, cost, and profits for the accused instrumentalities identified in Finjan's Infringement Contentions:  PAN_FIN00141099 to PAN_FIN00142878, PAN_FIN00143823 to PAN_FIN00143825.  PAN reserves the right to supplement or amend this disclosure if, and as, warranted.

**D.      Patent L.R. 3-4(e) Agreements and Patent L.R. 3-4(c) Licenses**

Pursuant to Patent L.R. 3-4(e), PAN has produced copies of the following agreements that PAN may use to support its damages case:  PAN_FIN00142879 to PAN_FIN00142986.  One or more of these agreements may also fall within the category set forth by Patent L.R. 3-4(c) pending review of Finjan's Damages Contentions to be served on July 6, 2021.  In addition to the above-disclosed documents, there are additional documents that may fall within these categories but that PAN is precluded by confidentiality provisions from disclosing until after a notice period has been provided.  PAN is taking steps to comply with its third party confidentiality obligations and will produce the additional documents after the applicable notice periods expire.  PAN reserves the right to supplement or amend this disclosure if, and as, warranted.

1    Dated:        May 17, 2021              MORRISON & FOERSTER LLP

2

3                                           By: /s/ *Diek Van Nort*

4                                               Diek Van Nort

5                                           Attorneys for Defendant
                                            PALO ALTO NETWORKS, INC.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PAN's Invalidity Contentions
Case No. 4:14-cv-04908-PJH
sf-4464809

1

**CERTIFICATE OF SERVICE**

2
I declare under penalty of perjury that on May 17, 2021, I served a copy of:

3

4

**DEFENDANT PALO ALTO NETWORKS, INC.'S INVALIDITY
CONTENTIONS AND RELATD DISCLOSURES PURSUANT TO
PATENT LOCAL RULES 3-3 AND 3-4**

5

6
☒   **BY ELECTRONIC SERVICE [Fed. Rule Civ. Proc. Rule 5(b)]** by electronically
mailing a true and correct copy through Morrison & Foerster LLP's electronic mail

7
system to the e-mail address(s) set forth below, or as stated on the attached service
list per agreement in accordance with Federal Rule of Civil Procedure Rule 5(b).

8

9
**By Email**

10
Juanita R. Brooks                    Email: Finjan-PAN_Fish-Service@fr.com
Roger A. Denning

11
K. Nicole Willliams
Frank J. Albert

12
Jared A. Smith
Tucker N. Terhufen

13
Fish & Richardson P.C.

14
12860 El Camino Real, Suite 400
San Diego, CA  92130

15
Telephone:  (858) 678-5070
Facsimile:   (858) 678-5099

16
*Attorneys for Plaintiff*

17
*FINJAN LLC*

18
**By Email**                    Email: Finjan-PAN_Fish-Service@fr.com

19
Aamir Kazi
Lawrence Jarvis

20
Fish & Richardson P.C.
1180 Peachtree St. NE 21st Floor

21
Atlanta, GA 30309

22
Telephone:  (404) 892-5005
Facsimile:   (404) 892-5002

23
*Attorneys for Plaintiff*
*FINJAN LLC*

24
**By Email**                    Email: Finjan-PAN_Fish-Service@fr.com

25

26
Philip W. Goter
Fish & Richardson P.C.

27
3200 RBC Plaza
60 South Sixth Street

28
Minneapolis, MN 55402

Telephone:  (612) 335-5070
Facsimile:   (612) 288-9696
*Attorneys for Plaintiff*
*FINJAN LLC*

**By Email**                                          Email: Finjan-PAN_Fish-Service@fr.com

Susan Morrison
Fish & Richardson P.C.
222 Delaware Avenue, 17th Floor
P.O. Box 1114
Wilmington, DE 19801
Telephone:  (858) 678-5070
Facsimile:   (858) 678-5099
*Attorneys for Plaintiff*
*FINJAN LLC*

**By Email**                                          Email: Finjan-PAN_Fish-Service@fr.com

Tracea Rice
Fish & Richardson P.C.
1000 Maine Ave. Ste. 1000
Washington, D.C. 20024
Telephone:  (202) 783-5070
Facsimile:   (202) 783-2331
*Attorneys for Plaintiff*
*FINJAN LLC*


Executed at San Francisco, California, this 17th day of May, 2021.


                                          By:  */s/ Christopher M. Meier*
                                                Christopher M. Meier