# Exhibit 7

**From:** Van Nort, Diek O.
**To:** Jared A. Smith; MoFo-PAN-Finjan
**Cc:** Finjan-PAN_Fish-Service
**Subject:** RE: Finjan/PAN: meet & confer week of May 31
**Date:** Sunday, June 13, 2021 11:54:58 PM

Hi Jared,

For the July 6, 2021 narrowing of prior art references, PAN agrees to: provide its list of obviousness combinations, including primary and secondary references for each combination; identify references subject to IPR estoppel if asserted alone or not in combination with a reference not subject to IPR estoppel (e.g., a prior art system); and describe the limitations and/or legal basis for the priority dates in the invalidity contentions. Regarding the uncharted references, PAN reserves the right to rely on those references as secondary references as cited in the invalidity contentions or in other previous invalidity contentions and patent challenges that PAN incorporated into to the invalidity contentions. PAN also may rely on the uncharted references for background (although, it is not necessary for PAN to identify in the invalidity contentions those references that it might rely on for background).

We are reviewing *Slot Speaker* that you identified for the first time during the meet and confer. We will provide a response to this soon. We note that PAN's invalidity contentions provide the same level of detail as the invalidity contentions that Finjan has produced from previous cases. Is there a reason that Finjan apparently did not find those contentions deficient as it did not move to strike those contentions as failing to give notice?

With respect to the Section 112 defenses, PAN agrees to provide additional description of those positions.

PAN disagrees with your suggestion that it has not complied with its discovery obligations to date. As I noted on our meet and confer, we are investigating whether there are additional relevant, responsive documents to produce in response to Finjan's RFPs. PAN already has produced a significant number of technical documents and its source code. It is puzzling how FInjan could argue that it is necessary to amend its contentions when, for over 12 months, PAN has provided Finjan access to PAN's source code—which ultimately defines how the accused products operate. Finjan had every opportunity to investigate the operation of PAN's products prior to its infringement contentions. PAN will oppose any attempt by Finjan to use future document productions to justify amendments to its contentions to add infringement theories based on features and/or functionality that Finjan could have identified in PAN's source code.

Best regards,
Diek

---

**From:** Jared A. Smith <jasmith@fr.com>
**Sent:** Tuesday, June 8, 2021 8:17 PM
**To:** Van Nort, Diek O. <DVanNort@mofo.com>; MoFo-PAN-Finjan <MoFo-PAN-Finjan@mofo.com>
**Cc:** Finjan-PAN_Fish-Service <Finjan-PAN_Fish-Service@fr.com>
**Subject:** RE: Finjan/PAN: meet & confer week of May 31

**External Email**

Counsel,

Thank you for the meet and confer discussion this morning. We write to summarize that discussion and the agreements reached.

We understand that PAN agreed to do the following by July 6, 2021 with its Preliminary Election of Asserted Prior Art:

- Provide a complete and definitive list of PAN's obviousness combinations for each Asserted Patent. That listing will include a specific identification of primary and secondary references for each combination.
- Provide a list of printed publication prior art references for each Asserted Patent that PAN asserts would be subject to IPR estoppel if asserted alone or not in combination with prior art systems.
- Provide narrative explanations for each patent where PAN disputes the asserted priority date, including which claim limitations PAN contends are not present in the provisional or other priority applications and PAN's legal bases for challenging certificates of correction or other priority issues related to prosecution of the applications that led to the Asserted Patents.
- You also confirmed PAN's position as to uncharted references as follows: those references may show background or the state of the art, and would only be used as part of an obviousness combination to the extent that certain portions of those references are cited in PAN's invalidity contentions as disclosing specific claim elements (e.g., within the "Exemplary Obviousness Combinations" sections for each Asserted Patent).

Please confirm these agreements. We also asked PAN to do the following in its contentions, and we understand that PAN is considering whether it will provide the requested information:

- Provide amended claim charts where PAN identifies specifically what in the prior art PAN contends satisfies each claim element from within the quoted text or figures. We provided you with *Slot Speaker Techs., Inc. v. Apple, Inc*., No. 13-cv-01161-HSG(DMR), 2017 WL 235049 (N.D. Cal. January 19, 2017), which we contend requires more detail than PAN provided in its charts. Notably, the defendant's invalidity charts in that case included more detail than PAN's current charts (such as some bolded text among the pasted text), yet the Court found as follows: "Apple does not explain how the bolded text and/or figures disclose each element of the limitation . . . Apple leaves it to Slot Speaker (and the court) to speculate." *Id*. at *4. "To comply with Rule 3-3(c)'s disclosure requirements, Apple must specifically identify where each limitation appears in the Anderson patent, or, at least narrow the range of possibilities (e.g., "apple considers the 'sound reflecting surface' to be one of the following…."). *Id*.
- Specifically articulate PAN's obviousness theories by explaining which limitations PAN contends are taught by any secondary references, to the extent such limitations are absent in any asserted primary reference. Finjan contends this is required by the Patent Local Rules and the case law. *See, e.g., Ironworks Patents v. Samsung Elecs. Co., Ltd*., No. 17-cv-01958-HSG(JSC), 2017 WL

4573366, at *3 (N.D. Cal. Oct. 13, 2017) ("It is impossible to determine from Samsung's disclosures what claims it contends are obvious and what combination of references renders the claim obvious. For example, for the '078 Patent it identifies the '646 patent (Hassan) as a primary reference and then identifies seven additional references that render some unidentified claim of the '078 patent obvious if one or more are combined with Hassan. But which references combined render the '078 patent obvious and for which claims? There is no way to tell. Thus, the disclosure is inadequate."); *Mitsubishi Elec. Corp. v. Sceptre, Inc.*, No. 2:14-cv-04994-ODW, 2015 WL 2369557, at *3 (N.D. Cal. May 18, 2015) (the "catch-all phrase 'any element of an asserted claim can easily be identified by cross-reference to the same particular claim element in other charted prior art reference to show that the element was known in the prior art'" was insufficient under Rule 3-3(b)).

- Provide narratives explaining PAN's theories for its § 112 defenses regarding written description, enablement, and indefiniteness. As we explained, providing just bullet points of limitations is insufficient. *See, e.g., MediaTek Inc. v. Freescale Semiconductor, Inc.*, No. 11-CV-5341 YGR, 2014 WL 690161, at *6 (N.D. Cal. Feb. 21, 2014). In MediaTek, the court struck defendant's written description theory because it failed to identify the specific limitation being challenged **and** failed to "explain in even the most basic terms why [defendant] contends that the written specification did not disclose" the limitation. *Id*.

Please let us know as soon as possible PAN's position on each of these requests.

Regarding IPR estoppel, once we have the information that PAN agreed to provide and its prior art narrowing, the parties will be in a better position to assess what, if any, disputes remain regarding IPR estoppel. Finjan reserves all rights on that issue.

Regarding document production, we specifically discussed PAN internal technical documents related to the Accused Products. PAN is locating, reviewing, and will produce responsive documents. PAN will provide an update on the expected timing for that production next week. As we have explained, Finjan may need to supplement its infringement contentions based on information that PAN to date has not produced or otherwise produced after Finjan served its infringement contentions (and that Finjan has diligently sought), so we cannot wait months for PAN to comply with its discovery obligations.

PAN otherwise confirmed it will not withhold any category of documents identified in Mr. Goter's May 28, 2021 letter, other than documents related to worldwide sales. You asked that we provide our basis for requesting those documents and you will consider it. We will provide that response in writing soon.

Best,
Jared

**Jared A. Smith** | Fish & Richardson P.C. | 858.678.4702

**From:** Jared A. Smith <jasmith@fr.com>
**Sent:** Monday, June 07, 2021 9:55 PM
**To:** Van Nort, Diek O. <DVanNort@mofo.com>; MoFo-PAN-Finjan <MoFo-PAN-Finjan@mofo.com>
**Cc:** Finjan-PAN_Fish-Service <Finjan-PAN_Fish-Service@fr.com>
**Subject:** RE: Finjan/PAN: meet & confer week of May 31

Diek,

Please see the attached correspondence.

Best,
Jared

**Jared A. Smith** | Fish & Richardson P.C. | 858.678.4702

**From:** Jared A. Smith
**Sent:** Monday, June 07, 2021 11:25 AM
**To:** 'Van Nort, Diek O.' <DVanNort@mofo.com>; MoFo-PAN-Finjan <MoFo-PAN-Finjan@mofo.com>
**Cc:** Finjan-PAN_Fish-Service <Finjan-PAN_Fish-Service@fr.com>
**Subject:** RE: Finjan/PAN: meet & confer week of May 31

Diek,

Finjan has reviewed PAN's June 4 letter, and will provide a written response later today. Finjan, however, believes that it is still necessary for the parties to meet and confer on the issues raised in Finjan's May 28 email. PAN's letter stated that it is available tomorrow (June 8) from 9:30am-10:30am. That works for Finjan, please use the following Zoom link:

https://fish.zoom.com/j/92650473947

Cell phone one-tap dial in:
US: +16699006833,,92650473947# or +14086380968,,92650473947#
Landline:
US: +1 669 900 6833 or +1 408 638 0968 or +1 646 876 9923 or 888 475 4499 or 877 853 5257
Meeting ID: 926 5047 3947

Best,
Jared

**Jared A. Smith** | Fish & Richardson P.C. | 858.678.4702

**From:** Van Nort, Diek O. <DVanNort@mofo.com>
**Sent:** Friday, June 04, 2021 9:58 PM
**To:** Jared A. Smith <jasmith@fr.com>; MoFo-PAN-Finjan <MoFo-PAN-Finjan@mofo.com>
**Cc:** Finjan-PAN_Fish-Service <Finjan-PAN_Fish-Service@fr.com>

**Subject:** RE: Finjan/PAN: meet & confer week of May 31
Hi Jared,
We disagree with your mischaracterization that PAN was unwilling to meet and confer. As I previously stated, a meet and confer was premature because we were investigating and considering the numerous issues that Finjan raised across at least three letters. Many of those issues were first raised hours before your meet and confer demand. Concerning your other comments and issues below, please see the attached letter.
Best regards,
Diek

---

**From:** Jared A. Smith <jasmith@fr.com>
**Sent:** Friday, June 4, 2021 8:21 AM
**To:** Van Nort, Diek O. <DVanNort@mofo.com>; MoFo-PAN-Finjan <MoFo-PAN-Finjan@mofo.com>
**Cc:** Finjan-PAN_Fish-Service <Finjan-PAN_Fish-Service@fr.com>
**Subject:** RE: Finjan/PAN: meet & confer week of May 31

**External Email**

---

Diek,

Finjan understands that PAN is unwilling to meet and confer on these issues this week, but with claim construction ongoing, we cannot wait for PAN's written response. By the end of today, please provide PAN's availability to meet and confer regarding these issues on Monday (6/7) and Tuesday (6/8). Finjan addresses PAN's response issue by issue below.

**Issue 1**: The cases PAN cites rely on a now-outdated view of the Federal Circuit's *Shaw* case, and the impact that case has on IPR estoppel. Under the old view, some courts found that IPR estoppel did not apply to grounds that were not raised or instituted in an IPR. *See Finjan, Inc. v. Blue Coat Sys., LLC*, 283 F. Supp. 3d 839, 856-57 (N.D. Cal. 2017) ("The Court adopts the approach of its sister court in this District and follows the broader interpretation of Shaw: § 315(e)(2) estoppel applies only to grounds that were both raised in the IPR petition and instituted in the IPR proceeding. Applied to the facts here, Blue Coat is not estopped under § 315(e)(2) from pursuing any of the invalidity combinations that it currently asserts against the '494 and '408 patents. None of the IPRs were instituted on these precise combinations."); *Verinata Health, Inc. v. Ariosa Diagnostics, Inc.*, No. 12-cv-05501, 2017 WL 235048, at *3 (N.D. Cal. Jan. 19, 2017) ("Indeed, limiting IPR estoppel to grounds actually instituted ensures that estoppel applies only to those arguments, or potential arguments, that received (or reasonably could have received) proper judicial attention.").

Subsequent cases from N.D. Cal. confirm that the Court now rejects that view, and instead applies IPR estoppel not only to raised or instituted grounds, but to any grounds that were raised or reasonably could have been raised. *See, e.g., Asetek Danmark A/S v. CoolIT Sys. Inc.*, No. 19-cv-00410-EMC, 2019 WL 7589209, at *5-6 (N.D. Cal. Dec. 30, 2019) (discussing impact of *Shaw* and *SAS* and an earlier district split and rejecting the outdated view from the cases cited by PAN); *In re Koninklijke Philips Patent Litig.*, No. 18-cv-01885, 2020 WL 7392868, at *24 (N.D. Cal. Apr. 13, 2020) (analyzing *Shaw* and subsequent cases and concluding, "Accordingly, IPR estoppel in this case extends to all grounds that could have been part of Google's IPR petition, not merely those that were actually raised.").

Indeed, in *Asetek* the Court noted that, "[u]nsurprisingly, all of the district courts—that have been brought to this Court's attention—that have considered the question whether non-petitioned grounds are estopped under the 'reasonably could have raised' language of § 315(e)(2) in the aftermath of *SAS* and *PGS Geophysical* have ruled that estoppel applies to non-petitioned grounds." *Asetek* at *6. The Court then went on to list cases from courts all over the country that have applied IPR estoppel in that way. *Id.* ("*See, e.g., GREE, INC., Plaintiff, v. SUPERCELL OY, Defendant.*, No. 219CV00071JRGRSP, 2019 WL 5677511, at *4 (E.D. Tex. Oct. 30, 2019); *Trustees of Columbia Univ. in the City of New York v. Symantec Corp.*, 390 F. Supp. 3d 665, 678–81 (E.D. Va. July 2, 2019); *Palomar Techs., Inc. v. MRSI Sys., LLC*, 373 F. Supp. 3d 322, 331–32 (D. Mass. 2019); *Am. Tech. Ceramics Corp. v. Presidio Components, Inc.*, No. 14CV6544KAMGRB, 2019 WL 365709, at *4 (E.D.N.Y. Jan. 30, 2019); *California Inst. of Tech. v. Broadcom Ltd.*, No. CV 16-3714 GW (AGRX), 2018 WL 7456042, at *3 (C.D. Cal. Dec. 28, 2018); *SiOnyx, LLC v. Hamamatsu Photonics K.K.*, 330 F. Supp. 3d 574, 602 (D. Mass. 2018).").

PAN's printed publication grounds indisputably could have been raised in the IPRs. Indeed, most of the prior art identified in our earlier letter **was already litigated in the IPRs**. Thus, PAN would be estopped even under the outdated case law that PAN cited. Regardless, under the current state of law, there is no justification for PAN to refuse to withdraw that printed publication prior art now.

As to your procedural question, in *Asetek Danmark*, the Court granted motions to strike invalidity contentions early in the case. *See Asetek Danmark*, 2019 WL 7589209 at *1 ("Currently pending before the Court is CoolIT's Motion to Strike Asetek's Invalidity Contentions Against CoolIT's '330 patent, and Asetek's Motion to Strike CoolIT System's Invalidity Contentions against Asetek's '764 patent."); *id.* at *9 ("Given that a skilled searcher performing a diligent search could have located Hamilton, Chang, and Anderson, and given that Asetek also had actual knowledge of Hamilton at the time they submitted their petition for IPR, the Court GRANTS CoolIT's Motion to Strike."). In the *Verinata Health* case that PAN cited, the defendant argued that a motion to strike invalidity contentions was procedurally improper. The Court disagreed and analyzed the motion to strike on the merits, ultimately granting portions of it, and denying other portions based on the now-outdated view of *Shaw* discussed above. *Verinata Health*, 2017 WL 235048 at *1 ("Before the Court is plaintiffs' motion to strike portions of defendants' invalidity contentions."); *id.* at *2 ("...the Court will proceed with an analysis of plaintiffs' motion to strike.").

Thus we see no reason why Finjan should be forced to expend resources and time litigating issues that PAN already lost at the PTAB (or reasonably could have lost at the PTAB), and the cases confirm early resolution of this issue is proper.

**Issue 2**: Section 112 contentions "must meet [the] threshold of giving the other party sufficient notice for it to engage in meaningful discovery and preparation of its case." *MediaTek Inc. v. Freescale Semiconductor, Inc.*, No. 11-CV-5341 YGR, 2014 WL 690161, at *6 (N.D.

Cal. Feb. 21, 2014). In *MediaTek*, the court struck defendant's written description theory because it failed to identify the specific limitation being challenged and failed to "explain in even the most basic terms why [defendant] contends that the written specification did not disclose" the limitation. *Id*. Although PAN's contentions lists specific limitations, it fails to explain its theories even in the most basic terms. For example, besides a few boilerplate paragraphs copied and pasted for each of the asserted patents, the full extent of PAN's written description theories for the '633 Patent are as follows: "The following claim limitations of the Asserted Claim are invalid for lack of written description: "mobile protection code"[;] "downloadable information destination." This is not sufficient notice.

The order from Judge Freemen that PAN cites is inapposite. There the court found Cisco's theories were sufficiently disclosed because it provided at least *some* explanation of why there was insufficient written description or enablement. *See Finjan, Inc. v. Cisco Sys. Inc.*, No. 17:cv-00072-BLF, Dkt No. 660, at 9-10. In contrast, PAN provides *no* explanation. Further, the *Cisco* court's unwillingness to strike expert reports on the eve of trial has little bearing on whether a court would require additional explanations and disclosures where the patentee seeks further clarification of the given theories early in the case.

Notably, PAN's response regarding its deficient invalidity contentions does not address its failure to identify obviousness combinations. Does PAN have a response as to this specific deficiency?

**Issue 3**: For clarity, Finjan has sent PAN the following letters regarding its deficient document production: Finjan's March 22, 2021 letter from Smith to Van Nort; Finjan's April 23, 2021 letter from Goter to Van Nort; and Finjan's May 28, 2021 letter from Goter to Van Nort. Finjan's May 28 letter identifies the deficiencies in PAN's document production of which Finjan is currently aware, but most were carried over from the April 23 letter because PAN failed to cure them.

**Issue 4**: Regarding Traps, Finjan raised the issue of PAN's production on March 12, 2021—20 days before Finjan's infringement contentions were due—yet this is the first time PAN has notified Finjan about its alleged difficulty in producing later versions of Traps source code. When will PAN make this new Traps source code available for inspection? Finjan reserves its right to supplement its infringement contentions based on this new source code not previously available to Finjan.

As Finjan stated below, PAN's source code production is deficient in many ways, not just for Traps. As another example, Finjan's March 12, 2021 letter from Smith to Van Nort also notified PAN that its production was missing what Finjan described at the time as "Traps-Reflector-server source code." Finjan later determined that this reflector server was in fact a Cuckoo server and that PAN had not produced that source code. Finjan's March 23, 2021 email from Smith to Van Nort notified PAN that it had failed to produce the Cuckoo source code that corresponds to Traps versions 3.0 and 3.1.3. And Finjan's May 25, 2021 letter from Smith to Van Nort provided PAN with further explanation of the relevance of Cuckoo source code.

Best,
Jared

**Jared A. Smith** | Fish & Richardson P.C. | 858.678.4702

**From:** Van Nort, Diek O. <DVanNort@mofo.com>
**Sent:** Wednesday, June 02, 2021 4:19 PM
**To:** Jared A. Smith <jasmith@fr.com>; MoFo-PAN-Finjan <MoFo-PAN-Finjan@mofo.com>
**Cc:** Finjan-PAN_Fish-Service <Finjan-PAN_Fish-Service@fr.com>
**Subject:** RE: Finjan/PAN: meet & confer week of May 31

[This email originated outside of F&R.]

Hi Jared,

As noted below, we have been looking into the issues below—most of which you raised for the first time on Friday, hours before you demanded a meet and confer on the same topics. We have answers to some of Finjan's complaints and are still investigating others. For most of the issues you have raised we believe that we can address them without the need for motion practice. We will send you a written response this week, and once you have reviewed it, you can let us know if you still believe a meet and confer is necessary.

For item 1, we are reviewing Finjan's May 25 letter and are preparing a response. We note that there are several N.D. Cal. cases that take a much more limited view of IPR estoppel. See, e.g., *Finjan, Inc. v. Blue Coat Systems, LLC*, 238 F. Supp. 3d 839, 856 (N.D. Cal 2017); *Verinata Health, Inc. v. Ariosa Diagnostics, Inc.*, 2017 WL 235048, at *2–3 (N.D. Cal. Jan. 19, 2017). Additionally, while we are still investigating this issue, we also have not seen any cases where courts have applied IPR estoppel at the invalidity contention stage. Does Finjan have any other cases that supports it position?

For item 2, we are investigating Finjan's May 28 letter and will respond in due course. Finjan's demand for a meet and confer on this issue on the same day that it provided the letter is unreasonable. We note that Finjan has taken weeks to respond to PAN's letters and days to respond to PAN's meet and confer requests. We also note that at least with respect to Finjan's Section 112 arguments, Judge Freeman previously rejected Finjan's arguments that more detail is necessary for Section 112 positions at the invalidity contention stage. *See, e.g., Finjan, Inc. v. Cisco Sys. Inc.*, No. 17:cv-00072-BLF, Dkt No. 660, at 7-10 (May 22, 2020). Is Finjan aware of any cases that supports its position?

For item 3, again, we are investigating Finjan's May 28 letter and will respond in due course. PAN has met its discovery obligations under Patent L.R. 3-4 and will comply with its other discovery obligations, including investigating whether there are additional responsive and relevant documents that can be collected and produced. You note a series of letters starting March 22. It is unclear to which letters you are referring. PAN responded to several of your letters over the past several months. Does the May 28 letter contain a complete list of the issues to which Finjan believes it has not received a response?

For Item 4, we are collecting additional Traps source code and will produce it soon. The Traps team is mainly in Israel, which has introduced complications in the collection and transfer of source code. We will confirm the timing of this code's availability this week.

Best regards,
Diek

**From:** Jared A. Smith <jasmith@fr.com>
**Sent:** Wednesday, June 2, 2021 2:06 PM
**To:** MoFo-PAN-Finjan <MoFo-PAN-Finjan@mofo.com>
**Cc:** Finjan-PAN_Fish-Service <Finjan-PAN_Fish-Service@fr.com>
**Subject:** RE: Finjan/PAN: meet & confer week of May 31

**External Email**

Counsel,

We haven't heard from you. Please provide your availability for a meet and confer tomorrow (6/3) or this Friday (6/4).

Best,
Jared

**Jared A. Smith** | Fish & Richardson P.C. | 858.678.4702

**From:** Jared A. Smith
**Sent:** Friday, May 28, 2021 3:46 PM
**To:** 'MoFo-PAN-Finjan' <MoFo-PAN-Finjan@mofo.com>
**Cc:** Finjan-PAN_Fish-Service <Finjan-PAN_Fish-Service@fr.com>
**Subject:** Finjan/PAN: meet & confer week of May 31

Counsel,

Please provide your availability next week for a meet and confer to discuss the following issues:

1) **PAN's impermissible use of patents and printed publications**. Finjan's May 25, 2021 letter from Smith to Van Nort regarding PAN's invalidity contentions explains that PAN is estopped under 35 U.S.C. § 315(e)(2) from asserting invalidity on any §§ 102 or 103 grounds based on patents or printed publications against the '633, '154, and '408 Patents that it "raised or reasonably could have raised" in each of its respective IPRs against those patents resulting in a final written decision. Finjan requested that PAN provide its availability to meet and confer before June 4. PAN has not responded. Finjan intends to raise this with the Court if PAN does not agree to amend its contentions to remove the improper references.

2) **PAN's deficient invalidity contentions**. Finjan's May 28, 2021 letter from Smith to Van Nort regarding PAN's invalidity contention deficiencies identifies numerous issues with PAN's contentions including, among other things, failure to identify obviousness combinations and to adequately disclose its § 112 theories. Finjan requests a meet and confer on this issue to see if the parties can reach an agreement on PAN amending its contentions to provide sufficient notice of its theories to Finjan.

3) **PAN's deficient production of documents**. Finjan has sent PAN a series of letters starting on March 22, 2021, identifying the deficiencies in PAN's document production. PAN has made no effort to address these deficiencies, and PAN's recent production accompanying its invalidity contentions did little to cure them. For clarity, Finjan's May 28, 2021 letter from Goter to Van Nort identifies PAN's current document production deficiencies.

4) **PAN's deficient production of source code**. PAN's source code continues to be deficient in many ways. For example, Finjan's March 12, 2021 letter from Smith to Van Nort identifies a number of deficiencies in PAN's source code production, including the fact that PAN has produced only versions 3.0 and 3.1.3 of Traps source code. According to PAN, Traps version 3.1 was released in September 2014 with end-of-life in September 2015. All subsequent versions of Traps—and what appears to be its successor product, Cortex XDR—up through present day are missing from PAN's source code production as of May 25, 2021 (days after PAN's production accompanying its invalidity contentions).

Best,
Jared

**Jared A. Smith** | Associate | Fish & Richardson P.C.
858.678.4702 direct | jasmith@fr.com | fr.com | bio

```
**************************************************************************************
This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged
information. Any unauthorized use or disclosure is prohibited. If you are not the intended recipient, please contact the
sender by reply email and destroy all copies of the original message.
**************************************************************************************
```

===========================================================================

This message may be confidential and privileged. Use or disclosure by anyone other than an intended addressee is prohibited. If you received this message in error, please delete it and advise the sender by reply email. Learn about Morrison & Foerster LLP's Privacy Policy.

```
**************************************************************************************
This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged
information. Any unauthorized use or disclosure is prohibited. If you are not the intended recipient, please contact the
sender by reply email and destroy all copies of the original message.
**************************************************************************************
```

===========================================================================

This message may be confidential and privileged. Use or disclosure by anyone other than an intended addressee is prohibited. If you

received this message in error, please delete it and advise the sender by reply email. Learn about Morrison & Foerster LLP's [Privacy Policy](#).

```
************************************************************************************************
This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged
information. Any unauthorized use or disclosure is prohibited. If you are not the intended recipient, please contact the
sender by reply email and destroy all copies of the original message.
************************************************************************************************
```