# Exhibit 8

1   MICHAEL A. JACOBS (CA SBN 111664)
    MJacobs@mofo.com
2   MATTHEW A. CHIVVIS (CA SBN 251325)
    MChivvis@mofo.com
3   DIEK O. VAN NORT (CA SBN 273823)
    DVanNort@mofo.com
4   MORRISON & FOERSTER LLP
    425 Market Street
5   San Francisco, California 94105-2482
    Telephone: (415) 268-7000
6   Facsimile: (415) 268-7522

7   RUDY Y. KIM (CA SBN 99426)
    RudyKim@mofo.com
8   COLETTE REINER MAYER (CA SBN 263630)
    CRMayer@mofo.com
9   MORRISON & FOERSTER LLP
    755 Page Mill Road
10  Palo Alto, California 94304-1018
    Telephone: (650) 813-5600
11  Facsimile: (650) 494-0792

ROSE S. LEE (CA SBN 294658)
RoseLee@mofo.com
MORRISON & FOERSTER LLP
707 Wilshire Boulevard, Suite 6000
Los Angeles, California 90017-3543
Telephone: (213) 892-5200
Facsimile: (213) 892-5454

ERIC W. LIN (*Pro Hac Vice*)
Elin@mofo.com
MICHAEL J. DESTEFANO (*Pro Hac Vice*)
Mdestefano@mofo.com
MORRISON & FOERSTER LLP
250 West 55th Street
New York, New York 10019-9601
Telephone: (212) 468-8000
Facsimile: (212) 468-7900

12  Attorneys for Defendant
    PALO ALTO NETWORKS, INC.

13

14                    UNITED STATES DISTRICT COURT

15                  NORTHERN DISTRICT OF CALIFORNIA

                            OAKLAND DIVISION
16

17

18  FINJAN LLC,                        Case No.    4:14-CV-04908-PJH

19              Plaintiff,             **DEFENDANT PALO ALTO
                                       NETWORKS, INC.'S
                                       SUPPLEMENTAL INVALIDITY
20      v.                             CONTENTIONS AND RELATED
                                       DISCLOSURES PURSUANT TO
21  PALO ALTO NETWORKS, INC.,          PATENT LOCAL RULES 3-3
                                       AND 3-4**
22              Defendant.

23                                     Courtroom:  3, 3rd Floor
                                       Judge:  Honorable Phyllis J. Hamilton
24

25

26

27

28

## I.     PATENT LOCAL RULE 3-3 INVALIDITY CONTENTIONS

In accordance with Patent Local Rules 3-3 and 3-4, Defendant Palo Alto Networks, Inc. ("PAN") submits these supplemental invalidity contentions for U.S. Patent No. 7,418,731 ("the '731 Patent"), U.S. Patent No. 7,647,633 ("the '633 Patent"), U.S. Patent No. 8,141,154 ("the '154 Patent"), and U.S. Patent No. 8,225,408 ("the '408 Patent) (collectively, the Asserted Patents").PAN's Contentions address the following claims elected by Finjan LLC ("Finjan") in its Preliminary Election of Asserted Claims, served on June 21, 2021.  Finjan has agreed to dismiss without prejudice subject to the appeal of the invalidity determination in the *ESET* case all claims asserted against PAN related to U.S. Patent Nos. 6,804,780 ("the '780 Patent"), 7,613,926 ("the '926 Patent"), and 8,677,494 ("the '494 Patent").  PAN reserves the right to supplement its Contentions should Finjan's allegations related to the '780, '926 and '494 Patents remain in the case or should Finjan later reassert any claims of the '780, '926 or '494 Patents:

| U.S. Patent No. | Asserted Claims |
|---|---|
| 7,418,731 | 1-3, 14-15, 17 |
| 7,647,633 | 14 |
| 8,141,154 | 1-2, 4, 6, 7, 10 |
| 8,225,408 | 1, 3-8, 22 |

PAN's discovery and investigation in connection with this lawsuit are ongoing, and these disclosures are based on PAN's current knowledge and understanding of the '731, '633, '154, and '408 Patents, Finjan's Infringement Contentions, the prior art, and other facts and information available at this time in the present action.  PAN reserves the right, to the extent permitted by the Court and the applicable rules, to amend, modify, and/or supplement these Contentions and associated document production if PAN obtains additional or different information or if PAN asserts additional or different claims or otherwise modifies its assertions.  In particular, Finjan's deficient Infringement Contentions fail to provide PAN with adequate notice as to Finjan's infringement theories.  Thus, PAN reserves the right to amend, modify, or supplement the information provided herein, including identifying, charting, and relying on additional references.

Furthermore, the Court has not yet construed the Asserted Claims in the present action. Accordingly, PAN reserves the right to amend, modify, or supplement these Contentions should any of the claim limitations be construed by the Court.  PAN further reserves the right to amend, modify, or supplement these Contentions in response to any proposed claim construction or alleged supporting evidence offered by Finjan, any report from any expert witness for Finjan regarding claim construction, any claim construction briefing filed by Finjan, and any position taken by Finjan concerning claim construction, infringement, validity, or other relevant issues.

To the extent that these Contentions reflect constructions of claim terms that may be consistent with or implicit in Finjan's Infringement Contentions, no inference is intended or should be drawn that PAN agrees with such claim constructions.  These Contentions are not intended to reflect PAN's claim construction positions, which will be disclosed in due course in accordance with this Court's Scheduling Order.  Moreover, PAN's Contentions may reflect alternative positions as to claim construction and claim scope.  Nothing in this document should be construed as an admission that PAN agrees with Finjan's assertions or that any claim is valid, enforceable, or infringed.

Finjan has not provided sufficient evidence of conception and reduction to practice of the '731, '633, '154, and '408 Patents.  Thus, the '731, '633, '154, and '408 Patents are not entitled to any date of invention earlier than their effective filing date.  To the extent Finjan is able to assert an earlier date of invention for the '731, '633, '154, and '408 Patents, PAN further reserves its right to amend, modify, or supplement its Contentions, including, but not limited to its identification and production of prior art.

To the extent a prior art reference is identified as part of one or more combinations of references under 35 U.S.C. § 103, PAN reserves the right to chart that reference independently under 35 U.S.C. § 102 at a later date should circumstances dictate.  Further, in many instances where a particular contention calls for combining references, any one of a number of references can be combined.  The inclusion of certain exemplary combinations of prior art references does not exclude other combinations.

3

1    Moreover, as certain prior art references and inventions are described in multiple related

2    patents or publications with similar or identical specifications or disclosures, to the extent PAN

3    has identified a citation in one reference, PAN reserves the right to rely on parallel or similar

4    citations in related patents or publications.  Persons of ordinary skill in the art ("POSITA") would

5    read a prior art reference and understand a prior art invention as a whole and in the context of

6    other publications and known technologies.  Therefore, to understand and interpret any specific

7    statement or disclosure of a prior art reference or invention, such persons would rely on other

8    information within the reference or invention, along with other publications and known

9    technologies.  PAN reserves the right to establish what was known to persons of ordinary skill in

10   the art through other publications, products, and/or testimony.  PAN also reserves the right to rely

11   on uncited portions of the prior art references, other publications, and testimony to establish that a

12   POSITA would have been motivated to combine certain of the cited references so as to render the

13   claims obvious.

14       PAN may also rely on other documents and information, including inventor admissions,

15   concerning the scope of the Asserted Claims, and prior art relevant to the Asserted Claims, found

16   in:  the '731, '633, '154, and '408 Patents, the patent prosecution histories for the '731, '633,

17   '154, and '408 Patents, and related patents and/or patent applications; any deposition testimony

18   of any inventor of the '731, '633, '154, and '408 Patents; any previous trial testimony of any

19   inventor of the '731, '633, '154, and '408 Patents; and any papers filed or any evidence produced

20   or submitted by Finjan in connection with this litigation, any pending litigation, or any previous

21   litigation, related to the '731, '633, '154, and '408 Patents.  In particular, PAN reserves the right

22   to contend that the Asserted Claims are invalid under 35 U.S.C. § 102(f) in the event PAN

23   obtains evidence that the inventors named on the '731, '633, '154, and '408 Patents did not

24   invent (either alone or in conjunction with others) the subject matter claimed in the '731, '633,

25   '154, and '408 Patents.

26       PAN's investigation of prior art systems and products is ongoing.  PAN has diligently

27   sought and will continue to diligently seek discovery from Finjan and third parties to

28   demonstrate earlier invention and reserves its right to contend that the Asserted Claims are

4

invalid under 35 U.S.C. § 102(g).  Only recently has Finjan produced relevant discovery requested by PAN regarding, among other things, prior art systems and products.  Accordingly, PAN has timely supplemented its invalidity contentions herein to account for materials only recently produced by Finjan.  PAN reserves the right to raise any such or further deficiencies with Finjan and/or the Court as needed and further reserves the right to amend, modify, and/or supplement its Contentions.  PAN has also sought discovery and is continuing to seek discovery on the issues of public use and/or the on-sale bar, which discovery is ongoing, and reserves its right to contend that the Asserted Claims are invalid under 35 U.S.C. § 102(b).  PAN's further investigation and/or subsequent discovery from Finjan or third parties with knowledge regarding prior art systems and products may reveal additional relevant prior art systems and products and/or further information regarding the systems and products in these Contentions.  PAN reserves the right to amend, modify, and/or supplement these Contentions, based on further and subsequent investigation and discovery.

PAN has received initial production of documents from third parties, including Sophos, Trend Micro, and Check Point in response to PAN's subpoenas.  PAN is reviewing these documents and will amend, modify, and/or supplement its Contentions as necessary and/or as further productions are made from these parties, including source code productions.

In addition to the prior art identified below and the accompanying invalidity claim charts, PAN also incorporates by reference any invalidity contentions, identified prior art, or invalidity claim charts disclosed at any date by any party to any other litigation or U.S. Patent & Trademark Office proceeding involving the '731, '633, '154, and '408 Patents or any related patent.  PAN also hereby incorporates by reference the prior art, invalidity grounds, and expert testimony submitted in connection with any petitions for *inter partes* review of the '731, '633, '154, and '408 Patents.

For each Asserted Claim, PAN:  (a) identifies each currently known item of prior art that either anticipates or renders obvious each asserted claim; (b) specifies whether each such item of prior art anticipates or renders obvious the applicable claims; and (c) identifies combinations of prior art references which render obvious the applicable claims.  PAN's identification of

5

1   obviousness combinations may be found in PAN's attached Appendix A.

2       Based on PAN's present understanding of the Asserted Claims and/or Finjan's proposed

3   construction of the claims, as set forth in Finjan's Infringement Contentions, and proposed

4   constructions to date, PAN has identified grounds for invalidating asserted claims based on

5   indefiniteness, enablement, or written description under 35 U.S.C. § 112.  PAN is not adopting

6   Finjan's proposed constructions, nor is PAN agreeing that any of Finjan's proposed constructions

7   are correct.  PAN reserves all rights to advance claim construction positions different from

8   Finjan's proposed constructions.

9       Moreover, Finjan's deficient Infringement Contentions fail to provide PAN with adequate

10  notice as to Finjan's infringement theories.  In light of the deficiencies in Finjan's Infringement

11  Contentions, PAN reserves the right to amend, modify, and/or supplement these Contentions to

12  further identify bases for invalidity under 35 U.S.C. § 112, ¶¶ 1, 2.  PAN's Contentions shall not

13  be construed as an admission that any claim construction advanced by PAN in this case is in any

14  way inconsistent, flawed or erroneous.  Nor should these Contentions prevent PAN from

15  advancing claim construction and/or non-infringement positions in lieu of, in addition to, or as an

16  alternative basis for, its invalidity positions.  Further, PAN's Contentions shall not be construed

17  as an admission of or acquiescence to Finjan's purported construction of the claim language or of

18  other positions advanced by Finjan during the course of this litigation.

19      Finjan also has failed to timely update its production of materials from its other cases.

20  PAN incorporates the prior art, claims charts, and invalidity theories disclosed, listed and/or

21  asserted by any entity during the course of other litigation (past, present/ongoing, or future) or

22  patent office challenges (either reexaminations or IPRs).  Finjan failed to timely update its

23  production of these materials prior to PAN's May 17, 2021 invalidity contentions deadline, which

24  prejudiced PAN in its preparation of those contentions.  Finjan thereafter sent a portion of these

25  requested materials to PAN on June 2, 2021.  PAN amends its invalidity contentions in light of

26  these recently acquired materials, and reserves the right to rely on any prior art reference, prior art

27  combination, motivation to combine, invalidity theory, and/or materials disclosed in other

28  proceedings.

6

1

2

### A.     Invalidity of the '731 Patent
####         1.     Priority Date

Finjan alleges that each of the Asserted Claims of the '731 Patent are entitled to the

priority date of November 8, 1996.  (Finjan's Initial Disclosure of Asserted Claims and

Infringement Contentions at 20.)  Finjan apparently alleges that the Asserted Claims of the

'731 Patent are entitled to the benefit of the November 8, 1996 filing date of U.S. Provisional

App. No. 60/030,639, which later matured into U.S. Patent No. 6,092,194.  Neither the

'194 Patent, nor any of the other patents in the ancestry of the '731 Patent, however, discloses the

subject matter claimed by the Asserted Claims of '731 Patent.

Finjan's claimed priority cannot be correct because the Asserted Claims of the '731 Patent

cannot draw priority even to parent application of the '731 Patent.  The '731 Patent issued as a

continuation-in-part of the previously asserted '780 Patent.  The '780 Patent was filed on March

30, 2000, and the '731 Patent was filed on May 3, 2004.  "For a claim in a later-filed application

to be entitled to the filing date of an earlier application under 35 U.S.C. § 120 (1994), the earlier

application must comply with the written description requirement of 35 U.S.C. § 112, ¶ 1

(1994)."  *Tronzo v. Biomet, Inc.*, 156 F. 3d 1154, 1158 (Fed. Cir. 1998).  A disclosure in the

parent application which merely renders the later-claimed invention obvious is insufficient for

meeting the written description requirement.  *Id.*  The disclosure in the parent application must

exist for each and every limitation for each asserted claim.  *Id.*  As such, the specification of the

'780 Patent must satisfy the written description requirement of each and every claim element in

the Asserted Claims of the '731 Patent.  Otherwise, the '731 Patent cannot claim the benefit of

any earlier date than its own filing date: May 3, 2004.  In fact, the written description of the '780

Patent fails to describe the subject matter of all claim elements in the Asserted Claims of the '731

Patent.  For example, "caching" is a critical subject matter element of the claims of the '731

Patent.  In claim 1 of the '731 Patent, there are unique elements directed to "a file cache," "a

security profile cache," and "a security policy cache."  Likewise, independent claims 14 and 17

possess elements which claim "a file cache" and "a security profile cache."  All Asserted

dependent claims of the '731 Patent depend on one of claims 1, 14 or 17.  The specification of the

7

'780 Patent fails to disclose any description of file caching, security profile caching, or security policy caching.  Moreover, the concept of caching is completely silent in the specification of the '780 Patent.  Without the disclosure of this concept, the specification of the '780 Patent fails to comply with the written description requirement for the Asserted Claims of the '731 Patent.  On this basis alone, the Asserted Claims of the '731 Patent are unable to draw priority any earlier than May 3, 2004.

Alternatively, the Asserted Claims of the '731 Patent are unable to draw priority to November 6, 1998, the filing date of Provisional Patent Application No. 60/030639 ("the '639 Application").  Similar to the issues with the specification of the '780 Patent, the '639 Application does not disclose "a file cache," "a security profile cache," nor a "security policy cache."  Without the disclosure of this concept, the '639 Application fails to comply with the written description requirement of the Asserted Claims of the '731 Patent.  Thus, based on the information presently available to PAN, the earliest date to which the '731 Patent may claim priority is May 3, 2004, the date on which the application that issued as the '731 Patent was filed, or November 6, 1997, the date on which the application that later issued as the '194 Patent was filed.

## 2.     Patent L.R. 3-3(a) Identification of Prior Art

Subject to the reservations of rights above, PAN identifies prior art that anticipates and/or renders obvious one or more of the Asserted Claims of the '731 Patent.  The prior art references identified are also relevant to show the state of the art and reasons and motivations for making improvements, additions, modifications, and combinations.

In addition, PAN incorporates the prior art, claims charts, and invalidity theories disclosed, listed and/or asserted by any entity during the course of other litigation (past, present/ongoing, or future) or patent office challenges (either reexaminations or IPRs).  Finjan has failed to timely update its production of these materials, which has prejudiced PAN in its preparation of these contentions.  PAN reserves the right to rely on any prior art reference, prior art combination, motivation to combine, invalidity theory, and/or materials disclosed in these other proceedings.  At least the following prior art references anticipate and/or render obvious the

8

Asserted Claims of the '731 Patent, and/or illustrate the state of the art at the time of the alleged invention:

### a.     Patent Prior Art

| Ref. No. | Publication No. | Short Name | Filing Date | Publication Date | Priority Date |
|---|---|---|---|---|---|
| 1. | U.S. Patent No. 6,088,803 | "Tso" | December 30, 1997 | July 11, 2000 | March 27, 1997 |
| 2. | U.S. Patent No. 6,170,012 | "Coss" | September 12, 1997 | January 2, 2001 | September 12, 1997 |
| 3. | U.S. Patent No. 6,038,601 | "Lambert" | July 21, 1997 | March 14, 2000 | July 21, 1997 |

### b.     Non-Patent Publication Prior Art

| Ref. No. | Publication | Short Name | Publication Date |
|---|---|---|---|
| 1. | Proxy Servers and Databases for Managing Web-based Information | "Thomson" | May 1997 |
| 2. | Trust Management for the World Wide Web | "Chu" | June 13, 1997 |

PAN additionally identifies and relies on each of the additional patent or publication references that describe or are otherwise related to the prior art systems identified below.

### c.     System or Product Prior Art

PAN sets forth numerous prior art products or systems in the table below.  For such prior art products and systems, PAN has identified, based on its current knowledge, approximate dates on which such products were sold, on sale, made, known, and/or used in the U.S.  PAN's investigation of prior art products and systems is ongoing.  Further information and/or documents regarding such products and their sale, offer for sale, and use dates will be produced or disclosed as it is (they are) obtained in discovery or otherwise becomes available to PAN.  PAN reserves the right to amend, modify, and/or supplement these Contentions based on further and subsequent investigation and discovery.  Additionally, PAN reserves the right to rely on the documents identified below as standalone prior art references separate from the prior art system or product they describe.

9

PAN additionally identifies and relies on any system, product, or public knowledge or use that embodies or otherwise incorporates any of the prior art patents and publications listed above. PAN reserves the right to identify and rely on systems that represent different versions or are otherwise related variations of the identified products and systems.

| Ref No. | System Name | Short Name | Date Made, Known, Used, Sold, or On Sale |
|---|---|---|---|
| 1. | Squid System | Squid | July 1996 |
| 2. | VICEd System | VICEd | January 1997 |
| 3. | SurfinGate System | SurfinGate | October 31, 1996 |
| 4. | Checkpoint Firewall-1 System | Checkpoint Firewall-1 | October 7, 1996 |

### (i)     Squid System

Squid was sold, on sale, made, known, and/or used at least by July 1996.  The features, operations, and functionality of Squid are described throughout the documentation produced in this case.  These documents include:

- Beta version available at http://squid.mirror.colo-serv.net/archive/1.0.beta/1.0.beta1/ChangeLog), initial release July 1996

### (ii)     VICEd System

VICEd was sold, on sale, made, known, and/or used at least by 1997.  The features, operations, and functionality of VICEd are described throughout the documentation produced in this case.  These documents include:

- J. S. Lee, J. Hsiang, and P. H. Tsang, "A Generic Virus Detection Agent on the Internet," Proceedings of the Thirtieth Hawaii International Conference on System Science, Vol. 4, Jan. 1997, pp. 210-219.

### (iii)     SurfinGate System

PAN's current understanding is that Finjan's SurfinGate System was sold, on sale, made, known, and/or used at least as early as October 31, 1996.  The features, operations, and functionality of the SurfinGate System are described throughout documentation provided to PAN

10

by Finjan at FINJAN-PAN 383079-383126, FINJAN-PAN 400862-FINJAN-PAN 400963.  PAN incorporates by reference information it has received to date concerning the SurfinGate System product via Finjan, Juniper Networks' Amended Invalidity contentions, and Check Point Software Technologies' Invalidity Contentions.  PAN reserves the right to seek discovery from Finjan concerning the SurfinGate product and supplement its contentions accordingly.

### (iv)    Check Point Firewall-1

PAN's current understanding is that the Check Point Firewall-1 System was sold, on sale, made, known, and/or used at least as early as October 7, 1996.  The features, operations, and functionality of the Check Point Firewall-1 System are described throughout documentation provided to PAN by Finjan at FINJAN-PAN 382383-382499.  PAN incorporates by reference information it has received to date concerning the Check Point Firewall-1 product via Finjan and Check Point Software Technologies' Invalidity Contentions.  PAN reserves the right to supplement its contentions as to Check Point Firewall-1 based on any discovery it receives from Check Point.

### d.    35 U.S.C. § 102(f)

PAN reserves the right to assert that the Asserted Claims are invalid under 35 U.S.C. § 102(f) in the event PAN obtains additional evidence that the inventors named in any of the Asserted Patents did not invent the subject matter claimed therein.  Should PAN obtain such evidence, it will provide the name of the person(s) from whom and the circumstances under which the alleged invention or any part of it was derived.

### e.    35 U.S.C. § 102(g)

PAN reserves the right to assert that the Asserted Claims are invalid under 35 U.S.C. § 102(g) in the event PAN obtains additional evidence that any of the inventions claimed in the Asserted Patents were made in the United States by another inventor who had not abandoned, suppressed or concealed it, prior to the alleged invention by the applicant of the Asserted Patents. Should PAN obtain such evidence, it will provide the identities of the persons or entities involved

1    in and the circumstances surrounding the making the inventions before the patent applicants.

2                    **3.        Patent L.R. 3-3(b) Anticipation and Obviousness**

3            The references in Appendix A, attached hereto, alone or in combination with the

4    knowledge of one skilled in the art, anticipate or render obvious the Asserted Claims of the '731

5    Patent.  Within Appendix A, PAN has provided a listing of combinations and indicated each

6    reference which both anticipates and renders obvious any particular asserted claim of the '731

7    Patent.  In addition to the attached Appendix A, PAN incorporates by reference herein each and

8    every reference included in its May 17, 2021 Invalidity Contentions.

9                         **a.        Prior Art Combinations**

10           All of the Asserted Claims of the '731 Patent are obvious based on one or more

11   combinations of the prior art references above.  The sections below provide motivations to

12   combine the prior art references above.  These obviousness combinations are provided in the

13   alternative to PAN's anticipation and single-reference obviousness contentions and are not to be

14   construed to suggest that any reference included in the combination is not itself anticipatory or

15   would not render the Asserted Claims obvious in light of the knowledge of a person having

16   ordinary skill in the art.  PAN also hereby incorporates by reference the prior art, invalidity

17   grounds, and expert testimony submitted in connection with any petitions for *inter partes* review

18   of the '731 Patent.

19                         **b.        Motivation to Combine**

20           A POSITA would have been motivated to combine the preceding references for any

21   number of reasons, such as the following exemplary reasons.  Teachings, suggestions,

22   motivations, and/or reasons to modify any of the references and/or to combine any two or more of

23   the references can come from many sources, including the prior art, common knowledge,

24   common sense, predictability, expectations, industry trends, design incentives or need, market

25   demand or pressure, market forces, obviousness to try, the nature of the problem faced, and/or

26   knowledge possessed by a POSITA.

27           Although a patent claim may be invalidated based on a teaching-suggestion-motivation

28   ("TSM") rationale—*i.e.*, that some teaching, suggestion, or motivation in the prior art that would

                                                     12

have led one of ordinary skill to modify the prior-art reference or to combine prior-art reference teachings to arrive at the claimed invention—the Supreme Court identified additional rationales in *KSR International Co. v. Teleflex Inc.*, 550 U.S. 398 (2007).  The following of these rationales apply here:

> (A) the Asserted Claims combine prior-art elements according to known methods to yield predictable results;

> (B) the Asserted Claims involve the simple substitution of one known element for another to obtain predictable results;

> (C) the Asserted Claims involve the use of a known technique to improve similar devices (methods, or products) in the same way;

> (D) the Asserted Claims apply a known technique to a known device (method, or product) ready for improvement to yield predictable results;

> (E) the Asserted Claims involve combinations of prior-art references that would have been "obvious to try"'—a person of ordinary skill in the art could have reached the Asserted Claims by choosing from a finite number of identified, predictable solutions, with a reasonable expectation of success;

> (F) the Asserted Claims are simply variations of work from one field of endeavor or a different one that would have been prompted based on design incentives or other market forces because the variations were predictable to one of ordinary skill in the art.

*See KSR*, 550 U.S. at 415-18 (rejecting the Federal Circuit's "rigid" application of the teaching, suggestion, or motivation to combine test, and instead espousing an "expansive and flexible" approach).  Indeed, the Supreme Court held that a person of ordinary skill in the art is "a person of ordinary creativity, not an automaton" and "in many cases a person of ordinary skill will be able to fit the teachings of multiple patents together like pieces of a puzzle." *KSR*, 550 U.S. at 420-21.

Thus, even in the absence of a specific teaching, suggestion, or motivation to combine references, the Asserted Claims here are obvious and therefore invalid.  Each of the cited references or devices is in the same field, making it obvious for someone of ordinary skill in the art to identify and combine elements from these references.  One of ordinary skill in the art would have recognized that improvements could be achieved by combining or modifying prior-art references that described such improvements.  Each of the above prior-art references describes devices or methods that were known to offer such improvements, and, accordingly, one of

13

ordinary skill in the art would have been motivated to combine or modify the references as identified in each of the combinations above.

Indeed, given that the references are in the same field, one of ordinary skill would have readily, with predictable results, taken teachings from one reference and applied them to other references. As referenced above, multiple prior art references teach or suggest the concepts claimed in the '731 Patent. To the extent Finjan argues that any concepts claimed in the '731 Patent were not contained in any prior art reference, it would, at a minimum, have been obvious to adapt each reference to include the concept or combine it with other references that disclose the concept. In addition, each of the constituent techniques described here was well known to those of ordinary skill in the art, and understood to be among a menu of available design choices for improving network security. This is one of many motivations to combine the above references.

Furthermore, because methods and systems related to a computer gateway for an intranet of computers were well known and studied extensively prior to the '731 Patent priority date, common industry knowledge supplied a reason to combine the above references with each other. Each combination would have produced no unexpected results and would simply represent a known alternative to one of ordinary skill in the art. This is a further motivation to combine any of the above references.

The below sections further address particular reasons to combine the above references. The below should not be construed as an admission that there is any value to the alleged invention of the '731 Patent. As discussed previously, these contentions are based largely on how Finjan is apparently construing the Asserted Claims in its Initial Infringement Contentions, which is an incorrect and overbroad interpretation of the alleged invention of the '731 Patent. Accordingly, to the extent the below refers to benefits of certain elements or industry trends towards these elements, this is not an admission that the alleged invention of the '731 Patent provides any benefits—to the contrary, properly construed and compared to the prior art, the '731 Patent provides no benefits. Likewise, to the extent the below refers to substituting elements, this is not an admission that the elements subject to the substitution are in any way similar, *e.g.*, perform the

same function, in the same way, to reach the same result.

The various elements of the Asserted Claims were well-known in the prior art at the time of the alleged invention, and the combination was obvious to one of ordinary skill in the art. The combination simply (a) combines prior-art elements according to known methods to yield predictable results; (b) involves the simple substitution of one known element for another to obtain predictable results; (c) involves the use of a known technique to improve similar devices (methods, or products) in the same way; (d) applies a known technique to a known device (method, or product) ready for improvement to yield predictable results; (e) involves combinations of prior-art references that would have been "obvious to try"—a person of ordinary skill in the art could have reached the Asserted Claims by choosing from a finite number of identified, predictable solutions, with a reasonable expectation of success; and/or (f) would have been prompted by known work, based on design incentives or other market forces, because such variations were predictable to one of ordinary skill in the art.

Moreover, the Supreme Court has stated that a motivation to combine may be simply "common sense" and that "familiar items may have obvious uses beyond their primary purposes, and in many cases a person of ordinary skill will be able to fit the teachings of multiple patents together like pieces of a puzzle." *KSR*, 550 U.S. at 420. Indeed, the Supreme Court held that it is sufficient that a combination of elements was "obvious to try," holding that, "[w]hen there is a design need or market pressure to solve a problem and there are a finite number of identified, predictable solutions, a person of ordinary skill has good reason to pursue the known options within his or her technical grasp." *Id*. at 421. Here, all the claim elements are common sense and are easily fit together by one of ordinary skill in the art.

While not necessary, a motivation to combine may also be found in the references themselves. One of ordinary skill in the art would have been motivated to combine a reference that refers to, or otherwise explicitly invites combination with, another reference. Where the references cited herein have such an explicit invitation to combine, that invitation would have motivated one of ordinary skill in the art to combine any such references.

4.      **Patent L.R. 3-3(c) Invalidity Contentions Charts**

Pursuant to Patent Local Rule 3-3(c), charts which were served with PAN's May 17, 2021 Invalidity Contentions identifying specifically where and how in each alleged item of prior art each limitation of each asserted claim is found are attached as Exhibits G-1 to G-8.  Where elements are disclosed at multiple locations within a single item of prior art, PAN has not necessarily identified every iteration of every disclosure.

5.      **Patent L.R. 3-3(d) Invalidity Based on 35 U.S.C. § 101, Indefiniteness Under 35 U.S.C. § 112(2), or Enablement or Written Description Under 35 U.S.C. § 112(1)**

Based on PAN's present understanding of the Asserted Claims and/or PAN's apparent construction of the claims, as set forth in Finjan's Infringement Contentions, and subject to the reservation of rights above, PAN lists below the grounds upon which the Asserted Claims of the '731 Patent are invalid based on 35 U.S.C. § 101, indefiniteness, lack of written description, and/or lack of enablement under 35 U.S.C. § 112.  To the extent PAN's identified grounds for invalidity are based on Finjan's apparent constructions, PAN is not adopting Finjan's apparent constructions, nor is PAN agreeing that any of Finjan's apparent constructions are correct. Moreover, Finjan's deficient Infringement Contentions fail to provide PAN with adequate notice as to Finjan's infringement theories.  PAN reserves all rights to advance claim construction positions different from Finjan's apparent constructions.

PAN's contentions that the following claims are invalid under 35 U.S.C. § 112 are made in the alternative, and do not constitute, and should not be interpreted as, admissions regarding the construction or scope of the Asserted Claims, or that any of the Asserted Claims are not anticipated or rendered obvious by any prior art.  Where PAN identifies a claim term in an independent claim as being invalid, PAN further contends any asserted dependent claim is invalid based on the presence of the same term.

In light of the deficiencies in Finjan's Infringement Contentions, PAN reserves the right to supplement, modify, and/or supplement these Contentions to further identify bases for invalidity under 35 U.S.C. § 112.  PAN's Contentions shall not be construed as an admission that any claim construction advanced by PAN in this case is in any way inconsistent, flawed or erroneous.  Nor

16

should these Contentions prevent PAN from advancing claim construction and/or non-infringement positions in lieu of, or in addition to, invalidity positions.  Further, PAN's Contentions shall not be construed as an admission of or acquiescence to Finjan's purported construction of the claim language or of other positions advanced by Finjan during the course of this litigation.  PAN's Contentions under 35 U.S.C. § 112 may depend, in part, on the Court's claim construction, as well as Finjan's asserted claim scope.  Consequently, PAN only identifies herein the issues under 35 U.S.C. § 112 of which it is presently aware based on PAN's present understanding of the asserted claims and/or Finjan's apparent construction of the claims, as set forth in Finjan's Infringement Contentions.  PAN reserves all rights to advance claim construction positions different from Finjan's apparent constructions and to supplement these contentions as it better understands Finjan's construction of the claims during the claim construction process.

### a. Unpatentable Subject Matter Under 35 U.S.C. § 101

The Asserted Claims of the '731 Patent are directed to non-statutory subject matter, under 35 U.S.C. § 101, because the claims are directed to merely scanning a file, deriving a security profile, storing the file, and storing the security profile, which is an abstract concept.  The recitation of generic computer components does not amount to significantly more than the abstract idea itself.  *See CyberSource Corp. v. Retail Decisions, Inc*., 654 F.3d 1366, 1370 (Fed. Cir. 2011) (reasoning that the use of the Internet to verify a credit card transaction does not meaningfully add to the abstract idea of verifying the transaction).  Additionally, claims 1-3 are directed to software per se.  Therefore, the Asserted Claims of the '731 Patent are not directed to patent-eligible subject matter under 35 U.S.C. §101, and are invalid.

### b. Indefiniteness Under 35 U.S.C. § 112(2)

"[A] patent is invalid for indefiniteness if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention."  *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 901 (2014).

The following claim limitations of the Asserted Claims are invalid based on

indefiniteness.

- "a file identifier"
- "the file identifiers"
- "scanner"
- "scanning the retrieved file to determine computer commands that the file is programmed to perform"
- "without the need to perform said scanning"
- "its security profile"

### (i)    "a file identifier" / "the file identifiers"

The terms "a file identifier" and "file identifiers" are indefinite.  The '731 Patent specification does not describe any particular portion of the allegedly claimed invention which is a "file identifier" or "the file identifiers."  Nor does the claim language provide context.  The claims implicate that stored files and/or security profiles are "indexed" in a cache, but the specifications do not actually describe what structures can perform said indexing.  Accordingly, a person of ordinary skill in the art would not be reasonably certain as to the scope of the invention in light of the claims, specifications and prosecution history of the '731 Patent.

### (ii)    "scanner"

To the extent this term is a means-plus-function term, it is indefinite.  The specification fails to clearly link any corresponding structure to the recited function for this term.

### (iii)    "scanning the retrieved file to determine computer commands that the file is programmed to perform"

For the same reasons that the term "scanner" is indefinite, the term "scanning the retrieved file to determine computer commands that the file is programmed to perform" is indefinite.

### (iv)    "without the need to perform said scanning"

For the same reasons that the term "scanner" is indefinite, the term "without the need to perform said scanning" is indefinite.

### (v)    "its security profile"

The term "its security profile" as used in claims 14 and 17 in the '731 Patent is indefinite.  This term does not identify any particular security profile, or what it corresponds to.  The term is

18

vague with regards to what it points to such that a person of ordinary skill in the art would not be able to determine the scope of the term with reasonable certainty.

### c.     Lack of Written Description Under 35 U.S.C. § 112(1)

To satisfy the written description requirement, the description must "clearly allow persons of ordinary skill in the art to recognize that [the inventor] invented what is claimed." *Ariad Pharm., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010) (internal citation omitted). The test for sufficiency is whether the disclosure of the application relied upon reasonably conveys to those skilled in the art that the inventor had possession of the claimed subject matter as of the filing date. *Id.*

The test requires an objective inquiry into the four corners of the specification from the perspective of a POSITA.  Based on that inquiry, the specification must describe an invention understandable to that skilled artisan and show that the inventor actually invented the invention claimed.  "Whether the written description requirement is satisfied is a fact-based inquiry that will depend on the nature of the claimed invention, and the knowledge of one skilled in the art at the time an invention is made and a patent application is filed." *Carnegie Mellon Univ. v. Hoffmann-La Roche Inc.*, 541 F.3d 1115, 1122 (Fed. Cir. 2008) (internal citation omitted).  Actual "possession" or reduction to practice outside of the specification is not enough.  Instead, the specification itself must demonstrate possession.

While the written description requirement does not demand any particular form of disclosure, a description that merely renders the invention obvious does not satisfy the requirement.  *Lockwood v. Am. Airlines, Inc.*, 107 F.3d 1565, 1571-72 (Fed. Cir. 1997).  Finjan's apparent construction of "to ensure that duplicate files are not scanned" is not adequately described in the '731 patent, and therefore these claims are invalid for lack of written description support.  The same goes for related claims reciting "without the need to perform said scanning".

### d.     Lack of Enablement Under 35 U.S.C. § 112(1)

To satisfy the enablement requirement of 35 U.S.C § 112, the disclosure "must teach those skilled in the art how to make and use the full scope of the claimed invention without 'undue experimentation.'"  *Genentech, Inc. v. Novo Nordisk, A/S*, 108 F.3d 1361, 1365 (Fed. Cir. 1997)

19

(citations omitted).  Moreover, "[i]t is the specification, not the knowledge of one skilled in the art, that must supply the novel aspects of [the] invention in order to constitute adequate enablement."  *Id.* at 1366.  The Federal Circuit has enumerated several factors to consider in determining whether a disclosure would require "undue experimentation":  "(1) the quantity of experimentation necessary, (2) the amount of direction or guidance presented, (3) the presence or absence of working examples, (4) the nature of the invention, (5) the state of the prior art, (6) the relative skill of those in the art, (7) the predictability or unpredictability of the art, and (8) the breadth of the claims."  *In re Wands*, 858 F.2d 731, 737 (Fed. Cir. 1988).  Finjan's apparent construction of "to ensure that duplicate files are not scanned" is not adequately described in the '731 patent such that a person used make and use the claim inventions without undue experimentation, and therefore these claims are invalid for lack of enablement.  The same goes for related claims reciting "without the need to perform said scanning."

### B.    Invalidity of the '633 Patent

#### 1.    Priority Date

Finjan alleges that the Asserted Claim of the '633 Patent is entitled to the priority date of January 29, 1997.  Finjan's Initial Disclosure of Asserted Claims and Infringement Contentions, at 20.  Finjan apparently alleges that the Asserted Claim of the '633 Patent is entitled to the benefit of the filing date of the nonprovisional application that later matured into U.S. Patent No. 6,167,520, which was filed on January 29, 1997.  Neither the '520 Patent, nor any of the other patents in the ancestry of the '633 Patent, however, discloses the subject matter claimed by the Asserted Claim of '633 Patent.

For example, claim 14 of the '633 Patent claims "mobile protection code" and a "mobile code executor", both of which are directed to the subject matter concept of "mobile code."  However, the '520 Patent is not directed to the concept of "mobile code," and in fact does not mention the term at any point in the specification.  Moreover, the '520 Patent does not describe a mobile code executor which executes mobile protection code at a "downloadable information destination."  While both the '520 Patent and the '633 Patent are directed to firewall or network security, the actual invention claimed in claim 14 of the '633 Patent is not described in the

1   specification of the '520 Patent.  Thus, based on the information presently available to PAN, the

2   earliest date to which the '633 Patent may claim priority is June 22, 2005, the date on which the

3   application that issued as the '633 Patent was filed, or May 17, 2001, the date on which the

4   application that later issued as the '822 Patent was filed, or May 17, 2000, the date of provisional

5   application No. 60/205,591.

6   ### 2.    Patent L.R. 3-3(a) Identification of Prior Art

7       Subject to the reservations of rights above, PAN identifies prior art that anticipates and/or

8   renders obvious the Asserted Claim of the '633 Patent.  The prior art references identified are also

9   relevant to show the state of the art and reasons and motivations for making improvements,

10  additions, modifications, and combinations.

11      In addition, PAN incorporates the prior art, claims charts, and invalidity theories

12  disclosed, listed and/or asserted by any entity during the course of other litigation (past,

13  present/ongoing, or future) or patent office challenges (either reexaminations or IPRs).  Finjan has

14  failed to timely update its production of these materials, which has prejudiced PAN in its

15  preparation of these contentions.  PAN reserves the right to rely on any prior art reference, prior

16  art combination, motivation to combine, invalidity theory, and/or materials disclosed in these

17  other proceedings.  At least the following prior art references anticipate and/or render obvious the

18  Asserted Claim of the '633 Patent, and/or illustrate the state of the art at the time of the alleged

19  invention:

20  ### a.    Patent Prior Art

| Ref. No. | Publication No. | Short Name | Filing Date | Publication Date | Priority Date |
|----------|-----------------|------------|-------------|------------------|---------------|
| 1. | U.S. Patent No. 6,065,118 | "Bull" | September 24, 1996 | May 6, 2000 | September 24, 1996 |
| 2. | U.S. Patent No. 5,974,549 | "Golan" | March 27, 1997 | October 26, 1999 | March 27, 1997 |
| 3. | WO 98/31124 | "Hanson" | January 10, 1997 | July 16, 1998 | January 10, 1997 |

### b.    Non-Patent Publication Prior Art

21

| Ref. No. | Publication | Short Name | Publication Date |
|---|---|---|---|
| 1. | Brant Hashii et al. "Securing Systems Against External Programs," IEEE Internet Computing, 35-45 (Nov./Dec. 1998) | "Hashii" | November/ December 1998 |
| 2. | Andrew Herbert, "Secure Mobile Code Management; Enabling Java for the Enterprise" (May, 1997) | "Herbert" | May 1997 |

PAN additionally identifies and relies on each of the additional patent or publication references that describe or are otherwise related to the prior art systems identified below.

### c.    System or Product Prior Art

PAN sets forth numerous prior art products or systems in the table below.  For such prior art products and systems, PAN has identified, based on its current knowledge, approximate dates on which such products were sold, on sale, made, known, and/or used in the U.S.  PAN's investigation of prior art products and systems is ongoing.  Further information and/or documents regarding such products and their sale, offer for sale, and use dates will be produced or disclosed as it is (they are) obtained in discovery or otherwise becomes available to PAN.  PAN reserves the right to amend, modify, and/or supplement these Contentions based on further and subsequent investigation and discovery.  Additionally, PAN reserves the right to rely on the documents identified below as standalone prior art references separate from the prior art system or product they describe.

PAN additionally identifies and relies on any system, product, or public knowledge or use that embodies or otherwise incorporates any of the prior art patents and publications listed above.PAN reserves the right to identify and rely on systems that represent different versions or are otherwise related variations of the identified products and systems.

| Ref No. | System Name | Short Name | Date Made, Known, Used, Sold, or On Sale |
|---|---|---|---|
| 1. | InterScan VirusWall | "VirusWall" | 1996 |

| Ref No. | System Name | Short Name | Date Made, Known, Used, Sold, or On Sale |
|---|---|---|---|
| 2. | InterScan AppletTrap | "AppletTrap" | March 1999 |
| 3. | Janus System | "Janus System" | 1999 |
| 4. | IBM/Symantec Digital Immune System | Digital Immune | 1997 |

### (i)    InterScan VirusWall

VirusWall was sold, on sale, made, known, and/or used at least by 1996.  The features, operations, and functionality of VirusWall are described throughout the VirusWall documentation produced in this case.  These documents include:

- TFS00000001 – TFS00005934
- TM-FIN000001 – TM-FIN000563

### (ii)    InterScan AppletTrap

AppletTrap was sold, on sale, made, known, and/or used at least by March 1999.  The features, operations, and functionality of AppletTrap are described throughout the AppletTrap documentation produced in this case.  These documents include:

- TFS00000001 – TFS00005934
- TM-FIN000001 – TM-FIN000563

### (iii)    Janus System

Janus System was sold, on sale, made, known, and/or used at least by 1999.  The features, operations, and functionality of Janus System are described throughout the Janus System documentation produced in this case.  These documents include:

- David A. Wagner, "Janus: an Approach for Confinement of Untrusted Applications," EECS Dept., University of California, Berkeley, Technical Report No. UCB/CSD-99-1056 (1999)

### (iv)    Digital Immune

Digital Immune System was sold, on sale, made, known, and/or used at least by 1997.  The features, operations, and functionality of Digital Immune System are described throughout

the Digital Immune System documentation produced in previous cases.  (*See, e.g.*, FINJAN-PAN 399759 – FINJAN-PAN 399813.)

### d.   35 U.S.C. § 102(f)

PAN reserves the right to assert that the Asserted Claim are invalid under 35 U.S.C. § 102(f) in the event PAN obtains additional evidence that the inventors named in any of the Asserted Patents did not invent the subject matter claimed therein.  Should PAN obtain such evidence, it will provide the name of the person(s) from whom and the circumstances under which the alleged invention or any part of it was derived.

### e.   35 U.S.C. § 102(g)

PAN reserves the right to assert that the Asserted Claim is invalid under 35 U.S.C. § 102(g) in the event PAN obtains additional evidence that any of the inventions claimed in the Asserted Patents were made in the United States by another inventor who had not abandoned, suppressed or concealed it, prior to the alleged invention by the applicant of the Asserted Patents. Should PAN obtain such evidence, it will provide the identities of the persons or entities involved in and the circumstances surrounding the making the inventions before the patent applicants.

### 3.   Patent L.R. 3-3(b) Anticipation and Obviousness

The references in Appendix A, attached hereto, alone or in combination with the knowledge of one skilled in the art, anticipate or render obvious the Asserted Claim of the '633 Patent.  Within Appendix A, PAN has provided a listing of combinations and indicated each reference which both anticipates and renders claim 14 of the '633 Patent.  In addition to the attached Appendix A, PAN incorporates by reference herein each and every reference included in its May 17, 2021 Invalidity Contentions.

### a.   Prior Art Combinations

The Asserted Claim of the '633 Patent is obvious based on one or more combinations of the prior art references above.  The sections below provide motivations to combine the prior art references above.  These obviousness combinations are provided in the alternative to PAN's anticipation and single-reference obviousness contentions and are not to be construed to suggest that any reference included in the combination is not itself anticipatory or would not render the

Asserted Claim obvious in light of the knowledge of a person having ordinary skill in the art. PAN also hereby incorporates by reference the prior art, invalidity grounds, and expert testimony submitted in connection with any petitions for *inter partes* review of the '633 Patent.

### b.     Motivation to Combine

A POSITA would have been motivated to combine the preceding references for any number of reasons, such as the following exemplary reasons.  Teachings, suggestions, motivations, and/or reasons to modify any of the references and/or to combine any two or more of the references can come from many sources, including the prior art, common knowledge, common sense, predictability, expectations, industry trends, design incentives or need, market demand or pressure, market forces, obviousness to try, the nature of the problem faced, and/or knowledge possessed by a POSITA.

Although a patent claim may be invalidated based on a teaching-suggestion-motivation ("TSM") rationale—*i.e.*, that some teaching, suggestion, or motivation in the prior art that would have led one of ordinary skill to modify the prior-art reference or to combine prior-art reference teachings to arrive at the claimed invention—the Supreme Court identified additional rationales in *KSR International Co. v. Teleflex, Inc.*, 550 U.S. 398 (2007).  The following of these rationales apply here:

(A) the Asserted Claim combines prior-art elements according to known methods to yield predictable results;

(B) the Asserted Claim involves the simple substitution of one known element for another to obtain predictable results;

(C) the Asserted Claim involves the use of a known technique to improve similar devices (methods, or products) in the same way;

(D) the Asserted Claim applies a known technique to a known device (method, or product) ready for improvement to yield predictable results;

(E) the Asserted Claim involves combinations of prior-art references that would have been "obvious to try"'—a person of ordinary skill in the art could have reached the Asserted Claim by choosing from a finite number of identified, predictable solutions, with a reasonable expectation of success;

(F) the Asserted Claim is simply variations of work from one field of endeavor or a different one that would have been prompted based on design incentives or other market forces because the variations were predictable to one of ordinary skill in the art.

*See KSR*, 550 U.S. at 415-18 (rejecting the Federal Circuit's "rigid" application of the teaching, suggestion, or motivation to combine test, and instead espousing an "expansive and flexible" approach).  Indeed, the Supreme Court held that a person of ordinary skill in the art is "a person of ordinary creativity, not an automaton" and "in many cases a person of ordinary skill will be able to fit the teachings of multiple patents together like pieces of a puzzle." *KSR*, 550 U.S. at 420-21.

Thus, even in the absence of a specific teaching, suggestion, or motivation to combine references, the Asserted Claim here is obvious and therefore invalid.  Each of the cited references or devices is in the same field, making it obvious for someone of ordinary skill in the art to identify and combine elements from these references.  One of ordinary skill in the art would have recognized that improvements could be achieved by combining or modifying prior-art references that described such improvements.  Each of the above prior-art references describes devices or methods that were known to offer such improvements, and, accordingly, one of ordinary skill in the art would have been motivated to combine or modify the references as identified in each of the combinations above.

Indeed, given that the references are in the same field, one of ordinary skill would have readily, with predictable results, taken teachings from one reference and applied them to other references.  As referenced above, multiple prior art references teach or suggest the concepts claimed in the '633 Patent.  To the extent Finjan argues that any concepts claimed in the '633 Patent were not contained in any prior art reference, it would, at a minimum, have been obvious to adapt each reference to include the concept or combine it with other references that disclose the concept.  In addition, each of the constituent techniques described here was well known to those of ordinary skill in the art, and understood to be among a menu of available design choices for improving network security.  This is one of many motivations to combine the above references.

Furthermore, because methods and systems related to a computer gateway for an intranet of computers were well known and studied extensively prior to the '633 Patent priority date, common industry knowledge supplied a reason to combine the above references with each other.

Each combination would have produced no unexpected results and would simply represent a known alternative to one of ordinary skill in the art.  This is a further motivation to combine any of the above references.

The below sections further address particular reasons to combine the above references. The below should not be construed as an admission that there is any value to the alleged invention of the '633 Patent.  As discussed previously, these contentions are based largely on how Finjan is apparently construing the Asserted Claim in its Initial Infringement Contentions, which is an incorrect and overbroad interpretation of the alleged invention of the '633 Patent.  Accordingly, to the extent the below refers to benefits of certain elements or industry trends towards these elements, this is not an admission that the alleged invention of the '633 Patent provides any benefits—to the contrary, properly construed and compared to the prior art, the '633 Patent provides no benefits.  Likewise, to the extent the below refers to substituting elements, this is not an admission that the elements subject to the substitution are in any way similar, *e.g.*, perform the same function, in the same way, to reach the same result.

The various elements of the Asserted Claim were well-known in the prior art at the time of the alleged invention, and the combination was obvious to one of ordinary skill in the art.  The combination simply (a) combines prior-art elements according to known methods to yield predictable results; (b) involves the simple substitution of one known element for another to obtain predictable results; (c) involves the use of a known technique to improve similar devices (methods, or products) in the same way; (d) applies a known technique to a known device (method, or product) ready for improvement to yield predictable results; (e) involves combinations of prior-art references that would have been "obvious to try"—a person of ordinary skill in the art could have reached the Asserted Claim by choosing from a finite number of identified, predictable solutions, with a reasonable expectation of success; and/or (f) would have been prompted by known work, based on design incentives or other market forces, because such variations were predictable to one of ordinary skill in the art.

Moreover, the Supreme Court has stated that a motivation to combine may be simply "common sense" and that "familiar items may have obvious uses beyond their primary purposes,

27

1    and in many cases a person of ordinary skill will be able to fit the teachings of multiple patents

2    together like pieces of a puzzle." *KSR*, 550 U.S. at 420.  Indeed, the Supreme Court held that it is

3    sufficient that a combination of elements was "obvious to try," holding that, "[w]hen there is a

4    design need or market pressure to solve a problem and there are a finite number of identified,

5    predictable solutions, a person of ordinary skill has good reason to pursue the known options

6    within his or her technical grasp." *Id*. at 421.  Here, all the claim elements are common sense and

7    are easily fit together by one of ordinary skill in the art.

8        While not necessary, a motivation to combine may also be found in the references

9    themselves.  One of ordinary skill in the art would have been motivated to combine a reference

10   that refers to, or otherwise explicitly invites combination with, another reference.  Where the

11   references cited herein have such an explicit invitation to combine, that invitation would have

12   motivated one of ordinary skill in the art to combine any such references.

### 4.    Patent L.R. 3-3(c) Invalidity Contentions Charts

14       Pursuant to Patent Local Rule 3-3(c), charts which were served with PAN's May 17, 2021

15   Invalidity Contentions identifying specifically where and how in each alleged item of prior art

16   each limitation of each asserted claim is found are attached as Exhibits D-1 to D-20.  Where

17   elements are disclosed at multiple locations within a single item of prior art, PAN has not

18   necessarily identified every iteration of every disclosure.

### 5.    Patent L.R. 3-3(d) Invalidity Based on 35 U.S.C. § 101, Indefiniteness Under 35 U.S.C. § 112(2), or Enablement or Written Description Under 35 U.S.C. § 112(1)

21       Based on PAN's present understanding of the Asserted Claim and/or PAN's apparent

22   construction of the claims, as set forth in Finjan's Infringement Contentions, and subject to the

23   reservation of rights above, PAN lists below the grounds upon which the Asserted Claim of the

24   '633 Patent is invalid based on 35 U.S.C. § 101, indefiniteness, lack of written description, and/or

25   lack of enablement under 35 U.S.C. § 112.  To the extent PAN's identified grounds for invalidity

26   are based on Finjan's apparent constructions, PAN is not adopting Finjan's apparent

27   constructions, nor is PAN agreeing that any of Finjan's apparent constructions are correct.

28   Moreover, Finjan's deficient Infringement Contentions fail to provide PAN with adequate notice

as to Finjan's infringement theories.  PAN reserves all rights to advance claim construction positions different from Finjan's apparent constructions.

PAN's contentions that the following claims are invalid under 35 U.S.C. § 112 are made in the alternative, and do not constitute, and should not be interpreted as, admissions regarding the construction or scope of the Asserted Claim, or that the Asserted Claim is not anticipated or rendered obvious by any prior art.  Where PAN identifies a claim term in an independent claim as being invalid, PAN further contends any asserted dependent claim is invalid based on the presence of the same term.

In light of the deficiencies in Finjan's Infringement Contentions, PAN reserves the right to amend, modify, and/or supplement these Contentions to further identify bases for invalidity under 35 U.S.C. § 112.  PAN's Contentions shall not be construed as an admission that any claim construction advanced by PAN in this case is in any way inconsistent, flawed or erroneous.  Nor should these Contentions prevent PAN from advancing claim construction and/or non-infringement positions in lieu of, or in addition to, invalidity positions.  Further, PAN's Contentions shall not be construed as an admission of or acquiescence to Finjan's purported construction of the claim language or of other positions advanced by Finjan during the course of this litigation.  PAN's Contentions under 35 U.S.C. § 112 may depend, in part, on the Court's claim construction, as well as Finjan's asserted claim scope.  Consequently, PAN only identifies herein the issues under 35 U.S.C. § 112 of which it is presently aware based on PAN's present understanding of the asserted claims and/or Finjan's apparent construction of the claims, as set forth in Finjan's Infringement Contentions.  PAN reserves all rights to advance claim construction positions different from Finjan's apparent constructions and to supplement these contentions as it better understands Finjan's construction of the claims during the claim construction process.

### a.    Unpatentable Subject Matter Under 35 U.S.C. § 101

The Asserted Claim of the '633 Patent is directed to non-statutory subject matter, under 35 U.S.C. § 101, because the claims are directed to merely determining if some receiving information has executable code and providing mobile protection code in response thereto, which

29

is an abstract concept.  The recitation of generic computer components does not amount to significantly more than the abstract idea itself.  *See CyberSource*, 654 F.3d at 1370 (reasoning that the use of the Internet to verify a credit card transaction does not meaningfully add to the abstract idea of verifying the transaction).  Therefore, the Asserted Claim of the '633 Patent is not directed to patent-eligible subject matter under 35 U.S.C. §101, and is invalid.

### b.      Indefiniteness Under 35 U.S.C. § 112(2)

"[A] patent is invalid for indefiniteness if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention."  *Nautilus, Inc.*, 572 U.S. at 901.

The following claim limitations of the Asserted Claim are invalid based on indefiniteness.

- "downloadable-information"
- "downloadable information-destination"
- "mobile protection code"
- Preamble

#### (i)      "downloadable-information"/ "downloadable information-destination"

The term "downloadable-information" is indefinite because a person of ordinary skill in the art would not understand with reasonable certainty what constitutes "downloadable-information," what kind of information it is, and in what form it is represented within the meaning of the '731 Patent.  Specifically, the specification provides conflicting information about the scope of "downloadable-information."  The term is indefinite because the term "downloadable-information," as described above, is indefinite.

#### (ii)      "mobile protection code"

This term is indefinite because it is not a commonly understood term in the art, and the specification of the '731 Patent does not sufficiently define the meaning of the term.  Accordingly, a person of ordinary skill in the art would not be able to discern the scope of the term "mobile protection code" with reasonable certainty.

#### (iii)      Preamble

Claim 14 is indefinite for claiming mixed statutory classes (i.e., both apparatus and

30

method).  *See IPXL Holdings, LLC v. Amazon.com, Inc.*, 430 F.3d 1377 (Fed. Cir. 2005).

Further, claim 14 is indefinite for lack of antecedent basis.  Additionally, it is unclear what "the method" refers to in the claim, and therefore one of ordinary skill in the art would not be able to determine the scope of the claim with reasonable certainty.

### c.   Lack of Written Description Under 35 U.S.C. § 112(1)

To satisfy the written description requirement, the description must "clearly allow persons of ordinary skill in the art to recognize that [the inventor] invented what is claimed."  *Ariad Pharm., Inc. v. Eli Lilly and Co*., 598 F.3d 1336, 1351 (Fed. Cir. 2010) (internal citation omitted). The test for sufficiency is whether the disclosure of the application relied upon reasonably conveys to those skilled in the art that the inventor had possession of the claimed subject matter as of the filing date.  *Id.*

The test requires an objective inquiry into the four corners of the specification from the perspective of a POSITA.  Based on that inquiry, the specification must describe an invention understandable to that skilled artisan and show that the inventor actually invented the invention claimed.  "Whether the written description requirement is satisfied is a fact-based inquiry that will depend on the nature of the claimed invention, and the knowledge of one skilled in the art at the time an invention is made and a patent application is filed."  *Carnegie Mellon Univ. v. Hoffmann La Roche Inc*., 541 F.3d 1115, 1122 (Fed. Cir. 2008) (internal citation omitted).  Actual "possession" or reduction to practice outside of the specification is not enough.  Instead, the specification itself must demonstrate possession.

While the written description requirement does not demand any particular form of disclosure, a description that merely renders the invention obvious does not satisfy the requirement.  *Lockwood v. Am. Airlines*, 107 F.3d 1565, 1571-72 (Fed. Cir. 1997).

Finjan's apparent claim constructions render the Asserted Claim extremely broad in scope and well beyond the purported inventions described in the '633 Patent.  Finjan is attempting to construe the '633 Patent in an idiosyncratic manner that is entirely inconsistent with the written specifications and prosecution histories of the '633 Patent as well as with the understanding of one of ordinary skill in the art at the time the applications that issued as the '633 Patent were

filed.  These allegations are inconsistent with the plain language of the claims, the supporting description, and the prosecution history.  For example, the term "mobile protection code" is not sufficiently described in the specification of the '633 Patent because the specification does not specifically describe what mobile protection code is, and the term is not one which is commonly understood to those of ordinary skill in the art.  Likewise, the term "downloadable information-destination" is not sufficiently described by the specification of the '633 Patent because the specification does not describe what categories of information constitute downloadable information.

### d.    Lack of Enablement Under 35 U.S.C. § 112(1)

To satisfy the enablement requirement of 35 U.S.C § 112, the disclosure "must teach those skilled in the art how to make and use the full scope of the claimed invention without 'undue experimentation.'"  *Genentech, Inc. v. Novo Nordisk, A/S*, 108 F.3d 1361, 1365 (Fed. Cir. 1997) (citations omitted).  Moreover, "[i]t is the specification, not the knowledge of one skilled in the art, that must supply the novel aspects of [the] invention in order to constitute adequate enablement."  *Id.* at 1366.  The Federal Circuit has enumerated several factors to consider in determining whether a disclosure would require "undue experimentation":  "(1) the quantity of experimentation necessary, (2) the amount of direction or guidance presented, (3) the presence or absence of working examples, (4) the nature of the invention, (5) the state of the prior art, (6) the relative skill of those in the art, (7) the predictability or unpredictability of the art, and (8) the breadth of the claims."  *In re Wands*, 858 F.2d 731, 737 (Fed. Cir. 1988).

Finjan's apparent claim constructions render the Asserted Claim extremely broad in scope and well beyond the purported inventions described in the '633 Patent.  Finjan is attempting to construe the '633 Patent in an idiosyncratic manner that is entirely inconsistent with the written specifications and prosecution histories of the '633 Patent as well as with the understanding of one of ordinary skill in the art at the time the applications that issued as the '633 Patent were filed.  These allegations are inconsistent with the plain language of the claims, the supporting description, and the prosecution history.  For example, the term "mobile protection code" is not sufficiently enabled by the specification of the '633 Patent because the specification does not

describe what mobile protection code is, and therefore a person of ordinary skill in the art would not know how to make or use the theorized "mobile protection code." Likewise, the term "downloadable information-destination" is not sufficiently enabled by the specification of the '633 Patent because the specification does not describe what categories of information constitute downloadable information. Accordingly, a person of ordinary skill in the art would not know how to make or use a "downloadable information-destination."

### C.    Invalidity of the '154 Patent

#### 1.    Priority Date

Finjan alleges that the Asserted Claim of the '154 Patent is entitled to the priority date of December 12, 2005. Finjan's Initial Disclosure of Asserted Claims and Infringement Contentions, at 20. Finjan apparently alleges that the Asserted Claims of the '154 Patent are entitled to the benefit of the filing date of the application that matured into U.S. Patent No. 7,757,289, which was filed on December 12, 2005. Finjan, however, failed to properly claim priority to this patent when it filed the application for the '154 patent. As explained in PAN's Answer (Dkt. No. 116) at paragraphs 251-266, Finjan's certificate of correction where it claimed that the entire delayed claim to priority was "unintentional" is insufficient to reset the priority date for the '154 patent to December 12, 2005 because the delay was not "unintentional." Thus, based on the information presently available to PAN, the earliest date to which the '154 patent may claim priority is June 14, 2010.

#### 2.    Patent L.R. 3-3(a) Identification of Prior Art

Subject to the reservations of rights above, PAN identifies prior art that anticipates and/or renders obvious the Asserted Claim of the '154 Patent. The prior art references identified are also relevant to show the state of the art and reasons and motivations for making improvements, additions, modifications, and combinations.

In addition, PAN incorporates the prior art, claims charts, and invalidity theories disclosed, listed and/or asserted by any entity during the course of other litigation (past, present/ongoing, or future) or patent office challenges (either reexaminations or IPRs). Finjan has failed to timely update its production of these materials, which has prejudiced PAN in its

preparation of these contentions.  PAN reserves the right to rely on any prior art reference, prior art combination, motivation to combine, invalidity theory, and/or materials disclosed in these other proceedings.  At least the following prior art references anticipate and/or render obvious the Asserted Claim of the '154 Patent, and/or illustrate the state of the art at the time of the alleged invention:

### a.     Patent Prior Art

| Ref. No. | Publication No. | Short Name | Filing Date | Publication Date | Priority Date |
|---|---|---|---|---|---|
| 1. | U.S. Pat. Pub. No. 2005/0108562 | "Khazan" | June 18, 2003 | May 19, 2005 | June 18, 2003 |
| 2. | U.S. Pat. No. 5,974,549 | "Gilad" | March 27, 1997 | October 26, 1999 | March 27, 1997 |
| 3. | U.S. Pat. No. 5,983,348 | "Ji 348" | September 10, 1997 | November 9, 1999 | September 10, 1997 |
| 4. | U.S. Pat. No. 5,623,600 | "Ji 600" | September 26, 1995 | April 22, 1997 | September 26, 1995 |
| 5. | U.S. Pat. No. 7,487,540 | "Shipp" | August 23, 2004 | February 3, 2009 | April 25, 2003 |
| 6. | U.S. Pat. No. 7,694,328 | "Joshi" | October 21, 2004 | April 6, 2010 | October 21, 2003 |
| 7. | U.S. Pat. No. 8,225,392 | "Dubrovsky" | July 15, 2005 | July 17, 2012 | July 15, 2005 |
| 8. | U.S. Pat. No. 7,865,961 | "Hasegawa" | June 28, 2004 | January 4, 2011 | February 23, 2004 |
| 9. | U.S. Pat. No. 8,244,910 | "Davis" | July 14, 2004 | August 14, 2012 | July 14, 2004 |
| 10. | U.S. Pat. No. 8,281,401 | "Pennington" | January 24, 2006 | October 2, 2012 | January 25, 2005 |
| 11. | U.S. Pat. Pub. No. 2007/0113282 | "Ross" | November 17, 2005 | May 17, 2007 | November 17, 2005 |
| 12. | U.S. Pat. Pub. No. 2009/0193497 | "Kikuchi" | November 25, 2008 | July 30, 2009 | January 25, 2008 |
| 13. | U.S. Pat. No. 8,424,090 | "Kang" | March 25, 2009 | April 16, 2013 | July 23, 2008 |

| Ref. No. | Publication No. | Short Name | Filing Date | Publication Date | Priority Date |
|---|---|---|---|---|---|
| 14. | U.S. Pat. No. 8,522,350 | "Davenport" | November 19, 2009 | August 27, 2013 | November 19, 2008 |
| 15. | U.S. Pat. Pub. No. 2008/0083012 | "Yu" | June 20, 2007 | April 3, 2008 | June 20, 2007 |
| 16. | U.S. Pat. Pub. No. 2002/0066022 | "Calder" | November 29, 2000 | May 30, 2002 | November 29, 2000 |
| 17. | U.S. Pat. No. 7,437,362 | "Ben-Natan" | November 25, 2003 | October 13, 2008 | November 25, 2003 |
| 18. | U.S. Pat. No. 8,220,055 | "Kennedy" | February 6, 2004 | July 10, 2012 | February 6, 2004 |

### b.    Non-Patent Publication Prior Art

| Ref. No. | Publication | Short Name | Publication Date |
|---|---|---|---|
| 1. | "Mobile Code Security by Java Bycode Instrumentation," 2001 | "Chander" | 2001 |
| 2. | "Flexible Policy-Directed Code Safety," 1998 Data Fellows Corp. | "Evans" | May 1999 |
| 3. | "Java Bytecode Modication and Applet Security" | "Shin" | 1998 |
| 4. | "Design and implementation of a distributed virtual machine for networked computers" | "Sirer" | December 1999 |

PAN additionally identifies and relies on each of the additional patent or publication references that describe or are otherwise related to the prior art systems identified below.

### c.    System or Product Prior Art

PAN sets forth numerous prior art products or systems in the table below. For such prior art products and systems, PAN has identified, based on its current knowledge, approximate dates on which such products were sold, on sale, made, known, and/or used in the U.S. PAN's investigation of prior art products and systems is ongoing. Further information and/or documents regarding such products and their sale, offer for sale, and use dates will be produced or disclosed as it is (they are) obtained in discovery or otherwise becomes available to PAN. PAN reserves

35

the right to amend, modify, and/or supplement these Contentions based on further and subsequent investigation and discovery. Additionally, PAN reserves the right to rely on the documents identified below as standalone prior art references separate from the prior art system or product they describe.

PAN additionally identifies and relies on any system, product, or public knowledge or use that embodies or otherwise incorporates any of the prior art patents and publications listed above. PAN reserves the right to identify and rely on systems that represent different versions or are otherwise related variations of the identified products and systems.

| Ref No. | System Name | Short Name | Date Made, Known, Used, Sold, or On Sale |
|---------|-------------|------------|------------------------------------------|
| 1. | InterScan VirusWall | "VirusWall" | 1996 |
| 2. | InterScan AppletTrap | "AppletTrap" | March 1999 |
| 3. | Check Point Firewall-1 | "Firewall-1" | 1999 |
| 4. | Janus System | "Janus System" | 1999 |
| 5. | IBM/Symantec Digital Immune System | "Digital Immune" | 1997 |

**(i)      InterScan VirusWall**

VirusWall was sold, on sale, made, known, and/or used at least by 1996. The features, operations, and functionality of VirusWall are described throughout the VirusWall documentation produced in this case. These documents include:

- TFS00000001 – TFS00005934
- TM-FIN000001 – TM-FIN000563

**(ii)     InterScan AppletTrap**

AppletTrap was sold, on sale, made, known, and/or used at least by March 1999. The features, operations, and functionality of AppletTrap are described throughout the AppletTrap documentation produced in this case. These documents include:

- TFS00000001 – TFS00005934

1    • TM-FIN000001 – TM-FIN000563

2                    **(iii)     Check Point Firewall-1**

3           The first version of Firewall-1 was sold, on sale, made, known, and/or used at least by

4    1993 and other versions were available before 2005.  PAN is in progress of obtaining additional

5    information regarding Firewall-1 from Check Point and will update its contentions with respect to

6    Firewall-1.

7                    **(iv)     Janus System**

8           Janus System was sold, on sale, made, known, and/or used at least by 1999.  The features,

     operations, and functionality of Janus System are described throughout the Janus System

9    documentation produced in this case.  These documents include:

10   • David A. Wagner, "Janus: an Approach for Confinement of Untrusted Applications,"

11       EECS Dept., University of California, Berkeley, Technical Report No. UCB/CSD-99-

12       1056 (1999).

13                   **(v)     Digital Immune System**

14          Digital Immune System was sold, on sale, made, known, and/or used at least by 1997.

15   The features, operations, and functionality of Digital Immune System are described throughout

16   the Digital Immune System documentation produced in previous cases.  (*See, e.g.,* FINJAN-

17   PAN_385028-044, FINJAN-PAN_393060-0152, FINJAN-PAN_403886-3966.)

18                   **d.     35 U.S.C. § 102(f)**

19          PAN reserves the right to assert that the Asserted Claim are invalid under 35 U.S.C.

20   § 102(f) in the event PAN obtains additional evidence that the inventors named in any of the

21   Asserted Patents did not invent the subject matter claimed therein.  Should PAN obtain such

22   evidence, it will provide the name of the person(s) from whom and the circumstances under

23   which the alleged invention or any part of it was derived.

24                   **e.     35 U.S.C. § 102(g)**

25          PAN reserves the right to assert that the Asserted Claim is invalid under 35 U.S.C.

26   § 102(g) in the event PAN obtains additional evidence that any of the inventions claimed in the

27   Asserted Patents were made in the United States by another inventor who had not abandoned,

28   suppressed or concealed it, prior to the alleged invention by the applicant of the Asserted Patents.

                                                  37

Should PAN obtain such evidence, it will provide the identities of the persons or entities involved in and the circumstances surrounding the making the inventions before the patent applicants.

### 3. Patent L.R. 3-3(b) Anticipation and Obviousness

The references in Table 1, alone or in combination with the knowledge of one skilled in the art, anticipate or render obvious the Asserted Claim of the '154 Patent.

**Table 1: Prior Art References: Anticipation and Primary/Secondary Obviousness References**

| Short Name | Prior Art Under | Priority Date | Exemplary Claim Chart |
|---|---|---|---|
| AppletTrap | 102(a), (b) | March 1999 | F-1 |
| Ross | 102(e) | November 17, 2005 | F-2 |
| Janus System | 102(a), (b) | 1999 | F-3 |
| Chander | 102(a), (b) | 2001 | F-4 |
| Shipp | 102(e) | April 25, 2003 | F-5 |
| Sirer | 102(a), (b) | December 1999 | F-6 |
| Davis | 102(a), (e) | July 14, 2004 | F-7 |
| Khazan | 102(a), (b), (e) | June 18, 2003 | F-8 |
| Digital Immune | 102(a), (b) | 1997 | FINJAN-PAN_385028-044 FINJAN-PAN_393060-0152 FINJAN-PAN_403886-3966 |

In addition, each of the references in Table 1 above and Table 2 below, either alone, in view of the knowledge of a POSITA, and/or in combination with one or more references in Table 1 or Table 2, renders obvious the Asserted Claim of the '154 Patent.

**Table 2: Additional Prior Art References: Obviousness**

| Short Name | Prior Art Under | Priority Date |
|---|---|---|
| InterScan VirusWall | 102(a), (b) | 1996 |
| Check Point Firewall-1 | 102(a), (b) | 1999 |
| Gilad | 102(a), (b), (e) | March 27, 1997 |
| Ji 348 | 102(a), (b), (e) | September 10, 1997 |
| Ji 600 | 102(a), (b), (e) | September 26, 1995 |
| Joshi | 102(e) | October 21, 2004 |
| Dubrovsky | 102(e) | July 15, 2005 |
| Hasegawa | 102(e) | June 28, 2004 |
| Pennington | 102(e) | January 24, 2006 |
| Kikuchi | 102(e) | November 25, 2008 |
| Kang | 102(e) | March 25, 2009 |
| Davenport | 102(e) | November 19, 2009 |
| Yu | 102(e) | June 20, 2007 |
| Calder | 102(a), (b), (e) | November 29, 2000 |
| Ben-Natan | 102(a), (b), (e) | November 25, 2003 |
| Kennedy | 102(e) | February 6, 2004 |
| Evans | 102(a), (b) | May 1999 |
| Shin | 102(a), (b) | 1998 |

In addition, PAN incorporates by reference each and every prior art reference of record in the prosecution of the '154 Patent and any related patent or application, the statements made therein by the applicant, as well as the prior art discussed in the specification.

The cited portions of each prior art reference are exemplary and representative of the content of the reference, and should be understood in the context of the reference as a whole, as

understood by one of ordinary skill in the art.  To the extent a prior art reference is deemed not to anticipate or render obvious a claim as noted in the attached charts for failing to disclose, teach, or suggest one or more limitations of a claim, that claim would nonetheless have been obvious to one of ordinary skill in the art at the time of the alleged invention over the reference itself or by the combination of the reference with one or more other references disclosing the missing claim limitations or the knowledge of a person having ordinary skill in the art.

### a.    Prior Art Combinations

The references in Appendix A, attached hereto, alone or in combination with the knowledge of one skilled in the art, anticipate or render obvious the Asserted Claim of the '154 Patent.  Within Appendix A, PAN has provided a listing of combinations and indicated each reference which both anticipates and renders claims 1, 2, 4, 6, 7, and 10 of the '154 Patent.  In addition to the attached Appendix A, PAN incorporates by reference herein each and every reference included in its May 17, 2021 Invalidity Contentions.

### b.    Motivation to Combine

A POSITA would have been motivated to combine the preceding references for any number of reasons, such as the following exemplary reasons.  Teachings, suggestions, motivations, and/or reasons to modify any of the references and/or to combine any two or more of the references can come from many sources, including the prior art, common knowledge, common sense, predictability, expectations, industry trends, design incentives or need, market demand or pressure, market forces, obviousness to try, the nature of the problem faced, and/or knowledge possessed by a POSITA.

Although a patent claim may be invalidated based on a teaching-suggestion-motivation ("TSM") rationale—*i.e.*, that some teaching, suggestion, or motivation in the prior art that would have led one of ordinary skill to modify the prior-art reference or to combine prior-art reference teachings to arrive at the claimed invention—the Supreme Court identified additional rationales in *KSR Int'l Co. v. Teleflex, Inc.*, 550 U.S. 398 (2007).  The following of these rationales apply here:

> (A) the Asserted Claim combines prior-art elements according to known methods to yield predictable results;

(B) the Asserted Claim involves the simple substitution of one known element for another to obtain predictable results;

(C) the Asserted Claim involves the use of a known technique to improve similar devices (methods, or products) in the same way;

(D) the Asserted Claim applies a known technique to a known device (method, or product) ready for improvement to yield predictable results;

(E) the Asserted Claim involves combinations of prior-art references that would have been "obvious to try'"—a person of ordinary skill in the art could have reached the Asserted Claim by choosing from a finite number of identified, predictable solutions, with a reasonable expectation of success;

(F) the Asserted Claim is simply variations of work from one field of endeavor or a different one that would have been prompted based on design incentives or other market forces because the variations were predictable to one of ordinary skill in the art.

*See KSR*, 550 U.S. at 415-18 (rejecting the Federal Circuit's "rigid" application of the teaching, suggestion, or motivation to combine test, and instead espousing an "expansive and flexible" approach).  Indeed, the Supreme Court held that a person of ordinary skill in the art is "a person of ordinary creativity, not an automaton" and "in many cases a person of ordinary skill in the art will be able to fit the teachings of multiple patents together like pieces of a puzzle." *KSR*, 550 U.S. at 420-21.

Thus, even in the absence of a specific teaching, suggestion, or motivation to combine references, the Asserted Claim here is obvious and therefore invalid.  Each of the cited references or devices is in the same field, making it obvious for someone of ordinary skill in the art to identify and combine elements from these references.  One of ordinary skill in the art would have recognized that improvements could be achieved by combining or modifying prior-art references that described such improvements.  Each of the above prior-art references describes devices or methods that were known to offer such improvements, and, accordingly, one of ordinary skill in the art would have been motivated to combine or modify the references as identified in each of the combinations above.

Indeed, given that the references are in the same field, one of ordinary skill would have readily, with predictable results, taken teachings from one reference and applied them to other references.  As referenced above, multiple prior art references teach or suggest the concepts

claimed in the '154 Patent.  To the extent Finjan argues that any concepts claimed in the '154 Patent were not contained in any prior art reference, it would, at a minimum, have been obvious to adapt each reference to include the concept or combine it with other references that disclose the concept.  In addition, each of the constituent techniques described here was well known to those of ordinary skill in the art, and understood to be among a menu of available design choices for improving network security.  This is one of many motivations to combine the above references.

Furthermore, because methods and systems related to a computer gateway for an intranet of computers were well known and studied extensively prior to the '154 Patent priority date, common industry knowledge supplied a reason to combine the above references with each other. Each combination would have produced no unexpected results and would simply represent a known alternative to one of ordinary skill in the art.  This is a further motivation to combine any of the above references.

The below sections further address particular reasons to combine the above references. The below should not be construed as an admission that there is any value to the alleged invention of the '154 Patent.  As discussed previously, these contentions are based largely on how Finjan is apparently construing the Asserted Claim in its Initial Infringement Contentions, which is an incorrect and overbroad interpretation of the alleged invention of the '154 Patent.  Accordingly, to the extent the below refers to benefits of certain elements or industry trends towards these elements, this is not an admission that the alleged invention of the '154 Patent provides any benefits—to the contrary, properly construed and compared to the prior art, the '154 Patent provides no benefits.  Likewise, to the extent the below refers to substituting elements, this is not an admission that the elements subject to the substitution are in any way similar, *e.g.*, perform the same function, in the same way, to reach the same result.

The various elements of the Asserted Claim were well-known in the prior art at the time of the alleged invention, and the combination was obvious to one of ordinary skill in the art.  The combination simply (a) combines prior-art elements according to known methods to yield predictable results; (b) involves the simple substitution of one known element for another to

obtain predictable results; (c) involves the use of a known technique to improve similar devices (methods, or products) in the same way; (d) applies a known technique to a known device (method, or product) ready for improvement to yield predictable results; (e) involves combinations of prior-art references that would have been "obvious to try"—a person of ordinary skill in the art could have reached the Asserted Claim by choosing from a finite number of identified, predictable solutions, with a reasonable expectation of success; and/or (f) would have been prompted by known work, based on design incentives or other market forces, because such variations were predictable to one of ordinary skill in the art.

Moreover, the Supreme Court has stated that a motivation to combine may be simply "common sense" and that "familiar items may have obvious uses beyond their primary purposes, and in many cases a person of ordinary skill will be able to fit the teachings of multiple patents together like pieces of a puzzle." *KSR*, 550 U.S. at 420. Indeed, the Supreme Court held that it is sufficient that a combination of elements was "obvious to try," holding that, "[w]hen there is a design need or market pressure to solve a problem and there are a finite number of identified, predictable solutions, a person of ordinary skill has good reason to pursue the known options within his or her technical grasp." *Id*. at 421. Here, all the claim elements are common sense and are easily fit together by one of ordinary skill in the art.

While not necessary, a motivation to combine may also be found in the references themselves. One of ordinary skill in the art would have been motivated to combine a reference that refers to, or otherwise explicitly invites combination with, another reference. Where the references cited herein have such an explicit invitation to combine, that invitation would have motivated one of ordinary skill in the art to combine any such references.

### c.     Exemplary Obviousness Combinations

The accompanying claim charts explain how different portions of each prior art reference discloses each limitation of the Asserted Claim. If Finjan argues that any particular prior art reference lacks any feature, a POSITA as of the '154 Patent's priority date would at a minimum have been motivated to modify the reference to include the allegedly missing feature, or to combine it with other references that include that feature, as discussed in the previous section.

43

1    To the extent Finjan asserts that the prior art in Table 1 does not disclose these claim

2    limitations, it would have been obvious to combine or modify each of the prior art references in

3    Table 1 and Table 2 with one or more prior art references in Table 1 and/or Table 2 to create

4    computer-based methods, systems and products.  Exemplary combinations are provided below

5    but do not limit the potential invalidating combinations disclosed in these contentions or that

6    PAN intends to rely on.

7    For example, to the extent Finjan argues that any of AppletTrap, Ross, Janus System,

8    Chander, Shipp, Sirer, Khazan, and/or Davis do not disclose or suggest the use of modified inputs

9    as recited in the asserted claims, it would have been obvious to modify the techniques and/or

10   systems described in these references with the teachings of any of these references or the

11   references listed in Table 2.  For example, this feature is taught in Ben-Natan (*see, e.g.*, 10:37-

12   48), Davenport (*see, e.g.*, 2:9:38), Calder, and Golan (*see, e.g.*, Abstract, 2:12-27, 6:63-7:9).  To

13   the extent Finjan argues that any of AppletTrap, Ross, Janus System, Chander, Shipp, Sirer,

14   Khazan, and/or Davis do not disclose or suggest the use of modified inputs as recited in the

15   asserted claims, it would have been obvious to modify the techniques and/or systems described in

16   these references with the teachings of any of these references or the references listed in Table 2.

17   For example, this feature is taught in Golan (*see, e.g.*, Abstract, 2:12-27, 6:63-7:9, 9:1-13) and

18   Calder.  To the extent Finjan argues that any of AppletTrap, Ross, Janus System, Chander, Shipp,

19   Sirer, Khazan, and/or Davis do not disclose or suggest the use of a security computer, it would

20   have been obvious to modify the techniques and/or systems described in these references with the

21   teachings of any of these references or the references listed in Table 2.  For example, this feature

22   is taught in Tso (*see, e.g.,* 3:2-10), Calder, and Golan (*see, e.g.,* Abstract, 2:12-27, 6:63-7:9, 9:1-

23   13).

24   PAN reserves the right to rely on additional combinations.

25                    **4.    Patent L.R. 3-3(c) Invalidity Contentions Charts**

26   Pursuant to Patent Local Rule 3-3(c), charts identifying specifically where and how in

27   each alleged item of prior art each limitation of each asserted claim is found are attached as

28   Exhibits F-1 to F-8 and FINJAN-PAN_385028-044, FINJAN-PAN_393060-0152, and FINJAN-

1  PAN_403886-3966.  Where elements are disclosed at multiple locations within a single item of

2  prior art, PAN has not necessarily identified every iteration of every disclosure.

3       **5.     Patent L.R. 3-3(d) Invalidity Based on 35 U.S.C. § 101, Indefiniteness
               Under 35 U.S.C. § 112(2), or Enablement or Written Description
4               Under 35 U.S.C. § 112(1)**

5       Based on PAN's present understanding of the Asserted Claim and/or PAN's apparent

6  construction of the claims, as set forth in Finjan's Infringement Contentions, and subject to the

7  reservation of rights above, PAN lists below the grounds upon which the Asserted Claim of the

8  '154 Patent is invalid based on 35 U.S.C. § 101, indefiniteness, lack of written description, and/or

9  lack of enablement under 35 U.S.C. § 112.  To the extent PAN's identified grounds for invalidity

10  are based on Finjan's apparent constructions, PAN is not adopting Finjan's apparent

11  constructions, nor is PAN agreeing that any of Finjan's apparent constructions are correct.

12  Moreover, Finjan's deficient Infringement Contentions fail to provide PAN with adequate notice

13  as to Finjan's infringement theories.  PAN reserves all rights to advance claim construction

14  positions different from Finjan's apparent constructions.

15       PAN's contentions that the following claims are invalid under 35 U.S.C. § 112 are made

16  in the alternative, and do not constitute, and should not be interpreted as, admissions regarding

17  the construction or scope of the Asserted Claim, or that the Asserted Claim is not anticipated or

18  rendered obvious by any prior art.  Where PAN identifies a claim term in an independent claim as

19  being invalid, PAN further contends any asserted dependent claim is invalid based on the

20  presence of the same term.

21       In light of the deficiencies in Finjan's Infringement Contentions, PAN reserves the right to

22  amend, modify, and/or supplement these Contentions to further identify bases for invalidity under

23  35 U.S.C. § 112.  PAN's Contentions shall not be construed as an admission that any claim

24  construction advanced by PAN in this case is in any way inconsistent, flawed or erroneous.  Nor

25  should these Contentions prevent PAN from advancing claim construction and/or non-

26  infringement positions in lieu of, or in addition to, invalidity positions.  Further, PAN's

27  Contentions shall not be construed as an admission of or acquiescence to Finjan's purported

28  construction of the claim language or of other positions advanced by Finjan during the course of

45

this litigation.  PAN's Contentions under 35 U.S.C. § 112 may depend, in part, on the Court's claim construction, as well as Finjan's asserted claim scope.  Consequently, PAN only identifies herein the issues under 35 U.S.C. § 112 of which it is presently aware based on PAN's present understanding of the asserted claims and/or Finjan's apparent construction of the claims, as set forth in Finjan's Infringement Contentions.  PAN reserves all rights to advance claim construction positions different from Finjan's apparent constructions and to supplement these contentions as it better understands Finjan's construction of the claims during the claim construction process.

### a.      Unpatentable Subject Matter Under 35 U.S.C. § 101

The Asserted Claims of the '154 Patent re directed to non-statutory subject matter, under 35 U.S.C. § 101, because the claims are directed to merely determining if some receiving information has executable code and providing mobile protection code in response thereto, which is an abstract concept.  The recitation of generic computer components does not amount to significantly more than the abstract idea itself.  *See CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1370 (Fed. Cir. 2011) (reasoning that the use of the Internet to verify a credit card transaction does not meaningfully add to the abstract idea of verifying the transaction).  Additionally, claims 1, 2, 7, and 7 are directed to software per se.  Therefore, the Asserted Claim of the '154 Patent is not directed to patent-eligible subject matter under 35 U.S.C. §101, and is invalid.

### b.      Indefiniteness Under 35 U.S.C. § 112(2)

"[A] patent is invalid for indefiniteness if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention."  *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 901 (2014).  Under Finjan's apparent interpretation of the asserted claims, the recited "content received over a network" is the same thing as the "input" that is used with the "first function call" and the "second function call."  Yet the claims require that the "content" includes the "input."  Finjan's contradiction in its application of the asserted claims cause them to be indefinite.   Additionally, the following claim limitations of the Asserted Claim are invalid based

46

on indefiniteness.

- "safe"
- "content"
- "input"
- "content processor"
- "transmitter"
- "receiver"

### (i)    "safe"

The term "safe" is indefinite.  This term is subjective as it is a term of degree that is subject to different scopes based on the perceptions of the person interpreting it.  Accordingly, it fails to inform a person of ordinary skill in the art with reasonable certainty as to the scope of the claims.

### (ii)    "content"/"input"

In view of Finjan's infringement contentions, these terms are indefinite.  In its infringement contentions, Finjan conflates these terms, sometimes using them interchangeably or in an illogical manner.  For example, sometimes Finjan suggests that the content and input are the same thing, which is contrary to the plain claim language.  Accordingly, in light of Finjan's apparent interpretation of these terms, they are indefinite for failing to inform a person of ordinary skill in the art as to the scope of the claim with reasonable certainty.

### (iii)    "content processor"/ "transmitter"/ "receiver"

To the extent these terms are means-plus-function terms, they are indefinite.  The specification fails to clearly link any corresponding structure to the recited functions for these terms.

### c.    Lack of Written Description Under 35 U.S.C. § 112(1)

To satisfy the written description requirement, the description must "clearly allow persons of ordinary skill in the art to recognize that [the inventor] invented what is claimed."  *Ariad Pharm., Inc. v. Eli Lilly and Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010) (internal citation omitted). The test for sufficiency is whether the disclosure of the application relied upon reasonably

conveys to those skilled in the art that the inventor had possession of the claimed subject matter as of the filing date. *Id.*

The test requires an objective inquiry into the four corners of the specification from the perspective of a POSITA. Based on that inquiry, the specification must describe an invention understandable to that skilled artisan and show that the inventor actually invented the invention claimed. "Whether the written description requirement is satisfied is a fact-based inquiry that will depend on the nature of the claimed invention, and the knowledge of one skilled in the art at the time an invention is made and a patent application is filed." *Carnegie Mellon Univ. v. Hoffmann La Roche Inc.*, 541 F.3d 1115, 1122 (Fed. Cir. 2008) (internal citation omitted). Actual "possession" or reduction to practice outside of the specification is not enough. Instead, the specification itself must demonstrate possession.

While the written description requirement does not demand any particular form of disclosure, a description that merely renders the invention obvious does not satisfy the requirement. *Lockwood v. Am. Airlines*, 107 F.3d 1565, 1571-72 (Fed. Cir. 1997). Under Finjan's apparent interpretation of the Asserted Claims, they are invalid for lacking written description support. Finjan seems to interpret the claims as encompassing receiving "content" that is also "input" for the "first function" and the "second function" that are called with the "input." But this concept is not disclosed anywhere in the specification.

### d.   Lack of Enablement Under 35 U.S.C. § 112(1)

To satisfy the enablement requirement of 35 U.S.C § 112, the disclosure "must teach those skilled in the art how to make and use the full scope of the claimed invention without 'undue experimentation.'" *Genentech, Inc. v. Novo Nordisk, A/S*, 108 F.3d 1361, 1365 (Fed. Cir. 1997) (citations omitted). Moreover, "[i]t is the specification, not the knowledge of one skilled in the art, that must supply the novel aspects of [the] invention in order to constitute adequate enablement." *Id.* at 1366. The Federal Circuit has enumerated several factors to consider in determining whether a disclosure would require "undue experimentation": "(1) the quantity of experimentation necessary, (2) the amount of direction or guidance presented, (3) the presence or absence of working examples, (4) the nature of the invention, (5) the state of the prior art, (6) the

48

1    relative skill of those in the art, (7) the predictability or unpredictability of the art, and (8) the

2    breadth of the claims." *In re Wands*, 858 F.2d 731, 737 (Fed. Cir. 1988).

3           Under Finjan's apparent interpretation of the asserted claims, they are invalid for lacking

4    enablement.  Finjan seems to interpret the claims as encompassing receiving "content" that is also

5    "input" for the "first function" and the "second function" that are called with the "input."  But the

6    specification fails to provide any explanation for how a person of ordinary skill in the art could

7    implement a system where the received "content" includes and is the same thing as the "input"

8    used to call the "first function" and the "second function."

9           **D.    Invalidity of the '408 Patent**

10                 **1.    Priority Date**

11          Finjan alleges that each of the Asserted Claims of the '408 Patent is entitled to the priority

12   date of August 30, 2004, the filing date of Appl. No. 10/930,884.  PAN agrees that the Asserted

13   Claims of the '408 Patent are not entitled to an earlier priority date.

14                 **2.    Patent L.R. 3-3(a) Identification of Prior Art**

15          Subject to the reservations of rights above, PAN identifies prior art that anticipates and/or

16   renders obvious the Asserted Claims of the '408 Patent.  The prior art references identified are

17   also relevant to show the state of the art and reasons and motivations for making improvements,

18   additions, modifications, and combinations.

19          In addition, PAN incorporates the prior art, claims charts, and invalidity theories

20   disclosed, listed and/or asserted by any entity during the course of other litigation (past,

21   present/ongoing, or future) or patent office challenges (either reexaminations or IPRs).  Finjan has

22   failed to timely update its production of these materials, which has prejudiced PAN in its

23   preparation of these contentions.  PAN reserves the right to rely on any prior art reference, prior

24   art combination, motivation to combine, invalidity theory, and/or materials disclosed in these

25   other proceedings.  At least the following prior art references anticipate and/or render obvious the

26   Asserted Claims of the '408 Patent, and/or illustrate the state of the art at the time of the alleged

27   invention:

28

49

### a.   Patent Prior Art

| Ref. No. | Publication No. | Short Name | Filing Date | Publication Date | Priority Date |
|---|---|---|---|---|---|
| 1. | U.S. Patent No. 7,398,553 | "Li" | October 30, 2000 | July 8, 2008 | October 30, 2000 |
| 2. | U.S. Patent Application 2005/0198692 A1 | "Zurko" | March 2, 2004 | September 8, 2005 | March 2, 2004 |

PAN additionally identifies and relies on each of the additional patent or publication references that describe or are otherwise related to the prior art systems identified below.

### b.   System or Product Prior Art

PAN sets forth numerous prior art products or systems in the table below. For such prior art products and systems, PAN has identified, based on its current knowledge, approximate dates on which such products were sold, on sale, made, known, and/or used in the U.S. PAN's investigation of prior art products and systems is ongoing. Further information and/or documents regarding such products and their sale, offer for sale, and use dates will be produced or disclosed as it is (they are) obtained in discovery or otherwise becomes available to PAN. PAN reserves the right to amend, modify, and/or supplement these Contentions based on further and subsequent investigation and discovery. Additionally, PAN reserves the right to rely on the documents identified below as standalone prior art references separate from the prior art system or product they describe.

PAN additionally identifies and relies on any system, product, or public knowledge or use that embodies or otherwise incorporates any of the prior art patents and publications listed above. PAN reserves the right to identify and rely on systems that represent different versions or are otherwise related variations of the identified products and systems.

| Ref No. | System Name | Short Name | Date Made, Known, Used, Sold, or On Sale |
|---|---|---|---|
| 1. | Privoxy System | "Privoxy" | January 31, 2004 |

50

| Ref No. | System Name | Short Name | Date Made, Known, Used, Sold, or On Sale |
|---|---|---|---|
| 2. | JSLint | "JSLint" | March 17, 2003 |
| 3. | Bison | "Bison" | 1988 |
| 4. | Flex | "Flex" | March 1995 |

**(i)     Privoxy**

Privoxy was sold, on sale, made, known, and/or used at least by January 31, 2004.  The features, operations, and functionality of Privoxy are described throughout the Privoxy documentation produced in this case.  These documents include:

- Privoxy 3.0.3 User Manual, doc/webserver/user-manual, available as part of privoxy_3.0.3.orig.tar.gz (downloaded from https://sourceforge.net/projects/ijbswa/files/Debian/3.0.3%20%28stable%29%20woody) (PAN_FIN00118281)project.h (PAN_FIN00103579 to PAN_FIN00103603) (native also available as part of privoxy_3.0.3.orig.tar.gz)

- filters.c (PAN_FIN00103532 to PAN_FIN00103559) (native also available as part of privoxy_3.0.3.orig.tar.gz)

- pcrs.c (PAN_FIN00103560 to PAN_FIN00103575) (native available as part of privoxy_3.0.3.orig.tar.gz)

- pcrs.h (PAN_FIN00103576 to PAN_FIN00103578) (native available as part of privoxy_3.0.3.orig.tar.gz)

**(ii)     JSLint**

JSLint was sold, on sale, made, known, and/or used at least by March 17, 2003.  The features, operations, and functionality of JSLint are described throughout the JSLint documentation produced in this case.  These documents include:

- JSLINT, The JavaScript Verifier (PAN_FIN00103666 to PAN_FIN00103671)

- fulljsling.js (PAN_FIN00103638 to PAN_FIN00103664)

- JavaScript Lint (PAN_FIN00103665)

51

- Top Down Operator Precedence (PAN_FIN00103672 to PAN_ FIN00103686)

### (iii)   Bison

Bison was sold, on sale, made, known, and/or used at least by 1988.  The features, operations, and functionality of Bison are described throughout the Bison documentation produced in this case.  These documents include:

- Bison 3.7.6 Manual (PAN_FIN00103687 to PAN_FIN00104010)

- Bison 1.35 Manual (PAN_FIN00142988 to PAN_FIN00143074)

- Bison 1.35 Table of Contents (PAN_FIN00142987)

- Flex and Bison (PAN_FIN00118282 to PAN_FIN00118291)

### (iv)   Flex

Flex was sold, on sale, made, known, and/or used at least by March 1995.  The features, operations, and functionality of Flex are described throughout the Flex documentation produced in this case.  These documents include:

- Flex Manual (PAN_FIN00104011 to PAN_FIN00104048)

- Flex and Bison (PAN_FIN00118282 to PAN_FIN00118291)

### c.   35 U.S.C. § 102(f)

PAN reserves the right to assert that the Asserted Claims are invalid under 35 U.S.C. § 102(f) in the event PAN obtains additional evidence that the inventors named in any of the Asserted Patents did not invent the subject matter claimed therein.  Should PAN obtain such evidence, it will provide the name of the person(s) from whom and the circumstances under which the alleged invention or any part of it was derived.

### d.   35 U.S.C. § 102(g)

PAN reserves the right to assert that the Asserted Claims are invalid under 35 U.S.C. § 102(g) in the event PAN obtains additional evidence that any of the inventions claimed in the Asserted Patents were made in the United States by another inventor who had not abandoned, suppressed or concealed it, prior to the alleged invention by the applicant of the Asserted Patents. Should PAN obtain such evidence, it will provide the identities of the persons or entities involved in and the circumstances surrounding the making the inventions before the patent applicants.

### 3.   Patent L.R. 3-3(b) Anticipation and Obviousness
#### a.   Prior Art Combinations

The references in Appendix A, attached hereto, alone or in combination with the knowledge of one skilled in the art, anticipate or render obvious the Asserted Claim of the '408 Patent.  Within Appendix A, PAN has provided a listing of combinations and indicated each reference which both anticipates and renders claim 1, 3, 4, 5, 6, 7, 8, and 22 of the '408 Patent.  In addition to the attached Appendix A, PAN incorporates by reference herein each and every reference included in its May 17, 2021 Invalidity Contentions.

All of the Asserted Claims of the '408 Patent are obvious based on one or more combinations of the prior art references above.  The sections below provide motivations to combine the prior art references above.  These obviousness combinations are provided in the alternative to PAN's anticipation and single-reference obviousness contentions and are not to be construed to suggest that any reference included in the combination is not itself anticipatory or would not render the Asserted Claims obvious in light of the knowledge of a person having ordinary skill in the art.  PAN also hereby incorporates by reference the prior art, invalidity grounds, and expert testimony submitted in connection with any petitions for *inter partes* review of the '408 Patent.

#### b.   Motivation to Combine

A POSITA would have been motivated to combine the preceding references for any number of reasons, such as the following exemplary reasons.  Teachings, suggestions, motivations, and/or reasons to modify any of the references and/or to combine any two or more of the references can come from many sources, including the prior art, common knowledge, common sense, predictability, expectations, industry trends, design incentives or need, market demand or pressure, market forces, obviousness to try, the nature of the problem faced, and/or knowledge possessed by a POSITA.

Although a patent claim may be invalidated based on a teaching-suggestion-motivation ("TSM") rationale—*i.e.*, that some teaching, suggestion, or motivation in the prior art that would have led one of ordinary skill to modify the prior-art reference or to combine prior-art reference

53

teachings to arrive at the claimed invention—the Supreme Court identified additional rationales in *KSR International Co. v. Teleflex, Inc.*, 550 U.S. 398 (2007).  The following of these rationales apply here:

> (A) the Asserted Claims combine prior-art elements according to known methods to yield predictable results;

> (B) the Asserted Claims involve the simple substitution of one known element for another to obtain predictable results;

> (C) the Asserted Claims involve the use of a known technique to improve similar devices (methods, or products) in the same way;

> (D) the Asserted Claims apply a known technique to a known device (method, or product) ready for improvement to yield predictable results;

> (E) the Asserted Claims involve combinations of prior-art references that would have been "obvious to try"'—a person of ordinary skill in the art could have reached the Asserted Claims by choosing from a finite number of identified, predictable solutions, with a reasonable expectation of success;

> (F) the Asserted Claims are simply variations of work from one field of endeavor or a different one that would have been prompted based on design incentives or other market forces because the variations were predictable to one of ordinary skill in the art.

*See KSR*, 550 U.S. at 415-18 (rejecting the Federal Circuit's "rigid" application of the teaching, suggestion, or motivation to combine test, and instead espousing an "expansive and flexible" approach).  Indeed, the Supreme Court held that a person of ordinary skill in the art is "a person of ordinary creativity, not an automaton" and "in many cases a person of ordinary skill in the art will be able to fit the teachings of multiple patents together like pieces of a puzzle." *KSR*, 550 U.S. at 420-21.

Thus, even in the absence of a specific teaching, suggestion, or motivation to combine references, the Asserted Claims here are obvious and therefore invalid.  Each of the cited references or devices is in the same field, making it obvious for someone of ordinary skill in the art to identify and combine elements from these references.  One of ordinary skill in the art would have recognized that improvements could be achieved by combining or modifying prior-art references that described such improvements.  Each of the above prior-art references describes devices or methods that were known to offer such improvements, and, accordingly, one of ordinary skill in the art would have been motivated to combine or modify the references as

1    identified in each of the combinations above.

2          Indeed, given that the references are in the same field, one of ordinary skill would have

3    readily, with predictable results, taken teachings from one reference and applied them to other

4    references.  As referenced above, multiple prior art references teach or suggest the concepts

5    claimed in the '408 Patent.  To the extent Finjan argues that any concepts claimed in the

6    '408 Patent were not contained in any prior art reference, it would, at a minimum, have been

7    obvious to adapt each reference to include the concept or combine it with other references that

8    disclose the concept.  In addition, each of the constituent techniques described here was well

9    known to those of ordinary skill in the art, and understood to be among a menu of available

10   design choices for improving network security.  This is one of many motivations to combine the

11   above references.

12         Furthermore, because methods and systems related to a computer gateway for an intranet

13   of computers were well known and studied extensively prior to the '408 Patent priority date,

14   common industry knowledge supplied a reason to combine the above references with each other.

15   Each combination would have produced no unexpected results and would simply represent a

16   known alternative to one of ordinary skill in the art.  This is a further motivation to combine any

17   of the above references.

18         The below sections further address particular reasons to combine the above references.

19   The below should not be construed as an admission that there is any value to the alleged invention

20   of the '408 Patent.  As discussed previously, these contentions are based largely on how Finjan is

21   apparently construing the Asserted Claims in its Initial Infringement Contentions, which is an

22   incorrect and overbroad interpretation of the alleged invention of the '408 Patent.  Accordingly,

23   to the extent the below refers to benefits of certain elements or industry trends towards these

24   elements, this is not an admission that the alleged invention of the '408 Patent provides any

25   benefits—to the contrary, properly construed and compared to the prior art, the '408 Patent

26   provides no benefits.  Likewise, to the extent the below refers to substituting elements, this is not

27   an admission that the elements subject to the substitution are in any way similar, *e.g.*, perform the

28   same function, in the same way, to reach the same result.

The various elements of the Asserted Claims were well-known in the prior art at the time of the alleged invention, and the combination was obvious to one of ordinary skill in the art.  The combination simply (a) combines prior-art elements according to known methods to yield predictable results; (b) involves the simple substitution of one known element for another to obtain predictable results; (c) involves the use of a known technique to improve similar devices (methods, or products) in the same way; (d) applies a known technique to a known device (method, or product) ready for improvement to yield predictable results; (e) involves combinations of prior-art references that would have been "obvious to try"—a person of ordinary skill in the art could have reached the Asserted Claims by choosing from a finite number of identified, predictable solutions, with a reasonable expectation of success; and/or (f) would have been prompted by known work, based on design incentives or other market forces, because such variations were predictable to one of ordinary skill in the art.

Moreover, the Supreme Court has stated that a motivation to combine may be simply "common sense" and that "familiar items may have obvious uses beyond their primary purposes, and in many cases a person of ordinary skill will be able to fit the teachings of multiple patents together like pieces of a puzzle." *KSR*, 550 U.S. at 420.  Indeed, the Supreme Court held that it is sufficient that a combination of elements was "obvious to try," holding that, "[w]hen there is a design need or market pressure to solve a problem and there are a finite number of identified, predictable solutions, a person of ordinary skill has good reason to pursue the known options within his or her technical grasp." *Id*. at 421.  Here, all the claim elements are common sense and are easily fit together by one of ordinary skill in the art.

While not necessary, a motivation to combine may also be found in the references themselves.  One of ordinary skill in the art would have been motivated to combine a reference that refers to, or otherwise explicitly invites combination with, another reference.  Where the references cited herein have such an explicit invitation to combine, that invitation would have motivated one of ordinary skill in the art to combine any such references.

### 4.    Patent L.R. 3-3(c) Invalidity Contentions Charts

Pursuant to Patent Local Rule 3-3(c), charts which were served with PAN's May 17, 2021

56

Invalidity Contentions identifying specifically where and how in each alleged item of prior art each limitation of each asserted claim is found are attached as Exhibits E-1 to E-13.  Where elements are disclosed at multiple locations within a single item of prior art, PAN has not necessarily identified every iteration of every disclosure.

> **5.** **Patent L.R. 3-3(d) Invalidity Based on 35 U.S.C. § 101, Indefiniteness Under 35 U.S.C. § 112(2), or Enablement or Written Description Under 35 U.S.C. § 112(1)**

Based on PAN's present understanding of the Asserted Claim and/or PAN's apparent construction of the claims, as set forth in Finjan's Infringement Contentions, and subject to the reservation of rights above, PAN lists below the grounds upon which the Asserted Claims of the '408 Patent are invalid based on indefiniteness, lack of written description, and/or lack of enablement under 35 U.S.C. § 112.  To the extent PAN's identified grounds for invalidity are based on Finjan's apparent constructions, PAN is not adopting Finjan's apparent constructions, nor is PAN agreeing that any of Finjan's apparent constructions are correct.  Moreover, Finjan's deficient Infringement Contentions fail to provide PAN with adequate notice as to Finjan's infringement theories.  PAN reserves all rights to advance claim construction positions different from Finjan's apparent constructions.

PAN's contentions that the following claims are invalid under 35 U.S.C. § 112 are made in the alternative, and do not constitute, and should not be interpreted as, admissions regarding the construction or scope of the Asserted Claims, or that any of the Asserted Claims are not anticipated or rendered obvious by any prior art.  Where PAN identifies a claim term in an independent claim as being invalid, PAN further contends any asserted dependent claim is invalid based on the presence of the same term.

In light of the deficiencies in Finjan's Infringement Contentions, PAN reserves the right to amend, modify, and/or supplement these Contentions to further identify bases for invalidity under 35 U.S.C. § 112.  PAN's Contentions shall not be construed as an admission that any claim construction advanced by PAN in this case is in any way inconsistent, flawed or erroneous.  Nor should these Contentions prevent PAN from advancing claim construction and/or non-infringement positions in lieu of, or in addition to, invalidity positions.  Further, PAN's

Contentions shall not be construed as an admission of or acquiescence to Finjan's purported construction of the claim language or of other positions advanced by Finjan during the course of this litigation.  PAN's Contentions under 35 U.S.C. § 112 may depend, in part, on the Court's claim construction, as well as Finjan's asserted claim scope.  Consequently, PAN only identifies herein the issues under 35 U.S.C. § 112 of which it is presently aware based on PAN's present understanding of the asserted claims and/or Finjan's apparent construction of the claims, as set forth in Finjan's Infringement Contentions.  PAN reserves all rights to advance claim construction positions different from Finjan's apparent constructions and to supplement these contentions as it better understands Finjan's construction of the claims during the claim construction process.

### a.     Indefiniteness Under 35 U.S.C. § 112(2)

"[A] patent is invalid for indefiniteness if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention."  *Nautilus,* 572 U.S. at 901.

The following claim limitations of the Asserted Claims are invalid based on indefiniteness.

- "programming language"
- "instantiating, by the computer, a scanner for the specific programming language, in response to said determining"
- "wherein the analyzer rules identify certain combinations of tokens and patterns"

### (i)     "programming language"

The term "programming language" as used in the '408 Patent is indefinite because of its use of the term "URI."  A URI, (abbreviation for "uniform resource identifier") is not a "programming language" as the term on its face is commonly used in the art.  A person of ordinary skill in the art would understand that the plain and ordinary meaning of "programming language" not to include URI.  As such, Finjan's inclusion of the term "URI" as a "programming language" within the meaning of the '408 Patent indicates that Finjan has applied a definition of programming language that differs from its plain and ordinary meaning.  However, the '408

patent does not provide a definition of "programming language."  Because the term "programming language" differs from its plain and ordinary meaning, and because Finjan has not provided that differing definition in the specifications, the term "programming language" is indefinite.  A person of ordinary skill in the art would not be reasonably certain as to the scope of the Asserted Claims of the '408 Patent, and as such each Asserted Claim of the '408 Patent is invalid.

(ii)     **"instantiating, by the computer, a scanner for the specific programming language, in response to said determining"**

To the extent that a "scanner" can constitute either hardware or software, the term "instantiating" as used in this claim term is indefinite.  A person of ordinary skill in the art would not be able to determine the scope of the term "instantiating" with reasonable certainty, because the term "instantiating" as commonly understood in the art does not apply to hardware.  The claim term "instantiating, by the computer, a scanner for the specific programming language, in response to said determining" is further indefinite for the same reasons which the term "programming language" is indefinite.

(iii)    **"wherein the analyzer rules identify certain combinations of tokens and patterns"**

The term "certain combinations" is an ambiguous designation of degree which is not illuminated on in the specification of the '408 Patent.  Accordingly, a person of ordinary skill in the art would not be able to determine what "certain combinations of tokens and patterns" are possible with any reasonable certainty.

**b.     Lack of Written Description Under 35 U.S.C. § 112(1)**

To satisfy the written description requirement, the description must "clearly allow persons of ordinary skill in the art to recognize that [the inventor] invented what is claimed."  *Ariad Pharm., Inc. v. Eli Lilly and Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010) (internal citation omitted).  The test for sufficiency is whether the disclosure of the application relied upon reasonably conveys to those skilled in the art that the inventor had possession of the claimed subject matter as of the filing date.  *Id.*

The test requires an objective inquiry into the four corners of the specification from the

59

perspective of a POSITA.  Based on that inquiry, the specification must describe an invention understandable to that skilled artisan and show that the inventor actually invented the invention claimed.  "Whether the written description requirement is satisfied is a fact-based inquiry that will depend on the nature of the claimed invention, and the knowledge of one skilled in the art at the time an invention is made and a patent application is filed."  *Carnegie Mellon Univ. v. Hoffmann La Roche Inc*., 541 F.3d 1115, 1122 (Fed. Cir. 2008) (internal citation omitted).  Actual "possession" or reduction to practice outside of the specification is not enough.  Instead, the specification itself must demonstrate possession.

While the written description requirement does not demand any particular form of disclosure, a description that merely renders the invention obvious does not satisfy the requirement.  *Lockwood v. Am. Airlines*, 107 F.3d 1565, 1571-72 (Fed. Cir. 1997).

Finjan's apparent claim constructions render the Asserted Claims extremely broad in scope and well beyond the purported inventions described in the '408 Patent.  Finjan is attempting to construe the '408 Patent in an idiosyncratic manner that is entirely inconsistent with the written specifications and prosecution histories of the '408 Patent as well as with the understanding of one of ordinary skill in the art at the time the applications that issued as the '408 Patent were filed.  These allegations are inconsistent with the plain language of the claims, the supporting description, and the prosecution history.

The following claim limitations of the Asserted Claims are invalid for lack of written description:

- "wherein the analyzer rules identify certain combinations of tokens and patterns"
- "dynamically building, while said receiving receives the incoming stream, a parse tree whose nodes represent tokens and patterns in accordance with the parser rules"
- "dynamically detecting, while said dynamically building builds the parse tree, combinations of nodes in the parse tree which are indicator of potential exploits, based on the analyzer rules"

For each of the above references claim terms, Finjan's infringement contentions allege

60

infringement in a scope which is well beyond the specific embodiments described in the specification of the '408 Patent.  To the extent that Finjan's infringement read is correct, the specification of the '408 patent does not provide a written description for the full scope of the claims as Finjan asserts them.

### c.    Lack of Enablement Under 35 U.S.C. § 112(1)

To satisfy the enablement requirement of 35 U.S.C § 112, the disclosure "must teach those skilled in the art how to make and use the full scope of the claimed invention without 'undue experimentation.'"  *Genentech, Inc. v. Novo Nordisk, A/S*, 108 F.3d 1361, 1365 (Fed. Cir. 1997) (citations omitted).  Moreover, "[i]t is the specification, not the knowledge of one skilled in the art, that must supply the novel aspects of [the] invention in order to constitute adequate enablement." *Id.* at 1366.  The Federal Circuit has enumerated several factors to consider in determining whether a disclosure would require "undue experimentation":  "(1) the quantity of experimentation necessary, (2) the amount of direction or guidance presented, (3) the presence or absence of working examples, (4) the nature of the invention, (5) the state of the prior art, (6) the relative skill of those in the art, (7) the predictability or unpredictability of the art, and (8) the breadth of the claims." *In re Wands*, 858 F.2d 731, 737 (Fed. Cir. 1988).

Finjan's apparent claim constructions render the Asserted Claims extremely broad in scope and well beyond the purported inventions described in the '408 Patent.  Finjan is attempting to construe the '408 Patent in an idiosyncratic manner that is entirely inconsistent with the written specifications and prosecution histories of the '408 Patent as well as with the understanding of one of ordinary skill in the art at the time the applications that issued as the '408 Patent were filed.  These allegations are inconsistent with the plain language of the claims, the supporting description, and the prosecution history.

The following claim limitations of the Asserted Claims are invalid for lack of enablement:

- "wherein the analyzer rules identify certain combinations of tokens and patterns"
- "dynamically building, while said receiving receives the incoming stream, a parse tree whose nodes represent tokens and patterns in accordance with the parser rules"

61

- "dynamically detecting, while said dynamically building builds the parse tree, combinations of nodes in the parse tree which are indicator of potential exploits, based on the analyzer rules"

For each of the above references claim terms, Finjan's infringement contentions allege infringement in a scope which is well beyond the specific embodiments described in the specification of the '408 Patent.  To the extent that Finjan's infringement read is correct, the specification of the '408 patent does not enable the full scope of the claims as Finjan asserts them such that a person of ordinary skill the art would be able to make or use the invention.

## II.    PATENT LOCAL RULE 3-4 DOCUMENT PRODUCTION ACCOMPANYING INVALIDITY CONTENTIONS

### A.    Patent L.R. 3-4(a) Accused Product Documentation

Pursuant to Patent L.R. 3-4(a), PAN has produced the following documentation sufficient to show the operation of aspects or elements of accused instrumentalities identified by Finjan in its Patent L.R. 3-1(c) charts located during a reasonable search:  PAN_FIN00000225 to PAN_FIN00000414; PAN_FIN00000847 to PAN_FIN00001020; PAN_FIN00001036 to PAN_FIN00001058; PAN_FIN00001127 to PAN_FIN00001178; PAN_FIN00000236 to PAN_FIN00000388; PAN_FIN00000593 to PAN_FIN00000764; PAN_FIN00000789 to PAN_FIN00000806; PAN_FIN00001059 to PAN_FIN00001073; PAN_FIN00001088 to PAN_FIN00001094; PAN_FIN00001179 to PAN_FIN00001189; PAN_FIN00001332 to PAN_FIN00001341; PAN_FIN00003642 to PAN_FIN00003671; PAN_FIN00004734 to PAN_FIN00004742; PAN_FIN00005972 to PAN_FIN00005988; PAN_FIN00006044 to PAN_FIN00006053; PAN_FIN00006124 to PAN_FIN00006132; PAN_FIN00008165 to PAN_FIN00008166; PAN_FIN00008281 to PAN_FIN00008414; PAN_FIN00008682 to PAN_FIN00008684; PAN_FIN00008710 to PAN_FIN00008712; PAN_FIN00008755 to PAN_FIN00008772; PAN_FIN00008914 to PAN_FIN00008940; PAN_FIN00008957 to PAN_FIN00008966; PAN_FIN00008977 to PAN_FIN00009003; PAN_FIN00009005 to PAN_FIN00009013; PAN_FIN00009015 to PAN_FIN00009021; PAN_FIN00009040 to PAN_FIN00009044; PAN_FIN00009058 to PAN_FIN00009068; PAN_FIN00009074 to

PAN_FIN00009077; PAN_FIN00009203 to PAN_FIN00009212; PAN_FIN00010141 to PAN_FIN00010308; PAN_FIN00010328 to PAN_FIN00010409; PAN_FIN00000001 to PAN_FIN00000224; PAN_FIN00000807 to PAN_FIN00000846; PAN_FIN00000853 to PAN_FIN00000858; PAN_FIN00001021 to PAN_FIN00001035; PAN_FIN00001074 to PAN_FIN00001087; PAN_FIN00001095 to PAN_FIN00001126; PAN_FIN00001190 to PAN_FIN00001331; PAN_FIN00006190 to PAN_FIN00008043; and PAN_FIN00118323 to PAN_FIN00141098.  Moreover, PAN has made source code related to the accused instrumentalities available for Finjan's inspection for over one year.  Before the stay order in December 2015, Finjan had over nine months of access to PAN source code and deposed a PAN witness on that code.  After the stay was lifted in January 2021, Finjan has had over three months of access to updated PAN source code.  PAN continues to make its source code available for inspection.  PAN reserves the right to supplement or amend this disclosure if, and as, warranted.

### B.    Patent L.R. 3-4(b) Prior Art

Pursuant to Patent L.R. 3-4(b), PAN has produced or is concurrently producing copies of the prior art identified in the tables above:  PAN_FIN00100675 to PAN_FIN00118322, PAN_FIN00142987 to PAN_FIN00143822.  PAN reserves the right to supplement or amend this disclosure if, and as, warranted.

### C.    Patent L.R. 3-4(d) Sales, Revenue, Cost, and Profits

Pursuant to Patent L.R. 3-4(d), PAN has produced the following documents sufficient to show the sales, revenue, cost, and profits for the accused instrumentalities identified in Finjan's Infringement Contentions:  PAN_FIN00141099 to PAN_FIN00142878, PAN_FIN00143823 to PAN_FIN00143825.  PAN reserves the right to supplement or amend this disclosure if, and as, warranted.

### D.    Patent L.R. 3-4(e) Agreements and Patent L.R. 3-4(c) Licenses

Pursuant to Patent L.R. 3-4(e), PAN has produced copies of the following agreements that PAN may use to support its damages case:  PAN_FIN00142879 to PAN_FIN00142986.  One or more of these agreements may also fall within the category set forth by Patent L.R. 3-4(c) pending review of Finjan's Damages Contentions to be served on July 6, 2021.  In addition to the

above-disclosed documents, there are additional documents that may fall within these categories but that PAN is precluded by confidentiality provisions from disclosing until after a notice period has been provided.  PAN is taking steps to comply with its third party confidentiality obligations and will produce the additional documents after the applicable notice periods expire.  PAN reserves the right to supplement or amend this disclosure if, and as, warranted.


Dated:         July 6, 2021                    MORRISON & FOERSTER LLP


                                               By: /s/ *Diek Van Nort*
                                               Diek Van Nort

                                               Attorneys for Defendant
                                               PALO ALTO NETWORKS, INC.

64

1

**CERTIFICATE OF SERVICE**

2

I declare under penalty of perjury that on July 6, 2021, I served a copy of:

3

**DEFENDANT PALO ALTO NETWORKS, INC.'S
SUPPLEMENTAL INVALIDITY CONTENTIONS AND RELATED
DISCLOSURES PURSUANT TO PATENT LOCAL RULES 3-3
AND 3-4**

4

5

☒   **BY ELECTRONIC SERVICE [Fed. Rule Civ. Proc. Rule 5(b)]** by electronically
mailing a true and correct copy through Morrison & Foerster LLP's electronic mail
system to the e-mail address(s) set forth below, or as stated on the attached service
list per agreement in accordance with Federal Rule of Civil Procedure Rule 5(b).

6

7

8

9

**By Email**

10

| | |
|---|---|
| Juanita R. Brooks | Email: Finjan-PAN_Fish-Service@fr.com |

11

Roger A. Denning
K. Nicole Willliams

12

Frank J. Albert
Jared A. Smith

13

Tucker N. Terhufen
Fish & Richardson P.C.

14

12860 El Camino Real, Suite 400
San Diego, CA  92130

15

Telephone:  (858) 678-5070
Facsimile:   (858) 678-5099

16

*Attorneys for Plaintiff
FINJAN LLC*

17

18

**By Email**                    Email: Finjan-PAN_Fish-Service@fr.com

19

Aamir Kazi
Lawrence Jarvis

20

Fish & Richardson P.C.
1180 Peachtree St. NE 21st Floor

21

Atlanta, GA 30309

22

Telephone:  (404) 892-5005
Facsimile:   (404) 892-5002

23

*Attorneys for Plaintiff
FINJAN LLC*

24

**By Email**                    Email: Finjan-PAN_Fish-Service@fr.com

25

Philip W. Goter

26

Fish & Richardson P.C.
3200 RBC Plaza

27

60 South Sixth Street
Minneapolis, MN 55402

28

65

Telephone:  (612) 335-5070
Facsimile:  (612) 288-9696
*Attorneys for Plaintiff*
*FINJAN LLC*

**By Email**                    Email: Finjan-PAN_Fish-Service@fr.com

Susan Morrison
Fish & Richardson P.C.
222 Delaware Avenue, 17th Floor
P.O. Box 1114
Wilmington, DE 19801
Telephone:  (858) 678-5070
Facsimile:  (858) 678-5099
*Attorneys for Plaintiff*
*FINJAN LLC*

**By Email**                    Email: Finjan-PAN_Fish-Service@fr.com

Tracea Rice
Fish & Richardson P.C.
1000 Maine Ave. Ste. 1000
Washington, D.C. 20024
Telephone:  (202) 783-5070
Facsimile:  (202) 783-2331
*Attorneys for Plaintiff*
*FINJAN LLC*


Executed at Dublin, California, this 6th day of July, 2021.


                                        By:  */s/ Daisy Belle Visitacion*
                                             Daisy Belle Visitacion

66