MICHAEL A. JACOBS (CA SBN 111664)
MJacobs@mofo.com
DIEK O. VAN NORT (CA SBN 273823)
DVanNort@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Telephone: (415) 268-7000
Facsimile: (415) 268-7522

ROSE S. LEE (CA SBN 294658)
RoseLee@mofo.com
MORRISON & FOERSTER LLP
707 Wilshire Boulevard, Suite 6000
Los Angeles, California 90017-3543
Telephone: (213) 892-5200
Facsimile: (213) 892-5454

KYLE W.K. MOONEY (*Pro Hac Vice*)
KMooney@mofo.com
ERIC W. LIN (*Pro Hac Vice*)
ELin@mofo.com
MICHAEL J. DESTEFANO (*Pro Hac Vice*)
MDeStefano@mofo.com
MORRISON & FOERSTER LLP
250 West 55th Street
New York, New York 10019-9601
Telephone: (212) 468-8000
Facsimile: (212) 468-7900

Attorneys for Defendant
PALO ALTO NETWORKS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FINJAN LLC,<br><br>          Plaintiff,<br><br>     v.<br><br>PALO ALTO NETWORKS, INC.,<br><br>          Defendant. | Case No.   3:14-CV-04908-JD<br><br>**PAN'S MOTION TO STRIKE FINJAN'S INFRINGEMENT CONTENTIONS FOR THE '154, '408, AND '731 PATENTS AND TO DIMISS THESE PATENT CLAIMS WITH PREJUDICE**<br><br>[REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED]<br><br>Date: November 17, 2022<br>Time: 10:00 a.m.<br>Courtroom: 11, 19th Floor<br>Judge: Honorable James Donato |

# TABLE OF CONTENTS

Page

NOTICE OF MOTION AND MOTION ........................................................................................ 1
RELIEF REQUESTED ................................................................................................................. 1
STATEMENT OF ISSUES ........................................................................................................... 1
MEMORANDUM OF POINTS AND AUTHORITIES ............................................................... 1
I.     INTRODUCTION ............................................................................................................ 1
II.    HISTORY OF FINJAN'S DEFICIENT INFRINGEMENT CONTENTIONS ................. 2
III.   LEGAL STANDARD ....................................................................................................... 3
IV.    ARGUMENTS .................................................................................................................. 4
       A.   Finjan's Second Amended Contentions for the '154 Patent Are Deficient
            and Should Be Stricken .......................................................................................... 5
            1.    "input" and "content" ................................................................................. 5
            2.    "first function" and "second function" ....................................................... 6
            3.    "content processor" and "security computer" ............................................ 8
       B.   Finjan's Second Amended Contentions for the '408 Patent Are Deficient
            and Should Be Stricken .......................................................................................... 9
            1.    "parser rules" and "analyzer rules" ............................................................ 9
            2.    "scanner" .................................................................................................. 10
       C.   Finjan's Second Amended Contentions for the '731 Patent Are Deficient
            and Should Be Stricken ........................................................................................ 11
            1.    "file cache" and "security profile cache" ................................................. 11
            2.    "security policy cache" ............................................................................ 13
       D.   The Court Should Strike Finjan's January 28, 2022 Amended Contentions
            for the '154, '408, and '731 Patents with Prejudice ............................................. 14
       E.   The Court Should Dismiss Finjan's Infringement Claims for the '154, '408,
            and '731 Patents with Prejudice ........................................................................... 15
V.     CONCLUSION ............................................................................................................... 15

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Blue Spike, LLC v. Adobe Sys., Inc.*,
   No. 14-cv-01647-YGR(JSC), 2015 WL 335842 (N.D. Cal. Jan. 26, 2015) ..............................14

*Droplets, Inc. v. Amazon.com, Inc.*,
   No. C12-03733 HRL, 2013 WL 1563256 (N.D. Cal. Apr. 12, 2013) ........................................6

*Finjan, Inc. v. Check Point Software Techs., Inc.*,
   No. 18-CV-02621-WHO, 2019 WL 7801443 (N.D. Cal. Aug. 12, 2019) ..............................3, 4

*Finjan, Inc. v. Check Point Software Techs., Inc.*,
   No. 18-CV-02621-WHO, 2019 WL 955000 (N.D. Cal. Feb. 27, 2019) ....................................4

*Finjan, Inc. v. Check Point Software Techs., Inc.*,
   No. 18-CV-02621-WHO, 2020 WL 597630 (N.D. Cal. Jan. 17, 2020) ....................................4

*Finjan, Inc. v. Proofpoint, Inc.*,
   No. 13-CV-05808-HSG, 2015 WL 1517920 (N.D. Cal. Apr. 2, 2015) ..............................10, 14

*Shared Memory Graphics LLC v. Apple, Inc.*,
   812 F. Supp. 2d 1022 (N.D. Cal. 2010) ................................................................................12

*Shared Memory Graphics, LLC v. Apple Inc.*,
   No. C 10-2475 MMC, 2011 WL 5320749 (N.D. Cal. Nov. 2, 2011) .....................................15

*Xiaohua Huang v. Nephos Inc.*,
   No. C 18-06654 WHA, 2019 WL 5892988 (N.D. Cal. Nov. 12, 2019),
   *aff'd sub nom.*, *Xiaohua Huang v. MediaTek USA, Inc.*, 815 F. App'x 521
   (Fed. Cir. 2020) .............................................................................................................4, 10, 15

**Other Authorities**

Patent L. R. 3-1 ................................................................................................................1, 2, 4, 14

Patent L. R. 3-6 ..............................................................................................................................1

# NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on November 17, 2022, at 10:00 a.m., or as soon thereafter as the matter may be heard in the United States District Court for the Northern District of California, San Francisco Division, in Courtroom 11 before the Honorable James Donato, Defendant Palo Alto Networks, Inc. ("PAN") will and hereby does submit its motion to move the Court for an Order striking Plaintiff Finjan LLC ("Finjan")'s January 28, 2022 amended contentions for U.S. Patents No. 8,141,154 (the "'154 Patent"), No. 8,225,408 (the "'408 Patent"), and No. 7,418,731 (the "'731 Patent") and dismissing Finjan's infringement claims for these patents with prejudice.

# RELIEF REQUESTED

Pursuant to Patent Local Rules 3-1 and 3-6, Judge Hamilton's July 20, 2021 Order (Dkt No. 146), and Judge Donato's January 13, 2022 Order (Dkt. No. 177), PAN seeks an Order from the Court striking Finjan's January 28, 2022 amended infringement contentions for the '154 Patent, '408 Patent, and '731 Patent and dismissing Finjan's infringement claims for these patents with prejudice.

# STATEMENT OF ISSUES

Whether Finjan's January 28, 2022 amended infringement contentions for the '154 Patent, '408 Patent, and '731 Patent fail to meet the standards set forth in Patent Local Rule 3-1, comply with Judge Hamilton's July 20, 2021 Order and Judge Donato's January 13, 2022 Order, and fail to provide PAN with adequate notice of Finjan's theories of infringement, and whether Finjan's amended infringement contentions should therefore be stricken and Finjan's infringement claims for the patents dismissed with prejudice.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.     INTRODUCTION

Finjan has brought suit many times in this District on the asserted patents and their related patents. In nearly every case, Finjan has served deficient infringement contentions that courts have struck or required Finjan to amend because the contentions did not "identify[] specifically

*where and how* each limitation of each asserted claim is found within each" accused product. Patent L. R. 3-1(c) (emphasis added).  Finjan's case against PAN is no exception.  More than a year has passed since Finjan served its initial contentions, yet after two orders and three rounds of contentions, PAN still has no notice of Finjan's infringement theories for most of the asserted patents.  Finjan's January 28, 2022 amended contentions for the '154 Patent, '408 Patent, and '731 Patent remain largely the same as its initial contentions and contain many of the same deficiencies that the Court and PAN have repeatedly identified.[1]  Rather than articulating specific infringement theories that show "where and how" the asserted claim limitations are met in PAN's products, Finjan continues to obscure its theories in voluminous claim charts that merely parrot claim language.  Finjan makes open-ended, generic statements about "where" PAN's products purportedly meet claim limitations and regularly forgoes any explanation of "how" PAN's products purportedly meet claim limitations.  Far from crystallizing its infringement theories, Finjan seems intent on leaving itself unrestrained from asserting virtually any infringement theory in the future while claiming such theory was disclosed somewhere in its vague contentions. The Court has given Finjan ample warning and plenty of chances.  Finjan's continued violations of the Patent Local Rules, Judge Hamilton's order striking Finjan's initial contentions in part (Dkt No. 146), and this Court's order instructing Finjan to serve compliant amended contentions (Dkt No. 177) warrant striking Finjan's January 28, 2022 amended contentions for the '154 Patent, '408 Patent, and '731 Patent and dismissing its infringement claims for these patents with prejudice.

## II. HISTORY OF FINJAN'S DEFICIENT INFRINGEMENT CONTENTIONS

*Round One:* Finjan served its initial infringement contentions on April 1, 2021.  On May 12, 2021, PAN alerted Finjan to the deficiencies in its initial contentions.  (Dkt. No. 128-9.) Finjan refused to address any of the deficiencies.  (Dkt. No. 128-10.)  On June 15, 2021, PAN filed a motion to strike Finjan's initial contentions.  (Dkt. No. 128.)  On July 20, 2021, Judge Hamilton granted PAN's motion to strike in part, ordering Finjan to identify "*where and how*

---

[1] PAN will not seek to strike Finjan's amended infringement contentions for U.S. Patent 7,647,633 at this time, but it reserves the right to do so.

each of the claim limitations" can be found in the accused products for each of the asserted patents. (Dkt. No. 146 (emphasis added).)

*Round Two*: Thirty days later, Finjan served amended contentions for just the '154 Patent that purportedly addressed the two limitations with exemplary deficiencies specifically called out in Judge Hamilton's Order. (Dkt. No. 165-2.) Despite clear guidance in the Order requiring it to do so, Finjan did not serve amended contentions for the '633, '408, and '731 Patents and instead insisted that Judge Hamilton ordered Finjan to amend its initial contentions only as to the two limitations of the '154 Patent. (Dkt. No. 161-5.) On September 16, 2021, PAN filed a motion to confirm that Finjan had no operative infringement contentions for the '633, '408, and '731 Patents and to strike Finjan's amended infringement contentions for the '154 Patent. (Dkt. No. 161.) The Court agreed with PAN in its January 13, 2022 Order, finding Judge Hamilton's July 20, 2021 Order was not limited to only two limitations of the '154 Patent and ordering Finjan to serve amended infringement contentions for all four patents that would be responsive to Judge Hamilton's Order. (Dkt. No. 177.)

*Round three*: Finjan served second amended infringement contentions for all four patents on January 28, 2022 (Ex. 1) but Finjan again failed to identify "*where and how* each of the claim limitations" (emphasis added) can be found in the accused products, as both Judge Hamilton and the Court have ordered Finjan to do. The second amended infringement contentions still use open-ended, generic language to describe "where" claim limitations are allegedly met and provide no explanation of "how" many of the claim limitations are met. On September 26, 2022, the parties held a meet and confer on Finjan's second amended infringement contentions. (Ex. 5.) The parties reached an impasse. (*Id.*)

### III. LEGAL STANDARD

"[T]he purpose of infringement contentions under the patent local rules is not simply to put the defendant on notice, it is to require the plaintiff 'to crystallize its theories of the case early in the litigation and to adhere to those theories once disclosed.'" *Finjan, Inc. v. Check Point Software Techs., Inc.,* No. 18-CV-02621-WHO, 2019 WL 7801443, at *8 (N.D. Cal. Aug. 12, 2019) (citation omitted). The "purpose of Finjan's infringement contentions [is] requiring Finjan

to crystallize its infringement theories early in the litigation so as to prevent the shifting sands approach to claim construction." *Id.* at *4 n.1. To satisfy Patent Local Rules, Finjan must "identify[] specifically *where and how* each limitation of each asserted claim is found within each" accused product. Patent L. R. 3-1(c) (emphasis added).

Courts may strike with prejudice amended infringement contentions when patentees repeatedly fail to comply with Patent Local Rules and earlier orders. *See, e.g.*, *Finjan, Inc. v. Check Point Software Techs., Inc.*, No. 18-CV-02621-WHO, 2020 WL 597630, at *18-20 (N.D. Cal. Jan. 17, 2020) (striking Finjan's second amended contentions with prejudice); *Xiaohua Huang v. Nephos Inc.*, No. C 18-06654 WHA, 2019 WL 5892988, at *5 (N.D. Cal. Nov. 12, 2019), *aff'd sub nom.*, *Xiaohua Huang v. MediaTek USA, Inc.*, 815 F. App'x 521 (Fed. Cir. 2020) (granting motion to strike amended infringement contentions and dismissing case with prejudice "[a]fter multiple wasted chances" and "despite repeated guidance from the Court").

**IV.   ARGUMENTS**

Finjan's January 28, 2022 amended contentions ("Second Amended Contentions") remain deficient for many of the reasons that PAN identified in its previous motions to strike and meet-and-confer efforts. (*See* Dkt. No. 161.) Finjan's Second Amended Contentions remain largely the same as its initial contentions, which Judge Hamilton struck over a year ago, finding that Finjan failed to identify "*where and how* each of the claim limitations . . . can be found in the accused products." (Dkt. No. 146 at 3-4 (emphasis added).) Finjan mostly added high-level descriptions of the operation of PAN's source code and products and more screenshots to its already voluminous infringement charts, but these additions do nothing to cure its failure to articulate *where and how* PAN's products meet the claim limitations.

As the below examples show, Finjan's revised contentions still do not provide notice of any cogent infringement theory. *Finjan, Inc. v. Check Point Software Techs., Inc.*, No. 18-CV-02621-WHO, 2019 WL 955000, at *6 (N.D. Cal. Feb. 27, 2019) (finding Finjan's infringement contentions deficient because "[t]he marketing materials and screenshots Finjan cites only describe how the [accused products] work in a general sense and virtually 'parrot' the claim language, without tying it to any source code citations or specific information in those screenshots

that match the specific claim components").

### A. Finjan's Second Amended Contentions for the '154 Patent Are Deficient and Should Be Stricken

Despite this being Finjan's third chance to serve compliant contentions, Finjan's Second Amended Contentions for the '154 Patent remain deficient. The '154 Patent relates to protecting computer systems from dynamically generated malicious content. (Dkt. No. 1-3, Ex. 8.) Claim element 1[a] recites (color coding added):

> a content processor (i) for processing content received over a network, the content including a call to a first function, and the call including an input, and (ii) for invoking a second function with the input, only if a security computer indicates that such invocation is safe;

As illustrated below, Finjan again fails to identify numerous limitations in this claim element.

#### 1. "input" and "content"

Finjan provides no explanation of *where* and *how* the "input" and "content" limitations are met and thus fails to provide notice of a cogent infringement theory. Per the claim language, the "content" when received must "include a call to a first function," and that call must further include "an input."

Finjan repeatedly invokes the terms "input" and "content" in its high-level descriptions of PAN's products, but it does not describe *where* those limitations are met in PAN's products. (*See, e.g.,* Ex. 2 at 12 ("Once the input that was marked is processed by the pattern recognition modules and is determined to be safe, the content processor permits the content to load on the destination computer.").) Finjan merely points to the same generic data items for both. In another example, Finjan in some places claims that "files, web content, and URLs" are "content" (*see, e.g., id.* at 265), while in other places argues that "files, URLs, and web content" are "input" (*see, e.g., id.* at 264). But Finjan does not explain *how* a generic data item such as a "file" meets the "content" and "input" limitations or *how* an URL (such as http://www.google.com) includes "a call to a first function" that includes "an input." Finjan's failure to provide "some association between the evidence and the language used in the claim limitations" makes it impossible for PAN to understand *how* the "input" and "content" limitations are met in PAN's products.

*Droplets, Inc. v. Amazon.com, Inc.,* No. C12-03733 HRL, 2013 WL 1563256, at *5 (N.D. Cal. Apr. 12, 2013).

### 2.  "first function" and "second function"

Finjan's failure to identify the "input" and "content" also contribute to the flaws in its contentions regarding the related "first function" and "second function" limitations. Finjan again fails to identify both "where" and "how" the "first function" and "second function" are present in the accused products, even though Judge Hamilton specifically ordered Finjan to do this. (Dkt. No. 146 at 3-4.) In its Second Amended Contentions, Finjan has mostly copied and pasted from its initial contentions, including its so-called "detailed explanations of multiple infringement theories." (*E.g.*, *compare* Dkt. No. 161-7 at 10, *with* Ex. 2 at 11.) Reviewing the same material, Judge Hamilton found that "Finjan effectively concede[d] that its contentions do not identify these functions." (Dkt. No. 146 at 2.)

Just like before, Finjan fails to identify *where* in PAN's products there are specific components that constitute the "first function" and "second function." Finjan merely equates a "first function" with a "substitute function" and a "second function" with an "original function." (*See, e.g.*, Ex. 2 at 13 ("The accused content received over a network including a call to a first function (substitute function)"); *id.* at 15 ("the content processor invokes the second function with the input (original function)").) But equating "first function" and "second function" with equally abstract "substitute function" and "original function" does nothing to inform PAN *where* Finjan contends the "first function" and "second function" can be found in PAN's products.

Nor do Finjan's supposed "detailed explanations" explain *how* the "first function" and "second function" can be found in PAN's products. Finjan merely parrots claim language. (*See, e.g.*, *id.* at 13 ("The accused content received over a network including a call to a first function (substitute function), the call including an input is comprised of content requested by the client computer").)

Finjan's list of dozens of exemplary "first functions" and "second functions" does not comply with the Patent Local Rules or with Judge Hamilton's Order either. As the screenshot below shows, Finjan merely provides a list of exemplary "first functions" in the source code,

1  without explaining *how* they meet the claim language (*e.g.*, how does "content" include "a call to
2  a first function" listed below with any of the alleged "inputs"). (*Id.* at 295.)



Inputs to these functions vary based on the nature of the incoming content, and include the functional parameters or functional arguments received with the incoming content (inputs to the functions) that when executed with a given function, provide certain outputs.

14  The '154 Patent recites the "first function" limitation in relation to the "input" and "content"
15  limitations: "a call to a first function" is included in the "content" and the "call" includes "an
16  input." Not only does Finjan fail to deliver comprehensible contentions pointing to the functions,
17  it makes no attempt at all to identify the "content" and "input" that are associated with the "first
18  functions." As the above excerpt shows, Finjan conclusorily claims that "[i]nputs to these
19  functions vary based on the nature of the incoming content." But that does not meet the
20  requirement that Finjan's contentions specifically identify the "content" that includes "a call to
21  the first function" and the "input" included in that "call." (*Id.*)
22        Finjan claims that the exemplary functions' "application to the claim language and the
23  accused operations" are "provided in Finjan's narratives, explanations, and pinpoint citations
24  above." (*Id.* at 294.) Not true. Consider ▓▓▓▓▓▓▓▓, the first cited "first function"
25  in Finjan's list above. Other than in the above list of "exemplary first functions," the
26  ▓▓▓▓▓▓▓▓ "first function" appears three times in the Second Amended
27  Contentions. (*Id.* at 190, 200, 204.) Each time, Finjan provides a similar one-sentence
28  explanation (reproduced below) of the ▓▓▓▓▓▓▓▓ "first function": it is called by

1   the pan_sml_vm_run function, and it utilizes SML files to analyze and detect URLs.

2
3
4
5
6

7   (*Id.* at 200.)  But how is a call to the ▮▮▮▮▮ "first function" included in the

8   "content received over a network" (*i.e.*, "files, web content, and URLs"), as the claim requires;

9   how does a call to the ▮▮▮▮▮ "first function" include an "input" (i.e.,

10  "files, URLs, and web content"), again as the claim requires; and how does the

11  ▮▮▮▮▮ "first function" share the "input" with a "second function" (and what is

12  the "second function")?  Finjan provides no explanation.  Finjan leaves PAN and the Court in the

13  dark as to *how* its dozens of "exemplary first functions" and "second functions" satisfy the claim

14  language.

### 3.   "content processor" and "security computer"

16     Finjan's Second Amended Contentions also fail to identify *where* and *how* the "content

17  processor" and the "security computer" can be found in PAN's products.  Finjan conclusorily

18  claims that "[t]he accused content processor is comprised of structures, functionalities,

19  operations, or systems of NGFW alone, or in combination with a client computer."  (*See, e.g.*, Ex.

20  2 at 12.)  But that says nothing meaningful.  PAN's NGFW products contain thousands of

21  structures, functionalities, operations, and systems, and Finjan's allegations therefore include an

22  infinite number of possible combinations.  Finjan's open-ended contentions make it impossible

23  for PAN and the Court to understand what the claimed "content processor" is, while leaving

24  Finjan free to disclose a theory at the last minute.

25     Finjan broadly states that the "accused security computer is comprised of structures,

26  functionalities, operations, or systems of NGFW, namely pattern recognition modules."  (*See,*

27  *e.g., id.*)  But PAN has no modules named "pattern recognition modules," and Finjan in fact

28  points to no documentation identifying the so-called "pattern recognition modules."  So what are

the claimed "pattern recognition modules"? Finjan does not tell; its only clue is that they "are implemented by separate portions of the NGFW." (*Id.*) That is not sufficient disclosure of an infringement theory.

### B. Finjan's Second Amended Contentions for the '408 Patent Are Deficient and Should Be Stricken

The '408 Patent relates to "scanning content that includes mobile code, to produce a diagnostic analysis of potential exploits within the content." ('408 Patent at 1:59-61.) Claim 1[c] recites:

> . . . the scanner comprising parser rules and analyzer rules for the specific programming language, wherein the parser rules define certain patterns in terms of tokens, . . . and wherein the analyzer rules identify certain combinations of tokens and patterns as being indicators of potential exploits . . .

(Ex. 3 at 106-07 (emphasis added).)

#### 1. "parser rules" and "analyzer rules"

Finjan's Second Amended Contentions again fail to identify *where and how* the claimed "parser rules" and "analyzer rules" meet the claim language. The claim language is clear: "the parser rules define certain patterns in terms of tokens" and "the analyzer rules identify certain combinations of tokens and patterns as being indicators of potential exploits." To provide notice of a cogent infringement theory, Finjan needed to identify *where* PAN's products allegedly include "parser rules" and "analyzer rules" and explain *how* the "parser rules" and "analyzer rules" perform the recited functionalities relating to "patterns" and "tokens."

But Finjan did not do that. Finjan at best makes conclusory statements that some components in PAN's products "*describe* parser and analyzer rules for the specific programming language." (*See, e.g.*, *id.* at 125 (emphasis added.) But identifying components that purportedly "describe" the "parser rules" and "analyzer rules" is not the same as identifying *where* the rules themselves are in PAN's products. Finjan often discusses the two limitations together with no differentiation despite them being distinct limitations with different functionalities. (*See, e.g.*, *id.* at 113 ("These content scanning engines use parser rules and analyzer rules (e.g., SML file and DFA constructs) as part of content inspection process.").)

Nor does Finjan explain *how* the recited rules perform the recited functionalities relating to "patterns" and "tokens."  Finjan merely claims that "patterns" and "tokens" broadly can include any of "language keywords, values, names for variables or functions, operators, and punctuation characters" without identifying *how* any rules use specific "patterns" and "tokens" in the accused products. (*Id.* at 109.)  Finjan's infringement theories thus remain a mystery.

### 2. "scanner"

Although Finjan claims that NGFW's "content scanning engines" and WildFire's "Static Analyzer" and "Virtual Machine" are "scanners" (*see, e.g.*, *id.* at 108, 149), Finjan fails to explain *how* the alleged "scanners" "compris[e] parser rules and analyze rules," as the asserted claims require.  Finjan fails to "point to any useful website or document, or give any meaningful analysis of [PAN's] products as they specifically relate to the claim limitations." *Xiaohua Huang*, 2019 WL 5892988, at *2.  Finjan's Second Amended Contentions mention "content scanning engines" six times (Ex. 3 at 108, 113, 259), and the only document purportedly referring to "content scanning engines" that Finjan includes is the blue text in the below screenshot (*id.* at 114, 259).

> For example, the figure below shows that NG Firewalls instantiate multi-purpose content scanning engines for specific program languages. These content scanning engines use analyzer rules that identify exploits within the content stream. The content stream is parsed using parser rules to allow the application of the analyzer rules to detect exploits.
>
> - **Fast, but multi-purpose Content Scanning Engines**
>   - Supporting consistent inspection syntax
>
> FINJAN-PAN 093154.

The blue text consists of only two bullet points.  They do not support Finjan's claims immediately above and, at best, show that PAN's products include "content scanning engines."  But the claims require a specific scanner, not just any scanner.  How does the excerpt show that the "content scanning engines" are "for specific program languages," as the claims require?  And what does it have to do with "analyzer rules" and "parser rules"?  "If the cited sources contain information necessary to understand Finjan's infringement theories, Finjan must identify the particular supporting language in those sources and explain how that language fits into Finjan's theory of infringement." *Finjan, Inc. v. Proofpoint, Inc.*, No. 13-CV-05808-HSG, 2015 WL 1517920, at *6

(N.D. Cal. Apr. 2, 2015). Finjan did not do that.

Finjan also cannot map the "scanner" limitation to PAN's products by changing the claim language. Finjan repeatedly states that accused "scanners" in PAN's product "specify," "use" or "describe" "parser rules and analyzer rules," but that is not what the claim requires. (*See, e.g.*, Ex. 3 at 128 ("The scanners instantiated by the . . . function specify parser rules and analyzer rules."); *id.* at 113 ("These content scanning engines use parser rules and analyzer rules (e.g., SML file and DFA constructs) as part of content inspection process.").) Rather, in the claim, "the scanner compris[es] parser rules and analyzer rules." Finjan has failed to identify any "scanner comprising parser rules and analyzer rules" in PAN's products, and its contentions thus remain deficient.

### C. Finjan's Second Amended Contentions for the '731 Patent Are Deficient and Should Be Stricken

The '731 Patent relates to scanning incoming files from the internet and deriving security profiles from those files. Claim elements 1[a], 1[b], 1[c], and 1[d] recite:

> [1a] a scanner for scanning incoming files from the Internet and deriving security profiles for the incoming files, wherein each of the security profiles comprises a list of computer commands that a corresponding one of the incoming files is programmed to perform;
>
> [1b] a file cache for storing files that have been scanned by the scanner for future access, wherein each of the stored files is indexed by a file identifier;
>
> [1c] a security profile cache for storing the security profiles derived by the scanner . . . ; and
>
> [1d] a security policy cache for storing security policies for intranet computers within the intranet . . . .

(Dkt. No. 1-1, Ex. 4.)

#### 1. "file cache" and "security profile cache"

Finjan again fails to "crystalize" its infringement theories and instead relies on open-ended contentions. Finjan contends merely that "a file cache" is "e.g., a database, such as Local DB, or [] disk storage/memory." (Ex. 4 at 104.) Finjan's contentions thus effectively identify every database, storage, and memory of PAN's products as an alleged "file cache." Finjan further obscures its infringement theories by making the same open-ended claims regarding a separate

claim element "security profile cache." (*See, e.g., id.* at 126 ("security profiles (e.g., scan results or analysis reports following a scan) are stored in a security profile cache (e.g., in a database, such as Local DB, Central DB, Virus Database, or in disk storage) after a scan ends").) According to Finjan's contentions, every database and disk storage in PAN's products can constitute both the accused "file cache" and "security profile cache," despite those being two different claimed components.

Finjan again fails to map the claim language to PAN's products, therefore providing no "reasonable notice to [PAN] why [Finjan] believes it has a reasonable chance of proving infringement." *Shared Memory Graphics LLC v. Apple, Inc.*, 812 F. Supp. 2d 1022, 1025 (N.D. Cal. 2010). Finjan fails to explain *how* the alleged "file cache" stores "files that have been scanned by the scanner," which entails the scanner "deriving security profiles" that include "a list of computer commands" for the files. Its contentions for claim element 1[b] "file cache" do not mention "computer commands" at all. Finjan's examples at best show that PAN's products have components that store files, but it ignores that the "file cache" limitation requires much more. (*See, e.g.*, Ex. 4 at 114 ("As another example, PAN training videos demonstrates the presence of a file cache for the NGFW as it states that the 'firewall drops any files that contain that malware' after downloading and installing the new signature.").)

Although Finjan claims that it identifies "at least two file caches, i.e., filecache1 and filecache2" data structures in its source code section (*id.* at 104), a close look of that section (*id.* at 120, excerpt reproduced below) shows that Finjan again fails to identify the "*how*."



This excerpt fails to explain *how* the "filecache1" or "filecache2" data structures above store files

that the scanner already scanned and *how* the stored files are accessed in the future, as recited in the claims. Nor does Finjan explain *how* those data structures correspond to any files that are stored to an undefined "disk [] and/or [] database." (*Id.* at 121.)

For the "security profile cache" limitation, Finjan again fails to explain *how* the "security profile cache" stores security profiles derived by the scanner, which include a list of computer commands. Just like Finjan's contentions regarding "file cache," its contentions regarding "security profile cache" do not mention "computer commands" at all. Finjan's examples at most show that PAN's products have components that store analysis results, but that is not what the claim requires. (*Id.* at 144.)

> As a further example, PAN Documentation explains that the "Analyzer finishes sample processing and output result data into Local DB," which can serve as the security profile cache since it stores the scan results (i.e., the security profiles derived by the scanner).
>
> **2.1  Use cases**
>
> 1. Analyzer finishes sample processing and output result data into Local DB, and send data sync job into DB-Sync queue. DB-Copy worker gets job from the queue, fetches data from Local DB and sync data into Central DB, and then marks synced data in Local DB as synced, acknowledge queue to remove the job, and send a new job into notifier queue.
> 2. One DB-Copy worker failed to sync the data into Central DB because of some hardware failure; job will be dispatched to another DB-Copy worker to continue processing data sync.
> 3. DB-Copy worker syncs the data and finds data conflicts between Local DB and Central DB; it can be intelligent to resolve the problem.

Similarly, Finjan never connects the alleged "security profile cache" with the alleged "file cache," as the claim requires that the "security profile cache" indexes security profiles by a file identifier associated with a corresponding file stored in the "file cache." Finjan also avoids committing to any infringement theory by repeatedly using optional language, leaving itself free to change theories any time. (*See, e.g.*, *id.* at 145 ("WildFire DB-Copy Worker stores analysis results data (derived security profile) in the Central DB, which *can* serve as the claimed cache."); *id.* at 146 ("WildFire Analyzer stores analysis results and intermediate data (derived security profile) in Local DB, which *can* represent the claimed cache") (emphasis added).)

### 2. "security policy cache"

Finjan never identifies *where* the accused "security policy cache" is in PAN's products.

Finjan only conclusorily states that "[s]ecurity policies are stored" and that PAN's NGFW product or Traps product "stores security policies," without identifying the specific component that constitutes the alleged "security policy cache." (*See, e.g., id.* at 161, 164, 167.) Finjan also never identifies the "*how*." As the example below shows, Finjan's standard practice of parroting claim language and reciting generic statements about PAN's products that have no relevance to the claim language, provides PAN with no notice of its infringement theory. (*Id.* at 168.)

> As yet another example, PAN documentation explains that NGFWs store security policies in a cache and that each of the security policies include a list of restrictions for files that are transmitted to intranet computers. *See, e.g.*, https://knowledgebase.paloaltonetworks.com/KCSArticleDetail?id=kA10g000000ClWZCA0 ("Security policies on the firewall can be defined using various criteria such as zones, applications, IP addresses, ports, users, and HIP profiles. Firewall administrators can define security policies to allow or deny traffic, starting with the zone as a wide criterion, then fine-tuning policies with more granular options such as ports, applications, and HIP profiles.")

### D. The Court Should Strike Finjan's January 28, 2022 Amended Contentions for the '154, '408, and '731 Patents with Prejudice

The Court should strike Finjan's Second Amended Contentions for the '154, '408, and '731 Patents with prejudice and not allow Finjan to serve amended infringement contentions. Finjan has had three rounds of infringement contentions but still fails to identify "where and how each of the claim limitations" can be found in PAN's products. Finjan has demonstrated that it either cannot or will not comply with the Patent Local Rules. Its continued failure to articulate any cogent infringement theories has prejudiced PAN's ability to prepare its defense. PAN has also produced costly discovery on products for which Finjan has failed to provide a credible basis for infringement. Because Finjan steadfastly refuses to serve contentions that comply with Patent Local Rule 3-1, Judge Hamilton's Order, and the Court's Order, the Court should not give Finjan another chance to serve amended contentions. *See Proofpoint*, 2015 WL 1517920, at *12 ("The Court will not provide Finjan leave to amend the portions of its contentions expressly stricken, above."); *Blue Spike, LLC v. Adobe Sys., Inc.*, No. 14-cv-01647-YGR(JSC), 2015 WL 335842 at *6 (N.D. Cal. Jan. 26, 2015) (striking contentions given plaintiff's "failure to take any action" despite defendants "having raised this defect in informal communications, a discovery letter to the Court, and a formally noticed motion").

### E. The Court Should Dismiss Finjan's Infringement Claims for the '154, '408, and '731 Patents with Prejudice

Good cause exists in this case to dismiss Finjan's infringement claims for the '154, '408, and '731 patents with prejudice. Finjan has had multiple opportunities and years to prepare and serve compliant infringement contentions. It has failed to do so, despite detailed explanations of deficiencies from PAN and guidance from the Court. Courts in the District have dismissed with prejudice under similar circumstances. *See Shared Memory Graphics, LLC v. Apple Inc.*, No. C 10-2475 MMC, 2011 WL 5320749 (N.D. Cal. Nov. 2, 2011) (finding the magistrate judge's order granting motion to strike certain parts of the second amended infringement contentions in essence dispositive); *Xiaohua Huang*, 2019 WL 5892988, at *5 (granting motion to strike amended infringement contentions and dismissing case with prejudice "[a]fter multiple wasted chances" and "despite repeated guidance from the Court").

## V. CONCLUSION

For the foregoing reasons, the Court should strike Finjan's January 28, 2022 amended infringement contentions for the '154, '408, and '731 Patents and dismiss Finjan's claims of infringement of these patents with prejudice.

Dated: October 11, 2022                MORRISON & FOERSTER LLP

                                       By:   /s/ Diek O. Van Nort
                                             Diek O. Van Nort

                                       Attorneys for Defendant
                                       PALO ALTO NETWORKS, INC.