# EXHIBIT A

MORRISON | FOERSTER

425 MARKET STREET
SAN FRANCISCO, CA
94105-2482

TELEPHONE: 415.268.7000
FACSIMILE: 415.268.7522

WWW.MOFO.COM

MORRISON & FOERSTER LLP

BEIJING, BERLIN, BOSTON,
BRUSSELS, DENVER, HONG KONG,
LONDON, LOS ANGELES, NEW YORK,
NORTHERN VIRGINIA, PALO ALTO,
SAN DIEGO, SAN FRANCISCO, SHANGHAI
SINGAPORE, TOKYO, WASHINGTON, D.C.

March 1, 2022

Writer's Direct Contact
+1 (415) 268-6971
DVanNort@mofo.com

**By Email** (jasmith@fr.com)

Jared Smith
Fish & Richardson P.C.
12860 El Camino Real, Suite 400
San Diego, CA 92130

Re:   *Finjan LLC v. Palo Alto Networks, Inc.*, Case No. 3:14-cv-04908-JD (N.D. Cal.)

Counsel:

We write regarding deficiencies in Finjan's January 28, 2022 amended infringement contentions and in response to Finjan's February 14, 2022 letter.

Despite having had two judges order Finjan to amend its infringement contentions to provide sufficient notice of its theories (Dkt. Nos. 146, 177), Finjan's January 28, 2022 amended infringement contentions remain deficient for many of the same reasons that PAN first identified to Finjan over nine months ago (5/12/2021 Ltr fr D. Van Nort to R. Denning). Finjan has no excuse for its persistent refusal to provide compliant contentions as it has access to all requested versions of PAN's source code and all core technical documents.

The Court has found repeated failures to comply with the Court's orders regarding infringement contentions to be grounds for awarding attorney's fees and costs. *See, e.g.*, *Perfect Surgical Techniques, Inc. v. Olympus Am., Inc.*, No. C12-5967 PJH, 2014 WL 1095591, at *4 (N.D. Cal. Mar. 14, 2014) (awarding attorney's fees and costs associated with defendants' second motion to strike because plaintiff violated the court's order on plaintiff's initial infringement contentions). PAN intends to file a motion to strike Finjan's second amended infringement chart for the '154 Patent, amended infringement chart for the '408 Patent, and amended infringement chart for the '731 Patent, and to seek fees and costs for that motion.[1] PAN will not file that motion if Finjan dismisses its claims regarding these three patents. We are available to meet and confer on March 4, 2022. Please let us know a time that works for you.

Regarding PAN's response to Interrogatory No. 8 that Finjan raised in its February

---

[1] PAN will not seek to strike Finjan's amended infringement chart for the '633 Patent at this time, but reserves the right to do so.

MORRISON | FOERSTER

Jared Smith
March 1, 2022
Page Two

14, 2022 letter, PAN is currently conducting further investigation and will supplement its response in due course. Finjan's Interrogatory No. 20, however, is still "a premature request for . . . disclosures of non-infringement contentions" because Finjan's January 28, 2022 amended infringement contentions remain deficient. (8/25/2021 PAN's Resp. to Finjan's ROG No. 20).

## I. HISTORY OF FINJAN'S DEFICIENT INFRINGEMENT CONTENTIONS

Almost one year has passed since Finjan first served its initial infringement contentions on April 1, 2021, yet PAN still has no notice of Finjan's infringement theories for most of the asserted patents. On May 12, 2021, PAN alerted Finjan to the deficiencies in its initial infringement contentions. (5/12/2021 Ltr fr D. Van Nort to R. Denning). Finjan refused to address any of the deficiencies. On June 15, 2021, PAN filed a motion to strike Finjan's initial infringement contentions. (Dkt. No. 128.) On July 20, 2021, Judge Hamilton granted PAN's motion to strike in part, ordering Finjan to identify "where and how each of the claim limitations" can be found in the accused products for each of the asserted patents. (Dkt. No. 146.)

Thirty days later, Finjan served amended infringement contentions for just the '154 Patent; it did not serve amended infringement contentions for the '633, '408, and '731 Patents. Finjan again denied that its infringement contentions were in anyway deficient and insisted that Judge Hamilton ordered Finjan only to amend its initial contentions with respect to just two limitations of the '154 Patent. (Dkt. No. 161-5.) On September 16, 2021, PAN filed a motion to confirm Finjan has no operative infringement contentions for the '633, '408, and '731 patents and to strike Finjan's amended infringement contentions for the '154 patent. (Dkt. No. 161.) Judge Donato agreed with PAN in his January 13, 2022 Order, finding Judge Hamilton's July 20, 2021 Order was not limited to only two limitations of the '154 patent and ordered Finjan to serve amended infringement contentions for all four patents that would be responsive to Judge Hamilton's Order. (Dkt. No. 177.) Finjan served amended infringement contentions on January 28, 2022. But Finjan again fails to identify "where and how each of the claim limitations" can be found in the accused products, as both Judge Hamilton and Judge Donato have ordered Finjan to do.

## II. GENERAL DEFICIENCIES IN FINJAN'S JANUARY 28, 2022 AMENDED INFRINGEMENT CONTENTIONS

Despite PAN's repeated efforts to alert Finjan to the deficiencies in its infringement contentions, Finjan's January 28, 2022 amended infringement contentions remain deficient. As an initial matter, Finjan's infringement contentions for different claims elements are spread out across tens or hundreds of pages, obfuscating Finjan's infringement theory (if there is any) for the entire claim. A closer look at Finjan's amended claim charts reveal that just like Finjan's previous claim charts, they are filled mostly with irrelevant screenshots and

MORRISON | FOERSTER

Jared Smith
March 1, 2022
Page Three

source code explanations that do not map to the claim language. These screenshots and source code explanations do not explain "where and how each of the claim limitations" can be found in the accused products. For example, the '408 Patent requires a "scanner" that "compris[es] parser rules and analyzer rules." On page 149 of Finjan's amended chart, Finjan claims that the "following screenshots indicate that WildFire's 'Static Analyzer (SA)' and 'Virtual Machine (VM)' are scanners for the specific programming language." (Appendix F1 at 149.) But the screenshots show only brief descriptions of WildFire's Static Analyzer and Virtual Machine; they do not mention "parser rules" or "analyzer rules," or show how WildFire's Static Analyzer and Virtual Machine are comprised of "parser rules and analyzer rules." (*See id.* at 150-54.)

### III. SPECIFIC DEFICIENCIES IN FINJAN'S JANUARY 28, 2022 AMENDED INFRINGEMENT CONTENTIONS

Below is a list of the most glaring deficiencies in Finjan's second amended infringement chart for the '154 Patent, amended infringement chart for the '408 Patent, and amended infringement chart for the '731 Patent.

- Second Amended Infringement Claim Charts for the '154 Patent (Appendices E1, E2)
  - "content processor"/"security computer"
    - Finjan's statement that "[t]he accused content processor is comprised of structures, functionalities, operations, or systems of NGFW alone, or in combination with a client computer" is so vague as to include an infinite number of possible combinations components. (*See, e.g.*, Appendix E1 at 12.) Finjan's statements for the "security computer" are similarly vague. (*See, e.g., id.* ("The accused security computer is comprised of structures, functionalities, operations, or systems of NGFW, namely pattern recognition modules."); *id.* ("The pattern recognition modules are implemented by separate portions of the NGFW (security computer).").)
  - "first function"/"second function"
    - Finjan equates a "first function" with a "substitute function," and a "second function" with an "original function," but fails to identify the alleged "substitute function" and "original function" in PAN's products. (*See, e.g., id.* at 12-13.)
    - According to the claim language, the content "includ[es] a call to a first function." But Finjan's contentions repeatedly state that the "first functions" are inserted into the "content," which by logic, means that the "first functions" did not exist in the received content, as the claim requires. (*See, e.g., id.* at 12 ("Portions of the NGFW insert substitute functionality (substitute function calls) into received content"); *id.* at

MORRISON | FOERSTER

Jared Smith
March 1, 2022
Page Four

- 185 ("PAN-OS inserts substitute functionality into the content received by the system that causes inputs to be sent to security computers for analysis.").)
  - Finjan's source code explanations at best explain the procedural operation of the source code, without tying the operation to the claim language.  Similarly, Finjan merely lists numerous "exemplary" "first functions" and "second functions" without explaining how they meet the claim language.  For example, the claim language requires that the "first function" and "second function" share the same "input," but nowhere does Finjan explain how the "exemplary first functions" share the same "input" (and what the "input" is) with the "exemplary second functions."
  - o "input"/ "content"
    - As explained, Finjan fails to identify the "input" that is included both in a call to a "first function" and when invoking a "second function."
    - Finjan conflates "input" with "content," despite them being two distinct claim elements.  (*See, e.g.*, '154 Chart at 14 ("NGFW inserts functionality (substitute function call) that causes content (inputs) to be sent to other structures in the NGFW (security computer) to be analyzed"); *id*. at 19 ("the content processor invokes the substitute function to cause the URLs or other web content (input) to be sent to PAN-DB); *id.* at 20 ("the accused content received over a network including a call to a first function, the call including an input, is comprised of content (URLs) requested by the client computer").)

- Amended Infringement Claim Chart for the '408 Patent (Appendix F1)
  - o "parser rules" and "analyzer rules"
    - Finjan's infringement theories regarding "parser rules" and "analyzer rules" are inconsistent.  It identifies "SML file and DFA constructs" as the "parser rules and analyzer rules" (*id.* at 113), while at the same time alleging that the SML files and DFA constructs merely "*describe* parser and analyzer rules" (*id.* at 108 (emphasis added)).
    - Although Finjan's amended contentions have now identified the claimed "tokens" as "language keywords, values, names for variables or functions, operators, and punctuation characters" (*id.* at 109), Finjan does not explain how the "parser rules define certain patterns in terms of" the alleged "tokens."  Finjan similarly fails to connect the "analyzer rules" with the alleged "tokens," as the claim requires.
    - Finjan's contentions do not differentiate "parser rules" from "analyzer rules," but those two are different claim elements with different functionalities.  (*See, e.g., id.* at 113 ("These content scanning engines

MORRISON | FOERSTER

Jared Smith
March 1, 2022
Page Five

- use parser rules and analyzer rules (e.g., SML file and DFA constructs) as part of content inspection process."); *id.* at 226 ("the DFA matching process utilizes the DFA constructs defined within the SML files to identify combination of tokens").)
  - "scanner"
    - Finjan fails to articulate any infringement theory for how the "scanner" "compris[es] parser rules and analyzer rules." For the accused product NGFW, Finjan only conclusorily alleges that "NGFWs have a scanner" (*see, e.g., id.* at 107) or equates a "scanner" with "content scanning engines" (*id*. at 108) without identifying the specific component of the NGFW that constitutes the "scanner" or the "content scanning engines." In its source code section, Finjan repeatedly states that the "scanners … specify parser rules and analyzer rules" (*see, e.g., id.* at 128, 132), but that is not what the claim requires. Finjan's infringement contentions for WildFire are also insufficient. Although Finjan alleges that WildFire's "Static Analyzer" and "Virtual Machine" are "scanners," it never explains how the "Static Analyzer" and "Virtual Machine" are comprised of "parser rules" and "analyzer rules." (*Id.* at 149.) Its source code section confirms that they are not as they only "specify" "parser rules and analyzer rules." (*Id.* at 161-62.)
  - "identifying, by the computer, individual tokens within the incoming stream"
    - Finjan fails to explain how the accused products "identify[]" any of the alleged tokens. Finjan in fact does not mention any of the alleged tokens in this section. It only conclusorily alleges that the accused products "identify individual tokens." (*See, e.g., id.* at 188, 192.)
    - Finjan claims that "NGFWs use Content-ID technology that parses and tokenizes a wide range of content in a single pass to detect virus" but provides no evidence or explanation of how "tokenization" occurs. (*Id.* at 188.)

- Amended Infringement Claim Chart for the '731 Patent (Appendix B1)
  - "file cache"
    - Finjan's open-ended contentions fail to identify any specific component that constitutes the "file cache." (*See, e.g.*, '731 Chart at 104 ("scanned files (e.g., samples or incoming content) are stored in a file cache (e.g., in a database, such as Local DB, or in disk storage/memory) after being scanned for future access").) Finjan effectively identifies every database or memory of the accused products as the "file cache." The problem is worsened when Finjan makes the same conclusory allegations regarding the separate claim

MORRISON | FOERSTER

Jared Smith
March 1, 2022
Page Six

- - element "security profile cache," making it impossible to ascertain Finjan's infringement theory. (*See, e.g.*, *id.* at 126 ("security profiles (e.g., scan results or analysis reports following a scan) are stored in a security profile cache (e.g., in a database, such as Local DB, Central DB, Virus Database, or in disk storage) after a scan ends").)
  - Finjan only conclusorily alleges that "scanned files" are stored in a "file cache," but ignores the claimed "scanning" requires the scanner "deriving security profiles" that include "a list of computer commands" for the files. (*See, e.g.*, *id.* at 104.) Finjan never identifies any alleged "file cache" that stores files after the scanner has derived a security profile with a list of computer commands for the file.
  - "security profile cache"
    - In addition to claiming that a "security profile cache" can be any database or disk storage (*see, e.g.*, *id.* at 126), Finjan also uses optional language and conceals its infringement theory (*see, e.g.*, *id.* at 148 ('WildFire database design includes three layers: Local DB, Mid DB, and Central DB … Each of which can serve as the claimed cache."); *id.* at 127 ("Wildfire has a security profile cache (e.g., the DB used to store reports generated after scanning, such as Local DB, WF-DB, Central DB, or Virus DB)").
    - Finjan also never connects the alleged "security profile cache" with the alleged "file cache," as is plainly required by the claim language. It never articulates an infringement theory in which the specific "security profile cache" indexes security profiles by a file identifier associated with a corresponding file stored in the specific "file cache."
  - "security policy cache"
    - Finjan never identifies any specific component that constitutes the claimed "security policy cache." Its contentions only conclusorily allege that "[s]ecurity policies are stored" and that the accused products NGFW or Traps "stores security policies," without identifying what the "security policy cache" is in the accused products. (*See, e.g.*, *id.* at 161, 164, 167.)

\* \* \*

Finjan's repeated failures to provide sufficient infringement contentions confirm that Finjan has no viable infringement claims for the '154 Patent, the '408 Patent, and the '731 Patent. Finjan should dismiss those claims now. If it does not, PAN intends to file a motion to strike Finjan's second amended infringement chart for the '154 Patent, amended infringement chart for the '408 Patent, and amended infringement chart for the '731 Patent,

MORRISON | FOERSTER

Jared Smith
March 1, 2022
Page Seven

and to seek fees and costs for that motion.  As noted above, we are available to meet and confer on March 4, 2022.  Please let us know a time that works for you.


Sincerely,

/s/ *Diek Van Nort*

Diek Van Nort