1   MICHAEL A. JACOBS (CA SBN 111664)        ROSE S. LEE (CA SBN 294658)
    MJacobs@mofo.com                         RoseLee@mofo.com
2   DIEK O. VAN NORT (CA SBN 273823)         MORRISON & FOERSTER LLP
    DVanNort@mofo.com                        707 Wilshire Boulevard, Suite 6000
3   MORRISON & FOERSTER LLP                  Los Angeles, California 90017-3543
    425 Market Street                        Telephone: (213) 892-5200
4   San Francisco, California 94105-2482     Facsimile: (213) 892-5454
    Telephone: (415) 268-7000
5   Facsimile: (415) 268-7522

6   KYLE W.K. MOONEY (*Pro Hac Vice*)
    KMooney@mofo.com
7   ERIC W. LIN (*Pro Hac Vice*)
    ELin@mofo.com
8   MICHAEL J. DESTEFANO (*Pro Hac Vice*)
    MDeStefano@mofo.com
9   MORRISON & FOERSTER LLP
    250 West 55th Street
10  New York, New York 10019-9601
    Telephone: (212) 468-8000
11  Facsimile: (212) 468-7900

12  Attorneys for Defendant
    PALO ALTO NETWORKS, INC.

13

14                       UNITED STATES DISTRICT COURT

15                      NORTHERN DISTRICT OF CALIFORNIA

16

17  FINJAN LLC,                               Case No.    3:14-CV-04908-JD

18                    Plaintiff,              **PAN'S REPLY IN SUPPORT OF
                                              MOTION TO STRIKE FINJAN'S
19         v.                                 INFRINGEMENT
                                              CONTENTIONS FOR THE '154,
20  PALO ALTO NETWORKS, INC.,                 '408, AND '731 PATENTS AND
                                              TO DIMISS THESE PATENT
21                    Defendant.              CLAIMS WITH PREJUDICE**

22                                            **[REDACTED VERSION OF
                                              DOCUMENT SOUGHT TO BE
23                                            SEALED]**

24
                                              Date:  November 17, 2022
25                                            Time:  10:00 a.m.
                                              Courtroom: 11, 19th Floor
26                                            Judge:  Honorable James Donato

27

28

DEFENDANT PALO ALTO NETWORKS, INC.'S REPLY FOR MOTION TO STRIKE AND DISMISS
CASE NO. 3:14-CV-04908-JD
SF-4960501

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ................................................................................................ 1

II.   ARGUMENTS ................................................................................................... 2

    A.   Finjan's Contentions for the '154 Patent Are Deficient......................... 2

        1.   "input" and "content"................................................................ 2

        2.   "first function" and "second function"..................................... 4

        3.   "content processor" and "security computer" ........................... 5

    B.   Finjan's Contentions for the '408 Patent Are Deficient......................... 6

        1.   "parser rules" and "analyzer rules" .......................................... 6

        2.   "scanner" ................................................................................... 7

    C.   Finjan's Contentions for the '731 Patent Are Deficient......................... 8

        1.   "file cache" and "security profile cache" .................................. 8

        2.   "security policy cache" ........................................................... 10

III.  CONCLUSION ................................................................................................ 10

1

**TABLE OF AUTHORITIES**

2                                                                                                **Page(s)**

3   **Cases**

4   *Finjan, Inc. v. Check Point Software Techs., Inc.*,
5        No. 18-CV-02621-WHO, 2019 WL 955000 (N.D. Cal. Feb. 27, 2019)....................................2

6   *Finjan, Inc. v. FireEye, Inc.*,
        No. 13-cv-03133-SBA (JCS), Dkt. No. 134 (N.D. Cal. Oct. 16, 2017)....................................9
7

    *Network Caching Tech. LLC v. Novell Inc.*,
8        No. C-01-2079-VRW, 2002 WL 32126128 (N.D. Cal. Aug. 13, 2002)....................................7

9   *Shared Memory Graphics LLC v. Apple, Inc.*,
10       812 F. Supp. 2d 1022 (N.D. Cal. 2010) ...................................................................................9

11  *Uniloc USA, Inc. v. Apple Inc.*,
        No. C 18-00360 WHA, 2018 WL 3219486 (N.D. Cal. July 2, 2018) ...................................10
12

    *Word to Info Inc. v. Google Inc.*,
13       No. 15-CV-03486-WHO, 2016 WL 3648605 (N.D. Cal. July 8, 2016)....................................8

14  **Other Authorities**

15  N.D. Cal. Patent L.R. 3-1(c) ............................................................................................................9

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.      INTRODUCTION

Finjan is well aware of the level of detail required to satisfy the Patent Local Rules.  Both this Court and Judge Hamilton have previously ordered Finjan to serve compliant infringement contentions.  (Dkt. Nos. 146, 177.)  And in at least seven other cases, courts in this district have found that Finjan violated the Patent Local Rules by serving deficient infringement contentions.  (*See* Dkt. No. 128 at 2 n.1.)  Yet Finjan's Opposition confirms that its Second Amended Contentions again fail to identify *where* and *how* the asserted claim limitations are found in PAN's products.  While they parrot the claim language in some spots or make conclusory statements about the claim limitations being met in other spots, Finjan's contentions overall fail to follow the claim language and are largely empty of the required substance.  Finjan claims that reading its contentions "in total" or in "full view" will allow one to discover Finjan's infringement theories.  But even when read in full, Finjan's contentions do not provide the required where and how.

Finjan also misstates the case history and tries to shift the blame for PAN being forced to file multiple motions to strike (the first two of which were granted) to obtain Finjan's compliance with the Patent Local Rules.  As early as March 11, 2021, PAN reminded Finjan of its obligations to serve compliant infringement contentions.[1]  (Dkt. No. 104 at 23-25.)  But after three rounds of infringement contentions, Finjan has still not done so.  A month after Finjan served its Second Amended Contentions, PAN wrote Finjan detailing the deficiencies of Finjan's contentions.  (Dkt. No. 200-2.)  The parties subsequently conferred, but Finjan refused to correct the deficiencies.  (Dkt. No. 199-3.)  This case was then in "a *de facto* stay," as Finjan acknowledged in its scheduling order briefing.  (Dkt. No. 193 at 1.)  To preserve the Court's and the parties' resources, PAN had intended to wait for claim construction to file this motion,[2] but after the

---

[1] Contrary to Finjan's misrepresentation, PAN did not "declare[] its intention to file its first motion to strike . . . before Finjan's initial contentions were even due."  (Dkt. No. 199-2 (hereinafter "Opp.") at 1.)  PAN reminded Finjan of its past infringement contention failures and urged Finjan to comply.  (Dkt. No. 104 at 23-25.)

[2] Claim construction may simplify or eliminate many of the issues raised in this motion. Despite knowing of PAN's claim construction positions for over a year, Finjan has not addressed any of PAN's constructions in its contentions.  Should the Court adopt any of PAN's claim

1  Court issued the scheduling order (Dkt. No. 194), PAN promptly conferred again with Finjan and

2  filed this motion.  (*See* Dkt. No. 196-6.)

3    **II.    ARGUMENTS**

4        **A.    Finjan's Contentions for the '154 Patent Are Deficient**

5        Finjan emphasizes that its contentions for the '154 Patent are structured in four sections

6  (Opp. at 3-4), but these sections do not disclose any cogent infringement theory.  Finjan

7  supposedly "introduces all infringement theories" in Section 1 (*id.* at 3), but Finjan discusses the

8  operation of PAN's products only at a high level, without specifying where the claim limitations

9  can be found in PAN's products.  The discussion of the products' operation is also not tied to the

10  claim language, making it impossible to understand *how* PAN's products allegedly infringe.  The

11  remaining sections are inconsistent with Section 1 or contain more descriptions of the operation

12  of PAN's products and source code without describing the required where and how.[3]

13            **1.    "input" and "content"**

14        As with Finjan's previously deficient contentions, its purportedly disclosed infringement

15  theory in Section 1 does not "map [claim] components onto the features of the allegedly

16  infringing products." *Finjan, Inc. v. Check Point Software Techs., Inc.*, No. 18-CV-02621-WHO,

17  2019 WL 955000, at *6 (N.D. Cal. Feb. 27, 2019).  There is no dispute that the claim language

18  requires "content" "received over a network" that "includ[es] a call to a first function" with "the

19  call including an input."  (Dkt. No. 195-3 ("Mot.") at 5; Opp. at 4.)  Finjan's attempt in its

20  Opposition to explain how this limitation is met only highlights the deficiencies in its contentions.

21        Finjan's Opposition confirms that in PAN's products, when "content" is "received over a

22  network," the "content" does not "include[e] a call to a first function" with "the call including an

23  input," as required in the claims.  At most, Finjan's contentions show that "a call to a first

24  function" with "the call including an input" is added to the "content" *after* it is "received over a

25  ─────────────────

26  constructions (such as those that previous courts adopted or the Federal Circuit affirmed),
    Finjan's contentions also are deficient for failing to address those constructions.

27        [3] PAN's Motion identified representative deficiencies in Finjan's infringement
    contentions.  Finjan's contentions against PAN's Traps products are similarly deficient.

28

1    network," which is contrary to what the claims require.

2           Despite repeatedly stating in its contentions that the accused "content" is "files, URLs,

3    and web content," its Opposition concedes that this "content" does not meet the claims'

4    requirement that the "content" include "a call to a first function."  (Opp. at 5 (noting Finjan's

5    theory is not that "files, URLs, and web content" include "a call to a first function").)  Finjan now

6    claims that "files, URLs, and web content" are just part of the accused "content."  (*Id.* at 4.)

7    Thus, the portions of Finjan's contentions that rely on "files, URLs, and web content" alone as the

8    claims' "content" fail to satisfy the required how because they cannot map to the claim language

9    that requires the "content" to include "a call to a first function."

10          Having to disclaim its first "content" mapping, Finjan's Opposition focuses on a second

11   mapping that artificially creates new "content" by combining "files, URLs, and web content" with

12   a PAN technology called SML files.  (Opp. at 5 ("The accused content received over a network

13   including a call to a first function (substitute function), the call including an input is comprised of

14   content requested by the client computer, which is received over a network combined with SML

15   files received over a network at the NGFW.").)  But that mapping makes no sense as it is not how

16   PAN's products operate and fails to clearly identify where in PAN's products create the newly

17   combined "content."  Indeed, Finjan's contentions concede that PAN's products use SML files to

18   "parse and analyze the files, URLs, and web content."  (Dkt. No. 199-4 at 185.)  PAN's products

19   do not combine SML files with user data like "files, URLs, and web content."

20          Even if, however, PAN's products created this combined "content" (which Finjan does

21   not explain), this mapping still fails to follow the claim language and thus fails to satisfy the

22   Patent Local Rules.  The claims require that, *when received over a network*, the "content" has "a

23   call to a first function" with an "input."  The SML files, according to Finjan, add the "call to a

24   first function" with an "input" that is missing from the "files, URLs, and web content" in its first

25   mapping.  (Opp. at 5.)  In other words, only after "files, URLs, and web content" are combined

26   with SML files is the "content" limitation met.  (*Id.*)  Thus, under this mapping, the "content"

27   including "files, URLs, and web content" does not have "a call to a first function" with an "input"

28   until *after it is received over a network* and combined with SML files in PAN's products, which

1    is contrary to the claim language.  (*See* Dkt. No. 199-4 at 13, 15-16.)  Finjan has thus failed to

2    identify how the claims' "content" and "input" limitations are met in PAN's products.

3                        **2.      "first function" and "second function"**

4          Finjan does not dispute that its Second Amended Contentions for the '154 Patent are

5    mostly the same as its original contentions, which Judge Hamilton struck.  (*See* Mot. at 6.)  Nor

6    does it deny that, in Section 1 of its contentions, Finjan merely equates "first function" and

7    "second function" with equally abstract "substitute function" and "original function" and fails to

8    explain where and how the two limitations are met in PAN's products.  (*Id.*)

9          Finjan instead relies on Section 3 of its contentions, where it lists dozens of exemplary

10   "first functions" and "second functions" without explaining how they meet the claim language.

11   Finjan claims that the exemplary functions "tie to theories set forth elsewhere" but offers no

12   examples.  (Opp. at 5-6.)  Finjan does not answer PAN's question of how the alleged "first

13   function" ███████████████████ meets the claim language.  How is this function called with

14   an "input"?  And how is a call to this function included in the received "content"?  Finjan does

15   not say.  Rather, Finjan argues that it met its burden under the Patent Local Rules because it

16   "identifies source code in PAN's products responsible for *generating* the 'first function' and

17   'second function.'"  (*Id.* at 5 (emphasis added).)  But Finjan's mapping again fails to follow the

18   claim language.  The claims say nothing of "generating" the first and second functions.  Rather, a

19   call to the "first function" must be included in the received "content."  Finjan thus again fails to

20   map the claim language to PAN's products.

21         Finjan's mapping for "content" that combines "files, URLs, and web content" and "SML

22   files" does not cure the deficiencies in Finjan's infringement contentions.  Finjan fails to describe

23   how SML files include a call to any of the alleged "first functions" (such as

24   ███████████████) or how they include any alleged "input."  In fact, Finjan fails to list

25   any inputs to any of its "exemplary first functions."  (*See* Dkt. No. 199-4 at 295.)

26         Finjan's Opposition confirms that it fails to explain *how* the claimed "first function" and

27   "second function" share the same "input."  Despite Finjan's emphasis on its identified exemplary

28   functions, its cited excerpts merely use the terms "first function" and "second function" without

1   identifying where they are in PAN's products.  (*See* Opp. at 7.)  Moreover, the cited excerpts are

2   divorced from the claim language.  The excerpts discuss "transfer[ring] the input to the first

3   function to the destination computer to be processed by the second function."  (*Id.*)  But that is

4   not required by the claim language.  Finjan does not describe how the "input" is included in "a

5   call to a first function" and how the "second function" is invoked with the same "input."

**3.    "content processor" and "security computer"**

7          Finjan does not dispute that its disclosed theory for "content processor" in Section 1 is

8   conclusory and open-ended.  (*See* Mot. at 8-9.)  It instead requires that PAN decipher Finjan's

9   infringement theory by studying Finjan's over 600 pages of contentions "in total." (Opp. at 7.)

10         Even when Finjan's contentions are read "in total," they fail to provide adequate notice of

11  Finjan's theory for "content processor" and "security computer."  Finjan cites pages 24-43

12  (Section 2.1) of the '154 Chart, but the cited pages do not mention "content processor" at all, let

13  alone identify where and how the claimed "content processor" is in PAN's products.  (*See* Dkt.

14  No. 199-4 at 24-43.)  Finjan's cited source code section (*id*. at 177-184) does not disclose the

15  where and how either.  Finjan claims that it identifies source code that "implement[s] the claimed

16  content processor" (Opp. at 7), but Finjan's cited pages do not state that the listed source code

17  files implement the claimed "content processor."  For example, on pages 178-179, Finjan lists

18  source code files that implement "the modules that receive and process the network packets

19  corresponding to files, URLs, and web content."  (Dkt. No. 199-4 at 177-79).  Are these modules

20  the claimed "content processor" that processes "content"?  Finjan leaves PAN guessing as

21  Finjan's contentions have sometimes identified "files, URLs, and web content" as "input," while

22  at other times as "content."  *See supra* §II.A.1.

23         Finjan does not dispute that PAN has no modules named "pattern recognition modules,"

24  which Finjan claims to be the "accused security computer."  (Mot. at 8.)  Contrary to Finjan's

25  assertion (Opp. at 8), its contentions do not state that "pattern recognition modules" include

26  PAN's "Malicious Signature Matching and Deterministic Finite Automata (DFA) Matching"

27  modules, but rather that they "perform at least Malicious Signature Matching and Deterministic

28  Finite Automata (DFA) Matching."  (Dkt. No. 199-4 at 12.)   Finjan points to no documentation

1   discussing Malicious Signature Matching and Deterministic Finite Automata (DFA) Matching.

2   PAN therefore has no notice of what the "pattern recognition modules" are or where the "security

3   computer" is in PAN's products.  Finjan's citations to its contentions regarding WildFire are also

4   filled with improper open-ended language.  (*See, e.g.*, Opp. at 8 ("identifying WildFire, PAN-DB

5   cloud, *and/or* Inline Machine Learning as security computers") (emphasis added).)

6                    **B.      Finjan's Contentions for the '408 Patent Are Deficient**

7                    **1.      "parser rules" and "analyzer rules"**

8            Finjan's Opposition confirms that it fails to identify *where* the "parser rules" and

9   "analyzer rules" are in PAN's products.  Finjan claims that it "identifies SML files and DFA

10  constructs as *including* the parser rules and analyzer rules" and cites portions of its contentions

11  where it identifies "SML files and Deterministic Finite Automata ('DFA') constructs that

12  *describe* parser and analyzer rules." (*Id.* at 9-10 (emphasis added).)[4]  But where in the "SML

13  files and Deterministic Finite Automata ('DFA') constructs" are the "parser rules" and "analyzer

14  rules"?  And even if SML files and DFA constructs were "parser rules" and "analyzer rules," does

15  Finjan contend that the "parser rules" and "analyze rules" are the same and they both are SML

16  files and DFA constructs, or that "parser rules" are SML files and "analyzer rules" are DFA

17  constructs?  Finjan's cited source code excerpt (*id.* at 9), which does not even mention "parser

18  rules" or "analyzer rules," does not provide the answer.  Nor do Finjan's contentions.

19          Finjan's contentions regarding PAN's WildFire product are similarly deficient.  Finjan

20  again fails to identify where the "parser rules" and "analyzer rules" are in WildFire, as Finjan's

21  cited pages demonstrate.  (*See, e.g.*, Dkt. No. 199-5 at 144 ("programming language specific

22  static and dynamic analyzers that *describe* parser and analyzer rules") (emphasis added).)  PAN

23  also did not waive its arguments against Finjan's WildFire contentions; Finjan acknowledges that

24

25          [4] Finjan mischaracterizes its contentions.  It quotes a paragraph cited by PAN and claims
    that the paragraph "makes clear that the 'scanner . . .' includes the parser rules and analyzer rules
26  in the form of SML files and DFA construct[ions]."  (Opp. at 9.)  The quoted paragraph discusses
    "SML files and Deterministic Finite Automata ('DFA') constructs that *describe* parser and
27  analyzer rules."  (*Id.* (emphasis added).)  Finjan never explains where that description is or
    summarizes the description to explain where and how the parser and analyzer rules are present.
28

1    PAN moved to strike Finjan's contentions in their entirety.  (*See* Opp. at 10.)  PAN's Motion also

2    made clear that PAN cited examples representative of the overall deficiencies of Finjan's

3    contentions.  (*See* Mot. at 9.)

4         Finjan's contentions do not explain how the "parser rules" and "analyzer rules" perform

5    functionalities relating to the recited "patterns" and "tokens."  Finjan's cited example merely

6    repeats claim language.  (*See id*. at 10 ("the parser and analyzer rules (e.g., SML files and DFA

7    constructs) define certain patterns in terms of tokens and identify certain combinations of tokens

8    and patterns as being indicators of potential exploits")).)  Finjan does not identify where the

9    "patterns" and "tokens" are in PAN's products, let alone explain *how* the SML files and DFA

10   constructs (supposed "parser and analyzer rules") define or identify them.  Finjan's discussions of

11   source code are irrelevant as Finjan "provides no explanation of how [the source code files or

12   functions] map onto the claim language."  *Network Caching Tech. LLC v. Novell Inc.*, No. C-01-

13   2079-VRW, 2002 WL 32126128, at *6 (N.D. Cal. Aug. 13, 2002) (finding infringement

14   contentions insufficient).

**2.    "scanner"**

16        Finjan's Opposition confirms Finjan's misreading of the claim language.  The claim

17   language is clear: a "scanner compris[es] parser rules and analyzer rules."  Finjan does not

18   explain how specifying, calling, or relying on the rules meets the claim language.  (*See* Mot. at 9.)

19   Finjan, however, repeatedly maps the claimed "scanner" to the wrong claim language in arguing

20   that it has identified the "scanner" as "content scanning engines," "specific source code

21   functions," and "static and dynamic analyzers."  Opp. at 11-12 ("PAN's NGFW content scanning

22   engines (e.g., the claimed 'scanner') . . . *specify* parser rules and analyzer rules. . . . scanner

23   source code *specifying* or *calling* the "parser rules" and "analyzer rules. . . . WildFire has static

24   analyzers that serve as scanners . . . scanning *relies* on parser and analyzer rules") (emphasis

25   added).)  In Finjan's quoted excerpts, the accused "scanner" also *specifies*, instead of *comprising*,

26   the rules.  (*Id.* at 11 ("The scanners instantiated by the ████████ function *specify* parser

27   rules and analyzer rules"), 12 ("The programming language specific static analyzer scanner

28   *specify* parser rules and analyzer rules") (emphasis added).)  Finjan also cites to its purported

1   discussions of "pattern matching," but Finjan again relies on the wrong claim language in these

2   cited pages.  (*Id*. at 11; Dkt. No. 199-5 at 113 ("content scanning engines *use* parser rules and

3   analyzer rules"), 115 ("NGFWs use Inspection Processors and Discrete Finite Automata to

4   *implement* analyzer rules.") (emphasis added).)  Finjan cannot satisfy the required how by relying

5   on the wrong claim language.

6        Furthermore, although in a few places of its contentions, Finjan conclusorily claims that

7   some components, such as NGFW's "content scanning engines," are the accused "scanners,"

8   Finjan's remaining contentions are untethered to these purportedly accused "scanners."  Finjan's

9   quoted excerpt on page 11 shows that.  (*See, e.g.*, Opp. at 11.)  Contrary to Finjan's

10  mischaracterization, the excerpt discusses the "scanners instantiated by the ███████████

11  function," not "content scanning engines."  (*Id*.)  The cited pages of the '408 Chart also do not

12  discuss "content scanning engine"; nowhere do the contentions state that "content scanning

13  engines" are "scanners instantiated by the ███████████ function."  The discussions of some

14  unidentified "scanners"—unrelated to "content scanning engines"—do not explain the required

15  how for "content scanning engines."

### C.  Finjan's Contentions for the '731 Patent Are Deficient

#### 1.  "file cache" and "security profile cache"

18  Finjan doubles down on its improper use of open-ended language.  It quotes three

19  paragraphs from its contentions with each paragraph containing similar open-ended language.

20  (*See, e.g.*, Opp. at 13 ("a security profile cache (e.g., in a database, *such as* Local DB, Central

21  DB, Virus Database, *or* in disk storage). . . . the file cache (*e.g.*, a database, *such as* Local DB, *or*

22  in disk storage/memory)") (emphasis added).)  That is not sufficient disclosure of an infringement

23  theory.  *Word to Info Inc. v. Google Inc.*, No. 15-CV-03486-WHO, 2016 WL 3648605, at *5 n.4

24  (N.D. Cal. July 8, 2016) (warning plaintiff its improper "use of open-ended placeholder phrase

25  like 'such as' and 'for example' [would] not enable it to rely on infringement theories not

26  specifically articulated in its infringement contentions.").  Finjan's vague contentions suggest that

27  "file cache" and "security profile cache," two different claim elements, can both be "Local DB."

28  (Mot. at 13.)  By relying on open-ended language, Finjan seeks to be free to later claim that a

previously unidentified component was disclosed in its contentions.  (*Id.* at 2.)

Finjan's Opposition confirms PAN's concern.  Finjan now claims that its contentions "identify—by source code file—the 'security profile cache.'"  (Opp. at 13.)  But Finjan does not say where exactly this identified "security profile cache" is in PAN's products.  Finjan's cited pages only list source code files that purportedly "implement" "the operations for" "access and updating" or "indexing" the "security profile cache"; they do not identify a "security profile cache."  (*See* Dkt. No. 199-6 at 153-54, 156-57.)  In addition to open-ended contentions, Finjan also claims that it can identify the claim limitations, such as "file cache," "by functionality, e.g., storing scanned files that are indexed by a file identifier."  (Opp. at 13.)  But this is merely parroting claim language, not "identifying specifically where and how each limitation of each asserted claim is found within [the accused products]."  Patent L.R. 3-1(c).

Finjan's argument that its open-ended contentions are "based on the information PAN has made available thus far" (Opp. at 13**)** is meritless.  Finjan must identify the accused "file cache" and "security profile cache" with specificity based on its available information and "delete references . . . to the infringement as 'exemplary and not limiting' or 'by way of example and not limiting.'"  *Finjan, Inc. v. FireEye, Inc.*, No. 13-cv-03133-SBA (JCS), Dkt. No. 134 (N.D. Cal. Oct. 16, 2017 (*see* Dkt No. 128-2).

Although in a few places of its contentions, Finjan conclusorily states that "filecache1" and "filecache2" are the accused "file cache," Finjan fails to describe the required how.  (*See* Mot. at 12-13.)  Finjan disputes this but cites excerpts where it merely discusses an unspecified "cache" or files being cached.  (*See, e.g.*, Opp. at 14 ("PAN's documentation shows that WildFire stores the sample (e.g., the scanned file) in a cache.").)  Finjan's discussions of security profiles (*id.*) are similarly unrelated to "filecache1" and "filecache2."  Finjan cannot explain how "filecache1" and "filecache2" meet the claim language by pointing to some generic, unrelated discussions.  *Shared Memory Graphics LLC v. Apple, Inc.*, 812 F. Supp. 2d 1022, 1025 (N.D. Cal. 2010) (the patentee "must map specific elements of Defendants' alleged infringing products onto the Plaintiff's claim construction.").

Finjan's contentions for "security profile cache" are divorced from the claim language.

1    The claims require the "security profile cache" to store "security profiles derived by the scanner,"

2    which "comprises a list of computer commands." (Mot. at 11.)  Finjan does not dispute that its

3    contentions regarding "security profile cache" do not mention "computer commands." (*Id.* at 12.)

4    It instead cites discussions of PAN's products "scan[nning] results" or "storing scanned samples

5    and results" (Opp. at 13), but that is not what the claim language requires.

6                              **2.**      **"security policy cache"**

7            PAN identified the deficiencies in Finjan's contentions for "security policy cache" in

8    PAN's letter to Finjan (Dkt. No. 200-2 at 6), subsequent meet and confer, and PAN's Motion

9    (Mot. at 13-14).  Finjan still cannot show that its contentions identify the required where and how.

10   Finjan's quoted language only invokes the term "security policy cache." (*See* Opp. at 15

11   ("security policy cache with the PAN-OS stores policies and rules . . .").)  But where is the

12   accused "security policy cache" in PAN-OS?  Finjan also claims that its contentions "identify the

13   'security policy cache' by source code files" (*id.*, citing Dkt. No. 199-6 at 169-171), but the cited

14   pages show otherwise.  Finjan merely list source code files that "implement[]" "the operations for

15   accessing the security policy cache." (*See* Dkt. No. 199-6 at 170.)  But where is the "security

16   policy cache" that is accessed by the operations implemented by the listed source code files?

17   Because Finjan does not even specify where the accused "security policy cache" is in PAN's

18   products, it fails to explain how this limitation is met in PAN's products.  Finjan's discussion of

19   "restrictions" or citation of a YouTube video is irrelevant.  *Uniloc USA, Inc. v. Apple Inc.*, No. C

20   18-00360 WHA, 2018 WL 3219486, at *2 (N.D. Cal. July 2, 2018) ("The cited video, which

21   explains how the accused feature operates at a high level, did not by itself specify where and how

22   [the plaintiff] believes the infringing elements lie in the accused products.").

23           **III.    CONCLUSION**

24           Finjan has had three rounds of infringement contentions.  Despite detailed explanations

25   from PAN and guidance from the Court, Finjan still fails to identify where and how each of the

26   claim limitations can be found in PAN's products.  The Court should strike Finjan's Second

27   Amended Contentions for the '154, '408, and '731 Patents and dismiss Finjan's claims of

28   infringement of these patents with prejudice.

1

2   Dated:  November 1, 2022                    MORRISON & FOERSTER LLP

3

4                                              By:     /s/ Diek O. Van Nort
                                                       Diek O. Van Nort
5
                                                   Attorneys for Defendant
6                                                  PALO ALTO NETWORKS, INC.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28