

December 23, 2022

Fish & Richardson P.C.
12860 El Camino Real, Suite 400
San Diego, CA 92130

858 678 5070 main
858 678 5099 fax

**_VIA ECF_**

The Honorable James Donato
United States District Court for the Northern District of California
San Francisco Courthouse, Courtroom 11, 19th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

**Juanita R. Brooks**
Principal
brooks@fr.com
858 678 4377   direct

Re:   *Finjan LLC v. Palo Alto Networks, Inc.,* Case No. 3:14-cv-04908 (JD)

Dear Judge Donato:

Finjan LLC ("Finjan") submits this response to the letter brief filed by Palo Alto Networks, Inc. ("PAN") (Dkt. No. 208)[1] pursuant to the Court's December 1 Order (Dkt. No. 211).  In its letter, PAN challenges all but one entry on Finjan's privilege log.  But those documents are properly withheld because they are protected by the attorney-client privilege, are litigation work product, and were shared only with third parties who possessed a common interest with Finjan.  We address PAN's allegations below.

As an initial matter, PAN's challenge should be rejected because of PAN's delay in bringing it.  Finjan served its privilege log on July 30, 2021, and amended it on September 3, 2021 in response to PAN's complaints.  While PAN states that it "has worked with Finjan for over five months" and "exchanged at least 33 letters and emails and have met and conferred three times" with Finjan, PAN neglects to mention that the bulk of that correspondence took place more than a year ago, in the spring and summer of 2021.  Indeed, after Finjan explained to PAN in a September 28, 2021 email that each of the documents PAN was challenging was properly withheld, PAN remained silent on this dispute until November 16, 2022 – nearly fourteen months later.  PAN has offered no excuse for its delay.  The Court should deny PAN's requested relief because PAN failed to diligently pursue this issue.

      **A.  The Documents on Finjan's Privilege Log Are Protected by the Attorney-Client Privilege and/or the Work Product Doctrine**

The first group of documents that PAN challenges – Entry Nos. 1-4, 8-10, and 12 on Finjan's log – are properly withheld as privileged and as attorney work product.  PAN's only argument to the contrary presents an overly narrow view of the attorney client privilege, and does not address attorney work product at all.  Contrary to PAN's argument that only communications to or from an attorney directly seeking or providing legal advice are protected by privilege, (Dkt. No. 208 at p. 2), the protection of the attorney-client privilege is not so narrow.  Instead, communications reflecting legal advice may similarly be privileged.  *Planned Parenthood Fedn. of Am., Inc. v. Ctr. for Med. Progress*, No. 16-CV-00236-WHO (DMR), 2019 WL 1950377, at *6

---

[1] Finjan previously filed its responsive letter brief on December 22, 2022 (Dkt. No. 214).  As the letter was inadvertently linked to Dkt. No. 208 rather than Dkt. No. 209, Finjan re-files this identical brief with the addition of this footnote for correction of the docket entry.

fr.com



December 23, 2022
Page 2

(N.D. Cal. May 1, 2019) ("[A]ttorney-client privilege is not limited to communications in which an attorney participates; it may also protect communications between non-attorneys in which the employees discuss or transmit legal advice given by counsel, or . . . communicate[] . . . about an intent to seek legal advice." (internal quotation omitted)); *see also Rowan v. Sunflower Elec. Power Corp.*, 2016 WL 3743102 (D. Kan. July 13, 2016); *Crabtree v. Experian Information Solutions, Inc.*, No. 1:16-cv-10706, 2017 U.S. Dist. LEXIS 173905, at *4-5 (N.D. Ill. Oct. 20, 2017). And just as Finjan's privilege log states, the documents that PAN challenges in this group convey or reflect advice from counsel regarding patent issues, licensing, and agreements, and each of the documents on Finjan's log was also prepared in anticipation of or during the course of litigation. (*See* Dkt. No. 208, Ex. A.) PAN's argument that the documents "appear" to be something other than what Finjan's privilege log reflects is nothing more than speculation.

PAN similarly takes an overly narrow view of the attorney client privilege in the second group of documents it challenges. But again, these documents reflect legal advice related to licensing, and were prepared in anticipation of or during litigation. (*See* Dkt. No. 208, Ex. A at Entries 5-7, 13-56.) As Finjan's privilege log properly reflects, and as PAN acknowledges, a number of these documents were spreadsheets held by Ann Taylor, Senior IP Specialist at Finjan. (*Id.* at Entries 5-7, 13-15, 17-33, 44-51, and 53-56.) As Ms. Taylor explains, these spreadsheets were prepared at the direction of Finjan's then in-house counsel, Julie Mar-Spinola, or at the direction of Finjan's then outside counsel, Kramer Levin, and reflect the legal advice and work product of Finjan's counsel related to licensing and ongoing litigation. (Taylor Declaration.) The presentations that PAN challenges, (Dkt. No. 208, Ex. A at Entries 16, 34-43, 52), were similarly held by Ms. Taylor, prepared at the direction of Ms. Mar-Spinola and the attorneys at Kramer Levin. (Taylor Declaration.) As Finjan's privilege log states, those documents reflect the legal advice of those attorneys, prepared in anticipation of or during litigation, and thus they are protected by both the attorney-client privilege and are attorney work product. As with the first group of documents it challenges, PAN's allegations that these documents are "not protected by the attorney client privilege" is based on nothing other than PAN's improper speculation about the contents of these documents.

### B. The Documents Finjan Withheld Are Protected by Common Interest

PAN also challenges several entries on Finjan's privilege log arguing that Finjan waived any privilege or work product protection by sharing certain documents with Fortress or with other potential acquisition parties. But as it does with the attorney-client privilege, PAN takes an overly narrow view of when the common interest doctrine attaches to protect the sharing of information. PAN is incorrect when it asserts that common interest can only attach once PAN and Finjan approved an agreement. Cases from this district make clear that the common interest doctrine may attach to pre-transaction communications of otherwise privileged or work product information, even where the transaction between the parties is never completed. For example, in *Hewlett-Packard Co. v. Bausch & Lomb, Inc.*, 115 F.R.D. 308 (N.D. Cal. 1987), the court maintained a claim of privilege based on the common interest doctrine "despite the fact that [a prospective purchaser] decided not to buy [the defendant's instruments division]." 115 F.R.D. at 310. The



December 23, 2022
Page 3

court described a policy concern that "[h]olding that this kind of disclosure constitutes a waiver could make it appreciably more difficult to negotiate sales of businesses and products that arguably involve interests protected by laws relating to intellectual property." *Id.* at 311. The court added that a "[l]egal doctrine that impedes frank communication between buyers and sellers also sets the stage for more lawsuits, as buyers are more likely to be unpleasantly surprised by what they receive." *Id.* Thus, this district's *Hewlett-Packard* opinion makes clear that a common interest may be formed prior to the consummation of a business transaction even if the transaction is never ultimately completed.

The cases that PAN cites are distinguishable. PAN relies on an unpublished decision from this district, *Waymo LLC v. Uber Techs., Inc.*, No. 17-cv-00939-WHA(JSC), 2017 WL 2485382, at *9 (N.D. Cal. June 8, 2017), which expressly distinguishes *Hewlett-Packard* on the basis that the facts in *Hewlett-Packard* "involve the sharing of already privileged information, and not the joint production of purportedly privileged work product"—as presented in *Waymo*. Here, the disputed communications involve previously created privileged and work product protected information, shared under an obligation of confidentiality with a limited number of commonly interested parties (rather than being jointly produced with those parties as in *Waymo*).

PAN's reliance on *Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575 (N.D. Cal. 2007) fares no better. There the party asserting the privilege was the defendant in the litigation. The court held that "there appears little to indicate that Defendants and the TPG fund might ever engage in joint litigation. The TPG fund was simply considering buying a majority share of JVC. It will not likely become a joint defendant with JVC." *Id.* at 579. Here, Finjan is the plaintiff, and the potential acquirers with whom attorney-client privileged and attorney work product information was shared were considering purchasing Finjan outright, thus effectively taking on the pending litigations on Finjan's behalf. The litigations discussed between Finjan and those potential acquirers were already pending at the time the discussions regarding a potential acquisition took place. Therefore, the common interest exception applies, since the parties clearly had a "common legal, as opposed to a commercial interest" in those pending litigations. *Id.* This is the precise exception recognized not only in *Hewlett-Packard,* but also in *Nidec.* Moreover, with respect to work product protection, the *Nidec* court found that "[f]or work product, 'protection is waived where disclosure of the otherwise privileged documents is made to a third party, and that disclosure enables an adversary to gain access to the information.'" *Nidec*, 249 F.R.D. at 580 (quoting *United States v. Bergonzi*, 216 F.R.D. 487, 497 (N.D. Cal. 2003).). PAN has made no showing that Finjan's discussion of work product protected information with a potential acquirer enabled an adversary to gain access to that work product information, and for that additional reason, Finjan's information remains protected.

Sincerely,

*Juanita Brooks*

Juanita R. Brooks