Juanita R. Brooks (CA SBN 75934) / brooks@fr.com
Roger A. Denning (CA SBN 228998) / denning@fr.com
Frank J. Albert (CA SBN 247741) / albert@fr.com
K. Nicole Williams (CA SBN 291900) / nwilliams@fr.com
Jared A. Smith (CA SBN 306576) / jasmith@fr.com
Tyler R. Train (CA SBN 318998) / train@fr.com
FISH & RICHARDSON P.C.
12860 El Camino Real, Ste. 400
San Diego, CA 92130
Telephone: (858) 678-5070 / Fax: (858) 678-5099

Susan E. Morrison (*Pro Hac Vice*) / morrison@fr.com
FISH & RICHARDSON P.C.
222 Delaware Avenue, 17th Floor
P.O. Box 1114
Wilmington, DE 19801
Telephone: (302) 652-5070 / Fax: (302) 652-0607
Additional counsel listed on signature page

Attorneys for Plaintiff,
FINJAN LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

(SAN FRANCISCO DIVISION)

| | |
|---|---|
| FINJAN LLC,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>PALO ALTO NETWORKS, INC.,<br><br>　　　　　Defendant. | Case No. 3:14-cv-04908-JD<br><br>**FINJAN LLC'S OPPOSITION TO PALO ALTO NETWORKS' MOTION TO STRIKE FINJAN'S EXPERTS' UNDISCLOSED INFRINGEMENT THEORIES**<br><br>Date: May 4, 2023<br>Time: 10:00 a.m.<br>Hon. James Donato<br>Ctrm: 11, 19th Floor<br><br>**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED** |

# **TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ................................................................................................................ 1

II. LEGAL STANDARD .......................................................................................................... 1

III. ARGUMENT ....................................................................................................................... 2

    A. Finjan's Contentions Disclosed Its Theories Regarding PAN's CTD Engine ........................................................................................................... 2

        1. Dr. Min's and Dr. Jakobsson's Opinions Regarding PAN's CTD Engine Are Based on Disclosures in Finjan's Infringement Contentions.............................................................................. 5

        2. PAN's Witness, Mr. Ralston, Confirmed that Content-ID and CTD Relate to the Same Thing ............................................................... 6

        3. PAN's Attempt To Rely on Prior Finjan Cases Is Unavailing ................................................................................................ 10

    B. Finjan's Contentions Disclosed Its Theories Regarding PAN's Single Pass Architecture ........................................................................................ 10

    C. PAN's Exhibits Requesting Paragraphs to be Stricken Highlight the Impropriety of its Request............................................................................. 13

IV. CONCLUSION .................................................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Apple Inc. v. Samsung Elecs. Co.*,
    5:12-CV-0630-LHK-PSG, 2014 WL 173409 (N.D. Cal. Jan. 9, 2014) .............................. 1, 5

*Digital Reg of Texas, LLC v. Adobe Sys. Inc.*,
    No. CV 12-01971-CW (KAW), 2014 WL 1653131 (N.D. Cal. Apr. 24, 2014) ............ *passim*

*Droplets, Inc. v. Yahoo! Inc.*,
    No. 12-CV-03733-JST, 2021 WL 9038509 (N.D. Cal. Apr. 27, 2021) ................................... 3

*Finjan, Inc. v. Check Point Software Techs., Inc.*,
    No. 18-CV-02621-WHO, 2019 WL 955000 (N.D. Cal. Feb. 27, 2019) ............................... 10

*Finjan, Inc. v. Cisco Sys. Inc.*,
    No. 17-CV-00072-BLF, 2019 WL 6174936 (N.D. Cal. Nov. 20, 2019) .............................. 10

*Finjan, Inc. v. Sophos, Inc.*,
    No. 14-CV-01197-WHO, 2016 WL 2988834 (N.D. Cal. May 24, 2016) ............................... 5

*Genentech, Inc. v. Trustees of Univ. of Pennsylvania*,
    No. C 10-2037 LHK (PSG), 2012 WL 424985 (N.D. Cal. Feb. 9, 2012) ............................... 2

*Largan Precision Co. v. Genius Elec. Opt. Co.*,
    No. 13-cv-02502-JD, 2014 WL 6882275 (N.D. Cal. Dec. 5, 2014) .................................... 6, 7

## I. INTRODUCTION

The infringement opinions in Finjan's expert reports are not new, but instead are well supported by Finjan's infringement contentions. PAN's arguments to the contrary are misleading and without any merit. For example, PAN argues (at 5) that the expert opinions regarding PAN's CTD engine are new because the specific term "CTD engine" does not appear in Finjan's infringement contentions. PAN's semantic argument ignores that Finjan's contentions contain **hundreds** of citations and references to the source code and functions that make up the CTD engine (most notably, *pan_ctd.c*), as well as PAN documentation that references the CTD engine as, for example, "Content-ID engine," "threat engine," "threat prevention engine," and "single stream-based engine." The testimony of PAN's own witness confirms that the engine referenced in Finjan's contentions and source code mappings *is* the CTD engine discussed in Finjan's experts' reports. Even more striking is PAN argument (at 8) that "[t]he terms 'single pass architecture' and 'single pass scanning' do not appear anywhere in the thousands of pages of Finjan's infringement contentions." That is not just misleading; it is demonstrably wrong. Finjan's contentions reference PAN's single pass architecture **by name no fewer than 20 times**, and Finjan's infringement contentions expressly describe how PAN's single pass architecture meets various claim limitations.

PAN's motion to strike is wholly without merit and should be denied.

## II. LEGAL STANDARD

Patent L.R. 3-1 governs infringement contentions and, "require[s] parties to crystallize their **theories** of the case early in the litigation." *Digital Reg of Texas, LLC v. Adobe Sys. Inc.*, No. CV 12-01971-CW (KAW), 2014 WL 1653131, at *2 (N.D. Cal. Apr. 24, 2014) (quoting *InterTrust Techs. Cor. V. Microsoft Corp.*¸ No. 01-CV-1640-SBA, 2003 WL 23120174, at *1 (N.D. Cal. Dec. 1, 2003)) (emphasis added). The operative word "theories" does not mean, for example, marshalling all evidence or citing minutia regarding implementation details. *See Apple Inc. v. Samsung Elecs. Co.*, 5:12-CV-0630-LHK-PSG, 2014 WL 173409, at *1 (N.D. Cal. Jan. 9, 2014) (establishing that the local rules do not require infringement contentions to identify specific evidence of implementation level details—only an identification of the infringement theory).

"The threshold question in deciding whether to strike an expert report is whether the expert has permissibly specified the application of a disclosed theory or impermissibly substituted a new theory altogether." *Digital Reg of Texas,* 2014 WL 1653131, at *2 (N.D. Cal. Apr. 24, 2014) (quoting *Apple*, 2014 WL 173409, at *1 (N.D. Cal. Jan. 9, 2014)).  "Infringement contentions 'need not disclose specific evidence, whereas expert reports must include a complete statement of the expert's opinions, the basis and reasons for them, and any data or other information considered when forming them.'" *Id*. (quoting *Apple*, 2014 WL 173409, at *1 (N.D. Cal. Jan. 9, 2014)).  That is because "[t]he purpose of the disclosure rules is 'to further the goal of full, timely discovery and provide all parties with adequate notice of and information with which to litigate their cases." *Genentech, Inc. v. Trustees of Univ. of Pennsylvania*, No. C 10-2037 LHK (PSG), 2012 WL 424985, at *1 (N.D. Cal. Feb. 9, 2012) (quoting *IXYS Corp. v. Advanced Power Tech., Inc.*, No. C 02-3942, 2004 WL 1368860, at *3 (N.D. Cal. June 16, 2004)).

## III.  ARGUMENT

### A.  Finjan's Contentions Disclosed Its Theories Regarding PAN's CTD Engine

PAN argues (at 5) that the Court should strike portions of the expert reports of Dr. Min and Dr. Jakobsson that refer to PAN's CTD engine, claiming the "CTD engine" was not disclosed in Finjan's infringement contentions for the '408, '154, and '731 Patents.  PAN's argument is both incorrect and misleading.  As discussed at length in Finjan's contentions, PAN's accused Next Generation Firewall product ("NGFW") performs a content inspection process, sometimes referred to as Content-ID, by using an underlying content threat detection engine (or "CTD engine").   In explaining how the Content-ID process and the underlying CTD engine meet various claim limitations, Finjan's infringement contentions repeatedly cite to and discuss documentation and source code that make up the CTD engine.  For example, Exhibit A contains excerpts from the claim chart for the '408 Patent that discuss the CTD engine, including:

- a discussion of the CTD engine source code, including ▮▮▮▮▮▮ (pp. 26-31, 88-94, 133-143);
- a discussion of PAN's documentation for the "**Content-ID engine**" within the NGFW (pp. 39, 95);
- a discussion of PAN's documentation describing the "**threat prevention engine**," "**threat engine**," and "**single stream-based engine**" (pp. 85-86, 188-192);

- a discussion of PAN's documentation stating that "**Content-ID**™ Scan the Content" (p. 87);
- a discussion of ▇▇▇ and how PAN's source code and documentation demonstrate that the parser and analyzer rules (e.g., ▇▇▇▇▇▇▇▇▇▇▇▇) define certain patterns in terms of tokens and identify certain combinations of tokens and patterns as being indicators of potential exploits within HTML, PowerShell, JavaScript, PDF, and Visual Basic content" (p. 108); and
- a discussion of PAN's documentation depicting the "Content Inspection" process performed by the "CTD" engine (pp. 114-116).

*See* Exh. A ('408 chart). These discussions in Finjan's contentions are consistent with the opinions contained in the expert reports, as explained further below.

Receiving a stream of content over a network: First, Finjan's contentions disclose that the limitation requiring receiving a stream of content over a network is performed by components of PAN's CTD engine. For example, the following excerpt from Finjan's contentions relating to that limitation repeatedly references functions in the PAN source code titled ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ each of which is part of the CTD engine:

[REDACTED]

Exh. A ('408 chart) at pp. 30-31 (with footnotes showing pinpoint citations to ▇▇▇▇). Certainly, Finjan's pinpoint citations to PAN's CTD source code provide sufficient notice. *Droplets, Inc. v. Yahoo! Inc.*, No. 12-CV-03733-JST, 2021 WL 9038509, at *7 (N.D. Cal. Apr. 27, 2021) (denying a motion to strike where Plaintiff's infringement contentions included pinpoint citations and discussion of similar source code relied upon in an expert report).

---

[1] Emphasis added unless otherwise stated.

1   <u>Determining the programming language:</u>  Next, for the limitation relating to determining
2   the programming language, Finjan's contentions cite and discuss PAN's documentation for its
3   Content-ID technology that describes PAN's "single-pass architecture" and PAN's NGFW's
4   "single stream-based engine"—also referred to as its "threat engine"—that "Content-ID leverages"
5   to determine the programming language of the received content.  One example is the excerpt
6   below:



Exh. A ('408 chart) at pp. 85-86.

<u>Identifying patterns and tokens:</u>  Finally, Finjan's contentions also disclose that PAN's
CTD engine meets the claim limitation relating to identifying tokens and matching patterns:



. . .

1
2
3
4

5  Exh. A ('408 chart) at pp. 141-143 (with footnotes showing pinpoint citations to  among
6  other pinpoint citations).

7     **1.  Dr. Min's and Dr. Jakobsson's Opinions Regarding PAN's CTD Engine Are Based on Disclosures in Finjan's Infringement Contentions**
8
9      For his opinions on infringement on the '408 Patent, Dr. Min relies on the same theories
10 and evidence presented in Finjan's infringement contentions.  *See, e.g.*, Exh. B (Excerpts of Min's
11 Op. Report) at ¶¶ 219-223, 403-408 (citing, discussing, and relying on the same CTD source code
12 files and functions); ¶¶ 97, 205-206, 281, 651-653 (citing and relying on the same content
13 inspection documentation that explicitly references the CTD engine); ¶¶ 284-288, 645-650, 733-
14 742  (citing and relying on the Content-ID documentation and its underlying "threat prevention
15 engine" / "threat engine"/ "single stream-based engine" aka CTD engine).  The consistency
16 between Finjan's infringement contentions and Dr. Min's report alone demonstrates that the
17 theories were disclosed and therefore PAN's motion should be rejected.  *See Apple*, 2014 WL
18 173409, at *2; *Digital Reg of Texas*, 2014 WL 1653131, at *5-6.  Although Dr. Min's expert
19 opinions are not a verbatim recitation of Finjan's infringement contentions, his opinions are
20 simply "more specific descriptions of the same infringement theories set out in Finjan's
21 infringement contentions," which is "permissible under the Patent Local Rules.  *Finjan, Inc. v.*
22 *Sophos, Inc.*, No. 14-CV-01197-WHO, 2016 WL 2988834, at *16 (N.D. Cal. May 24, 2016).

23     Dr. Jakobsson's infringement opinions regarding the '731 and '154 Patents are also
24 disclosed in Finjan's contentions.  *Compare* Exh. C ('731 chart) at pp. 73-77 (citing and analyzing
25 PAN's CTD source code files and functions); pp. 22-24 (citing and discussing Content-ID
26 documentation) with Exh. D (Excerpts of Jakobsson's Op. Report) at ¶¶ 669-671 (citing,
27 discussing, and relying on the same CTD source code files and functions); ¶¶ 620-623 (citing,
28 discussing, and relying on same content-ID documentation); *Compare* Exh. E ('154 chart) at pp.

1  179-184 and 270-273 (citing and analyzing PAN CTD source code files and functions) with Exh.
2  D (Excerpts of Jakobsson's Op. Report) at ¶¶ 174-176 (citing, discussing, and relying on the same
3  CTD source code files and functions)

4     As such, Finjan disclosed its infringement theories in its contentions, and its experts
5  merely marshalled evidence of PAN's infringement in their reports, which is allowed.  *See*
6  *Digital Reg of Texas*, 2014 WL 1653131, at *5.  To the extent PAN takes issue with Finjan's
7  experts providing further analysis and discussion regarding PAN's CTD engine, further
8  elaboration regarding the same theories and evidence is permissible because "expert reports are
9  meant to provide more detail than contentions."  *Largan Precision Co. v. Genius Elec. Opt. Co.*,
10 No. 13-cv-02502-JD, 2014 WL 6882275, at *7 (N.D. Cal. Dec. 5, 2014).

11        **2.    PAN's Witness, Mr. Ralston, Confirmed that Content-ID and CTD**
12             **Relate to the Same Thing**

13     Given the voluminous references in Finjan's contentions to PAN's CTD source code and
14 functionality, and Finjan's discussion of PAN documentation referencing the CTD engine (*e.g.*,
15 "threat engine"), PAN cannot argue it was not on notice of Finjan's CTD infringement theories.
16 So instead, PAN raises (at 6) the red herring that Finjan's references to PAN's Content-ID in its
17 infringement contentions should not count because Content-ID is not the same as the CTD.  Even
18 if that were true, it ignores that Finjan referenced the ***CTD engine source code and the engine***
19 ***itself*** hundreds of times in its contentions, as discussed above.  But PAN's argument also fails
20 because the testimony it cites does not support PAN's assertion.

21     PAN relies on testimony from one of its employees, Jesse Ralston.  At best, Mr. Ralston's
22 testimony establishes that PAN engineering uses the term CTD, while PAN marketing uses the
23 term Content-ID.  Mr. Ralston never testified that Content-ID is unrelated to the CTD engine, but
24 instead he testified that " ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
25 ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇."  Exh. F (Ralston 10/17/22 Dep. Tr.) at 56:24-
26 57:1.  Indeed, when asked about a Content-ID related document, Mr. Ralston testified that the
27 engine underlying PAN's "Content-ID" technology is the CTD engine:
28 ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
   ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

Exh. F (Ralston 10/17/22 Dep. Tr.) at 62:19-63:1; *see also id.* at 57:15-19, 59:3-7.  Thus, the CTD engine is synonymous with Content-ID.  Unsurprisingly, PAN does not include this testimony in its briefing or exhibits.

As discussed previously, Finjan's contentions expressly cite and refer to the engine underlying Content-ID in multiple places.  *See, e.g.*, Exh. A ('408 chart) at pp. 85-86, 109-110.  These PAN documents reference the same "threat engine," "single stream-based engine," or "threat prevention engine" that Mr. Ralston testified is called the CTD engine internally.  Finjan's contentions also cite to and discuss PAN documentation describing the "Content-ID engine" at the NGFW, as shown below.



*Id.* at pp. 39, 95; *see also* Exh. C ('731 chart) at pp. 16, 107.

Mr. Ralston's testimony further confirms that Finjan's contentions put PAN on notice of its infringement theories regarding the CTD engine.  For example, as shown below, Finjan's infringement contentions for the '408 Patent identify the "payload scanning process" for the NGFW and include an excerpt from PAN's Content-ID and Threat Prevention documentation:

> For example, the figure below illustrates the stream based inline scanning that tokenizes and parses the incoming stream.



Exh. A ('408 chart) at pp. 189-190.  In deposition, Mr. Ralston confirmed that the payload scanning process shown in the figure above from Finjan's contentions corresponds to the ***CTD engine's scanning***.



Exh. F (Ralston 10/17/22 Dep. Tr.) at 72:14-17.

PAN was also on notice that Finjan contended the "content inspection process" of PAN's NGFWs meet limitations of the asserted claims.  *See, e.g.*, Exh. A ('408 chart) at p. 108 ("the NGFWs contain a scanner (e.g., content scanning engines) comprised of parser rules and analyzer rules for specific programming languages as shown by its usage of SML files and Deterministic Finite Automata ("DFA") constructs that describe parser and analyzer rules for the specific programming language during ***content inspection process***" and citing content inspection/CTD documentation and source code); p. 192 ("PAN's documentation shows that PAN's NGFWs during the ***content inspection process*** identify individual tokens within the incoming stream, such as by using DFA and SML to perform content inspection" and citing content inspection/CTD documentation).

The discussion of PAN's content inspection process in Finjan's infringement contentions cite and discuss the following diagram from PAN's documentation, which expressly links content inspection and the CTD engine:



Exh. A ('408 chart) at p. 115.  When asked in deposition about this diagram, which is included in multiple places in Finjan's infringement contentions, Mr. Ralston confirmed that the "CTD" in the top of the diagram refers to the content threat detection engine or CTD engine.

Exh. F (Ralston 10/17/22 Dep. Tr.) at 139:20-140:4 (emphasis added).  Thus, Mr. Ralston's testimony makes clear that PAN was on notice of Finjan's contentions regarding the CTD engine.

Moreover, Mr. Ralston's testimony also confirms that the source code mappings in Finjan's infringement contentions are for the "CTD engine."  During his deposition Mr. Ralston testified that

1   ████████ Exh. F (Ralston 10/17/22 Dep. Tr.) at 115:9-10.  The source code that Finjan

2   cites in its infringement contentions relating to the ████████████████████████████

3   ████████████████████████. *See, e.g.*, Exh. E ('154 chart) at pp. 236-238 ████████

4   ████████████████████████████████████████████████████████████████████

5   ████████████████████████████████"); *see also* Exh. A ('408 chart) at pp. 26-

6   31, 296-299 (showing same).  As such, Finjan's contentions provide ample notice

7   regarding PAN's CTD engine, and PAN has suffered no prejudice.

8           **3.**       **PAN's Attempt To Rely on Prior Finjan Cases Is Unavailing**

9           Finally, PAN's attempt to associate this case with prior Finjan cases is misplaced

10  and ignores that Finjan's infringement contentions here—prepared by Finjan's new

11  counsel—are very different than in past cases.  For example, in *Cisco*, Finjan sought

12  leave to amend its infringement contentions to add infringement theories, but the Court

13  denied leave and then struck the new theories from Finjan's expert reports.  *Finjan, Inc.*

14  *v. Cisco Sys. Inc.*, No. 17-CV-00072-BLF, 2019 WL 6174936, at *2 (N.D. Cal. Nov. 20,

15  2019).  Here, Finjan's experts' reports contain no new theories, as Finjan's infringement

16  contentions reference the CTD engine in both the source code and documentary analysis

17  sections.  PAN's reliance on *Check Point* is also misguided because there Finjan's

18  contentions, "cite[d] multiple sets of source code, often with little or no explanation for

19  which set of citations relate to the relevant claim limitation." *Finjan, Inc. v. Check Point*

20  *Software Techs., Inc.*, No. 18-CV-02621-WHO, 2019 WL 955000, at *5 (N.D. Cal. Feb.

21  27, 2019).  Here, Finjan's contentions include pinpoint citations to both files and

22  functions for the CTD engine, along with explanation for the activity occurring in the

23  CTD engine.  *See, e.g.*, Exh. A ('408 chart) at pp. 26-31, 88-94, 133-143; *See also* Exh. C

24  ('731 chart) at pp. 73-81; Exh. E ('154 chart) at pp. 177-184.

25          **B.**       **Finjan's Contentions Disclosed Its Theories Regarding PAN's Single Pass Architecture**

26

27          PAN's arguments that Finjan's infringement contentions do not accuse PAN's "single pass

28  architecture" are even less defensible than those relating to the CTD engine.  PAN argues that

"[t]he terms 'single pass architecture' and 'single pass scanning' do not appear anywhere in the

1  thousands of pages of Finjan's infringement contentions." Mot. at p. 8.  PAN is simply wrong.

2  Finjan's contentions state and describe in multiple places how PAN's "single pass architecture"

3  satisfies various claim limitations, including in the examples below:

Exh. A ('408 chart) at p. 208

Exh. A ('408 chart) at p. 219.

Exh. A ('408 chart) at p. 255.

Exh. A ('408 chart) at p. 292.

These are just a few of the examples where Finjan's infringement contentions disclose its theories regarding PAN's "single pass" and "single pass architecture." While Finjan understands from the Court's prior guidance that the Court need not be shown every example, there are more than twenty examples of "single pass" in Finjan's contentions. *See, e.g.*, Exh. A ('408 chart) at pp. 80-83, 192, 209-210, 251-252.

In addition to numerous references to PAN's "single pass architecture," Finjan's contentions also discuss PAN's documentation regarding "SP3," including in the content inspection flow diagram cited in Finjan's infringement contentions. *See, e.g.*, Exh. A ('408 chart) at p. 115. In deposition, PAN's witness, Mr. Ralston, confirmed that SP3 is the marketing term for PAN's single-pass architecture:



Exh. F (Ralston 10/17/22 Dep. Tr.) at 139:2-4. Thus, Finjan provided PAN more than sufficient notice regarding PAN's single pass architecture.

PAN also misses the mark in seeking to strike Finjan's expert's discussion of PAN's single pass architecture in the apportionment context. Finjan's damages contentions expressly include PAN's single pass scanning:



Exh. G (Finjan's Suppl. Damages Contentions) at p. 9. As such, Finjan had clearly put PAN on notice regarding its "single pass" theories in both the infringement and damages context.

PAN's argument highlights the impropriety of its motion as it is clear Finjan's contentions repeatedly identify PAN's "single pass architecture" and "single pass" software satisfying various

1 limitations of the asserted claims.  Yet, PAN falsely claims it lacked notice and ignores Finjan's
2 contentions.  The Court should reject PAN's attempt to strike theories and evidence for which it
3 plainly had notice from Finjan's contentions.

  **C. PAN's Exhibits Requesting Paragraphs to be Stricken Highlight the Impropriety of its Request**

  PAN prepared exhibits listing paragraphs it seeks to strike from each expert's report. PAN's Mot. Exs. 1-3.  However, these exhibits illustrate that PAN seeks to improperly strike entire paragraphs of opinions that discuss theories and evidence disclosed in Finjan's infringement contentions.  PAN's attempt to strike screenshots, documents, and source code evidence that were included in Finjan's infringement contentions is improper, as PAN cannot credibly claim to lack notice of these materials and infringement theories.  Below, Finjan discusses some of the most egregious examples from PAN's Exhibit 1 that show PAN is attempting to improperly eliminate Finjan's infringement case despite being on notice of Finjan's infringement theories.

  As a first example, PAN seeks to strike portions of Dr. Min's opinions from paragraphs 284, 587, 737 of his report that describe PAN's single pass architecture and the CTD engine.



PAN's Mot. Ex. 1 at p. 23.

  However, Finjan's contentions discloses this very theory, including PAN's single pass architecture and the CTD engine.

[redacted image]

Exh. A ('408 chart) at p. 192.

As another example, PAN seeks to strike paragraphs 97, 281, 374, 653 of Min's report that discuss the content inspection flow diagram that explicitly refers to the CTD engine ("CTD") and single pass architecture ("SP3").



As discussed and shown previously, this exact flow diagram is also cited and discussed multiple times in Finjan's infringement contentions. Exh. A ('408 chart) at pp. 114-115.

As yet another example, PAN seeks to strike paragraphs 88, 103, 588, 734, 737 of Min's report, which discuss the following screenshot depicting PAN's single pass scanning process.

█████████████████████

Again, as discussed previously, a screenshot of this very same diagram is cited and discussed multiple times in Finjan's infringement contentions.  *See, e.g.*, Exh. A ('408 chart) at pp. 23, 190, 219.

Similarly, PAN tries to strike all paragraphs (i.e., paragraphs 589, 648) discussing a diagram that depicts the components of PAN's "Single Pass" software architecture, despite that the same diagram is cited and discussed in multiple places in Finjan's infringement contentions.  Exh. A ('408 chart) at pp. 85, 191, 220.  Likewise, PAN attempts to strike several paragraphs (e.g., 357) that discuss Content-ID and its underlying "threat prevention engine," but Finjan's infringement contentions discuss this same document and diagram in multiple places.  *See, e.g.*, Exh. A ('408 chart) at pp. 84-86, 113, 212-214.  PAN also seeks to strike paragraphs 205, 651 of Dr. Min's report, but the document discussed by Dr. Min is also cited and discussed throughout Finjan's infringement contentions.  *See, e.g.*, Exh. A ('408 chart) at pp. 22, 110.

PAN repeatedly attempts to lead this Court to strike opinions in Finjan's expert reports relating to evidence that Finjan expressly included and discussed in its infringement contentions.  That is entirely improper, and PAN's motion should be denied.  *See Digital Reg of Texas*, 2014 WL 1653131, at *5-6.

## IV.   CONCLUSION

As Finjan sufficiently disclosed its infringement theories in its infringement contentions, Finjan respectfully requests that the Court deny PAN's motion to strike.

| | |
|---|---|
| 1  Dated:  April 7, 2023 | Respectfully Submitted, |
| 2 | */s/ Roger A. Denning* |
|   | Juanita R. Brooks (CA SBN 75934) |
| 3 | brooks@fr.com |
| 4 | Roger A. Denning (CA SBN 228998) |
|   | denning@fr.com |
| 5 | Frank J. Albert (CA SBN 247741) |
|   | albert@fr.com |
| 6 | K. Nicole Williams (CA SBN 291900) |
| 7 | nwilliams@fr.com |
|   | Jared A. Smith (CA SBN 306576) |
| 8 | jasmith@fr.com |
|   | Tyler R. Train (CA SBN 318998) |
| 9 | train@fr.com |
|   | FISH & RICHARDSON P.C. |
| 10 | 12860 El Camino Real, Ste. 400 |
| 11 | San Diego, CA 92130 |
|   | Telephone: (858) 678-5070 / Fax: (858) 678-5099 |
| 12 | |
|   | John M. Farrell (CA SBN 99649) |
| 13 | farrell@fr.com |
|   | FISH & RICHARDSON P.C. |
| 14 | 500 Arguello Street, Suite 400 |
| 15 | Redwood City, CA 94063 |
|   | Telephone: (650) 839-5070 / Fax: (650) 839-5071 |
| 16 | |
|   | Aamir Kazi (*Pro Hac Vice*) |
| 17 | kazi@fr.com |
|   | Lawrence Jarvis (*Pro Hac Vice*) |
| 18 | jarvis@fr.com |
|   | FISH & RICHARDSON P.C. |
| 19 | 1180 Peachtree St. NE, 21st floor |
| 20 | Atlanta, GA  30309 |
|   | Telephone: (404) 892-5005 / Fax: (404) 892-5002 |
| 21 | |
|   | Susan E. Morrison (*Pro Hac Vice*) |
| 22 | morrison@fr.com |
|   | FISH & RICHARDSON P.C. |
| 23 | 222 Delaware Ave., 17th Floor |
| 24 | P.O. Box 1114 |
|   | Wilmington, DE  19801 |
| 25 | Telephone: (302) 652-5070 / Fax: (302) 652-0607 |
| 26 | *Attorneys for Plaintiff FINJAN LLC* |
| 27 | |
| 28 | |