MICHAEL A. JACOBS (CA SBN 111664)
MJacobs@mofo.com
MATTHEW I. KREEGER (CA SBN 153793)
MKreeger@mofo.com
MORRISON & FOERSTER LLP
425 Market Street,
San Francisco, California  94105-2482
Telephone: (415) 268-7000
Facsimile: (415) 268-7522

ROSE S. LEE (SBN 294658)
RoseLee@mofo.com
MORRISON & FOERSTER LLP
707 Wilshire Boulevard, Suite 6000
Los Angeles, California  90017-3543
Telephone: (415) 268-7000
Facsimile: (415) 268-7522

KYLE W.K. MOONEY (*Pro Hac Vice*)
KMooney@mofo.com
ERIC W. LIN (*Pro Hac Vice*)
ELin@mofo.com
MICHAEL J DESTEFANO (*Pro Hac Vice*)
MDestefano@mofo.com
MORRISON & FOERSTER LLP
250 West 55th Street,
New York, New York  10019-9601
Telephone: (212) 468-8000
Facsimile: (212) 468-7900

Attorneys for Defendant
PALO ALTO NETWORKS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FINJAN LLC,<br><br>        Plaintiff,<br><br>     v.<br><br>PALO ALTO NETWORKS, INC.,<br><br>        Defendant. | Case No. 3:14-CV-04908-JD<br><br>**PALO ALTO NETWORKS' REPLY IN SUPPORT OF MOTION TO STRIKE FINJAN'S EXPERTS' UNDISCLOSED INFRINGEMENT THEORIES**<br><br>**[REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED]**<br><br>Date:  May 4, 2023<br>Time:  10:00 a.m.<br>Courtroom:  11, 19th Floor<br>Judge:  Honorable James Donato |

1

## <u>TABLE OF CONTENTS</u>

I.  INTRODUCTION ................................................................................................................ 1

II. ARGUMENT .................................................................................................................... 1

    A.  Dr. Min's and Dr. Jakobsson's Opinions Regarding the CTD Engine Are Based on Undisclosed Infringement Theories ............................................................ 2

    B.  Dr. Jakobsson's Opinions Regarding Single Pass Architecture and Single Pass Scanning Are Based on Undisclosed Infringement Theories ...................................... 7

    C.  Dr. Min's and Dr. Jakobsson's Opinions Based on Undisclosed Infringement Theories Prejudice PAN.................................................................................................. 7

    D.  Dr. Keromytis's Technical Apportionment Opinions Regarding Single Pass Scanning Are Based on Undisclosed Infringement Theories for the '154 and '731 Patents......... 7

    E.  Finjan Fails to Show the Impropriety of PAN's Request that Portions of Expert Reports be Stricken ....................................................................................................... 8

III. CONCLUSION ................................................................................................................. 8

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

# <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Droplets, Inc. v. Yahoo! Inc.*,
   No. 12-CV-03733-JST, 2021 WL 9038509 (N.D. Cal. Apr. 27, 2021)....................................4

*Finjan, Inc. v. Check Point Software Techs., Inc.*,
   No. 18-CV-02621-WHO, 2019 WL 955000 (N.D. Cal. Feb. 27, 2019)................................6

*Finjan, Inc. v. Cisco Sys. Inc.*,
   No. 17-CV-00072-BLF, 2019 WL 6174936 (N.D. Cal. Nov. 20, 2019)................................6

5

6

7

8

9

**Other Authorities**

10

N.D. Cal. Patent L.R. 3-1 .....................................................................................................1, 4

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

### I.    INTRODUCTION

2      Finjan concedes that Dr. Min's and Dr. Jakobsson's opinions regarding PAN's NGFW

3  "CTD engine" are at the foundation of PAN's alleged infringement of many claims of the '408,

4  '154, and '731 Patents.  But Finjan fails to point to any clear disclosure in its contentions of an

5  infringement theory directed to this functionality.   In fact, Finjan does not dispute that its

6  contentions nowhere refer to a CTD engine.  Instead, Finjan points to bits and pieces of its

7  thousands of pages of contentions listing myriad source code files and function names and alleged

8  similar or related features.

9      But the Patent Local Rules require more.  They do not allow a patentee to list more than

10  100 different source code files and to vaguely reference numerous functionalities and components

11  across voluminous infringement contentions and then disclose its true infringement theories for the

12  first time only in its expert reports.  Before any expert discovery, they require the patentee to

13  crystalize its theory of the case and "identify[] *specifically where and how* each limitation of each

14  asserted claim is found within [the accused products]."  (Patent L.R. 3-1(c) (emphasis added).)

15  Finjan's opposition brief confirms that Finjan fell far short of that standard with respect to any

16  infringement theory relating to CTD engine.  Finjan also fails to meet that standard regarding any

17  theory that PAN's "single pass architecture" or "single pass scanning" infringes the '154 and '731

18  Patents.  Finjan also does not dispute that untimely disclosure of these infringement theories is

19  prejudicial to PAN.   Accordingly, the Court should strike Finjan's undisclosed infringement

20  theories from its experts' reports.

21

### II.    ARGUMENT

22      Finjan concedes, as it must, that Patent Local Rule 3-1 requires patentees to "crystalize their

23  theories of the case early in the litigation" (Dkt. No. 234-2 (hereinafter "Opp.") at 1) and identify

24  as specifically as possible where and how each limitation is met.  Finjan further acknowledges that

25  an expert cannot opine as to new infringement theories that were not timely disclosed in patentee's

26  contentions.  (*Id.* at 2.)  Finjan tries to spin its experts' opinions as purely new evidence in support

27  of timely disclosed theories.  But, as demonstrated below, Finjan's opposition brief confirms that

28  Dr. Min's and Dr. Jakobsson's infringement theories were not properly disclosed and should

1   therefore be stricken.

2               **A.     Dr. Min's and Dr. Jakobsson's Opinions Regarding the CTD Engine Are Based on Undisclosed Infringement Theories**

Finjan does not dispute that Dr. Min and Dr. Jakobsson opined that PAN's CTD engine is at the foundation of their infringement theories for the '408, '154, and '731 Patents.  Finjan also does not dispute that Finjan did not specifically refer to "CTD engine" anywhere in its nearly 3,000 pages of infringement contentions and amended infringement contentions, let alone articulate how the CTD engine meets any claim limitation.  (Dkt. No. 229-3 (hereinafter "Mot.") at 5.)  And Finjan by its silence concedes that PAN's CTD engine is described in public-facing PAN documentation and that Finjan could have identified, but did not identify, the CTD engine in its original contentions without any discovery.  (*Id.* at 6.)  Finjan also nowhere refutes that it could have easily amended its contentions to identify specifically how the CTD engine meets the limitations of the asserted claims as soon as PAN produced its technical documents.  (*Id.* at 6-7.)

Instead, Finjan essentially argues that it scattered enough NGFW functionality tidbits throughout its contentions[1] for PAN to have figured out that Finjan's experts might opine that a specific functionality, *i.e.*, PAN's CTD engine, infringes the '408, '154, and '731 Patents.  Finjan points to (1) references to "_ctd_" in laundry lists of source code files and functions; (2) Jesse Ralston's alleged testimony that the CTD engine "underlies" the "Content ID" feature referenced at certain points in Finjan's contentions; and (3) references to similar sounding words and phrases or purportedly related features disclosed in its contentions.  Finjan also argues that the CTD engine is part of the same computer program as features that were specifically identified in its contentions.

Finjan's arguments miss the mark.  The Patent Local Rules require Finjan to specifically identify the infringing components of the accused products and how each limitation of each asserted claim is found within the accused products in its infringement contentions.  Finjan could have but did not state or explain in its contentions how "the limitation requiring receiving a stream of content over a network is performed by the components of PAN's CTD engine" (Opp. at 3) or the "CTD

---

[1] Pursuant to the Court's direction that hundreds of pages of exhibits should not be required for the Court's review (Dkt. No. 177), PAN did not attach Finjan's full January 28, 2022 infringement contentions to its motion.

1    engine meets the limitation relating to identifying tokens and matching patterns" (*id.* at 4).  Not

2    only does the phrase CTD engine appear nowhere in Finjan's contentions, but Finjan also did not

3    tie CTD engine to any specific claim limitation.  PAN should not have had to speculate as to

4    possible infringement theories that could arise out of Finjan's voluminous and scattershot

5    contentions.  This is in contrast to other allegedly infringing features which Finjan did at least

6    provide the bare minimum to identify in its contentions.[2]  For example, in its contentions for the

7    '731 Patent, Finjan identifies ███████████████████████ as the claimed "scanner[s]"

8    within PAN's WildFire subscription.  (DeStefano Ex. 17 at 41.)[3]  Dr. Jakobsson thereafter also

9    points to a ████████████████████ as scanners in WildFire for the '731 Patent.

10   (DeStefano Ex. 18 at 217, ¶ 643.)  Finjan's contentions are devoid of any similar specificity for the

11   CTD engine that is now the focus of Dr. Min and Dr. Jakobsson. The disclosures that Finjan points

12   to fall far short of disclosing any such infringement theory.

13           References in Finjan's contentions to source code file names and functions that include

14   "_ctd_" (Opp. at 2-3, 4-5) do not amount to specifically identifying a theory that the CTD engine

15   infringes.  (*Id.*)  For example, Finjan's contentions state, in a conclusory fashion, that "[r]ecieving

16   a stream of content over a network" "is implemented by source code in the following files" and

17   then lists nearly 50 different files comprising thousands of lines of source code relating to a myriad

18   of modules.  (Dkt. No. 234-3 at 27-31.)  Finjan then repeats this practice with each limitation,

19   including "[d]etermining the programming language" and "[i]dentifying patterns and tokens."  (*Id.*

20   at 88-94, 133-143.)  As seen below in a source code excerpt of its contentions, under Finjan's

21   interpretation, its contentions would support a theory that the many modules referenced in the cited

22   ████████ file infringe the "[r]eceiving a stream of content over a network" limitation.  (*Id.* at 27.)

23   Or the ████████ file.  (*Id.*)  Or the ████████ file.  (*Id.*)  Or the ████████ file.

24   (*Id.*)  Or the more than 40 other files cited under PAN-OS 6.1, PAN-OS 8.0, and PAN-OS 10.0 for

25

26   [2] While PAN maintains that Finjan's contentions as to the '731, '154 and '408 Patents fail to satisfy the Patent Local Rules (Mot. at 3), PAN makes the limited point here that, for structures other than the CTD engine, Finjan's experts appear to rely on features Finjan's infringement

27   contentions specifically point to.
     [3] References to "Ex. ___" or "Exhibit ___" are to exhibits to the accompanying Declaration of

28   Michael DeStefano, dated April 14, 2023 ("DeStefano Decl."), unless otherwise noted.

1    that limitation.  (*Id.* at 27-30.)



Within the PAN-OS source code, the modules that receive an incoming stream of program code is implemented by source code in the following files:

(*Id.* at 27.)

13    Burying infringement theories in that manner is not and cannot be what the Patent Local

14   Rules mean by "identifying specifically where and how each limitation of each asserted claim is

15   found within [the accused products]."  Patent L.R. 3-1(c).  The Patent Local Rules do not put the

16   burden on PAN to guess which feature, functionality, or software module that happens to be

17   referenced or called in any source code file or function might be later chosen by an expert as the

18   alleged infringing feature.  The *Droplets, Inc. v. Yahoo! Inc.*, No. 12-CV-03733-JST, 2021 WL

19   9038509 (N.D. Cal. Apr. 27, 2021) decision Finjan cites is inapposite.  In *Droplets*, the court held

20   that the expert's opinions regarding an "interactive link" were "substantially the same theory" as

21   disclosed in patentee's contentions and fairly put defendant on notice.  *Id.* at 6-7.  The court

22   therefore permitted the expert to rely on certain undisclosed lines of source code to support that

23   disclosed infringement theory.  *Id.* at 7 (emphasizing the expert's methodology and software

24   version evolution explained the reliance on additional code).  Here, in stark contrast, Finjan did not

25   disclose any infringement theory based on the CTD engine and is now asking this Court to find that

26   references to certain lines of code (amongst thousands) put PAN on notice.  *Droplets* does not

27   support that argument and the Court should reject it.

28

Jesse Ralston's testimony regarding the "Content-ID" marketing term for broad product functionality also does not excuse Finjan's failure to articulate a theory concerning CTD engine in its contentions. (Opp. at 6-7.) Finjan does not dispute that Mr. Ralston never testified that Content-ID and CTD engine were equivalent. (Mot. at 5-6.) Instead, Finjan points to references in its contentions to Content-ID (Opp. at 4) and then contends that Mr. Ralston testified that "the engine underlying PAN's 'Content-ID'" technology is the CTD engine (*id.* at 6). Mr. Ralston did not so testify. Mr. Ralston merely confirmed that ████████████████████████████ ████████████████████████████ (*Id.* at 6-7.) Finjan also does not, and cannot, point to any part of its contentions that specifically describe how the unified threat engine infringes any specific claim limitation. Far from equating Content-ID and CTD engine, Mr. Ralston testified that ████████████████████████████████████████████ (*See* Dkt. No. 229-8 at 57:2-25, 72:18-73:2.) Finjan itself acknowledges that the "Content-ID engine" (not the CTD engine) underlies the Content-ID feature. (Opp. at 7.)

Finjan's reliance on "discussion of PAN's documentation" in its contentions that refer to "Content-ID engine," "Content-ID Scan the Content," "threat prevention engine," "threat engine," "single stream-based engine," "payload scanning," and "content inspection" (Opp. at 4, 7-9) fares no better. Like with references to PAN's source code, copy and pasting numerous portions of PAN's documents into Finjan's contentions that describe product functionality do not amount to specifically identifying a theory that the CTD engine infringes. (*See, e.g.*, Dkt. No. 234-3 at 22, 23, 82-87.) For example, Finjan's reference in its '408 Patent contentions to a "single stream-based engine" parrots claim language "the single-pass architecture uses a single stream-based engine with a uniform signature format, allowing NGFWs to determine the programming langue [sic] of the content and analyze the content in a single pass" and then reproduces two excerpts of PAN documentation describing Content-ID that merely mention "single stream-based engine" without explaining how it or the CTD engine practices the "[d]etermining the programming language" limitation. (*See id.* at 85-86.) This does not meet the standard required by the Patent Local Rules.

Moreover, although Finjan tries to connect the CTD engine to "payload scanning" and

1   "content inspection," Finjan does not, and cannot, point to any part of its contentions that

2   specifically describe what structure performs payload scanning and how that infringes any specific

3   claim limitation.  Mr. Ralston did not testify that payload scanning is performed by the CTD engine;

4   he testified that ███████████████████████████ .  (Opp. at 8.)  And, as noted above,

5   Finjan's own contentions tie Content-ID to an alleged Content-ID engine; not a CTD engine.  (*Id.*

6   at 7.)  Finjan also points to a flowchart titled "Content Inspection (SP3/CTD)."  (*Id.* at 9.)  But

7   Finjan does not, and cannot, point to any disclosure in its contentions of any theory that the CTD

8   engine performs any of the steps in the flow chart, let alone that it performs the limitations of any

9   of the asserted claims.

10      Finally, Finjan's claim that the CTD engine is part of the same software program as the

11   features that Finjan alleges infringe in its contentions (*Id.* at 9-10) is irrelevant.  Finjan does not,

12   and cannot, cite any authority supporting its claim that identifying the alleged infringing program

13   itself is sufficient.  To the contrary, the law is clear that merely identifying software, and even lines

14   of code, does not by itself satisfy Patent Local Rule 3-1.  *See Finjan, Inc. v. Check Point Software

15   Techs., Inc.*, No. 18-CV-02621-WHO, 2019 WL 955000, at *5 (N.D. Cal. Feb. 27, 2019) (ordering

16   Finjan to serve amended infringement contentions because Finjan's citation to "multiple sets of

17   source code, often with little or no explanation for which set of citations relate to the relevant claim

18   limitation" does not meet the level of specificity the Patent Local Rules require).

19      Finjan also fails to distinguish *Finjan, Inc. v. Cisco Systems Inc.*, No. 17-CV-00072-BLF,

20   2019 WL 6174936, at *2 (N.D. Cal. Nov. 20, 2019).  (Mot. at 6-7.)  Finjan contends that the case

21   is distinguishable because Finjan's experts here have raised "no new theories."  (Opp. at 10.)  But,

22   as shown above, that is precisely what Finjan has done.  The Court here, as in *Cisco*, should reject

23   Finjan's new theories.  As demonstrated above, Finjan has not pointed to any clear reference to the

24   CTD engine in its contentions, much less a coherent theory of infringement based on the CTD

25   engine.  Accordingly, Drs. Min and Jakobsson's opinions based on a CTD engine should be

26   stricken.  *Cisco*, 2019 WL 6174936, at *2 (striking Finjan's expert report opinions that relied on

27   undisclosed infringement theories).

28

**B.      Dr. Jakobsson's Opinions Regarding Single Pass Architecture and Single Pass Scanning Are Based on Undisclosed Infringement Theories**

Finjan does not dispute that Dr. Jakobsson's opinions regarding PAN's single pass architecture (or single pass scanning) are at the heart of his opinions that PAN's NGFW infringes the '154 and '731 Patents.  Finjan also does not contest that Dr. Jakobsson's opinions regarding infringement of the'154 and '731 Patents based on single pass architecture or single pass scanning are unsupported by its contentions.  Finjan does not even attempt to identify any alleged infringement theory in its contentions for these patents based on single pass architecture or single pass scanning.  Because Finjan has not even attempted to refute PAN's showing that these theories were undisclosed, the Court should grant PAN's motion to strike all references to single pass architecture and single pass scanning in Dr. Jakobsson's report.[4]  (Mot. at 8.)

**C.      Dr. Min's and Dr. Jakobsson's Opinions Based on Undisclosed Infringement Theories Prejudice PAN**

Finjan does not dispute that its reliance on the infringement theories at issue in its expert reports, if undisclosed, would prejudice PAN because those theories directly relate to PAN's ability to develop facts in support of invalidity and non-infringement defenses.  (*See* Mot. at 9.)

**D.      Dr. Keromytis's Technical Apportionment Opinions Regarding Single Pass Scanning Are Based on Undisclosed Infringement Theories for the '154 and '731 Patents**

Finjan defends Dr. Keromytis's technical apportionment analysis based on single pass scanning by pointing to a single reference to that function in its *damages* contentions.  (Opp. at 12-13.)  But Dr. Keromytis's apportionment analysis as to the '154 and '731 Patents relied on Dr. Jakobsson's undisclosed opinions regarding single pass architecture.  (*See* Mot. at 9-10.)  If the Court strikes those opinions, then Dr. Keromytis cannot rely on them and his apportionment analysis as to single pass architecture fails for the '154 and '731 Patents.  Finjan cannot save

---

[4] PAN acknowledges that it incorrectly stated that Finjan's contentions for the '408 Patent did not refer anywhere to single pass architecture or single pass scanning.  That statement (as to the '408 Patent) came to its attention only when it received Finjan's opposition.  PAN therefore withdraws the relief it was seeking as to Dr. Min's opinions regarding single pass architecture and single pass scanning as to the '408 Patent and Dr. Keromytis's opinions regarding single pass scanning in reliance on Dr. Min.  PAN has attached an amended Exhibit 1 and amended Exhibit 3 reflecting its narrowed relief as to Dr. Min and Dr. Keromytis.  PAN has also re-attached Exhibit 2 reflecting its unchanged relief as to Dr. Jakobsson.

1   Dr. Keromytis's opinions by pointing to a disclosure to single pass architecture in its damages

2   contentions because Dr. Keromytis, as part of his apportionment, is opining that single pass

3   architecture infringes the claims of the'154 and '731 Patents by relying on Dr. Jakobsson.

4   **E.      Finjan Fails to Show the Impropriety of PAN's Request that Portions
            of Expert Reports be Stricken**

5
        Finjan contends that PAN's requests to strike portions of Dr. Min's expert report are

6   overreaching because they include several figures that are included in Finjan's infringement

7   contentions for the '408 Patent.  (Opp. at 13-15.)  But PAN seeks to strike these figures only along

8   with and where they are used in support of undisclosed infringement theories.  For example, the

9   mere fact that Finjan disclosed part of a figure used by Dr. Min in its contentions (Dkt. No. 234-3

10  at 115) does not justify Dr. Min espousing a new infringement theory concerning the CTD engine

11  and then supporting that theory with a larger figure that incorporates the earlier disclosed section

12  (Dkt. No. 229-4 at 3-4, ¶ 97).  (Opp. at 14.)  PAN's proposals to strike are directed to undisclosed

13  infringement theories—not evidence.  That Finjan disclosed parts of that evidence somewhere in

14  its contentions does not in any way undermine the relief PAN seeks by this motion.  Moreover, as

15  to Finjan's other cited examples in Dr. Min's report, Finjan's complaints are now irrelevant in view

16  of the narrowed relief that PAN is seeking as to Dr. Min.

17  **III.    CONCLUSION**

18      Although Finjan has had multiple chances to serve infringement contentions satisfying the

19  Patent Local Rules, it still injected new infringement theories in its expert reports that are

20  unsupported in those contentions.  Accordingly, the Court should strike (1) Dr. Min's opinions

21  regarding the CTD engine identified in amended Exhibit 1, (2) Dr. Jakobsson's opinions

22  concerning the CTD engine, single pass architecture, and single pass scanning identified in

23  Exhibit 2, and (3) Dr. Keromytis's opinions regarding single pass scanning identified in amended

24  Exhibit 3.

25

26

27

28

1    Dated: April 14, 2023                    MORRISON & FOERSTER LLP

2

3                                             By: /s/ *Kyle W.K. Mooney*
                                                  Kyle W.K. Mooney
4
                                                  MICHAEL A. JACOBS (CA SBN 111664)
5                                                 MJacobs@mofo.com
                                                  MATTHEW I. KREEGER (CA SBN 153793)
6                                                 MKreeger@mofo.com
                                                  MORRISON & FOERSTER LLP
7                                                 425 Market Street,
                                                  San Francisco, California  94105-2482
8                                                 Telephone:      (415) 268-7000
                                                  Facsimile:      (415) 268-7522
9
                                                  KYLE W.K. MOONEY (*Pro Hac Vice*)
10                                                KMooney@mofo.com
                                                  ERIC W. LIN (*Pro Hac Vice*)
11                                                ELin@mofo.com
                                                  MICHAEL J DESTEFANO (*Pro Hac Vice*)
12                                                MDestefano@mofo.com
                                                  MORRISON & FOERSTER LLP
13                                                250 West 55th Street,
                                                  New York, New York  10019-9601
14                                                Telephone:      (212) 468-8000
                                                  Facsimile:      (212) 468-7900
15
                                                  ROSE S. LEE (SBN 294658)
16                                                RoseLee@mofo.com
                                                  MORRISON & FOERSTER LLP
17                                                707 Wilshire Boulevard, Suite 6000
                                                  Los Angeles, California  90017-3543
18                                                Telephone:      (415) 268-7000
                                                  Facsimile:      (415) 268-7522
19
20                                                *Attorneys for Defendant*
                                                  PALO ALTO NETWORKS, INC.
21

22

23

24

25

26

27

28
     PALO ALTO NETWORKS, INC.'S REPLY ISO
     MOTION TO STRIKE                                  9
     CASE NO. 3:14-CV-04908-JD