1   DARALYN J. DURIE (CA SBN 169825)
    DDurie@mofo.com
2   TIMOTHY CHEN SAULSBURY (CA SBN 281434)
    TSaulsbury@mofo.com
3   MATTHEW I. KREEGER (CA SBN 153793)
    MKreeger@mofo.com
4   MORRISON & FOERSTER LLP
    425 Market Street
5   San Francisco, California 94105-2482
    Telephone: (415) 268-7000 / Fax: (415) 268-7522
6
7   *Attorneys for Defendant,*
    *PALO ALTO NETWORKS, INC.*
8   *Additional counsel on signature page*
9

10                  UNITED STATES DISTRICT COURT

11                 NORTHERN DISTRICT OF CALIFORNIA

12   FINJAN LLC,                          Case No.   3:14-CV-04908-JD

13                    Plaintiff,          **PALO ALTO NETWORKS'
                                          RENEWED MOTION
14          v.                            TO STRIKE FINJAN'S
                                          INFRINGEMENT
15   PALO ALTO NETWORKS, INC.,            CONTENTIONS FOR THE
                                          '408 AND '731 PATENTS AND
16                    Defendant.          TO DISMISS THESE PATENT
                                          CLAIMS WITH PREJUDICE
17
18                                        Date:  October 17, 2024
                                          Time:  1:30 p.m.
19                                        Courtroom: 3, 17th Floor
                                          Judge: Honorable Richard Seeborg
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION .......................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ............................................... 1

INTRODUCTION AND STATEMENT OF ISSUES TO BE DECIDED.................... 1

STATEMENT OF THE RELEVANT FACTS ............................................................ 2

LEGAL STANDARD................................................................................................... 4

ARGUMENT ............................................................................................................... 5

    I.    FINJAN'S SECOND AMENDED CONTENTIONS FOR THE '408
           PATENT ARE DEFICIENT AND SHOULD BE STRICKEN ........................... 6

    II.   FINJAN'S SECOND AMENDED CONTENTIONS FOR THE '731
           PATENT ARE DEFICIENT AND SHOULD BE STRICKEN ............................ 9

    III.  THE COURT SHOULD STRIKE FINJAN'S SECOND AMENDED
           CONTENTIONS FOR THE '408, AND '731 PATENTS WITH
           PREJUDICE................................................................................................. 12

CONCLUSION ........................................................................................................... 13

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Blue Spike, LLC v. Adobe Sys., Inc.*,
5
    No. 14-cv-01647-YGR (JSC), 2015 WL 335842 (N.D. Cal. Jan. 26, 2015) ......................... 12

6

*Finjan, Inc. v. Check Point Software Techs., Inc.*,
    No. 18-CV-02621-WHO, 2019 WL 7801443 (N.D. Cal. Aug. 12, 2019)............................... 4

7

*Finjan, Inc. v. Check Point Software Techs., Inc.*,
8
    No. 18-CV-02621-WHO, 2019 WL 955000 (N.D. Cal. Feb. 27, 2019)................................. 7

9

*Finjan, Inc. v. Check Point Software Techs., Inc.*,
10
    No. 18-CV-02621-WHO, 2020 WL 597630 (N.D. Cal. Jan. 17, 2020) .................................. 5

11

*Finjan, Inc. v. Proofpoint, Inc.*,
    No. 13–cv–05808–HSG, 2015 WL 1517920 (N.D. Cal. Apr. 2, 2015)............................. 5, 12

12

*Huang v. Nephos Inc.*,
13
    No. C 18-06654 WHA, 2019 WL 5892988 (N.D. Cal. Nov. 12, 2019),
    *aff'd sub nom.*, *Huang v. MediaTek USA, Inc.*, 815 F. App'x 521 (Fed. Cir. 2020) .... 5, 12, 13
14

*MasterObjects, Inc. v. Amazon.com*,
15
    No. C 20-08103-WHA, 2022 WL 4280640 (N.D. Cal. Sept. 15, 2022)................................. 13

16

*Polaris PowerLED Techs., LLC v. VIZIO, Inc.*,
17
    No. SACV 18-1571 JVS (DFMx), 2020 WL 4258663 (C.D. Cal. May 14, 2020) ................. 4

18

*Shared Memory Graphics LLC v. Apple, Inc.*,
19
    812 F. Supp. 2d 1022 (N.D. Cal. 2010) ............................................................................. 8, 11

*Shared Memory Graphics, LLC v. Apple Inc.*,
20
    No. C 10-2475 MMC, 2011 WL 5320749 (N.D. Cal. Nov. 2, 2011)..................................... 13

21

**Other Authorities**

22

Patent L.R. 3-1 ....................................................................................................................*passim*

23

Patent L.R. 3-6 ................................................................................................................................. 1

24

25

26

27

28

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on October 17, 2024, at 1:30 pm, or as soon thereafter as counsel may be heard in the United States District Court for the Northern District of California, San Francisco Division, in Courtroom 3, 17th Floor before the Honorable Richard Seeborg, Defendant Palo Alto Networks, Inc. ("PAN") will and hereby does submit its renewed motion seeking an order striking Plaintiff Finjan LLC's ("Finjan") January 28, 2022 amended contentions for U.S. Patents No. 8,225,408 ("'408 Patent") and No. 7,418,731 ("'731 Patent") ("Second Amended Contentions") and dismissing Finjan's infringement claims for these patents with prejudice.

Pursuant to Patent Local Rules 3-1 and 3-6, Judge Hamilton's July 20, 2021 Order (Dkt. No. 146), Judge Donato's January 13, 2022 Order (Dkt. No. 177), and Judge Donato's March 27, 2023 Order (Dkt. No. 232), PAN renews its motion to strike Finjan's Second Amended Contentions and seeks an order from the Court striking those contentions and dismissing Finjan's claims for infringement of the '408 and '731 Patents with prejudice.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**INTRODUCTION AND STATEMENT OF ISSUES TO BE DECIDED**

Finjan has filed numerous lawsuits in this District alleging infringement of its patents, including the '408 and '731 Patents. Courts have repeatedly struck or required Finjan to amend its infringement contentions because Finjan failed to comply with the Patent Local Rule requiring that Finjan "identify[] specifically *where and how* each limitation of each asserted claim is found within each" accused product. Patent L. R. 3-1(c) (emphasis added). Finjan's contentions against PAN suffer the same deficiency.

Finjan's Second Amended Contentions for the '408 and '731 Patents do not comply with Patent Local Rule 3-1(c)—even after three rounds of contentions, three PAN motions, and three court orders. Most recently, Judge Donato terminated PAN's motion to strike Finjan's contentions without prejudice and invited PAN to renew its motion, as necessary, following claim construction. Claim construction narrowed the dispute because Finjan has now stipulated to non-

infringement of the '154 Patent, but fundamental deficiencies remain with respect to the '408 and '731 Patents.  Those deficiencies were not affected by the Court's claim construction ruling; they have infected Finjan's contentions from the outset and Finjan has refused to address them. Instead, Finjan continues to obscure aspects of its infringement theories in voluminous charts that merely parrot claim language.  But Finjan does not explain *where* in the PAN products certain features are, and its contentions leave PAN to speculate as to *how* those features meet the claim language.

Finjan made a strategic choice to be vague, to try to leave itself room to shift theories at the eleventh hour, and to ignore both the Patent Local Rules and prior court orders along the way. At this point, the Court has given Finjan ample warning and plenty of chances.[1]  Finjan's flagrant violations of the Patent Local Rules, Judge Hamilton's order striking Finjan's initial contentions in part (Dkt. No. 146), and Judge Donato's order instructing Finjan to serve compliant amended contentions (Dkt. No. 177) warrant striking Finjan's Second Amended Contentions for the '408 and '731 Patents and dismissing its infringement claims for these patents with prejudice.

## STATEMENT OF THE RELEVANT FACTS

Over the course of this lawsuit, Finjan has served multiple rounds of infringement contentions, but instead of taking the opportunity to remedy specific identified deficiencies, Finjan has instead tried to dress them up in additional verbiage and citations without providing any further clarity as to where and how certain limitations are met.

*Round One*: Finjan served its initial infringement contentions on April 1, 2021.  On May 12, 2021, PAN alerted Finjan that its contentions failed to comply with Patent Local Rule 3-1(c).  (Ex. 1.)[2]  Finjan refused to address any of the deficiencies.  (Ex. 2.)  On June 15, 2021, PAN moved to strike Finjan's contentions.  (Dkt. No. 128.)  PAN identified, *inter alia*, Finjan's

---

[1] Finjan already attempted to shift its theories during expert discovery, leading Judge Donato to strike a previously undisclosed theory based on the "CTD engine" from Finjan's technical expert reports.  (*See* Dkt. No. 262.)  PAN's motion to strike does not in any way depend on the "CTD Engine" or the Court's exclusion of expert testimony concerning it.

[2] References to "Ex. __" are to exhibits to the Declaration of Michael DeStefano, dated September 11, 2024, filed in support of this motion.

failure to specify where and how the accused PAN products included the "parser rules" and "analyzer rules" claims in the '408 Patent, or the "file cache" and "security profile cache" claimed in the '731 Patents. (*Id.* at 9-10 (listing exemplary deficiencies).)  On July 20, 2021, Judge Hamilton granted PAN's motion to strike in part, ordering Finjan to identify "*where and how* each of the claim limitations" can be found in the accused products for each of the asserted patents. (Dkt. No. 146 at 3-4 (emphasis added).)  Judge Hamilton ordered Finjan to amend its contentions for all asserted patents. (*Id.* ("[T]he court gives Finjan 30 days to serve amended contentions in compliance with this order.").)

*Round Two*: Thirty days later, Finjan served amended contentions *for just one of the four asserted patents*, the '154 Patent. (Ex. 3.)  Finjan did not serve amended contentions for, *inter alia*, the '408 and '731 Patents. (Ex. 4 at 1, 6.)  Accordingly, Finjan did nothing to clarify where and how the accused PAN products included the claimed "parser rules," "analyzer rules," "file cache," and "security profile cache." (*See id.*)  Instead, Finjan took the position that Judge Hamilton ordered Finjan to amend only as to two limitations of the '154 Patent. (*Id.* at 5.)  On September 16, 2021, PAN filed a motion to strike Finjan's amended infringement contentions for the '154 Patent and to confirm that Finjan had no operative infringement contentions for the'408 and '731 Patents. (Dkt. No. 161.)  PAN once again identified, *inter alia*, Finjan's failure to specify where and how the accused PAN products included the "parser rules," "analyzer rules," "file cache," and "security profile cache." (*Id.* at 13-14.)  Judge Donato found that Judge Hamilton's Order was not limited to only two limitations of the '154 Patent and ordered Finjan to serve amended infringement contentions for all patents — including the '408 and '731 Patents:

> Finjan may amend its infringement contentions by January 28, 2022, to include contentions for the '154, '633, '408, and '731 patents that are responsive to the order partially granting the motion to strike infringement contentions, Dkt. No. 146, which was not limited to the '154 patent.

(Dkt. No. 177.)

*Round Three*: Finjan served its Second Amended Contentions on January 28, 2022 (Ex. 5) but yet again failed to identify *where and how* certain claim limitations can be found in the

accused products.  For example, Finjan added text that referred to various aspects of PAN's products, a laundry list of source code references, and references to various databases.  (*See, e.g.*, Ex. 9 at 109-110, 123-126; Ex. 14 at 104-105, 117.)  But Finjan did not clarify where and how, *inter alia*, the accused PAN products included the claimed "parser rules," "analyzer rules," "file cache," and "security profile cache."

On October 11, 2022, PAN moved to strike Finjan's Second Amended Contentions as to the '154, '408, and '731 Patents.  (Dkt. No. 195-3.)  Judge Donato terminated PAN's motion on March 27, 2023, determining that "claim construction may simplify or eliminate many of the issues raised" (internal quotations omitted), and held that "PAN may renew its motion after claim construction, as developments warrant."  (Dkt. No. 232.)

*Claim Construction*: Claim construction has narrowed, but not resolved, the issues posed by Finjan's deficient infringement contentions.  After the Court's claim construction order, Finjan stipulated to non-infringement of the '154 Patent (Dkt. Nos. 290, 292), rendering moot the inadequacy of Finjan's contentions for that patent.  But Finjan's contentions for the '408 and '731 Patents remain deficient.  On September 5, 2024, the parties held a meet and confer regarding Finjan's Second Amended Contentions and the instant motion.  (Ex. 6.)  The parties reached an impasse, and PAN, consistent with Judge Donato's Order, is now renewing its motion to strike Finjan's Second Amended Contentions as to the '408 and '731 Patents, and to dismiss with prejudice Finjan's claims as to those patents.

## LEGAL STANDARD

"[T]he purpose of infringement contentions under the patent local rules is not simply to put the defendant on notice, it is to require the plaintiff 'to crystallize its theories of the case early in the litigation and to adhere to those theories once disclosed.'"  *Finjan, Inc. v. Check Point Software Techs., Inc.,* No. 18-CV-02621-WHO, 2019 WL 7801443, at *8 (N.D. Cal. Aug. 12, 2019) (citation omitted).  The purpose of Finjan's infringement contentions is to ensure that Finjan crystalizes its infringement theories and to avoid a "shifting sands" approach to the litigation.  *See Polaris PowerLED Techs., LLC v. VIZIO, Inc.*, No. SACV 18-1571 JVS (DFMx), 2020 WL 4258663, at *2 (C.D. Cal. May 14, 2020) ("These [Northern District of California]

1    rules are designed specifically to require parties to crystallize their theories of the case early in the

2    litigation so as to prevent the shifting sands approach to claim construction, or a shifting sands

3    approach to litigation in general") (citation and internal quotations omitted).

4         Courts may strike with prejudice amended infringement contentions when a patentee

5    repeatedly fails to comply with Patent Local Rules and earlier orders.  *See, e.g.*, *Finjan, Inc. v.*

6    *Check Point Software Techs., Inc.*, No. 18-CV-02621-WHO, 2020 WL 597630, at *18-20 (N.D.

7    Cal. Jan. 17, 2020) (striking Finjan's second amended contentions with prejudice after repeated

8    failure to comply with Patent Local Rules); *Huang v. Nephos Inc.*, No. C 18-06654 WHA, 2019

9    WL 5892988, at *5 (N.D. Cal. Nov. 12, 2019), *aff'd sub nom.*, *Huang v. MediaTek USA, Inc.*, 815

10   F. App'x 521 (Fed. Cir. 2020) (granting motion to strike amended infringement contentions and

11   dismissing case with prejudice "[a]fter multiple wasted chances" and "despite repeated guidance

12   from the Court").

13                                            **ARGUMENT**

14        Finjan's Second Amended Contentions remain deficient for reasons that PAN identified in

15   its previous motions to strike.  (*See* Dkt. No. 128, 161, 195-3.)  In fact, Finjan's Second Amended

16   Contentions remain largely the same as its initial contentions, which Judge Hamilton struck on

17   July 20, 2021, finding that Finjan failed to identify "*where and how* each of the claim limitations

18   . . . can be found in the accused products."  (Dkt. No. 146 at 3-4 (emphasis added).)  Since Judge

19   Hamilton's order, Finjan has mostly added high-level descriptions of the operation of PAN's

20   source code and products and additional screenshots.  But these additions are mere window

21   dressing and do nothing to cure Finjan's underlying failure to articulate *where and how* PAN's

22   products meet claim limitations.

23        Finjan's refusal to address these deficiencies is part of a long pattern of Finjan refusing to

24   comply with Patent Local Rules in this district—which led to its infringement claims being

25   dismissed with prejudice or without leave to amend.  *Finjan, Inc. v. Check Point Software Techs.,*

26   *Inc.*, No. 18-CV-02621-WHO, 2020 WL 597630, at *21 (N.D. Cal. Feb. 27, 2019) (striking with

27   prejudice sections of Finjan's deficient infringement contentions); *Finjan, Inc. v. Proofpoint, Inc.*,

28   No. No. 13–cv–05808–HSG, 2015 WL 1517920, at *12 (N.D. Cal. Apr. 2, 2015) ("[t]he Court

1   will not provide Finjan leave to amend the portions of its contentions expressly stricken, above.")

2   The result here should be no different.  Because Finjan has refused to ever crystallize its theories,

3   the Court should strike Finjan's contentions and dismiss its claims for infringement of the '408

4   and '731 Patents with prejudice.

5   I.   **FINJAN'S SECOND AMENDED CONTENTIONS FOR THE '408 PATENT ARE DEFICIENT AND SHOULD BE STRICKEN**

6

7           The '408 Patent is directed to scanning incoming program code using an analysis tailored

8   to the specific programming language of the incoming code.  This is accomplished using

9   programming-language specific scanners that include programming-language parser and analyzer

10  rules.  (Ex. 7 at 8:29-37.)   Claim 1, for example, requires:

11          instantiating, by the computer, *a scanner* for the specific programming language,
            in response to said determining, the scanner comprising *parser rules and analyzer*
12          *rules* for the specific programming language, wherein the parser rules define
            certain patterns in terms of tokens, tokens being lexical constructs for the specific
13          programming language, and wherein the analyzer rules identify certain
            combinations of tokens and patterns as being indicators of potential exploits,
14          exploits being portions of program code that are malicious[]

15  (*Id.* Claim 1 (emphasis added).)  Finjan's Second Amended Contentions for the '408 Patent are

16  deficient in several respects, but perhaps most egregious is Finjan's continuing failure to

17  specifically identify *where* the "parser rules" and "analyzer rules" in the claims are satisfied by

18  the accused PAN products.  PAN identified this deficiency in its motion to strike before Judge

19  Hamilton, who struck Finjan's contentions as to the '408 Patent.  (Dkt. No. 128 at 10; Dkt.

20  No. 146.)  In spite of this, and after Judge Donato instructed Finjan to comply with Judge

21  Hamilton's Order, Finjan still does not explain specifically where these "parser" and "analyzer"

22  rules are and *how* those components (wherever they are) meet the requirements of the asserted

23  claims.

24          Finjan's failure to specifically identify the alleged "parser" and "analyzer" rules in the

25  accused products is the very deficiency that the Patent Local Rules are meant to avoid.  Finjan, at

26  best, makes conclusory statements that some components in PAN's products "*describe* parser and

27  analyzer rules for the specific programming language."  (Ex. 8 at 125 (emphasis added).)  But

28  identifying components that purportedly "describe" the "parser rules" and "analyzer rules" is not

the same as identifying *where* the claimed "parser" and "analyzer" rules themselves are.  Finjan also discusses the two limitations together with no differentiation despite them being distinct limitations with different functionalities.  (*See, e.g.*, *id.* at 113 ("These content scanning engines use parser rules and analyzer rules (e.g., SML file and DFA constructs) as part of content inspection process.").)

Finjan also does not explain *how* any alleged "parser" or "analyzer" rules in the accused products, if at all, allegedly meet the requirements of the claim.  Claim 1 lays out very specific requirements for each:

- "wherein the parser rules define certain patterns in terms of tokens, tokens being lexical constructs for the specific programming language"; and

- "wherein the analyzer rules identify certain combinations of tokens and patterns as being indicators of potential exploits, exploits being portions of program code that are malicious".

(Ex. 7 Claim 1.)  Finjan nowhere articulates any theory regarding how any alleged "parser rules" in any PAN product "define certain patterns in terms of tokens."  Finjan also nowhere articulates any theory regarding how any alleged "analyzer rules" in any PAN product "identify certain combinations of tokens and patterns as being indicators of potential exploits."  Instead, Finjan merely claims that "patterns" and "tokens" broadly can include any of "language keywords, values, names for variables or functions, operators, and punctuation characters."  (Ex. 8 at 109.) But, even if that were true, Finjan nowhere identifies any specific "language keywords, values, names for variables or functions, operators, and punctuation characters" that are defined by any specific "parser rules" or that are "indicators of potential exploits."  Indeed, Finjan's amendments do nothing to resolve this ambiguity, instead providing only paragraphs that vaguely state that aspects of PAN's products "describe parser and analyzer rules."  (*See, e.g.*, Ex. 9 at 109-110.) These amendments are insufficient.  *Finjan, Inc. v. Check Point Software Techs., Inc.*, No. 18-CV-02621-WHO, 2019 WL 955000, at *6 (N.D. Cal. Feb. 27, 2019) (finding Finjan's infringement contentions deficient because "[t]he marketing materials and screenshots Finjan cites only describe how the [accused products] work in a general sense and virtually 'parrot' the claim language, without tying it to any source code citations or specific information in those

1   screenshots that match the specific claim components.")  Finjan's infringement theories thus

2   remain a mystery.

3          Finally, as Judge Donato anticipated, the claim construction order does not moot the issue.

4   The expert report of Dr. Paul Min, Finjan's technical expert for the '408 Patent, contains the very

5   same lack of description of "parser rules" and "analyzer rules," and in effect copied and pasted

6   Finjan's deficient contentions into his report.  (Ex. 10 at 412:3-14 (Dr. Min agreeing that it is

7   "probable, likely and high likely [sic] even" that portions of his report were copied from Finjan's

8   infringement contentions); *id.* at 416:1-4 (confirming portion of content from Finjan's

9   infringement contentions was copied verbatim into his expert report).)  For example, Dr. Min's

10  expert report contains the same conclusory statement from Finjan's infringement contentions that

11  PAN's products "describe parser and analyzer rules for the specific programming language."

12  (*Compare* Ex. 11 ¶ 353 *with* Ex. 8 at 108.)  His report also repeats the statement from Finjan's

13  contentions that "[t]hese content scanning engines use parser rules and analyzer rules (e.g. SML

14  files and DFA constructs and engine) as part of content inspection process."  (*Compare* Ex. 11

15  ¶ 372 *with* Ex.8 at 113.)  Dr. Min's report also copies the portion of Finjan's contentions which

16  states that "patterns" and "tokens" broadly include "language keywords, values, names for

17  variables or functions, operators, and punctuation characters."  (*Compare* Ex. 11 ¶ 378 *with* Ex. 8

18  at 109.)  In sum, the deficiencies in Finjan's contentions have carried over to Finjan's expert

19  report on the '408 Patent, which does nothing to clarify Finjan's vague infringement theories.

20         In sum, Finjan's contentions for the '408 Patent fail to comply with Patent Local Rule 3-

21  1(c) because Finjan does not identify specifically *where* in the accused PAN products the "parser

22  rules" and "analyzer rules" are, let alone *how* each of those components satisfies the requirements

23  (*e.g.¸* tokens, patterns) set forth in the asserted claims.  Finjan has known of this very deficiency

24  since at least May 12, 2021 (Ex. 1), and has now copied these unremedied deficiencies over into

25  its expert report.  Finjan's Second Amended Contentions as to the '408 Patent should be struck.

26  *See Shared Memory Graphics LLC v. Apple, Inc.*, 812 F. Supp. 2d 1022, 1025 (N.D. Cal. 2010)

27  (noting the patent local rules require Plaintiff to provide "reasonable notice" for how it "believes

28  it has a reasonable chance of proving infringement." (citation and internal quotation omitted)).

## II.    FINJAN'S SECOND AMENDED CONTENTIONS FOR THE '731 PATENT ARE DEFICIENT AND SHOULD BE STRICKEN

The '731 Patent relates to scanning incoming files from the internet and deriving security profiles from those files.  Claim 1 recites, *inter alia*, the following elements:

> a *file cache* for storing files that have been scanned by the scanner for future access, wherein each of the stored files is indexed by a file identifier;
>
> a *security profile cache* for storing the security profiles derived by the scanner, wherein each of the security profiles is *indexed in the security profile cache* by a file identifier *associated with a corresponding file stored in the file cache*; and
>
> a *security policy cache* for storing security policies for intranet computers within the intranet . . . .

(Ex. 12 Claim 1.)  Accordingly, the asserted claims of the '731 Patent require a "file cache," "security profile cache," and "security policy cache."  But Finjan does not specifically identify *where* in the PAN accused products each of these is, let alone *how* those components are the recited caches.  Finjan points to myriad databases in the accused PAN products and contends that those products have each of the three respective caches, but Finjan does not state which specific database is the alleged "file cache," which specific database is the alleged "security profile cache," and which specific database is the alleged "security policy cache," let alone explain how those specific databases satisfy the limitations.

**File Cache**: Finjan contends that the "*file cache*" is "*e.g.*, a database, such as Local DB, or [] disk storage/memory."  (Ex. 13 at 104.)  Thus, according to Finjan's contentions, every database and disk storage in PAN's products might constitute a "file cache."  But Finjan nowhere identifies any specific database or disk storage as the claimed "file cache," let alone explain *how* that database or disk storage is the claimed file cache.  Moreover, Finjan never connects the alleged "file cache" to the claimed "security profile cache."  The claim requires that the "security profile cache" index security profiles by a "file identifier" associated with a corresponding file stored in the "file cache."  But Finjan does not identify a specific alleged "file cache" and specific "security profile cache," which have a single "file identifier" connecting the two.  By simply pointing to hashes associated with one alleged "cache," Finjan fails to identify an index that is associated with a separate "cache."  (*See id.* at 104 (stating the existence of a file identifier, while

listing several possible file caches including "a database" or "disk storage/memory"); *id*. at 108-109 (identifying a hash in a WildFire Report without explaining how that hash is allegedly indexed in a specific "file cache" or "security profile cache").)  Although PAN had raised this issue in its May 12, 2021 correspondence and motion to strike before Judge Hamilton, Finjan's amendments did not resolve the issue.  For the "file cache" limitation, Finjan only provided a broad list of potential "file cache[s]," which include "disk storage/memory" and various databases (Ex. 14 at 104-105, 117), document citations that do not state what the claimed "file cache" is or how it is connected to any "security profile cache," (*id.* at 106-107, 112-116), and pincites to source code that does not explain what the alleged "file cache" is or how it operates (*id.* at 118-121, 125).

      **Security Profile Cache**:  Finjan contends that alleged "security profiles" are "stored in a *security profile cache* (*e.g.*, in a database, such as Local DB, Central DB, Virus Database, or in disk storage)."  (Ex. 13 at 126 (emphasis added).)  Again, according to Finjan's contentions, every database and disk storage in PAN's accused products could thus constitute the claimed "security profile cache."  And Finjan's contentions become more confusing given that Finjan calls out overlapping databases (*e.g.*, Local DB) as both a possible "file cache" and "security profile cache."  In addition, Finjan also fails to explain *how* any of these myriad conceivable "security profile caches" store security profiles derived by the scanner (which, according to the claim, must contain computer commands).  Finjan's examples at most show that PAN's products have components that store analysis results, but the claim requires much more than that.  (*Id.* at 144.)  Finjan's amended contentions introduced its broad recitation of any databases or disk storage as the claimed "security profile cache" (Ex. 14 at 126-127) and added the point that Local DB allegedly "stores the scan results" (*id.* at 144).  But these, and Finjan's other revisions to its contentions, did not resolve the deficiencies in its initial infringement contentions.

      **Security Policy Cache**:  Finjan does not identify *where* the accused "security policy cache" is purportedly in PAN's products.  Finjan merely states that "[s]ecurity policies are stored" and that PAN's NGFW product or Traps product "store[s] security policies," without identifying the specific component that constitutes the alleged "security policy cache."  (*See, e.g.,* Ex. 13 at

161, 164, 167.)  Finjan also never identifies the "*how*."  As the example below shows, Finjan merely parrots claim language and recites generic statements about PAN's products that have no relevance to the claim language, thus providing PAN with no notice of Finjan's infringement theory.  (*Id.* at 168.)

> As yet another example, PAN documentation explains that NGFWs store security policies in a cache and that each of the security policies include a list of restrictions for files that are transmitted to intranet computers. *See, e.g.,* https://knowledgebase.paloaltonetworks.com/KCSArticleDetail?id=kA10g000000ClWZCA0 ("Security policies on the firewall can be defined using various criteria such as zones, applications, IP addresses, ports, users, and HIP profiles. Firewall administrators can define security policies to allow or deny traffic, starting with the zone as a wide criterion, then fine-tuning policies with more granular options such as ports, applications, and HIP profiles.")

Each of these deficiencies existed in Finjan's initial, stricken, infringement contentions.  (*See* Ex. 14 at 161, 164, 167-168.)

Finally, the report from Dr. Jakobsson, Finjan's expert for the '731 Patent, does little to resolve this issue because his opinions are also non-specific and conclusory in several respects and, like Dr. Min, he largely cuts and pastes from Finjan's scattershot and vague contentions. Dr. Jakobsson vaguely contends a "file cache" includes "e.g., a database, such as Local DB, or [] disk storage/memory." (*Compare* Ex. 15 ¶ 748 *with* Ex. 13 at 104.)  Dr. Jakobsson also opines, the same as Finjan's contentions, that "security profiles (e.g., scan results or analysis reports following a scan) are stored in a security profile cache (e.g., in a database, such as Local DB, Central DB, Virus Database, or in disk storage) after a scan ends." (Ex. 15 ¶ 806.)  Like Finjan's contentions, he does not connect the "file cache," "security profile cache," and "file identifier" limitations to specific alleged caches, and points to a wide variety of databases without explaining how any given database is a "file cache" or "security profile cache."

In sum, Finjan's contentions for the '731 Patent fail to comply with Patent Local Rule 3-1(c) because Finjan does not identify specifically *where* in the accused PAN products the "file cache," "security profile cache," and "security policy cache" are, let alone *how* each of those components is the specific cache recited in the claims.  Finjan has known of this very deficiency as to the "file cache" and "security profile cache" since at least May 12, 2021 (Ex. 1), and has now copied these unremedied deficiencies over into its expert report.  Finjan's Second Amended Contentions as to the '731 Patent should be struck.  *See Shared Memory Graphics*, 812 F. Supp.

1    2d at 1025 (noting the patent local rules require Plaintiff to provide "reasonable notice" for how it

2    "believes it has a reasonable chance of proving infringement.")

3    **III.    THE COURT SHOULD STRIKE FINJAN'S SECOND AMENDED**
     **CONTENTIONS FOR THE '408, AND '731 PATENTS WITH PREJUDICE**

4

5           The Court should strike Finjan's Second Amended Contentions for the '408 and '731

6    Patents with prejudice.  Finjan has already had three rounds of infringement contentions but still

7    fails to identify *where* and *how* certain limitations exist in the accused PAN products.  Finjan has

8    known about the deficiencies with the "parser rules," "analyzer rules," "file cache," and "security

9    profile cache" limitations for more than three years.  (Ex. 1.)  And Finjan has refused to address

10   them despite the fact that PAN raised the deficiencies in correspondence and in its motion before

11   Judge Hamilton (Dkt. No. 128 at 9-10) and again in its motions before Judge Donato.  (Dkt. No.

12   161 at 13-14; Dkt. No. 195-3 at 9-10, 11-14.)  Judge Hamilton ordered Finjan to fix all

13   deficiencies (Dkt. No. 141) and Judge Donato confirmed that Finjan was ordered to rectify *all*

14   deficiencies.  (Dkt. No. 177.)

15          Finjan either cannot or will not comply with the Patent Local Rules.  Its continued failure

16   to articulate any cogent infringement theory has prejudiced PAN's ability to prepare its defense

17   for the scheduled June 9, 2025, trial.  Because Finjan steadfastly refuses to serve contentions that

18   comply with Patent Local Rule 3-1, Judge Hamilton's Order, and Judge Donato's Order, the

19   Court should not give Finjan another chance to serve amended contentions.  *See Finjan, Inc. v.*

20   *Proofpoint, Inc.*, No. 13-cv-05808-HSG, 2015 WL 1517920, at *12 (ND. Cal. Apr. 2, 2015)

21   ("The Court will not provide Finjan leave to amend the portions of its contentions expressly

22   stricken, above."); *Blue Spike, LLC v. Adobe Sys., Inc.*, No. 14-cv-01647-YGR (JSC), 2015 WL

23   335842 at *6 (N.D. Cal. Jan. 26, 2015) (striking contentions given plaintiff's "failure to take any

24   action" despite defendants "having raised this defect in informal communications, a discovery

25   letter to the Court, and a formally noticed motion").

26          Good cause exists in this case to dismiss Finjan's infringement claims for the '408 and

27   '731 Patents with prejudice.  *Huang v. Nephos*, 2019 WL 5892988, at *4-5 (striking infringement

28   contentions upon showing of "good cause").  Finjan has had multiple opportunities and years

1   (since 2014) to prepare and serve compliant infringement contentions.  It has failed to do so,

2   despite detailed explanations of deficiencies from PAN and directives from two judges in this

3   District.  Accordingly, Finjan's claims that PAN infringes the '408 and '731 Patents should be

4   dismissed with prejudice.  *See MasterObjects, Inc. v. Amazon.com*, No. C 20-08103-WHA, 2022

5   WL 4280640, at *9 (N.D. Cal. Sept. 15, 2022) (granting summary judgment of non-infringement

6   and holding based on construction of "cache" term that "the time has also long passed for

7   MasterObjects to revise its infringement contentions to capture this order's construction, which

8   adopts Amazon's proposal"); *Shared Memory Graphics, LLC v. Apple Inc.*, No. C 10-2475

9   MMC, 2011 WL 5320749, at *3-4 (N.D. Cal. Nov. 2, 2011) (finding the magistrate judge's order

10  granting motion to strike certain parts of the second amended infringement contentions in essence

11  dispositive); *Huang v. Nephos*, 2019 WL 5892988, at *5 (granting motion to strike amended

12  infringement contentions and dismissing case with prejudice "[a]fter multiple wasted chances"

13  and "despite repeated guidance from the Court.")

14                                    **CONCLUSION**

15          For the foregoing reasons, the Court should strike Finjan's Amended Contentions for the

16  '408 and '731 Patents with prejudice and dismiss Finjan's claims of infringement of these patents

17  with prejudice.

18

19

20

21

22

23

24

25

26

27

28

1      Dated:  September 11, 2024           */s/ Kyle W.K. Mooney*

2                                              Daralyn J. Durie (CA SBN 169825)
                                             DDurie@mofo.com

3                                              Timothy Chen Saulsbury (CA SBN 281434)
                                             TSaulsbury@mofo.com

4                                              Matthew I. Kreeger (CA SBN 153793)
                                             MKreeger@mofo.com

5                                              MORRISON & FOERSTER LLP
                                             425 Market Street

6                                              San Francisco, California 94105-2482
                                             Phone: (415) 268-7000

7                                              Fax: (415) 268-7522

8                                              Kyle W.K. Mooney (*Pro Hac Vice*)
                                             KMooney@mofo.com

9                                              Michael J. DeStefano (*Pro Hac Vice*)
                                             Mdestefano@mofo.com

10                                            MORRISON & FOERSTER LLP
                                           250 West 55th Street

11                                            New York, New York 10019-9601
                                           Phone: (212) 468-8000

12                                            Fax: (212) 468-7900

13                                            Rose S. Lee
                                           RoseLee@mofo.com

14                                            MORRISON & FOERSTER LLP
                                           707 Wilshire Boulevard

15                                            Los Angeles CA 90017-3543
                                           Phone: (213) 892-5200

16                                            Fax: (213) 892-5454

17                                            *Attorneys for Defendant*
                                           *PALO ALTO NETWORKS, INC.*

18

19

20

21

22

23

24

25

26

27

28