1  DARALYN J. DURIE (CA SBN 169825)
   DDurie@mofo.com
2  TIMOTHY CHEN SAULSBURY (CA SBN 281434)
   TSaulsbury@mofo.com
3  MATTHEW I. KREEGER (CA SBN 153793)
   MKreeger@mofo.com
4  MORRISON & FOERSTER LLP
   425 Market Street
5  San Francisco, California 94105-2482
   Telephone: (415) 268-7000 / Fax: (415) 268-7522
6
7  *Attorneys for Defendant,*
   *PALO ALTO NETWORKS, INC.*
8  *Additional counsel on signature page*
9
10                  UNITED STATES DISTRICT COURT
11                 NORTHERN DISTRICT OF CALIFORNIA
12  FINJAN LLC,                          Case No.   3:14-CV-04908-RS
13              Plaintiff,               **PALO ALTO NETWORKS
                                         INC.'S MOTION TO EXCLUDE
14       v.                              TESTIMONY OF
                                         DRS. ANGELOS KEROMYTIS
15  PALO ALTO NETWORKS, INC.,            AND ROBERT MANESS**
16              Defendant.
                                         Date:  November 14, 2024
17                                       Time:  1:30 PM
                                         Courtroom:  3, 17th Floor
18                                       Judge:  Honorable Richard Seeborg
19
20
21        **REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**
22
23
24
25
26
27
28

**TABLE OF CONTENTS**

**Page**

NOTICE OF MOTION AND MOTION ...................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES .......................................... 1

INTRODUCTION AND STATEMENT OF ISSUES TO BE DECIDED.................. 1

STATEMENT OF RELEVANT FACTS ................................................................... 2

    I.      DR. KEROMYTIS'S OPINIONS........................................................ 2

    II.     DR. MANESS'S OPINIONS.............................................................. 4

        A.    Royalty Base .............................................................................. 4

        B.    Royalty Rate .............................................................................. 6

ARGUMENT ........................................................................................................... 7

    I.      DR. KEROMYTIS'S APPORTIONMENT OPINIONS ARE
          INADMISSIBLE ................................................................................ 7

        A.    Dr. Keromytis is Not Qualified to Opine About Consumer Demand ........ 8

        B.    Dr. Keromytis Does Not Support His Opinion
█████████████████████████████████████ .................................. 9

        C.    Dr. Keromytis Applies an Arbitrary, Black Box Methodology ............... 10

            1.    Dr. Keromytis's default of ██████████ of features is
                arbitrary .................................................................... 10

            2.    Dr. Keromytis's
                ███████████████ is arbitrary ...................................... 12

    II.     DR. MANESS'S OPINIONS ARE INADMISSIBLE ......................... 14

        A.    Dr. Maness's Royalty Base Opinions Are Inadmissible ........................... 14

            1.    Dr. Maness relies on Dr. Keromytis's flawed apportionment ...... 14

            2.    Dr. Maness ignores the contribution of conventional and
                non-infringing components ......................................... 15

                a.    Failure to consider contribution of conventional and
                     non-infringing components ............................... 15

**TABLE OF CONTENTS**
(continued)

Page

        b.     Failure to consider the relative contributions of the '154 Patent and the three remaining patents ..................... 17

     3.     Dr. Maness improperly includes revenue from sales of conventional hardware .................................................. 19

  B.    Dr. Maness's Royalty Rate Opinions are Inadmissible ........................... 20

     1.     Dr. Maness's opinion that Finjan has ▆▆▆▆▆▆▆▆ ▆▆▆▆▆▆ is contrary to Federal Circuit law ........................ 21

     2.     Dr. Maness fails to establish that any of Finjan's past agreements is technologically or economically comparable......... 23

CONCLUSION ...................................................................................................... 25

1

<u>**TABLE OF AUTHORITIES**</u>

2

**Page(s)**

3

**Cases**

4

*Abaxis, Inc. v. Cepheid,*
No. 10-CV-02840-LHK, 2012 WL 2979019 (N.D. Cal. July 19, 2012) ................................ 9

5

6

*Adasa Inc. v. Avery Dennison Corp.,*
55 F.4th 900 (Fed. Cir. 2022) ........................................................................................... 24

7

*Ask Chems., LP v. Computer Packages, Inc.,*
593 Fed. App'x 506 (6th Cir. 2014) .................................................................................. 24

8

9

*CIT Grp./Bus. Credit, Inc. v. Graco Fishing & Rental Tools, Inc.,*
815 F. Supp. 2d 673 (S.D.N.Y. 2011) ........................................................................ 21, 24

10

11

*Contour IP Holding, LLC v. GoPro, Inc.,*
No. 3:17-CV-04738-WHO, 2020 WL 5106845 (N.D. Cal. Aug. 31, 2020) ....................... 15

12

*DataQuill Ltd. v. High Tech Comput. Corp.,*
887 F. Supp. 2d 999 (S.D. Cal. 2011) ............................................................................. 25

13

*Daubert v. Merrell Dow Pharmaceuticals, Inc.,*
509 U.S. 579 (1993) ................................................................................................... 1, 11

14

15

*Finjan LLC v. SonicWall, Inc.,*
84 F.4th 963 (Fed. Cir. 2023) ......................................................................................... 15

16

17

*Finjan, Inc. v. Blue Coat Sys., Inc.,*
879 F3d. 1299 (Fed. Cir. 2018) ................................................................................. 23, 24

18

*Finjan, Inc. v. Secure Computing Corp.,*
626 F.3d 1197 (Fed. Cir. 2010) ........................................................................... 6, 23, 24

19

20

*Finjan, Inc. v. Sophos, Inc.,*
No. 14-cv-01197-WHO, 2016 WL 4268659 (N.D. Cal. Aug. 15, 2016) ....................... 18, 19

21

22

*Good Tech. Corp. v. MobileIron, Inc.,*
5:12-CV-5826-PSG, 2015 WL 4090431 (N.D. Cal. July 5, 2015) ..................................... 8, 9

23

*GPNE Corp. v. Apple, Inc.,*
No. 12-CV-2885-LHK, 2014 WL 1494247 (N.D. Cal. Apr. 16, 2014) ....................... 9, 10, 13

24

25

*Hanson v. Alpine Valley Ski Area, Inc.,*
718 F.2d 1075 (Fed. Cir. 1983) .................................................................................. 21, 22

26

27

*King-Ind. Forge, Inc. v. Millennium Forge, Inc.,*
No. 1:07-CV-00341-SEB-DML, 2009 WL 3187685 (S.D. Ind. Sept. 29, 2009) ................. 24

28

*In re Koninklijke Philips Pat. Litig.*,
   No. 18-CV-01885-HSG, 2020 WL 7398647 (N.D. Cal. Apr. 13, 2020)................................ 22

*LaserDynamics, Inc. v. Quanta Comput., Inc.*,
   694 F.3d 51 (Fed. Cir. 2012).......................................................................................... 10, 24

*NetFuel, Inc. v. Cisco Sys. Inc.*,
   No. 5:18-CV-02352-EJD, 2020 WL 1274985 (N.D. Cal. Mar. 17, 2020) ........... 10, 12, 13, 14

*Omega Pats., LLC v. CalAmp Corp.*,
   13 F.4th 1361 (Fed. Cir. 2021)............................................................................ 15, 16, 19, 20

*Open Text S.A. v. Box, Inc.*,
   No. 13-CV-4910-JD, 2015 WL 349197 (N.D. Cal. Jan. 23, 2015) .................................. 10, 11

*Puff Corp. v. SHO Prod., LLC*,
   No. CV 22-2008-GW-KSx, 2024 WL 2208929 (C.D. Cal. Apr. 19, 2024) .......................... 20

*Rambus Inc. v. Hynix Semiconductor Inc.*,
   254 F.R.D. 597 (N.D. Cal. 2008).......................................................................................... 9

*Realtime Data, LLC v. Oracle Am., Inc.*,
   No. 6:16-CV-88-RWS-JDL, 2017 WL 11574028 (E.D. Tex. Mar. 30, 2017) ...................... 11

*Stragent, LLC v. Intel Corp.*,
   No. 6:11-CV-421, 2014 WL 1389304 (E.D. Tex. Mar. 6, 2014) ........................................ 11

*Uniloc USA, Inc. v. Microsoft Corp.*,
   632 F.3d 1292 (Fed. Cir. 2011)...................................................................................... 11, 23

*VirnetX, Inc. v. Cisco Sys., Inc.*,
   767 F.3d 1308 (Fed. Cir. 2014).............................................................................. 15, 20, 23

*Zimmer Surgical, Inc. v. Stryker Corp.*,
   365 F. Supp. 3d 466 (D. Del. 2019)...................................................................................... 25

**Other Authorities**

Fed. R. Evid. 702 .................................................................................................. 1, 8, 14

1

## TABLE OF ABBREVIATIONS

2

3

| **Abbreviation** | **Description** |
|---|---|
| "Hartstein Dep. Tr." | Transcript of Deposition of Philip Hartstein, taken December 13, 2022 |
| "Jakobsson Rpt." | Opening Expert Report of Dr. Markus Jakobsson, dated January 27, 2023 |
| "Keromytis Dep. Tr." | Transcript of Deposition of Dr. Angelos Keromytis, taken March 15-16, 2023 |
| "Keromytis Rpt." | Opening Expert Report of Dr. Angelos Keromytis, dated January 27, 2023 |
| Keromytis Rpt. App. G | Corrected Appendix G to Report of Dr. Angelos Keromytis, served March 13, 2023 |
| Keromytis Rpt. App. H | Appendix H to Report of Dr. Angelos Keromytis, served January 27, 2023 |
| "Maness Dep. Tr." | Transcript of Deposition of Dr. Robert Maness, dated March 14, 2023 |
| "Maness Rpt." | Amended Expert Report of Dr. Robert Maness, dated February 3, 2023 |
| "Min Dep. Tr." | Transcript of Deposition of Dr. Paul Min, taken March 16-17, 2023 |
| "Min Rpt." | Opening Expert Report of Dr. Paul Min, dated January 27, 2023 |
| "Ex. __" | Exhibits to the Declaration of Kyle Mooney, dated September 11, 2024 |

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    **NOTICE OF MOTION AND MOTION**

2    TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

3    PLEASE TAKE NOTICE that on November 14, 2024, at 1:30 p.m., or as soon thereafter

4    as counsel may be heard in the United States District Court for the Northern District of California,

5    San Francisco Division, in Courtroom 3, 17th Floor before the Honorable Richard Seeborg,

6    Defendant Palo Alto Networks, Inc. ("PAN") will, and hereby does, move to exclude certain

7    opinions of Finjan experts Dr. Angelos Keromytis and Dr. Robert Maness.

8    As set forth in the accompanying memorandum, PAN moves to exclude Dr. Keromytis's

9    apportionment opinions and Dr. Maness's opinions in full because they fail to meet the minimum

10   standards for expert testimony under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow*

11   *Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

12   **MEMORANDUM OF POINTS AND AUTHORITIES**

13   **INTRODUCTION AND STATEMENT OF ISSUES TO BE DECIDED**

14   The days of "anything goes" damages theories are dead.  The Federal Circuit has

15   emphasized that before a damages expert can testify, they must present a reliable and tangible

16   basis for damages that ties the patentee's damages to the claimed invention's footprint in the

17   marketplace.  Yet Finjan seeks to offer two experts who ignore the settled legal framework for

18   patent damages to arrive at damages amounts that are orders of magnitude beyond any valuation

19   consistent with controlling precedent.  The expert testimony Finjan hopes to introduce for

20   damages runs afoul of Federal Circuit law and should be excluded.

21   Dr. Angelos Keromytis, one of Finjan's technical experts, purports to offer apportionment

22   opinions, but his analysis is fundamentally flawed.  Dr. Keromytis ascribes percentage "weights"

23   to various features of the PAN software that he proclaims reflect their ███████████████

24   ████████████████████████████████████████  But Dr. Keromytis fails to

25   identify any marketing or economic experience that qualifies him to opine about ████████

26   ████████  Even if he were qualified, Dr. Keromytis's opinions are inadmissible because he

27   provides no facts or data to support the basis for his entire opinion, ███ ███████████████

28   ████████████████████████████  Nor does he identify facts or data to support most of his

arbitrary equal weightings or adjusted weights for features.  Instead, he applies the type of "plucked out of thin air" methodology that the Federal Circuit and lower courts routinely reject. These deficiencies render Dr. Keromytis's apportionment opinions unreliable and inadmissible.

Dr. Robert Maness, Finjan's damages expert, relies on Dr. Keromytis's flawed apportionment analysis, which by itself renders his opinions inadmissible.  But Dr. Maness compounds the problem by introducing additional methodological flaws.  Dr. Maness's royalty base calculation fails to account for the contributions of conventional and non-infringing components of features of the accused PAN software.  Dr. Maness also wrongly includes hardware revenue in the royalty base even though the claims require only generic, conventional hardware — to the extent they require hardware at all.

Dr. Maness's royalty rate opinions are equally flawed and contrary to Federal Circuit precedent.  Dr. Maness asserts that the rates he applies reflect ██████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ██████████ much less the general acquiescence required to show "established" rates under Federal Circuit precedent.  Even if Dr. Maness did just rely on those other license agreements as relevant to a negotiated rate, he fails to establish that they are technologically and economically comparable to the agreement that would have been negotiated here.

Dr. Keromytis and Dr. Maness offer inadmissible opinions that are contrary to Federal Circuit precedent, divorced from the facts of this case, and the product of unreliable methodologies.  The Court should exclude Dr. Keromytis's apportionment opinions and Dr. Maness's damages opinions in full.

## STATEMENT OF RELEVANT FACTS

## I.   DR. KEROMYTIS'S OPINIONS

Dr. Keromytis offers what he calls ████████████████████████ ██████████████████████████ (Keromytis Rpt. ¶¶ 489-504 (Ex. 1).) Dr. Keromytis purports to ████████████████████████████ ████████████████████████ (*Id.* ¶ 489.)  According to Dr. Keromytis, ████████



1

2     (*Id.* ¶ 492.)

3     (*Id.*)

4

5

6     (*Id.* ¶¶ 490-91.)

7         Dr. Keromytis presents the results of his analysis as ▉▉▉▉▉▉▉ in Appendix G of

8 his expert report.[1]  (*Id.* ¶¶ 489-90; Keromytis Rpt. App. G (Ex. 2); Keromytis Rpt. App. H

9 (Ex. 3).)  Appendix G, as shown in the excerpt below, includes:

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24 (Keromytis Rpt. ¶ 87 (Ex. 1).)

25

26     [1] Finjan served a "corrected" version of Dr. Keromytis's Appendix G that superseded the original version two days before his deposition (about six weeks after serving his opening report).

27 References to "Appendix G" are to this "corrected" version.

    [2] *See* Keromytis Rpt. ¶ 505 (Ex. 1); Jakobsson Rpt. ¶ 1028 (Ex. 4); Min Rpt. ¶ 893

28 (Ex. 5).  Although Appendix G includes the '154 Patent, Finjan has now stipulated to non-infringement of that patent.  (Dkt. Nos. 291, 292.)

1   ████████████████████████████████." (*Id.* ¶ 492.) ████████████████

2   ████████████████████████████████████████████████████

3   ████████████████████████████████████████████████

4   ████████████████████████████████████████████████████████

5   ████████████████████████████████████████████████████████

6   ████████████████████████████ (*Id.*)  In other words, ████████████████

7   ████████████████████████████████████████████████████████

8   ████████████████████████████████████████████████████████

9   ████████████████████████████████ (*Id.* ¶¶ 492-504.)

10  **II.    DR. MANESS'S OPINIONS**

11  Dr. Maness purports to ████████████████████████████████

12  ████████████████████████████████████████████████████

13  (Maness Rpt. ¶ 11 (Ex. 6).)  As described below, ████████████████████

14  ████████████████████████████████ (*Id.* ¶¶ 42-51, 14, 15, 17.) █████

15  ████████████████████████████████████████████████

16  ████████ (*Id.* ¶¶ 16-17, 157, 196, 197, Exs. 3A-3O.)

17  **A.    Royalty Base**

18  ████████████████████████████████████████████████████████

19  ████████████████████████████████████████████████████

20  ████████████████████████████. (*Id.* ¶¶ 42-55.)

21  ████████████████████████████████████████████████

22  ████████ (*Id.* ¶ 50.) ████████████████████████████

23  ████████████ (*Id.* ¶¶ 49-50.) ████████████████████████

24  ████████████████████████████████████████████████

25  ████████████████████████████████████████████

26  ████████████████████████████████████████████ (*Id.* ¶ 50.)

27  ████████████████████████████████████████████████████████

28  ████████████████████████████████████. (*Id.*)  Dr. Maness provides the

1  following example:

2

3

4

5

6

7  (*Id.*)  The percentages in Dr. Maness's example come directly from Appendix G

8  to Dr. Keromytis's report:

9

10

11

12

13

14

15

16

17

18                                                                        (Maness Rpt. ¶¶ 50-

19  52, Exs. 3A-3O (Ex. 6).)

20                                                            .  (*Id.* ¶ 51.)

21

22

23

24            .  (*Id.* ¶ 51.)

25                                      .  (*Id.*)

26

27                                                                      "  (*Id.*)

28



(Maness Rpt. ¶ 51 (Ex. 6).)

**B.    Royalty Rate**

. (*Id.* ¶¶ 68-69.)

(*Id.* ¶ 69.)

(*Id.* ¶ 69 & n.102.)

(*Id.* ¶ 71.)[3]

---

[3] (Maness Rpt. ¶ 71 n.103 (Ex. 6).) (Hartstein Dep. Tr. 170:22-25, 178:1-3 (Ex. 11).)

1    Dr. Maness then references █████████████████████████████

2 ████████████████████████████████████████████████████

3 ████████████████████████████████████████████████

4 ███████████████████████████████████████████████████████

5 ██████████ (*Id.* ¶ 63 & n.86.) █████████████████████████████

6 ████████████████████████████████████████████████████

7 █████████████████" (*id.* ¶ 76) █████████████████████████

8 ███████████████████████████████████████ (*id.* ¶¶ 81, 83, 87, 90, 93,

9 99, 115, 117, 122, 125; *see also id.* Ex. 5A (███████████████████████

10 ████████████████████████████████)). █████████████████

11 ██████████████████████████████████████████████████

12 ████████████ (*See id.* ¶¶ 66-137, Ex. 3A.)

13 ████████████████████████████████████████████████████

14 ███████████████████████████████████████████ (*Id.* ¶ 187; *see*

15 *also id.* ¶¶ 152-89.) ████████████████████████████

16 ██████████████████████████████████████████████████████

17 ██████████████████████████████████████████ (*Id.* ¶ 157)

18 (emphasis added).) █████████████████████████████████

19 ████████████████████████████████████████████████

20 ████████████████████████████████████████████████

21 ████████████ (*Id.* ¶ 189.)



## ARGUMENT

## I.   DR. KEROMYTIS'S APPORTIONMENT OPINIONS ARE INADMISSIBLE

In his report, Dr. Keromytis offers "apportionment" opinions in which he assigns relative weights to features of PAN products that he asserts reflect "consumer demand."  These relative weights become the basis for Dr. Maness's damages calculation.

Dr. Keromytis's apportionment opinions are inadmissible and should be excluded for three reasons.  First, Dr. Keromytis is not qualified to opine on consumer demand.  Second, he

1    fails to support the one rule upon which his analysis is based: ███████████████████

2    ████████████████        Third, in lieu of a reliable methodology, he applies a black box

3    analysis based on his own "experience" and documents untethered to his opinions.

4    **A.      Dr. Keromytis is Not Qualified to Opine About Consumer Demand**

5           Expert testimony must be based on "the expert's scientific, technical or other specialized

6    knowledge." Fed. R. Evid. 702(a).  While an expert's technical experience may qualify them to

7    testify about the features of a given technology, that experience does not necessarily give them

8    expertise in "consumer demand" for those features or technology.  *See Good Tech. Corp. v.*

9    *MobileIron, Inc.*, 5:12-CV-5826-PSG, 2015 WL 4090431, at *8 (N.D. Cal. July 5, 2015) ("While

10   [the expert] is more than qualified technically, experience with the technology does not give an

11   individual expertise in consumer demand related to those non-infringing alternatives.").

12   ██████████████████████████████████████████████████

13   ██████████████████████████████████████████████

14   (Keromytis Rpt. ¶ 492 (Ex. 1).)  But Dr. Keromytis is not qualified to offer expert testimony

15   about a feature's ██████████████████   ████████████████

16   ████████████████████████████████████████████████

17   ██████████████"  (*Id.* ¶¶ 2-17 (emphasis added).)  Nowhere in his report or CV does

18   Dr. Keromytis identify *any* relevant market research or other comparable experience that would

19   render him an expert in assessing consumer demand.[4] █████████████████

20   ████████████████████████████████████████████

21   ███████████████   (Keromytis Dep. Tr. 215:11-24 (Ex. 7).)  ██████████████

22   ████████████████████████████████████████████████

23   █████████████████   (*Id.* at 216:4-218:6, 218:22-219:18.)

24          In fact, Dr. Keromytis tacitly admits that he is not qualified to opine about consumer

25   demand.  Dr. Keromytis states in his report that his apportionment opinion is limited to ██████

26   ───────────────────
         4   ████████████████████████████████████████████

27   █████████████████████████████████████████████

28   ████████(Min Dep. Tr. at 272:6-17 (Ex. 10)),  ████████████████
     (*id.* at 273:8-23), ████████████████████████
     (*id.* at 273:24-274:6).

█████████████████████████████████████ (Keromytis Rpt. ¶ 87 (Ex. 1).)  And at his

deposition, Dr. Keromytis confirmed his understanding that there would be ████████

██████████████████████ (Keromytis Dep. Tr. at 238:19-239:16 (Ex. 7).)  In

other words, Dr. Keromytis recognized that while he may be qualified to opine on technical

aspects of the accused products, he did not have the expertise to offer opinions about how those

technical aspects relate to consumer demand.  Yet that is exactly what he does in his report when

he purports to assess "consumer demand" for features of the accused products.

Because Dr. Keromytis lacks expertise in consumer demand, his apportionment analysis

should be excluded.  *See Good Tech.*, 2015 WL 4090431, at *8; *see also Abaxis, Inc. v. Cepheid*,

No. 10-CV-02840-LHK, 2012 WL 2979019, at *4 (N.D. Cal. July 19, 2012) (excluding technical

expert's opinions concerning commercial success because expertise was "not in sales, marketing,

or consumer preferences and demand"); *Rambus Inc. v. Hynix Semiconductor Inc.*, 254 F.R.D.

597, 604-05 (N.D. Cal. 2008) (technical expert may render technical opinions like "the claimed

inventions are responsible for increasing DRAM bandwidth" but may not testify that the

inventions "[led] to the commercial success of products using the inventions" because he "lacks

the expertise needed to testify about the commercial aspects of this inquiry").

**B.     Dr. Keromytis Does Not Support His Opinion that** ████████████
██████████████████████

Even if Dr. Keromytis were qualified to render an opinion regarding consumer demand,

he does not support the fundamental premise underlying his opinion.  Dr. Keromytis states that he

█████████████████████████████████████████████████████████

███████████████████████."  (Keromytis Rpt. ¶ 492 (Ex. 1).)  This serves as

the basis for his entire opinion.  The only support he provides for this understanding are his

██████████████████████ (*Id.*)

But generic appeals to experience and materials do not render his opinion admissible.

Courts in this District routinely reject bare reliance on "experience" as a sufficient basis for an

expert opinion.  *See GPNE Corp. v. Apple, Inc.*, No. 12-CV-2885-LHK, 2014 WL 1494247, at

*5-6 (N.D. Cal. Apr. 16, 2014) (excluding expert's opinions because "30 years of experience does

1  not constitute sufficient facts or data, or reliable principles and methods") (citation and quotation

2  omitted); *Open Text S.A. v. Box, Inc.*, No. 13-CV-4910-JD, 2015 WL 349197, at *6 (N.D. Cal.

3  Jan. 23, 2015) (excluding a damages expert's opinions because "[r]ather than spelling out the

4  steps she took to go from the data to the royalty rate opinion, [the expert] cites her 'experience'—

5  an abstraction not visible to the eyes of the Court, the jury, and opposing counsel, or testable in

6  the crucible of cross-examination").  And Dr. Keromytis's reference to "materials" provided to

7  him does not save his opinion because "he never explains how those [materials] weighed in

8  his . . . evaluation."  *NetFuel, Inc. v. Cisco Sys. Inc.*, No. 5:18-CV-02352-EJD, 2020 WL

9  1274985, at *7 (N.D. Cal. Mar. 17, 2020).

10       Accordingly, Dr. Keromytis fails to support his opinion that ████████████████████

11  ████████████████████████████████████████████████ with facts or data

12  necessary to render that opinion, and the apportionment built on that opinion, admissible.  *See*

13  *GPNE*, 2014 WL 1494247, at *5-6; *NetFuel*, 2020 WL 1274985, at *7.

14       **C.     Dr. Keromytis Applies an Arbitrary, Black Box Methodology**

15       The Federal Circuit has condemned the use of arbitrary, "plucked out of thin air"

16  apportionment based on an expert's "vague qualitative notions of the relative importance of

17  [accused technology]."  *LaserDynamics, Inc. v. Quanta Comput., Inc.*, 694 F.3d 51, 69 (Fed. Cir.

18  2012).  Thus, "[e]xperts must follow some discernable methodology, and may not be a black box

19  into which data is fed at one end and from which an answer emerges at the other."  *NetFuel*, 2020

20  WL 1274985, at *2 (citation and quotation omitted).  Dr. Keromytis's apportionment opinion is

21  the quintessential example of a black box methodology.  Dr. Keromytis's apportionment opinion

22  should be excluded because (1) Dr. Keromytis's arbitrarily assigns ████████████████████

23  ████████████████████████████████, and (2) Dr. Keromytis's fails to explain, or

24  provide quantitative support, for ████████████████████ from that arbitrary baseline.

25       **1.     Dr. Keromytis's ████████████ of features is arbitrary**

26  ████████████████████████████████████████████████████████████████

27  ████████████████████████████████ (Keromytis Rpt. ¶ 492 (Ex. 1); *see also*

28  Keromytis Dep. Tr. at 224:15-22 (Ex. 7).)  Dr. Keromytis does not provide any justification for

1   this ████████████████████████████████████████████

2   ████████████████████████████████████████████████

3   ██████   (Keromytis Rpt. ¶ 492 (Ex. 1).)  But Dr. Keromytis's default arbitrary equal weighting

4   of features is exactly the type of black box methodology that courts have rejected.  *See Stragent,*

5   *LLC v. Intel Corp.*, No. 6:11-CV-421, 2014 WL 1389304, at *4 (E.D. Tex. Mar. 6, 2014) ("Dr.

6   Velluro's attribution of equal value to all 19 RAS features is not based on any theory that meets

7   the *Daubert* criteria of verifiability, peer review or publication, an acceptable error rate, or

8   general acceptance in the scientific community."); *Realtime Data, LLC v. Oracle Am., Inc.*,

9   No. 6:16-CV-88-RWS-JDL, 2017 WL 11574028, at *6 n.2 (E.D. Tex. Mar. 30, 2017) (striking

10  expert's "starting point apportionment" analysis and also noting that expert "fails to adequately

11  explain why each of his identified 'features' should be entitled to equal weight for his initial

12  'starting-point apportionment' analysis").

13          Dr. Keromytis's adjustments up or down of some (but not all) of the default equal

14  weightings does not render his analysis admissible. ████████████████████████████

15  █████████████████████████████████████████████████████

16  ████████████████████████████████████████████

17  ██████████   (*See* Keromytis Rpt. App. G (Ex. 2).)  ██████████████████ is not a

18  reliable methodology. ████████████████████████ do not change that Dr.

19  Keromytis's analysis is built on an arbitrary starting point.  *Cf. Uniloc USA, Inc. v. Microsoft*

20  *Corp.*, 632 F.3d 1292, 1317 (Fed. Cir. 2011) ("Beginning from a fundamentally flawed premise

21  and adjusting it based on legitimate considerations specific to the facts of the case nevertheless

22  results in a fundamentally flawed conclusion."); *Open Text*, 2015 WL 349197, at *6 ("[D]ecisions

23  from the Federal Circuit and this district have rejected deriving a royalty rate by picking a starting

24  point based on industry-wide data (rather than facts specific to the case at hand) and varying it

25  upwards or downwards.").

26

27

28

1

2

        **2.**      **Dr. Keromytis's ███████████████████████ features is arbitrary**

3        Dr. Keromytis's original arbitrary ████████ is sufficient to render his entire

4    apportionment analysis inadmissible.  But even if it were not, Dr. Keromytis's unsupported

5    ████████████████████████████ constitutes a separate and independent ground

6    to exclude his opinions.

7        Dr. Keromytis identifies nothing more than his own "experience" and a bare list of

8    documents to defend most of his weights where he deviates from ██████████.  Dr. Keromytis

9    states that ███████████████████████████████████████████████

10    ████████████████████████████████████████████████

11    ████████ (Keromytis Rpt. ¶¶ 490-91 (Ex. 1).)  But Dr. Keromytis does not identify *any*

12    *specific documents or statements* that support his ████████████████████

13    ████████████████████████████████████████████████

14    ████████████████████████████████████████████████████

15    ██ ████████.  Thus, for the features at these levels, the only bases for Dr. Keromytis's opinions

16    are his "experience" and a laundry list of production numbers.  That is insufficient, as a matter of

17    law, to render his opinions admissible.  *NetFuel*, 2020 WL 1274985, at *7 (expert's assertions

18    that "various technical documents published by Defendant confirm the importance of [certain

19    features]" are insufficient because expert never explains how the statements in those documents

20    weighed in his evaluation).

21        Even for the few adjustments for which Dr. Keromytis does cite any specific evidence, he

22    fails to explain how that specific evidence supports his weights.  For example, ████████

23    ████████████████████████████████████████████

24    ████████████████████████████████████████████

25    ██████████████████████████████████████████████

26    ████████████████████████████████████████

27    ████████████████████  He then cites three deposition excerpts and a document—all

28    without any explanation whatsoever about how they support his weights.  This is "fatal" to his

analysis because, again, Dr. Keromytis "never explains how those statements weighed in his [percentage] evaluation[s]."  *NetFuel*, 2020 WL 1274985, at *7.

Dr. Keromytis's deposition testimony confirms that he applied an unsupported and arbitrary weighting scheme based on what he "felt" about the value of each feature.  For example, Dr. Keromytis states in his report that ███████████████████████████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████  (Keromytis Rpt. ¶ 493 (Ex. 1).)  When asked at deposition about this conclusory rationale, ████████████████████████████████████ ████████████████████

███████████████████████████████████████████
███████████████████████████████████████
██████████████████
███████████████████████████████████████████

(Keromytis Dep. Tr. at 232:3-14 (Ex. 7).)  In short, Dr. Keromytis defended this adjustment by stating that it "felt like" the right number based on, *inter alia*, his use of non-accused features in non-accused firewalls that are not at issue in this case.  Dr. Keromytis's *ipse dixit* application of his feelings is inadmissible because it "cannot be tested or subjected to peer review and publication, nor is there a known potential rate of error."  *GPNE*, 2014 WL 1494247, at *5 (cleaned up).

Dr. Keromytis's arbitrary adjustments, untethered to the accused products and facts of this case, are the very type of "plucked from thin air" apportionment conclusions that courts consistently reject.  For example, in *NetFuel*, a court in this District excluded an expert's opinions regarding the percentage contributions of certain features to the value of "security, reliability, and availability" of accused products.  2020 WL 1274985, at *8-9.  The court faulted the expert for relying on "vague notions about the Accused Features contribution to the 'security, reliability, and availability of the Accused Devices'" rather than "quantitative economic analysis."  *Id.*  The

1    court noted that the expert identified information about the importance of individual features but

2    failed to explain how that information factored into his apportionment percentage.  *Id.*

3        Dr. Keromytis's opinions suffer from the same deficiency: they are based on his "vague

4    qualitative notions" of the relative importance of each feature or sub-feature to some aspect of the

5    product.  In Dr. Keromytis's analysis, that aspect is the product's ███████████████████

6    ███████████████████████   (Keromytis Rpt. ¶ 492 (Ex. 1).)  Setting aside his lack of

7    expertise in assessing consumer demand, his opinions are inadmissible because Dr. Keromytis

8    provides no "quantitative economic analysis" to support them.  *NetFuel*, 2020 WL 1274985, at

9    *9.  And "he never explains how [the materials he reviewed] weighed in his . . . evaluation." *Id.*

10   at *7.  Accordingly, Dr. Keromytis's apportionment opinions should be excluded under Rule 702.

11   **II.    DR. MANESS'S OPINIONS ARE INADMISSIBLE**

12       Finjan's damages expert, Dr. Maness, purports to "calculate the reasonable royalty

13   damages that Finjan should receive if PAN is found to infringe the asserted claims of one or more

14   of the Patents at Issue."  (Maness Rpt. ¶ 11 (Ex. 6).)  To do this, he first calculates what he refers

15   to as an ███████████████████████████   (*Id.* ¶¶ 42-51, 14, 15, 17.)  He

16   then applies ████████████████████████████

17   ███████   But Dr. Maness's royalty base and royalty rate opinions fail to comply with Federal

18   Rule of Evidence 702 and should be excluded in full.

19       **A.    Dr. Maness's Royalty Base Opinions Are Inadmissible**

20       Dr. Maness's royalty base opinions are inadmissible and require exclusion of his damages

21   opinions because Dr. Maness: (1) relies on Dr. Keromytis's flawed apportionment analysis;

22   (2) fails to account for conventional and non-infringing components of features of the accused

23   PAN software; and (3) improperly includes hardware revenues as part of his royalty base.

24       **1.    Dr. Maness relies on Dr. Keromytis's flawed apportionment**

25       Dr. Maness relies on Dr. Keromytis's weighting scheme to apportion PAN's sales base.

26   (Maness Rpt. ¶¶ 49-55 (Ex. 6).) ████████████████████████████████████

27   ████████████████████████████████████████████████

28   ████████████████████████████████████████████████   (*Id.*

¶¶ 50-51.)  In performing these calculations, Dr. Maness adopts Dr. Keromytis's weighting scheme wholesale, without any adjustment or independent analysis.  Because Dr. Maness's damages opinions depend on Dr. Keromytis's inadmissible apportionment (Argument § I), they are also inadmissible and should be excluded in their entirety.  *See Finjan LLC v. SonicWall, Inc.*, 84 F.4th 963, 968, 975-77 (Fed. Cir. 2023) (affirming district court's decision striking Finjan's expert's damages analysis because it relied on a flawed apportionment analysis by Finjan's technical expert).

### 2.   Dr. Maness ignores the contribution of conventional and non-infringing components

The Federal Circuit "has consistently held that a reasonable royalty analysis requires a court to . . . carefully tie proof of damages to the claimed invention's footprint in the market place." *VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1327 (Fed. Cir. 2014) (internal quotations and citation omitted).  Thus, "damages awarded for patent infringement must reflect the 'value attributable to the infringing features of the product, and no more.'" *Contour IP Holding, LLC v. GoPro, Inc.*, No. 3:17-CV-04738-WHO, 2020 WL 5106845, at *11 (N.D. Cal. Aug. 31, 2020) (quoting *Commonwealth Sci. & Indus. Research Organisation v. Cisco Sys., Inc.*, 809 F.3d 1295, 1301 (Fed. Cir. 2015)).  Accordingly, the patent owner must "adequately and reliably apportion between the improved and conventional features of the accused product." *Omega Pats., LLC v. CalAmp Corp.*, 13 F.4th 1361, 1377 (Fed. Cir. 2021) (cleaned up); *see also Finjan v. SonicWall*, 84 F.4th at 976 ("The patentee must in every case give evidence tending to separate or apportion the patentee's damages between the patented feature and the unpatented features." (quoting *LaserDynamics*, 694 F.3d at 67 (cleaned up)).  As demonstrated below, Dr. Maness does not do this.

### a.   Failure to consider contribution of conventional and non-infringing components

Dr. Maness's methodology improperly awards Finjan damages for conventional and non-infringing components of features and sub-features that are allegedly "involved in" or "implicated by" PAN's infringement.  As discussed above (Argument § II.A.1), ████████████

██████████████████████████████████████████████████████████████

██████████ (*See* Maness Rpt. ¶¶ 49-55 (Ex. 6).)  But Dr. Keromytis does not attempt to exclude,

or even address, the conventional or non-infringing components of each feature or sub-feature.

Thus, for a feature or sub-feature purportedly "involved in" or "implicated by" the alleged

infringement of any patent, Dr. Maness awards damages for the *full value* of that feature or sub-

feature, without any consideration for the contribution of conventional or non-infringing

components of that feature.

Neither Dr. Keromytis nor Dr. Maness purport to address this issue in their expert reports,

and their deposition testimony confirms that they did not bother to account for conventional or

non-infringing components of the features and sub-features.  Dr. Keromytis confirmed that he did

not conduct any such apportionment:



(Keromytis Dep. Tr. at 206:10-17 (Ex. 7).)  And Dr. Maness confirmed in his deposition that he

simply applied Dr. Keromytis's relative weights.



(Maness Dep. Tr. at 77:9-17 (Ex. 8).)  Dr. Maness therefore has not shown, and cannot show, that

his proposed damages figure apportions out the conventional and non-infringing components of

the accused products.  Dr. Maness's apportionment opinions and damages calculations should

therefore be excluded.  *See Omega Pats.*, 13 F.4th at 1377-78 (holding that patentee "did not

present sufficient evidence to the jury to sustain its damages award" where it "failed to show the

1  incremental value that its patented improvement added to the [accused] product as apportioned

2  from the value of any conventional features").

3           **b.      Failure to consider the relative contributions of the
              '154 Patent and the three remaining patents**

4

5           Even if Dr. Maness or Dr. Keromytis determined that no components of any of the

6  features or sub-features other than those "involved in" using the claimed inventions contributed to

7  consumer demand (they did not), Dr. Maness's analysis still fails.  As Appendix G to the

8  Keromytis Report makes clear, the functionality associated with *several different patents*,

9  including the '154 Patent that Finjan has stipulated is not infringed, are identified as driving

10  demand for many of the very same features and sub-features.  But Dr. Maness does nothing to

11  apportion the relative contribution of these patents to features and sub-features that are allegedly

12  "involved in" or "implicated by" the alleged inventions of multiple different patents.  Rather, so

13  long as this or any other such feature is "involved in" or "implicated by" the infringement of *any*

14  asserted patent, he uses the full weight of the feature in calculating the royalty base.

15          The flaw in Dr. Maness's methodology is revealed by an example.  ▮▮▮▮▮▮

16  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

17  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

18  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

19  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

20

21

22

23

24

25

26

27

28



1

2

3

4

5 ███████████████████████████████ Of course, each patent cannot

6 be responsible for driving 100% of the demand for a particular feature or sub-feature.

7        The impact of this is not even dependent on a finding of non-infringement of any patent at

8 trial because Finjan has *already stipulated to non-infringement of the '154 Patent*. (*See* Dkt.

9 No. 292.) ████████████████████████████████████████████████

10 ████████████████████████████████████. But Finjan has

11 now stipulated that whatever alleged functionality of the '154 Patent Finjan's experts believed

12 was tied to Static Analysis does *not infringe*. Despite this stipulation of non-infringement of the

13 '154 Patent, ████████████████████████████████████████

14 ████████ ████████████████████████████████████

15 ████████████████████████████████████████████████

16 ████████████████████████████████.

17        The fundamental methodological flaw in Dr. Maness's analysis is similar to the flaw that

18 resulted in Finjan's damages expert being excluded in a previous case. *See Finjan, Inc. v.*

19 *Sophos, Inc.*, No. 14-cv-01197-WHO, 2016 WL 4268659 (N.D. Cal. Aug. 15, 2016). There,

20 Finjan's expert employed a flawed methodology that counted revenue attributable to certain

21 features multiple times when those features were covered by multiple patents. *Id.* at *3. Finjan's

22 counsel argued that the methodology was appropriate because the patents covered "overlapping

23 technologies." *Id.* at *4. The court rejected this argument, explaining that Finjan's patents "may

24 cover related and intermingled technologies, not identical ones" since later patents for identical

25 technologies "cannot be valid as a matter of law." *Id.* Thus, each patent allegedly infringed by a

26 given feature could not itself "add the full value of [the] feature to the [accused product]." *Id.*

27 The court provided the following explanation:

28

Under [the expert's] methodology, the total value of the threat engine feature does not change. In this example there are several logical possibilities: the '844 patent alone may contribute the full value of the threat engine feature, the '494 patent alone may contribute the full value of the threat engine feature, or some combination of technologies covered by both the '844 and '494 patents may together contribute the full value of the threat engine feature. However, what is not possible, as a matter of law and logic, is that the '844 and '494 patents' combined add more value to the threat engine feature than its total value. This is what [the expert's] report assumes by apportioning the value of the threat engine feature to both the '844 and '494 patents. This method assumes that both patents add the full value of that feature to the SAV Engine. As discussed, this is not possible under patent law; therefore this apportionment calculation is not a reliable methodology for calculating a reasonable royalty.

*Id.*

\*   \*   \*

Because Dr. Maness does not consider the contributions of conventional technologies and non-infringing components to the features and sub-features, his analysis is methodologically flawed, and his opinions are inadmissible. *See Omega Pats.*, 13 F.4th 1377-78 (holding that patentee "did not present sufficient evidence to the jury to sustain its damages award" where it "failed to show the incremental value that its patented improvement added to the [accused] product as apportioned from the value of any conventional features"); *Finjan v. Sophos*, 2016 WL 4268659, at \*4 (excluding expert opinion that improperly assumed that multiple patents add the full value of a given feature of a product).

### 3.   Dr. Maness improperly includes revenue from sales of conventional hardware

Dr. Maness wrongly includes hardware in the royalty base. ███████████████
██████████████████████████████████████████████████████████████
███████████████████████████████████████████████████ (Maness Rpt.
¶¶ 50-51 (Ex. 6).) ██████████████████████████████████████████
██████████████████████████████████████████████████████████████
████████████████████████████████████████████████████
██████████████████████ (*Id.* Exs. 3A-3O; *see also id.* ¶ 12 (██████████████
██████████████████████████).)

But the asserted claims require nothing more than generic, conventional hardware—to the extent they require hardware at all.  In fact, this should have been obvious to Dr. Maness based on his review of Finjan's technical expert reports.  ███████████████████████████████████████████████████████████████████████████████████████. (*See* Keromytis Rpt. ¶ 37 (Ex. 1); Jakobsson Report ¶ 131 (Ex. 4); Min Rpt. ¶ 146 (Ex. 5).)  ███████████████████████████████████████████████████████████████████████████████████████████

Dr. Maness's inclusion of hardware revenue in his royalty base renders his opinions inadmissible because Finjan is not entitled to damages based on generic, conventional features in the accused products.  *See, e.g.*, *VirnetX*, 767 F.3d at 1329 (expert's testimony was inadmissible where he "made no attempt to separate software from hardware, much less to separate the [accused] software from other valuable software components" and therefore did not "carefully tie proof of damages to the claimed invention's footprint in the market place" (citation omitted)); *Omega Pats.*, 13 F.4th at 1377-78 (explaining that a patentee is entitled only to the "incremental value that its patented improvement added to the [accused] product as apportioned from the value of any conventional features"); *Puff Corp. v. SHO Prod., LLC*, No. CV 22-2008-GW-KSx, 2024 WL 2208929, at *7 (C.D. Cal. Apr. 19, 2024) (excluding expert's apportionment opinions where expert failed to apportion between features covered by the asserted claims and unclaimed features like "batteries, circuit boards, features related to wireless connectivity, etc.").

**B.     Dr. Maness's Royalty Rate Opinions are Inadmissible**

Dr. Maness's royalty rate opinions are inadmissible and should be excluded because his opinion that Finjan has ███████████████████████████████████████████ is contrary to Federal Circuit precedent.  To the extent that Finjan now claims that these would have been negotiated rates (contrary to Dr. Maness's testimony), Dr. Maness fails to demonstrate that any of the Finjan agreements he relies on—none of which even require those rates—are technologically or economically comparable to this case.

1        **1.      Dr. Maness's opinion that Finjan has** ████████████
2              ████    **is contrary to Federal Circuit law**

3        Dr. Maness's opinion that Finjan had ███████████████████████████

4   ██████████████████████████ contradicts controlling Federal Circuit precedent and

5   renders his opinions inadmissible.

6        "[F]or a royalty to be 'established,' it 'must be paid by such a number of persons as to

7   indicate a general acquiescence in its reasonableness by those who have occasion to use the

8   invention.'" *Hanson v. Alpine Valley Ski Area, Inc.*, 718 F.2d 1075, 1078 (Fed. Cir. 1983)

9   (quoting *Rude v. Wesscott*, 130 U.S. 152, 165 (1889)).  "[M]ere offers to license" at a particular

10  rate do not show that rate to be "established."  *Id.* at 1078.  Likewise, offers made "after the

11  infringement had begun and litigation was threatened or probable should not be considered

12  evidence of an established royalty."  *Id.* at 1078-79 (cleaned up).

13  ████████████████████████████████████████████████████████

14  ████████████████████████████████████████████

15  ██████████████████████████████ (Maness Rpt. ¶ 69 (Ex. 6).)

16  ███████████████████████████████████████

17  ███████████████████████████████████████████

18  ███████████████████████████████

19  (*Id*. ¶ 157 (emphasis added).)[5]

20  ████████████████████████████████████████

21  ████████████████████████████████████████████████

22  ███████████████████████████. (*Id.* ¶ 153 & n.274.)  As an initial matter,

23  Maness's blind reliance on his client's statements is not a reliable methodology.  *CIT Grp./Bus.*

24  *Credit, Inc. v. Graco Fishing & Rental Tools, Inc.*, 815 F. Supp. 2d 673, 677 (S.D.N.Y. 2011)

25  (excluding expert whose opinions were based on his client's assumptions rather than his own

26  ─────────────────────────
        [5] *See also* ██████████████████████████████████

27  ████████████████████████████████████████████████

28  ████████████████████████████████████████████

1  independent analysis). ████████████████████████████████████████

2  █████████████████████████████████████████████████████

3  ██████████████████████████████████████████████ (Hartstein

4  Dep. Tr. 170:22-25 (Ex. 11.)). ████████████████████████████

5  ██████ (*Id.* at 178:1-3.)  In other words, the rates amounted to "mere offers," which are

6  insufficient to show that rates are established.  *Hanson*, 718 F.2d at 1078; *see also In re*

7  *Koninklijke Philips Pat. Litig.*, No. 18-CV-01885-HSG, 2020 WL 7398647, at *8 (N.D. Cal.

8  Apr. 13, 2020).

9  ████████████████████████████████████████████████

10 ████████████████████████████████████████████████

11 █████████████████████████████████████ "[p]ortfolio-wide license rates

12 are simply not a reasonable starting point for measuring the fair market value of an invention."  *In*

13 *re Koninklijke Philips Pat. Litig.*, No. 18-CV-01885-HSG, 2020 WL 7398647, at *9 (N.D. Cal.

14 Apr. 13, 2020).  Accordingly, Dr. Maness's opinion, ████████████████████████

15 is inadmissible and should be excluded.  *See, e.g., id.* at *9-10 (excluding damages expert opinion

16 based on alleged "established royalties" where expert failed to present evidence that royalty rates

17 enjoyed widespread acceptance from licensees).

18 █████████████████████████████████████████████

19 ████████████████████████████████████████████

20 (Maness Rpt. ¶¶ 70, 76, 156 (Ex. 6).)  But, as Finjan well knows, such conclusory claims fall far

21 short of establishing that any licensee agreed to pay ████████████████████████

22 ███████████████████████  The Federal Circuit has already rejected this analysis in Finjan's

23 case against Blue Coat:

24     Mr. Chaperot's testimony that an $8-per-user fee is 'consistent with' the 8-16%
       royalty rate established in *Secured Computing* is insufficient.  There is no

25     evidence to support Mr. Chaperot's conclusory statement that an 8-16% royalty
       rate would correspond to an $8 user fee.

26

27 *Finjan, Inc. v. Blue Coat Sys., Inc.*, 879 F3d. 1299, 1311-12 (Fed. Cir. 2018).

28

1    Dr. Maness's reliance on "█████████ in some of the agreements is also unavailing.

2    ████████████████████████████████████████████████████████████████████████

3    ███████████████████████████████████████████████ (Maness Rpt. ¶¶ 81,

4    83, 87, 90, 93, 99, 115, 117, 122, 125, Ex. 5A ████████████████████) (Ex. 6).)  But these

5    █████████████████████ have nothing to do with this case, which involves no such event.  Thus, to

6    the extent Dr. Maness bases his opinion upon these rates, his opinion is inadmissible because it is

7    not tied to the facts of this case.  *Cf. Uniloc*, 632 F.3d at 1318 (Fed. Cir. 2011) (rejecting

8    application of royalty that "had no relation to the facts of the case").

9    ████████████████████████████████████████████████████████████████

10    ████████████████████████████ those rates stem from a "rule of thumb" analysis in the

11    *Secure Computing* case that the Federal Circuit has specifically rejected.  The rates were based on

12    Secure Computing's operating profits and a "rule of thumb" profit split.  *See Finjan, Inc. v.*

13    *Secure Computing Corp.*, 626 F.3d 1197, 1209-1210 (Fed. Cir. 2010); *see also* Secure Computing

14    Trial Tr. at 636:19-637:18 ("I have utilized what is called a Profit Split Rule of Thumb.") (Ex. 9);

15    *see also id.* at 624:16-625:6, 626:2-20, 637:19-638:4.)  The Federal Circuit has since rejected the

16    use of such "rule of thumb" analyses as "fundamentally flawed."  *See Uniloc*, 632 F.3d at 1315.

17    In doing so, it identified the *Secure Computing* decision as reflecting the type of analysis it had

18    previously "passively tolerated."  *Id.* at 1314.  ████████████████████████

19    ███████████████████████████████████████████████████████████████████████████

20    ████████████████████████████████

21         **2.    Dr. Maness fails to establish that any of Finjan's past agreements is**
22              **technologically or economically comparable**

23    A party relying on license agreements to prove a reasonable royalty must establish that

24    they are technologically and economically comparable or, if not, "account for differences in the

25    technologies and economic circumstances of the contracting parties."  *VirnetX*, 767 F.3d at 1330

26    (quoting *Secure Computing*, 626 F.3d at 1211).  ████████████████████████

27    ██████████████████████████████████████████ he has not shown that those

28    licenses are technically or economically comparable to the license that would arise from a

1   hypothetical negotiation; nor has he accounted for the differences.

2       Regarding technological comparability, ███████████████████████████████

3   ████████████████████████████████████████████████████████████████████████

4   ██████████████████████████████████████████████████████████████████

5   ███████████████████████████████████ (Maness Rpt. ¶ 63 (Ex. 6).) ████████████

6   ████████████████████████████████████████████████████████. (*Id.* ¶ 63 n.86.)

7   But Dr. Maness cannot rely solely on Finjan's own self-serving statements regarding technical

8   comparability.  *See, e.g.*, *Ask Chems., LP v. Computer Packages, Inc.*, 593 Fed. App'x 506, 510-

9   11 (6th Cir. 2014) ("[An expert's] wholesale adoption of Plaintiff's estimates, without revealing

10  or apparently even evaluating the bases for those estimates, goes beyond relying on facts or data

11  and instead cloaks unexamined assumptions in the authority of expert analysis."); *CIT*, 815 F.

12  Supp. 2d at 677 ("Assumptions based on conclusory statements of the expert's client, rather than

13  on the expert's independent evaluation are not reasonable."); *King-Ind. Forge, Inc. v. Millennium

14  Forge, Inc.*, No. 1:07-CV-00341-SEB-DML, 2009 WL 3187685, at *2 (S.D. Ind. Sept. 29, 2009)

15  ("[W]hen an expert relies upon information given to him by a party or counsel, he must

16  independently verify that information before utilizing it in his calculations.").

17      But even ignoring that deficiency, ████████████████████████████████████████

18  █████████████████████████ does not establish technological comparability.  Once again, Finjan is

19  trying to slip through a flawed damages analysis that has already been rejected by a court.  In

20  *Finjan v. Blue Coat Systems*, Finjan argued that the patents at issue were technologically

21  comparable to the patents in *Secure Computing* because they were also in the

22  "computer security" field.  879 F.3d at 1312.  The Federal Circuit rejected that "surface similarity

23  [as] far too general to be the basis for a reasonable royalty calculation."  *Id.*; *see also*

24  *LaserDynamics*, 694 F.3d at 79 (Fed. Cir. 2012) ("alleging loose or vague comparability between

25  different technologies or licenses does not suffice"); *Adasa Inc. v. Avery Dennison Corp.*, 55

26  F.4th 900, 914-15 (Fed. Cir. 2022) (affirming exclusion of damages expert testimony where

27  expert opined merely that asserted patents and past licenses related to "RFID technology").

28      Dr. Maness's opinions about purported comparable agreements are also inadmissible

1   because he does not establish that the agreements are economically comparable to the agreement

2   that would have been negotiated here or account for their differences. ██████████████

3   ████████████████████████████████████████████████████████████████████████████

4   ████████████████ (Maness Rpt. ¶¶ 70, 76, 81, 84, 88, 91, 94, 96, 97, 100, 102, 105, 113,

5   116, 120, 123, 126, 129, 131, 133, 136, Ex. 5A (Ex. 6).) ███████████████████████████

6   ██████████████████████████████████ (*Id.* ¶ 84, Ex. 5A.) ███████████████

7   ████████████████████████████████████████████████ (*Id.* ¶ 105,

8   Ex. 5A).  But the license that would result from a hypothetical negotiation is limited to the three

9   remaining patents in this case.  Dr. Maness was thus required to account for the economic effect

10  of the additional patents in the purportedly comparable licenses.  He did not, and his reliance on

11  them renders his opinions inadmissible.  *Zimmer Surgical, Inc. v. Stryker Corp.*, 365 F. Supp. 3d

12  466, 495-96 (D. Del. 2019) (excluding damages expert testimony where expert failed to account

13  for past licenses including multiple patents in addition to those asserted); *DataQuill Ltd. v. High*

14  *Tech Comput. Corp.*, 887 F. Supp. 2d 999, 1023 (S.D. Cal. 2011) (excluding damages expert for

15  failing to establish economic comparability noting that a "worldwide license . . . for hundreds of

16  patents" appears to be "radically different" from the domestic two-patent license that would arise

17  from a hypothetical negotiation).

18                          <u>**CONCLUSION**</u>

19          For the foregoing reasons, PAN requests that the Court exclude the "apportionment"

20  analysis of Finjan's technical expert Dr. Angelos Keromytis, and to exclude in full the testimony

21  of Finjan's damages expert Dr. Robert Maness.

22

23

24

25

26

27

28

1   Dated:  September 11, 2024            */s/ Kyle W.K. Mooney*
2                                         Daralyn J. Durie (CA SBN 169825)
                                          DDurie@mofo.com
3                                         Timothy Chen Saulsbury (CA SBN 281434)
                                          TSaulsbury@mofo.com
4                                         Matthew I. Kreeger (CA SBN 153793)
                                          MKreeger@mofo.com
5                                         MORRISON & FOERSTER LLP
                                          425 Market Street
6                                         San Francisco, California 94105-2482
                                          Phone: (415) 268-7000
7                                         Fax: (415) 268-7522

8                                         Kyle W.K. Mooney (*Pro Hac Vice*)
                                          KMooney@mofo.com
9                                         Michael J. DeStefano (*Pro Hac Vice*)
                                          Mdestefano@mofo.com
10                                        MORRISON & FOERSTER LLP
                                          250 West 55th Street
11                                        New York, New York 10019-9601
                                          Phone: (212) 468-8000
12                                        Fax: (212) 468-7900

13                                        Rose S. Lee
                                          RoseLee@mofo.com
14                                        MORRISON & FOERSTER LLP
                                          707 Wilshire Boulevard
15                                        Los Angeles CA 90017-3543
                                          Phone: (213) 892-5200
16                                        Fax: (213) 892-5454

17                                        *Attorneys for Defendant*
                                          *PALO ALTO NETWORKS, INC.*
18

19

20

21

22

23

24

25

26

27

28