1  DARALYN J. DURIE (CA SBN 169825)
   DDurie@mofo.com
2  TIMOTHY CHEN SAULSBURY (CA SBN 281434)
   TSaulsbury@mofo.com
3  MATTHEW I. KREEGER (CA SBN 153793)
   MKreeger@mofo.com
4  MORRISON & FOERSTER LLP
   425 Market Street
5  San Francisco, California 94105-2482
   Telephone: (415) 268-7000 / Fax: (415) 268-7522
6
   *Attorneys for Defendant,*
7  *PALO ALTO NETWORKS, INC.*

8  *Additional counsel on signature page*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FINJAN LLC, | Case No. 3:14-CV-04908-RS |
| Plaintiff, | **PALO ALTO NETWORKS, INC.'S OPPOSITION TO FINJAN LLC'S MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| v. | |
| PALO ALTO NETWORKS, INC., | |
| Defendant. | Date: November 14, 2024<br>Time: 1:30 p.m.<br>Courtroom: 3, 17th Floor<br>Judge: Honorable Richard Seeborg |

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................................ ii
TABLE OF ABBREVIATIONS......................................................................................................... iv
INTRODUCTION ............................................................................................................................... 1
LEGAL STANDARD ......................................................................................................................... 1
ARGUMENT ...................................................................................................................................... 1
    I.     TREND MICRO AND CHECK POINT SYSTEMS ........................................................ 2
    II.    VICEd ............................................................................................................................... 4
    III.   PRIVOXY .......................................................................................................................... 5
    IV.   JANUS ............................................................................................................................... 7
CONCLUSION ................................................................................................................................... 8

**TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Abu-Lughod v. Calis*,
  No. CV 13-2792 DMG (RZX), 2015 WL 12746198 (C.D. Cal. May 20, 2015)...................... 6

*C.A. Inc. v. Simple.com, Inc.*,
  780 F. Supp. 2d 196 (E.D.N.Y. 2009) ............................................................................. 5

*Cellwitch, Inc. v. Tile, Inc.*,
  No. 19-cv-01315-JSW, 2023 WL 8813524 (N.D. Cal. Dec. 20, 2023) ................................... 7

*Ciampi v. City of Palo Alto*,
  790 F. Supp. 2d 1077 (N.D. Cal. 2011) ........................................................................ 5, 7

*Cincom Sys., Inc. v. Labware, Inc.*,
  No. 1:20-cv-83, 2024 WL 3926256 (S.D. Ohio Aug. 22, 2024) ............................................ 6

*Cornell Univ. v. Hewlett-Packard Co.*,
  No. 01-CV-1974, 2008 WL 11274580 (N.D.N.Y. May 14, 2008) ......................................... 7

*Fed. Deposit Ins. Corp. v. N.H. Ins. Co.*,
  953 F.2d 478 (9th Cir.1991)................................................................................... 1, 3

*Fraser v. Goodale*,
  342 F.3d 1032 (9th Cir. 2003)...................................................................................... 1

*In re Katz Interactive Call Processing Pat. Litig.*,
  639 F.3d 1303 (Fed. Cir. 2011)..................................................................................... 2

*Lone Star Tech. Innovations LLC v. ASUSTek Comput. Inc.*,
  No. 6:19-CV-00059-RWS, 2021 WL 12137506 (E.D. Tex. May 14, 2021)............................ 6

*Nigro v. Sears, Roebuck & Co.*,
  784 F.3d 495 (9th Cir. 2015)..................................................................................... 3, 4

*Rotec Indus., Inc. v. Mitsubishi Corp.*,
  215 F.3d 1246 (Fed. Cir. 2000).................................................................................... 3

*Safas Corp. v. Etura Premier, L.L.C.*,
  293 F. Supp. 2d 442 (D. Del. 2003).............................................................................. 3

*Scosche Indus., Inc. v. Visor Gear, Inc.*,
  121 F.3d 675 (Fed. Cir. 1997)..................................................................................... 3

# TABLE OF AUTHORITIES (Continued)

**Page(s)**

**Cases**

*Sea-Land Serv., Inc. v. Lozen Int'l, LLC*,
　285 F.3d 808 (9th Cir. 2002) ............................................................................................... 4

*Spillard v. Lien*,
　No. 19-CV-01407-JST, 2020 WL 7696079 (N.D. Cal. Dec. 28, 2020) ................................ 1

*Utherverse Gaming, LLC v. Epic Games, Inc.*,
　No. 2:21-cv-799-RSM-TLF, 2023 WL 9231334 (W.D. Wash. Dec. 26, 2023) ................... 6

**Other Authorities**

Fed. R. Civ. P. 56 .................................................................................................................... 1, 3

Fed. R. Evid.
　807 ........................................................................................................................................ 6
　901 ........................................................................................................................................ 6

**TABLE OF ABBREVIATIONS**

| Abbreviation | Description |
|---|---|
| "Chen Decl." | Declaration of John Chen in Support of Authenticity of Trend Micro, Inc's Documents and Source Code, dated December 23, 2022 |
| "Ewell Decl." | Declaration of Clinton Ewell, dated October 2, 2024 |
| "Ex.__" | Exhibits to the Declaration of Michael DeStefano in Support of Palo Alto Networks, Inc.'s Opposition to Finjan, LLC's Motion for Partial Summary Judgment, dated October 2, 2024 |
| "Invalidity Contentions" | Palo Alto Networks' Amended Invalidity Contentions and Related Disclosures Pursuant to Patent Local Rules 3-3 and 3-4 and Court's June 24, 2022 Order, dated January 28, 2022 |
| "Keromytis Rpt." | Rebuttal Expert Report of Angelos Keromytis, Ph.D., dated February 24, 2023 |
| "Mot." | Finjan LLC's Notice of Motion and Motion for Partial Summary Judgment of No Invalidity, dated September 11, 2024 (Dkt. No. 309) |
| "Rubin Rpt." | Opening Expert Report of Aviel Rubin Regarding Invalidty of the Asserted Patents, dated January 27, 2023 |
| "Rubin Dep. Tr." | Deposition Transcript of Dr. Aviel Rubin, dated March 17, 2023 |
| "Zegman Decl." | Declaration of Tamir Zegman in Support of Authenticity of Check Point Software Technologies, Ltd.'s Documents and Source Code, dated December 23, 2022 |

**INTRODUCTION**

If the Court grants PAN's pending motion for summary judgment of non-infringement of the remaining asserted patents, then Finjan's motion for partial summary judgment relating to public availability of prior art is moot and would not need to be decided.

If the Court must resolve Finjan's motion for partial summary judgment, then Finjan's motion fails on the merits because PAN can demonstrate that these systems were publicly available before the relevant priority dates. Finjan does not cast any doubt whatsoever on the authenticity of the source code, user manuals, or other documents that PAN relies on. Instead, Finjan misrepresents PAN's evidence and misinterprets evidentiary law. Finjan's motion should be denied.

**LEGAL STANDARD**

A party is entitled to summary judgment only if it establishes that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, "[t]he evidence must be viewed in the light most favorable to the nonmoving party, and inferences to be drawn from the facts must be viewed in a light most favorable to the nonmoving party." *Spillard v. Lien*, No. 19-CV-01407-JST, 2020 WL 7696079, at *4 (N.D. Cal. Dec. 28, 2020).

Declarations and affidavits setting forth admissible facts that create a genuine issue of fact are sufficient to defeat summary judgment. Fed. R. Civ. P. 56(c)(4). The focus at summary judgment is the admissibility of the facts and not the admissibility of the declaration or affidavit itself. *See Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003); *see also Fed. Deposit Ins. Corp. v. N.H. Ins. Co.*, 953 F.2d 478, 485 (9th Cir.1991) ("the nonmoving party need not produce evidence in a form that would be admissible at trial in order to avoid summary judgment" (citation and internal quotation omitted)). Applying this standard, Finjan's motion should be denied in its entirety.

**ARGUMENT**

Finjan contends that PAN cannot establish the "public availability" of six prior art systems: (1) Trend Micro's Applet Trap; (2) Trend Micro's VirusWall; (3) Check Point's

FireWall-1; (4) VICEd; (5) Privoxy; and (6) Janus. (Mot. at 6-7.)[1] But, as demonstrated below, PAN can present admissible evidence establishing that these systems were publicly available before the relevant priority dates. Finjan's motion should therefore be denied.

## I.   TREND MICRO AND CHECK POINT SYSTEMS

PAN can establish that Trend Micro's Applet Trap and VirusWall, and Check Point's FireWall-1, were offered for sale, sold, and publicly available before the relevant priority dates for the '633 Patent (*i.e.*, June 22, 2005) and '731 Patent (*i.e.*, May 3, 2004).

Trend Micro's Applet Trap and VirusWall systems are prior art to the '633 Patent. (Rubin Rpt. ¶ 496 (Ex. 1).) Trend Micro offered for sale and sold Applet Trap by no later than March 23, 1999, and all versions of Applet Trap that PAN relies on were available no later than June 1999. (*Id.*; Chen Decl. ¶¶ 9-11 (Ex. 2).) Trend Micro offered for sale and sold VirusWall no later than October 23, 1995, and all versions of Virus Wall that PAN relies on were available no later than April 9, 1996. (Rubin Rpt. ¶ 496 (Ex. 1); Chen Decl. ¶¶ 5, 8 (Ex. 2).) Accordingly, Trend Micro's Applet Trap and VirusWall are prior art to the '633 Patent. (Rubin Rpt. ¶ 496 (Ex. 1).) The availability, features, and functionality of these systems are evidenced by source code and technical documents produced to Finjan during discovery. John Chen, a Trend Micro employee, has submitted a declaration establishing that Trend Micro offered for sale and sold these systems before the relevant priority date, and that the source code and documents describing their features and functionality are authentic and are business records. (*See* Chen Decl. ¶¶ 4-13 (Ex. 2).)

Check Point's FireWall-1 is prior art to the '731 Patent. (Rubin Rpt. ¶ 269 (Ex. 1).) Check Point offered for sale and sold FireWall-1 no later than September 1997. (*Id.* ¶ 269; Zegman Decl. ¶¶ 6-9 (Ex. 3).) Accordingly, Check Point's FireWall-1 is prior art to the '731 Patent. (Rubin Rpt. ¶ 269 (Ex. 1).) The availability, features, and functionality of this system are evidenced by source code and technical documents produced to Finjan during discovery. Tamir

---

[1] The parties dispute the relevant priority dates for the asserted claims of the '633 and '731 Patents. But Finjan does not raise this dispute in its motion and does not present any evidence that it is entitled to the filing dates of any parent applications. *See In re Katz Interactive Call Processing Pat. Litig.*, 639 F.3d 1303, 1322 (Fed. Cir. 2011). In responding to Finjan's motion, PAN has therefore relied on the filing dates of the applications for the '633 and '731 Patents.

1  Zegman, a Check Point employee, has submitted a declaration establishing that Check Point
2  offered for sale and sold FireWall-1 by the relevant priority date, and that the source code and
3  documents describing its features and functionality are authentic and are business records.
4  (Zegman Decl. ¶¶ 4-9 (Ex. 3).)

5  Finjan contends that the declarations of John Chen and Tamir Zegman are "out of court
6  statements offered by PAN to prove the truth of the matter asserted" and cannot be used to defeat
7  its summary judgment motion. (Dkt. No. 309 at 7.) Rule 56, however, expressly provides that a
8  declaration may be used to defeat summary judgment. Fed. R. Civ. P. 56(c)(1) (party may show
9  genuine dispute by "citing to particular parts of materials in the record, including . . . affidavits or
10 declarations"). The case law is in accord. *See, e.g.*, *Nigro v. Sears, Roebuck & Co.*, 784 F.3d
11 495, 497-498 (9th Cir. 2015) (declaration submitted in opposition to summary judgment
12 sufficient to create genuine issue of material fact); *Fed. Deposit*, 953 F.2d at 485 ("the
13 nonmoving party need not produce evidence in a form that would be admissible at trial in order to
14 avoid summary judgment" (citation and internal quotation omitted)).

15 In fact, even Finjan's cases confirm that declarations may be so used. Two of Finjan's
16 cases stand for the unremarkable proposition that *hearsay statements included within a*
17 *declaration* cannot be relied on to defeat summary judgment. *See Rotec Indus., Inc. v. Mitsubishi*
18 *Corp.*, 215 F.3d 1246, 1255-57 (Fed. Cir. 2000) (plaintiff relying on truth of third-party
19 statements recited in declaration); *Scosche Indus., Inc. v. Visor Gear, Inc.*, 121 F.3d 675, 680-81
20 (Fed. Cir. 1997) (same). And in *Safas Corp. v. Etura Premier, L.L.C.*, 293 F. Supp. 2d 442, 444-
21 447 (D. Del. 2003), the district court merely held that inadmissible documents could not be relied
22 on to defeat summary judgment. By contrast, Messrs. Chen and Zegman set forth admissible
23 facts of which they have personal knowledge and could testify to at trial.

24 Finally, Finjan's argument that it will suffer "unjust prejudice" (Mot. at 8) is unavailing.
25 Finjan knew that PAN intended to rely on Trend Micro's Applet Trap and VirusWall since July
26 2015 when PAN served a subpoena on Trend Micro. (Ex. 4.) By August 2015, PAN began
27 producing Trend Micro documents to Finjan. (*See, e.g.*, Ex. 5.) PAN then supplemented its
28 initial disclosures to add Trend Micro (noting these systems) in April 2021, after the Court lifted

the IPR stay. (Ex. 6 at 8.) Finjan's expert also reviewed the Trend Micro source code. (Keromytis Rpt. ¶ 6 (Ex. 7).)

Finjan has also been aware of Check Point's FireWall-1 for several years. PAN supplemented its initial disclosures to add Check Point (noting FireWall-1) in April 2021. (Ex. 6 at 8.) At about that time, PAN requested that Finjan produce prior art documents from prior litigations, including documents concerning FireWall-1 that Finjan obtained from Check Point in its patent infringement litigation against Check Point (in which Check Point asserted Fire Wall-1 as prior art).[2] (Ex. 8; Ex. 9.) After Finjan confirmed that its counsel had destroyed these documents, PAN obtained them from Check Point and provided them to Finjan on a rolling basis. (Ex. 10.)

Finjan was also aware of the declarations at issue here. On November 28, 2022, nearly a month before the fact discovery cutoff, PAN told Finjan that it was preparing a declaration from a Trend Micro witness and sought Finjan's consent for that declaration in lieu of a deposition. (Ex. 11.) Finjan agreed. (*Id.*) PAN similarly provided a declaration from a Check Point witness, consistent with the parties' agreement for Trend Micro. (Ex. 12.) If Finjan wanted a deposition of either Trend Micro or Check Point, it could have sought it before the scheduled close of fact discovery, or sought a short extension of fact discovery to complete the depositions. It did not. In any event, the parties have agreed that trial depositions may be permitted for non-party witnesses, including these witnesses, upon a showing of good cause. (Ex. 13.) Finjan can also cross-examine any Trend Micro or Check Point witness who testifies at trial. But at this stage, the declarations of Messrs. Chen and Zegman suffice to defeat summary judgment. *Nigro*, 784 F.3d at 497-498; *Sea-Land Serv., Inc. v. Lozen Int'l, LLC*, 285 F.3d 808, 819 (9th Cir. 2002).

## II.     VICEd

"VICEd" is a prior art system described in Jieh-Shen Lee, *et al.* "A Generic Virus Detection Agent on the Internet" from *Proceedings of the Thirtieth Annual Hawaii International Conference on System Sciences* (1997) (the "VICEd Guide"). (Rubin Rpt. ¶ 77 (Ex. 1).) The

---

[2] *Finjan, Inc. v. Check Point Software Techs., Inc.*, No. 3-18-cv-02621 (N.D. Cal.).

1  VICEd Guide, dated January 1997, describes the VICEd system in existence at that time, *i.e.*,
2  before the priority date of the '731 Patent (May 3, 2004.)  (*Id.* ¶ 260.)

3  Rachel J. Watters, a librarian at the Madison Wisconsin Memorial Library, states that the
4  VICEd Guide is authentic and was accessible in the library by no later than 1998.  (*Compare*
5  Watters Decl. at 1 (Ex. 14) (attesting that Exhibit A to the declaration is a true and accurate copy
6  of a document) *to* Ex. 15 (the document relied upon by Dr. Rubin in forming his invalidity
7  opinions).)  Accordingly, the VICEd Guide is authentic, was publicly available before the priority
8  date, and supports that the described VICEd system itself was available before the priority date.

9  In addition, the VICEd Guide alone, as a *printed publication*, also invalidates the asserted
10 claims of the '731 Patent on its own terms.  (Invalidity Contentions at 9-10 (Ex. 16) (reserving
11 right in invalidity contentions to rely on underlying document describing the VICEd system as a
12 printed publication); *see also* Rubin Rpt. ¶ 269 (Ex. 1).)  *See Ciampi v. City of Palo Alto*, 790
13 F. Supp. 2d 1077, 1091 (N.D. Cal. 2011) ("…insofar as they are offered as evidence of
14 publication, the articles are not hearsay because they are not offered to prove the truth of the
15 statements contained therein").

16 **III.    PRIVOXY**

17 Privoxy is "an open-source web proxy which utilizes a content scanner to parse a
18 malicious file and identify 'annoyances.'"  (Rubin Rpt. ¶ 80 (Ex. 1).)  As evidence of Privoxy,
19 PAN relies on Privoxy's version 3.0.3 source code and user manual.  (*Id.* ¶ 432.)  Privoxy version
20 3.0.3 was released in January 2004, making it prior art to the '408 Patent, which the parties agree
21 is entitled to a priority date of no earlier than August 30, 2004.  (*Id.* ¶¶ 426, 432.)

22 Dr. Rubin relies on the Privoxy version 3.0.3 source code hosted at an open-source
23 depository located at https://sourceforge.net/projects/ijbswa/files/.  (*Id.* ¶ 432.)  The source code
24 includes revision dates on and before January 30, 2004.  (*See, e.g.* Ex. 17 (showing a last revision
25 date of January 30, 2004); Ex. 18 (showing last revision date of December 3, 2003); Ex. 19
26 (showing last revision date of November 11, 2003).)[3]  PAN can establish that the Privoxy source

---

[3] Dr. Rubin can also provide corroborating testimony regarding the metadata contained within the Privoxy user manual and source code, showing that its "modified" dates correspond to no later than January 30, 2004, as shown in Ex. 27.  *C.A. Inc. v. Simple.com, Inc.*, 780 F. Supp. 2d

code is authentic and that Privoxy was available by the revision dates indicated on the source code.

The Privoxy source code and corroborating user manual are authentic. The source code and user manual appear to be Privoxy source code and a Privoxy user manual and are in a condition that creates no suspicion about their authenticity. Moreover, Dr. Rubin located the source code and user manual in a place where, if authentic, they would likely be: the official Privoxy website (www.privoxy.org) directs the user to the sourceforge website (https://sourceforge.net/projects/ ijbswa/files/) that hosted the source code and user manual (*See* Rubin Rpt. ¶ 432 (Ex. 1); Ex. 20.) In addition, the source code and user manual include dates on and before January 30, 2004. Accordingly, the source code and user manual are authentic under Federal Rule of Evidence 901(a). *See Cincom Sys., Inc. v. Labware, Inc.*, No. 1:20-cv-83, 2024 WL 3926256, at *6 (S.D. Ohio Aug. 22, 2024) (testimony of expert that he obtained software manual from online source adequate to establish authenticity). The source code and user manual also may be considered "ancient documents" under Federal Rule of Evidence 901(b)(8).[4]

The Privoxy source code and user manual are also admissible under the residual hearsay exception. *See* Fed. R. Evid. 807(a). The Privoxy source code is the most probative source for how the Privoxy system operates because as source code, it defines the operation of the product. Moreover, the fact that the source code was located on a page redirected from the Privoxy website, and that there are no obvious errors in the source code, corroborates its trustworthiness. Courts have admitted source code as evidence under similar circumstances. *See Lone Star Tech. Innovations LLC v. ASUSTek Comput. Inc.*, No. 6:19-CV-00059-RWS, 2021 WL 12137506, at *2-3 (E.D. Tex. May 14, 2021) (admitting source code under Fed. R. Evid. 807 where party seeking to exclude could not show evidence of untrustworthiness); *Utherverse Gaming, LLC v.*

---

196, 223-226 (E.D.N.Y. 2009) (authenticating digital material based on last modified date metadata, finding such metadata "analogous to a mechanical punch card").

[4] The above is sufficient to establish that Privoxy was publicly available before the priority date of the '408 Patent, but PAN also has submitted a declaration from an employee of the Internet Archive establishing that the relevant pages of the Privoxy user manual were posted on a Privoxy web page (www.privoxy.org) by no later than February 13, 2004. (Ex. 21.) *See, e.g., Abu-Lughod v. Calis*, No. CV 13-2792 DMG (RZX), 2015 WL 12746198, at *3 (C.D. Cal. May 20, 2015).

*Epic Games, Inc.*, No. 2:21-cv-799-RSM-TLF, 2023 WL 9231334, at *4-5 (W.D. Wash. Dec. 26, 2023) (denying motion to exclude expert's reliance on third-party source code because party seeking to exclude did not identify lack of trustworthiness in the source code or identify any concerning issues with source code production).

### IV.   JANUS

Janus was created by David A. Wagner in 1999, as shown in his master's thesis "Janus: an approach for confinement of untrusted applications" from the University of California, Berkeley ("Janus Manuscript"). (Rubin Rpt. ¶ 496 (Ex. 1).) Dr. Rubin has explained that he attended the conference where Mr. Wagner described Janus. (Rubin Dep. Tr. at 380:25-382:19 (Ex. 22).)

PAN has established the authenticity of the Janus Manuscript. (Ewell Decl. (Ex. 23).) PAN also will introduce evidence that Janus as described in the Janus Manuscript was publicly available before June 22, 2005. In addition to the 1999 Janus Manuscript and conference, the Janus System is described in a 2001 European patent application. (Ex. 24 at [0011].) *Cf. Cornell Univ. v. Hewlett-Packard Co.*, No. 01-CV-1974, 2008 WL 11274580, at *7 (N.D.N.Y. May 14, 2008) (finding evidence that document had been accessed by individuals in the public by a certain point evidenced public accessibility). Finjan has also conceded that Janus is relevant to its technology, having cited the Janus Manuscript during prosecution of a patent application related to the '633 Patent. (Ex. 25 (citing Janus Manuscript on the face of U.S. Patent No. 10,552,603, assigned to Finjan LLC by '633 Patent inventors Yigal Edery, Nimrod Vered and David Kroll); Ex. 26 at 45 (listing Janus Manuscript on Information Disclosure Statement).)

Finally, even if PAN could not rely on Janus as an invalidating prior art system, PAN would rely on the Janus Manuscript as a prior art printed publication in combination with Trend Micro's Applet Trap or VirusWall. (Ex. 16 at 22-23; *see also* Rubin Rpt. ¶ 496 (Ex. 1).) In that case, PAN would rely on the Janus Manuscript solely for its disclosure and not for the truth of the statements contained therein. *See Ciampi*, 790 F. Supp. 2d at 1091.[5] Finjan cannot claim

---

[5] PAN is estopped, based on the prior IPR, from relying on the Janus Manuscript alone as a printed publication, but can rely on it as a secondary reference in combination with system prior art that could not be raised before the PTAB. *Cellwitch, Inc. v. Tile, Inc.*, No. 19-cv-01315-JSW, 2023 WL 8813524, at * 3-4 (N.D. Cal. Dec. 20, 2023) (holding combinations of system prior art and printed publications not barred by IPR estoppel).

prejudice because Finjan was able to review the Janus Manuscript and Finjan's technical expert considered it as a printed publication and fully addressed it in his expert report. (*See, e.g.*, Keromytis Rpt. ¶ 63.)

## CONCLUSION

For the foregoing reasons, PAN respectfully requests that the Court deny Finjan's motion for partial summary judgment.

Dated: October 2, 2024

/s/ Kyle W.K. Mooney
Daralyn J. Durie (CA SBN 169825)
DDurie@mofo.com
Timothy Chen Saulsbury (CA SBN 281434)
TSaulsbury@mofo.com
Matthew I. Kreeger (CA SBN 153793)
MKreeger@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Phone: (415) 268-7000
Fax: (415) 268-7522

Kyle W.K. Mooney (*Pro Hac Vice*)
KMooney@mofo.com
Michael J. DeStefano (*Pro Hac Vice*)
Mdestefano@mofo.com
MORRISON & FOERSTER LLP
250 West 55th Street
New York, New York 10019-9601
Phone: (212) 468-8000
Fax: (212) 468-7900

Rose S. Lee
RoseLee@mofo.com
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles CA 90017-3543
Phone: (213) 892-5200
Fax: (213) 892-5454

*Attorneys for Defendant*
*PALO ALTO NETWORKS, INC.*