Juanita R. Brooks (CA SBN 75934) / brooks@fr.com
Roger A. Denning (CA SBN 228998) / denning@fr.com
Frank J. Albert (CA SBN 247741) / albert@fr.com
Jared A. Smith (CA SBN 306576) / jasmith@fr.com
Tyler R. Train (CA SBN 318998) / train@fr.com
Elliot N. Scher (CA SBN 343705) / scher@fr.com
FISH & RICHARDSON P.C.
12860 El Camino Real, Suite 400
San Diego, CA 92130
Telephone: (858) 678-5070 / Fax: (858) 678-5099

Susan E. Morrison (*Pro Hac Vice*) / morrison@fr.com
FISH & RICHARDSON P.C.
222 Delaware Avenue, 17th Floor
P.O. Box 1114
Wilmington, DE 19801
Telephone: (302) 652-5070 / Fax: (302) 652-0607

*Additional counsel listed on signature page*

Attorneys for Plaintiff,
FINJAN LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

(SAN FRANCISCO DIVISION)

| | |
|---|---|
| FINJAN LLC,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>PALO ALTO NETWORKS, INC.,<br><br>　　　　　Defendant. | Case No. 3:14-cv-04908-RS<br><br>**FINJAN LLC'S REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT OF NO INVALIDITY**<br><br>Date:　November 14, 2024<br>Time:　1:30 P.M.<br>Hon. Richard Seeborg<br>Ctrm. 3, 17th Floor |

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................................... 1

II.     LEGAL STANDARD ............................................................................................. 1

III.    ARGUMENT ......................................................................................................... 3

      A.      Trend Micro and Check Point Systems.............................................. 3

      B.      VICEd .................................................................................................. 5

      C.      Privoxy ................................................................................................ 7

      D.      Janus .................................................................................................... 9

IV.     CONCLUSION ..................................................................................................... 11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ciampi v. City of Palo Alto*,
  790 F.Supp.2d 1077 (N.D. Cal. May 11, 2011) ................................................................ 6, 7

*Cornell Univ. v. Hewlett-Packard Co.*,
  No. 01-CV-1974, 2008 WL 11274580 (N.D.N.Y. May 8, 2008) .......................................... 10

*Fed. Deposit Ins. Corp. v. New Hampshire Ins. Co.*,
  953 F.2d 478 (9th Cir. 1991) ............................................................................................ 2

*Fong v. Am. Airlines, Inc.*,
  626 F.2d 759 (9th Cir. 1980) ............................................................................................ 8

*Fraser v. Goodale*,
  342 F.3d 1032 (9th Cir. 2003) ................................................................................. *passim*

*In re Hall*,
  781 F.2d 897 (Fed. Cir. 1986) .......................................................................................... 6

*Lone Star Tech. Innovations LLC v. ASUSTek Comput. Inc.*,
  No. 6:19-CV-00059-RWS, 2021 WL 12137506 (E.D. Tex. May 14, 2021) ........................... 9

*Nigro v. Sears, Roebuck and Co.*,
  784 F.3d 495 (9th Cir. 2015) ............................................................................................ 2

*Orr v. Bank of Am.*,
  285 F.3d 764 (9th Cir. 2002) ............................................................................................ 3

*Safas Corp. v. Etura Premier, LLC*,
  293 F.Supp.2d 442 (D. Del. Nov. 12, 2003) .............................................................. *passim*

*Scosche Indus. v. Visor Gear Inc.*,
  121 F.3d 675 (Fed. Cir. 1997) ................................................................................. *passim*

*United Tech. Corp. v. Mazer*,
  556 F.3d 1260 (11th Cir. 2009) ......................................................................................... 8

*Utherverse Gaming, LLC v. Epic Games, Inc.*,
  No. 2:21-cv-799-RSM-TLF, 2023 WL 9231334 (W.D. Wash. Dec. 26, 2023) ...................... 8

**Statutes**

35 U.S.C. § 102(b) ............................................................................................................ 6

1

**Other Authorities**

Fed. R. Civ. P. 45(c)(1) ........................................................................................................ 4, 6

Fed. R. Civ. P. 56 ..................................................................................................................... 1

Fed. R. Civ. P. 56(a) ................................................................................................................ 1

Fed. R. Civ. P. 56(c)(1) ........................................................................................................... 1

Fed. R. Civ. P. 56(c)(1)(B) ...................................................................................................... 1

Fed. R. Civ. P. 56(c)(4) ........................................................................................................... 1

Fed. R. Evid. 801-807 .............................................................................................................. 2

Fed. R. Evid. 801(c) ..................................................................................................... 2, 3, 5, 7

Fed. R. Evid. 807 ..................................................................................................................... 8

Fed. R. Evid. 807(a)(2) ......................................................................................................... 8, 9

Fed. R. Evid. 901 ..................................................................................................................... 2

Fed. R. Evid. 901(a) ................................................................................................................ 2

Fed. R. Evid. 902 ..................................................................................................................... 6

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.     INTRODUCTION

PAN's opposition not only confirms that PAN cannot put forth any admissible evidence demonstrating the public availability of its alleged system references, but also underlines the obfuscation PAN has employed throughout this case. Finjan's motion described the absence of admissible evidence put forth on public availability and emphasized the unfair prejudice of PAN attempting to rely on untimely hearsay evidence.  PAN produced declarations from Trend Micro and Check Point employees on the final day of fact discovery despite being aware of the relevant systems for years. Now, to further compound the prejudice, PAN attaches two never-before-seen declarations purportedly supporting the public availability of the alleged VICEd and Privoxy systems. Further, for the first time, PAN suggests that it will rely on its technical expert to provide factual testimony regarding the availability of the alleged Janus system after failing to disclose such reliance during fact discovery. But PAN should not be rewarded for its discovery misconduct—it was required to disclose the admissible evidence it would rely on and failed to do so during fact discovery.  Further, as explained below, PAN cannot demonstrate how any of the relied-upon evidence for each alleged system's public availability can be presented in an admissible form at trial. Therefore, as a matter of law, Finjan is entitled to summary judgment of no invalidity with respect to the Trend Micro systems (Applet Trap and Virus Wall), Check Point system (Check Point Firewall-1), VICEd system, Privoxy system, and Janus system.

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 56 requires that a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(a). A party opposing a motion for summary judgment may cite to declarations for support. Fed. R. Civ. P. 56(c)(1), 56(c)(4). However, any declaration used to oppose a motion for summary judgment must "set out facts that would be admissible in evidence." Fed. R. Civ. P. 56(c)(4); *see also* Fed. R. Civ. P. 56(c)(1)(B) (a party asserting that a fact cannot be genuinely disputed may "show[]… that an adverse party cannot produce admissible evidence to support the fact"). The case law is clear, including PAN's cited case, *Fraser*, that a declaration may only be used to oppose a motion for summary judgment

1   if its "contents could be presented in an admissible form at trial." *Fraser v. Goodale*, 342 F.3d

2   1032, 1037 (9th Cir. 2003); *see also, e.g.*, *Safas Corp. v. Etura Premier, LLC*, 293 F.Supp.2d 442,

3   446 (D. Del. Nov. 12, 2003) (holding that hearsay could not be considered on a motion for

4   summary judgment because "the proponent of the evidence has not indicated… how it might

5   overcome a hearsay objection at trial"); *Scosche Indus. v. Visor Gear Inc.*, 121 F.3d 675, 681 (Fed.

6   Cir. 1997) (collecting cases holding that hearsay should be disregarded in a Court's review of a

7   summary judgment motion). PAN seems to agree on this point. *See* Opp. at 3 (agreeing that the

8   caselaw "stand[s] for the unremarkable proposition that *hearsay statements included within a*

9   *declaration* cannot be relied on to defeat summary judgment") (emphasis in original).

10      PAN cites two other cases on this issue, *Fed. Deposit* and *Nigro*. Opp. at 1, 3. But neither

11   suggest a different result. **First**, *Fed. Deposit* stands for the straightforward proposition, also held

12   in *Fraser*, that at the summary judgment phase, the focus is not on "the admissibility of the

13   evidence's form," but rather "the admissibility of its contents." *Compare Fraser*, 342 F.3d at

14   1036-37 *with Fed. Deposit Ins. Corp. v. New Hampshire Ins. Co.*, 953 F.2d 478, 485 (9th Cir.

15   1991) ("the nonmoving party need not produce evidence '***in a form*** that would be admissible at

16   trial in order to avoid summary judgment'") (emphasis added). Moreover, *Fed. Deposit* is

17   inapposite because, there, the movant failed to object to the admission of the relevant evidence. *Id.*

18   at 485. **Second**, *Nigro* is inapposite because (1) no hearsay objection was raised, and (2) the

19   plaintiff's own declaration and deposition testimony were at issue, the contents of which could be

20   presented in an admissible form since the declarant was a party available to testify at trial. *Nigro v.*

21   *Sears, Roebuck and Co.*, 784 F.3d 495, 498 (9th Cir. 2015).

22      For evidence to be admissible, it must satisfy the Federal Rules of Evidence, which include

23   rules of authenticity (*e.g.*, Fed. R. Evid. 901) and the rules against hearsay (Fed. R. Evid. 801-

24   807). Hearsay is "a statement that (1) the declarant does not make while testifying at the current

25   trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the

26   statement." Fed. R. Evid. 801(c). Meanwhile, to authenticate evidence, "the proponent must

27   produce evidence sufficient to support a finding that the item is what the proponent claims it is."

28   Fed. R. Evid. 901(a). These are independent rules, and evidence must be both authentic and not

1   hearsay (or subject to an exception to the rules against hearsay), in order to be admissible. *See,*

2   *e.g.*, *Orr v. Bank of Am.*, 285 F.3d 764, 778-779 (9th Cir. 2002) (holding that authenticated

3   exhibits were nevertheless hearsay and therefore inadmissible).

4   **III.    ARGUMENT**

5        **A.    Trend Micro and Check Point Systems**

6        PAN presents no non-hearsay evidence regarding the public availability of the alleged

7   Trend Micro and Check Point systems, and so a finding of summary judgment of no invalidity is

8   warranted with respect to the Applet Trap, Virus Wall, and Check Point Firewall-1 systems.

9        To support its contention that the alleged Trend Micro and Check Point systems were

10  available before the filing dates for the Asserted Patents, PAN points to (1) a declaration from

11  John Chen, a Trend Micro employee ("Chen Declaration"), (2) a declaration from Tamir Zegman,

12  a Check Point employee ("Zegman Declaration"), and (3) source code and technical documents

13  produced by third-parties Trend Micro and Check Point. Opp. at 2-4. This evidence is

14  inadmissible hearsay, in that they each comprise out-of-court statements offered for the truth of

15  the matter asserted (*i.e.*, the date of public availability of the alleged Trend Micro and Check

16  systems). *See* Fed. R. Evid. 801(c). Further, none of this evidence can defeat summary judgment,

17  as explained below.

18       With respect to the Chen and Zegman declarations, PAN's process of disclosure was a

19  ploy to deprive Finjan of discovery on the veracity of the hearsay statements and should not be

20  considered in opposing summary judgment.  Despite knowing that it would disclose declarations

21  from Messrs. Chen and Zegman, PAN failed to disclose that it intended to rely on those

22  individuals for any relevant fact in this case.  Instead, PAN worked to secure those declarations

23  without disclosing that fact to Finjan until producing those declarations on the last day of

24  discovery when it was too late to seek discovery.  This litigation-by-ambush tactic cannot defeat

25  summary judgment.

26       Further, neither the Chen Declaration nor the Zegman Declaration can defeat summary

27  judgment because PAN has not shown that the hearsay statements in either declaration will be

28  presented in an admissible form at trial. *See, e.g.*, *Fraser*, 342 F.3d at 1037; *Scosche*, 121 F.3d at

681; *Safas*, 293 F.Supp.2d at 446. For example, PAN does not make any representation that Messrs. Chen or Zegman will be testifying at trial regarding the public availability of the alleged Trend Micro and Check Points systems, respectively, and instead suggests that "Messrs. Chen and Zegman set forth admissible facts of which they have personal knowledge and ***could testify to at trial***." *See* Opp. at 3 (emphasis added). Even if PAN did intend to serve Mr. Zegman with a trial subpoena, his testimony could not be compelled under Fed. R. Civ. P. 45(c)(1), as he is located across the world in Tel Aviv, Israel, more than 100 miles from this Court. *See* Opp., Ex. 3 at 3. In addition, even if PAN did intend to serve trial subpoenas on Messrs. Chen and Zegman, and they planned to testify, PAN should be precluded from relying on such testimony for the reasons explained in Finjan's motion. *See* Mot. at 7-8. Further, PAN would be violating the parties' agreement (*see* Opp., Ex 13) because (1) PAN did not identify Messrs. Chen and Zegman in its initial disclosures,[1] (2) Finjan did not have the opportunity to depose them during fact discovery, and (3) PAN has not shown good cause for producing their declarations on the last day of fact discovery. Opp., Ex. 6 at 8; Opp., Ex. 13.

PAN's reliance on its November 28, 2022 correspondence with Finjan, a month before the close of fact discovery, only highlights the impropriety of PAN's late-produced declarations. Opp. at 4. In the parties' correspondence, PAN represented that it was seeking a "stipulation allowing for all documents and source code produced by Trend Micro ***to be authenticated by declaration in lieu of a deposition***." Opp., Ex. 12 at 3 (emphasis added). It was not until the last day of fact discovery, that PAN surprised Finjan with the Chen and Zegman Declarations, filled with statements directed to public availability and hearsay exceptions. *See generally* Opp., Exs. 2, 3. Without testimony from Messrs. Chen or Zegman at trial, the statements in their declarations remain hearsay that cannot be presented in an admissible form at trial, and therefore should be

---

[1] In its initial disclosures, PAN only identifies "Trend Micro, Inc." and "Check Point Software Technologies, Ltd." generally. Opp., Ex. 6 at 8. Further, PAN only designated each third-party as testifying regarding the "[d]esign, structure, and operation of" the alleged Trend Micro and Check Point systems, respectively. *Id.* at 8. PAN provided no disclosure that any testimony would be provided by Trend Micro or Check Point regarding the public availability of these systems. *Id.* at 8.

1  disregarded. *See, e.g.*, *Fraser*, 342 F.3d at 1037; *Scosche*, 121 F.3d at 681; *Safas*, 293 F.Supp.2d at

2  446.

3          Beyond the Chen and Zegman Declarations, PAN also relies on dates referenced in Trend

4  Micro and Check Point documents. But such evidence is also inadmissible hearsay, and so it

5  cannot preclude a finding of summary judgment with respect to these references. *See* Mot. at 6-7

6  (citing cases holding that uncorroborated dates printed on documents cannot preclude summary

7  judgment of no public availability).

8          Because PAN has presented no admissible evidence supporting the public availability of

9  the alleged Trend Micro and Check Point systems, which it must prove by clear and convincing

10 evidence, Finjan is entitled to summary judgment of no invalidity with respect to these references.

11         **B.      VICEd**

12         PAN presents no non-hearsay evidence regarding the public availability of the alleged

13 VICEd system, and so a finding of summary judgment of no invalidity is warranted with respect to

14 this reference.

15         To support its claim of the alleged VICEd system's public availability, PAN only points to

16 (1) a declaration from Rachel J. Watters, a librarian at the Madison Wisconsin Memorial Library,

17 which PAN has just now produced nearly two years after the close of fact discovery, and (2) the

18 printed date on the VICEd guide. Opp. at 4-5. Both are hearsay, in that they are out-of-court

19 statements offered for the truth of the matter asserted (*i.e.*, the date of public availability of the

20 alleged VICEd system). *See* Fed. R. Evid. 801(c).

21         PAN should be precluded from relying on Ms. Watters' testimony because PAN did not

22 identify Ms. Watters in its initial disclosures. Opp., Ex. 6 at 3-9. Further, PAN has not shown good

23 cause for its late disclosure of Ms. Watters, and therefore must be precluded from calling her as a

24 witness, pursuant to the parties' agreement. Opp., Ex. 13. PAN has been aware of the alleged

25 VICEd system since at least May 2021, when it served its initial invalidity contentions. *See, e.g.*,

26 Opp., Ex. 16 at 10. Also, PAN was able to identify a potential witness and collect a declaration

27 purportedly supporting the alleged VICEd system's public availability only one week after Finjan

28 filed the instant motion. *See* Opp. Ex. 14 at 3 (declaration dated September 18, 2024). It certainly

1    could have done so during fact discovery; PAN cannot justify this grossly late disclosure almost

2    two years later, and does not attempt to do so. Opp. at 4-5. Without Ms. Watters testifying at trial,

3    the statements in her declaration are hearsay that PAN cannot show can be presented in an

4    admissible form at trial, and therefore cannot preclude summary judgment. *See, e.g.*, *Fraser*, 342

5    F.3d at 1037; *Scosche*, 121 F.3d at 681; *Safas*, 293 F.Supp.2d at 446.

6        Moreover, PAN does not make any representation that Ms. Watters will be testifying at

7    trial regarding the public availability of the alleged VICEd system, and her declaration also gives

8    no indication that she plans to testify. *See* Opp. at 5; Opp., Ex. 14 at 1-3. Even if PAN did intend

9    to serve Ms. Watters with a trial subpoena, Ms. Watters could not be compelled to testify under

10   Fed. R. Civ. P. 45(c)(1), as she is located in Madison, Wisconsin, more than 100 miles from this

11   Court. *See* Opp., Ex. 14 at 3.

12       Aside from Ms. Watters' declaration, the only other evidence relied upon by PAN is the

13   date printed on the VICEd Guide, which is uncorroborated hearsay that cannot preclude summary

14   judgment of no invalidity. *See* Mot. at 6-7 (citing cases holding that uncorroborated dates printed

15   on documents cannot preclude summary judgment of no public availability). This is especially

16   true here, as PAN has not shown how the VICEd Guide can be presented in an admissible form at

17   trial. *See, e.g.*, *Fraser*, 342 F.3d at 1037; *Scosche*, 121 F.3d at 681; *Safas*, 293 F.Supp.2d at 446.

18       Even if PAN were to rely on the VICEd reference as a printed publication, rather than a

19   prior art system, the same deficiency in proof applies.[2] Opp. at 5; *In re Hall*, 781 F.2d 897, 898-

20   899 (Fed. Cir. 1986) ("Because there are many ways in which a reference may be disseminated to

21   the interested public, 'public accessibility' has been called the touchstone in determining whether

22   a reference constitutes a 'printed publication' bar under 35 U.S.C. § 102(b)."). To the extent PAN

23   cites *Ciampi* for the proposition that printed publications are somehow immune to the rule against

24   hearsay, this is incorrect. In *Ciampi*, the Court found that a number of newspaper articles in

25   support of a defamation claim were not hearsay, as they were only being offered as evidence that

26   the allegedly defamatory statements were published. *Ciampi v. City of Palo Alto*, 790 F.Supp.2d

27

28
     _____
     [2] Beyond PAN's failure to overcome the rule against hearsay, PAN also presents no admissible evidence authenticating the VICEd Guide. For example, the reference does not qualify as self-authenticating evidence under Fed. R. Evid. 902.

1077, 1091 (N.D. Cal. May 11, 2011). In other words, the plaintiff was not relying on the admitted articles to prove that the articles were published by a certain date, or that any statement within the newspaper articles was in fact true, but only that the statements were made to the public at some point. *Id.* at 1091. By contrast, here, PAN is attempting to rely on the date printed on the VICEd Guide as evidence that the reference was in fact published by that date (*i.e.*, relying on the truth of the matter asserted). Opp. at 4-5.

Because PAN has presented no admissible evidence supporting the public availability of the alleged VICEd system, or the VICEd Guide, which it must prove by clear and convincing evidence, Finjan is entitled to summary judgment of no invalidity with respect to the VICEd reference.

### C.    Privoxy

PAN presents no non-hearsay evidence regarding the public availability of the alleged Privoxy system, and so a finding of summary judgment of no invalidity is warranted with respect to this reference as well.

To support its claim of the alleged Privoxy system's public availability, PAN points to (1) a declaration from Christopher Butler, an employee of the Internet Archive, which, like the declaration of Ms. Watters, PAN has just now produced nearly two years after the close of fact discovery, (2) revision dates in the source code, and (3) metadata for the source code. Opp. at 5-6 (citing Exs. 17-19, 21, 27). Each is inadmissible hearsay, in that each of the revision dates, metadata, and declaration are out-of-court statements offered for the truth of the matter asserted (*i.e.*, the date of public availability of the alleged Privoxy system). *See* Fed. R. Evid. 801(c).

PAN should be precluded from relying on Mr. Butler's testimony because PAN did not identify Mr. Butler in its initial disclosures. Opp., Ex. 6 at 3-9. Further, PAN has not shown good cause for its late disclosure of Mr. Butler, and therefore must be precluded from calling him as a witness, pursuant to the parties' agreement. Opp., Ex. 13. PAN has been aware of the alleged Privoxy system since at least May 2021, when it served its initial invalidity contentions. Ex. 11 (May 17, 2021, PAN's Initial Invalidity Contentions) at 95. Also, PAN was able to identify a potential witness and collect a declaration purportedly supporting the alleged Privoxy system's

1   public availability only 13 days after Finjan filed the instant motion. *See* Opp., Ex. 21 at 2

2   (declaration dated September 24, 2024). It certainly could have done the same in a timely manner

3   during fact discovery, and PAN makes no attempt to show good cause for this late disclosure.

4   Opp. at 5-7. The statements in Mr. Butler's declaration are hearsay that PAN cannot show can be

5   presented in an admissible form at trial, as Mr. Butler will not be testifying at trial, and therefore

6   cannot preclude summary judgment. *See, e.g.*, *Fraser*, 342 F.3d at 1037; *Scosche*, 121 F.3d at 681;

7   *Safas*, 293 F.Supp.2d at 446. Further, as with the other declarants, PAN does not make any

8   representation that Mr. Butler will be testifying at trial regarding the public availability of the

9   alleged Privoxy system, and his declaration also gives no indication that he plans to testify. *See*

10  Opp. at 6, n.4; Opp., Ex. 21 at 1-2.

11          Aside from Mr. Butler's declaration, the only other evidence PAN relies upon for the

12  public availability of the Privoxy system are revision dates and metadata from the source code.

13  Opp. at 6. PAN suggests this code is admissible evidence under the residual hearsay exception, but

14  PAN's arguments should be rejected as misapplying the law for at least two reasons. ***First,*** the

15  residual hearsay exception (Fed. R. Evid. 807) is only "to be used rarely and in exceptional

16  circumstances," which are not present here. *See Fong v. Am. Airlines, Inc.*, 626 F.2d 759, 763 (9th

17  Cir. 1980); *see also United Tech. Corp. v. Mazer*, 556 F.3d 1260, 1279 (11th Cir. 2009)

18  ("Congress intended the residual hearsay exception to be used very rarely, and only in exceptional

19  circumstances") (quoting *U.S. v. Ingram*, 501 F.3d 963, 967 (8th Cir. 2007)). ***Second,*** the residual

20  hearsay exception requires that the evidence being offered "is more probative ***on the point for***

21  ***which it is offered*** than any other evidence that the proponent can obtain through reasonable

22  efforts." Fed. R. Evid. 807(a)(2) (emphasis added). Though PAN argues that the "Privoxy source

23  code is the most probative source for how the Privoxy system operates," this is beside the point.

24  Opp. at 6. In this instance, PAN is offering the Privoxy source code as evidence of its public

25  availability, not of its operation. For the same reason, PAN's relied-upon *Lone-Star* case is

26  inapposite,[3] which involved admitting source code to prove the technical operation of a system,

27

28
_____

        [3] PAN's cited *Utherverse* case is also inapposite, as that Court was addressing a *Daubert*
motion that did not concern the admissibility of the source code at issue. Opp. at 6-7; *Utherverse*

1  rather than its availability. Opp. at 6; *Lone Star Tech. Innovations LLC v. ASUSTek Comput. Inc.*,

2  No. 6:19-CV-00059-RWS, 2021 WL 12137506, at *2 (E.D. Tex. May 14, 2021) (discussing

3  whether source code should be admitted that "is offered as evidence of a material fact—ASUS's

4  alleged infringement"). PAN does not argue, and cannot establish, that the Privoxy source code is

5  more probative on the issue of the alleged system's public availability than any other evidence

6  PAN can obtain through reasonable efforts. Fed. R. Evid. 807(a)(2). Any contention otherwise is

7  belied by the fact that PAN never even attempted to collect Mr. Butler's declaration during fact

8  discovery, and yet was able to do so less than two weeks after Finjan filed the instant motion. *See*

9  Opp., Ex. 21. Therefore, the Privoxy source code, and its metadata, cannot be admitted under the

10  residual hearsay exception for the purpose of establishing the system's public availability.

11  Because PAN has presented no admissible evidence supporting the public availability of

12  the alleged Privoxy system, which it must prove by clear and convincing evidence, Finjan is

13  entitled to summary judgment of no invalidity with respect to the Privoxy reference.

14  **D.    Janus**

15  PAN's alleged support for the public availability of the alleged Janus system is legally

16  insufficient, and so a finding of summary judgment of no invalidity is warranted with respect to

17  this reference as well. To support its claim of the alleged Janus system's public availability, PAN

18  only points to (1) a European patent publication referencing the Janus Manuscript, and (2)

19  testimony from its own technical expert, Dr. Rubin.[4] Opp. at 7-8 (citing Exs. 22, 24). But as

20  explained below, neither shows that the Janus System was publicly available before June 22, 2005,

21  the filing date for the '633 Patent. *See* Opp. at 7.

22  PAN relies on European patent application publication no. EP1632833A2 for evidence of

23  public availability, because it references the Janus Manuscript. *See* Opp. at 7 (citing Opp., Ex. 24

24

25  _____

*Gaming, LLC v. Epic Games, Inc.*, No. 2:21-cv-799-RSM-TLF, 2023 WL 9231334, at *4-5 (W.D.

26  Wash. Dec. 26, 2023).

    [4] PAN also cites a recently executed, self-serving declaration from its outside counsel to

27  purportedly authenticate the Janus Manuscript, as well as a Finjan patent and information

    disclosure statement from years after the filing date of the '633 Patent. Opp. at 7 (citing Opp., Exs.

28  23, 25, 26). PAN fails to explain their relevance to the public availability of the alleged Janus

    system, but regardless, these also do not demonstrate public availability of the alleged Janus

    system by June 22, 2005. Opp. at 7.

1   at [0011]). However, this argument fails for multiple reasons. ***First,*** while the publication

2   references the Janus Manuscript, it says nothing about the availability of the alleged Janus system.

3   Opp., Ex. 24 at [0011]. ***Second,*** the European patent application was not published until March 8,

4   2006, over 8 months after the filing date of the '633 patent. Opp., Ex. 24 at Cover. Therefore,

5   PAN's reliance on *Cornell Univ.* is inapposite. In that case, the defendant raised a genuine issue of

6   material fact regarding the public availability of a thesis alleged to be prior art, because an

7   "influential publication circulated to many of the researchers in the field" "cite[d] the [] thesis in

8   such a way as to make it accessible to any reader interested in its subject matter." *Cornell Univ. v.*

9   *Hewlett-Packard Co.*, No. 01-CV-1974, 2008 WL 11274580, at *5, 6 (N.D.N.Y. May 8, 2008).

10  The Court held that the public "had and has broad access to this IEEE publication, and by

11  extension" the alleged prior art. *Id.* at *6. The same logic does not apply here, because even

12  assuming interested persons in the field would have seen PAN's relied-upon European patent

13  publication, PAN cannot show such access before March 8, 2006, the date it was published. This

14  holds true regardless of whether PAN attempts to rely upon Janus as a system or printed

15  publication reference. *See* Opp. at 7-8.

16          Moreover, for the first time, PAN relies on deposition testimony provided by its technical

17  expert, Dr. Rubin. This is also insufficient to preclude summary judgment. Despite providing no

18  such disclosure in his reports, Dr. Rubin mentioned during his deposition that he personally knows

19  David Wagner, the author of the Janus Manuscript, and attended a conference where David

20  Wagner presented on the Janus Manuscript. *See* Opp., Ex. 22 at 380:25-382:19. PAN's reliance on

21  this testimony fails for a number of reasons. ***First***, Dr. Rubin makes no reference to this alleged

22  conference, or his interactions with Dr. Wagner, in his reports. *See, e.g.*, Mot., Ex. 4, ¶¶ 69, 496.

23  ***Second,*** Dr. Rubin provided no testimony regarding the date of the alleged conference. *Id.* at

24  380:25-382:19. ***Third***, he did not testify regarding the form of Dr. Wagner's alleged presentation,

25  including the extent to which the Janus Manuscript or alleged Janus system was described, the

26  extent to which the Janus Manuscript was distributed to the audience, if at all, and whether any

27  distribution was contingent on the audience members maintaining confidentiality. *Id.* at 380:25-

28  382:19. ***Fourth,*** Dr. Rubin's only basis for the public availability of the Janus System is

statements allegedly made by Dr. Wagner, which is clear-cut hearsay. *Id.* at 382:16-19 ("But I remember at the time that he presented the paper, having discussions with him about various aspects of the system. And, you know, it was very clear that he had built the system."). Dr. Rubin provides no testimony suggesting that he personally saw or used the alleged Janus system. *Id.* at 380:25-382:19. Because Dr. Wagner is not listed on PAN's initial disclosures, and PAN has made no representation that he will be testifying, PAN cannot present this hearsay in an admissible form at trial, and so Dr. Rubin's testimony cannot oppose a finding of summary judgment. *See, e.g.*, *Fraser*, 342 F.3d at 1037; *Scosche*, 121 F.3d at 681; *Safas*, 293 F.Supp.2d at 446. **Fifth**, PAN has never disclosed Dr. Rubin as a fact witness, and Finjan would be unfairly prejudiced if PAN were allowed to rely on such belated factual testimony, long outside the ordered window for fact discovery. *See* Opp., Ex. 6 at 3-9; *see also* Opp., Ex. 22 at 382:20-23 ("Q. Sir, I'm sorry, are you an expert or are you a fact witness on the availability of prior art? A. My understanding is that I'm an expert…"). Therefore, Dr. Rubin's testimony also cannot preclude summary judgment, regardless of whether PAN intends to rely on the alleged Janus system or the Janus Manuscript as prior art. Opp. at 7.

Because PAN has presented no admissible evidence supporting the public availability of the alleged Janus system or the Janus Manuscript, which it must prove by clear and convincing evidence, Finjan is entitled to summary judgment of no invalidity with respect to this reference as well.

**IV.   CONCLUSION**

For the foregoing reasons, Finjan respectfully requests the Court grant its motion for partial summary judgment of no invalidity with respect to the alleged Trend Micro and Check Point systems, VICEd system, Privoxy system, and Janus system.

Dated: October 16, 2024                    Respectfully Submitted,

                                          */s/ Juanita R. Brooks*
                                          Juanita R. Brooks (CA SBN 75934)
                                          brooks@fr.com
                                          Roger A. Denning (CA SBN 228998)
                                          denning@fr.com

Frank J. Albert (CA SBN 247741)
albert@fr.com
Jared A. Smith (CA SBN 306576)
jasmith@fr.com
Tyler R. Train (CA SBN 318998)
train@fr.com
Elliot N. Scher (CA SBN 343705)
scher@fr.com
FISH & RICHARDSON P.C.
12860 El Camino Real, Suite 400
San Diego, CA 92130
Telephone: (858) 678-5070 / Fax: (858) 678-5099

Aamir Kazi (*Pro Hac Vice*)
kazi@fr.com
Lawrence Jarvis (*Pro Hac Vice*)
jarvis@fr.com
FISH & RICHARDSON P.C.
1180 Peachtree Street, NE, 21st floor
Atlanta, GA 30309
Telephone: (404) 892-5005 / Fax: (404) 892-5002

Susan E. Morrison (*Pro Hac Vice*)
morrison@fr.com
FISH & RICHARDSON P.C.
222 Delaware Avenue, 17th Floor
P.O. Box 1114
Wilmington, DE 19801
Telephone: (302) 652-5070 / Fax: (302) 652-0607

*Attorneys for Plaintiff FINJAN LLC*