1   DARALYN J. DURIE (CA SBN 169825)
    DDurie@mofo.com
2   TIMOTHY CHEN SAULSBURY (CA SBN 281434)
    TSaulsbury@mofo.com
3   MATTHEW I. KREEGER (CA SBN 153793)
    MKreeger@mofo.com
4   MORRISON & FOERSTER LLP
    425 Market Street
5   San Francisco, California 94105-2482
    Telephone: (415) 268-7000 / Fax: (415) 268-7522
6
    *Attorneys for Defendant,*
7   *PALO ALTO NETWORKS, INC.*

8   *Additional counsel on signature page*

9

10                  UNITED STATES DISTRICT COURT

11                NORTHERN DISTRICT OF CALIFORNIA

12  FINJAN LLC,                          Case No.   3:14-CV-04908-RS

13              Plaintiff,               **PALO ALTO NETWORKS, INC.'S
                                         REPLY BRIEF IN SUPPORT
14       v.                              OF ITS MOTION FOR
                                         SUMMARY JUDGMENT**
15  PALO ALTO NETWORKS, INC.,

16              Defendant.               Date:   November 14, 2024
                                         Time:  1:30 PM
17                                       Courtroom:  3, 17th Floor
                                         Judge:  Honorable Richard Seeborg
18

19

20

21      **REDACTED  VERSION OF DOCUMENT SOUGHT TO BE SEALED**

22

23

24

25

26

27

28

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ...................................................................................... iii

TABLE OF ABBREVIATIONS................................................................................. iv

INTRODUCTION ....................................................................................................... 1

ARGUMENT .............................................................................................................. 2

I.    FINJAN CANNOT PROVE INFRINGEMENT OF THE '408 PATENT ............ 2

    A.   NGFW Does Not Meet the "Determining" and "Instantiating" Limitations ......................................................................................... 2

        1.   Finjan cannot prove that NGFW "instantiat[es] a scanner for the specific programming language" ...................................... 2

        2.   Finjan cannot prove that NGFW "determine[s] . . . any specific programming language" before it "instantiat[es] a scanner for the specific programming language"........................... 3

    B.   Wildfire Does Not Meet the "Determining" and "Instantiating" Limitations ......................................................................................... 4

        1.   Finjan cannot prove that WildFire "instantiat[es] a scanner for the specific programming language"........................................ 4

        2.   Finjan cannot prove that WildFire "determine[s] . . . any specific programming language" before it "instantiat[es] a scanner for the specific programming language"........................... 5

        3.   Finjan cannot prove that WildFire "determine[s] any specific one of a plurality of programming languages in which the incoming stream is written"........................................... 6

    C.   Finjan's Request That the Court Re-write the Claims Should Be Rejected ............................................................................................... 6

    D.   Finjan's Argument That PAN's Arguments Are Untimely and Waived is Baseless ........................................................................... 8

II.   FINJAN CANNOT PROVE INFRINGEMENT OF THE '633 PATENT ............ 9

    A.   Finjan Cannot Prove That WildFire Includes a "Downloadable-Information Destination" ................................................................... 9

    B.   Finjan's Attempts to Manufacture a Genuine Dispute of Fact Despite the Lack of Any Evidence That WildFire Includes a "Downloadable-Information Destination" Should be Rejected ................ 10

III.  FINJAN CANNOT PROVE INFRINGEMENT OF THE '731 PATENT .......... 12

1
2

<u>**TABLE OF CONTENTS**</u>
(continued)

**Page**

3
4

  A. Finjan Does Not Dispute That "Security Profile Cache" Means "A Memory for Temporarily Holding a Security Profile" ............................ 12

5

  B. Finjan Concedes That WildFire Reports Are Not Stored in a "Security Profile Cache" ........................................................................... 12

6

  C. Finjan Cannot Prove That AV Signatures Are "Security Profiles" .......... 12

7

  D. "Scan Results" or "Analysis Results" Are Not "Security Profiles" .......... 14

8
9

  E. WildFire's Databases Cannot Meet the "Security Profile Cache" Limitation Under the Doctrine of Equivalents .......................................... 15

10

 IV. FINJAN CANNOT PROVE PRE-SUIT WILLFUL INFRINGEMENT ............. 15

CONCLUSION ............................................................................................................................. 15

11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Broadcom Corp. v. Amazon.com Inc.*,

5
    No. SACV 16-01774 JVS (JCGx), 2017 WL 5151356 (C.D. Cal. Sept. 1, 2017) .................. 7

6

*Dynacore Holdings Corp. v. U.S. Philips Corp.*,

7
    363 F.3d 1263 (Fed. Cir. 2004)................................................................................... 9, 11, 14

8

*Finjan, Inc. v. Cisco Sys., Inc.*,
    No. 17-CV-00072-BLF, 2018 WL 3537142 (N.D. Cal. July 23, 2018) ...................... 1, 10, 11

9

*Finjan, Inc. v. Rapid7, Inc.*,

10
    No. 1:18-cv-01519-MN, 2020 WL 565377 (D. Del. Feb. 5, 2020) ......................................... 7

11

*Finjan, Inc. v. Rapid7, Inc.*,
    No. 1:18-cv-01519-MN, Dkt. No. 76 (D. Del. Oct. 25, 2019).......................................... 6, 7, 8

12

*Hersh v. Nat. Found. Life Ins. Co.*,

13
    No. C-11-03289-EDL, 2012 WL 381173 (N.D. Cal. Feb. 6, 2012) ....................................... 7

14

*Intell. Sci. & Tech., Inc. v. Sony Elecs.*,

15
    589 F.3d 1179 (Fed. Cir. 2009).......................................................................................... 10

16

*Jansen v. Rexall Sundown, Inc.*,
    342 F.3d 1329 (Fed. Cir. 2003).......................................................................................... 15

17

*MasterObjects, Inc. v. Amazon.com, Inc.*,

18
    No. C20-08103 WHA, 2022 WL 4280640 (N.D. Cal. Sept. 15, 2022) ................................ 14

19

*Mformation Techs., Inc. v. Research in Motion, Ltd.*,

20
    764 F.3d 1392 (Fed. Cir. 2014).............................................................................................. 7

21

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech., Co.*,
    521 F.3d 1351 (Fed. Cir. 2008)........................................................................................ 8, 12

22

*Schwing GmbH v. Putzmeister Aktiengesellschaft*,

23
    305 F.3d 1318 (Fed. Cir. 2002)......................................................................................... 9, 11

24

25

26

27

28

1

## **TABLE OF ABBREVIATIONS**

2

3

| **Abbreviation** | **Description** |
|---|---|
| "Brooks Decl. Ex. __" | Declaration of Juanita R. Books in Support of Finjan LLC's Opposition to Palo Alto Networks, Inc.'s Motion for Summary Judgment, dated October 2, 2024 (Dkt. No. 340) |
| "Jakobsson Dep. Tr" | Transcript of Deposition of Dr. Markus Jakobsson, taken March 15-16, 2023 |
| "Jakobsson Rpt." | Opening Expert Report of Dr. Markus Jakobsson, dated January 27, 2023 |
| "Keromytis Dep. Tr." | Transcript of Deposition of Dr. Angelos Keromytis, taken March 16, 2023 |
| "Keromytis Rpt." | Opening Expert Report of Dr. Angelos Keromytis, dated January 27, 2023 |
| "Min Dep. Tr." | Transcript of Deposition of Dr. Paul Min, taken March 17, 2023 |
| "Min Rpt." | Opening Expert Report of Dr. Paul Min, dated January 27, 2023 |
| "Mot." | Palo Alto Networks, Inc.'s Motion for Summary Judgment, dated September 11, 2024 (Dkt. No. 306-3) |
| "Opp'n" | Finjan LLC's Opposition to Palo Alto Networks, Inc.'s Motion for Summary Judgment, dated October 2, 2024 (Dkt. No. 339-1) |
| "Rubin Rpt." | Rebuttal Expert Report of Dr. Aviel Rubin, dated February 24, 2023 |
| "Ex. __" | Exhibits to the Declaration of Michael DeStefano in Support of Palo Alto Networks, Inc.'s Motion for Summary Judgment, dated September 11, 2024 |
| "Reply Ex. __" | Exhibits to the Reply Declaration of Michael DeStefano in Support of Palo Alto Networks, Inc.'s Reply Brief in Support of Its Motion for Summary Judgment, dated October 16, 2024 |

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**INTRODUCTION**

2      Finjan's opposition merely highlights its shifting sands strategy, not only across its many

3  litigations but in this case in particular.  Finjan has for years pursued a strategy of advancing

4  vague, abstract, and inconsistent infringement theories.  Finjan did that here as well, leaving PAN

5  to lock down its infringement theories through claim construction and expert depositions.  But

6  after PAN nailed Finjan's experts' opinions down and prevailed on dispositive claim terms at

7  Markman, Finjan now attempts to re-write its claims around its expert admissions, re-litigate or

8  ignore adverse claim constructions, and abandon old infringement theories in favor of new ones.

9  Even so, Finjan does not identify any disputes concerning the facts that actually are material to

10  PAN's motion.  Accordingly, the Court should enter summary judgment of non-infringement.

11      As to the '408 Patent, Finjan does not, and cannot, dispute that Dr. Min conceded that his

12  infringement opinions for NGFW and WildFire each rely on a *single "scanner"* that handles

13  "*multiple different programming languages*."  Finjan cannot run from those admissions, which

14  are fatal to its infringement case because the plain language of every asserted claim requires a

15  scanner that is for a specific programming language.  The Court should also reject Finjan's brazen

16  request in its opposition to re-write its claims around Dr. Min's admissions in a manner that is

17  contradicted by Finjan's prior interpretation and its own expert's understanding of the claims.

18      As to the '633 Patent, Finjan concedes that Dr. Keromytis points to the WildFire Public

19  Cloud server and WF-500 server as "downloadable-information destinations," but does not

20  identify any opinion that either of these servers is a "user device."  The *Cisco* decision and

21  myriad other issues raised by Finjan in its opposition are red herrings.  Because the undisputed

22  record is devoid of evidence showing that either the WildFire Public Cloud server or the WF-500

23  is a "user device," the Court should grant summary judgment of non-infringement.

24      Finally, as to the '731 Patent, Finjan does not dispute that "security profile cache" means a

25  "memory for temporarily holding a security profile" and fails to create any genuine dispute that

26  could preclude summary judgment.  Finjan abandons its reliance on WildFire Reports as evidence

27  of infringement and fails to point to any evidence that AV Signatures are "security profiles."

28

1    Finjan's attempt to fall back on its theory that unspecified "scan results" are "security profiles"

2    stored in a "security profile cache" is vague and unsupported by any evidence.

3        Accordingly, the Court should enter summary judgment of non-infringement in PAN's

4    favor on the remaining asserted patents.

5                                    **ARGUMENT**

6    **I.    FINJAN CANNOT PROVE INFRINGEMENT OF THE '408 PATENT**

7        Every asserted claim of the '408 Patent requires "determining any specific one of a

8    plurality of programming languages in which the incoming stream is written" and "instantiating a

9    scanner for the specific programming language, in response to said determining." (Mot. at 7.)

10   Finjan does not dispute Dr. Min's admissions that NGFW and WildFire each includes a *single*

11   *"scanner"* that handles "*multiple different programming languages*," which are fatal to its

12   infringement case. (*Id*. at 7-14.) Finjan instead tries to run from these admissions and,

13   alternatively, asks the Court to re-write its claims around them. (Opp'n at 1-12.) But Finjan fails

14   to establish any genuine dispute of fact or basis for the Court to re-write Finjan's claims.

15       **A.    NGFW Does Not Meet the "Determining" and "Instantiating" Limitations**

16           **1.    Finjan cannot prove that NGFW "instantiat[es] a scanner for the**

17                  **specific programming language"**

18       Dr. Min testified unequivocally that he identified in his Deposition Exhibit 38 the only

19   "scanner" that he relied on to support his NGFW infringement opinion and that this scanner

20   handles "multiple different programming languages." (Mot. at 8 (citing Min Dep. Tr. at 508:25-

21   509:7, 511:8-15 (Ex. 6)).) That deposition testimony is dispositive.

22       Finjan's attempt to run from Dr. Min's admissions falls flat. Finjan asserts that Dr. Min

23   "never opined that [Deposition Exhibit 38] illustrated all components of the scanner." (Opp'n at

24   4.) But that's wrong. Dr. Min explicitly confirmed that the claimed NGFW scanner he relied on

25   "*is the CTD engine that [he] circled in red on Exhibit 38, plus, the APP-ID engine.*" (Min Dep.

26   Tr. at 495:13-18 (Ex. 6); *see also id.* at 505:16-506:1, 507:17-23, 508:25-509:3.) Contrary to

27   Finjan's assertion, Dr. Min did not testify that the CTD engine and APP-ID engine were merely

28   two (of many) components of the scanner. Moreover, that Deposition Exhibit 38 (Ex. 7) does not

1  reflect every detail of the software modules *within* these components (Opp'n at 4), does not

2  impact the undisputed, dispositive facts — established by Dr. Min's admissions — that (1) his

3  theory involves just a single NGFW scanner (consisting of the CTD engine and APP-ID engine)

4  and (2) that single scanner handles "multiple different programming languages."  (Mot. at 7-8.)

5      Finjan's attempt to muddy Dr. Min's admissions by pointing to explanations of source

6  code descriptions (or "walk-throughs") in his report (Opp'n at 2) is also unavailing.  These source

7  code walk-throughs, provided to Dr. Min by Finjan's lawyers,[1] do not undermine his admissions.

8  Dr. Min explains that the source code walk-throughs describe functionality in the "modules

9  within PAN-OS that receive the incoming stream of program code and perform content detection

10  and ███████████████████" (Min Rpt. ¶ 385 (Brooks Decl. Ex. A)), *i.e.*, modules in the

11  CTD engine (*id.* ¶¶ 377-378).  But, as explained above, Dr. Min confirmed that the CTD engine is

12  *part of* the alleged NGFW scanner.  (Mot. at 8.)  Accordingly, the functionality described in the

13  source code walk-throughs, including calls to ███████████ and other functions, all

14  takes place *within* Dr. Min's single alleged "scanner" that handles "multiple different

15  programming languages."  Thus, contrary to Finjan's assertion, these source code walk-throughs

16  cannot establish that NGFW "instantiat[es] a scanner for the specific programming language."[2]

17  **2.  Finjan cannot prove that NGFW "determine[s] . . . any specific**
   **programming language" before it "instantiat[es] a scanner for the**
18  **specific programming language"**

19      Even if Finjan could prove that NGFW includes "a scanner for the specific programming

20  language" (it cannot), Finjan cannot prove that NGFW "determine[s] . . . any specific one of a

21  plurality of programming languages" *before* instantiating that scanner.  (Mot. at 8-9.)  Finjan does

22  not even attempt to refute PAN's showing that Dr. Min conceded that the components in NGFW

23  that allegedly determine the programming language are *part of* the alleged NGFW scanner.  (*Id.*

24  at 9 (citing Min Dep. Tr. at 504:18-25, 507:7-16 (Ex. 6)).)  That fact is dispositive:  NGFW

25  cannot determine a programming language before instantiating a scanner if the scanner itself

26      [1] *See, e.g.*, Min. Dep. Tr. at 355:2-356:21 (Reply Ex. 21).

27      [2] Finjan's opposition is predicated on excerpts from Dr. Min's report concerning the CTD
   engine that Judge Donato ordered struck.  (*See* Dkt. No. 262.)  Finjan cannot rely on these
28  excerpts or the CTD engine at trial, but PAN is entitled to summary judgment of non-
   infringement regardless of whether they are considered.

allegedly determines the programming language because, to make that determination, the scanner necessarily must have already been instantiated.

Once again, Finjan's attempt to manufacture a genuine dispute based on a handful of source code walk-throughs in Dr. Min's report (Opp'n at 6-7 (citing Min Rpt. ¶¶ 387, 385, 353-383 (Brooks Decl. Ex. A))) is unavailing.  As demonstrated above, the source code walk-throughs describe functionality occurring *inside* the single scanner that Dr. Min relied on.  (*See supra* Part I.A.1.)  Thus, even if they showed that NGFW was determining a programming language, the scanner cannot be instantiated based on (and, thus after) the determination of the programming language because it must already be instantiated to make that determination in the first place.

### B.     Wildfire Does Not Meet the "Determining" and "Instantiating" Limitations

#### 1.     Finjan cannot prove that WildFire "instantiat[es] a scanner for the specific programming language"

Dr. Min testified that he identified in Deposition Exhibit 43 (Ex. 8) the only "scanner" that he relied on to support his WildFire infringement opinion and that this scanner can handle "multiple different programming languages."  (Mot. at 11 (citing Min. Dep. Tr. at 524:5-12, 524:23-525:1 (Ex. 6)).)  That deposition testimony is dispositive.

Finjan's attempt to run from Dr. Min's admissions again falls flat.  Finjan again asserts that Dr. Min "never opined that [Deposition Exhibit 43] illustrated all components of the scanner" (Opp'n at 4).  But that's wrong.  Dr. Min explicitly confirmed that the scanner he relied on was made up of the Static Analysis and Dynamic Analysis that he circled in Exhibit 43.  (Min Dep. Tr. at 519:14-24, 524:5-12, 524:23-525:1 (Ex. 6).)  Contrary to Finjan's assertion, Dr. Min did not testify that the Static Analysis and Dynamic Analysis were merely two (of many) components of the scanner.  And that Deposition Exhibit 43 does not reflect the details of the software modules inside the alleged scanner does not impact the undisputed, dispositive facts — established by Dr. Min's admissions — that (1) his theory involves just a single WildFire scanner

1  (consisting of the Static and Dynamic Analysis) and (2) that single scanner handles "multiple

2  different programming languages." (Mot. at 11.)[3]

3       Once again, Finjan's attempt to create a genuine dispute based on source code walk-

4  throughs in Dr. Min's report (Opp'n at 3) is misguided.  Finjan again ignores that the components

5  referenced in these paragraphs that allegedly determine different programming languages are all

6  *part of the single WildFire "scanner"* that Dr. Min relied on.  (Min Dep. Tr. at 519:14-24 (Ex. 6)

7  (confirming that components of the WildFire scanner were the static analysis and dynamic

8  analysis); *see also* Min Rpt. ¶ 424 (describing "static" and "dynamic" analyzers), ¶ 426

9  (describing "static analyzer"), ¶ 427 (describing "dynamic analyzer") (Brooks Decl. Ex. A).)

10  Thus, the source code on which Finjan relies cannot establish that WildFire "instantiat[es] a

11  scanner for the specific programming language."

12         **2.**      **Finjan cannot prove that WildFire "determine[s] . . . any specific programming language" before it "instantiat[es] a scanner for the**

13                    **specific programming language"**

14       Finjan does not refute PAN's showing that Dr. Min conceded that the components that

15  allegedly determine programming language are *part of* the alleged WildFire scanner.  (Mot. at 12-

16  13 (citing Min Dep. Tr. at 524:23-525:1 (Ex. 6)).)  That undisputed fact is dispositive:  WildFire

17  cannot determine a programming language before instantiating a scanner if the scanner itself

18  allegedly determines the programming language.

19       Once again, Finjan's attempt to manufacture a genuine dispute based on a handful of

20  source code walk-throughs in Dr. Min's expert report (Opp'n at 7-8) is unavailing.  Finjan does

21  not argue that these descriptions show that WildFire determines a programming language *before*

22  instantiating a scanner for that specific programming language, and they do not.  In fact, these

23  excerpts describe functions being performed as part of ███████████████ and

24

25       [3] Finjan's reliance on Dr. Min's testimony about "a scanner framework within which

26  multiple scanners are instantiated at a different time" (Opp'n at 4-5 (citing Min Dep. Tr. at 523:8-18 (Brooks Decl. Ex. B))) does not create a genuine dispute of material fact.  Dr. Min confirmed

27  immediately after that testimony that the only scanner that he relied on to support his opinion was the scanner identified in Deposition Exhibit 43 that handles "multiple different programming

28  languages." (Mot. at 11.)

1   ███████████████ – █████ that are *part of* Dr. Min's claimed "scanner."  (Min Dep. Tr. at

2   519:18-24 (Ex. 6).)  Accordingly, they cannot show that WildFire determines a programming

3   language before instantiating a scanner.  To the contrary, they would establish that WildFire does

4   *not* determine programming language *before* instantiating the scanner.

> ### 3. Finjan cannot prove that WildFire "determine[s] any specific one of a plurality of programming languages in which the incoming stream is written"

7   Finjan does not create a genuine dispute of fact as to whether WildFire determines

8   programming language as required by the asserted claims.  (Opp'n at 11-12.)  In the cited

9   deposition testimony, Dr. Min confirms that WildFire determines that content is an "HTML file"

10  and then "in inspection, during the inspection" can also identify embedded program languages.

11  (Min. Dep. Tr. at 595:6-24 (Brooks Decl. Ex. B).)  This is consistent with the cited source code

12  walk-throughs stating that ███████████████ ███ █████████████████ (both part of the

13  alleged WildFire scanner) function to determine programming language.  (Min Rpt. ¶¶ 310

14  (Brooks Decl. Ex. A); *see also id.* ¶¶ 301-309, 311-340.)  But the claims require that the system

15  "determine the programing language" *before* initiating the "scanner" to inspect the code so any

16  identification of programming language *after* WildFire has determined the file type and

17  instantiated the scanner cannot satisfy this limitation.  (Mot. at 13-14.)

18  **C.    Finjan's Request That the Court Re-write the Claims Should Be Rejected**

19  For the first time in this litigation, Finjan contends that the claims encompass a product in

20  which there is a single scanner that is instantiated, that handles multiple different programming

21  languages, and that once instantiated the scanner determines the programming language and

22  analyzes code.  (Opp'n at 5-6, 9.)  Finjan's request to rewrite its claims to get around Dr. Min's

23  admissions that doom its infringement case should be rejected.

24  First, Finjan's position is clearly inconsistent with its position in the *Rapid7* litigation

25  regarding interpretation of claims 1 and 22 and Finjan is therefore estopped from advancing it.  In

26  *Rapid7*, Finjan agreed that "[t]he claim term itself states that the scanner must be for a 'specific

27  programming language'" and argued that Rapid7 was *wrong* that the claims encompassed a

28  scanner that could handle multiple different languages and adapt itself to each programming

1  language.  *Finjan, Inc. v. Rapid7, Inc.*, No. 1:18-cv-01519-MN, Dkt. No. 76 at 61-64 (D. Del.

2  Oct. 25, 2019) (Ex. 22).  The Court accepted Finjan's position.  *Finjan, Inc. v. Rapid7, Inc.*, No.

3  1:18-cv-01519-MN, 2020 WL 565377, at *12-13 (D. Del. Feb. 5, 2020).  Finjan is judicially

4  estopped from now reversing course to derive an unfair advantage by arguing the opposite in this

5  case.  *Hersh v. Nat. Found. Life Ins. Co.*, No. C-11-03289-EDL, 2012 WL 381173, at *3 (N.D.

6  Cal. Feb. 6, 2012).

7       Second, Finjan's own expert Dr. Min nowhere opines that these claims are directed to a

8  multi-language scanner that is instantiated before the programming language is determined.  To

9  the contrary, Dr. Min testified that the claims require that the system determine the programming

10  language *before* instantiating the scanner.  (Min Dep. Tr. at 210:24-211:17 (Ex. 6).)  Dr. Min, in

11  fact, testified that a system that does not perform the steps in this order *does not infringe*:

12      Q:    Does a computer that instantiates a scanner before it has determined any

13             programming language of the incoming stream meet Claim 1 or Claim 22
           of the '408 Patent?

14      A:    And I . . .I just told you.  It has to be in response to determining, so it

15             would not meet the scope.

16  (*Id*. at 216:23-217:5.)

17       Third, claims 1 and 22 make clear that the scanner that is instantiated is for a "*specific*

18  *programming language*," and "compris[es] parser rules and analyzer rules *for the specific*

19  *programing language*."  This is reinforced by dependent claims 4-7 which provide that "the

20  specific programming language *is*" "Javascript" (claim 4), VisualBasic VB Script (claim 5),

21  HTML (claim 6), or URI (claim 7).  The claims, on their face, also require that the programming

22  language be determined *before* the scanner is instantiated because, *inter alia*, the "instantiating. .

23  ." limitation refers back to "*the* programming language" that was determined and also expressly

24  states that the scanner is instantiated "*in response to* said determining."  *See Mformation Techs.,*

25  *Inc. v. Research in Motion, Ltd.*, 764 F.3d 1392, 1398-4000 (Fed. Cir. 2014); *see also Broadcom*

26  *Corp. v. Amazon.com Inc.*, No. SACV 16-01774 JVS (JCGx) 2017 WL 5151356, at *17 (C.D.

27  Cal. Sept. 1, 2017) (claims requiring a series of reactions that occur "in response to" a prior step

28  required the steps to occur in that order).

Finally, Finjan does not explain how any of its cherry-picked passages from the specification tie to any of the claim language let alone support its new interpretation, and they do not. In fact, the cited passages make clear that the alleged invention includes a "scanner system" or "scanner repository" consisting of multiple ARB-type "scanners" that have each been adapted to a specific programming language using "appropriate rule files." (*See* '408 Patent at 1:66-2:6 (explaining that "adaptive-rule-based (ARB) scanners" can be adapted to a specific programming language using "the appropriate rule files"), 6:14-24 (describing "scanner system" can include ARB scanners for different programming languages), 15:31-32 (noting that "scanner repository" 640 produces a single instance of each of different ARB scanners adapted for different programming languages); Figs 6-7 (showing a "scanner repository" that includes separate and independent scanners for HTML, Javascript, and URI) (Ex. 1).) In fact, when Rapid7 raised some of these very same passages in the prior litigation, Finjan argued that they did *not* support Rapid7's argument that the claims encompassed a multi-language scanner. (Ex. 22 at 64.)

### D.    Finjan's Argument That PAN's Arguments Are Untimely and Waived is Baseless

Finjan is wrong that PAN's argument that the accused products must determine programming language before the scanner is instantiated presents a claim construction dispute that has been waived. (Opp'n at 10.) PAN's position that the "determining . . ." step must occur before the "instantiating . . ." step is based on a plain and ordinary reading of the steps and Finjan does not identify any case supporting a different interpretation. Nor can Finjan claim surprise because PAN disclosed this non-infringement ground. (*See, e.g.*, Reply Ex. 23 at 41-42 (PAN's products do not instantiate a scanner for the specific programming language in response to said determining); Rubin Rpt. ¶¶ 504, 518 (Ex. 4) (opining that Dr. Min's analysis of NGFW and WildFire shows that each is a general scanner and not a scanner for a specific programming language).) But even if the Court were to accept that Finjan had presented a claim construction dispute, the Court would have to resolve that dispute before trial. *See O2 Micro Int'l Ltd. v. Beyond Innovation Tech., Co.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008).

**II.     FINJAN CANNOT PROVE INFRINGEMENT OF THE '633 PATENT**

Finjan's response confirms that there are no fact disputes precluding entry of summary judgment of non-infringement of the '633 Patent.  Finjan (1) does not dispute that Dr. Keromytis points only to the WildFire Public Cloud server or WF-500 server as the "downloadable-information destination" and (2) does not identify any opinion by Dr. Keromytis that either of these servers is a "user device."  Instead, Finjan focuses on arguments that are not relevant to PAN's motion and do not create a genuine dispute of material fact.

> **A.     Finjan Cannot Prove That WildFire Includes a "Downloadable-Information Destination"**

Finjan does not dispute that the "downloadable-information destinations" identified by Dr. Keromytis are the WildFire Public Cloud server and WF-500 server.  (Mot. at 14.)  But Finjan does not, and cannot, identify any evidence that either of these servers is a "user device."  Finjan points to one passage from Dr. Keromytis's deposition and three sentences in his expert report.  (Opp'n at 16-17.)  None precludes summary judgment in PAN's favor.

The cited deposition testimony and first two expert report excerpts fall far short of creating a genuine dispute of material fact.  In the cited deposition testimony, Dr. Keromytis confirms his belief that WF-500 is a "downloadable-information destination."   (Keromytis Dep. Tr. at 284:16-285:11 (Brooks Decl. Ex. E).)  But Dr. Keromytis does not testify that — and thus does not address whether — the WF-500 is a "user device," let alone provide any support whatsoever for such a claim.  And in the first and second expert report excerpts, Dr. Keromytis merely opines that (1) "[t]he Accused Products, including . . . WildFire . . . meet this claim limitation [14[c]]" (Keromytis Rpt. ¶ 376 (Brooks Decl. Ex. D)) and (2) "WildFire . . . satisf[ies] both parties' proposed constructions of [downloadable-information destination]" (*id.* ¶ 379).  Such conclusory opinions fall short of creating a genuine issue of material fact sufficient to avoid summary judgment of non-infringement.  *See Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263, 1276-77 (Fed. Cir. 2004) (unsupported expert opinion that claim limitation is met is insufficient to defeat summary judgment of non-infringement); *Schwing GmbH v. Putzmeister*

*Aktiengesellschaft*, 305 F.3d 1318, 1326 (Fed. Cir. 2002) (conclusory expert opinions that claim limitations are met are "insufficient to raise genuine evidentiary dispute for trial").

The final expert report excerpt cited by Finjan, referring to "WildFire" being "a device—a user device or otherwise," also does not create a genuine dispute of material fact, as PAN demonstrated in its opening brief.  (Opp'n at 17 (quoting Keromytis Rpt. ¶ 381 (Brooks Decl. Ex. D)); *see also* Mot. at 15-16.)  Finjan's reliance on this sentence fails for several reasons.

First, Dr. Keromytis could have, but did not, opine that WildFire was a "user device" – he opined that Wildfire "is a downloadable information destination because it is *a device—a user device or otherwise*."  Finjan's contention that this is a "clear opinion that WildFire is, at minimum, a 'user device'" flies in the face of the words that Dr. Keromytis used.

Second, Finjan ignores that Dr. Keromytis's footnote to this statement declares his "broad" interpretation of "user device" to include any "receiving device or process."  (Mot. at 16 (citing Keromytis Rpt. ¶ 381 n. 87 (Ex. 11)).)  The Court has already rejected Finjan's proposal that a "downloadable information device" can be any "device or process that is capable of receiving . . ."  (*Id.* (citing Dkt. No. 290 at 10-11).)

Third, even if Dr. Keromytis opined that WildFire Public Cloud server or WF-500 server was a "user device" (he did not) and had applied the Court's interpretation (he did not), Dr. Keromytis's opinion still would not create a genuine dispute.  This is because Dr. Keromytis does not provide any support for why either of these servers is a "user device."  *Intell. Sci. & Tech., Inc. v. Sony Elecs.*, 589 F.3d 1179, 1183 (Fed. Cir. 2009) (holding that, at summary judgment stage, a patentee's expert must establish the factual foundation for his infringement opinion in enough detail to find that certain features of the accused product would support a finding of infringement under the claim construction adopted by the court).

### B.   Finjan's Attempts to Manufacture a Genuine Dispute of Fact Despite the Lack of Any Evidence That WildFire Includes a "Downloadable-Information Destination" Should be Rejected

Finjan spends many pages trying to manufacture a genuine dispute of material fact based on the *Cisco* decision and myriad other issues.  None are relevant to PAN's motion or preclude summary judgement of non-infringement of the '633 Patent.

1    Finjan's appeal to the *Cisco* decision (Opp'n at 14-15) does not save its case.  Finjan

2    contends that the *Cisco* court found that (1) "a '[u]ser device' can operate as a firewall [or]

3    server" and (2) the "'downloadable-information destination [user device]'" need not be the "'final

4    destination of the downloadable.'"  (Opp'n at 14 (quoting *Finjan, Inc. v. Cisco Sys., Inc.*, No. 17-

5    CV-00072-BLF, 2018 WL 3537142, at *20 (N.D. Cal. July 23, 2018)).)  This is true but

6    irrelevant.  PAN does not dispute that "a [u]ser device can operate as a firewall/server" but, as

7    was already addressed during Markman, this does not mean that every firewall and server is a

8    "user device."  (*See, e.g.*, Markman Tr. (Dkt. No. 289) at 40:18-41:15.)  PAN's motion also does

9    not turn on a "user device" being the "final destination of the downloadable."  Simply put, even if

10   a "user device" can operate as a firewall or server and need not be "the final destination of the

11   downloadable," PAN is still entitled to summary judgment of non-infringement because Finjan

12   lacks any evidence that the WildFire Public Cloud Server or WF-500 server is a "user device."

13   Finjan's remaining arguments are similarly unavailing.  PAN's acknowledgement at claim

14   construction that technical experts may opine at trial about whether a particular device is a "user

15   device" (Opp'n at 12-13) does not waive its right to seek summary judgment or in any way

16   undermine its motion.  Similarly, the Court's failure to adopt PAN's clarification that a "user

17   device" refers to an "end user device" (*id*. at 15-16) does not affect PAN's motion because PAN's

18   motion does not depend on a "user device" being "end user device."  And Finjan's attack on Dr.

19   Rubin (*id*. at 17-18) mischaracterizes his opinions and is inapposite.  Dr. Rubin explains that

20   WildFire Public Cloud servers and WF-500 servers are not "user devices" and Finjan's argument

21   to the contrary depends on ignoring Dr. Rubin's opinions that are clearly reproduced in PAN's

22   motion.  (Mot. at 16-17 (citing Rubin Rpt. ¶¶ 718, 719 (Ex. 4)).)  But even if the Court were to

23   ignore Dr. Rubin's opinions, Finjan bears the burden of proving infringement and Dr.

24   Keromytis's conclusory opinions that claim limitations are met is not enough.  *See Dynacore*, 363

25   F.3d at 1276-77 (unsupported expert opinion that claim limitation is met is insufficient to defeat

26   summary judgment of non-infringement); *Schwing*, 305 F.3d at 1326 (conclusory expert opinions

27   that claim limitations are met are "insufficient to raise genuine evidentiary dispute for trial").

28

1    **III.    FINJAN CANNOT PROVE INFRINGEMENT OF THE '731 PATENT**

2            Finjan's response confirms that the record is devoid of evidence to support the proposition

3    that WildFire stores a "security profile" within a "security profile cache."  (*See* Mot. at 17-21.)

4    Instead of defending its theory for WildFire Reports or presenting any evidence that AV

5    signatures are "security profiles," Finjan falls back on its claim that unspecified "scan results" or

6    "analysis results" meet this limitation.  (Opp'n at 18-24.)  But Finjan does not identify what the

7    "scan results" or "analysis results" are.  Finjan's expert offered only two specific items that were

8    the alleged security profile:  WildFire Reports and AV Signatures.  Neither can satisfy the claim.

9    As a result, the Court should grant PAN's motion for summary judgment of non-infringement of

10   the '731 Patent.

11           **A.    Finjan Does Not Dispute That "Security Profile Cache" Means "A Memory
12                   for Temporarily Holding a Security Profile"**

13           Finjan does not dispute that "security profile cache" means a "memory for temporarily

14   holding a security profile," consistent with the Court's construction of "file cache."  (Mot. at 18;

15   *see also* Dkt. No. 290 at 5-7.)[4]  Finjan's claim that PAN "belatedly propose[d]" to construe this

16   term (Opp'n at 18-19) is false.  PAN proposed that this term be construed consistent with "file

17   cache" since the parties first exchanged terms for construction (Mot. at 18 n. 9), as the Court

18   noted in its Claim Construction Order.  (Dkt. No. 290 at 6 n.2).

19           **B.    Finjan Concedes That WildFire Reports Are Not Stored in
20                   a "Security Profile Cache"**

21           As PAN demonstrated in its opening brief, Finjan's expert, Dr. Jakobsson, fails to opine

22   that WildFire Reports are stored in a "security profile cache," *i.e.*, a memory for temporarily

23   holding a security profile.  (Mot. at 19-20.)  Finjan does not mention "WildFire Reports" in its

24   opposition, and only references "analysis reports" once for an unrelated proposition.  Finjan does

25   not point to any evidence that WildFire Reports are security profiles and does not even attempt to

26   demonstrate a genuine dispute of fact on this issue.

27

28           [4] Even if there were a dispute, the Court would have to resolve it before trial.  *See O2
     Micro*, 521 F.3d at 1362.

**C.      Finjan Cannot Prove That AV Signatures Are "Security Profiles"**

As PAN demonstrated in its opening brief, Finjan cannot point to any evidence that AV Signatures are "security profiles" and, in fact, Finjan's expert testified that those signatures, by themselves, are *not* "security profiles," *i.e.*, that they do comprise a list of one or more computer commands.  (Mot. at 19-20.)  Finjan's attempt to manufacture a genuine dispute based on a misrepresentation of Dr. Jakobsson's deposition and Paragraph 640 of his report comes up short.

Finjan's misrepresents that Dr. Jaksobsson was testifying about "signatures in general" but not the accused signatures.  (Opp'n at 24.)  In fact, Dr. Jakobsson was clearly testifying about the signatures generated as part of the WildFire scan.

Q:      What, *in the PAN-accused products,* constitute the security profiles?
A:      So that's described, among other places, in [Paragraph] 635 [of my report].
. . . .
Q:      What is the security profiles *in the accused products*?
A:      So the security profiles are generated as a result of the WildFire scan. . . .
. . . .
Q:      [W]hat is the specific thing you're pointing to as a security profile?
A:      So the security profile is what is sent back to NGFW by WildFire.  It's referred to as the "Wildfire analysis report" and includes a behavioral report.  And so the security profiles here also have signatures incorporated. . . .
. . . .
Q:      Are the signatures security profiles?
A:      They're part of the security profile, *but they're not the security profile per se*.
Q:      What do you mean?
A:      So the security profile has signatures, or could have signatures.  In this case, it does.  And the security profile also has a behavioral component, which is the list of computer commands.
Q:      So the signatures do not contain a list of computer commands?
A:      *Typical signatures do not*, but they're associated with the description of computer commands.

(Jakobsson Dep. Tr. at 138:5-140:8 (Ex. 17) (emphasis added).)

Dr. Jakobsson's testimony that the accused signatures are not, by themselves, the claimed security profiles is also not controverted by Paragraph 640 of his report. Dr. Jakobsson does not opine in that paragraph that AV signatures comprise a list of one or more computer commands. To the contrary, consistent with his deposition testimony, Dr. Jakobsson opines that WildFire creates both a behavioral report comprising a list of computer commands *and* an AV Signature.

(Jakobsson Rpt. ¶ 640 (Ex. 14).)  Dr. Jakobsson does not opine in Paragraph 640, or in Paragraph 821-824, and PAN_FIN-0000623 does not show, that the AV Signatures themselves comprise a list of one or more computer commands, and they do not.  (*See* Mot. at 20-21.)  Accordingly, the AV Signatures cannot be the claimed "security profiles."

**D.    "Scan Results" or "Analysis Results" Are Not "Security Profiles"**

Finjan's last-ditch effort to salvage its infringement case merely highlights the shell game that it has played with the '731 Patent.  Finjan's contentions and expert report are filled with laundry lists of data and memory locations, with vague and undefined "scan results" or "analysis results" identified as possible "security profiles."  But there were only two specific items identified as security profiles:  WildFire Reports and AV Signatures.  As shown above, neither can satisfy the claim.  So Finjan retreats to relying on unspecified "scan results" or "analysis results."  (*See* Opp'n at 19-24.)  Finjan's attempt to create a genuine dispute by invoking this vague theory comes up short.

Finjan does not, and cannot, point to any evidence that "scan results" or "analysis results" are a "security profile," *i.e.*, that they comprise a list of one or more computer commands.  Finjan devotes pages to characterizing various databases in which "scan results" are allegedly stored.  (*See id.* at 19-23.)  But none of that matters unless Finjan can establish that the supposed "scan results" are "security profiles" in the first place.  It does not.  Finjan points to Dr. Jakobsson's conclusory statement that Local DB "stores the scan results (*i.e.*, the security profiles derived by the scanner including a list of computer commands that a corresponding one of the incoming files is programmed to perform)."  (*Id.* at 20 (quoting Jakobsson ¶ 826 (Brooks Decl. Ex. G)).)  But this is no more than a conclusory assertion that a claim limitation is met without any explanation or supporting evidence whatsoever.  That is not enough to generate a dispute of fact.  *See DynaCore*, 363 F.3d at 1278 (unsupported opinion that claim limitation is met cannot create a genuine issue of material fact sufficient to defeat summary judgment of non-infringement).

In sum, Finjan fails to point to any supported opinion by Dr. Jakobsson that WildFire "scan results" comprise a list of one or more computer commands.  Finjan thus cannot rely on those "scan results" to defeat summary judgment.  *See id.*; *MasterObjects, Inc. v. Amazon.com,*

1  *Inc.*, No. C20-08103 WHA, 2022 WL 4280640, at *9 (N.D. Cal. Sept. 15, 2022) (granting

2  summary judgment where patentee expert failed to address whether "cache" limitation was

3  satisfied under court's construction and accused infringer's expert opined that limitation was not

4  met); *Jansen v. Rexall Sundown, Inc.*, 342 F.3d 1329, 1334-35 (Fed. Cir. 2003) (evidence that

5  amounted to conjecture that claim limitations were met is insufficient to generate a genuine

6  dispute of material fact).

7        **E.**      **WildFire's Databases Cannot Meet the "Security Profile Cache"**

8                **Limitation Under the Doctrine of Equivalents**

9        PAN demonstrated, and Finjan appears to concede, that Dr. Jakobsson fails to present

10  evidence that any WildFire database is a "security profile cache" under the doctrine of

11  equivalents.  (*See* Mot.at 21-22.)  Finjan does not even attempt to point to any supported opinions

12  by Dr. Jakobsson that any WildFire database performs the same function, in the same way, to

13  achieve the same result as the claimed "security profile cache."  Finjan's assertion that "PAN's

14  accused products include temporary storage, *e.g.*, Local DB and other databases and memories"

15  (Opp'n at 25) is not a viable doctrine of equivalents theory.

16        Finjan has not presented any evidence that any specific WildFire data meeting the

17  "security profile" requirements is stored in any specific database meeting the "security profile

18  cache requirements" — whether literally or under the doctrine of equivalents.  Accordingly, the

19  Court should enter summary judgment of non-infringement.

20  **IV.**      **FINJAN CANNOT PROVE PRE-SUIT WILLFUL INFRINGEMENT**

21        Finjan fails to adduce any evidence of pre-suit willful infringement and, instead, confirms

22  that it will not pursue pre-suit willful infringement.  (Opp'n at 25.)  Accordingly, the Court should

23  enter summary judgment of no willful infringement in PAN's favor.

24                        **<u>CONCLUSION</u>**

25        For all of the reasons set forth above, PAN respectfully requests that the Court grant

26  summary judgment of non-infringement of the '408, '633, and '731 Patents, and summary

27  judgment of no pre-suit willful infringement.

28

1  Dated:  October 16, 2024                         */s/ Kyle W.K. Mooney*
                                                     Daralyn J. Durie (CA SBN 169825)
2                                                    DDurie@mofo.com
                                                     Timothy Chen Saulsbury (CA SBN 281434)
3                                                    TSaulsbury@mofo.com
                                                     Matthew I. Kreeger (CA SBN 153793)
4                                                    MKreeger@mofo.com
                                                     MORRISON & FOERSTER LLP
5                                                    425 Market Street
                                                     San Francisco, California 94105-2482
6                                                    Phone: (415) 268-7000
                                                     Fax: (415) 268-7522
7
                                                     Kyle W.K. Mooney (*Pro Hac Vice*)
8                                                    KMooney@mofo.com
                                                     Michael J. DeStefano (*Pro Hac Vice*)
9                                                    Mdestefano@mofo.com
                                                     MORRISON & FOERSTER LLP
10                                                   250 West 55th Street
                                                     New York, New York 10019-9601
11                                                   Phone: (212) 468-8000
                                                     Fax: (212) 468-7900
12
                                                     Rose S. Lee
13                                                   RoseLee@mofo.com
                                                     MORRISON & FOERSTER LLP
14                                                   707 Wilshire Boulevard
                                                     Los Angeles CA 90017-3543
15                                                   Phone: (213) 892-5200
                                                     Fax: (213) 892-5454
16
                                                     *Attorneys for Defendant*
17                                                   *PALO ALTO NETWORKS, INC.*

18

19

20

21

22

23

24

25

26

27

28